# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**       **2. PLEASE TYPE OR PRINT**       **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Civil Rights Corps v. Cushman | S.D.N.Y. | Marrero, J. |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | 7/22/2024 | 21-cv-9128 |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | 8/21/2024 | ☐ Yes    ☑ No |

**Attorney(s) for Appellant(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:

Ester Murdukhayeva, 28 Liberty Street, New York, NY 10005 | T: 212-416-6279 | Email: ester.murdukhayeva@ag.ny.gov

**Attorney(s) for Appellee(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail:

Gregory Diskant, 1133 Avenue of the Americas, New York, NY 10036 | T: 212-336-2710 Email: gldiskant@pbwt.com

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously? ☑ Yes    ☐ No |
|---|---|---|---|
| N/A | N/A | N/A | If Yes, provide the following: |

Case Name: Civil Rights Corps v. Pestana

2d Cir. Docket No.: 22-1520       Reporter Citation: (i.e., F.3d or Fed. App.) n/a, FRAP 42 stip 2/12/2024

***ADDENDUM "A":*** **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B":*** **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

## PART A: JURISDICTION

### 1. Federal Jurisdiction
☐ U.S. a party
☐ Federal question (U.S. not a party)
☐ Diversity
☐ Other (specify): _____

### 2. Appellate Jurisdiction
☐ Final Decision
☐ Interlocutory Decision Appealable As of Right
☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))
☐ Other (specify): _____

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B:   DISTRICT  COURT DISPOSITION   (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|

**1. Stage of Proceedings**

- [x] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [x] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

Declaratory relief

**PART C:  NATURE OF SUIT   (Check as many as apply)**

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright ☐ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [x] Yes
- [ ] No

Will appeal raise a matter of first impression?

- [x] Yes
- [ ] No

---

1. Is any matter relative to this appeal still pending below? [x] Yes, specify: fees application     [ ] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?     [ ] Yes   [x] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?     [ ] Yes   [x] No

   If yes, state whether  ☐ "A," or  ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: 9/4/2024 | Signature of Counsel of Record:  /s/ Ester Murdukhayeva |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**
1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

## ADDENDUM A

## Nature of the Action

*Statutory and Regulatory Background*

In New York State, the Appellate Division of the Supreme Court of the State of New York has exclusive control over admission and discipline of attorneys. *See* N.Y. Judiciary Law § 90(2). State law requires each of the four departments of the Appellate Division to appoint at least one attorney grievance committee. *See* Judiciary Law § 90; 22 N.Y.C.R.R. pt. 1240.

Complaints of attorney misconduct are first screened by the chief attorney of the applicable grievance committee, who may decline to investigate the complaint on various specified grounds. *See* 22 N.Y.C.R.R. §§ 1240.7(d)(1). If the chief attorney opens an investigation (either in response to a complaint or initiated *sua sponte* when the committee becomes aware of potential misconduct), the attorney who is the subject of a grievance is provided a copy of the complaint and asked to provide a signed written response. *Id.* at § 1240.7(b)(2). The chief attorney and staff may also interview witnesses, obtain records, direct the respondent attorney to appear and/or produce records, and request issuance of subpoenas. *Id.* at § 1240.7(b). At the end of the investigation, the chief attorney produces a written report presented to the grievance committee, which may then be supplemented with additional material based on questions raised by the committee.

Following completion of the chief attorney's report, the attorney grievance committee can reach one of six dispositions: (i) dismiss a complaint; (ii) refer the matter to a suitable alternative forum (such as mediation or a bar association grievance committee); (iii) make an application for diversion to a monitoring program; (iv) issue a "letter of advisement" about the respondent's conduct; (v) issue an admonition letter to the respondent; or (vi) petition the Appellate Division to adjudicate whether respondent should be subject to any discipline. *See id.* § 1240.7(d)(2).

If the committee initiates a formal disciplinary proceeding in the Appellate Division, it does so by filing a petition naming the attorney as respondent, which is followed by a hearing. *See id.* § 1240.8(a)(1). If the Appellate Division concludes by a fair preponderance of the evidence that the attorney has committed professional misconduct, it "may impose discipline or take other action that is authorized by law, and in the discretion of the court, is appropriate to protect the public, maintain the honor and integrity of the profession, or deter others from committing similar misconduct." *Id.* § 1240.8(b)(2).

Section 90(10) of the Judiciary Law provides that "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to

the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." Judiciary Law § 90(10). However, a justice of the Appellate Division can "upon good cause being shown" issue a written order authorizing disclosure of such documents. *Id.* If a disciplinary charge as to any attorney is sustained by the Appellate Division, then "the records and documents in relation thereto shall be deemed public records." *Id.*

*Procedural Background*

In May 2021, several law professors (Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman) filed twenty-one misconduct complaints against current and former prosecutors in the Queens County District Attorney's Office and published the complaints on their website. The chief attorney for the applicable grievance committee sent a letter to the professors indicating that the committee would review the complaints but that the law professors were not formal "complainants" and therefore would not receive further information about any investigation or disposition because the complaints were not based on personal knowledge.

In November 2021, the individual law professors together with a non-profit organization, Civil Rights Corps, filed this lawsuit against Justice Hector D. LaSalle, in his official capacity as the presiding justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, Diana Maxwell Kearse, in her personal capacity and her official capacity as chief counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, and Andrea Bonina, in her personal capacity and her official capacity as chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (together, the State defendants) as well as Georgia Pestana in her personal capacity and her official capacity as the Corporation Counsel of the City of New York New York and Melinda Katz, in her personal capacity and her official capacity as the Queens County District Attorney (together, the City defendants).

Plaintiffs brought five claims: (i) a First Amendment retaliation claim against Kearse, Bonina, and the City defendants; (ii) an Equal Protection Clause claim against Bonina and Kearse; (iii) a First Amendment challenge against all defendants to Judiciary Law § 90(10) to the extent it could be interpreted to bar plaintiffs from publishing any complaints they have filed or any information received in connection with those complaints; (iv) a First Amendment challenge to Judiciary Law § 90(10) to the extent it bars access to government proceedings and records; and (v) a claim that "good cause" exists within the meaning of Judiciary Law § 90(10) to permit plaintiffs access to the disciplinary records.

**Result Below**

In May 2022, the district court issued a decision and order that construed the parties' pre-motion letters regarding abstention and immunity and motions to dismiss, and largely denied such motions. (ECF Dkt. 90.) In June 2022, the district court granted partial summary judgment to plaintiffs on their third claim, finding that the First Amendment protected their right to publish their grievance complaints and any other material received in relation to the complaints, even though the State defendants' position was that Judiciary Law § 90(10) did not prohibit such disclosure. (ECF No. 94.) In March 2023, plaintiffs withdrew the first, second, and fifth claims against all defendants, and withdrew all claims against Kearse and Bonina. (ECF No. 158.)

In July 2024, the district court granted summary judgment to plaintiffs on the fourth claim against Justice LaSalle, the sole remaining defendant, and denied Justice LaSalle's cross-motion for summary judgment. (ECF No. 209.) The court rejected Justice LaSalle's justiciability, immunity, and abstention arguments. On the merits, the court found that a presumptive right of access under the First Amendment attaches to dispositions by the grievance committee and to disciplinary proceedings in the Appellate Division, although it found no right of access to dispositions by the chief attorney.

The court ordered as-applied declaratory relief as follows. First, the court declared that a presumptive right of access attaches to any disciplinary proceedings related to the 21 complaints filed by the plaintiffs in May 2021, as well as any documents necessary to understand those hearings such as "court orders, motions and related submissions, documentary evidence, and docket sheets." Second, the court declared that a presumptive right of access applies to dispositions made by the grievance committee related to the 21 complaints filed by the plaintiffs in May 2021, subject to "specific, on-the-record findings" that "restrictions serve higher values that would be prejudiced by disclosure, restrictions on disclosure are no more extensive than necessary to protect those higher values, and that alternatives to restriction have been considered and would not reasonably protect those higher values."

**Required Attachments**

Attached to this addendum are copies of (i) the Notice of Appeal; (ii) a current copy of the district court docket sheet; (iii) the district court's June 13, 2022 decision and order granting plaintiffs' motion for partial summary judgment; (iv) the district court's July 22, 2024 decision and order granting plaintiffs' motion for summary judgment and denying Justice LaSalle's cross-motion for summary judgment; (v) the judgment issued on July 22, 2024.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.,

                        Plaintiffs,

        v.

STEVEN STEIN CUSHMAN,
Corporation Counsel of the City of New York,
et al.,

                        Defendants.

No. 21-cv-9128 (VM) (VF)

**NOTICE OF APPEAL**

To the Clerk of the Court and all parties of record:

Notice is hereby given that Defendant Hector D. LaSalle, Presiding Justice of the Second

Judicial Department of the Appellate Division of the New York Supreme Court, hereby appeals to

the United States Court of Appeals for the Second Circuit from the judgment dated and filed July

22, 2024 (ECF No. 210), and any order that has merged into that judgment.

Dated:  New York, New York
        August 21, 2024

LETITIA JAMES
Attorney General
State of New York

        /s/ *Elizabeth Anne Figueira*

ELIZABETH ANNE FIGUEIRA
JOYA C. SONNENFELDT
Assistant Attorneys General
28 Liberty Street, 16th Floor
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
joya.sonnenfeldt@ag.ny.gov
*Attorneys for Justice LaSalle*

9/4/24, 11:59 AM                                    SDNY CM/ECF NextGen Version 1.7

CLOSED,APPEAL,CASREF,ECF

## U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21-cv-09128-VM-VF

Civil Rights Corps. et al v. Cushman et al
Assigned to: Judge Victor Marrero
Referred to: Magistrate Judge Valerie Figueredo
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 11/04/2021
Date Terminated: 07/22/2024
Jury Demand: Plaintiff
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Civil Rights Corps.**                    represented by    **Gregory L. Diskant**
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gldiskant@pbwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Email: awells@pbwt.com
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
Patterson Belknap Webb & Tyler LLP
Judicial Law Clerk/Judge Margo K. Brodie
1133 6th Ave
New York, NY 10036
412-496-0602
Email: eshane@pbwt.com
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: gchaudhuri@pbwt.com
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**

Dunnington Bartholow & Miller LLP
230 Park Avenue
21st Floor
10169
New York, NY 10169
212-682-8811
Email: jkinkle@dunnington.com
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212-336-2000
Fax: 212-336-2222
Email: sattadgie@pbwt.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cynthia Godsoe**                            represented by  **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nicole Smith Futrell**                      represented by  **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel S. Medwed**                    represented by    **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Justin Murray**                       represented by    **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Abbe Smith**                    represented by   **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven Zeidman**                represented by   **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Georgia Pestana**
*Personal Capacity*
*TERMINATED: 04/09/2024*

represented by **Eric Jay Eichenholtz**
NYC Law Department, Office of the
Corporation Counsel (NYC)
100 Church Street
New York, NY 10007
212-788-0303
Fax: 212-788-0940
Email: eeichenh@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krista Ann Friedrich**
New York City Law Dept.
100 Church Street
New York, NY 10007
212-356-2610
Email: kfriedri@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven Stein Cushman**
*In his official capacity Corporation Counsel
of the City of New York*
*TERMINATED: 04/09/2024*

represented by **Eric Jay Eichenholtz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krista Ann Friedrich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Melinda Katz**
*Personal Capacity*

represented by **Eric Jay Eichenholtz**
(See above for address)

*TERMINATED: 04/09/2024*
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Krista Ann Friedrich**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Melinda Katz**                         represented by    **Eric Jay Eichenholtz**
*In her official capacity the District Attorney*                  (See above for address)
*of Queens County*                                  *LEAD ATTORNEY*
*TERMINATED: 04/09/2024*                        *ATTORNEY TO BE NOTICED*

                                         **Krista Ann Friedrich**
                                         (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Andrea E. Bonina**                        represented by    **Elizabeth Anne Figueira**
*Personal Capacity*                                 New York State Office of the Attorney
*TERMINATED: 03/30/2023*                       General (28 Liberty)
                                         28 Liberty Street, 15th Floor
                                         New York, NY 10005
                                         (212) 416-8528
                                         Fax: (212) 416-6009
                                         Email: elizabeth.figueira@ag.ny.gov
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

                                         **Joya C Sonnenfeldt**
                                         NYS Office of The Attorney General
                                         Litigation Bureau
                                         28 Liberty Street
                                         New York, NY 10005
                                         212-416-8184
                                         Email: joya.sonnenfeldt@ag.ny.gov
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Andrea E. Bonina**                        represented by    **Elizabeth Anne Figueira**
*In her official capacity Chair of State of*                    (See above for address)
*New York Greivance Committee for the*
*Second, Eleventh and Thirteenth Judicial*
*Districts*                                          **Joya C Sonnenfeldt**
*TERMINATED: 03/30/2023*                       (See above for address)
                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Diana Maxfield Kearse**                   represented by    **Mark Michael Elliott**
*Personal Capacity*                                Elliott Kwok Levine & Jaroslaw LLP
*TERMINATED: 03/30/2023*                       565 Fifth Avenue
                                         7th Floor
                                         New York, NY 10017
                                         646-777-4511

Email: melliott@ekljlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Figueira**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Frankel**
Phillips Nizer LLP
485 Lexington Avenue
New York, NY 10017
212-977-9700
Email: lfrankel@phillipsnizer.com
*ATTORNEY TO BE NOTICED*

**Rachel J Rodriguez**
Elliott Kwok Levine Jaroslaw Neils LLP
One Grand Central Place
60 E42nd St
Ste 1570
New York, NY 10165
212-321-0510
Email: rrodriguez@ekljnlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Diana Maxfield Kearse**
*In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District*
*TERMINATED: 03/30/2023*

represented by **Mark Michael Elliott**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Figueira**
(See above for address)

**Leah Frankel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel J Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hector D. LaSalle**
*In his official capacity Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York*

represented by **Elizabeth Anne Figueira**
(See above for address)

**Joya C Sonnenfeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**The New York Times Company,**

represented by **Ira Martin Feinberg**
Office of the New York Attorney General

28 Liberty Street
New York, NY 10005
212-416-6037
Email: ira.feinberg@ag.ny.gov
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
Hogan Lovells US LLP (NYC)
390 Madison Ave.
New York, NY 10017
212 918 3283
Fax: 212 918 3100
Email:
benjamin.fleming@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
Hogan Lovells US LLP (NYC)
390 Madison Ave.
New York, NY 10017
212-918-3000
Email:
matthew.ducharme@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Associated Press**                represented by **Ira Martin Feinberg**
(See above for address)
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Pro Publica Inc.**                represented by **Ira Martin Feinberg**
(See above for address)
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
(See above for address)
*ATTORNEY TO BE NOTICED*

9/4/24, 11:59 AM                                                    SDNY CM/ECF NextGen Version 1.7

**Amicus**

**Newsday LLC**                          represented by   **Ira Martin Feinberg**
                                                          (See above for address)
                                                          *TERMINATED: 08/04/2023*
                                                          *LEAD ATTORNEY*

                                                          **Benjamin Andrew Fleming**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Matthew Alan Ducharme**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Floyd Abrams Institute for Freedom of**   represented by   **David A. Schulz**
**Expression**                                              Ballard Spahr LLP (NYC)
                                                            1675 Broadway, 19th Floor
                                                            New York, NY 10019
                                                            (212) 850-6103
                                                            Fax: (212) 223-1942
                                                            Email: schulzd@ballardspahr.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/04/2021 | 1 | COMPLAINT against Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity). (Filing Fee $ 402.00, Receipt Number 465401288653)Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. (Attachments: # 1 Exh 1, # 2 Exh 2, # 3 Exh 3, # 4 Exh 4, # 5 Exh 5, # 6 Exh 6, # 7 Exh 7).(gp) (Entered: 11/04/2021) |
| 11/04/2021 | 2 | CIVIL COVER SHEET filed..(gp) (Entered: 11/04/2021) |
| 11/04/2021 | | Magistrate Judge Debra C. Freeman is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (gp) (Entered: 11/04/2021) |
| 11/04/2021 | | Case Designated ECF. (gp) (Entered: 11/04/2021) |
| 11/04/2021 | | ORDER REDACTING PLEADING FILED IN 21-mc-792 (LGS)...(gp) (Entered: 11/04/2021) |
| 11/04/2021 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to Andrea E. Bonina, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin |

| | | |
|---|---|---|
| | | Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 4 | SEALED DOCUMENT placed in vault.(nmo) (Entered: 11/04/2021) |
| 11/04/2021 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Diana Maxfield Kearse, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to Georgia Pestana, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Hector D. LaSalle, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 8 | REQUEST FOR ISSUANCE OF SUMMONS as to Melinda Katz, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/09/2021 | 9 | ENDORSED LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated 11/8/2021 re: Counsel asks the Court to treat this letter-brief as a motion and to rule on this basis. The exhibits are judicial records and should be public for that reason alone. They do not fall within the ambit of Judiciary Law § 90(10), and so there is no reason to keep them secret. And in any event, they cannot be kept secret consistent with the freedom accorded speech about matters of public importance under the First Amendment. For these reasons, the Court should unseal the documents filed by Plaintiffs under seal with their Complaint. ENDORSEMENT: Defendants are directed to respond within three days of service, by letter not to exceed three pages, to the matter set forth above by Plaintiffs. So Ordered (Signed by Judge Victor Marrero on 11/9/2021) (js) (Entered: 11/09/2021) |
| 11/09/2021 | 10 | ELECTRONIC SUMMONS ISSUED as to Andrea E. Bonina. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 11 | ELECTRONIC SUMMONS ISSUED as to Diana Maxfield Kearse. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 12 | ELECTRONIC SUMMONS ISSUED as to Georgia Pestana. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 13 | ELECTRONIC SUMMONS ISSUED as to Hector D. LaSalle. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 14 | ELECTRONIC SUMMONS ISSUED as to Melinda Katz.(vf) (Entered: 11/09/2021) |
| 11/10/2021 | 15 | FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 9 Endorsed Letter,,, addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021., FIRST LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Hector D. LaSalle, Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Figueira, Elizabeth) (Entered: 11/10/2021) |

| 11/11/2021 | 16 | LETTER RESPONSE to Motion addressed to Judge Victor Marrero from Gregory Diskant dated November 11, 2021 re: 15 FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 9 Endorsed Letter,,, addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021.FIRST LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021. *Plaintiffs' opposition to Defendants' request for extension of time to respond to motion to unseal exhibits to complaint.* Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/11/2021) |
|---|---|---|
| 11/12/2021 | 17 | ORDER granting 15 Letter Motion for Extension of Time to File Response/Reply re 15 FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 9 Endorsed Letter,,, addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021.FIRST LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021. ( Responses due by 12/17/2021); granting 15 Letter Motion for Extension of Time It is hereby ORDERED that the request of the State Defendants is GRANTED. The State Defendants shall answer, move or otherwise respond to Plaintiffs' Complaint by December 17. The State Defendants shall also respond to the Courts November 9 Order by December 17. So Ordered. (Signed by Judge Victor Marrero on 11/12/2021) (js) (Entered: 11/12/2021) |
| 11/12/2021 | | Set/Reset Deadlines: Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) answer due 12/17/2021; Andrea E. Bonina (Personal Capacity) answer due 12/17/2021; Hector D. LaSalle answer due 12/17/2021; Diana Maxfield Kearse(Personal Capacity) answer due 12/17/2021; Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) answer due 12/17/2021. (js) (Entered: 11/12/2021) |
| 11/12/2021 | 18 | SUMMONS RETURNED EXECUTED. Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) served on 11/10/2021, answer due 12/17/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/12/2021 | 19 | SUMMONS RETURNED EXECUTED. Melinda Katz(In her official capacity the District Attorney of Queens County) served on 11/10/2021, answer due 12/1/2021; Melinda Katz (Personal Capacity) served on 11/10/2021, answer due 12/1/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/12/2021 | 20 | SUMMONS RETURNED EXECUTED. Diana Maxfield Kearse(Personal Capacity) served on 11/10/2021, answer due 12/17/2021; Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) served on 11/10/2021, answer due 12/17/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/12/2021 | 21 | SUMMONS RETURNED EXECUTED. Hector D. LaSalle served on 11/10/2021, answer due 12/17/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |

| 11/15/2021 | 22 | SUMMONS RETURNED EXECUTED. Georgia Pestana(In her official capacity Corporation Counsel of the City of New York) served on 11/9/2021, answer due 11/30/2021; Georgia Pestana(Personal Capacity) served on 11/9/2021, answer due 11/30/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/15/2021) |
|---|---|---|
| 11/23/2021 | 23 | NOTICE OF APPEARANCE by Krista Ann Friedrich on behalf of Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 11/23/2021) |
| 11/23/2021 | 24 | LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Krista Friedrich dated November 23, 2021. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 11/23/2021) |
| 11/24/2021 | 25 | ORDER granting 24 Letter Motion for Extension of Time. Request Granted. the requested defendants shall have until December 17, 2021 to answer, move, or otherwise respond to the complaint and to respond to Plaintiffs' unsealing request. So Ordered. (Signed by Judge Victor Marrero on 11/24/2021) (js) (Entered: 11/24/2021) |
| 12/09/2021 | 26 | SECOND LETTER MOTION for Extension of Time *to Respond to the Complaint and Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated December 9, 2021. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity)..(Figueira, Elizabeth) (Entered: 12/09/2021) |
| 12/09/2021 | 27 | LETTER RESPONSE to Motion addressed to Judge Victor Marrero from Jeffrey F. Kinkle dated December 9, 2021 re: 26 SECOND LETTER MOTION for Extension of Time *to Respond to the Complaint and Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated December 9, 2021. . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Nicole Smith Futrell, Steven Zeidman..(Kinkle, Jeffrey) (Entered: 12/09/2021) |
| 12/10/2021 | 28 | ORDER: granting 26 Letter Motion for Extension of Time. Request GRANTED. The State Defendants shall have until January 14, 2022 to answer or otherwise respond to the complaint and to respond to the unsealing motion. This shall be the final extension. SO ORDERED. (Signed by Judge Victor Marrero on 12/10/2021) (ama) (Entered: 12/10/2021) |
| 12/10/2021 |  | Set/Reset Deadlines: Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) answer due 1/14/2022; Andrea E. Bonina (Personal Capacity) answer due 1/14/2022; Hector D. LaSalle answer due 1/14/2022; Diana Maxfield Kearse(Personal Capacity) answer due 1/14/2022. Responses due by 1/14/2022 (ama) (Entered: 12/10/2021) |
| 12/10/2021 | 29 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated December 10, 2021 re: requesting a pre-motion conference. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/10/2021) |
| 12/13/2021 | 30 | SECOND LETTER MOTION for Extension of Time *to respond to Complaint and unsealing request, and First request for extension of time to respond to Plaintiffs' pre-* |

| | | |
|---|---|---|
| | | *motion conference letter* addressed to Judge Victor Marrero from Krista Friedrich dated December 13, 2021. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/13/2021) |
| 12/14/2021 | 31 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated December 14, 2021 re: Response to the City Defendants' Letter (dkt. no. 30). Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/14/2021) |
| 12/14/2021 | 32 | ORDER re: 30 Letter Motion for Extension of Time. The City Defendants' request for an extension of time to answer the Complaint and respond to the request for unsealing is granted. City Defendants shall have until January 14, 2022 to respond to the complaint and the unsealing motion. City Defendants' request for an extension of time to respond to the pre- motion conference letter is denied. So Ordered. (Signed by Judge Victor Marrero on 12/14/2021) (js) (Entered: 12/14/2021) |
| 12/14/2021 | | Set/Reset Deadlines: Melinda Katz(In her official capacity the District Attorney of Queens County) answer due 1/14/2022; Melinda Katz(Personal Capacity) answer due 1/14/2022; Georgia Pestana(In her official capacity Corporation Counsel of the City of New York) answer due 1/14/2022; Georgia Pestana(Personal Capacity) answer due 1/14/2022. Responses due by 1/14/2022 (js) (Entered: 12/14/2021) |
| 12/14/2021 | 33 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated December 14, 2021 re: Response to Plaintiffs' letter (Dkt. No. 31). Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/14/2021) |
| 12/15/2021 | 34 | MEMO ENDORSEMENT on re: 33 Letter, filed by Georgia Pestana, Melinda Katz. ENDORSEMENT: At this time the request by both parties, see also Dkt. 31, for a conference on January 18, 2022 is denied. The Court shall review all pre-motion letters and letters in opposition and will schedule a conference if deemed necessary after review. So Ordered. (Signed by Judge Victor Marrero on 12/15/2021) (js) (Entered: 12/15/2021) |
| 12/20/2021 | 35 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated December 20, 2021 re: copying the Court on City Defendants' letter to Plaintiffs' counsel re: proposed motion to dismiss. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/20/2021) |
| 12/20/2021 | 36 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated December 20, 2021 re: response to Plaintiffs' letter proposing motion for partial summary judgment (Dkt. No. 29). Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/20/2021) |
| 12/21/2021 | 37 | LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Gregory L. Diskant dated December 21, 2021. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/21/2021) |
| 12/22/2021 | 38 | ORDER granting 37 Letter Motion for Extension of Time. Request Granted. Plaintiffs shall have until December 31, 2021 to respond. So Ordered. (Signed by Judge Victor |

| | | Marrero on 12/22/2021) (js) (Entered: 12/22/2021) |
|---|---|---|
| 12/30/2021 | 39 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated December 30, 2021 re: copying the Court in response to City Defendants' December 20, 2021 letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/30/2021) |
| 01/05/2022 | 40 | NOTICE OF APPEARANCE by Elizabeth Anne Figueira on behalf of Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/05/2022) |
| 01/05/2022 | 41 | LETTER addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 5, 2022 re: copying Court on pre-motion to dismiss correspondence. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/05/2022) |
| 01/05/2022 | 42 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated January 5, 2022 re: proposed motion to dismiss. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 01/05/2022) |
| 01/06/2022 | 43 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant in Response to the City Defendants' January 5, 2022 Letter dated January 6, 2022 Document filed by Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/06/2022) |
| 01/12/2022 | 44 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 12, 2022 re: Response to the State Defendants' January 5, 2022 Letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/12/2022) |
| 01/14/2022 | 45 | NOTICE OF APPEARANCE by Mark Michael Elliott on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 01/14/2022) |
| 01/14/2022 | 46 | NOTICE OF APPEARANCE by Leah Frankel on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Frankel, Leah) (Entered: 01/14/2022) |
| 01/14/2022 | 47 | LETTER addressed to Judge Victor Marrero from Mark M. Elliott dated January 14, 2022 re: Proposed Motion to Dismiss. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 01/14/2022) |
| 01/14/2022 | 48 | LETTER MOTION to Seal *in Opposition to ECF 9 Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 14, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/14/2022) |

| 01/14/2022 | [49](#) | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated January 14, 2022 re: response to Dkt. No. 9 motion to unseal. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 01/14/2022) |
|---|---|---|
| 01/14/2022 | [50](#) | LETTER RESPONSE in Opposition to Motion addressed to Judge Victor Marrero from Mark M. Elliott dated January 14, 2022 re: [48](#) LETTER MOTION to Seal *in Opposition to ECF 9 Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 14, 2022. . Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 01/14/2022) |
| 01/18/2022 | [51](#) | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 18, 2022 re: Plaintiffs' reply to Defendants' 1/14/22 letter briefs regarding request to unseal. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/18/2022) |
| 01/18/2022 | [52](#) | LETTER MOTION for Conference re: [41](#) Letter, *re: Proposed Motion to Dismiss and Scheduling Submissions* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 18, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/18/2022) |
| 01/19/2022 | [53](#) | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 19, 2022 re: in reply to the letters filed by the City Defendants on January 5, 2022 (ECF No. 42) and the State Defendants on January 18, 2022 (ECF No. 52). Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/19/2022) |
| 01/21/2022 | [54](#) | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated January 21, 2022 re: response to Plaintiffs' letter (Dkt. No. 53). Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 01/21/2022) |
| 01/21/2022 | [55](#) | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 21, 2022 re: copying the Court in response to Defendant Diana Maxfield Kearse's January 14, 2022 letter.. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/21/2022) |
| 01/24/2022 | [56](#) | ORDER: Upon review of all pre-motion letters, the parties are hereby ordered to submit a joint proposed briefing schedule regarding Plaintiffs anticipated motion for partial summary judgment within three days of the date of this order. Any motions for a pre-motion conference are denied at this time. No further briefing will be accepted for the anticipated motions to dismiss. The Court will resolve all three of Defendants' anticipated motions to dismiss the Complaint on the basis of the parties' pre-motion letters. See Kapitalforeningen Lgernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court's ruling deeming an exchange of letters as a motion to |

| | | dismiss). So Ordered. (Signed by Judge Victor Marrero on 1/24/2022) (js) (Entered: 01/24/2022) |
|---|---|---|
| 01/24/2022 | 57 | LETTER addressed to Judge Victor Marrero from David McCraw dated 1/19/2022 re: I write on behalf of The New York Times Company (The Times) in support of the unsealing motion filed by the plaintiffs in the above-referenced case. See Dkt. No. 9. The motion concerns seven letters that are appended as exhibits to the complaint and that go to the heart of the plaintiffs' claims in this action. It is clear that the exhibits are subject to a presumptive right of access and that the defendants have not met their burden to over The Times joins theplaintiffs in asking the Court to unseal them. (js) (Entered: 01/25/2022) |
| 01/25/2022 | 58 | ORDER: For the reasons stated above, it is hereby ORDERED that Plaintiffs' motion to unseal all seven exhibits to the Complaint (Dkt. No. 9) is GRANTED. Plaintiffs are directed to re-file the Complaint with all exhibits attached for public viewing. So Ordered. (Signed by Judge Victor Marrero on 1/25/2022) (js) (Entered: 01/25/2022) |
| 01/25/2022 | 59 | COMPLAINT against Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Melinda Katz(In her official capacity the District Attorney of Queens County), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York). Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. (Attachments: # 1 Exhibit 1, City Law Dept letter, dated June 2, 2021, # 2 Exhibit 2, GC Letter re Professors Complaints, dated June 11, 2021, # 3 Exhibit 3, Letter from G. Diskant to 9th GC, dated June 22, 2021, # 4 Exhibit 4, Letter to Corp Counsel, dated June 22, 20921, # 5 Exhibit 5, Letter to GC from G. Pestana, dated July 8, 2021, # 6 Exhibit 6, Letter from G. Diskant to GC, dated June 30, 2021, # 7 Exhibit 7, Letter from GC, dated July 26, 2021).(Diskant, Gregory) (Entered: 01/25/2022) |
| 01/26/2022 | 60 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 26, 2022 re: In response to the Courts January 24, 2022 order. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/26/2022) |
| 01/27/2022 | 61 | MEMO ENDORSEMENT on re: 60 Letter, filed by Civil Rights Corps., Steven Zeidman, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Cynthia Godsoe. ENDORSEMENT: The proposed briefing schedule is approved. Plaintiffs' request to file one 20-page reply brief is granted. So Ordered. (Motions due by 2/22/2022., Responses due by 3/22/2022, Replies due by 4/5/2022.) (Signed by Judge Victor Marrero on 1/27/2022) (js) (Entered: 01/27/2022) |
| 02/22/2022 | 62 | NOTICE OF APPEARANCE by Eric Jay Eichenholtz on behalf of Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 02/22/2022) |
| 02/22/2022 | 63 | MOTION for Partial Summary Judgment . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/22/2022) |
| 02/22/2022 | 64 | MEMORANDUM OF LAW in Support re: 63 MOTION for Partial Summary Judgment . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/22/2022) |

| 02/22/2022 | 65 | DECLARATION of Gregory L. Diskant in Support re: 63 MOTION for Partial Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit 1 - Sligh-Grievance, # 2 Exhibit 2 - 2021.06.02 - City Law Dept letter, # 3 Exhibit 3 - 2021.06.11 GC Letter re Professors Complaints, # 4 Exhibit 4 - 2021.06.22 Letter from G. Diskant to 9th GC, # 5 Exhibit 5 - 2021.06.22 Letter to Corp Counsel, # 6 Exhibit 6 - 2021.06.30 Letter from G. Diskant to GC, # 7 Exhibit 7 - 2021.07.08 2nd11th13th-Dist-Cmmtee-Ltr, # 8 Exhibit 8 - 2021.07.26 Letter from GC, # 9 Exhibit 9 - Bill Jacket_L-1945-CH-0675, # 10 Exhibit 10 - 2016-Annual-Report-on-Lawyer-Discipline-in-NYS Excerpt, # 11 Exhibit 11 - 2017-Annual Report on Lawyer Discipline - Excerpt, # 12 Exhibit 12 - 2018-FINAL-REPORT - Excerpt, # 13 Exhibit 13 - 2019-Annual-Report-Complete Excerpt, # 14 Exhibit 14 - 2019 ANNUAL REPORT (1st dept) Excerpt, # 15 Exhibit 15 - 2020-Attorney-Grievence-Committee-Report Excerpt). (Diskant, Gregory) (Entered: 02/22/2022) |
| 02/22/2022 | 66 | RULE 56.1 STATEMENT. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman.. (Diskant, Gregory) (Entered: 02/22/2022) |
| 03/08/2022 | 67 | Amicus Curiae APPEARANCE entered by Ira Martin Feinberg on behalf of The New York Times Company,, The Associated Press, Pro Publica Inc., Newsday LLC..(Feinberg, Ira) (Entered: 03/08/2022) |
| 03/08/2022 | 68 | Amicus Curiae APPEARANCE entered by Benjamin Andrew Fleming on behalf of Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,.. (Fleming, Benjamin) (Entered: 03/08/2022) |
| 03/08/2022 | 69 | Amicus Curiae APPEARANCE entered by Matthew Alan Ducharme on behalf of Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,.. (Ducharme, Matthew) (Entered: 03/08/2022) |
| 03/08/2022 | 70 | LETTER MOTION to File Amicus Brief addressed to Judge Victor Marrero from Ira M. Feinberg dated March 8, 2022. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,. (Attachments: # 1 Exhibit A - Proposed Brief of Amici Curiae).(Feinberg, Ira) (Entered: 03/08/2022) |
| 03/08/2022 | 71 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Other Affiliate Tillandsia Media Holdings LLC, Other Affiliate The Charles F. Dolan 2014 Children Trust FBO Patrick F. Dolan for Newsday LLC. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 03/08/2022) |
| 03/09/2022 | 72 | ORDER granting 70 Letter Motion to File Amicus Brief. Request GRANTED. The motion for leave to file as amici curiae is granted. So Ordered. (Signed by Judge Victor Marrero on 3/9/2022) (js) (Entered: 03/09/2022) |
| 03/09/2022 | 73 | BRIEF re: 63 MOTION for Partial Summary Judgment . *(BRIEF OF AMICI CURIAE IN SUPPORT)*. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 03/09/2022) |
| 03/14/2022 | 74 | FIRST LETTER MOTION for Extension of Time to File *Opposition to Summary Judgment Motion* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated March 14, 2022., FIRST LETTER MOTION for Leave to File Excess Pages *for Opposition* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated March 14, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial |

| | | |
|---|---|---|
| | | Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/14/2022) |
| 03/15/2022 | 75 | ORDER granting 74 Letter Motion for Extension of Time to File ; granting 74 Letter Motion for Leave to File Excess Pages. Request GRANTED. All defendants' oppositions to the motion for partial summary judgment shall be due March 31, 2022. Plaintiffs' reply is due April 14, 2022. The page limit for the Office's memorandum of law shall be expanded to 30 pages. So Ordered. (Signed by Judge Victor Marrero on 3/15/2022) (js) (Entered: 03/15/2022) |
| 03/31/2022 | 76 | RULE 56.1 STATEMENT. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 03/31/2022) |
| 03/31/2022 | 77 | MEMORANDUM OF LAW in Opposition re: 63 MOTION for Partial Summary Judgment . . Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 03/31/2022) |
| 03/31/2022 | 78 | MEMORANDUM OF LAW in Opposition re: 63 MOTION for Partial Summary Judgment . . Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 79 | RULE 56.1 STATEMENT. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle.. (Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 80 | DECLARATION of Elizabeth Anne Figueira in Opposition re: 63 MOTION for Partial Summary Judgment .. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle. (Attachments: # 1 Exhibit 1- 1st Dept Form, # 2 Exhibit 2- 1st Dept How To File, # 3 Exhibit 3 - 2d Dept Form, # 4 Exhibit 4 - How to Make a Complaint, # 5 Exhibit 5- 3d Dept Form, # 6 Exhibit 6 - Instructions For Filing, # 7 Exhibit 7- 4th Dept Form, # 8 Exhibit 8 - 4th Dept Overview, # 9 Exhibit 9 - Lippman Report, # 10 Exhibit 10 Rule 16, # 11 Exhibit 11 - Merriam Dictionary, # 12 Exhibit 12- Merriam Online, # 13 Exhibit 13 - OED Upon prep, # 14 Exhibit 14 - OED Upon adv).(Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 81 | DECLARATION of Andrea E. Bonina in Opposition re: 63 MOTION for Partial Summary Judgment .. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 82 | MEMORANDUM OF LAW in Opposition re: 63 MOTION for Partial Summary Judgment . . Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 03/31/2022) |
| 03/31/2022 | 83 | DECLARATION of Diana Maxfield Kearse in Opposition re: 63 MOTION for Partial Summary Judgment .. Document filed by Diana Maxfield Kearse(Personal Capacity), |

| | | |
|---|---|---|
| | | Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 03/31/2022) |
| 03/31/2022 | 84 | COUNTER STATEMENT TO 66 Rule 56.1 Statement. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 03/31/2022) |
| 04/14/2022 | 85 | REPLY MEMORANDUM OF LAW in Support re: 63 MOTION for Partial Summary Judgment . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 04/14/2022) |
| 04/14/2022 | 86 | REPLY AFFIRMATION of Gregory L. Diskant in Support re: 63 MOTION for Partial Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit 16 Letter from G. Diskant; dated 3/15/22, # 2 Exhibit 17 Letter from E. Eichenholtz, dated 3/17/22).(Diskant, Gregory) (Entered: 04/14/2022) |
| 04/14/2022 | 87 | NOTICE OF APPEARANCE by Jeffrey F Kinkle on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Kinkle, Jeffrey) (Entered: 04/14/2022) |
| 04/15/2022 | 88 | NOTICE OF APPEARANCE by Elisabeth A. Shane on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Shane, Elisabeth) (Entered: 04/15/2022) |
| 04/29/2022 | | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Valerie Figueredo. Please note that this is a reassignment of the designation only. (nb) (Entered: 04/29/2022) |
| 04/29/2022 | 89 | NOTICE OF CHANGE OF ADDRESS by Mark Michael Elliott on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District). New Address: Elliott, Kwok, Levine & Jaroslaw LLP, 565 5th Avenue, 7th Floor, New York, New York, US 10017, 6467774511..(Elliott, Mark) (Entered: 04/29/2022) |
| 05/05/2022 | 90 | DECISION AND ORDER: It is hereby ORDERED that the motion so-deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the unredacted complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is DENIED IN PART; and it is further ORDERED that the motion so-deemed by the Court (Dkt. No. 41) filed by Defendants Andrea E. Bonina and Hector LaSalle to dismiss Plaintiffs' Complaint is DENIED; and it is further ORDERED that the motion so-deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs' Complaint is DENIED IN PART. The Court will reserve judgment on the remaining arguments made in the motions filed by the City Defendants and Kearse pending resolution of Plaintiffs' motion for partial summary judgment. SO ORDERED. (Signed by Judge Victor Marrero on 5/5/2022) (jca) (Entered: 05/05/2022) |
| 05/12/2022 | 91 | FIRST LETTER MOTION for Extension of Time to File Answer re: 59 Complaint,,,, *on Behalf of All Defendants* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated May 12, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth |

| | | Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 05/12/2022) |
|---|---|---|
| 05/12/2022 | 92 | ORDER granting 91 Letter Motion for Extension of Time to Answer re 91 FIRST LETTER MOTION for Extension of Time to File Answer re: 59 Complaint *on Behalf of All Defendants* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated May 12, 2022. The deadline to answer for all defendants is stayed pending complete resolution of all motions to dismiss. SO ORDERED. (Signed by Judge Victor Marrero on 5/12/2022) (jca) (Entered: 05/12/2022) |
| 06/09/2022 | 93 | MOTION for Jeffrey F. Kinkle to Withdraw as Attorney . Document filed by Civil Rights Corps., Cynthia Godsoe..(Kinkle, Jeffrey) (Entered: 06/09/2022) |
| 06/13/2022 | 94 | DECISION AND ORDER granting in part and denying in part 63 Motion for Partial Summary Judgment. It is hereby ORDERED that the motion so-deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is DENIED; and it is further ORDERED that the motion so-deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs Complaint is DENIED; and it is further ORDERED that the motion filed by Plaintiffs for partial summary judgment (Dkt. No. 63) is GRANTED IN PART. The motion is granted insofar as it seeks summary judgment on Plaintiffs' as-applied constitutional challenge. Defendants are hereby ORDERED to file their answer to the remaining claims brought in the Complaint within twenty-one days of the date of this Order. SO ORDERED. (Signed by Judge Victor Marrero on 6/13/22) (yv) (Entered: 06/13/2022) |
| 06/13/2022 | 95 | MEMO ENDORSEMENT granting 93 MOTION for Jeffrey F. Kinkle to Withdraw as Attorney. ENDORSEMENT: Request GRANTED. The motion of attorney Jeffery Kinkle to withdraw is granted. SO ORDERED. Attorney Jeffrey F Kinkle terminated (Signed by Judge Victor Marrero on 6/13/2022) (jca) (Entered: 06/13/2022) |
| 06/18/2022 | 96 | MOTION FOR LEAVE TO FILE A MOTION TO INTERVENE. Document filed by Towaki Komatsu, a non-party..(sc) (Entered: 06/21/2022) |
| 06/23/2022 | 97 | ORDER denying 96 Motion to Intervene. For that reason, it is hereby ORDERED that the motion filed by Towaki Komatsu to intervene in this action (Dkt. No. 96) is DENIED. SO ORDERED. (Signed by Judge Victor Marrero on 6/23/2022) (jca) (Entered: 06/23/2022) |
| 06/29/2022 | 98 | LETTER MOTION for Extension of Time to File Answer re: 59 Complaint,,,, *for all defendants on consent of all parties* addressed to Judge Victor Marrero from Eric Eichenholtz dated June 29, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 06/29/2022) |
| 06/30/2022 | 99 | ORDER granting 98 Letter Motion for Extension of Time to Answer re: 59 Complaint *for all defendants on consent of all parties* addressed to Judge Victor Marrero from Eric Eichenholtz dated June 29, 2022. Request GRANTED. Defendants' deadline to answer shall be extended until July 22, 2022. SO ORDERED. Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and |

| | | |
|---|---|---|
| | | Thirteenth Judicial Districts) answer due 7/22/2022; Andrea E. Bonina (Personal Capacity) answer due 7/22/2022; Melinda Katz(In her official capacity the District Attorney of Queens County) answer due 7/22/2022; Melinda Katz (Personal Capacity) answer due 7/22/2022; Hector D. LaSalle answer due 7/22/2022; Diana Maxfield Kearse(Personal Capacity) answer due 7/22/2022; Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) answer due 7/22/2022; Georgia Pestana(In her official capacity Corporation Counsel of the City of New York) answer due 7/22/2022; Georgia Pestana(Personal Capacity) answer due 7/22/2022. (Signed by Judge Victor Marrero on 6/30/2022) (vfr) (Entered: 06/30/2022) |
| 07/12/2022 | 100 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR -** NOTICE OF INTERLOCUTORY APPEAL from 94 Order on Motion for Partial Summary Judgment,,,,,. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity). Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Eichenholtz, Eric) Modified on 7/13/2022 (tp) (Entered: 07/12/2022) |
| 07/13/2022 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Eric Eichenholtz to RE-FILE Document No. 100 Notice of Interlocutory Appeal. The filing is deficient for the following reason(s): the wrong individual filer/filers were selected for the appeal - the pdf states that the defendants are only appealing in their personal capacity. Re-file the appeal using the event type Notice of Appeal found under the event list Appeal Documents - attach the correct signed PDF - select the correct named individual filer/filers - select the correct order/judgment being appealed. (tp)** (Entered: 07/13/2022) |
| 07/13/2022 | 101 | NOTICE OF INTERLOCUTORY APPEAL from 94 Order on Motion for Partial Summary Judgment,,,,,. Document filed by Melinda Katz (Personal Capacity), Georgia Pestana(Personal Capacity). Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Eichenholtz, Eric) (Entered: 07/13/2022) |
| 07/13/2022 | | Appeal Fee Due: for 101 Notice of Interlocutory Appeal,.$505.00 Appeal fee due by 7/27/2022..(nd) (Entered: 07/13/2022) |
| 07/13/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 101 Notice of Interlocutory Appeal,..(nd) (Entered: 07/13/2022) |
| 07/13/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 101 Notice of Interlocutory Appeal, filed by Georgia Pestana, Melinda Katz were transmitted to the U.S. Court of Appeals..(nd) (Entered: 07/13/2022) |
| 07/15/2022 | | USCA Appeal Fees received $ 505.00 receipt number 2846 on 7/13/2022 re: 101 Notice of Interlocutory Appeal, filed by Georgia Pestana, Melinda Katz. (tp) (Entered: 07/15/2022) |
| 07/15/2022 | 102 | NOTICE OF APPEARANCE by Rachel J Rodriguez on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Rodriguez, Rachel) (Entered: 07/15/2022) |
| 07/22/2022 | 103 | ANSWER to 59 Complaint,,,,,. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Rodriguez, Rachel) (Entered: 07/22/2022) |

| 07/22/2022 | 104 | ANSWER to 59 Complaint,,,,. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 07/22/2022) |
|---|---|---|
| 07/22/2022 | 105 | ANSWER to 59 Complaint,,,,,. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity)..(Figueira, Elizabeth) (Entered: 07/22/2022) |
| 07/22/2022 | 106 | ANSWER to 59 Complaint,,,,. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 07/22/2022) |
| 07/26/2022 | 107 | ORDER: A Complaint in the above captioned matter was filed on November 4, 2021. (Dkt. No. 1.) Defendants filed Answers to the Complaint on July 22, 2022. (Dkt. Nos. 103, 104, 105, 106.) Accordingly, the parties are hereby directed to submit a joint letter, within thirty (30) days of the date of this Order, addressing the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; (3) the prospect for settlement; and (4) whether the parties consent to proceed for all purposes before the Magistrate Judge designated for this action. The parties are also directed to submit a completed Case Management Plan that provides that discovery is to be completed within four months unless otherwise permitted by the Court. A model Case Management Plan is available on the Court's website: https://nysd.uscourts.gov/hon-victormarrero. Submissions must be made in accordance with Judge Marrero's Emergency Individual Rules and Practices in Light of COVID-19, available at the Court's website. (Signed by Judge Victor Marrero on 7/26/2022) (jca) (Entered: 07/26/2022) |
| 07/29/2022 | 108 | LETTER MOTION to Stay *proceedings pending interlocutory appeal* addressed to Judge Victor Marrero from Krista Friedrich dated July 29, 2022. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 07/29/2022) |
| 08/01/2022 | 109 | ORDER with respect to 108 Letter Motion to Stay re: 108 LETTER MOTION to Stay *proceedings pending interlocutory appeal* addressed to Judge Victor Marrero from Krista Friedrich dated July 29, 2022. Plaintiffs are directed to respond by August 5, 2022, by letter not to exceed four pages, to the matter set forth above by Defendants requesting a stay pending appeal. SO ORDERED. (Signed by Judge Victor Marrero on 8/1/2022) (jca) (Entered: 08/01/2022) |
| 08/01/2022 | | Set/Reset Deadlines: Responses due by 8/5/2022 (jca) (Entered: 08/01/2022) |
| 08/04/2022 | 110 | LETTER addressed to Judge Victor Marrero from Gregory Diskant dated August 4, 2022 re: opposition to City Defendants' July 29, 2022 letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/04/2022) |
| 08/17/2022 | 111 | DECISION AND ORDER granting in part and denying in part 108 Letter Motion to Stay re: 108 LETTER MOTION to Stay *proceedings pending interlocutory appeal* addressed to Judge Victor Marrero from Krista Friedrich dated July 29, 2022. It is hereby ORDERED that the motion for a stay of discovery filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to stay all discovery pending interlocutory appeal (Dkt. No. 108) is DENIED IN PART AND GRANTED IN PART. The requested stay is granted as to any discovery that pertains only to the claims for relief that would be precluded by a favorable appellate decision on the issues of City Defendants' qualified |

| | | |
|---|---|---|
| | | and absolute immunity. The stay is denied as to all other discovery. SO ORDERED. (Signed by Judge Victor Marrero on 8/17/22) (yv) (Entered: 08/17/2022) |
| 08/17/2022 | [112](#) | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Referred to Magistrate Judge Valerie Figueredo. SO ORDERED. (Signed by Judge Victor Marrero on 8/17/22) (yv) (Entered: 08/17/2022) |
| 08/23/2022 | [113](#) | INITIAL CASE MANAGEMENT CONFERENCE ORDER: This action is scheduled for an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure on Thursday, September 29, 2022 at 10:30 a.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335 . Initial Conference set for 9/29/2022 at 10:30 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 8/23/2022) (rro) (Entered: 08/23/2022) |
| 08/25/2022 | [114](#) | JOINT LETTER addressed to Judge Victor Marrero from Counsel dated August 25, 2022 re: Response to the Court's July 26, 2022 Order. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # [1](#) Exhibit Civil Case Management Plan and Scheduling Order).(Diskant, Gregory) (Entered: 08/25/2022) |
| 08/25/2022 | [115](#) | FIRST LETTER MOTION to Adjourn Conference *Scheduled for September 29, 2022* addressed to Magistrate Judge Valerie Figueredo from Elizabeth A. Figueira dated August 25, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 08/25/2022) |
| 08/26/2022 | [116](#) | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: This case is to be tired to a jury. All parties do not consent to trial by a Magistrate Judge under 28 U.S.C. § 636(c). Depositions to be completed by December 23, 2022. Amended Pleadings due by 9/9/2022. Joinder of Parties due by 9/9/2022. Deposition due by 9/9/2022. Fact Discovery due by 12/23/2022. Case Management Conference set for 1/20/2023 at 12:00 PM before Judge Victor Marrero. (Signed by Judge Victor Marrero on 8/26/2022) (kv) Modified on 9/16/2022 (kv). (Entered: 08/26/2022) |
| 08/26/2022 | | Set/Reset Deadlines: Deposition due by 3/23/2023. Expert Discovery due by 3/23/2023. (kv) (Entered: 09/16/2022) |
| 09/06/2022 | [117](#) | INITIAL CASE MANAGEMENT CONFERENCE ORDERgranting [115](#) Letter Motion to Adjourn Conference. This action is rescheduled for an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure on Wednesday, October 12, 2022 at 10:00 a.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335 . Initial Conference set for 10/12/2022 at 10:00 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 9/6/2022) (rro) (Entered: 09/06/2022) |
| 09/09/2022 | [118](#) | PROPOSED STIPULATION AND ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 09/09/2022) |
| 09/12/2022 | [119](#) | JOINT STIPULATION AND ORDER: IT IS HEREBY ORDERED THAT: 1. Plaintiffs and Pestana represent and agree that Plaintiffs' claims against Pestana in her official capacity as Corporation Counsel proceed against Steven Stein Cushman, in his official capacity as New York City's Acting Corporation Counsel in this matter; 2. The Clerk of |

| | | |
|---|---|---|
| | | Court amend the case caption so that Steven Stein Cushman is substituted for Defendant Georgia Pestana for only the claims against Pestana in her official capacity as Corporation Counsel. 3. For the sake of clarity, this Joint Stipulation and Order has no effect on the personal- capacity claims against Pestana, who remains a defendant in her personal capacity. Nor do Plaintiffs seek to bring claims against Steven Stein Cushman in his personal capacity. SO ORDERED. (Signed by Judge Victor Marrero on 9/12/2022) (jca) (Entered: 09/12/2022) |
| 09/22/2022 | [120](#) | NOTICE OF APPEARANCE by Joya C Sonnenfeldt on behalf of Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 09/22/2022) |
| 10/05/2022 | [121](#) | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/05/2022) |
| 10/10/2022 | [122](#) | NOTICE OF APPEARANCE by Gargi Chaudhuri on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Chaudhuri, Gargi) (Entered: 10/10/2022) |
| 10/11/2022 | [123](#) | PROPOSED STIPULATION AND ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/11/2022) |
| 10/11/2022 | [124](#) | PROPOSED PROTECTIVE ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/11/2022) |
| 10/12/2022 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Case Management Conference held on 10/12/2022. (sjo) (Entered: 10/12/2022) |
| 10/12/2022 | [125](#) | ORDER SCHEDULING DISCOVERY CONFERENCES: A conference in this matter is hereby scheduled for Wednesday, November 16, 2022, at 10:00 a.m. Parties are directed to submit a joint status letter no later than Thursday, November 10, 2022 by 5:00 p.m., identifying any issues the parties wish to discuss at the conference. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335 . Additional Conferences are also scheduled for: Thursday, December 15, 2022 at 10:00 a.m., Monday, January 16, 2023 at 10:00 a.m., and Wednesday, February 15, 2023 at 10:00 a.m. Status Conference set for 12/15/2022 at 10:00 AM before Magistrate Judge Valerie Figueredo. Telephone Conference set for 11/16/2025 at 10:00 AM before Magistrate Judge Valerie Figueredo. Status Conference set for 1/16/2023 at 10:00 AM before Magistrate Judge Valerie Figueredo. Status Conference set for 2/15/2023 at 10:00 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
| 10/12/2022 | [126](#) | JOINT STIPULATION AND ORDER REGARDING CLAWBACK PROCEDURE:This Stipulation and Order shall apply to all documents and information, including electronically stored information, produced or disclosed by the parties in response to discovery requests and demands; affidavits and declarations; testimony adduced at trial, deposition, or during any hearing; and all other information or material otherwise disclosed, produced, made available for inspection, or submitted by the parties in this litigation (collectively, "Discovery Material"). Any party's production or disclosure in this proceeding of information or material that is protected by any privilege or protection recognized by law (collectively, "Protected Material"), whether inadvertent or otherwise, shall not waive any claim of privilege or protection applicable to that material or its |

|  |  |  |
|---|---|---|
|  |  | subject matter in this Action or any other federal or state proceeding and shall be governed by the procedures set forth herein. Any party that produces or discloses Protected Material (the "Producing Party"), or any other party holding a privilege, protection, or other interest against disclosure, may (i) notify in writing the party receiving Protected Material (the "Receiving Party") that Protected Material was produced or disclosed and that it does not intend to waive the applicable privilege, protection, or interest against disclosure; and (ii) demand that the Receiving Party return or destroy the Protected Material (the "Clawback Demand"). Such demand shall identify the Protected Material to be returned or destroyed (including by the Bates number of the document or, if no Bates number appears on the document, information sufficient to identify the document or information) and the basis for the claim of privilege or protection and further set forth in this Order. (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
| 10/12/2022 | 127 | CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
| 10/12/2022 | 128 | REPORT OF RULE 26(f) CONFERENCE AND CASE MANAGEMENT PLAN: All fact discovery must be completed by March 23, 2023. Depositions shall be completed by March 23, 2023 and limited to no more than ten depositions per party. Absent an agreement between the parties or an order from the Court, non-party depositions shall follow initial party depositions. Expert discovery shall be completed by March 23, 2023. The parties anticipate that this case will be ready for trial 60 days after the resolution of any motions for summary judgment or June 19, 2023, if no motions are made. The parties anticipate that the trial of this case will require five days. The parties do not consent to a trial before a Magistrate Judge at this time. The parties request a jury trial and further set forth in this Order. Deposition due by 3/23/2023. Fact Discovery due by 3/23/2023. Expert Discovery due by 3/23/2023. Ready for Trial by 6/19/2023. (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
| 10/17/2022 | 129 | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 10/12/2022 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/7/2022. Redacted Transcript Deadline set for 11/17/2022. Release of Transcript Restriction set for 1/15/2023. (js) (Entered: 10/17/2022) |
| 10/17/2022 | 130 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TELEPHONE CONFERENCE proceeding held on 10/12/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (js) (Entered: 10/17/2022) |
| 10/21/2022 | 131 | PROPOSED STIPULATION AND ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/21/2022) |
| 10/24/2022 | 132 | JOINT STIPULATION AND ORDER REGARDING DISCOVERY PROCEDURE: NOW THEREFORE, it is hereby STIPULATED AND ORDERED: Each Party will continue its retention practices with regard to all Documents and ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of |

| | | |
|---|---|---|
| | | Civil Procedure, including Federal Rule of Civil Procedure 37(e). By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege and further set forth in this Order. (Signed by Magistrate Judge Valerie Figueredo on 10/24/2022) (rro) (Entered: 10/24/2022) |
| 11/04/2022 | 133 | ORDER SCHEDULING DISCOVERY CONFERENCES: Due to an unforeseen scheduling conflict, the conference scheduled for Wednesday, November 16, 2022, at 10:00 a.m. has been rescheduled for Monday, November 21, 2022, at 3:00 p.m. Parties are directed to submit a joint status letter no later than Monday, November 14, 2022 by 5:00 p.m., identifying any issues the parties wish to discuss at the conference. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335. Telephone Conference set for 11/21/2022 at 03:00 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 11/4/2022) (rro) (Entered: 11/04/2022) |
| 11/11/2022 | 134 | JOINT LETTER addressed to Magistrate Judge Valerie Figueredo from Counsel dated November 11, 2022 re: Joint Status Letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Shane, Elisabeth) (Entered: 11/11/2022) |
| 11/21/2022 | 135 | ORDER SCHEDULING SETTLEMENT CONFERENCE AND STAYING CASE DEADLINES: A settlement conference in this matter is scheduled for Thursday, January 19, 2023, at 2:30 p.m., in Courtroom 17-A, United States Courthouse, 500 Pearl Street, New York, New York. Counsel and parties are required to follow the Court's COVID-safety protocols and should review the Court's website in advance of the conferences for the most up to date information. Corporate parties must send the person with decision making authority to settle the matter to the conference. The parties are instructed to complete the Settlement Conference Summary Report and prepare pre-conference submissions in accordance with the Judge Figueredo's Individual Rules of Practice. Pre-conference submissions must be received by the Court no later than Thursday, January 12, 2023. Pending outcome of the settlement conference, all case deadlines in ECF No. 128 are hereby stayed sine die, except that Plaintiffs shall serve their interrogatory responses by November 30, 2022 (as represented at the November 21, 2022 conference before this Court). SO ORDERED. Settlement Conference set for 1/19/2023 at 02:30 PM in Courtroom 17A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 11/21/2022) (ama) (Entered: 11/21/2022) |
| 11/21/2022 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Status Conference held on 11/21/2022. (sjo) (Entered: 11/22/2022) |
| 12/05/2022 | 136 | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 11/21/2022 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/27/2022. Redacted Transcript Deadline set for 1/5/2023. Release of Transcript Restriction set for 3/6/2023. (js) (Entered: 12/05/2022) |
| 12/05/2022 | 137 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TELEPHONE CONFERENCE proceeding held on 11/21/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely |

| | | |
|---|---|---|
| | | electronically available to the public without redaction after 90 calendar days....(js) (Entered: 12/05/2022) |
| 12/08/2022 | [138](#) | ORDER: The discovery conference for Thursday, December 15, 2022 at 10:00 a.m. is confirmed. Parties are directed to submit a joint status letter no later than Monday, December 12, 2022 by 5:00 p.m., identifying any issues the parties wish to discuss at the conference. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335 . In light of the federal holiday, the conference on Monday, January 16, 2023 at 10:00 a.m. is cancelled. Telephone Conference set for 12/15/2022 at 10:00 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 12/8/2022) (rro) (Entered: 12/08/2022) |
| 12/09/2022 | [139](#) | JOINT MOTION to Adjourn Conference *12/15/22*. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 12/09/2022) |
| 12/12/2022 | [140](#) | ORDER granting [139](#) Letter Motion to Adjourn Conference. ENDORSEMENT: Application Granted. (Signed by Magistrate Judge Valerie Figueredo on 12/12/2022) (rro) (Entered: 12/12/2022) |
| 12/22/2022 | [141](#) | JOINT LETTER MOTION to Adjourn Conference *scheduled for 1/20/23* addressed to Judge Victor Marrero from Joya Sonnenfeldt dated 12/22/22. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 12/22/2022) |
| 12/23/2022 | [142](#) | ORDER granting [141](#) Letter Motion to Adjourn Conference. The status conference scheduled for January 20, 2023 is hereby adjourned die die pending the January 19 settlement conference with the Magistrate Judge. Should the parties fail to settle, the parties shall propose a new date for a status conference within one week of the entry of the new discovery schedule. Request GRANTED. SO ORDERED. (Signed by Judge Victor Marrero on 12/23/2022) (ks) (Entered: 12/23/2022) |
| 01/03/2023 | [143](#) | NOTICE OF APPEARANCE by Shelley Attadgie on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Attadgie, Shelley) (Entered: 01/03/2023) |
| 01/19/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Settlement Conference held on 1/19/2023. (sjo) (Entered: 01/20/2023) |
| 01/20/2023 | [144](#) | ORDER: The court held a settlement conference on January 19, 2023. Because settlement discussions are ongoing, the stay of all case deadlines put in place by the Order issued on November 21, 2022 (see ECF NO. 135) remains in place. A conference with Defendants, for purposes of continuing settlement discussions, is scheduled for March 2, 2023 at 2:30 p.m. Defendants will receive a zoom link for the remote conference via e-mail a few days before March 2. Following the completion of the March 2 conference, I will schedule a separate conference to continue settlement discussion with Plaintiffs. Settlement Conference set for 3/2/2023 at 02:30 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 1/20/2023) (rro) (Entered: 01/20/2023) |
| 02/02/2023 | | Minute Entry--The Discovery conference schedule for February 15, 2023 is canceled. (sjo) (Entered: 02/02/2023) |
| 02/28/2023 | [145](#) | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated February 28, 2023 re: Settlement. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. |

|  |  | Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/28/2023) |
|---|---|---|
| 02/28/2023 | 146 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated February 28, 2023 re: Right of Access. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/28/2023) |
| 03/02/2023 |  | Minute Entry--The settlement conference scheduled for today March 2, 2023 at 2:30 p.m. has been canceled. (sjo) (Entered: 03/02/2023) |
| 03/02/2023 | 147 | ORDER On February 28, 2023, counsel for plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, Steven Zeidman, and non-profit organization Civil Rights Corps (collectively, "Plaintiffs") filed a letter requesting a pre-motion conference regarding Plaintiffs' proposed motion for partial summary judgment on Count IV of Plaintiffs' Complaint. (Dkt. No. 146.) Within seven (7) days of the date of this Order, the parties shall submit a joint letter, not to exceed five (5) pages, setting forth the issue, the dispute, and the parties' respective positions on the proposed motion. Upon review of the joint letter, the Court will determine whether a pre-motion conference is warranted. SO ORDERED. (Signed by Judge Victor Marrero on 3/2/2023) (jca) (Entered: 03/02/2023) |
| 03/03/2023 | 148 | LETTER MOTION for Conference addressed to Magistrate Judge Valerie Figueredo from Mark M. Elliott dated March 3, 2023. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Rodriguez, Rachel) (Entered: 03/03/2023) |
| 03/06/2023 | 149 | LETTER RESPONSE to Motion addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated March 6, 2023 re: 148 LETTER MOTION for Conference addressed to Magistrate Judge Valerie Figueredo from Mark M. Elliott dated March 3, 2023. . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/06/2023) |
| 03/06/2023 | 150 | MEMO ENDORSEMENT re: 149 LETTER RESPONSE to Motion addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated March 6, 2023; granting 148 Letter Motion for Conference re: 148 LETTER MOTION for Conference addressed to Magistrate Judge Valerie Figueredo from Mark M. Elliott dated March 3, 2023. ENDORSEMENT: A conference in this matter is hereby scheduled for March 21, 2023 at 2:30 p.m. to discuss the issues raised in the parties' letters at ECF Nos. 148 and 149, including the issue of the stay. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808-6929; access code 9781335 . The Clerk of Court is directed to terminate the motion at ECF No. 148. SO ORDERED. Telephone Conference set for 3/21/2023 at 02:30 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 3/6/2023) (tg) (Entered: 03/06/2023) |
| 03/09/2023 | 151 | JOINT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant on behalf of all parties dated March 9, 2023 re: position letter pursuant to the order of March 2, 2023 147 . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/09/2023) |
| 03/15/2023 | 152 | ORDER On March 9, 2023, the parties in this matter filed a joint letter (Dkt. No. 151) in response to this Court's Order dated March 2, 2023 (Dkt. No. 147). The letter stated the parties' respective positions on Plaintiffs' proposed motion for partial summary judgment |

| | | |
|---|---|---|
| | | on Count IV of Plaintiffs' Complaint and further indicated that a status conference will be held before Magistrate Judge Valerie Figueredo on March 21, 2023 at which the parties will discuss the scope of the discovery remaining in this matter. Having reviewed the parties' letter, the Court hereby directs the parties to file a joint letter within three (3)days of the March 21 status conference, providing an updateon the status of discovery and schedule for completion. SO ORDERED. (Signed by Judge Victor Marrero on 3/15/2023) (jca) (Entered: 03/15/2023) |
| 03/21/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Telephone Conference held on 3/21/2023. (sjo) (Entered: 03/21/2023) |
| 03/21/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Telephone Conference held on 3/21/2023. (sjo) (Entered: 03/22/2023) |
| 03/23/2023 | 153 | LETTER MOTION for Discovery *pursuant to the 3/21/23 conference* addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated March 23, 2023. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/23/2023) |
| 03/24/2023 | 154 | ORDER granting 153 Letter Motion for Discovery. It is ORDERED that discovery shall be limited to documents regarding the attorney grievance committee procedures relating to Count IV of Plaintiffs' Complaint, and shall be completed on or before May 22, 2023. It is further ORDERED that the State Defendants shall produce, on or before April 24, 2023, documents about the attorney grievance committee procedures, including those relevant to supporting or opposing any motion for summary judgment on Count IV of the Complaint. It is further ORDERED that Plaintiffs and State Defendants shall, within the same timeframe, identify any declarant on whom they intend to rely in support of or in opposition to any motion for summary judgment on Count IV of the Complaint. It is further ORDERED that Plaintiffs and State Defendants may depose any individuals identified in the prior paragraph on issues relating to attorney grievance committee procedures, including those relevant to supporting or opposing any motion for summary judgment on Count IV of the Complaint, and that no other topics or depositions will be permitted without leave of the Court. At the conclusion of the discovery period, on or before May 26, 2023, the parties will jointly update the District Court and Plaintiffs will renew their request to file a summary judgment motion. State Defendants will not oppose Plaintiffs' post-discovery request to move for summary judgment and reserve the right to request permission to cross-move for summary judgment at the conclusion of the discovery period. (Signed by Magistrate Judge Valerie Figueredo on 3/24/2023) (rro) (Entered: 03/24/2023) |
| 03/24/2023 | 155 | JOINT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated March 24, 2023 re: status discovery update and schedule for completion per Order 152 . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/24/2023) |
| 03/24/2023 | | Set/Reset Deadlines: Discovery due by 5/22/2023. (rro) (Entered: 04/04/2023) |
| 03/28/2023 | 156 | **FILING ERROR - DEFICIENT DOCKET ENTRY - SIGNATURE ERROR -** STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above-captioned action is voluntarily dismissed, without prejudice against the defendant(s) Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the |

| | | |
|---|---|---|
| | | Second, Eleventh and Thirteenth Judicial District) pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Diskant, Gregory) Modified on 3/29/2023 (tp). (Entered: 03/28/2023) |
| 03/29/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT VOLUNTARY DISMISSAL. Notice to Attorney Gregory Diskant. RE-FILE Document No. <u>156</u> Stipulation of Voluntary Dismissal. The filing is deficient for the following reason(s): the stipulation of voluntary dismissal was not physically signed by all parties who have appeared. Re-file the document using the event type Stipulation of Voluntary Dismissal found under the event list Other Documents - select the correct filer/filers - select the correct party/parties the voluntary dismissal is against - and attach the correct signed (scanned *ink* signature image) PDF. (tp)** (Entered: 03/29/2023) |
| 03/29/2023 | <u>157</u> | STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above-captioned action is voluntarily dismissed, without prejudice against the defendant(s) Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Diskant, Gregory) (Entered: 03/29/2023) |
| 03/30/2023 | | **\*\*\*NOTICE TO COURT REGARDING STIPULATION OF VOLUNTARY DISMISSAL Document No. <u>157</u> Stipulation of Voluntary Dismissal, was reviewed and referred to Judge Victor Marrero for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (tp)** (Entered: 03/30/2023) |
| 03/30/2023 | <u>158</u> | STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A) (ii): IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that Counts I, II, and Vin the above-captioned action are voluntarily dismissed, without prejudice against the State Defendants (Diana Maxfield Kearse, Justice Hector D. LaSalle, and Andrea E. Bonina) pursuant to the Federal Rules of Civil Procedure 41(a)(l)(A)(ii). Additionally, all claims brought against Ms. Kearse and Ms. Bonina, in both their official and personal capacities, are voluntarily dismissed, without prejudice. SO ORDERED. Diana Maxfield Kearse (Personal Capacity), Diana Maxfield Kearse (In her official capacity Chief Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District), Andrea E. Bonina (Personal Capacity) and Andrea E. Bonina (In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) terminated. (Signed by Judge Victor Marrero on 3/30/2023) (ate) (Entered: 03/30/2023) |
| 05/16/2023 | <u>159</u> | TRANSCRIPT of Proceedings re: Telephone Conference held on 3/21/2023 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2023. |

| | | |
|---|---|---|
| | | Redacted Transcript Deadline set for 6/16/2023. Release of Transcript Restriction set for 8/14/2023. (nmo) (Entered: 05/16/2023) |
| 05/16/2023 | [160](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Telephone Conference proceeding held on 03/21/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (nmo) (Entered: 05/16/2023) |
| 05/19/2023 | [161](#) | LETTER MOTION for Extension of Time addressed to Magistrate Judge Valerie Figueredo from Gregory Diskant dated May 19, 2023. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 05/19/2023) |
| 05/22/2023 | [162](#) | ORDER granting [161](#) Letter Motion for Extension of Time. Application Granted. The extension requested herein is granted. The Clerk of Court is directed to terminate the motion at ECF No. 161.. (Signed by Magistrate Judge Valerie Figueredo on 5/22/2023) Discovery due by 6/12/2023. (ks) (Entered: 05/22/2023) |
| 05/25/2023 | [163](#) | CONSENT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated May 25, 2023 re: the status of discovery. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 05/25/2023) |
| 06/01/2023 | [164](#) | CONSENT LETTER addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated June 1, 2023 re: the attached Joint Stipulation. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # [1](#) Text of Proposed [Proposed] Joint Stipulation regarding Discovery).(Diskant, Gregory) (Entered: 06/01/2023) |
| 06/05/2023 | [165](#) | STIPULATION JOINT REGARDING DISCOVERY: IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel for the Parties as follows: 1. State Defendant will produce the Grievance Committee Manuals with the designation "Attorneys' Eyes Only," see ECF No. 127, in redacted form to protect attorney work product and the attorney client privilege. 2. The discovery period has been extended from May 22, 2023 to June 12, 2023, to allow sufficient time for State Defendant to produce the Grievance Committee Manuals in redacted form, and for Plaintiffs to review the documents prior to the anticipated deposition of Ms. Kearse on June 8, 2023. (ECF No. 162). 3. Neither party will request additional discovery, nor seek to depose additional witnesses following production of the Grievance Committee Manuals and the deposition of Ms. Kearse, except that Plaintiffs shall produce all documents obtained directly from the Second Department. 4. In exchange for State Defendant's production of the redacted Grievance Committee Manuals, Plaintiffs waive the right to challenge the propriety of any redactions provided that such redactions were made in good faith to protect attorney work product or documents otherwise subject to attorney-client privilege. So Ordered. ( Deposition due by 6/8/2023., Discovery due by 6/12/2023.) (Signed by Magistrate Judge Valerie Figueredo on 6/5/2023) (tg) (Entered: 06/05/2023) |
| 06/16/2023 | [166](#) | JOINT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated June 16, 2023 re: update on the status of discovery and proposed summary judgment motions. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 06/16/2023) |

| | | |
|---|---|---|
| 06/20/2023 | [167](#) | MEMO ENDORSEMENT on re: [166](#) Letter, filed by Civil Rights Corps., Steven Zeidman, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Cynthia Godsoe ENDORSEMENT Request GRANTED. The Court hereby grants the parties' request to file a motion and cross-motion for summary judgment on Count IV of Plaintiffs' Complaint in accordance with the briefing schedule proposed above. SO ORDERED. ( Cross Motions due by 9/8/2023., Motions due by 7/28/2023., Replies due by 11/10/2023., Responses due by 10/20/2023) (Signed by Judge Victor Marrero on 6/20/2023) (jca) (Entered: 06/20/2023) |
| 06/21/2023 | [168](#) | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 3/21/2023 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/12/2023. Redacted Transcript Deadline set for 7/24/2023. Release of Transcript Restriction set for 9/19/2023.(js) (Entered: 06/21/2023) |
| 06/21/2023 | [169](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 3/21/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(js) (Entered: 06/21/2023) |
| 07/19/2023 | [170](#) | MOTION for Gargi Chaudhuri to Withdraw as Attorney . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Chaudhuri, Gargi) (Entered: 07/19/2023) |
| 07/20/2023 | [171](#) | MEMO ENDORSEMENT granting [170](#) Motion to Withdraw as Attorney. ENDORSEMENT: Application Granted. The Clerk of Court is directed to terminate the motion at ECF No. 170 and remove Gargi Chaudhuri from this action's service list. Attorney Gargi Chaudhuri terminated. (Signed by Magistrate Judge Valerie Figueredo on 7/20/2023) (rro) (Entered: 07/20/2023) |
| 07/20/2023 | [172](#) | MEMO ENDORSEMENT on re: [170](#) MOTION for Gargi Chaudhuri to Withdraw as Attorney . filed by Civil Rights Corps., Steven Zeidman, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Cynthia Godsoe. ENDORSEMENT: SO ORDERED. (Signed by Judge Victor Marrero on 7/20/2023) (ate) (Entered: 07/20/2023) |
| 07/28/2023 | [173](#) | MOTION for Summary Judgment . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 07/28/2023) |
| 07/28/2023 | [174](#) | RULE 56.1 STATEMENT. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman.. (Diskant, Gregory) (Entered: 07/28/2023) |
| 07/28/2023 | [175](#) | MEMORANDUM OF LAW in Support re: [173](#) MOTION for Summary Judgment . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 07/28/2023) |
| 07/28/2023 | [176](#) | DECLARATION of Andrew Wells in Support re: [173](#) MOTION for Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # [1](#) Exhibit 1 - Sligh-Grievance, # [2](#) Exhibit 2 - Testagrossa-Grievance, # [3](#) Exhibit 3 - 2021.06.11 |

| | | |
|---|---|---|
| | | Kearse Letter, # [4](#) Exhibit 4 - Production no. 2DDEPT000001-000137, # [5](#) Exhibit 5 - Production no. 2DDEPT000850-000856, # [6](#) Exhibit 6 - Production no. 2DDEPT000843-000849, # [7](#) Exhibit 7 - Production no. 2DDEPT000817-000818, # [8](#) Exhibit 8 - Kearse Dep. Transcript, # [9](#) Exhibit 9 - 2016 Annual Report on Lawyer Discipline, # [10](#) Exhibit 10 - 2017 Annual Report on Lawyer Discipline, # [11](#) Exhibit 11 - 2018 Annual Report on Lawyer Discipline, # [12](#) Exhibit 12 - 2019 Annual Report on Lawyer Discipline, # [13](#) Exhibit 13 - 2020 Annual Report on Lawyer Discipline, # [14](#) Exhibit 14 - Production no. 2DDEPT000304-000309, # [15](#) Exhibit 15 - Production no. 2DDEPT000250-000292, # [16](#) Exhibit 16 - Production no. 2DDEPT000909-000929, # [17](#) Exhibit 17 - Kearse Initial Disclosures, # [18](#) Exhibit 18 - LaSalle Bonina Initial Disclosures, # [19](#) Exhibit 19 - Bill Jacket L. 1909 (1945), # [20](#) Exhibit 20 - Notice of Entry and Decision & Order, # [21](#) Exhibit 21 - Email Exchange Exhibit, # [22](#) Exhibit 22 - Matter of Kurtzrock Materials Exhibit).(Diskant, Gregory) (Entered: 07/28/2023) |
| 08/03/2023 | [177](#) | MOTION for Ira M. Feinberg to Withdraw as Attorney . Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 08/03/2023) |
| 08/03/2023 | [178](#) | DECLARATION of Ira M. Feinberg in Support re: [177](#) MOTION for Ira M. Feinberg to Withdraw as Attorney .. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 08/03/2023) |
| 08/04/2023 | [179](#) | MEMO ENDORSEMENT granting [177](#) Motion to Withdraw as Attorney. ENDORSEMENT: Application Granted. The Clerk of Court is directed to terminate the motion at ECF No. 177 and remove Mr. Feinberg from this action's service list. Attorney Ira Martin Feinberg terminated (Signed by Magistrate Judge Valerie Figueredo on 8/4/2023) (rro) (Entered: 08/04/2023) |
| 08/04/2023 | [180](#) | NOTICE OF APPEARANCE by David A. Schulz on behalf of Floyd Abrams Institute for Freedom of Expression..(Schulz, David) (Entered: 08/04/2023) |
| 08/04/2023 | [181](#) | LETTER MOTION to File Amicus Brief *in support of plaintiffs' motion for summary judgment (ECF 173)* addressed to Judge Victor Marrero from David A. Schulz dated August 4, 2023. Document filed by Floyd Abrams Institute for Freedom of Expression. (Attachments: # [1](#) Exhibit Proposed Brief of Floyd Abrams Institue for Freedom of Expresson as Amicus Curiae).(Schulz, David) (Entered: 08/04/2023) |
| 08/04/2023 | [182](#) | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Floyd Abrams Institute for Freedom of Expression..(Schulz, David) (Entered: 08/04/2023) |
| 08/07/2023 | [183](#) | ORDER granting [181](#) Letter Motion to File Amicus Brief. Request GRANTED. The Floyd Abrams Institute's request for leave to file an amicus brief is granted. SO ORDERED. (Signed by Judge Victor Marrero on 8/7/2023) (jca) (Entered: 08/07/2023) |
| 08/08/2023 | [184](#) | BRIEF re: [173](#) MOTION for Summary Judgment . *Amicus brief in support of plaintiffs' motion for summary judgment on claim four*. Document filed by Floyd Abrams Institute for Freedom of Expression..(Schulz, David) (Entered: 08/08/2023) |
| 08/25/2023 | [185](#) | LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23., LETTER MOTION for Leave to File Excess Pages addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23. Document filed by Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 08/25/2023) |
| 08/28/2023 | [186](#) | LETTER RESPONSE in Opposition to Motion addressed to Judge Victor Marrero from Gregory Diskant dated August 28, 2023 re: [185](#) LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant |

| | | |
|---|---|---|
| | | Justice LaSalle dated 8/25/23. LETTER MOTION for Leave to File Excess Pages addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23. . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/28/2023) |
| 08/29/2023 | 187 | ORDER granting 185 Letter Motion for Leave to File Excess Pages. The Court hereby grants defendant Justice LaSalle leave to submit a memorandum of law not to exceed 35 pages. SO ORDERED. (Signed by Judge Victor Marrero on 8/29/2023) (jca) (Entered: 08/29/2023) |
| 08/30/2023 | 188 | ORDER granting 185 Letter Motion for Extension of Time. The Court hereby grants the above proposed extension of the summary judgment briefing schedule. SO ORDERED. (Signed by Judge Victor Marrero on 8/30/2023) (jca) (Entered: 08/30/2023) |
| 08/30/2023 | | Set/Reset Deadlines: Cross Motions due by 9/22/2023. Responses due by 11/3/2023 Replies due by 11/24/2023. (jca) (Entered: 08/30/2023) |
| 09/14/2023 | 189 | JOINT LETTER MOTION for Extension of Time *of the summary judgment briefing schedule* addressed to Judge Victor Marrero from Gregory L. Diskant dated September 14, 2023. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 09/14/2023) |
| 09/19/2023 | 190 | ORDER granting 189 Letter Motion for Extension of Time. Request GRANTED. The Court hereby approves the above jointly proposed extension of the summary judgment briefing schedule. SO ORDERED. Cross Motions due by 10/6/2023. (Signed by Judge Victor Marrero on 9/19/2023) (jca) (Entered: 09/19/2023) |
| 09/19/2023 | | Set/Reset Deadlines: Responses due by 11/17/2023 Replies due by 12/15/2023. (jca) (Entered: 09/19/2023) |
| 10/06/2023 | 191 | CROSS MOTION for Summary Judgment *on the Fourth Claim*. Document filed by Hector D. LaSalle. Responses due by 11/17/2023.(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 192 | DECLARATION of Andrea E. Bonina in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle.. (Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 193 | DECLARATION of Diana Maxfield Kearse in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle.. (Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 194 | DECLARATION of Darrell M. Joseph in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle. (Attachments: # 1 Exhibit A - 2d Dept Website Instructions).(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 195 | DECLARATION of Justice Hector D. LaSalle in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle.. (Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 196 | DECLARATION of Catherine A. Sheridan in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle.. (Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 197 | DECLARATION of Joya C. Sonnenfeldt in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle. |

|  |  |  |
|---|---|---|
|  |  | (Attachments: # [1](#) Exhibit A - Ch. 95 of 1895 Legislature, # [2](#) Exhibit B - Sect. 68 Code Enacted 1876, # [3](#) Exhibit C - 1945 Bill Jacket, # [4](#) Exhibit D - Tenth Annual Report (1944), # [5](#) Exhibit E - Orientation Excerpt, # [6](#) Exhibit F - Lippman Report Excerpt, # [7](#) Exhibit G - Statewide Rules Press Release, # [8](#) Exhibit H - Manual Vol. 1 Excerpts, # [9](#) Exhibit I - Ch. 675 Laws of NY, # [10](#) Exhibit J - Kearse Dep. Tr. Excerpts, # [11](#) Exhibit K - First Dept. Website, # [12](#) Exhibit L - 2d Dept. Website, # [13](#) Exhibit M - 3rd Dept. Website, # [14](#) Exhibit N - 4th Dept. Website, # [15](#) Exhibit O - Ch. 295 1921 Law). (Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | [198](#) | RULE 56.1 STATEMENT. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | [199](#) | MEMORANDUM OF LAW in Support re: [191](#) CROSS MOTION for Summary Judgment *on the Fourth Claim. And in Opposition to Motion for Summary Judgment ECF No. 173*. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | [200](#) | COUNTER STATEMENT TO [174](#) Rule 56.1 Statement. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 11/15/2023 | [201](#) | NOTICE OF APPEARANCE by Andrew H Wells, Jr on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Wells, Andrew) (Entered: 11/15/2023) |
| 11/17/2023 | [202](#) | REPLY MEMORANDUM OF LAW in Support re: [173](#) MOTION for Summary Judgment . *and in Opposition to State Defendant's Cross-Motion for Summary Judgment on the Fourth Claim for Relief* [191](#) . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | [203](#) | COUNTER STATEMENT TO [198](#) Rule 56.1 Statement. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | [204](#) | REPLY AFFIRMATION of Shelley R. Attadgie in Support re: [173](#) MOTION for Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # [1](#) Exhibit 1, Emails between March 21-23, 2023, # [2](#) Exhibit 2, Email by Plaintiffs to the Grievance Committee, # [3](#) Exhibit, Excerpt from Grievance Committee Manual, April 2019).(Attadgie, Shelley) (Entered: 11/17/2023) |
| 12/15/2023 | [205](#) | REPLY MEMORANDUM OF LAW in Support re: [191](#) CROSS MOTION for Summary Judgment *on the Fourth Claim*. . Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 12/15/2023) |
| 02/13/2024 | [206](#) | MANDATE of USCA (Certified Copy) as to [101](#) Notice of Interlocutory Appeal, filed by Georgia Pestana, Melinda Katz. USCA Case Number 22-1520. The parties in the above-referenced case have filed a stipulation withdrawing this appeal pursuant to FRAP 42. The stipulation is hereby "So Ordered".. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 2/12/2024..(nd) (Entered: 02/13/2024) |
| 04/08/2024 | [207](#) | STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above-captioned action is voluntarily dismissed, with prejudice against the defendant(s) Steven Stein Cushman, Melinda Katz (Personal Capacity), Georgia Pestana pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith |

| | | |
|---|---|---|
| | | Futrell. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Diskant, Gregory) (Entered: 04/08/2024) |
| 04/09/2024 | | **\*\*\*NOTICE TO COURT REGARDING STIPULATION OF VOLUNTARY DISMISSAL Document No. 207 Stipulation of Voluntary Dismissal was reviewed and referred to Judge Victor Marrero for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (km)** (Entered: 04/09/2024) |
| 04/09/2024 | 208 | STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii) IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that upon reaching a settlement agreement, all claims in the above-captioned action are voluntarily dismissed, with prejudice, against the City Defendants (Steven Stein Cushman, Georgia Pestana, and Melinda Katz) pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii). SO ORDERED. (Signed by Judge Victor Marrero on 4/9/2024) (jca) (Entered: 04/09/2024) |
| 07/22/2024 | 209 | DECISION AND ORDER granting in part and denying in part 173 Motion for Summary Judgment; denying 191 Motion for Summary Judgment. For the foregoing reasons, it is hereby ORDERED that motion for summary judgment (Dkt. No. 191) filed by Defendant Hector D. LaSalle ("Defendant") is DENIED; and it is further ORDERED that the motion for summary judgment (Dkt. No. 174) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") is GRANTED IN PART and DENIED IN PART; and it is further DECLARED that a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in the SecondJudicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Second Department"), whether before Justices of the Second Department or a special referee, considering imposition of public discipline related to the twenty-one grievance complaints (the "Grievance Complaints") that Plaintiffs filed on May 3, 2021, and (2) documents necessary to understand those hearings, including court orders, motions and related submissions, documentary evidence, and docket sheets; and it is further DECLARED that a presumptive First Amendment Right of Access applies to dispositions made by the Attorney Grievance Committee f or Second, Eleventh and Thirteenth Judicial Districts (the "Committee") pursuant to 22 N. Y. C. R.R § 1240. 7 (d) (2) related to the Grievance Complaints; and it is further DECLARED that Plaintiffs' access to the proceedings and records referenced herein may not be restricted absent specific, on-the-record findings by either the Committee or the Second Department, as appropriate, that (1) restrictions serve higher values that would be prejudiced by disclosure; (2) restrictions on disclosure are no more extensive thannecessary to protect those higher values; and (3) that alternatives to restriction have been considered and would not reasonably protect those higher values. The Clerk of Court is respectfully directed to enter declaratory judgment to the effect of the foregoing Order and to close all outstanding motions and close this case. SO ORDERED. (Signed by Judge Victor Marrero on 7/22/2024) (jca) Transmission to Orders and Judgments Clerk for processing. (Entered: 07/22/2024) |
| 07/22/2024 | 210 | CLERK'S JUDGMENT re: 209 Decision & Order. in favor of Civil Rights Corps., Abbe Smith, Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Steven Zeidman against Hector D. LaSalle. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Decision and Order dated July 22, 2024, the motion for summary judgment (Dkt. No. 191) filed by Defendant Hector D. LaSalle ("Defendant") is DENIED; and it is further ORDERED that the motion for summary judgment (Dkt. No. 174) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") is GRANTED IN PART and DENIED IN PART; and it is further DECLARED that a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in |

the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Second Department"), whether before Justices of the Second Department or a special referee, considering imposition of public discipline related to the twenty-one grievance complaints (the "Grievance Complaints") that Plaintiffs filed on May 3, 2021, and (2) documents necessary to understand those hearings, including court orders, motions and related submissions, documentary evidence, and docket sheets; and it is further DECLARED that a presumptive First Amendment Right of Access applies to dispositions made by the Attorney Grievance Committee f or Second, Eleventh and Thirteenth Judicial Districts (the "Committee") pursuant to 22 N. Y. C. R.R § 1240. 7 (d) (2) related to the Grievance Complaints; and it is further DECLARED that Plaintiffs' access to the proceedings and records referenced herein may not be restricted absent specific, on-the-record findings by either the Committee or the Second Department, as appropriate, that (1) restrictions serve higher values that would be prejudiced by disclosure; (2) restrictions on disclosure are no more extensive than necessary to protect those higher values; and (3) that alternatives to restriction have been considered and would not reasonably protect those higher values; accordingly, the case is closed. (Signed by Acting Clerk of Court Daniel Ortiz on 7/22/2024) (nd) (Entered: 07/22/2024)

| | | |
|---|---|---|
| 08/05/2024 | 211 | MOTION for Attorney Fees . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman.. (Diskant, Gregory) (Entered: 08/05/2024) |
| 08/05/2024 | 212 | MEMORANDUM OF LAW in Support re: 211 MOTION for Attorney Fees . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/05/2024) |
| 08/05/2024 | 213 | DECLARATION of Gregory L. Diskant in Support re: 211 MOTION for Attorney Fees .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit A, Timekeeper records from June 2, 2021 - December 19, 2022, # 2 Exhibit B, Timekeeper records from December 20, 2022 - November 21, 2023, # 3 Exhibit C, Invoices for costs and charges between June 2, 2021 and June 28, 2024, # 4 Exhibit D, Gregory L. Diskants firm biography, # 5 Exhibit E, Jonah Knoblers firm biography, # 6 Exhibit F, Jeffrey Kinkles firm biography, # 7 Exhibit G, Jeffrey Skinners firm biography, # 8 Exhibit H, Jake Walter-Warners firm biography, # 9 Exhibit I, Esther Kims firm biography, # 10 Exhibit J, Jacqueline Brandons firm biography, # 11 Exhibit K, Elisabeth Shanes firm biography, # 12 Exhibit L, Shelley Attadgies firm biography, # 13 Exhibit M, Gargi Chaudhuris firm biography).(Diskant, Gregory) (Entered: 08/05/2024) |
| 08/14/2024 | 214 | MOTION for Elisabeth Shane to Withdraw as Attorney . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Shane, Elisabeth) (Entered: 08/14/2024) |
| 08/14/2024 | 215 | LETTER MOTION for Extension of Time to File Response/Reply as to 211 MOTION for Attorney Fees . addressed to Judge Victor Marrero from Justice LaSalle dated 8/14/24. Document filed by Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 08/14/2024) |
| 08/15/2024 | 216 | ORDER granting 215 Letter Motion for Extension of Time to File Response/Reply. Request GRANTED. SO ORDERED. Responses due by 9/13/2024 Replies due by 10/2/2024. (Signed by Judge Victor Marrero on 8/15/2024) (jca) (Entered: 08/15/2024) |
| 08/15/2024 | 217 | MEMO ENDORSEMENT granting 214 MOTION for Elisabeth Shane to Withdraw as Attorney. ENDORSEMENT Request GRANTED. SO ORDERED. Attorney Elisabeth A. Shane terminated. (Signed by Judge Victor Marrero on 8/15/2024) (jca) (Entered: 08/15/2024) |

| 08/21/2024 | 218 | NOTICE OF APPEAL from 210 Clerk's Judgment,,,,,.. Document filed by Hector D. LaSalle. Filing fee $ 605.00, receipt number ANYSDC-29779894. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Figueira, Elizabeth) (Entered: 08/21/2024) |
| 08/21/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 218 Notice of Appeal. (tp) (Entered: 08/21/2024) |
| 08/21/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 218 Notice of Appeal, filed by Hector D. LaSalle were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/21/2024) |
| 08/22/2024 | 219 | LETTER MOTION for Extension of Time *to defer briefing and resolution of attorneys' fee motion until pending appeal is resolved* addressed to Judge Victor Marrero from Justice LaSalle dated 8/22/24. Document filed by Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 08/22/2024) |
| 08/23/2024 | 220 | ORDER granting 219 Letter Motion for Extension of Time Request GRANTED. The briefing schedule referenced herein is hereby suspended, and the parties are hereby directed to propose a new briefing schedule within 14 days of the Second Circuit's final determination of Defendant LaSalle's appeal. SO ORDERED. (Signed by Judge Victor Marrero on 8/23/2024) (jca) (Entered: 08/23/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/04/2024 11:58:46 | | |
| **PACER Login:** | ester2328 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-09128-VM-VF |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
CIVIL RIGHTS CORPS, ET AL.,          :
                                     :
              Plaintiffs,            :
                                     :        21 Civ. 9128 (VM)
        - against -                  :
                                     :        **DECISION AND ORDER**
GEORGIA PESTANA, ET AL.,             :
                                     :
              Defendants.            :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and Steven Zeidman, (together the "Law Professors"), and non-profit organization Civil Rights Corps ("CRC," and with the Law Professors, "Plaintiffs") filed suit against Georgia Pestana ("Pestana"), Corporation Counsel of the City of New York ("Corporation Counsel"); Melinda Katz ("Katz"), Queens County District Attorney; Andrea Bonina ("Bonina"), Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"); Justice Hector D. LaSalle ("LaSalle"), Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York; and Diana Maxfield Kearse ("Kearse"), Chief Counsel of the Grievance Committee (together, "Defendants"). (See "Complaint," Dkt. No. 59). Between December 20, 2021 and January 14, 2022, the Court

received three letters, so-deemed by the Court as motions to dismiss, from different Defendants seeking dismissal of the Complaint: one by Pestana and Katz (the "City Defendants") (see "City Defendants' Motion to Dismiss," Dkt. No. 35), the second by Bonina and LaSalle (the "State Defendants") (see "State Defendants' Motion to Dismiss," Dkt. No. 41), and the third filed by Kearse. (See "Kearse's Motion to Dismiss," Dkt. No. 47.) On May 5, 2022, the Court denied the State Defendants' motion in full and denied the City Defendants' and Kearse's motions in part and reserved judgment in part. (See Civil Rights Corps v. Pestana, No. 21 Civ. 9128, 2022 WL 1422852 (S.D.N.Y. May 5, 2022) ("CRC II")).

Now before the Court is Plaintiffs' motion for partial summary judgment ("Motion," Dkt. No. 63) and accompanying memorandum of law ("Plaintiffs' Brief," Dkt. No. 64). For the reasons explained below, the Motion is **GRANTED** in part. Also before the Court are the undecided issues from City Defendants' and Kearse's Motions to Dismiss. For the reasons below, both motions are **DENIED**.

## I.   BACKGROUND

A.   Factual Background

The Court assumes familiarity with the factual background as recited in the Court's two prior orders in this matter. (See Civil Rights Corps v. Pestana, No. 21 Civ. 9128,

2

2022 WL 220020, at *1–2 (S.D.N.Y. Jan. 25, 2022) ("CRC I"); CRC II, 2022 WL 1422852, at *1–2.) However, because a motion for summary judgment is now before the Court, the Court is no longer bound to accept the facts alleged in the Complaint as true, nor must it draw all reasonable inferences in favor of Plaintiffs. Instead, the Court draws the factual background below from the undisputed facts set forth in the parties' statements filed pursuant to Local Rule 56.1.[1]

CRC is a non-profit organization that seeks to challenge systemic injustice across the country, an interest shared with the Law Professors. On May 3, 2021, the Law Professors filed twenty-one grievance complaints (the "Grievance Complaints") against current and former assistant district attorneys working in the Queens County District Attorney's Office, claiming prosecutorial misconduct those attorneys allegedly committed while so employed. Each Grievance Complaint requested that the respective grievance committees publicly investigate and, if appropriate, discipline the attorney involved. Plaintiffs then created a website, AccountabilityNY.org, and publicly published the Grievance Complaints.

---

[1] See "Plaintiffs' 56.1 Statement," Dkt. No. 66; "City Defendants' 56.1 Statement," Dkt. No. 76; "State Defendants' 56.1 Statement," Dkt. No. 79; "Kearse's 56.1 Statement," Dkt. No. 84. Except where directly quoted, no further citations to the record will be made in this factual recitation.

On June 2, 2021, James Johnson ("Johnson"), then-
Corporation Counsel of the City of New York, sent identical
letters to each grievance committee expressing his concerns
about the online publication of the Grievance Complaints (the
"Johnson Letter.") Plaintiffs appended a copy of this letter
as Exhibit 1 to the Complaint. (See Ex. 1, Dkt. No. 59.)
Johnson wrote "[a]s Chief Legal Officer of the City of New
York and as legal counsel to the Office of the District
Attorney for Queens County" to "express [his] deep concern"
about the Grievance Complaints. (Johnson Letter at 1.)
Johnson explained the basis of his concern as that New York
State Judiciary Law Section 90(10) ("Section 90(10)")
"designates attorney disciplinary records -- including the
complaint -- private and confidential." (Id. at 2.) He
continued that "in direct contravention of this legal
directive and long-established public policy, the complainant
law professors not only posted the complaints online, but
designed a special website to host these and future grievance
complaints," an act that Johnson stated was "an orchestrated
campaign to upend the attorney grievance process to advance
their stated goal of holding prosecutors accountable." (Id.
at 2.) Johnson concluded by stating that he was writing "to
make sure that the Committee is aware" that Plaintiffs are
conducting a "very public campaign . . . which, [he]

4

submit[s], runs afoul of the confidentiality provisions of the law and the purpose of the grievance process." (Id. at 3.)

Section 90(10), the statutory provision upon which Johnson relies, states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10). Less than two weeks after they received the Johnson Letter, the Law Professors received a letter from defendant Kearse, a full copy of which is appended as Exhibit 2 to the Complaint, notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and "remain confidential pursuant to New York State Judiciary Law § 90." ("Kearse Letter," Ex. 2, Dkt. No. 59.) Plaintiffs interpreted the Kearse Letter as essentially dismissing the Law Professors as complainants and denying them access to information about the proceedings and any other benefits that come with "complainant" status. The Johnson and Kearse Letters provide the primary basis for the First Amendment violations alleged in Plaintiffs' Complaint.

Following their receipt of both letters, Plaintiffs, through counsel, wrote to the Grievance Committee, Pestana,

and Kearse, expressing their displeasure with the course of events. Defendant Pestana, who had succeeded Johnson as Corporation Counsel, responded and reasserted her Office's belief that Plaintiffs were running afoul of Section 90(10). Similarly, Kearse replied and reiterated that any possible investigation would be conducted by the Grievance Committee *sua sponte*.

B.   Procedural History

   After the unsuccessful effort to resolve the parties' dispute by letter exchange, Plaintiffs filed this action. They allege (1) Defendants retaliated against the Law Professors in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment and Article I, Section 8 of the New York Constitution, both facially and as-applied; (4) Defendants violated the Constitutions of the United States and of New York State by denying Plaintiffs their right to access government proceedings and records; and (5) if the Court finds that Section 90(10) is constitutional, Defendants must allow access to the records at issue under the statute's good-cause exception. Plaintiffs sue under 42 U.S.C. Section 1983 ("Section 1983").

Shortly after filing the Complaint, Plaintiffs submitted a motion to this Court requesting the Court order the unsealing of the exhibits to the Complaint, and the Court granted that motion on January 25, 2022. See CRC I, 2022 WL 220020. Plaintiffs then filed an unsealed version of the Complaint. (See Dkt. No. 59.) While that motion was pending, Plaintiffs filed a letter expressing their intent to file a motion for partial summary judgment (Dkt. No. 29), and City Defendants, State Defendants, and Kearse filed letters seeking leave to file motions to dismiss the Complaint. The Court ordered full briefing on Plaintiffs' motion for partial summary judgment but noted that it would resolve the anticipated motions to dismiss on the basis of the parties' pre-motion letters. (See Dkt. No. 56, (citing Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.)). On May 5, 2022, the Court issued an order on the motions to dismiss, denying State Defendants' motion to dismiss in full and denying the motions of Kearse and City Defendants in part, while reserving judgment on the issues that required a determination regarding Section 90(10)'s constitutionality. See generally CRC II, 2022 WL 1422852.

Now before the Court is Plaintiffs' Motion and accompanying memorandum of law, which seeks summary judgment

on Plaintiffs' third claim for relief: that Section 90(10) violates the First Amendment of the United States Constitution and Article I, Section 8 of the New York State Constitution, both as-applied and on its face. The Court has also received City Defendants', State Defendants', and Kearse's oppositions to the Motion (see "City Opposition," Dkt. No. 77; "State Opposition," Dkt. No. 78; "Kearse Opposition," Dkt. No. 82); Plaintiffs' reply to the opposition briefs, (see "Plaintiffs' Reply," Dkt. No. 85); as well as a brief in support of the Motion, filed by amicus curiae Newsday LLC, Pro Publica Inc., The Associated Press, and The New York Times Company. (See "Amicus Brief," Dkt. No. 73.)

## II.  **LEGAL STANDARD**

A.   Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 ("Rule 56") states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where, upon motion of one party, the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court may consider all facts in the record before it. Id. at 323.

When a motion for summary judgment is properly supported by evidence, the party opposing a motion for summary judgment "may not rest upon mere allegations or denials -- rather, he must present sufficient probative evidence to establish a genuine issue of material fact." Horror Inc. v. Miller, 15 F.4th 232, 240 (2d Cir. 2021). Evidence that is "'merely colorable,' or is not 'significantly probative'" is insufficient to defeat a motion for summary judgment. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). In short, the nonmoving party's evidence must be persuasive enough that a reasonable jury could return a judgment in the nonmovant's favor. Id. at 241.

B.   First Amendment Legal Standard

The Court begins by noting that while certain free-speech violations, such as retaliation, brought under Article I, Section 8 ("Article I, Section 8") of the New York State Constitution are judged under the same principles that apply to claims alleging violations of the First Amendment to the United States Constitution (the "First Amendment"), see Martinez v. Sanders, 307 F. App'x 467, 468 n.2 (2d Cir. 2008), Article I, Section 8 generally offers broader protection than

the First Amendment. *See O'Neill v. Oakgrove Constr., Inc.*, 523 N.E.2d 277, 280 n.3 (N.Y. 1988) ("The protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment."). This proposition is evident from the text of both provisions. *Compare* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press."), *with* N.Y. Const. art. I § 8 ("Every citizen may freely speak, write and publish his or her sentiments on all subjects . . . and no law shall be passed to restrain or abridge the liberty of speech or of the press."). That means that any statute that fails to pass muster under federal law will fail under the more protective New York State Constitution.

The First Amendment protects against governmental intrusion on the right to free speech, including statutory intrusions. Statutes "may unconstitutionally restrict speech in one of two primary ways," the first of which is relevant here: "a statute may restrict speech based on the content of that speech." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). Such content-based restrictions on speech go against the principle that lies "[a]t the heart of the First Amendment[:] . . . that each person should decide for him or herself the ideas and beliefs deserving of

expression, consideration, and adherence." <u>Turner Broad. Sys.
v. F.C.C.</u>, 512 U.S. 622, 641 (1994). For that reason, "the
most exacting scrutiny" is used to evaluate the
constitutionality of laws that "suppress, disadvantage, or
impose differential burdens upon speech because of its
content." <u>Id.</u> at 642. "Most exacting scrutiny," or "strict
scrutiny," means that the law must be narrowly tailored to
promote a compelling government interest.[2] <u>See</u> <u>John Doe, Inc.
v. Mukasey</u>, 549 F.3d 861, 871 (2d Cir. 2008) (quoting <u>United
States v. Playboy Ent. Grp., Inc.</u>, 529 U.S. 803, 813 (2000)).

Plaintiffs challenge Section 90(10) both facially and as
applied, so it is important to distinguish the two types of
challenges. A facial challenge looks to "only the text of the
statute itself, not its application to the particular

---

[2] Plaintiffs also emphasize that the law is a "prior restraint" on speech
because it "prohibit[s] speech before it occurs." (Plaintiffs' Brief
at 13.) The Court notes the statute at issue here differs from those
in classic prior-restraint cases. <u>See, e.g.</u>, <u>Near v. Minnesota</u>, 283
U.S. 697 (1931) (striking down a statute that allowed the state
attorney general or any citizen to seek an injunction prohibiting a
news publication from publishing certain information); <u>Lovell v. City
of Griffin</u>, 303 U.S. 444 (1938) (holding unconstitutional an ordinance
that prohibited the distribution of pamphlets without a permit); <u>CBS
v. Davis</u>, 510 U.S. 1315 (1994) (staying a circuit court injunction
that prohibited CBS from broadcasting certain footage). The fact
pattern here more closely resembles the challenged law in <u>Landmark
Communications v. Virginia</u>, which required strict confidentiality of
all papers and proceedings before Virginia's judicial review
commission and that the Supreme Court said "[did] not constitute a
prior restraint." 435 U.S. 829, 838 (1978). However, because prior
restraints on speech and content-based restrictions on speech are both
subject to strict scrutiny, it is unnecessary to establish whether
Section 90(10) is a prior restraint on speech, as there is no dispute
it is a content-based restriction.

circumstances of an individual." <u>Field Day</u>, 463 F.3d at 174
(citing <u>City of Lakewood v. Plain Dealer Pub. Co.</u>, 486 U.S.
750, 770 n.11 (1988)). On the other hand, an as-applied
challenge "requires an analysis of the facts of a particular
case to determine whether the application of a statute, even
one constitutional on its face, deprived the individual to
whom it was applied of a protected right." <u>Id.</u>

### III. <u>JURISDICTIONAL ISSUES</u>

Before addressing the substantive claims at issue in the
Motion, the Court must assess a few jurisdictional arguments
presented by Defendants, fulfilling a federal court's
obligation to establish its own jurisdiction before
proceeding to consider the merits of a case.

First, State Defendants and Kearse argue that the Court
should abstain from hearing this case. The Court has already
addressed these arguments in its prior order and explained
why each abstention doctrine is inapplicable to this matter.
<u>See</u> <u>CRC II</u>, 2022 WL 1422852, at *3–7. Similarly, the second
jurisdictional issue stems from City Defendants' claim that
they are not proper parties to this dispute. The Court already
denied this argument for dismissal in <u>CRC II</u>. <u>See</u> <u>id.</u> at *9–
10.

Kearse next argues that there is no justiciable
controversy and that the Court's deciding the

constitutionality of Section 90(10) would be equivalent to
issuing an advisory opinion. (See Kearse's Opposition at 4.)
She makes this argument because "[s]he never told Plaintiffs"
they could not publicly disclose the Grievance Complaints.
(Id.) Similarly, and together comprising the third
jurisdictional issue, City Defendants argue that the case is
not ripe for review. (See City Opposition at 6.)

Federal courts are empowered to hear only live,
definite, and concrete disputes, the resolution of which
would directly impact the interests of the parties before the
Court. See In re Motors Liquidation Co., 829 F.3d 135, 167-
68 (2d Cir. 2016) (detailing the constraints of federal
courts' jurisdiction). The Court cannot render "an opinion
advising what the law would be upon a hypothetical state of
facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241
(1937). Courts have recognized two ripeness doctrines:
constitutional and prudential. An action is constitutionally
unripe if "plaintiff's claimed injury, if any, is not 'actual
or imminent,' but instead 'conjectural or hypothetical.'"
National Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688
(2d Cir. 2013) (quoting Lujan v. Defs. of Wildlife, 504 U.S.
555, 588 (1992)). Prudential ripeness asks whether the issues
are fit for judicial decision and what hardship withholding

consideration would bring to the parties. See National Org.
for Marriage, 714 F.3d at 691.

Reading the Complaint and all its claims for relief in
full, the Court finds the case is both constitutionally and
prudentially ripe for review. Plaintiffs' alleged injury is
neither conjectural nor hypothetical, as it has already
occurred. Plaintiffs allege their First Amendment rights were
violated after the following sequence of events: (1) they
filed the Grievance Complaints and published them online, (2)
because of the publication of the Grievance Complaints,
Johnson, then New York City Corporation Counsel, sent
Plaintiffs, and the Grievance Committee, a letter stating
that Plaintiffs had violated New York law, (3) Plaintiffs
felt threatened and harassed by the Johnson Letter, (4) the
Grievance Committee, through Kearse, dismissed Plaintiffs as
complainants, and (5) the parties continued to exchange
correspondence in which neither the Corporation Counsel nor
the Grievance Committee would rescind their comments.
Plaintiffs allege the second, third, and fourth actions in
this sequence were done in retaliation for their exercise of
First Amendment rights. Without prematurely evaluating the
merits of Plaintiffs' allegations, the Court finds nothing
abstract, conjectural, speculative, or hypothetical about the
injury Plaintiffs allege.

And as for Kearse's argument that any opinion would be advisory because she never told Plaintiffs they could not publish the Grievance Complaints, that statement misrepresents the alleged injury. It does not matter that Kearse never told any of the Plaintiffs that they could not publish their complaints; it does matter that Kearse allegedly deprived them of complainant status in retaliation for publishing the complaints. While Plaintiffs may claim other Defendants directly attempted to block the publication of the Grievance Complaints, Plaintiffs acted well within the confines of the Federal Rules of Civil Procedure when they brought several related claims against multiple Defendants in one lawsuit. See, e.g., Fed. R. Civ. P. 18 (joinder of claims); 20 (permissive joinder of parties).

Insofar as Plaintiffs claim they will be subject to future threats or harassment, the Second Circuit has advised that "pre-enforcement First Amendment claims" are reviewed under "somewhat relaxed standing and ripeness rules." National Org. for Marriage, 714 F.3d at 689. In these cases, "a real and imminent fear [that rights will be chilled] is enough." Id. (citing Laird v. Tatum, 408 U.S. 1, 13-14 (1972)). Given that Defendants repeatedly sent Plaintiffs allegedly threatening and harassing letters, several of which invoked Section 90(10), following Plaintiffs' publication of

15

the Grievance Complaints, the Court is persuaded that
Plaintiffs felt a real and imminent fear that their First
Amendment rights would continue to be chilled.

As for prudential standing, the Court finds nothing
about this action that suggests "the case will be *better*
decided later and that the parties will not have
constitutional rights undermined by the delay." Simmonds v.
INS, 326 F.3d 351, 357 (2d Cir. 2003). This case is similar
to the type of many cases federal courts adjudicate every day
that ask the Court to determine the constitutionality of a
state statute and whether certain factual circumstances
amount to a violation of law under Section 1983. The Court
sees no compelling reason why a decision on these issues
should be delayed. More importantly, though, parties could
have their constitutional rights undermined by a delay if
Section 90(10) is eventually deemed unconstitutional but the
state continued to enforce the law in the time lapse between
this suit and a subsequent one. Thus, the Court is unpersuaded
that Defendants have shown there is a valid ripeness challenge
in this litigation.

The fourth jurisdictional question raises similar
issues: the State Defendants contest that any claim for public
disclosure of investigative documents lacks ripeness because
Plaintiffs have not sought remedy in the proper

16

administrative channels. (<u>See</u> State Opposition at 23.) The Court does not interpret Plaintiffs' claim at issue in this motion for partial summary judgment to seek the release of any investigative documents, and, as such, the Court lacks the benefit of full argument and briefing on this issue. State Defendants may renew this argument at a later in stage of the litigation when the Court evaluates claims that may lead to the public disclosure of investigative documents.

Fifth, City Defendants argue that the case is not ripe for review because "plaintiffs seek to enjoin the enforcement of Judiciary Law § 90(10), but no one has sought or threatened to enforce the law against them." (City Opposition at 7.) This contention demonstrates a misunderstanding of applicable legal principles. Plaintiffs' First Amendment claim is that they were retaliated against after exercising their First Amendment rights. As detailed below, the alleged retaliatory acts consisted of (1) Johnson telling the Grievance Committee that Plaintiffs were acting in violation of state law, an action that may be viewed as harassing or threatening, and (2) Kearse rescinding Plaintiffs' complainant status. Plaintiffs allege Defendants, including City Defendants, hide behind the auspice of enforcing Section 90(10) in making these threats. They seek enjoinment of the law's enforcement to the

extent that the law is being applied as a weapon to stifle Plaintiffs' free speech rights.

Sixth, City Defendants claim Plaintiffs lack standing to bring suit. To satisfy the requirements of constitutional standing, a plaintiff must have suffered a concrete, particularized, actual, and imminent injury-in-fact which was caused by "the conduct complained of" and will likely be redressed by a favorable judicial decision. Lujan, 503 U.S. at 560—61. The Court already has, above, found that Plaintiffs suffered a concrete and particularized, non-hypothetical injury, and the Court now finds Plaintiffs easily satisfy the remaining standing factors as well.

City Defendants do not dispute causation, and the Court's discussion of that factor is not difficult. Plaintiffs' alleged injury is that their First Amendment rights were violated when Defendants allegedly retaliated against them for exercising their constitutional right to free speech. That alleged injury was directly caused by Defendants' actions -- Defendants sent the Johnson Letter, the Kearse Letter, and subsequent correspondence, plus they dismissed Plaintiffs from the suit as complainants, and those actions caused the injury Plaintiffs allege.

City Defendants' argument for lack of standing largely relies on the redressability requirement, as they state that

18

"Plaintiffs simply cannot demonstrate that the City [D]efendants caused them a redressable injury related to the alleged enforcement of a law that the City [D]efendants have no power to interpret or enforce." (City Opposition at 1.) This argument, while dressed in different terminology, duplicates City Defendants' earlier argument that they should be dismissed as improper defendants. The Court assessed this argument at length in <u>CRC II</u>, and it sees no reason to reevaluate its conclusion from that decision. <u>See</u> <u>CRC II</u>, 2022 WL 1422852, at *9-10. As the Court stated in its prior Order, a favorable decision would provide Plaintiffs with redress for their injuries, so Plaintiffs have satisfied their burden of establishing standing. <u>See</u> <u>id</u>. at *9. The Court finds it has jurisdiction to decide this lawsuit and that there are no jurisdictional reasons to dismiss the Complaint.

## IV.   <u>SUMMARY JUDGMENT DISCUSSION</u>

Section 90(10) is a content-based restriction on speech, as it prohibits disclosure of "all papers, records and documents" specifically related to attorney discipline proceedings. There is no dispute that the statute, on its face, "applies to particular speech because of the topic discussed or the idea or message expressed." <u>Reed v. Town of Gilbert</u>, 576 U.S. 155, 163 (2015). That determination means

the law is "presumptively unconstitutional and may be
justified only if the government proves that [the law is]
narrowly tailored to serve compelling state interests." Id.
This high burden is especially important in cases such as
this one, where the speech at issue relates to the conduct of
government prosecutors. The Supreme Court has repeatedly
stated, "there is practically universal agreement that a
major purpose of [the First] Amendment was to protect the
free discussion of governmental affairs." Landmark Commc'ns
v. Virginia, 435 U.S. 829, 838 (1978) (quoting Mills v.
Alabama, 384 U.S. 214, 218 (1966)).

As the Second Circuit recently noted, "[f]acial
challenges are disfavored," so "it is a proper exercise of
judicial restraint for courts to adjudicate as-applied
challenges before facial ones in an effort to decide
constitutional attacks on the narrowest possible grounds and
to avoid reaching unnecessary constitutional issues." Kane v.
De Blasio, 19 F.4th 152, 174 (2d Cir. 2021) (modification in
original) (quotations omitted). With that in mind, the Court
begins by assessing the as-applied challenge and determining
whether Section 90(10)'s publication prohibitions are
narrowly tailored to serve a compelling government interest.

A.   Section 90(10) Is Unconstitutional As Applied to
     Plaintiffs' Case

20

In this case, an as-applied challenge means this Court is tasked with determining the constitutionality of Section 90(10)'s prohibition on (1) the publication of attorney grievance complaints by the private individuals who filed the complaints, and (2) the publication of correspondence related to grievance complaints or Grievance Committee business by the private recipients of that correspondence, as those are the two factual circumstances in which Section 90(10) applies here. Each prohibition must be narrowly tailored to support a compelling government interest.

### 1.   Grievance Complaints

When Johnson, as Corporation Counsel of the City of New York, wrote to the Grievance Committee to inform it of Plaintiffs' publication of the Grievance Complaints, he specifically wrote, "As you know, New York State Judiciary Law § 90(10) designates attorney disciplinary records -- *including the complaint* -- private and confidential." (Johnson Letter at 2 (emphasis added).) However, in their opposition to Plaintiffs' Motion, Defendants have seemingly conceded that Section 90(10) does not prohibit complainants' publication of their own grievance complaints. The State Defendants' Opposition and Kearse's Opposition both directly say that a party is free to publish its own grievance complaints under Section 90(10). (See Kearse's Opposition at

4; State Opposition at 2.)[3] This means, at minimum, that
Johnson purported to enforce Section 90(10) while clearly
acting outside the law's bounds.

State Defendants spill much ink examining the text of
Section 90(10) to explain why the statute does not prohibit
the publication of grievance complaints, all of which may be
relevant when evaluating a facial challenge to the statute.
In an as-applied challenge, however, the Court's inquiry
concerns "the facts of [the] particular case" and "whether
the application of a statute, even one constitutional on its
face, deprived the individual to whom it was applied of a
protected right." Field Day, 463 F.3d at 174. Under this
doctrine the Court is concerned with the *application* of the
statute rather than its text.

A concession that the text of Section 90(10) does not
prohibit the publishing of grievance complaints does not
resolve the concern that the New York City Corporation Counsel
sought to halt and punish the publication of the grievance
complaints under the auspice of upholding Section 90(10). The
Johnson Letter is quite clear that the Corporation Counsel

---

[3] Despite Plaintiffs' clear statements that they were moving only for
partial summary judgment on the issue of Section 90(10)'s
constitutionality, City Defendants' Opposition completely fails to
respond to the challenges to Section 90(10)'s constitutionality,
instead addressing jurisdictional issues (some of which the Court has
previously decided in CRC II) and discussing claims that are not at
issue in the instant motion.

believed -- or at least asserted – that the publication of
Plaintiffs' grievance complaints contravened Section 90(10)'s
confidentiality provisions and that the Grievance Committee
should be aware of this alleged illegal act. And Plaintiffs'
as-applied challenge focuses on that action -- they ask the
Court to determine whether Section 90(10) was enforced
against them in violation of their First Amendment rights.

The Court concludes that if Section 90(10) is being used
to block Plaintiffs' publication of their own grievance
complaints, the statute is being applied in an
unconstitutional manner. The Second Circuit has already so
suggested. In Kamasinski v. Judicial Review Council, the
Second Circuit noted that Section 90(10) could apply to three
different categories of information that individuals may want
to disclose: (1) "the substance of an individual's complaint
or testimony;" (2) "the complainant's disclosure of the *fact*
that a complaint was filed, or a witness's disclose of the
*fact* that testimony was given;" and (3) "information that an
individual learns by interacting with the [Judicial Review
Council]." 44 F.3d 106, 110 (2d Cir. 1994). While, unlike
this case, the facts in Kamasinski did not involve the first
category, the Court continued to note,

> Whether the state may prohibit the disclosure of the
> substance of an individual's complaint or testimony
> merits little discussion. Penalizing an individual for

> publicly disclosing complaints about the conduct of a
> government official strikes at the heart of the First
> Amendment, and we agree with the district court that
> such a prohibition would be unconstitutional.

Id. (citing Mills, 384 U.S. at 218-19).

The situation contemplated in Kamasinski is exactly what unfolded here. There is no genuine factual dispute that Johnson wrote to the Grievance Committee expressing concern that Plaintiffs published the Grievance Complaints in violation of Section 90(10). In other words, a government official used Section 90(10) in an effort to prohibit the publication of grievance complaints publicly filed by the complainants themselves, an action this Court finds contrary to the First Amendment.

Whether Johnson intended to penalize Plaintiffs with that action is a question for resolution at a later stage of this litigation, as all that matters in the motion for partial summary judgment now before the Court is whether Section 90(10) is unconstitutional as applied to the facts at issue in this case. Here, the uncontroverted facts and Second Circuit precedent show that Section 90(10) was applied in an unconstitutional manner. The First Amendment prohibits a state from banning complainants from publishing their own attorney grievance complaints.

2.    Correspondence Related to Complaints

Plaintiffs' as-applied challenge is not limited to the publication of the Grievance Complaints, as Defendants also invoked Section 90(10) in an effort to bar Plaintiffs from publicizing the Johnson Letter and subsequent correspondence.[4] Plaintiffs challenge that application of the statute, and also any future government attempts to prohibit the publication of information related to the Grievance Complaints. Thus, the question before the Court is whether a state prohibiting individuals from publishing correspondence and documents related to a grievance complaint would violate the First Amendment.

This challenge concerns the other two types of information that the Kamasinski court described, broadly categorized as (1) facts related to the mere existence of an investigation, complaint, or testimony and (2) information learned from correspondence with the body investigating the complaints (here, the Grievance Committee). To assess whether prohibition on disclosure of information in these categories

---

[4] The Johnson Letter includes a footnote stating, "[T]his letter is sent in response to specific grievances and, thus, is private and confidential under Judiciary Law 90(10). As such, any disclosure of this letter by complainants without proper court permission would be unlawful under the Judiciary Law." (Johnson Letter at 3 n.4.) The Kearse Letter is marked "personal and confidential." (Kearse Letter at 1.) The parties disagree about whether that label meant the letter was to be kept confidential pursuant to Section 90(10), which uses the term "private and confidential."

violates the First Amendment, the Court must "balance
[Plaintiffs'] asserted First Amendment rights against [the
Government's] interests in preserving the confidentiality" of
its attorney grievance proceedings. Butterworth v. Smith, 494
U.S. 624, 630 (1990); see also Kamasinski, 44 F.3d 110-11;
Landmark Commc'ns, 435 U.S. at 841.

Because this inquiry entails a content-based regulation
of speech, in balancing those interests the Court uses strict
scrutiny to weigh the scales. In content-based First
Amendment cases, it is well settled that the Government bears
the burden of showing a law is narrowly tailored to support
a compelling government interest. See, e.g., Playboy Entm't
Grp., 529 U.S. at 817. Yet, while Plaintiffs devote a
considerable portion of the Motion explaining why Section
90(10) cannot survive strict scrutiny (see Plaintiffs' Brief
at 15-22), Defendants do not make any attempt to rebut the
presumption of unconstitutionality that attaches to a
content-based restriction on speech. Again, they instead
argue that the statute, on its face, does not proscribe the
publication of these materials. But, once again, even "the
application of a facially neutral law so as to discriminate
against certain speakers or idea[s] violates the First
Amendment." Field Day, 463 F.3d at 193.

The Court notes that Section 90(10) is not facially neutral.[5] On its face, it imposes content-based restrictions. Defendants argue, however, that the law is constitutional on its face because the actions underlying the dispute here fall outside the bounds of Section 90(10) and the statute does not prevent the disclosure of the materials at issue. The trouble with this argument is that the Corporation Counsel, on behalf of the City of New York, repeatedly invoked and attempted to enforce Section 90(10) in the exact situations in which State Defendants (the only defendant group to make any arguments regarding the constitutionality of Section 90(10)) say the law does not apply. So, much like the above discussion regarding the publication of grievance complaints, the textualist analysis is irrelevant in the as-applied challenge. Even if the law, on its face, would allow the publication of the Johnson Letter and subsequent correspondence, here Section 90(10) is being used by government officials to stifle that speech.

Because no defendant attempted to explain why this limitation on speech was narrowly tailored to meet a compelling government interest, Defendants did not carry their burden of satisfying strict scrutiny. The only

---

[5] Despite this difference, the Court cites <u>Field Day</u> to highlight the distinction between facial and as-applied challenges to statutes.

government interests the Court is able to identify from the opposition papers are "broad-based privacy interests" that "require that these documents remain confidential and sealed from public disclosure." (State Opposition at 26.) State Defendants do not elaborate on that interest -- a far cry from the detailed interests that justified upholding the confidentiality of judicial misconduct proceedings in Kamasinski. See Kamasinski, 44 F.3d at 109-10. The Court also notes that the Second Circuit has specified that the interests in Kamasinski "inhere in the nature of judicial misconduct proceedings," and are thus not immediately applicable to attorney grievance proceedings. John Doe v. Mukasey, 549 F.2d 861, 877 (2d Cir 2008).

The Court recognizes that there may be valid and important, and perhaps even compelling, government interests in maintaining confidentiality in some aspects of attorney grievance proceedings. But even if Defendants had clearly articulated those interests, they did not make any showing that the application of Section 90(10) to block the publication of the correspondence at issue from government officials was narrowly tailored to achieve those interests. "A law is not narrowly tailored if a less restrictive alternative would serve the same interests." Open Soc'y Justice Initiative v. Trump, 510 F. Supp. 3d 198, 211

28

(S.D.N.Y. 2021) (citing <u>Playboy Entm't Grp.</u>, 529 U.S. at 813).
The Court need not craft a less restrictive alternative to
Section 90(10) because State Defendants' Opposition presents
one: the law bars only Grievance Committee members, staff,
and their agents from disclosing information related to
proceedings. Thus, the statute does not apply to complainants
or members of the general public.[6] (<u>See</u> State Opposition at
6.)

Looking only at the facts of the case before the Court,
government officials of the State and City of New York applied
Section 90(10) to prohibit Plaintiffs from sharing at least
one letter they received regarding their Grievance
Complaints. That action infringed on Plaintiffs' First
Amendment right to freedom of speech in the name of upholding
a governmental interest in keeping attorney discipline
proceedings confidential. But because less-restrictive
alternatives exist and Section 90(10), as it was applied to

---

[6] In perhaps their closest effort to identifying a compelling government
interest furthered by the application of Section 90(10), State
Defendants argue that eliminating the entire confidentiality provision
of Section 90(10) would put confidential information, such as witness
statements, financial records, privileged documents, and medical
information, at risk of disclosure. (<u>See</u> State Opposition at 26.) The
Court does not question the importance of the State's interest in keeping
such information confidential, but no such information was contained in
the documents for which Section 90(10)'s confidentiality provision was
invoked against Plaintiffs, rendering the concern inapplicable in the
as-applied challenge. Further, in a facial challenge to the statute,
this asserted interest raises serious doubts about whether the statute
is narrowly tailored, as Section 90(10) prohibits the disclosure of "all
papers, records and documents," not just those containing legitimately
confidential or sensitive information.

the facts of this case, is not narrowly tailored to a government interest in maintaining the confidentiality of attorney grievance proceedings, Plaintiffs' First Amendment right to publish the letters they received and similar correspondence not containing indisputably confidential or sensitive information outweighs the government's interest in confidentiality. This Court is unconvinced that the First Amendment allows the government to broadly prevent complainants, such as the Law Professors, from publicly sharing any and all correspondence, communication, or documents related to their own grievance complaints.

To the extent that Section 90(10) is being used to prohibit complainants from publicly sharing "papers, records and documents" related to that complainant's own grievance complaint related to attorney discipline, the law's confidentiality provision violates the First Amendment of the United States Constitution. Because Article I, Section 8 of the New York Constitution is even more protective of free speech, such applications of Section 90(10) also violate the New York State Constitution.

B.  Section 90(10)'s Constitutionality on its Face

Because the Court has found that the challenged statute is unconstitutional as it was applied to Plaintiffs' case, the Court declines to determine the constitutionality of the

statute on its face. See Kane, 19 F.4th at 174 (describing such decisions as a proper exercise of judicial restraint); United States v. Grace, 461 U.S. 171, 175 (1983) (noting the Court would only address whether a statute was unconstitutional under the facts of the case at hand despite a facial challenge to the statute). Accordingly, Plaintiffs' Motion for partial summary judgment is GRANTED in part and DENIED in part. The Motion is granted as to Plaintiffs' as-applied challenge to Section 90(10) as a violation the First Amendment of the United States Constitution and Article I, Section 8 of the New York State Constitution as-applied. The Motion is denied as to Plaintiffs' facial challenge to Section 90(10), as the Court finds it imprudent and unnecessary to the disposition of this case to determine the constitutionality of Section 90(10) in circumstances factually different from those at issue here.

### IV. __MOTION TO DISMISS LEGAL STANDARD__

Having decided that Section 90(10) is unconstitutional as applied to the facts of this case, the Court now turns to the remaining issues raised by Defendants' motions to dismiss, beginning with the applicable legal standard. Unlike the above discussion regarding the motion for summary judgment, the Court's review of the motions to dismiss is limited to "facts stated on the face of the complaint, in

31

documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Leonard F. v. Israel Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. <u>See</u> <u>id.</u> However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

## V.    MOTION TO DISMISS DISCUSSION

In CRC II, the Court reserved decision on two issues from City Defendants' Motion to Dismiss because both relied on a determination of the constitutional question regarding Section 90(10). First, City Defendants moved for dismissal under Rule 12(b)(6), arguing that Plaintiffs failed to state a claim for First Amendment retaliation. (See City Defendants' Motion to Dismiss at 2.) Second, City Defendants argue that, even if Plaintiffs did state a claim for relief, the Complaint should be dismissed because City Defendants are entitled to qualified immunity. (See City Defendants' Motion to Dismiss at 3 n.2.) Kearse joined the qualified immunity argument, and separately moved for dismissal for failure to state a claim. (See Kearse's Motion to Dismiss at 3–4.)

### A.    FAILURE TO STATE A CLAIM

City Defendants argue Plaintiffs failed to adequately allege that (1) their publication of the Grievance Complaints was protected speech; and (2) that City Defendants took adverse action against them. (See City Defendants' Motion to Dismiss at 2–3.) Both of these circumstances, along with a showing of a causal connection between the protected speech and the adverse action, are necessary elements of a First Amendment retaliation claim. See Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015).

33

Plaintiffs' Complaint easily satisfies the first
element. As the Court has explained above, Plaintiffs had a
constitutionally protected right to publish their own
Grievance Complaints. They were private individuals
exercising their First Amendment right to free speech, and no
statute or law validly prohibited that exercise of speech.
The Complaint alleges Plaintiffs published the Grievance
Complaints, or, in other words, that they engaged in protected
speech. That allegation is sufficient to satisfy Plaintiffs'
burden on a motion to dismiss.

As for the second element, not every negative
governmental disciplinary or retaliatory measure constitutes
an adverse action, as the burden imposed by some retaliatory
acts may be minimal. An "adverse action" in First Amendment
retaliation cases is "conduct that would deter a similarly
situated individual of ordinary firmness from exercising his
or her constitutional rights." United States v. N.Y.C. Dep't
of Educ., 407 F. Supp. 3d 365, 410 (S.D.N.Y. 2018) (quoting
Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir.
2006)). The Second Circuit has highlighted that the question
of whether retaliatory conduct amounts to an adverse action
is a context-specific inquiry that "must be tailored to the
different circumstances in which retaliation claims arise."
Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (internal

quotations omitted), <u>overruled on other grounds</u>, <u>Swierkiewicz</u> <u>v. Sorema N.A.</u>, 534 U.S. 506 (2002). For example, certain groups, like public employees, "may be required to tolerate more than average citizens" in deciding whether a retaliatory act is adverse. <u>Id.</u>

The alleged retaliatory acts here entail (1) City Defendants sending letters to the Grievance Committee stating that Plaintiffs were violating Section 90(10) and, allegedly, threatening Plaintiffs; and (2) Kearse and the Grievance Committee removing Plaintiffs as grievance complainants and denying them the benefits accorded to individuals who file attorney grievance complaints. (<u>See</u> Complaint ¶¶ 55-75.) The Court finds that these alleged retaliatory acts constitute adverse actions sufficient to support a claim for First Amendment retaliation. The Court is persuaded that individuals of ordinary firmness would be deterred from exercising their constitutional right to publish their own grievance complaints if they knew that exercise could result in losing their status as complainants or being charged with violating the law and potentially being subjected to consequential legal proceedings. The Court is persuaded that attorneys of ordinary firmness would be deterred from publishing grievance complaints if they knew that publication would lead to a government official informing the Grievance

35

Committee that they were violating New York law, possibly risking their status as attorneys in good standing.

The Court finds that Plaintiffs have adequately alleged that they engaged in constitutionally protected speech and that they were subjected to adverse action as a result of engaging in that speech. Because Defendants do not challenge Plaintiffs' satisfaction of the third element of a prima facie case of First Amendment retaliation, the Court finds Plaintiffs have stated a claim for relief. City Defendants' motion to dismiss for failure to state a claim is denied.

Kearse moved the Court to dismiss the Complaint for failure to state a claim, arguing that Plaintiffs failed to show she violated their First Amendment rights because the Complaint states Defendants "engag[ed] in an ongoing effort to harass, threaten, and punish" Plaintiffs and "neither of Kearse's two letters to Plaintiffs did anything of the sort." (Kearse's Motion to Dismiss at 3–4.) Kearse's argument is premised entirely on a question of fact that the Court is unable to resolve at this stage in the proceeding. The Court has already determined, above, that Plaintiffs adequately alleged they were subjected to adverse actions in retaliation for their exercise of their First Amendment rights. A motion to dismiss pursuant to Rule 12(b)(6) is not the proper occasion for the Court to weigh differing interpretations of

an exhibit to the Complaint, as the Court, in evaluating Rule
12(b)(6) motions is bound to "accept the factual allegations
set forth in the complaint as true and draw all reasonable
inferences in favor of the plaintiff." <u>Ebomwonyi v. Sea
Shipping Line</u>, 473 F. Supp. 3d 338, 344 (S.D.N.Y. 2020).
Kearse's motion to dismiss for failure to state a claim is
also denied.

B.    <u>QUALIFIED IMMUNITY</u>

The last argument City Defendants, joined by Kearse,
present is that the Complaint should be dismissed because,
even if their actions constituted a constitutional violation,
they are entitled to qualified immunity.[7] The Court finds this
argument unpersuasive.

Government officers acting under the color of state law
are entitled to qualified immunity for actions taken in the
course of performing official duties if they did not violate
a clearly established constitutional or statutory right,
meaning that a reasonable public officer would not have known
that, at the time of the offending action, such conduct
constituted a violation of law by depriving an individual of
a clearly established statutory or constitutional right. <u>See
White v. Pauly</u>, 137 S. Ct. 548, 551 (2017). The Supreme Court

---

[7] The Court notes that Defendants assert a qualified immunity defense only
over Plaintiffs' First Amendment retaliation claim.

"does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7–8 (2021) (quoting White, 137 S. Ct. at 551).

As the Court recounted above, the Second Circuit, in 1994, noted that "[w]hether the state may prohibit the disclosure of the substance of an individual's complaint or testimony merits little discussion. Penalizing an individual for publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment, and we agree . . . that such a prohibition would be unconstitutional." Kamasinski, 44 F.3d at 110. That statement constitutes an unequivocal declaration that there is little merit in the argument that a state may prevent individuals who file attorney grievance complaints from publicly disclosing such complaints.

In 2021, when the events giving rise to the Complaint occurred, a reasonable government officer should have been aware that punishing private individuals for publishing their own grievance complaints runs afoul of the First Amendment. It is especially true that three high-ranking legal officers of the State and City of New York -- the Corporation Counsel, the Queens County District Attorney, and the Chief Counsel to

the Grievance Committee -- would have known that, under the
First Amendment, attorney grievance complainants are free to
publicly publish their own complaints. The First Amendment
and applicable doctrine under <u>Kamasinski</u> clearly established
that right. Thus, Defendants are not entitled to qualified
immunity for the adverse actions at issue here. City
Defendants' and Kearse's Motions to Dismiss Plaintiffs'
complaint on this basis are denied.

VI.  <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion so-deemed by the Court (Dkt. No.
35) filed by Defendants Georgia Pestana and Melinda Katz
("City Defendants") to dismiss the complaint ("Complaint,"
Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia
Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin
Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is
**DENIED**; and it is further

**ORDERED** that the motion so-deemed by the Court (Dkt. No.
47) filed by Defendant Diana Maxfield Kearse ("Kearse") to
dismiss Plaintiffs' Complaint is **DENIED**; and it is further

**ORDERED** that the motion filed by Plaintiffs for partial
summary judgment (Dkt. No. 63) is **GRANTED IN PART**. The motion
is granted insofar as it seeks summary judgment on Plaintiffs'
as-applied constitutional challenge.

Defendants are hereby **ORDERED** to file their answer to the remaining claims brought in the Complaint within twenty-one days of the date of this Order.

**SO ORDERED.**

Dated: New York, New York
      13 June 2022

                                     Victor Marrero
                                     U.S.D.J.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  07/22/24
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.

                Plaintiffs,

       – against –

HECTOR D. LASALLE, in his official
capacity as Chief Justice of the Second
Judicial Department of the Appellate
Division of the Supreme Court of the
State of New York,

                Defendant.

21 Civ. 9128 (VM)

<u>DECISION</u> <u>AND</u> <u>ORDER</u>

**VICTOR MARRERO, United States District Judge.**

      The state of New York, by statute, deems most attorney disciplinary proceedings and related records "sealed," "private and confidential." N.Y. Jud. Law § 90(10). On May 3, 2021, Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") filed twenty-one formal complaints (the "Grievance Complaints") with an Attorney Grievance Committee ("Grievance Committee") appointed by the Appellate Division of the Supreme Court of the State of New York (the "Appellate Division"), alleging unethical conduct of New York state prosecutors in particular cases and requesting that those lawyers be disciplined. Plaintiffs allege that to date they know nothing about how the Committee acted on their Grievance Complaints.

Plaintiffs brought this suit under 42 U.S.C. § 1983, alleging that Section 90(10) was applied to them in violation of the United States Constitution (the "Constitution"). More specifically, Plaintiffs allege that the First Amendment entitles them to access the proceedings and records of their state courts related to the Grievance Complaints and that Section 90(10) unconstitutionally restricts their access thereto.

Now before the Court is Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") on their Fourth Claim for Relief (hereinafter the "Fourth Claim") against Defendant Hector D. LaSalle (hereinafter "Defendant," "Justice LaSalle," or "the State"),[1] Chief Justice of the Appellate Division's Second Judicial Department (the "Second Department"), the state court that oversees the Committee's work. Plaintiffs seek declaratory judgment stating that they have a First Amendment right (1) to attend any hearings in the Second Department that may result from the Grievance Complaints, (2) to view records of the Second Department necessary to understand those hearings,

---

[1] As explained herein, at Section III.A.3, Plaintiffs sued Justice LaSalle in his official capacity as Presiding Justice of the Second Department pursuant to established Eleventh Amendment doctrine. However, the New York Attorney General entered an appearance on Justice LaSalle's behalf, and Plaintiffs seek relief that would be effective against the Second Department itself; the Court accordingly uses "Defendant," "Justice LaSalle," and the "State" interchangeably.

and (3) to view the final dispositions of the Grievance Complaints reached by the particular Grievance Committee that reviewed them. Also before this Court is the State's cross-motion for summary judgment on the Fourth Claim. The State seeks judgment in its favor to resolve allegations of jurisdictional defects and Justice LaSalle's absolute immunity from suit.

The Court holds that it has jurisdiction to decide this case, that Justice LaSalle does not possess absolute immunity from suit, and that Section 90(10) of the New York Judiciary Law has been applied to Plaintiffs in violation of the Constitution. The First Amendment presumption of access applies to disciplinary hearings in the Second Department, to Second Department records necessary to understand those hearings, and to some (but not all) of the final dispositions by the Committee. Accordingly, Plaintiffs' motion is hereby **GRANTED IN PART** and **DENIED IN PART,** and Defendant's motion is hereby **DENIED.**

## I.    <u>BACKGROUND</u>[2]

A.    <u>ATTORNEY DISCIPLINE IN THE SECOND DEPARTMENT</u>

New York law authorizes its intermediate appellate courts, the four Appellate Divisions of the Supreme Court, to regulate the practice of law and discipline attorneys for professional misconduct occurring within their respective jurisdictions. (<u>See</u> Def. 56.1 ¶ 1; <u>see also</u> N.Y. Jud. Law § 90(2).) New York's Appellate Divisions jointly adopted the Rules of Professional Conduct, the substantive standards that govern the behavior of attorneys. (<u>See</u> Def. 56.1 ¶ 4.) The

---

[2] Except as otherwise noted, the following background derives from the undisputed facts as set forth by the parties in their Local Rule 56.1 Statements of Undisputed Material Facts and responses thereto. These include Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pls. 56.1," Dkt. No. 174); Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1," Dkt. No. 198); Plaintiffs' Counter-Statement to Defendants' Rule 56.1 Statement ("Pls. 56.1 Counter," Dkt. No. 200); and Defendant's Counter-Statement to Plaintiffs' Rule 56.1 Statement ("Def. 56.1 Counter," Dkt. No. 203). The Court has also considered the full record submitted by the parties, including the following declarations and their accompanying exhibits: the Declaration of Andrew H. Wells in support of Plaintiffs' Motion ("Wells Decl.," Dkt. No. 176); the Declaration of Andrea E. Bonina in support of Defendant's Motion ("Bonina Decl.," Dkt. No. 192); the Declaration of Diana Maxfield Kearse in support of Defendant's Motion ("Kearse Decl.," Dkt. No. 193); the Declaration of Darrell M. Joseph in support of Defendant's Motion ("Joseph Decl.," Dkt. No. 194); the Declaration of Hector D. LaSalle in support of Defendant's Motion ("LaSalle Decl.," Dkt. No. 195); the Declaration of Catherine A. Sheridan in support of Defendant's Motion ("Sheridan Decl.," Dkt. No. 196); the Declaration of Joya C. Sonnenfeldt in support of Defendant's Motion ("Sonnenfeldt Decl.," Dkt. No. 197); and the Declaration of Shelley R. Attadgie in Support of Plaintiffs' Motion ("Attadgie Decl.," Dkt. No. 204). The Court construes any disputed facts discussed in this section and the justifiable inferences arising therefrom in the light most favorable to the non-movant for each motion, as required under the standard set forth in Section II below. Some legislative and historical facts submitted by the parties for adjudication of Plaintiffs' constitutional claim will be described only in the First Amendment discussion, below in Section III.D.

Rules of Professional Conduct regulate attorneys' duty of candor; fees they may charge; communication with clients, adversaries, third parties, and courts; confidentiality; conflicts of interest; and recordkeeping. (See id. ¶ 4; see generally 22 N.Y.C.R.R. § 1200.) The Rules of Professional Conduct also impose special duties that apply to prosecutors and other government lawyers. See 22 N.Y.C.R.R. § 1200.3.8.

Each Appellate Division appoints Attorney Grievance Committees as it deems appropriate. (See Def. 56.1 ¶ 20-21; see also 22 N.Y.C.R.R. § 1240.4.) The Committee involved in this litigation — the Attorney Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts (the "Committee") — is one of three such Attorney Grievance Committees in the Second Department. (See Pls. 56.1 ¶ 15.) By regulation, Attorney Grievance Committees must be composed of at least twenty-one members, with at least three of those members being non-lawyers. See 22 N.Y.C.R.R. § 1240.4. As Presiding Justice, Justice LaSalle has authority to select and appoint Attorney Grievance Committees members. (See Def. 56.1 ¶ 20.) The Second Department may also appoint staff for each of the Attorney Grievance Committees as it deems appropriate, including a Chief Attorney and staff attorneys to support the Chief Attorney. 22 N.Y.C.R.R. § 1240.5. Committee members are volunteer practitioners, but the Chief

Attorney and staff attorneys are employees of the Second Department. (See Ex. 8 to Wells Decl., at 7-8.)

The Second Department, the Committee, and the staff (including the Chief Attorney) operate as the three tiers of New York's attorney disciplinary mechanism. At the first tier, Committee staff review allegations of professional misconduct submitted by the public for basic facial sufficiency. At the second tier, the staff conduct a factual investigation and present their results to the Committee, which can dismiss the allegations, impose private discipline, or recommend public discipline. At the third tier, the Second Department considers whether to impose public discipline if the Committee has so recommended. All stages of the three-tiered system are governed by duly promulgated procedural rules (see Def. 56.1 ¶¶ 8-9; see generally 22 N.Y.C.R.R. § 1240) as well as the Second Department Grievance Committee Manual & Forms (the "Manual") (see Pls. 56.1 ¶ 19; Def. 56.1 ¶ 10; see generally Ex. H to Sonnenfeldt Decl.).

The attorney disciplinary process begins with a grievance complaint. Any person can make allegations of attorney misconduct to the Committee. (See Def. 56.1 ¶ 24.) The "person or entity that submits a complaint" to a Grievance Committee is the complainant. See 22 N.Y.C.R.R. § 1240.2(e). In the typical case, grievance complaints concern the

respondent attorney's representation of the complainant and may reveal personal information about the complainant's legal affairs. (See Def. 56.1 ¶ 26.)

Upon receipt of a grievance complaint alleging professional misconduct, the Committee staff access the respondent attorney's registration information and ascertain the respondent attorney's disciplinary history. (See id. ¶ 32.) Staff counsel then screen grievance complaints to make threshold determinations of jurisdiction, venue, and standing. (See id. ¶ 33; Pls. 56.1 Counter ¶ 33.)

Grievance complaints without jurisdiction (i.e., grievance complaints that do not concern a New York attorney) or proper venue (i.e., complaints that concern a New York attorney outside the geographic jurisdiction of the Grievance Committee that received the grievance complaint) are dismissed pursuant to 22 N.Y.C.R.R. § 1240.7(d)(1). (See Def. 56.1 ¶¶ 33-34.) A lack of standing occurs "in matters where the complainant has no connection to the respondent and/or the underlying matter from which the complaint evolves, and/or has no personal knowledge of the underlying facts and circumstances, and/or is simply relaying to the Committee information that the complainant learned from some other source." (Ex. H to Sonnenfeldt Decl. at '016.) Grievance complaints for which the complainant has no standing are still

evaluated for their substance; if the Chief Attorney
determines that the grievance complaint merits further
investigation, then the staff proceeds with the investigation
as if it had been initiated *sua sponte* — that is, as if there
were no complainant at all. (Pls. 56.1 Counter ¶ 33; Ex. H to
Sonnenfeldt Decl. at '016.)

At the screening stage, the Chief Attorney can dispose
of the matter by declining to investigate further if "(A) the
matter involves a person or conduct not covered by [22
N.Y.C.R.R. § 1240]; (B) the allegations, if true, would not
constitute professional misconduct; (C) the complaint seeks
a legal remedy more appropriately obtained in another forum;
or (D) the allegations are intertwined with another pending
legal action or proceeding." (Def. 56.1 ¶ 34; 22 N.Y.C.R.R.
§ 1240.7(d)(1)(i).) The Chief Attorney may also dispose of
the grievance complaint by referring it to another forum (for
instance, mediation for fee disputes). (See Def. 56.1 ¶ 35;
22 N.Y.C.R.R. § 1240.7(d)(1)(ii).) When the Chief Attorney
disposes of a complaint in this way, the complainant and the
respondent attorney "shall be provided with a brief
description of the basis of any disposition." 22 N.Y.C.R.R.
§ 1240.7(d)(1)(i)(D).

The second tier of the disciplinary process begins if
the Chief Attorney opens an investigation. (See Pls. 56.1

¶ 23.) Staff provide the respondent attorney with notice of the allegations and an opportunity to respond in writing. (See Pls. 56.1 ¶ 24; Def. 56.1 ¶ 36.) The Chief Attorney and staff may also interview witnesses, obtain records, direct the respondent attorney to appear, direct the respondent attorney to produce records, and — if necessary — request the issuance of a subpoena or conduct a deposition-style examination of the respondent attorney. (See Pls. 56.1 ¶ 24, Def. 56.1 ¶ 37.) A respondent attorney has a duty to respond to the Committee's and the Chief Attorney's requests promptly and truthfully; if an attorney fails or refuses to cooperate, the Committee may obtain an interim suspension of the respondent attorney's law license from the Second Department pending completion of disciplinary proceedings. (See Pls. 56.1 ¶ 26; see also 22 N.Y.C.R.R. § 1240.9.)

When the investigation is complete, the Chief Attorney and staff together compile a report with recommendations to the Committee regarding appropriate dispositions for the grievance complaint. (See Pls. 56.1 ¶ 27; Def. 56.1 ¶ 40.) The report is "comprehensive" and presents "the respective positions and supporting evidence of both the complainant and the respondent, the results of any further investigation, and an analysis of the issues and applicable legal authorities." (Pls. 56.1 Counter ¶ 40.)

Once the staff provides its report to the Committee, the Committee members may ask questions of the staff members familiar with the investigation and may also request additional materials. (See Def. 56.1 ¶ 42.) The Committee then deliberates as a body. (See Def. 56.1 ¶ 42.) The Committee may dispose of the grievance complaint in one of four ways relevant to this case. (See Pls. 56.1 ¶ 29; Def. 56.1 ¶ 45.) First, the Committee may dismiss the grievance complaint. (See Pls. 56.1 ¶ 29; Def. 56.1 ¶ 45; see also 22 N.Y.C.R.R. § 1240.7(d)(2)(i).) Second, the Committee may issue a "Letter of Advisement" to the respondent attorney if it finds the respondent "engaged in conduct requiring comment that, under the facts of the case, does not warrant imposition of discipline." (Pls. 56.1 ¶ 29; See Def. 56.1 ¶ 45; 22 N.Y.C.R.R. § 1240.7(d)(2)(iv).) Third, the Committee may issue a "written Admonition" if it finds, by "a fair preponderance of the evidence," that "the respondent has engaged in professional misconduct, but that public discipline is not required to protect the public." (Pls. 56.1 ¶ 29; see Def. 56.1 ¶ 45; 22 N.Y.C.R.R. § 1240.7(d)(2)(v).) Fourth, the Committee may authorize the staff to initiate a formal disciplinary proceeding before the Second Department if the Committee "finds that there is probable cause to believe that the respondent engaged in professional

misconduct warranting the imposition of public discipline." (22 N.Y.C.R.R. § 1240.7(d)(2)(vi); <u>see</u> Pls. 56.1 ¶ 29; Def. 56.1 ¶ 45) Crucially, the Committee may not, on its own, impose suspension or disbarment on any attorney. (<u>See</u> Pls. 56.1 ¶ 39; 22 N.Y.C.R.R. §§ 1240.7(d)(2)(vi), 1240.8.)

The respondent and in some cases the complainant receive notice of the Committee's disposition. (<u>See</u> Def. 56.1 ¶¶ 54, 56.) Both the respondent and complainant enjoy reconsideration and review rights with respect to Committee dispositions. The complainant (subject to procedural limitations not relevant here) may request reconsideration of the staff's decision to decline to investigate a grievance complaint or the Committee's dismissal of a complaint.[3] (<u>See</u> Def. 56.1 ¶ 56; 22 N.Y.C.R.R. § 1240.7(e)(3).) Similarly, the respondent may seek reconsideration of the Committee's decision to issue a Letter of Advisement. <u>See</u> 22 N.Y.C.R.R. § 1240.7(e)(1). The respondent may also seek review by the Second Department of a written Admonition or a Letter of Advisement. (<u>See</u> Def. 56.1 ¶ 34; 22 N.Y.C.R.R. § 1240.7(e).) An adversely affected respondent or complainant is also entitled to a "brief description of the basis for the

---

[3] In the case of a Letter of Advisement, the respondent attorney must first seek request reconsideration before the Committee and may request Second Department review pertaining only to the Committee's denial of reconsideration. 22 N.Y.C.R.R. § 1240.7(e).

determination" of the reconsideration or review petition, depending on which party prevails on reconsideration or review. 22 N.Y.C.R.R. 1240.7(e)(4).

The third tier of the disciplinary process begins if the Committee authorizes a disciplinary proceeding before the Second Department. The Committee may authorize Second Department proceedings where, for example, there is an ongoing history of similar misconduct, there has been misappropriation of client or third-party funds, the respondent attorney refuses to cooperate with an investigation, or the behavior in the complaint raises a concern that the respondent is a danger to the public. (See Def. 56.1 ¶ 49.)

If the Committee authorizes disciplinary proceedings in the Second Department, staff counsel — under the supervision of the Chief Attorney — drafts, files, and serves a petition and notice of petition on the respondent attorney. (See Def. 56.1 ¶ 50; 22 N.Y.C.R.R. § 1240.8(a)(1).) The Committee is the "petitioner" in Second Department proceedings. (See Def. 56.1 ¶ 51; see also N.Y. Jud. Law §§ 90(6), (8).) However, it is the Chief Attorney and staff attorneys that represent the Committee and prosecute disciplinary proceedings in the Second Department. (See Def. 56.1 ¶ 47; Bonina Decl. ¶ 22; see also 22 N.Y.C.R.R. §§ 1240.7(d)(2)(vi), 1240.8.)

The Second Department petition served on the respondent attorney outlines the charges and provides the respondent attorney with an opportunity to answer. (See 22 N.Y.C.R.R. § 1240.8(a)(1)(i); Pls. 56.1 ¶ 42.) The respondent attorney has the right to counsel throughout proceedings before the Second Department. (See Pls. 56.1 ¶ 42.) The Committee (through staff) then files a statement of disputed facts, flagging any allegations for which a hearing is necessary to resolve a factual dispute. (See 22 N.Y.C.R.R. § 1240.8(a)(2); cf. Pls. 56.1 ¶ 43.) After the respondent attorney provides a written response to the charges, there is a period of discovery during which staff counsel may subpoena witness testimony as necessary. (See Pls. 56.1 ¶ 44; 22 N.Y.C.R.R. § 1240.8(a)(4).)

The disciplinary proceedings in the Second Department are "special proceeding[s]" governed by New York Civil Practice Law and Rules (the "C.P.L.R."), Article 4. (Pls. 56.1 ¶ 41.) C.P.L.R. Article 4 sets forth rules on pleadings, motions, hearings, trial, and judgment. (See Pls. 56.1 ¶ 41; N.Y.C.R.R. § 1240.8(a)(1).) The Second Department hearing, which typically occurs before a special referee, proceeds with opening statements, witness testimony, and summations. (See Pls. 56.1 ¶¶ 45-46.) After the hearing and any post-hearing submissions, the special referee files a written

report in the Second Department with factual findings and legal recommendations. (See Pls. 56.1 ¶¶ 45, 47; 22 N.Y.C.R.R. § 1240.8(b)(1).) The respondent attorney or the prosecuting staff attorney may make a motion requesting the Second Department to confirm or disaffirm the special referee's report. (See Pls. 56.1 ¶ 48; see also 22 N.Y.C.R.R. § 1240.8(b)(1).)

The Second Department may accept or reject the special referee's findings. (See Pls. 56.1 ¶ 49.). The Second Department may dismiss the grievance complaint, remand the complaint to the Committee for private discipline, or publicly censure, suspend, or disbar the respondent attorney. (See Pls. 56.1 ¶ 50.)

## B. DISCIPLINARY RECORDKEEPING AND CONFIDENTIALITY

Unless and until a disciplinary matter requires action from the Second Department, the records of that matter reside with the Committee staff. In cases where the Second Department acts, the records of its involvement in a particular disciplinary matter reside within the Attorney Matters Section of the Second Department Clerk's Office.[4] Section

---

[4] The record indicates that the New York State Unified Court System/Office of Court Administration ("UCS/OCA") is the official custodian of Committee records. (See Ex. 17 to Wells Decl., at 8; Ex. 18 to Wells Decl., at 9.) However, it is not entirely clear whether the Committee relinquishes control over its records to a separate office within UCS/OCA, or whether the Committee staff (whose official employer is UCS/OCA) retains their own records. (See LaSalle Decl. ¶ 6; Ex. 18 to Wells Decl., at 9). Here,

90(10), the constitutionality of which is at issue in this litigation, deems "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys" to be "sealed," "private and confidential." Section 90(10) therefore codifies a general policy of nondisclosure with respect to attorney disciplinary matters. Pursuant to that statute, the Committee, its staff, and the Second Department Clerk's office do not release attorney disciplinary records — or permit nonparties to view attorney disciplinary proceedings — absent an applicable exception to Section 90(10). (See Kearse Decl. ¶¶ 5-6; Bonina Decl. ¶ 23; Joseph Decl. ¶ 11; Sheridan Decl. ¶ 36; see also Ex. H to Sonnenfeldt Decl. at '016, '082.) Those exceptions are limited.

The first relevant exception relates to the case of public discipline: "[I]n the event that charges are sustained by the justices of the appellate division having jurisdiction in any complaint, investigation or proceeding relating to the conduct or discipline of any attorney, the records and documents in relation thereto shall be deemed public

---

to the extent there is some dispute of fact regarding this question, it is not material; whether housed in the Clerk's Office, with the Committee, or with some other office housed in UCS/OCA, the applicable records are within the control of the Second Department and its justices, including Justice LaSalle. (See Ex. 18 to Wells Decl., at 9; Joseph Decl. ¶¶ 2-3.)

records." N.Y. Jud. Law § 90(10). (<u>See also</u> Pls. 56.1 ¶¶ 52-53.) Only after the Second Department has imposed public discipline do the records of that proceeding become available upon request from the Second Department Clerk. (<u>See</u> Pls. 56.1 ¶¶ 51-52; Joseph Decl. ¶ 11; Wells Decl. ¶¶ 28-29.) The Second Department does not provide contemporaneous access to its proceedings considering whether to impose public discipline.

The second relevant exception entails a request to the Second Department known as a "Good Cause Application." (<u>See</u> Def. 56.1 ¶¶ 17, 53.) This exception, too, is created by statute: "[U]pon good cause being shown, the justices of the appellate division having jurisdiction are empowered, in their discretion, by written order, to permit to be divulged all or any part of such papers, records and documents [relating to attorney discipline.]" N.Y. Jud. Law § 90(10). The Appellate Division adjudicates Good Cause Applications according to its discretion. (<u>See</u> Def. 56.1 ¶ 53; <u>see also</u> N.Y. Jud. Law § 90(10).)

Pursuant to 22 N.Y.C.R.R. § 1240.18(d), a Good Cause Application must also specify the nature and scope of the inquiry or investigation for which disclosure is sought; the papers, records, or documents sought to be disclosed, or the proceedings that are sought to be opened; and why any other

methods for obtaining the requested information are unavailable or impractical. (See Def. 56.1 ¶ 17.) Depending on the applicant, the Presiding Justice may require the Good Cause Application to be made upon notice to interested parties — that is, the Committee and respondent attorney. (See id. ¶¶ 18-19.) Law enforcement agencies and attorney disciplinary authorities filed the majority of Good Cause Applications in the Second Department over the past ten years. (See Joseph Decl. ¶ 13-14.) Good Cause Applications from the public are rare. (See id. at ¶ 15.)

The third relevant exception arises when the Committee or its Chief Attorney provide notice to a complainant or respondent attorney of action on a grievance complaint pursuant to 22 N.Y.C.R.R. § 1240. Such notifications include, for instance, information that a complaint has been dismissed by the Chief Attorney, that an investigation has been opened by the Chief Attorney, or that the Committee has reached a particular disposition with respect to the respondent's actions. (See Def. 56.1 ¶ 36.) However, the notices to complainants and respondent attorneys differ. Only notices of disposition to respondent attorneys contain the Committee's opinion and findings. (See Pls. 56.1 ¶ 31.) Notices to complainants provide only a brief description of the basis of any disposition of a complaint and may alert the complainant

to the fact of the Committee's decision but do not provide details of the investigation or the Committee's determinations. (See Pls. 56.1 ¶ 32; Def. 56.1 ¶ 58.) Complainants and respondent attorneys also have certain notification rights when a Committee disposition changes on reconsideration or review. (See Def. 56.1 ¶ 59; Pls. 56.1 Counter ¶ 59.)

The fourth exception concerns the consent of the respondent attorney. Respondent attorneys may obtain certain records of their own disciplinary history from the Second Department Clerk's Office or request such records to be sent to another jurisdiction. (See Joseph Decl. ¶ 10.) Respondent attorneys may also waive confidentiality with respect to their own disciplinary proceedings, though in at least one such instance the Second Department determined that there was "due cause demonstrated" for some or all of that proceeding to remain closed to the public despite the respondent attorney's consent to waive confidentiality. (See Def. 56.1 ¶ 13; Pls. 56.1 Counter ¶ 13.)

C.  PLAINTIFFS' GRIEVANCE COMPLAINTS

Plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (hereinafter the "Law Professors") are law professors with

academic interests in (among other topics) criminal law,
criminal procedure, wrongful conviction litigation, post-
conviction relief, legal ethics, and professional
responsibility. (See Complaint, Dkt. No. 59 [hereinafter
"Compl."], ¶¶ 13-18.) Plaintiffs Nicole Smith Futrell, Abbe
Smith, and Steven Zeidman lead criminal defense-oriented
clinical programs at their respective law schools, where they
represent defendants in criminal proceedings and post-
conviction relief litigation. (See id. ¶¶ 14, 17, 18.) All of
the Law Professor Plaintiffs (except Justin Murray) are also
active members of the New York bar. (See id. ¶¶ 13-18.)[5]

On May 3, 2021, the Law Professors filed twenty-one
complaints (the "Grievance Complaints") against individual
attorneys currently or formerly employed by the Queens County
District Attorney's Office for misconduct committed while
working as an assistant district attorney. (See Pls. 56.1
¶ 2.) The Law Professors asked that the Second Department
investigate and publicly discipline each attorney for his or
her misconduct. (See id. ¶ 3.) The Law Professors also
published their own Grievance Complaints online at
AccountabilityNY.org. (See Dkt. No. 94 at 3.)

---

[5] To the extent these factual statements are not substantiated by the
record, the Court takes judicial notice of them. See Fed. R. Evid.
201(b)(2) and (c)(1).

On June 2, 2021, James Johnson ("Johnson"), then-Corporation Counsel for the City of New York, wrote a letter (the "Johnson Letter") to the Committee, with copies to the Law Professors, expressing his view that publication of the Grievance Complaints online was an "abuse of the grievance process to promote a political agenda" in violation of Section 90(10). (Ex. 1 to Compl. at 3; <u>see</u> <u>also</u> Dkt. No. 94 at 4-5.) Johnson also expressed his view that publication of his own letter criticizing the Law Professors would be a violation of the same law. (<u>See</u> Ex. 1 to Compl. at 3 n.4.) Within a week, the Committee,[6] through its Chief Attorney, Diana Maxfield Kearse ("Kearse"), responded to the Grievance Complaints with its own letter (the "Kearse Letter"), advising the Law Professors that, because the complaints were "based on information derived from public sources, specifically, court decisions and court records," the Committee would initiate any investigation *sua sponte*. (<u>See</u> Pls. 56.1 ¶ 5; Def. 56.1 ¶ 60; <u>see</u> <u>also</u> Ex. 2 to Compl.) Accordingly, pursuant to Second Department policy, none of the Law Professors would receive notice of action or inaction on their Grievance

---

[6] The twenty-one Grievance Complaints were at first filed in the Grievance Committee where venue was proper; all were transferred to the Committee involved in this litigation as related cases. (<u>See</u> Ex. 3 to Wells Decl.)

Complaints. (See Pls. 56.1 ¶¶ 6-7; Def. 56.1 ¶¶ 54, 63; Ex. H to Sonnenfeldt Decl. at '016.).

To date, not one of the twenty-one original Grievance Complaints has resulted in a public form of discipline. (See Pls. 56.1 ¶ 4.) Whether the Grievance Complaints are still pending, were dismissed, or resulted in nonpublic discipline is not known. Plaintiffs have never made a Good Cause Application to review the records or proceedings related to their Grievance Complaints. (See Def. 56.1 ¶¶ 64.) However, the Law Professors wrote to the Committee complaining that the Committee had given the Law Professors "no information whatsoever" and "request[ed] an update about each grievance that [they] filed" pursuant to complainants' rights set forth at 22 N.Y.C.R.R. §§ 1240.2(e) and 1240.7(d). (Ex. 2 to Attadgie Decl.) This letter did not result in any disclosure of information about the Grievance Complaints.

D.   THIS LITIGATION AND RELEVANT PROCEDURAL BACKGROUND

Plaintiffs initiated this suit pursuant to 42 U.S.C. § 1983 on November 4, 2021, against Georgia Pestana, Corporation Counsel of the City of New York; Melinda Katz, Queens County District Attorney; Andrea Bonina, Chair of the Committee; Kearse; and Justice LaSalle (together,

21

"Defendants").[7] (See Sealed Complaint, Dkt. No. 1.) Especially relevant to the instant motions, Justice LaSalle was named as a defendant in his official capacity as Presiding Justice of the Second Department. (See id.) Plaintiffs named five claims for relief: (1) that Defendants retaliated against the Law Professors in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment of the United States Constitution and Article I, Section 8 of the New York Constitution, both facially and as-applied (the "Third Claim"); (4) Defendants violated the Constitutions of the United States and of New York by denying Plaintiffs their right to access government proceedings and records (the "Fourth Claim"); and (5) if the Court finds that Section 90(10) is not unconstitutional, that Defendants must allow access to the records at issue under the statute's good-cause exception. (See id.) They seek declaratory and injunctive relief. (See id.) The exhibits to the Complaint — including the Johnson Letter and the Kearse Letter — were, at first, filed under seal. (See id.)

---

[7] Plaintiffs dismissed by stipulation all claims other than the Fourth Claim and all Defendants other than Justice LaSalle. (See Dkt. No. 158; Dkt. No. 208.) Accordingly, the Court's decision on the parties' instant motions for summary judgment on the Fourth Claim against Justice LaSalle resolves all outstanding matters in this case.

Shortly thereafter, this Court issued an order upon Plaintiffs' motion, authorizing the exhibits to the Complaint to be unsealed. See Civil Rights Corps v. Pestana, No. 21 Civ. 9128, Dkt. No. 58, 2022 WL 220020 (S.D.N.Y. Jan. 25, 2022) ("CRC I"). Plaintiffs then filed an unsealed Complaint with all exhibits visible to the public. (See Compl.) This Court later considered and mostly denied Defendants' motions to dismiss, reserving some issues raised by those motions for future consideration. See Civil Rights Corps v. Pestana, No. 21 Civ. 9128, Dkt. No. 90, 2022 WL 1422852 (S.D.N.Y. May 5, 2022) ("CRC II").

In a subsequent decision, this Court ruled in favor of Plaintiffs as to all the reserved issues on Defendants' motions to dismiss and granted Plaintiffs' motion for partial summary judgment on their Third Claim. See Civil Rights Corps v. Pestana, No. 21 Civ. 9128, Dkt. No. 94, 2022 WL 2118191 (S.D.N.Y. June 13, 2022) ("CRC III"). More specifically, the Court held that "Section 90(10)'s prohibition on (1) publication of attorney grievance complaints by the private individuals who filed the complaints, and (2) publication of correspondence related to grievance complaints or . . . Committee business by the private recipients of that correspondence" to constitute a prior restraint on constitutionally protected speech, and that the restraint was

not narrowly tailored to protect a compelling governmental interest. CRC III, at *7; see also id. at *10. The Court denied summary judgment on the Third Claim to the extent it raised a facial challenge to Section 90(10). Id. at *10.

After the close of discovery, Plaintiffs moved for summary judgment on the Fourth Claim with an attached memorandum of law and evidentiary submissions. (See Dkt. No. 174 ("Plaintiffs' Motion"); Dkt. No. 175 ("Pls. Mem."); see also Pls. 56.1; Wells Decl.) Amicus curiae Floyd Abrams Institute for Freedom of Expression ("Amicus") filed a brief in support of Plaintiffs' Motion. (See Dkt. No. 184 ("Amicus Br.").) Following the Court's approval of an extended briefing schedule and memoranda of law with excess pages, Justice LaSalle filed his opposition to Plaintiffs' Motion and filed a cross-motion for summary judgment on the Fourth Claim, with an attached memorandum of law and evidentiary submissions. (See Dkt. No. 191 ("Defendant's Motion"); Dkt. No. 199 ("Def. Mem."); see also Def. 56.1; Def. 56.1 Counter; Bonina Decl.; Kearse Decl.; Joseph Decl.; LaSalle Decl.; Sheridan Decl.; Sonnenfeldt Decl.)

Plaintiffs' response opposed Defendant's Motion and offered reply arguments in further support of Plaintiffs' Motion. (See Dkt. No. 202 ("Pls. Response Mem."); see also Pls. 56.1 Counter; Attadgie Decl.) Defendant's response

offered reply arguments in further support of Defendant's Motion. (See Dkt. No. 205 ("Def. Response Mem.").)

Plaintiffs seek two forms of relief on their Fourth Claim. First, Plaintiffs seek a declaration that they may access the "dispositions" of the Grievance Complaints that may have reached disposition pursuant to 22 N.Y.C.R.R. § 1240.7(d)(1) or (d)(2), i.e., "where the [G]rievance [C]ommittee or its Chief [Attorney] disposes of" a Grievance Complaint. (Pls. Mem. at 1.) This access would include "letters of dismissal, advisement or admonishment, opinions authorizing formal disciplinary hearings and/or decisions on reconsideration or review." (Id.) Second, Plaintiffs seek a declaration that they may have "live access to any hearings and related submissions and decisions before the Appellate Division (including those before a special referee)." (Id.)

## II.  **LEGAL STANDARD**

Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, "[s]ummary judgment is proper if, viewing all facts of record in [a] light most favorable to [the] non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry,

77 F.3d 34, 35 (2d Cir. 1996) (per curiam). The role of the
Court in ruling on the motion "is not to resolve disputed
issues of fact but to assess whether there are any factual
issues to be tried, while resolving ambiguities and drawing
reasonable inferences against the moving party." Knight v.
U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). Thus,
"[o]nly disputes over facts that might affect the outcome of
the suit under the governing law" preclude summary judgment.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    The moving party bears the burden of proving that no
genuine issue of material fact exists or that, because of the
paucity of evidence presented by the nonmovant, no rational
jury could find in favor of the nonmoving party. See Gallo v.
Prudential Residential Servs., L.P., 22 F.3d 1219, 1223–24
(2d Cir. 1994). "[T]he mere existence of *some* alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the
requirement is that there be no *genuine* issue of *material*
fact." Liberty Lobby, Inc., 477 U.S. at 247–48 (1986).

    Though a party opposing summary judgment "may not rely
on mere conclusory allegations nor speculation," D'Amico v.
City of New York, 132 F.3d 145, 149 (2d Cir. 1998), summary
judgment is improper if any evidence in the record allows a
reasonable inference to be drawn in favor of the opposing

party. See Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

### III. DISCUSSION

The Court must consider the threshold jurisdictional and immunity issues raised by Defendant's Motion before it can consider the merits of Plaintiffs' First Amendment claim. The Court proceeds first with issues that could affect jurisdiction. See Lance v. Coffman, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."). The Court then addresses the issues of abstention (which are discretionary but implicate jurisdiction) and the affirmative defenses of absolute immunity before turning to Plaintiffs' constitutional claims.

### A.   JURISDICTION

The State makes three arguments asserting that this Court does not have jurisdiction to decide the Fourth Claim: (1) that Plaintiffs do not have standing to bring their claim (see Def. Mem. at 13-17), (2) that Plaintiffs' claim is unripe (id. at 16, 30-31), and (3) that Justice LaSalle is entitled to sovereign immunity under the Eleventh Amendment (id. at 17-18). The Court finds none of these points availing and holds that it has jurisdiction to rule on the Fourth Claim.

1.  <u>Standing</u>

The federal judicial power extends only to "Cases" and "Controversies." U.S. Const. art. III § 2; <u>see</u> <u>United States v. Texas</u>, 599 U.S. 670, 675 (2023); <u>Nat'l Coalition on Black Civic Participation v. Wohl</u>, 661 F. Supp. 3d 78, 108 (S.D.N.Y. 2023). "[A] case or controversy can exist only if a plaintiff has standing to sue." <u>Texas</u>, 599 U.S. at 675; <u>see</u> <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016); <u>Wohl</u>, 661 F. Supp. 3d at 108.

Standing requires the existence of "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," plus that the injury was caused by the defendant's conduct and that judicial action would redress the injury. <u>Wohl</u>, 661 F. Supp. 3d at 108 (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)); <u>see</u> <u>also</u> <u>Spokeo</u>, 578 U.S. at 339. When seeking prospective declaratory or injunctive relief against future harm, as in this case, "threatened injury must be *certainly impending* to constitute injury in fact." <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013) (emphasis in original) (quoting <u>Whitmore v. Arkansas</u>, 459 U.S. 149, 158 (1990)); <u>see</u> <u>also</u> <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 435 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive

relief to prevent the harm from occurring, at least as long as the risk of harm is sufficiently imminent and substantial."). When First Amendment principles are at stake, the rules of standing are "somewhat relaxed" to avoid an irreparable chilling effect on protected speech. <u>Nat'l Org. for Marriage, Inc. v. Walsh</u>, 714 F.3d 682, 689 (2d Cir. 2013).

First turning to whether Plaintiffs' injury-in-fact is sufficiently concrete and particularized, the ongoing refusal of access to government proceedings and public records can itself satisfy the Article III inquiry. Denial of information to which a plaintiff is otherwise entitled constitutes a concrete and particularized injury-in-fact. <u>See</u> <u>Fed. Election Comm'n v. Akins</u>, 524 U.S. 11, 21 (1998) ("The 'injury in fact' that respondents have suffered consists of their inability to obtain information."); <u>Public Citizen v. Dep't of Just.</u>, 491 U.S. 440, 449 (1989) (acknowledging "a sufficiently distinct injury to provide standing" where plaintiffs were denied information that would allow them to "scrutinize" the activities of government); <u>see also</u> <u>N.Y. Civ. Lib. Union v. N.Y.C. Transit Auth.</u>, 684 F.3d 286, 295 (2d Cir. 2012) ("<u>NYCTA</u>") (holding that denial of access to administrative hearings constituted injury-in-fact); <u>Am. Canoe Ass'n Inc. v. City of Louisa Water & Sewer Comm'n</u>, 389 F.3d 536, 542 (6th

Cir. 2004) (holding that denial of access to statutorily required disclosures constituted injury-in-fact).

At the outset, the Court rejects the State's view that the informational injury suffered by Plaintiffs is not an injury to a legally protected right. Without passing premature judgment on Plaintiffs' constitutional claim, the First Amendment as a general matter embodies a "qualified . . . right of access" to certain proceedings. Press-Enter. Co. v. Superior Court, 478 U.S. 1, 9 (1986). That right is enforceable in Court and forms the basis of this action.[8]

The Court likewise rejects the view that this case implicates the holdings of Linda R.S. v. Richard D., 410 U.S. 614, 617-18 (1973), and In re Att'y Disciplinary Appeal, 650 F.3d 202, 204 (2d Cir. 2011), which stand for the simple proposition that no person has standing to compel the government's prosecution or discipline of someone else. Those cases are inapposite where, as here, Plaintiffs have not asked this Court to order disciplinary authorities to take any action with respect to suspected prosecutorial misconduct.

---

[8] The State, oddly, also cites to Section 90(10) for additional support that Plaintiffs have no legal entitlement to the Sealed Records and Proceedings. Whether Section 90(10) is constitutionally valid as applied to Plaintiffs is the central issue that the Court has been asked to decide. Section 90(10) cannot itself bar consideration of Section 90(10)'s constitutionality.

Rather, Plaintiffs ask the Court to declare only that they have a right to see how the State has handled Plaintiffs' Grievance Complaints — whatever ultimate result the State reaches. Accordingly, the relief requested on the Fourth Claim complies with the rule of <u>Linda R.S.</u> and related cases. <u>See</u> 410 U.S. at 618.

Finally, the Court is not bound to reject Plaintiffs' assertion of informational injury under the Supreme Court's holding in <u>TransUnion LLC v. Ramirez</u>, which clarifies that loss of access to information does not suffice to establish standing absent "downstream consequences" or "adverse effects." 594 U.S. at 442. In <u>Ramirez</u>, the plaintiffs could not demonstrate the "downstream consequences" or the "adverse effects" of the defendant's failure to maintain certain information in a particular format pursuant to the Fair Credit Reporting Act, and therefore had no standing to sue. <u>Id.</u> at 442. Though Congress could facilitate lawsuits by passing the disclosure requirements of the Fair Credit Reporting Act, the defendant credit agency could not be liable if its violations of that statute did not affect the plaintiff's money, property, health, reputation, or a similar legally protectible interest recognized at common law. <u>See</u> <u>id.</u> at 440.

The effect on Plaintiffs' ability to meaningfully participate in governmental processes is the downstream consequence that follows from Defendant's enforcement of Section 90(10).[9] See Akins, 524 U.S. at 21; Public Citizen, 491 U.S. at 449-50 (accepting injury-in-fact where information was relevant to public scrutiny of judicial appointment process); NYCTA, 684 F.3d at 295 (accepting injury-in-fact where information was relevant to advocacy and representation of clients in government hearings).

Akins, for instance, acknowledged that a lack of information concerning a political action group would impact the plaintiffs' abilities to understand the source of funding for political candidates and, accordingly, the informational injury impaired the plaintiffs' ability to make informed decisions at the ballot box. 524 U.S. at 21. The instant case involves a similar injury. The judges who oversee the Second Department's attorney disciplinary apparatus are elected to the bench and subsequently appointed to the Appellate Division by New York's governor, who is also elected. Further, the Grievance Complaints at the heart of this case concern

---

[9] Plaintiffs are wrong to advance the proposition that a violation of any provision of the Constitution is sufficient to confer standing upon those affected. (see Pls. Response Mem. at 2-3.) See, e.g., United States v. Richardson, 418 U.S. 166 (1974) (dismissing on standing grounds of a suit alleging violation of Congress's constitutional responsibility to make a regular statement of all public expenditures).

the allegedly unethical conduct of practicing attorneys in the course of their work for the Queens County District Attorney, who likewise is elected to that role. Democratic processes assure those officials' accountability to the public, and the democratic process functions poorly in the absence of relevant information.

Just as in Akins, Plaintiffs have suffered a real, non-conjectural injury to their ability to "participate more effectively" in the democratic process, either by voting or advocating for candidates. 524 U.S. at 21; see Public Citizen, 491 U.S. at 449. Democratic restraints on the conduct of government officers are critically weakened when the government does not allow the public to review or discuss its work. See, e.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 604 (1982) (acknowledging the public's right under the First Amendment to access criminal trials because "the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government"); Houchins v. KQED, Inc., 438 U.S. 1, 14 (1978) ("A major purpose of the First Amendment was to protect the free discussion of governmental affairs." (cleaned up)). This is an especially important interest in the work of New York's Supreme Court justices, who are elected for lengthy fourteen-year terms and do not

regularly answer to democratic restraints on public power. Accordingly, the Court finds Plaintiffs' injury is concrete and particularized.

To complete the injury-in-fact inquiry, the Court must next consider whether the threat of future injury is sufficiently imminent — that is, "certainly impending" — for standing to exist. Clapper, 568 U.S. at 401 (requiring imminence of harm to a plaintiff when prospective declaratory relief is sought). The Court finds that the injury here is ongoing and certain to continue. See NYCTA, 684 F.3d at 295 (past and ongoing denial of constitutional rights sufficed to show imminence of future denial of constitutional rights).

Second Department policies promulgated in furtherance of Section 90(10) and codified in both the Manual and 22 N.Y.C.R.R. § 1240 require total confidentiality of attorney disciplinary proceedings absent limited exceptions. (See Pls. 56.1 ¶ 35 (Grievance Committee dispositions are confidential); id. ¶¶ 52, 53 (Second Department disciplinary proceedings and related documents are confidential unless and until charges are sustained).) Second Department personnel have already deployed those policies to seal the proceedings and records at issue in this case, including taking the affirmative step of denying Plaintiffs of their status as "complainants," which would have otherwise entitled them to

34

certain information concerning the dispositions of their Grievance Complaints under 22 N.Y.C.R.R. § 1240. (See Pls. 56.1 ¶ 5; Def. 56.1 ¶ 60; see also Ex. 2 to Compl.) Plaintiffs have lodged further requests with the Committee for information on the Grievance Complaints, with no success. (See Ex. 2 to Attadgie Decl.) There is no reason to believe secrecy in disciplinary matters in the instant case will end without intervention from this Court. Plaintiffs' injury is ongoing and continuing, and they have made all necessary showings for an injury-in-fact sufficient to bring their Fourth Claim.

The parties did not brief or dispute the other two elements of Article III standing: that the injury in fact is "fairly traceable" to Defendant and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Allco Fin. Ltd. v. Klee, 861 F.3d 82, 95-96 (2d Cir. 2017) (citations omitted). However, a minor factual dispute has emerged concerning Justice LaSalle's authority to effectuate a ruling in favor of Plaintiffs from this Court. More specifically, Justice LaSalle at times suggests that he does not have control over the records and proceedings in dispute as Presiding Justice, and therefore is unable to authorize their release. (See Def. Mem. at 17-19, 21; Def. Response Mem. at 8; Def. 56.1 Counter

¶¶ 20-21.) Plaintiffs, in response, point to an email from
Justice LaSalle's counsel, which states: "Justice
LaSalle . . . is the only defendant . . . with control over
the records and information Plaintiffs seek."[10] (See Ex. 1 to
Attadgie Decl.) Redressability is a requirement of
jurisdiction, so the Court must briefly address the issue.

The factual disagreement just described is not "genuine"
as that term is understood in the context of Rule 56, and
there is no reason to withhold summary judgment and conduct
a trial on this issue. Liberty Lobby, Inc., 477 U.S. at 247-
48; cf. Hartford Courant v. Pellegrino, 380 F.3d 83, 97-98
(2d Cir. 2004) (vacating dismissal of First Amendment
challenge to Connecticut state-court confidentiality policy
when record evidence and statutes were unclear whether named
defendants had legal authority to unseal records sought).

It is not in dispute that the records and information
sought by Plaintiffs are in the custody of either the
Committee staff or the Second Department Clerk's Office. (See
Def. 56.1 Counter ¶¶ 20-21.) The staff and employees of those

---

[10] For added context, Counsel's statement without any alteration reads as
follows: "The relief Plaintiffs seek in Claim IV is the disclosure of
information or records within the Grievance Committee, which is controlled
by the Second Department. Justice LaSalle who is sued in his official
capacity on behalf of the Second Department is the only defendant
necessary to defend against Claim IV and, if Plaintiffs prevail, with
control over the records and information Plaintiffs seek." (Ex. 1 to
Attadgie Decl.) Counsel made this statement during negotiations to dismiss
Justice LaSalle's then-co-defendants by stipulation. (See id.)

offices work for the Second Department and carry out the
policies set forth by the Presiding Justice. (Sheridan Decl.
¶ 2; Joseph Decl. ¶¶ 1-2, 7; Ex. 8 to Wells Decl. at 8; <u>see</u>
<u>also</u> LaSalle Decl. ¶¶ 3-4, 6.) The relevant staff of the
Committee and the Clerk's Office have likewise acknowledged
that they would release the relevant information upon an order
from a justice of the Second Department. (<u>See</u> Kearse Decl.
¶ 5; Joseph Decl. ¶¶ 12-15.) In addition, Justice LaSalle's
authority to so direct Second Department staff is consistent
with the delegation of plenary responsibility over the
"[s]upervision of the administration and operation" of
"disciplining of lawyers" to the Appellate Divisions or their
Presiding Justices. N.Y. Ct. R. 80.3(c).[11] Despite intimating
otherwise, Justice LaSalle has not set forth any evidence
that his directions to the staff of the Committee or Clerk's
Office would be disregarded or are otherwise legally
insufficient to effect relief here. Accordingly, the Court
finds redressability no bar to jurisdiction. Plaintiffs have
established standing to bring their Fourth Claim.[12]

---

[11] Exhibit 1 to the Attadgie Declaration is not evidence one way or the
other on the issue of Justice LaSalle's ability to implement a ruling of
this Court. Exhibit 1, which is an email from defense counsel, is hearsay.
Moreover, neither the email nor counsel's separately filed declaration
(<u>see</u> Sonnenfeldt Decl.) establishes counsel's basis to state facts about
the internal operations of the Second Department.

[12] The Court does not separately discuss Civil Rights Corps' standing
because the Law Professors have standing to bring the Fourth Claim. Only
one plaintiff with standing is required for a claim to proceed. <u>See</u>

2.   Ripeness

The State further contends that this action should be dismissed under the principle of ripeness, "a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967)). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hosp. Assoc., 538 U.S. at 808 (quotation marks omitted) (quoting Reno v. Catholic Social Servs., Inc., 509 U.S. 43, 57 n.8 (1993)).

The Court examines the jurisdictional question first. "To be justiciable, a cause of action must be ripe — it must present a real, substantial controversy, not a mere hypothetical question." Nat'l Org. for Marriage, Inc., 714 F.3d at 687 (quoting AMSAT Cable Ltd. v. CableVision of Conn., 6 F.3d 867, 872 (2d Cir. 1993)). "Ripeness overlaps in some respects with standing" in that, if there has not already been an injury, the threat of injury must be "imminent rather than conjectural." Bronx Household of Faith v. Bd. of Educ.

---

Village of Arlington Heights v. Metro. Hous. Dec. Corp., 429 U.S. 252, 264 n.9 (1977).

of City of N.Y., 492 F.3d 89, 111 (2d Cir. 2007). The ripeness
analysis assumes that an injury will accrue; the Court here
evaluates only whether "*at the time* of the litigation the
issues in the case are 'fit' for judicial decision." Bronx
Household of Faith, 492 F.3d at 111 (emphasis in original)
(quotation marks omitted) (quoting Nat'l Park Hosp. Ass'n,
538 U.S. at 814).

Here, a real and substantial controversy exists to
support ripeness, for many of the same reasons that the Court
addressed in its discussion on standing. (See supra, Section
III.A.1.) The injury to Plaintiffs' constitutional right to
the documents and proceedings related to the Grievance
Complaints is ongoing. As the Court has already noted, the
Chief Attorney for the Committee determined that Plaintiffs
had no "standing" (as a matter of Second Department policy)
to bring the Grievance Complaints and denied them ongoing
access to dispositional information that complainants would
otherwise be entitled to receive. (See Pls. 56.1 ¶ 5; Def.
56.1 ¶ 60.) At least one other request did not result in the
Second Department releasing the requested information. (See
Ex. 2 to Attadgie Decl.) Enforcement of Section 90(10)
against Plaintiffs establishes a "non-speculative" threat of
injury. See Huminsky v. Corsones, 396 F.3d 53, 80 n.27 (2d
Cir. 2005). Barring an unexpected change in the Second

Department's enforcement of Section 90(10)'s confidentiality requirements at the direction of Justice LaSalle, "[e]ach passing day" the proceedings and records at issue remain inaccessible to Plaintiffs "may constitute a separate and cognizable infringement of the First Amendment." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006) (quoting Grove Fresh Distrib., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994)). It is not speculation to conclude that Plaintiffs are suffering an ongoing injury, which is certain to continue.

The State takes a different view: that "denial of information" is not imminent because Plaintiffs never made a Good Cause Application for the proceedings and records they wish to have unsealed, and that therefore the question is (at least in theory) still open. The Court is not persuaded. It is well-established that exhaustion of remedies under state law is not required to make a Section 1983 claim ripe. See, e.g., Knick v. Twp. of Scott, Pa., 588 U.S. 180, 185 (2019) ("[T]he settled rule is that exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983." (brackets and quotation marks omitted)); Heck v. Humphrey, 512 U.S. 477, 480 (1994) (similar); Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501 (1982) (similar); Monroe v. Pape, 365 U.S. 167, 183 (1961) (similar). Section 1983 provides

"dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief." Patsy, 457 U.S. at 506; see also Knick, 588 U.S. at 185 (overruling the doctrine that required exhaustion of state-law remedies in Takings Clause cases, noting the dual-forum purpose of Section 1983 and its importance to Fourteenth Amendment principles). A Good Cause Application was not required as a matter of law.

Moreover, Plaintiffs make a persuasive case that a Good Cause Application would have been futile. (See Pls. Response Mem. at 4 n.2.) Neither Section 90(10) nor 22 N.Y.C.R.R. § 1240 supply a standard to decide Good Cause Applications other than the "discretion" of the Second Department. The typical Good Cause applicant is a law enforcement agency or an attorney disciplinary authority in another jurisdiction. (See Joseph Decl. ¶¶ 13-15.) Plaintiffs are neither. In analogous circumstances, the Second Department denied a Good Cause Application that sought to unseal the disciplinary hearing of a former prosecutor whose misconduct had already been reported in the media. In re The Innocence Project, Inc., Index No. 2019-05674, Decision & Order on Application (App. Div. 2d Dep't July 12, 2019), lv. denied, 141 N.E.3d 954 (N.Y. 2020). Indeed, the State does not contest Plaintiffs' observation that only three Good Cause Applications by the

general public have been granted since 1945 in any Appellate Division. See In re Aretakis, 791 N.Y.S.2d 687 (App. Div. 3rd Dep't 2005); In re New York News, 495 N.Y.S.2d 181 (App. Div. 1st Dep't 1985); In re Capoccia, 453 N.E.2d 497 (App. Div. 3rd Dep't 1983). It would be an academic exercise to ask Plaintiffs to first make Good Cause Applications before they can bring a civil rights action under Section 1983.

The State's more forceful argument is that Plaintiffs present no evidence that the hearings to which there is a purported right of access will ever occur because Second Department hearings do not occur in the majority of cases, which are handled by the Committee without Second Department involvement. (See Def. Mem. at 30.) Thus, declaratory judgment now that Plaintiffs may access Second Department hearings would constitute a premature, advisory opinion. (See id.)

This matter is not unripe simply because of the uncertainty over whether hearings will occur, or when. Uncertainty exists only because of Section 90(10), which does not allow the State to disclose even the pendency of disciplinary proceedings until they end in disbarment or suspension, let alone the stage to which those proceedings have progressed to date. Absent the rare imposition of public discipline in the Second Department, there is no future stage

of the disciplinary process where Plaintiffs will know more than they do now. As a matter of fundamental fairness, the State's position is untenable because it would allow Section 90(10) to stand in the way of a federal court's jurisdiction to hear a challenge to Section 90(10)'s constitutionality. The Second Circuit rejected a similar argument in Hartford Courant Co., LLC v. Carroll, 986 F.3d 211, 223 (2d Cir. 2021), when it noted that docket sheets of juvenile proceedings could not be maintained under seal because, without access to a case's docket, the public would never know what additional court records exist and which of those records the public may be interested in seeing. Cf. also Pellegrino, 380 F.3d at 83 (applying similar logic to recognize a First Amendment right to access docket sheets in ordinary civil cases).

The Court rejects the State's similar argument here and finds the case ripe even without knowing how or when the Committee or the Second Department will dispose of the Grievance Complaints. There are settled constitutional grounds to do so. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 143 (1974). By operation of law, the

disciplinary actions initiated by the Grievance Complaints must reach some disposition; the nature of that disposition, and the exact day on which it is handed down, are immaterial, because the State is already enforcing its policy of near-total confidentiality. Accordingly, there is no constitutional reason to delay this decision. For purposes of Article III, the Fourth Claim is ripe.

Prudential ripeness concerns likewise do not require the Court to wait before deciding Plaintiffs' Fourth Claim. The Court's prudential ripeness inquiry "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n, 461 U.S. 190, 201 (1983) (quoting Abbott Labs., 387 U.S. at 149).

As to the fitness of the issues for decision, the Fourth Claim presents a "purely legal question" about the applicability of the First Amendment right to access certain governmental proceedings and records, and whether that right has been infringed by the Second Department and the Committee. See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 167 (2014) (recognizing "purely legal" questions as particularly fit for judicial decision); United States v. Olivencia, 689 F. Supp. 1319, 1323 (S.D.N.Y. 1988) (same). The State does not identify any future stage in its disciplinary proceedings

where additional facts will be available to assist the Court
in its decision.

The hardship to Plaintiffs of withholding judicial
decision is apparent. The longer that Plaintiffs are deprived
access to the proceedings and records at the heart of this
dispute, the longer their purported constitutional right to
view the work of government is violated. As the Court already
noted in the context of standing: "Each passing day may
constitute a separate and cognizable infringement of the
First Amendment." Lugosch, 435 F.3d at 126 (quoting Grove
Fresh Distrib., Inc., 24 F.3d at 897) Further delaying this
decision would delay Plaintiffs' ability to have informed
discussions about the work of their elected officials, an
interest closely guarded by the First Amendment. See Globe
Newspaper Co., 457 U.S. at 604 (explaining the First Amendment
right exists to "ensure that the individual citizen can
effectively participate in and contribute to our republican
system of self-government" and collecting cases).

3.  Sovereign Immunity

The State's next argument for dismissal raises the
possibility that the Eleventh Amendment deprives federal
courts of jurisdiction to hear Plaintiffs' Fourth Claim. The
Eleventh Amendment generally bars "federal suits against

state governments by a state's own citizens" or by citizens
of another state. Woods v. Rondout Valley Cent. Sch. Dist.
Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006). As an arm of
the State, the New York state court system — including the
Second Department — is ordinarily entitled to this sovereign
immunity. See Napolitano v. Saltzman, 315 F. App'x 351, 351
(2d Cir. 2009); see also Gollomp v. Spitzer, 568 F.3d 355,
366 (2d Cir. 2009) (collecting cases that afford sovereign
immunity to New York courts).

Sovereign immunity under the Eleventh Amendment is
subject to three exceptions: "(1) Congress has abrogated
immunity, (2) the state has consented to suit, or (3) the Ex
parte Young doctrine applies." Brown v. New York, 975 F. Supp.
2d 209, 222 (N.D.N.Y. 2013) (citing Will v. Mich. Dep't of
State Police, 491 U.S. 58, 71 (1989)). The State's insistence
that it has not consented to suit is beside the point. The Ex
parte Young exception applies here, permitting this Court to
grant prospective relief against a State official sued in an
official capacity without the State's consent.

To determine whether a case can proceed under the Ex
parte Young exception to sovereign immunity, "a court need
only conduct a straightforward inquiry into whether the
complaint alleges an ongoing violation of federal law and
seeks relief properly characterized as prospective." Verizon

Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645
(2002) (cleaned up) (quoting Idaho v. Coeur d'Alene Tribe of
Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).
Both requirements are satisfied here. Plaintiffs allege an
ongoing violation of the First Amendment, namely that
proceedings and records related to the Grievance Complaints
have been sealed and are inaccessible. Moreover, Plaintiffs
seek forward-looking declaratory or injunctive relief to
prevent the Second Department from keeping those records and
proceedings under seal in the future. (See Pls. Mem. at 1.)

Justice LaSalle is not correct that Ex parte Young cannot
be applied to judges and court officials, like himself,
pursuant to the Supreme Court's holding in Whole Woman's
Health v. Jackson, 595 U.S. 30 (2021). (See Def. Mem. at 17-
18.) The Court does not read Jackson to set forth such a
categorical rule, and this action seems to comprise the
atypical instance where Jackson does not apply. Jackson
concerned a Texas law recognizing private civil actions
against physicians for "knowingly performing or inducing an
abortion" in certain circumstances. Jackson, 595 U.S. at 35
(brackets omitted). The Texas law did not fit neatly into the
Ex parte Young doctrine because the law did not provide for
enforcement by state government officials (the typical

subjects of Ex parte Young injunctions) but rather by any private citizen. Jackson, 595 U.S. at 35-36.

In federal court, a group of plaintiffs sued a Texas state judge and a Texas court clerk (among others), seeking an injunction that would restrain those officials from adjudicating lawsuits under Texas's new private civil action or even accepting complaints that brought suit under the new Texas statute. Jackson, id. at 36-37. The injunction proposed by the Jackson plaintiffs was beyond the powers of federal courts under the Ex parte Young exception. Ex parte Young explicitly holds that the power to enjoin state officials from enforcement of the law "does not include the power to restrain a [state] court from acting *in any case brought before it*." Ex parte Young, 209 U.S. 123, 163 (1908) (emphasis added).

In its reasoning, Jackson underscores that the role of judges and clerks is not fairly characterized as enforcing statutes in the way executive or administrative officials might; rather, judges and their staffs "work to resolve disputes" between litigants pursuant to statutes. 595 U.S. at 39. Moreover, if state judges commit constitutional error, their decisions may be appealed, ultimately to the United States Supreme Court pursuant to 28 U.S.C. § 1257 to vindicate constitutional protections. See Jackson, 595 U.S. at 39. In

the typical Ex parte Young case, an injunction against state
executive or administrative officials is permissible to
prevent an enforcement action on the basis of an
unconstitutional law in the first place, so that federal
judges do not ever need to instruct state judges how to
adjudicate particular matters. Jackson, 595 U.S. at 39. Such
oversight of federal courts over state courts "would be a
violation of the whole scheme of our Government." Id. (quoting
Ex parte Young, 209 U.S. at 163).

Jackson does not change the result of a case where, as
here, a plaintiff does not challenge the adjudicatory acts of
a judge as unconstitutional, but rather a judge's
administrative and executive acts necessary to run the
business of court. Plaintiffs challenge only Justice
LaSalle's administrative implementation of Section 90(10),
pursuant to which all attorney disciplinary hearings in the
Second Department are conducted behind locked doors, and all
disciplinary records are kept under lock and key unless the
severe sanctions of disbarment or suspension occur. The
relief sought in this case would not compel Justice LaSalle,
the Second Department, or the Committee to take any specific
action in relation to the merits of the Grievance Complaints
(or any other dispute before the Second Department). See,
e.g., Bliven v. Hunt, 579 F.3d 204, 211 (2d Cir. 2009)

(observing that the "principal hallmark of the judicial
function is a decision in relation to a particular case").
This distinguishes Justice LaSalle from the judges in
Jackson, where plaintiffs sought an injunction barring judges
from entertaining specific disputes under the Texas law.

The Eighth Circuit's decision in Courthouse News Serv.
v. Gilmer supplies additional support for this conclusion. 48
F.4th 908 (8th Cir. 2022). In Gilmer, the plaintiff sought an
injunction requiring Missouri state-court officials to
provide immediate public access to electronically filed
complaints, instead of delaying public access while the state
court administratively processed the complaints. 48 F.4th at
910. Missouri state-court officials responded that the suit
should be dismissed because Jackson denied a federal court
the power to enjoin state court officials. 48 F.4th at 910-
11. The Court of Appeals rejected that reading of Jackson,
instead observing that Jackson simply reaffirms the ordinary
rule that "state sovereign immunity shields state-court
judges and clerks from prospective relief that will interfere
with their ability to 'act[] in any case.'" 48 F.4th at 912
(quoting Ex parte Young, 209 U.S. at 163). Or, in other words,
with respect to state judiciaries' sovereign immunity, a
federal court's Ex parte Young analysis must turn on whether
the federal court's injunction would impact the state court's

"exercise [of] jurisdiction" to decide the merits of particular cases. Gilmer, 48 F.4th at 912 (quoting Ex parte Young, 209 U.S. at 163).

In Jackson, an injunction preventing Texas courts from accepting certain complaints effectively barred the state courts from making their own determination on the merits of those complaints; that injunction violated the state's sovereign immunity. 595 U.S. at 39. In Gilmer, an injunction requiring Missouri courts to make civil complaints publicly available in a timely manner had no effect of preventing Missouri state judges from deciding the outcome of any complaint; the injunction was therefore permissible under Ex parte Young. 48 F.4th at 912. The facts of this case are far more similar to Gilmer than they are to Jackson; the relief sought by Plaintiffs would declare that Plaintiffs must be able to observe certain disciplinary hearings in the Second Department, and inspect certain disciplinary records. This relief would not impact how the Second Department or the Committee decides the merits of any of the Grievance Complaints, and their jurisdiction to reach a decision in any disciplinary matter would be untouched.

The Court concludes it has jurisdiction to enter prospective declaratory or injunctive relief against Justice

LaSalle in his official capacity, notwithstanding Eleventh
Amendment sovereign immunity.

B.  ABSTENTION

Though the Court has just concluded that it has
jurisdiction under Article III and the Eleventh Amendment to
hear this case, the United States Supreme Court has recognized
"certain instances in which the prospect of undue
interference with state proceedings counsels against federal
relief." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72
(2013) (citing New Orleans Pub. Service, Inc. v. Council of
City of New Orleans, 491 U.S. 350, 368 (1989) ("NOPSI")).
Under these so-called abstention doctrines, a federal court
will refuse to enter relief that would interfere with critical
state government functions despite constitutional and
statutory subject matter jurisdiction to do so. See NOPSI,
491 U.S. at 359; see also CRC II, 2022 WL 1422852, at *3.
Abstention is warranted only in "exceptional" cases;
ordinarily, "a federal court's obligation to hear and decide
a case is virtually unflagging." Trump v. Vance, 941 F.3d
631, 637 (2d Cir. 2019) (quoting Sprint Commc'ns, 571 U.S. at
77).

When it ruled on Defendant's motion to dismiss in CRC II,
this Court found three such abstention doctrines

inapplicable: Younger abstention, O'Shea abstention, and
Pullman abstention.[13] See 2022 WL 1422852, at *3-7. Again at
summary judgment, the State raises the Younger and O'Shea
doctrines (see Def. Mem. at 21-24), and now the Rooker-
Feldman[14] doctrine as well (see id. at 20-21). Only a brief
reevaluation of Younger and O'Shea is necessary because
CRC II is the law of the case, and the summary judgment record
does not supply a reason to reach a different conclusion than
before. See Choi v. Tower Research Cap. LLC, 2 F.4th 10, 21
(2d Cir. 2021) (instructing a court to follow its prior
decisions in the same litigation absent a change in law, newly
available evidence, clear error, or manifest injustice).[15] The
Court likewise concludes that the Rooker-Feldman doctrine is
inapplicable under the facts in this litigation.

---

[13] See generally Younger v. Harris, 401 U.S. 37 (1971); O'Shea v.
Littleton, 414 U.S. 488 (1974); R.R. Comm'n of Tex. v. Pullman Co., 312
U.S. 496 (1941).

[14] See generally D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983);
Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

[15] Statements that the Court limited its abstention holding in CRC II to
the relief requested on Plaintiffs' Third Claim — leaving an open question
as to abstention on the Fourth Claim — are not accurate. (See Def. Mem.
at 23-24.) Defendant's motion to dismiss was not limited to the Third
Claim but rather discussed all forms of relief sought by Plaintiffs,
including on the Fourth Claim. (See Dkt. No. 41.) The same is true of the
Court's analysis on that motion to dismiss. See CRC II, 2022 WL 1422852,
at *5 (citing and analyzing the Complaint's Prayer for Relief in its
entirety).

1.    <u>Younger</u>

The Court first considers the State's argument (<u>see</u> Def. Mem. at 24) that <u>Younger v. Harris</u>, 401 U.S. 37 (1971), requires dismissal of the Fourth Claim. <u>Younger</u> and its progeny warn of federal injunctions dictating the course of ongoing state criminal proceedings, which would curb the state's ability to enforce its own laws and act independently of the federal government. See <u>Sprint Commc'ns</u>, 571 U.S. at 72-73. Attorney disciplinary proceedings are of a sufficiently similar character to criminal proceedings that the same notions of comity and federalism come into play. <u>See</u> <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.</u>, 457 U.S. 423, 434-35 (1982); <u>see</u> <u>also</u> <u>CRC II</u>, 2022 WL 1422852, at *4.

The Court did not abstain from exercising jurisdiction in <u>CRC II</u> because it "would not be stepping in or directly interfering with such [attorney disciplinary] proceedings." 2022 WL 1422852, at *5. In its motion for summary judgment, the State makes no citation to any change in law or newly available evidence that would amount to a "cogent and compelling" reason to conclude otherwise. <u>Choi</u>, 2 F.4th at 21.

Given the State's apparent misunderstanding of Plaintiffs' Complaint, one additional point from <u>CRC II</u> is

worth emphasis. Plaintiffs have not asked for federal relief directing the Second Department or the Committee to discipline any attorney more harshly (or discipline any attorney at all); rather, Plaintiffs have asked for federal relief only to know how the Second Department and the Committee handle the Grievance Complaints, regardless of the result before the Committee or the Second Department on the merits of those Grievance Complaints. See CRC II, at *5. Incidental effects on the disciplinary process caused by the "increased attention and publicity" of disciplinary proceedings, CRC II, 2022 WL 1422852 at *5, are not the type of "undue interference with state proceedings [that] counsel[] against federal relief," Sprint Commc'ns, 571 U.S. at 72.

### 2.   O'Shea

Justice LaSalle likewise fails in his second attempt to raise O'Shea v. Littleton, 414 U.S. 488 (1974), as a reason this Court should not exercise jurisdiction over the Fourth Claim. (See Def. Mem. at 21-24.) Under O'Shea and "the principle known as comity[,] a federal district court has no power to intervene in the internal procedures of the state courts." Kaufman v. Kaye, 466 F.3d 83 (2d Cir. 2006) (quoting Wallace v. Kern, 520 F.2d 400, 405 (2d Cir. 1975)). Even if

there is no ongoing proceeding in state court that would
trigger Younger abstention, "federal courts must abstain
where failure to do so would result in an ongoing federal
audit of state criminal proceedings" or would "legislate and
engraft new procedures upon existing state practices."
Disability Rights N.Y. v. New York, 916 F.3d 129, 134, 136
(2d Cir. 2019) (quotation marks and citations omitted).

In CRC II, the Court assumed all facts in the Complaint
to be true and held that O'Shea and its progeny did not apply
because "the injunctive relief Plaintiffs request does not
ask the Court to change state procedure for handling
misconduct proceedings or anything similar." 2022 WL 1422852,
at *6. The State now argues that the Court should depart from
its earlier ruling because granting Plaintiffs' motion would
(1) effectively "usurp the state court's role" to adjudicate
Good Cause Applications (Def. Mem. at 24), and (2) "require
an extensive revamp of the procedures" for records of
disciplinary proceedings "to make them available" to the
public. (Def. Response Mem. at 9).[16] Neither is reason for the
Court to abstain under O'Shea.

---

[16] The State also believes that a ruling in Plaintiffs' favor would
eviscerate, without notice, any expectation of confidentiality held by
the former prosecutors whose alleged misconduct is the subject of the
Grievance Complaints. (See Def. Mem. at 23; Def. Response Mem. at 8-9.).
As an initial matter, Plaintiffs' accusations against the former
prosecutors are already public. See CRC III, 2022 WL 2118191, at *13
(declaring Plaintiffs' First Amendment right to publish the Grievance

The concern that a federal court would necessarily dictate the outcome of Good Cause Applications is not as dire as the State would like the Court to believe. Plaintiffs have requested declaratory relief on a question of constitutional law, not a question of what constitutes "good cause" for the purposes of the Good Cause Application process. (See Pls. Mem. at 1.) A determination by this Court of "good cause" under Section 90(10) was the subject of Plaintiffs' Fifth Claim for Relief, which Plaintiffs have since withdrawn. (See Compl. ¶¶ 106-107; see also Dkt. No. 158.) Assuming the Court rules against the State on Plaintiffs' constitutional claims, the procedural mechanism by which the State complies with the Constitution is not material. See Courthouse News Serv. v. Planet, 750 F.3d 776, 791 (9th Cir. 2014) (reversing O'Shea abstention where plaintiff sued a state court system and noting abundant options by which the state court could produce the public records at issue).

---

Complaints they authored); see also Kearse Letter (noting that the Grievance Complaints were based on public sources); *Queens: Grievances alleging prosecutorial misconduct in the State of New York, within Queens, New York City*, Accountability New York, accountabilityny.org/grievances/queens (publishing the Grievance Complaints). Moreover, the touchstone of a comity-based abstention analysis is friction between state and federal courts. See Disability Rights N.Y., 916 F.3d at 136. The reputational interests of individual attorneys are a minor factor that have not affected that abstention analysis in any case of which the Court is aware.

It is not clear why the State implies it will insist on a Good Cause Application to be made pursuant to Section 90(10) if the Court declares Section 90(10) to violate Plaintiffs' First Amendment rights. The affirmative requirement of "good cause" to access public records falls among the provisions of Section 90(10) that Plaintiffs find constitutionally offensive to the First Amendment's presumption of access to governmental proceedings. (See, e.g., Compl. ¶¶ 41-42; Pls. Response Mem. at 4 n.2.) Moreover, Plaintiffs seek declaratory relief, which — unlike injunctive relief — mitigates federal-state friction because it allows the state court "the widest latitude in the dispatch of their own affairs." Gilmer, 48 F.4th at 915 (cleaned up) (quoting Rizzo v. Goode, 423 U.S. 362, 378-39 (1976)) (reversing dismissal pursuant to O'Shea where plaintiffs sought modifications to a state court system's electronic filing system); see Planet, 750 F.3d at 791 (same).

The State also argues that relief in Plaintiffs' favor will, in effect, "require an extensive revamp" of Court procedures. (Def. Response Mem. at 9.) Plaintiffs seek access to discrete records and legal proceedings in twenty-one particular matters, and they expressly disclaim a facial challenge to Section 90(10) or its implementing policies and regulations. (See Compl. ¶¶ 96-105.) Contrary to the State's

fears, it is not obvious that every future case challenging the confidentiality of New York attorney disciplinary proceedings will be presented on indistinguishable facts. Section 90(10) may well be consistent with the First Amendment applied in other circumstances — for instance, if a plaintiff had notice rights as a complainant, or where a case does not involve alleged misconduct of state law enforcement officials, which implicates core First Amendment interests that "counsel[] against abstaining." Pellegrino, 380 F.3d at 100.

Yet, even crediting Justice LaSalle's fears as conceivable, reworking certain recordkeeping procedures (even if cumbersome) would not amount to the type of interference with a state court that O'Shea prohibits. O'Shea itself concerned a sweeping permanent injunction that prohibited two state judges from doing their work in a racially discriminatory way, including with respect to bail and sentencing proceedings. 414 U.S. at 501. Abstention was warranted there because the injunction sought would have been unworkable: it would have required "continuous supervision by the federal court" over a state court; it would have raised "inherent difficulties in defining the proper standards" for discrimination by which those judges' individual decisions could be evaluated; and it likewise would have risked leaving

the federal court without any mechanism for enforcing its injunction. Id. at 501-502.

The Supreme Court was wary that every future decision by the defendant judges in O'Shea would be re-litigated (with no clear legal standard) for compliance with the federal injunction. Id. It is continuous, indefinite, and intrusive oversight that runs counter to O'Shea. See Disability Rights N.Y., 916 F.3d at 131, 136-37 (abstaining under O'Shea where a federal court would oversee all future Article 17A guardianship proceedings in state courts); Kaufman, 466 F.3d at 86-87 (abstaining under O'Shea where a federal court would oversee all case assignment decisions in Second Department appeals); Miller v. Silbermann, 951 F. Supp. 485, 488 (S.D.N.Y. 1997) (abstaining under O'Shea where a federal court would oversee all city housing court cases). Moreover, the concerns of O'Shea are at their highest where a federal judge second guesses the good faith judgment and reasonable discretion of a state judge. 414 U.S. at 501 (discussing how federal courts could not second-guess bail and sentencing judgments in harmony with principles of comity).

Federal oversight of a state court's recordkeeping policies and the closure of a hearing room to the public are different. The scope of oversight is far smaller than in O'Shea, and the nature of oversight is far less intrusive.

The Ninth Circuit's decision in <u>Planet</u> is instructive on this distinction. 750 F.3d at 791. In <u>Planet</u>, a news organization alleged that the California state court system violated the First Amendment right of access by withholding civil complaints for administrative processing before releasing them to the public, delaying public access by hours or days. 750 F.3d at 791. Proposed injunctive relief required the defendant state court system to release most newly filed complaints by the end of the day, essentially imposing new procedural requirements on the state court that would prospectively apply in every new civil case. <u>Id.</u> at 791-92. The injunction bore some similarities to the type of prospective relief sought in <u>O'Shea</u> that applied in all future cases before the California state courts. 414 U.S. at 501-502.

Nevertheless, the Ninth Circuit held abstention to be inappropriate because there was little risk of continuous oversight by the federal court over California state courts.[17]

---

[17] Courthouse News Service, the plaintiff in <u>Planet</u>, brought near-identical suits in federal courts across the country seeking instantaneous access to civil complaints filed in state courts. Every circuit that has had an opportunity to consider the issue has adopted <u>Planet</u>'s analysis on <u>O'Shea</u>; both district courts in this circuit to have considered the issue have done the same. <u>See Courthouse News Serv. v. N.M. Admin. Ofc.</u>, 53 F.4th 1245 (10th Cir. 2022); <u>Courthouse News Serv. v. Gilmer</u>, 48 F.4th 908 (8th Cir. 2022); <u>Courthouse News Serv. v. Schaefer</u>, 2 F.4th 318 (4th Cir. 2021); <u>Courthouse News Serv. v. Glessner</u>, 549 F. Supp. 3d 169 (D. Me. 2021), <u>rev'd on other grounds sub. nom. Courthouse News Service v. Quinlan</u>, 32 F.4th 15 (1st Cir. 2022); <u>Courthouse News Serv. v. Gabel</u>, 2021 WL 5416650 (D. Vt., Nov. 19, 2021); <u>Courthouse News Serv. v.</u>

Future compliance with the federal court's ruling could be measured with a "bright-line" rule: either the state provided same-day access to complaints or not. <u>Planet</u>, 750 F.3d at 791. The concern that a federal court would have no discernable legal standard by which to measure compliance was therefore absent. Moreover, recordkeeping policies — <u>i.e.</u>, whether and when to make court records public — were different in kind from the decisions subject to federal oversight in <u>O'Shea</u>. <u>Planet</u>, 750 F.3d at 791. Unlike the ministerial recordkeeping policies in <u>Planet</u>, <u>O'Shea</u> concerned (among other issues) bail and sentencing determinations, decisions in which a judge's discretion, intuition, and experience play vital roles. <u>See</u> <u>id.</u>; <u>cf.</u> <u>O'Shea</u>, 414 U.S. at 501-502.

This case involves prospective relief no more intrusive than the relief granted in <u>Planet</u>. <u>See</u> 750 F.3d at 791.

---

<u>Tingling</u>, 2016 WL 8505086 (S.D.N.Y. Dec. 16, 2016). The only outlier is <u>Courthouse News Serv. v. Brown</u>, 908 F.3d 1063 (7th Cir. 2018).

Moreover, the Seventh Circuit's reasoning in <u>Brown</u> counseled that the federal courts should give state courts an opportunity to pass on the constitutionality of their own administrative policies in the first instance. <u>See</u> 908 F.3d at 1075. New York courts have signaled approval of Section 90(10)'s strict confidentiality regime in First Amendment challenges. <u>See</u> <u>In re The Innocence Project, Inc.</u>, Index No. 2019-05674, Decision & Order on Application (App. Div. 2d Dep't July 12, 2019) (denying Good Cause Application to attend disciplinary proceedings on First Amendment gorunds), <u>lv. denied</u>, 141 N.E.3d 954 (N.Y. 2020); <u>cf. also</u> <u>Johnson Newspaper Corp. v. Melino</u>, 564 N.E.2d 1046, 1051 (N.Y. 1990) (affirming closure of dentist's disciplinary hearing and citing Section 90(10) in support); <u>J.P. v. Chassin</u>, 594 N.Y.S.2d 930, 933-34 (App. Div. 4th Dep't) (same, concerning closure of medical doctor's disciplinary hearing), <u>aff'd</u> 619 N.E.2d 651 (N.Y. 1993); <u>Anonymous v. Arkwright</u>, 170 N.Y.S.2d 535, 537-38 (App. Div. 2d Dep't).

Plaintiffs seek a declaration concerning recordkeeping
policies rather than discretionary substantive or procedural
judicial decisions; they also request access to only twenty-
one specific cases, rather than every future case. Even if
further disputes arise over the extent of access granted to
Plaintiffs concerning the Grievance Complaints, the burden on
this Court to resolve such disputes would be no more onerous
than discovery in civil litigation regularly before this
Court. Again, assuming a result in Plaintiffs' favor, any
compliance concerns over production of records related to the
twenty-one Grievance Complaints at issue and access to any
related hearings would not be so unworkable as to properly
warrant invoking O'Shea and departing from the Court's duty
to decide matters brought before it.

### 3.  Rooker-Feldman

Justice LaSalle fares no better urging abstention under
Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923) and D.C. Ct. of
Appeals v. Feldman, 460 U.S. 462 (1983). (See Def. Mem. at
20-21.) The Rooker-Feldman doctrine exists to give full
effect to the Supreme Court's appellate jurisdiction over
state courts of last resort pursuant to 28 U.S.C. § 1257 by
declaring that "a United States District Court has no
authority to review final judgments of a state court in

judicial proceedings." Feldman, 460 U.S. at 482. Application of Rooker-Feldman depends on whether the District Court has been asked to review "state court decisions in particular cases arising out of judicial proceedings." Feldman, 460 U.S. at 486.

In similar circumstances seeking access to state court records, "where plaintiffs do not challenge specific closure orders but rather the sealing process as administratively implemented," the Second Circuit has confirmed that a District Court does not run afoul of Rooker-Feldman. Pellegrino, 380 F.3d at 101. In Pellegrino, the Second Circuit emphasized that Rooker-Feldman was inapplicable because the journalists seeking access to sealed proceedings "were not parties to — nor did they intervene in — the state litigations." 380 F.3d at 101. So too here.

An attorney grievance proceeding in New York, like a criminal proceeding, involves a dispute between the Committee and the respondent attorney. (See Def. 56.1 ¶ 47.) The complainant is not a party to the case but, at most, an interested observer. (See Def. 56.1 ¶ 25; Pls. 56.1 Counter ¶ 25.) See also 22 N.Y.C.R.R. § 1240.2(e); Morrow v. Cahill, 718 N.Y.S.2d 315, 316 (App. Div. 1st Dep't 2000).) Moreover, Plaintiffs are no longer complainants in any of the proceedings at issue. (See Kearse Letter.) Further

highlighting the similarity between this case and Pellegrino, state court employees acting on Justice LaSalle's policies of sealing certain records of the state court cannot be fairly said to be a judicial function, which generally consists of resolving a dispute between parties. 380 F.3d at 101. A state court performing a judicial function is the key factor that triggers Rooker-Feldman, and it is absent here where Plaintiffs have alleged unconstitutional denial of access to observe state court proceedings between two other parties. Feldman, 460 U.S. at 479.

    C.   ABSOLUTE IMMUNITY

    Having considered and rejected Justice LaSalle's arguments on jurisdiction and abstention, the Court now turns to the two affirmative defenses raised by Justice LaSalle's summary judgment motion: absolute judicial immunity and absolute legislative immunity. (See Def. Mem. at 18-20.) The Court concludes that neither defense applies.

        1.   Judicial Immunity

    When sued in their personal capacities, "[j]udges generally have absolute immunity from suits for money damages." Bliven, 579 F.3d at 209 (citing Forrester v. White, 484 U.S. 219, 225-26 (1988)); see also Sup. Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 734-35 (1980)

("[J]udges defending against § 1983 actions enjoy absolute immunity from *damages* liability for acts performed in their judicial capacities." (emphasis added)). Historically, judicial immunity has not "insulate[d] judges from declaratory or injunctive relief with respect to their judicial acts." <u>Consumers Union</u>, 446 U.S. at 735. Here, Plaintiffs seek declaratory judgment, not damages. Judicial immunity therefore does little to protect Justice LaSalle from relief granted against him in his official capacity in this case.

Justice LaSalle reads the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847 (1996) ("FCIA"), to say otherwise. (<u>See</u> Def. Mem. at 19.) The FCIA added a new clause to the text of Section 1983, which now specifies that in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

This Court rejected a similar interpretation of the FCIA in <u>CRC II</u>, which held that quasi-judicial immunity did not apply to Kearse, Chief Attorney to the Committee and a former named defendant in this case. <u>See</u> 2022 WL 1422852, at *11. The Court reasoned that "the amended text of Section 1983

66

explicitly allows for suits seeking declaratory relief"
against state judicial officers sued in their official
capacities. Id. (citing Brown v. City of New York, 210 F.
Supp. 2d 235, 239 n.6 (S.D.N.Y. 1999) ("The doctrine of
individual immunity does not protect against claims for
declaratory relief." (citing the Senate Report to the
FCIA))). The 1996 amendment to Section 1983 simply clarifies
that, when a state judge has been named as a defendant in a
civil rights suit seeking prospective relief, a plaintiff
must first obtain declaratory judgment before asking a
federal judge to enjoin the state judge.[18] The relief
Plaintiffs request on the instant motion is permissible under
the applicable judicial immunity doctrine.

## 2.  Legislative Immunity

Justice LaSalle next claims that he benefits from the
same absolute immunity accorded to legislators because, to
the extent he promulgates rules of professional conduct to
regulate attorneys or to administer the attorney disciplinary

---

[18] Defendant's last argument on this point is that injunctive relief is
unavailable here because "Plaintiffs have not demonstrated that a
declaratory decree was violated or unavailable." (Def. Mem. at 19.) This
argument makes no sense. Plaintiffs have not requested injunctive relief,
keeping with the FCIA's preference for declaratory relief in the first
instance as to judicial officers. Also, no declaratory decree has been
violated because the Court has not yet issued one. Whether declaratory
judgment is warranted is what the parties have asked the Court to decide
on the instant motion.

process, he performs a legislative function that must be free
from interference from federal courts. (See Def. Mem. at 19-
20.) The Court finds that this case does not implicate
legislative acts or legislative immunity.

"[F]ederal, state, and regional legislators are entitled
to absolute immunity from civil liability for their
legislative activities." Bogan v. Scott-Harris, 523 U.S. 44,
46 (1998); see also State Emps. Bargaining Agent Coal. v.
Rowland, 494 F.3d 71 (2d Cir. 2007). Plaintiffs insist that
this type of personal immunity is unavailable to Justice
LaSalle in this case because he has been sued in his official
capacity, not his personal capacity. (See Pls. Response Mem.
at 9 n.5.) Plaintiffs' position cannot be accepted because it
glosses over a key distinction in this area of the law.

Plaintiffs' position is correct only as to local
officials. "[D]ue to the historical unavailability of various
immunity defenses to *local governments*, those
governments . . . are not entitled to the benefit of any
immunities that might be available to *local officials* sued
under § 1983." Olma v. Collins, 499 F. App'x 98, 100 (2d Cir.
2010) (emphases added) (affirming propriety of injunction
against local officials sued in official capacity); see also
Altamonte v. City of Long Beach, 478 F.3d 100, 106 (2d Cir.
2007) (affirming an injunction against a local official,

68

"[i]mmunity, either absolute or qualified, is a personal defense that is available only when officials are sued in their individual capacities" (emphasis omitted)).

By comparison, state officials engaged in legislative acts are immune in both their personal and official capacities. And, in some circumstances, "legislative immunity may bar claims for injunctive relief against state officials." Rowland, 494 F.3d at 86; see also id. at 88 (describing the analysis a court must undertake to decide "whether the doctrine of legislative immunity is available to foreclose claims for injunctive relief in *official-capacity suits*" (emphasis added)); accord Alia v. Mich. Sup. Ct., 906 F.2d 1100, 1102 (6th Cir. 1990) ("The immunity granted is immunity from suit and applies whether the relief sought is money damages or injunctive relief.").

Even so, the Court is not convinced that Justice LaSalle is entitled to legislative immunity on this record. Legislative immunity applies only when (1) "committing the alleged violations, defendants were acting in their legislative capacities" and (2) "granting the requested relief would enjoin defendants in their performance of legislative functions." Rowland, 494 F.3d at 76 (cleaned up) (quoting Bogan, 523 U.S. at 54-56). In turn, to determine if an alleged act was made in a "legislative capacity," the Court

looks to "whether defendant['s] alleged acts were both: (1) substantively legislative, i.e., acts that involve policy making; and (2) procedurally legislative, i.e., passed by means of established legislative procedures." Rowland, 494 F.3d at 89-90 (citation and quotation marks omitted); see also Ass'n of Jewish Camp Operators v. Cuomo, 470 F. Supp. 3d 197, 212 (N.D.N.Y. 2020).

Defendant's argument fails to satisfy even the first element of legislative immunity: Justice LaSalle's conduct does not entail a substantive legislative decision. A "substantive legislative" decision is defined by "broad, prospective policymaking," as distinguished from administrative action, which affects "a single individual." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003); see also Altamonte, 478 F.3d at 108. It is not an act of policymaking to withhold information pursuant to statute concerning the results of specific cases; rather, in this case, Justice LaSalle gives effect to the legislature's purported preferred policy of nondisclosure in twenty-one particular instances. Forbidding Plaintiffs access to government records and proceedings is the challenged action in this case, and it is quintessentially administrative. See Berlickij v. Town of Castleton, 248 F. Supp. 2d 335, 343 (D. Vt. 2003) (rejecting legislative

immunity for town council's denial to plaintiff of access to legislative meetings); cf. also Dean v. Town of Hempstead, 527 F. Supp. 3d 347, 414 (E.D.N.Y. 2021) (legislative immunity did not apply to council member's public advocacy campaign to oppose one specific pending land-use permit application).

Justice LaSalle's contention that he acts legislatively in the sphere of attorney discipline has some force, but it is another mischaracterization of Plaintiffs' lawsuit. Judges do engage in legislative activity in their official capacities when promulgating an attorney code of conduct or rules of procedure for their respective courts — activities for which they are entitled to absolute immunity from monetary damages and injunctions. See, e.g., Consumers Union, 446 U.S. at 731; Forrester, 484 U.S. at 227. For that reason, a federal court cannot order state judges to promulgate (or repeal) specific rules. See Consumers Union, 446 U.S. at 731 (denying injunctive relief that would have required repeal of attorney advertising rules); see also Jewish Camp Operators, 470 F. Supp. 3d at 212. Yet Plaintiffs do not ask for relief to change the rules of professional conduct. Plaintiffs instead ask for access to specific hearings and records sealed by state courts pursuant to Section 90(10) and related Second Department policies.

Justice LaSalle's argument seems to conflate two of his
many roles related to managing the legal profession within
the Second Department: to make rules "[i]n furtherance of the
purpose of" confidentiality in disciplinary proceedings
(Section 90(10)), and to generally supervise the
"administration and operation" of the disciplinary system
(N.Y. Ct. R. § 80.3(c)). Second Department officials denying
public access to specific information on twenty-one specific
disciplinary cases constitutes a case-specific administration
of Second Department policy; such action is not legislatively
immune.

Justice LaSalle and his predecessors may have enacted
some of the policies that led to Plaintiffs' purported injury
here, but state policies are not insulated from judicial
review under legislative immunity "simply because the harm
alleged originated, in some sense, with a legislative act."
Rowland, 494 F.3d at 89; see also Jewish Camp Operators, 470
F. Supp. 3d at 212-13 (rejecting claim of legislative immunity
where New York's Governor had power to promulgate executive
orders related to the COVID-19 pandemic and enforce those
same orders, and plaintiffs challenged the application of
COVID-19 rules to their organization). This case does not
concern Justice LaSalle's legislative authority in the

disciplinary process, and legislative immunity is thus unwarranted.

In sum, none of the State's many arguments on jurisdiction, abstention, and immunity is sufficient to prevail here. This lawsuit alleges that the degree of secrecy with which the State treats attorney disciplinary matters deprives interested observers of the right to know about the work of the State government, as long as supplying the information at issue does not does not does not unduly interfere with the proper administration of state functions. The Fourteenth Amendment and 42 U.S.C. § 1983 allow federal courts to inquire into the constitutionality of state government practices, and that is what Plaintiffs ask the Court to do here. Justice LaSalle is an unusual defendant in that he is a judge; however, that is only because the governmental process at the center of this dispute happens to be attorney discipline, a regulatory duty many states assign to their courts. The Court's decision takes great care not to be construed as instructing Justice LaSalle how to decide any particular cases and controversies brought before him involving attorney grievance complaints. In our federal system, however, when the constitutionality of a state judicial officer's exercise of administrative functions is called into question, the action is subject to a federal civil

rights suit, subject to the specific exceptions described above. With that, the Court turns to the First Amendment.

Defendant's Motion is hereby **DENIED**.

D.   THE FIRST AMENDMENT

The First and Fourteenth Amendments to the Constitution prohibit the states from abridging freedom of speech, expression, and the press. See U.S. Const. amd. 1; Gitlow v. New York, 268 U.S. 652 (1925). "These expressly guaranteed freedoms share a common core purpose of assuring freedom of communication on matters relating to the functioning of government." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575 (1980) (plurality opinion). The freedom to discuss matters of government "would lose much meaning" if states could arbitrarily withhold information from the public. Id. at 576-77. More succinctly: "[f]ree speech carries with it some freedom to listen." Id. at 576.

To that end, the First Amendment embraces a qualified right of public access to some governmental proceedings and records to "ensure that this constitutionally protected 'discussion of governmental affairs' is an informed one." Globe Newspaper Co., 457 U.S. at 604-605 (quoting Mills v. Alabama, 384 U.S. 214, 218 (1966)). Although the Supreme Court has spoken on the First Amendment right of access only in the

context of criminal cases, "there is no principle that limits the First Amendment right of access to any one particular type of government process." <u>N.Y. Civ. Lib. Union v. N.Y.C. Transit Auth.</u>, 684 F.3d 286, 298 (2d Cir. 2012) ("<u>NYCTA</u>") (citation omitted); <u>see also</u> <u>Newsday LLC v. County of Nassau</u>, 730 F.3d 156, 163 (2d Cir. 2013) ("[W]e have noted that the First Amendment 'does not distinguish between criminal and civil proceedings,' but rather 'protects the public against the government's arbitrary interference with access to important information.'" (quoting <u>NYCTA</u>, 684 F.3d at 298)).

    To determine whether the First Amendment applies to a particular government proceeding or record, the Court must consider (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." <u>Carroll</u>, 986 F.3d at 219 (quoting <u>Press-Enter. Co. v. Superior Court</u>, 478 U.S. 1, 8 (1986) ("<u>Press-Enterprise II</u>")). These considerations of "experience" and "logic" must be considered together, "for history and experience shape the functioning of governmental processes." <u>Carroll</u>, 986 F.3d at 219 (quoting <u>Press-Enterprise II</u>, 478 U.S. at 9). Separate from the experience-and-logic test, the First Amendment likewise protects access to judicial documents that "are derived from

or are a necessary corollary of the capacity to attend" open proceedings. Newsday, 730 F.3d at 164; see also In re New York Times Co., 577 F.3d 401, 409 (2d Cir. 2009) ("New York Times II").[19]

Where it applies, the qualified First Amendment right of access creates only a presumption of openness rather than an absolute entitlement to proceedings and records. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006); Under Seal v. Under Seal, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017). "[That] presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." In re Grand Jury Subpoena, 103 F.3d 234, 242 (2d Cir. 1996) (quotation marks omitted) (quoting Press-Enterprise II, 478 U.S. at 9). "'Broad and general findings' and 'conclusory assertion[s]' are insufficient to justify deprivation of public access." Under Seal, 273 F. Supp. 3d at 469 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987) ("New York Times I")). Especially

---

[19] The common law also supplies a public right to access judicial proceedings and records, with a legal standard similar to the First Amendment right. See Lugosch, 435 F.3d at 120. The Court does not rely on the common law right of access in its holding today because Section 1983 empowers a federal court to examine only whether a state has "conformed to the requirements of the Federal Constitution and statutes," not whether a state has conformed to the common law. Owen v. City of Independence, 445 U.S. 622, 649 (1980).

with respect to judicial proceedings, the power to conduct hearings behind closed doors "is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." In re Demetriades, 58 F.4th 37, 47 (2d Cir. 2023) (quoting United States v. Alcantara, 396 F.3d 189, 192 (2d Cir. 2005)).

With these principles in mind, the Court now turns to the proceedings and records sought by Plaintiffs in the case at hand.

### 1.    Second Department Hearings and Documents

Plaintiffs contend that the First Amendment entitles them to "live access to any hearings and related submissions and decisions before the [Second Department]," including hearings, submissions, and decisions of a court-appointed special referee. (See Pls. Mem. at 1.) Experience and logic confirm that Second Department hearings and any documents necessary to understand those hearings are subject to the First Amendment right of access.

First, looking to whether the "place and process have been historically" open to the press and to the public, Press-Enterprise II, 478 U.S. at 8, proceedings to make a final determination to remove or suspend a lawyer from the bar have

historically taken place before judges in open court. Since common-law England, judges have been vested with plenary authority to discipline attorneys who appear before them. See, e.g., Ex parte Burr, 4 F. Cas. 791, 791 (C.C.D.C. 1823) (justifying authority to suspend an attorney by referring to common-law practice adopted by North American colonies and, eventually, the states); In re Gephard, 1 Johns. Cas. 134, 134 (Sup. Ct. N.Y. 1799) (referring to disbarment order entered by a New York court); see also In re Rowe, 604 N.E.2d 728, 730 (N.Y. 1992) ("[C]ourts are charged with the responsibility of . . . insuring that only those fit to practice law are admitted to the Bar."); Leslie C. Levin, *The Case for Less Secrecy in Lawyer Discipline*, 20 Geo. J. Legal Ethics 1, 11-12 (2007). The Second Department's exclusive authority to make final determinations concerning disbarment or suspension within its geographical jurisdiction is a direct continuation of that tradition. (See Def. 56.1 Counter ¶ 30.)

Moreover, history shows that proceedings to disbar or suspend attorneys were historically prosecuted by private parties as ordinary equity suits or contempt proceedings. See, e.g., Saxton v. Stowell, 11 Paige Ch. 526, 526 (N.Y. Ch. 1845) (describing procedural requirements to initiate a disbarment proceeding, with reference to a private

"complainant" represented by counsel); <u>Smith v. State</u>, 9 Tenn. 228, 231 (1829) (following English practice, upon a sufficient petition, "the attorney notified to appear and answer, as in case of a contempt"); <u>see also</u> Levin, 20 Geo. J. Legal Ethics at 11 & n.57. Despite its penal character, attorney disciplinary proceedings were not treated much differently than ordinary civil litigation of the day. See <u>Ex parte Burr</u>, 4 F. Cas. at 796.

The proceeding began with a petition or complaint, made by an aggrieved party, and an order to show cause served on the accused attorney. <u>See, e.g.</u>, <u>Saxton</u>, 11 Paige Ch. at 526; <u>Smith</u>, 9 Tenn. at 231; <u>People v. Justices of Del. Common Pleas</u>, 1 Johns. Cas. 181, 181-82 (N.Y. Sup. Ct. 1799). Judges developed factual and legal conclusions based on witness testimony or other evidence. <u>See, e.g.</u>, <u>Smith</u>, 9 Tenn. at 230-31; <u>Ex parte Burr</u>, 22 U.S. 529, 531 (1824); <u>Justices of Del. Common Pleas</u>, 1 Johns. Cas. at 182. If the charges could be substantiated before the court, the lawyer's name could be stricken from the roll of attorneys authorized to practice in that court. See <u>Saxton</u>, 11 Paige Ch. at 526; <u>Ex parte Burr</u>, F. Cas. at 795.

Striking an attorney from the law practice roll had the serious effect of ending the attorney's practice in that court and sullying the attorney's reputation. The consequences were

considered so grave that it was not obvious (at least to one
early federal court) whether to apply the procedural
safeguards owed to criminal defendants under the Fifth and
Sixth Amendments of the then-new Constitution. See Ex parte
Burr, 4 F. Cas. at 796; cf. In re Kelly, 59 N.Y. 595, 596
(1875) (describing disbarment proceedings as "quasi-
criminal").

Modern-day disciplinary proceedings in the Second
Department bear almost all the same key features as their
historical antecedents. Procedural similarities include
commencement with a petition (N.Y. C.P.L.R. § 403), service
on the respondent (id. § 404), and hearing or trial before a
special referee to determine issues of fact (id. § 410). (See
also Pls. 56.1 ¶ 41.) More importantly, these proceedings
originate from accusations of misconduct by a member of the
public and result in formal, public disciplinary action.
Early contempt proceedings, throughout history, thus
accomplished the same "kind of work" that the Second
Department does now. NYCTA, 684 F.3d at 299.

Historically, disciplinary proceedings before courts
have also been public. Though historical evidence concerning
attorney discipline going back to the founding is sparse on
this question, the Second Circuit has observed that there is
a sufficient history of holding civil contempt proceedings in

open court to support applying a First Amendment right of access to today's civil contempt proceedings because contempt actions are a species of civil litigation, which has always occurred public. *See* Newsday, 730 F.3d at 164 (holding civil contempt proceedings to be presumptively open); Westmoreland v. Columbia Broadcasting Sys., Inc., 752 F.2d 16, 23 (same, as to civil proceedings generally); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1070 (3d Cir. 1984) (same, as to civil proceedings generally, and collecting historical evidence); Richmond Newspapers, 448 U.S. at 590 (Brennan, J., concurring) ("[T]here is little record, if any, of secret proceedings, criminal or civil, having occurred at any time in known English history." (quoting Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 420 (1979) (Blackmun, J., concurring in part and dissenting in part)).

The record is clear that by the late nineteenth and early twentieth centuries, attorney disbarment proceedings were public affairs. *See, e.g.,* In re Kelly, 59 N.Y. at 596 ("The proceeding is of a public nature."); In re Spencer, 122 N.Y.S. 190, 192 (App. Div. 1st Dep't 1910) ("These [disbarment] proceedings have been spoken of as being of a public nature."); *see also* Levin, 20 Geo. J. Legal Ethics at 12 n.67 (collecting articles in general-circulation newspapers, in one instance describing "filled" courtrooms and in another a

"large crowd" expecting "a good legal fight"). It is safe to conclude that the practice of allowing the public to view disciplinary hearings has strong roots in history.

The State maintains a different view of history, contending that "New York has a tradition of 'preserving the confidentiality of information pertaining to disciplinary proceedings until a determination has been reached.'" (Def. Mem. at 31 (quoting Johnson Newspaper Corp. v. Melino, 564 N.E.2d 1046, 1050 (N.Y. 1990)).) The State reasons that *inquisitorial* disciplinary proceedings have been private for their entire history since 1945, when the legislature reformed the Judiciary Law to abolish adversarial contempt proceedings as the vehicle for attorney discipline and, in the same reform, enacted Section 90(10), which seals proceedings until imposition of public discipline. (See Def. Response Mem. at 2-3.)

The State's argument is unavailing, however, because the focus of the experience-and-logic test's historical analysis is "not on formalistic descriptions of the government proceeding but on the kind of work the proceeding actually does and on the First Amendment principles at stake." NYCTA, 684 F.3d at 299. The shift from adversarial to inquisitorial proceedings in 1945 did not change the fundamental nature of the work being done before New York courts: government

discipline of attorneys and maintenance of the integrity of the bar for public benefit. See id. Moreover, the experience-and-logic test "does not look to the particular practice of any one jurisdiction, but instead to the experience in that *type* or *kind* of hearing *throughout the United States*," so an exclusive focus on New York history would be improperly narrow. El Vocero de P.R. v. Puerto Rico, 508 U.S. 147, 150 (1993) (last emphasis added). Indeed, it is only since 1945's reforms that New York departed from national norms; even as recently as 2014, a state-created committee remarked that the confidentiality policies embodied in Section 90(10) remained an outlier among the states. See Chief Judge's Comm'n on Statewide Att'y Discipline, *Enhancing Fairness and Consistency, Fostering Efficiency and Transparency* 62 (2015); see also Levin, 20 Geo. J. Legal Ethics at 38.

As another point of disagreement with Plaintiffs, the State contends that Plaintiffs specific request for "live access" has "no precedent" in the history of attorney disciplinary proceedings. (Def. Mem. at 31.) This position does not grapple with historical evidence that disbarment and suspension were "of a public nature." In re Kelly, 59 N.Y. at 596; see In re Spencer, 122 N.Y.S. at 192. The State has not cited any reason to believe that the "public nature" described in In re Kelly and In re Spencer would mean access to a cold

transcript rather than its natural meaning of contemporaneous presence. Further, "documentary access is not a substitute for concurrent access," and "a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available." ABC, Inc. v. Stewart, 360 F.3d 90, 99 (2d Cir. 2004) (quoting United States v. Antar, 38 F.3d 1348, 1360 n.13 (3d Cir. 1994) ("Such a transcript would not fully implement the right of access because some information, concerning demeanor, non-verbal responses, and the like, is necessarily lost in the translation of a live proceeding to a cold transcript.").

Turning to logic, the Court finds that "public access plays a significant positive role in the functioning of" attorney disciplinary proceedings. Press-Enterprise II, 478 U.S. at 8. "The primary concern of a disciplinary proceeding is the protection of the public in its reliance on the integrity and responsibility of the legal profession," so public confidence in the reliability of those proceedings is of paramount importance. In re Rowe, 604 N.E.2d at 730 (citations omitted). Attorneys are officers of the courts to which they are admitted and are integral in administering justice; attorneys' acts of misconduct "guide [the public's] perception of the Bar" and the public's confidence in the justice system. Id.; see also In re Jaffe, 585 F.3d 118, 121

(2d Cir. 2009) (attorney discipline protects "the public,
other attorneys and litigants, the Court, and the
administration of justice"); Ex parte Burr, 4 F. Cas. at 794
("Is not the respectability of the court in some measure
connected with that of the bar? A regard to the purity of the
administration of justice demands that the bar should be pure
and honest."). The question is whether public access provides
a substantial benefit to the proceeding's ability to carry
out its purpose.

The Court finds that it does. The public cannot have
faith in a process that it cannot see. See Richmond
Newspapers, 448 U.S. at 572 ("[I]t is difficult for [the
public] to accept what they are prohibited from observing.");
In re Demetriades, 58 F.4th at 47 (declining to close
appellate arguments in disciplinary appeal because "public
censure or reprimand [are] an appropriate and valuable
corrective measure in attorney-misconduct cases, in order to
protect the public, other attorneys and litigants, the Court,
and the administration of justice" (quotation marks and
citation omitted)); NYCTA, 684 F.3d at 296 ("Courts and
commentators have long recognized the centrality of openness
to adjudicatory proceedings: 'Without publicity, all other
checks are insufficient.'" (quoting In re Oliver, 333 U.S.
257, 271 (1948))); United States v. Amodeo, 71 F.3d 1044,

1048 (2d Cir. 1995) ("Amodeo II") ("[P]ublic monitoring is an essential feature of democratic control.").

Two complementary observations support this conclusion. First, "the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud." Amodeo II, 71 F.3d at 1048; see also Richmond Newspapers, 448 U.S. at 595 (Brennan, J., concurring) (noting how openness inspires government officials to act with "conspicuous respect for the rule of law"). Second, "the public's ability to scrutinize such judicial decision-making helps assure its confidence in the orderly administration of justice" and, accordingly, confidence that they can turn to legal processes to resolve their disputes. United States v. Erie County, 763 F.3d 235, 240-41; NYCTA, 684 F.3d at 303. In other words, the law functions better on the whole when the public is "able to observe for themselves that the process is impartial and effective." Daily Gazette Co., Inc. v. Comm. on Legal Ethics of the W. Va. State Bar, 326 S.E.2d 705, 711 (W. Va. 1984) (emphasis in original) (granting right of access to attorney disciplinary proceedings under state constitution's free-speech guarantee). That the Second Department may delegate factfinding to a special referee does not affect this conclusion and does not permit a judicially appointed special

referee to conduct factfinding hearings in secrecy. See Erie
County, 763 F.3d at 242 (attaching right of access to the
factfinding work of court-appointed monitors); Amodeo II, 71
F.3d at 1047-48 (same).

The State advances a view that the First Amendment right
of access attaches only once the Second Department has imposed
public discipline on an attorney, and therefore Section
90(10) does not offend the Constitution, relying heavily on
the New York Court of Appeals' approval of a similar
confidentiality rule in disciplinary proceedings for
professional misconduct of licensed dentists. (See Def. Mem.
at 25. (citing Johnson Newspaper, 564 N.E.2d at 1050-51).) As
an initial matter, "the Second Circuit has rejected the
contention that the presumption of access is dependent upon
the disposition of the underlying" matter. Under Seal, 273 F.
Supp. 3d at 471 (citing Lugosch, 435 F.3d at 121-22); see
also Bernstein v. Bernstein Litowitz Berger & Grossman, LLP,
814 F.3d 132, 140 (2d Cir. 2016) ("The fact that a suit is
ultimately settled without a judgment on the merits does not
impair the 'judicial record' status of pleadings.").

The misconduct of attorneys is uniquely harmful to
administration of justice and the rule of law in our society,
different from the misconduct of other professionals like
doctors and dentists. Whereas the misconduct of a doctor or

a dentist may cause serious consequences — injury or even death — to their patients, the misconduct of attorneys can shake the public's confidence in the justice system and foundational legal institutions on which we all rely for protection. For instance, as relevant to the Grievance Complaints in this case, a lawyer serving as a state prosecutor who does not disclose exculpatory evidence to a criminal defendant may shake public confidence in the criminal courts' ability to ascertain truth in a criminal trial and, if left unremedied, can result in wrongful punishment and widespread doubts in many convictions.

In recognition of these dangers, English and American courts have for centuries conducted attorney disciplinary proceedings in public view. See Globe Newspaper Co., 457 U.S. at 605 ("[A] history of accessibility implies the favorable judgment of experience." (quoting Richmond Newspapers, 448 U.S. at 589 (Brennan, J., concurring)). In New York, that changed only in 1945, when New York's legislature amended the Judiciary Law to include Section 90(10)'s confidentiality rule (over considerable opposition) to protect attorneys from embarrassing intrusions into their professional work. (See Ex. 19 to Wells Decl.) By contrast, as the New York Court of Appeals noted in Johnson Newspaper, history does not teach

the same lessons with respect to the discipline of most other professionals. 564 N.E.2d at 1050-51.

The State suggests that Plaintiffs' focus on discipline of government lawyers — in this case, former prosecutors — "warps" the purpose of the disciplinary process. (See Def. Mem. at 32.) Not so. Prosecutorial misconduct "is of exceptional public interest" because it "bear[s] both on the fair administration of justice for criminal defendants and the efficacious prosecution" of penal laws. United States v. Nejad, 521 F. Supp. 3d 438, 443 (S.D.N.Y. 2021) (publicly referring suspected misconduct by federal prosecutors to the Department of Justice Office of Professional Responsibility); see In re Special Proceedings, 842 F. Supp. 2d 232, 235 (D.D.C. 2012) (publicly initiating disciplinary proceedings sua sponte and rebuking prosecutors' preference for private discipline). Indeed, the Supreme Court underscored this point when it first acknowledged the First Amendment right of access as a constitutional doctrine: "Plainly it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." Richmond Newspapers, 448 U.S. at 575 (plurality opinion). That Plaintiffs have asked to see how their state government handles suspected prosecutorial misconduct elevates the First Amendment interests at hand.

The State's other arguments challenging the logical benefits of public access to attorney disciplinary proceedings fare no better. The State first asserts that it must protect respondent attorneys from unsubstantiated accusations of misconduct, observing that attorneys' reputations, "once lost, [are] not easily restored." (Def. Mem. at 31 (quoting Karlin v. Culkin, 162 N.E. 487, 492 (N.Y. 1928) (Cardozo, J.)). The state's concerns are overstated in relation to proceedings in the Second Department, which do not take place absent probable cause that the respondent attorney committed a serious ethical transgression. See 22 N.Y.C.R.R. § 1240.7(d)(2)(vi).

The argument that the Second Department has "an interest in managing the attorneys [it] license[s]" is likewise unpersuasive. (See Def. Mem. at 31.) The administrative difficulties in licensing the many thousands of attorneys on the Second Department's rolls is obvious, and conducting disciplinary hearings in private may afford the Second Department's staff and judges some administrative flexibility given that scrutiny of public proceedings might attract public input, comment, and criticism. As the Court has already observed, however, the prospect of public criticism prompts adjudicators to exhibit a "conspicuous respect for the rule of law" and is constitutionally protected. Richmond

Newspapers, 448 U.S. at 595 (Brennan, J., concurring). Scrutiny benefits the integrity of these proceedings.

The State's next point, that "potential witnesses and complainants have an interest in a confidential forum for full and frank discussions regarding alleged wrongdoing," does not explain why a confidential forum is more suitable than an open forum to discuss attorney malfeasance.[20] (Def. Mem. at 32.) The Supreme Court has acknowledged a "community therapeutic value" to allowing the public to view trials. Press-Enterprise II, 478 U.S. at 13 (quoting Richmond Newspapers, 448 U.S. at 570). The benefits of such public observation are especially important when the accused misconduct of the attorneys relates to state-employed attorneys' disregard for constitutional rights in criminal prosecutions, which potentially could result in wrongful imprisonment of innocent people.

---

[20] If the State is suggesting that witnesses and complainants would be more hesitant to come forward to participate in an open disciplinary process, its concern would be a serious consideration that might undermine the functional benefits of openness in government proceedings to impose discipline. Cf. In re Grand Jury Subpoena, 103 F.3d 234, 237 (2d Cir. 1996) (describing how secrecy benefits the grand jury process by offering protection to the victims of and the witnesses to crimes). Yet, the testimony of witnesses in civil and criminal courts is obtained regularly on sensitive personal matters. The state has not shown that recalcitrant witnesses are a "real" danger for disciplinary proceedings, however, and speculation is not a "basis for a restriction of the public's First Amendment rights." NYCTA, 684 F.3d at 303.

Finally, the state notes that it has concerns about the "unnecessary disclosure of information about medical issues, family matters, and attorney-client privilege that arise in disciplinary proceedings." (Def. Mem. at 32.) The State again has failed to note how the subject matter of disciplinary proceedings — even if they involve a client's private confidences — would affect how the proceeding itself functions toward its essential purpose of fairly imposing discipline and protecting the public. See Press-Enterprise II, 478 U.S. at 8. The State's concern may be a reason to close some aspects of Second Department hearings to the public upon an individualized showing, but it is not a reason to presume that every Second Department hearing should occur behind closed doors. The First Amendment counsels that courtroom closures should be "very seldom," and "even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." In re Demetriades, 58 F.4th at 47; see also Under Seal, 273 F. Supp. 3d at 469.

The State has not provided a persuasive reason rooted in either experience or logic to support its view that it may keep its hearings closed with no justification. The qualified First Amendment right of access applies to disciplinary hearings in the Second Department, whether before Second Department justices or a special referee. Plaintiffs'

entitlement to "submissions and decisions" made in those hearings easily follows from this conclusion. (Pls. Mem. at 1.) The First Amendment right of access attaches to documents that "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." Newsday, 730 F.3d at 164 (quoting Lugosch, 435 F.3d at 120).

Plaintiffs do not specify which specific Second Department papers related to disciplinary proceedings they wish to access (nor could they, given the State's refusal to acknowledge whether such proceedings or papers even exist). Applicable precedent makes clear that the First Amendment applies to documents "relevant to the performance of the judicial function and useful in the judicial process." Erie County, 763 F.3d at 240 (quoting Lugosch, F.3d at 119). The right of access presumptively encompasses court orders (Hardy v. Equitable Life Assurance Soc'y of U.S., 697 F. App'x 723, 725 (2d Cir. 2017)), the parties' motions and accompanying submissions (Lugosch, 435 F.3d at 120-21; New York Times I, 828 F.2d at 114), documentary evidence (Newsday, 730 F.3d at 164-65), and docket sheets (Pellegrino, 380 F.3d at 93).

As to hearings and related records of the Second Department, Plaintiffs' Motion is hereby **GRANTED**.

2.   Dispositions by the Grievance Committee

The  Court  now  considers  Plaintiffs'  request  for
dispositions of the Grievance Complaints before the Committee
pursuant  to  22  N.Y.C.R.R.  §  1240.7(d)(2),  "whether  in  the
form  of  letters  of  dismissal,  advisement  or  admonishment,
opinions  authorizing  formal  disciplinary  hearings  and/or
decisions  on  reconsideration  or  review."  (Pls. Mem. at 1.)
Because  the  Plaintiffs  seek  a  presumption  of  access  to
dispositional *documents* of the Grievance Committee — and not
Grievance Committee *proceedings* — the Court may apply one of
two  approaches.  The  presumption  of  access  applies  if  the
dispositional  records  either  (a)  satisfy  the  Supreme  Court's
experience-and-logic  test,  or  (b)  are  derived  from  or  are  a
corollary of the capacity to attend a proceeding to which the
First  Amendment  right  of  access  attaches.  See  Newsday,  730
F.3d at 164.

At  the  outset,  Plaintiffs  have  provided  no  persuasive
reason  to  apply  the  second  approach.  They  do  not  assert  a
right  to  attend  Committee  proceedings  (only  Second  Department
proceedings),  so  dispositional  documents  are  not
presumptively public as a corollary of those proceedings. See
id.  Committee  dispositions  are  likewise  not  necessary  to
understand Second Department disciplinary hearings, which the
Court  has  already  held  are  subject  to  a  presumptive  First

94

Amendment right of access. The Committee dispositions merely authorize Grievance Committee staff to initiate a disciplinary action in the Second Department to seek public censure; Committee dispositions are never filed or otherwise relied upon in the Second Department and are duplicative of the petition and supporting evidence in Second Department matters. (See Def. 56.1 ¶¶ 45, 50.) If the Committee's dispositions on the Grievance Complaints are subject to a presumption of access under the First Amendment, it is only because experience and logic so require.

The Court begins with experience. As before, the relevant historical analysis is whether "the place and process have historically been open to the press and general public." Press-Enterprise II, 478 U.S. at 8. The inquiry must "focus not on formalistic descriptions of the government proceeding but on the kind of work the proceeding actually does and on the First Amendment principles at stake." NYCTA, 684 F.3d at 299; see also Press-Enterprise II, 478 U.S. at 8.

The crux of the parties' dispute is how to characterize what kind of government "process" the Committee carries out. Plaintiffs view the Committee as an adjudicatory body, with its proceedings and decisions most closely resembling the work of courts. (See Pls. Mem. at 14-16.) On the other hand, the State views the Committee as an investigatory or

prosecutorial body that develops facts and authorizes prosecution before the Second Department, the judicial body that retains exclusive authority to impose public discipline. (See Def. Mem. at 26-30.) The disagreement here presents a close question, and neither comparison is perfect because the Committee acts in both capacities. Cf. Napolitano, 315 F. App'x at 351-52 (describing New York's attorney grievance committees as "quasi-public adjudicatory [or] prosecutorial") (quoting Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 58 (2d Cir. 1996)). Some of the Committee's responsibilities require it to act as a court. Others require it to act as a prosecutor.

Plaintiffs limit their request to Committee dispositions, so the Court likewise limits its analysis to the "kind of work" done and the "First Amendment principles at stake" in the Committee's dispositional records. NYCTA, 684 F.3d at 299. The Court need not decide whether the Committee's work, on the whole, more closely resembles the work of courts or the work of prosecutors. However, the record leaves no dispute that when the Committee issues dispositions, it makes an authoritative determination on accusations of misconduct and therefore acts in its adjudicative role, not in its prosecutorial role.

Several observations justify this conclusion. To start, the Committee issues its dispositions only on a completely developed factual record and after considering the positions of both its staff and the respondent attorney. (See Def. 56.1 ¶¶ 40, 42.) In this way, it is a forum that resembles an adversarial trial where attorneys within its geographical jurisdiction "confront the power of their government to judge and penalize their actions" as members of the legal profession. NYCTA, 684 F.3d at 303. Dismissals, Letters of Advisement, and written Admonitions are dispositions that establish whether or not unethical conduct has occurred, even if the respondent attorney's law license is not subject to suspension or revocation. See 22 N.Y.C.R.R. § 1240.7(d)(2)(v) (authorizing the Committee to issue a Letter of Advisement if it finds "by a fair preponderance of evidence, that the respondent has engaged in professional misconduct"); § 1240.7(d)(2)(iv) (authorizing the Committee to issue a written Admonition if it finds "that the respondent has engaged in conduct requiring comment").

Even though the Committee cannot suspend or disbar attorneys on its own, its actions are still the last and most important step in nearly every proceeding to handle suspected attorney misconduct, for the simple reason that very few matters are ever recommended for public discipline in the

Second Department. <u>Press-Enterprise II</u>, 478 U.S. at 12. In 2022, the Committee referred 15 matters to the Second Department and disposed of 217 others by Letter of Advisement or written Admonition; the Committee dismissed nearly a thousand more as failing to state a complaint. (<u>See</u> Ex. 7 to Wells Decl., at '817; <u>see also</u> Ex. 6 to Wells Decl., at '845 (documenting another attorney grievance committee's referral of 41 matters to the Second Department and issuance of 262 Letters of Advisement or written Admonitions in 2022).) The Supreme Court's holding in <u>Press-Enterprise II</u> acknowledged a similar fact about the criminal justice system when it extended the First Amendment right of access to preliminary hearings. 478 U.S. at 12. The right of access would be a dead letter if it extended only to jury trials, a stage to which exceedingly few criminal cases proceed. <u>Id.</u>

Moreover, dispositions are permanent records. (<u>see</u> Pls. 56.1 ¶¶ 38; Ex. 16 to Wells Decl.). The Committee's dispositions of attorney grievance proceedings are the State's official statement of whether misconduct occurred, and what the State did to address it. They remain in the records of the Second Department forever, and the underlying facts and conclusions can be considered in future disciplinary (and even criminal) proceedings, in New York and elsewhere. (<u>See</u> Sheridan Decl. ¶ 26; Joseph Decl. ¶ 13-14.)

They therefore function as the State's "judgment" on the attorney's conduct. (Pls. 56.1 ¶ 23.) See also Mosby v. Ligon, 418 F.3d 927, 931-32 (8th Cir. 2005) (observing that a disciplinary board's decision to impose discipline is the "functional equivalent of a state-court judgment"). Like judgments in civil or criminal matters before a court, some of the Committee's dispositions trigger reconsideration and review rights. See 22 N.Y.C.R.R. § 1240.7(e). These features of the Committee's dispositions render them far different from mere prosecutorial recommendations or charges.

Further, the Committee does its work as a neutral party, not for the benefit of the complainant, but "to protect the public by ensuring that lawyers adhere to the ethical standards set forth in the Rules of Professional conduct." (Ex. K to Sonnenfeldt Decl., at '296.) See also In re Branch, 165 N.Y.S. 688, 689-90 (App. Div. 1st Dep't 1917). The protective goals of the Committee are characteristic of judicial work, and they elevate the First Amendment principles at stake. Especially because the Committee's disposition is the State's final action on nearly all allegations of professional misconduct, it is important that the public has an opportunity to see what happens and is able to exert its power over that process by democratic means; after all, the public depends on the Committee to maintain

the high standards of the legal practice and for protection from malfeasant attorneys. It has a right to an informed understanding of that process.

The State offers an inaccurate characterization of the Committee's dispositions as investigative or prosecutorial records similar to an indictment returned by a grand jury. (See Def. Mem. at 29.) There may be surface similarities between a grand jury's vote to indict and the Committee's decision to refer a matter to the Second Department for public discipline, but the similarities end there. Critically, a grand jury has two choices — indict or dismiss — and in no case can make a final judgment that wrongdoing has occurred. Indeed, a grand jury's assessment that there is evidence of wrongdoing must in every case eventually come before a judge in open court; subsequent public proceedings justify strict grand jury secrecy. See, e.g., U.S. Const. amd. 6; Press-Enterprise II, 478 U.S. at 12 (establishing a presumptive public right to attend pretrial proceedings in criminal cases); Globe Newspaper Co., 457 U.S. at 603 (establishing a presumptive public right to attend trial in criminal cases); Waller v. Georgia, 467 U.S. 39, 46 (1984) (establishing the right of the accused to insist on a public trial).

The cases cited by the State confirm this principle. The Third Circuit's opinion in First Amendment Coalition v.

Judicial Inquiry and Review Board concerned closed proceedings by a state board formed to assess accusations of judicial misconduct. 784 F.2d 467, 473 (3d Cir. 1986) (en banc). Unlike the Committee's power to impose Advisement and Admonition (coupled with the practical reality that more serious punishment is rarely recommended), the state review board in First Amendment Coalition "cannot impose, but only recommend, punishment." 784 F.2d at 473. The same was true in Karlin v. Culkin, another case on which the State heavily relies. 162 N.E. at 492 (reserving disciplinary decisions for a court and noting that a special judicial inquisition into attorney misconduct, "neither end[s] in any decree nor establish[es] any right"). These distinctions justify a departure here from the grand jury analogies accepted in those two cases.

The Court likewise cannot accept the State's characterization of Letters of Advisement or written Admonitions as "private dispute resolution" like a private settlement agreement or a plea agreement. (See Def. Mem. at 28-29.) It is a poor comparison, factually, because of the Committee's apparent practice of releasing those dispositions in some circumstances, for instance to law enforcement and disciplinary authorities in New York and elsewhere. (See Joseph Decl. ¶ 13-14.) Moreover, private settlement

agreements and plea agreements, as the names imply, are likewise negotiated and entered upon consent of the accused. There is no indication that the same is true here.[21]

Accordingly, the Court looks to the historical antecedents of the process by which the states have adjudicated suspected attorney misconduct, not the process by which states investigate such misconduct. See Press-Enterprise II, 478 U.S. at 12; NYCTA, 684 F.3d at 299, 301.

In holding that the hearings of the Second Department were subject to a presumptive right of access (supra Section III.D.1), this Court has already found that states' discipline of attorneys has long been carried out in open court. See, e.g., In re Kelly, 59 N.Y. at 596 ("The proceeding

---

[21] As a brief aside, even if there were a factual basis to draw a comparison between Committee dispositions and settlements or plea agreements, the State has provided no legal support that its preferred analogy would make a difference. The State cites Palmieri v. New York, which evaluated the enforceability of a protective order entered by a federal court pursuant to the Federal Rules of Civil Procedure upon a specific showing of individualized need for secrecy to obtain witness testimony; Palmieri did not pass on any constitutional questions. 779 F.2d 861, 863 (2d Cir. 1985).

By comparison, the courts that have examined the question more directly have concluded that a presumption of open access applies to judicial decisions even if the dispute ends by private agreement. See Bernstein, 814 F.3d at 141 (applying presumption of access to a civil complaint, despite private settlement agreement); see also Del. Coalition for Open Gov't, Inc. v. Strine, 733 F.3d 510, 521 (3d Cir. 2013) (applying presumption of access to consensual arbitration, where the arbitration took place before state judges and automatically resulted in judgment); The Washington Post v. Robinson, 935 F.2d 282, 288 (D.C. Cir. 1991) (applying presumption of access to plea agreements in criminal cases). Palmieri does not support that conclusion that the State may keep Committee dispositions sealed by default without a showing of individualized need. Id. at 864.

is of a public nature."); In re Spencer, 122 N.Y.S. at 192
("These [disbarment] proceedings have been spoken of as being
of a public nature."); cf. Ex parte Burr, 4 F. Cas. at 791
(describing the common-law practice of disbarring attorneys
in a publicly adjudicated contempt proceeding, and noting —
in 1823 — that such practice was centuries old). That the
orders and judgments of those proceedings were public is self-
evident from their contemporaneous publication in legal
reporters. See Hardy, 697 F. App'x at 725 ("There is a long
tradition of public access to court orders.").

The Court also considers the information in the
historical record about grievance committees more
specifically; this additional historical information does not
change the Court's conclusion on Committee dispositions.
Legal scholars note that states began to develop a practice
of delegating to bar associations the task of investigating
and prosecuting disciplinary actions in state courts in the
1870s, with Chicago and New York City being the first
jurisdictions to do so. See, e.g., Levin, 20 Geo. J. Legal
Ethics at 13-14 (collecting sources).[22] Scholars likewise

---

[22] The earliest reference, to this Court's knowledge, of a state committee
to accumulate complaints about attorney misconduct comes from 1727 and
1728, when New York colonial Governor William Burnet appointed a
"Committee to Hear Grievances in the Practice of Law." See Anton-Hermann
Chroust, *The Rise of the Legal Profession in America* 173-74 (1965) (citing
an ordinance found in 15 *Minutes of the Council of New York* 200-21, as
reprinted in P.M. Hamlin, *The First Grievance Committee in New York*, 1

report that New York City's bar association from the outset "adopted procedures to keep the proceedings secret" until the bar association took allegations of misconduct to a court. Id. at 15. Yet the early history of bar associations' involvement in the disciplinary process confirms that their role was to develop the factual record about suspected misconduct in particular cases; judges held the exclusive power to conclude that an attorney violated ethical duties. See Karlin, 162 N.E. at 493 (acknowledging the norm of secrecy "in the stage of preliminary investigation").

The power of bar associations to effect coercive discipline arose only in the first half of the twentieth century. It was not until the 1930s that most states granted bar associations subpoena power to compel testimony, along with the power to impose private forms of discipline that were not as drastic as disbarment or suspension. See Levin, 20 Geo. J. Legal Ethics at 14 & nn.78-79 (citing A.B.A., *Disciplinary Proceedings: A Survey of Methods Used to Discipline Unethical Lawyers* 42-58 (1935)); see also id. at 15 & nn.86-88 (collecting sources)).

---

Anglo-American History Series (1939)). There is little reason to believe one way or the other that the work of this grievance committee was public; indeed, scholarly descriptions of that committee do not make clear whether its purpose was to propose legislative reforms or to prosecute attorney misconduct in individual cases. See id.

There is no evidence, however, that such private forms of discipline functioned as a permanent judgment made after an adversarial hearing. Rather, the general practice was to keep minimal records or no records at all. Id. at 16 & n.92 (quoting a 1952 report on attorney discipline, compiled by the American Bar Association: "[W]e can only accept the complete absence of disciplinary records in those states as indicating an extraordinary disinterest on the part of the Bar and the courts in the character and professional conduct of the practicing lawyer."). There is also no evidence that private discipline had a positive impact on the efficacy of attorney self-regulation. Within a few decades of adopting secretive private discipline, the legal profession's disciplinary mechanisms were viewed as overly lenient, self-serving, and therefore ineffective at protecting the public. See A.B.A. Special Comm. on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement 1-2 (1970) (cataloging problems with bar discipline nationwide, including that "members of the disciplinary agency simply will not make findings against those with whom they are professionally and socially well acquainted") ; see also Levin, 20 Geo. J. Legal Ethics at 16; cf. Carroll, 986 F.3d at 219 ("experience" and "logic" must be considered together).

In conclusion, even if there is a decades-old history of private bar association proceedings to discipline attorneys, that history is outweighed by the preceding centuries of public discipline and the ill effects that exclusively private discipline have had on the legal profession.

The next consideration is logic. As already discussed, the Committee performs a largely adjudicatory function over accusations of attorney misconduct. The Court has also already discussed the logical benefits that flow from public monitoring of judicial work. (See supra Section III.D.1.) The logical reasons for public observation of Second Department hearings are all equally forceful when considering whether the Committee process would function better with its dispositions made public. (See id.) In particular, given that Committee dispositions represent the State's final action in nearly all accusations of attorney misconduct, public observation diminishes the possibilities for "injustice, incompetence, perjury, and fraud." Amodeo II, 71 F.3d at 1048; see also Richmond Newspapers, 448 U.S. at 595 (Brennan, J., concurring). The Court incorporates its earlier findings here.

However, some differences between the Second Department process and the Committee process merit evaluation. Those differences give the Court pause but do not change the

conclusion that public access to Committee dispositions significantly benefits the relevant process, such that a presumption of sealing would be permissible.

Four of the six possible Committee dispositions do not entail an evidentiary finding that actionable misconduct has occurred. Compare 22 N.Y.C.R.R. § 1240.7(d)(2)(i)-(iv) with § 1240.7(d)(2)(v) ("[W]hen the Committee finds, by a fair preponderance of the evidence, that the respondent has engaged in professional misconduct . . . .") and § 1240.8(d)(2)(vi) ("[W]hen the Committee finds that there is probable cause to believe that the respondent engaged in professional misconduct. . . ."). The possibility of Committee action without an evidentiary finding of misconduct elevates the risk that innocent attorneys may be impacted by public knowledge of the Committee's decision on accusations of misconduct that turn out to be unwarranted. Cf. Karlin, 162 N.E. at 492.

This concern, on its own, does not merit a presumption of sealing all dispositions. Of the four actions that the Committee may take without an evidentiary finding of professional misconduct, three are unlikely to have a negative effect on the attorney's reputation. A disposition under § 1240.7(d)(2)(i) dismisses a grievance complaint, vindicating the attorney's innocence; dispositions under

§ 1240.7(d)(2)(ii) and (d)(2)(iii) respectively refer the grievance complaint to another forum or stay the Committee's proceedings pending diversion and communicate nothing one way or the other about the matter's underlying accusations or their substantiation.

A Letter of Advisement disposition under § 1240.7(d)(2)(iv) is more problematic. A Letter of Advisement requires no finding of professional misconduct, merely a finding that "the respondent has engaged in conduct requiring comment." 22 N.Y.C.R.R. § 1240.7(d)(2)(iv). The only consequence of a Letter of Advisement is that the letter remains in the attorney's file and may be an aggravating factor in future disciplinary proceedings. However, a Letter of Advisement entails the Committee determining that the respondent attorney's conduct was ethically problematic but that the conduct did not violate the Rules of Professional Conduct. First Amendment principles do not warrant presuming those assessments should be secret.

The First Amendment acknowledges the logical benefit of making such decisions available for public review, because "legitimate questions could be raised about the court's inaction," just as they could be raised about the court's formal intervention. Erie County, 763 F.3d at 241. "[T]he public's ability to scrutinize such decision-making helps

assure its confidence in the orderly administration of justice" and is not contingent on content of the record. Id. at 240; see also Bernstein, 814 F.3d at 140. Sealing may still be appropriate in individual cases upon a sufficient individualized showing by the Committee.

The Court accordingly concludes that experience and logic both support a presumptive right of access to Committee dispositions. As to dispositions of the Committee made pursuant to 22 N.Y.C.R.R. § 1240.7(d)(2), Plaintiffs' motion is hereby **GRANTED.**

### 3.    Dispositions by the Chief Attorney

Finally, Plaintiffs ask this Court to declare that the First Amendment right of access applies to "dispositions" made by the Chief Attorney pursuant to 22 N.Y.C.R.R. § 1240.7(d)(1). As before, the parties disagree on how to characterize dispositions made by the Chief Attorney. Also as before, the Court must "focus not on formalistic descriptions of the government proceeding but on the kind of work the proceeding actually does and on the First Amendment principles at stake." NYCTA, 684 F.3d at 299; see also Press-Enterprise II, 478 U.S. at 8.

Neither party distinguishes the Chief Attorney's role from the Committee's. Plaintiffs contend that both are

adjudicatory; the State contends that both are investigatory. However, Plaintiffs and the State have overlooked a key distinction between the Chief Attorney and the Committee. Whereas the Committee decides the appropriate outcome for a case and, when able, imposes final discipline on a respondent attorney, the Chief Attorney's role is purely investigatory. The Chief Attorney interviews witnesses and reviews documents to assemble a "written report with recommendations," which is then presented to the Committee for the Committee's decision. (Def. 56.1 ¶ 40.) The Chief Attorney does not make any substantive decision about what the appropriate action is for a grievance complaint. Even when the Chief Attorney makes a recommendation to the Committee, the Committee is not bound by those recommendations in any sense, and the respondent may resist those recommendations before the Committee. (See id.) The function and objective of the Chief Attorney is to develop the factual record and attain truth, not to decide an appropriate outcome. Dismissals pursuant to 22 N.Y.C.R.R. § 1240.7(d)(1) are the Chief Attorney's determination that there is nothing she can or should investigate. They are similar to a letter from a criminal prosecutor declining to prosecute a case, which is private correspondence from the prosecutor.

Accordingly, the Court looks to the historical antecedents for investigatory proceedings and related documents to be sealed. A lengthy recitation of historical instances in which investigative materials were excluded from public view is unnecessary: the Second Circuit has held that investigative inquiries have a long history of being conducted *ex parte* and out of public view. New York Times II, 577 F.3d at 403; In re Grand Jury Subpoena, 103 F.3d at 242 (2d Cir. 1996); Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) (en banc); see also Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 242 (1979); First Amend. Coal., 784 F.2d at 472-73; Karlin, 162 N.E. at 492-93.

The effect of public viewing, too, on the functioning of investigatory proceedings has been described many times in the context of evaluating the First Amendment right of access. Close re-examination of these principles is likewise unnecessary. As is relevant here, secrecy (1) allows for investigative flexibility to facilitate efficient work by the Chief Attorney, and (2) protects respondent attorneys from malicious or otherwise unsubstantiated accusations. See In re Grand Jury Subpoena, 103 F.3d at 237; Kamasinski v. Jud. Rev. Council, 44 F.3d 106, 112 (2d Cir. 1994); cf. Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 848 (1978); Douglas Oil Co., 441 U.S. at 218-19.

The Court concludes that neither experience nor logic demand access to dispositional documents issued by the Chief Attorney. As to dispositions of the made by the Chief Attorney pursuant to 22 N.Y.C.R.R. § 1240.7(d)(1), Plaintiffs' motion is hereby **DENIED**.

### 4.  Higher Values and Narrow Tailoring

The First Amendment right of access is a presumption, and the State may continue to seal its proceedings and records if "essential to preserve higher values and . . . narrowly tailored to serve that interest" Press-Enterprise II, 478 U.S. at 13-14 (citation omitted). It is the State's burden to justify sealing. See New York Times I, 828 F.2d at 116; Under Seal, 273 F. Supp. 3d at 469. The State cannot meet its burden without showing (1) an overriding interest that is likely to be prejudiced, (2) closure is no broader than necessary to protect that interest, (3) reasonable alternatives were considered, and (4) specific findings supporting closure are stated on the record. United States v. Cohen, 366 F. Supp. 3d 612, 627 (citing NYCTA, 684 F.3d at 304).

The State has generally asserted privacy and confidentiality as important interests it must protect. (See, e.g., Def. Mem. at 3.) Privacy and confidentiality in the lives of attorneys and their clients are no doubt important

values, and Section 90(10) exists to protect attorneys and
their clients from unwarranted and embarrassing intrusions
into their lives. As the Court has noted, however, the
consequences that attorney misconduct can have on public
faith in the foundations of the legal system are dire. Those
dangers are especially weighty as First Amendment
considerations when the work of government is at stake. The
State's assertions in this case do not justify sealing every
Second Department proceeding and Committee disposition
related to the Grievance Complaints in its entirety. The
Constitution instead requires a presumption of openness,
unless the State can explain why a person's privacy interests
are a "higher value" than First Amendment protections and
that its proposed seal on public information is narrowly
tailored to protect those interests. <u>Press-Enterprise II</u>, 478
U.S. at 13-14.

In this case, considering the proceedings and records
relating to Plaintiffs' twenty-one Grievance Complaints, the
State falls far short of meeting its burden. As an initial
matter, the State's defense of its sealing process makes no
reference to the twenty-one specific cases, and
individualized findings are required to maintain secrecy. <u>See</u>
<u>NYCTA</u>, 684 F.3d at 304. There is no indication on this record
that any of the Grievance Complaints concern private matters;

indeed, each concerns publicly known facts about public
prosecutions. (See Kearse Letter.) If the proceedings and
records related to the Grievance Complaints may embarrass
state prosecutors, the Supreme Court long ago acknowledged
that public officials' reputations are not a higher value
that supersedes the First Amendment. See Press-Enterprise II,
478 U.S. at 13-14; Landmark Commc'ns, Inc., 435 U.S. 829;
Erie County, 763 F.3d at 241 (emphasizing the importance of
First Amendment access in matters involving public
institutions and criminal law).

Moreover, no effort has been made to narrowly tailor the
State's restriction on public access to the hearings and
records sought here. The State's contentions amount to
"general findings" that do not pass constitutional muster.
New York Times I, 828 F.2d at 116. Shrouding every aspect of
the disciplinary process in every case not resulting in
disbarment or suspension is "overly broad and contrary to the
general requirement of narrow tailoring." Under Seal, 273 F.
Supp. 3d at 472; see also Kamasinski, 44 F.3d at 109 (citing
Landmark Commc'ns, Inc., 435 U.S. at 829).

As a different, possible justification for sealing, the
State believes that nonpublic discipline may make the
attorney disciplinary process more effective on the whole in
regulating the profession and ensuring the availability of

qualified lawyers for the public's benefit. Varying
gradations of punishment have the benefit of allowing for
discipline in proportion to the seriousness of a respondent
attorney's misconduct; lenient or private punishment for
minor offenses may even have a reformative effect on attorneys
that greatly benefits the legal practice and the public. In
some ways, the key distinction between a Letter of Advisement
or written Admonition on the one hand, and a referral to the
Second Department for prosecution on the other, is public
disclosure. See 22 N.Y.C.R.R. § 1240.7. Requiring the
Committee to make these three dispositions equally public
might collapse the distinction among them. The public may see
the Committee's determination of facts underlying the
attorney's unethical conduct but may overlook the legal
standards at play in each decision, which differ only in the
Committee's discretionary assessment of the severity of the
conduct: "conduct requiring comment" (id. § 1240.7(d)(2)(iv))
versus "professional misconduct" for which "public discipline
is not required" (id. § 1240.7(d)(2)(v)) versus "professional
misconduct warranting the imposition of public discipline"
(id. § 1240.7(d)(2)(vi)).

The State may have named an important value in its effort
to effectively regulate the legal profession, but that value
must be considered in light of the interests the First

Amendment protects, and the harm to legal institutions that
can follow if attorneys are not adequately monitored for
observance of the high ethical standards of the bar. "People
in an open society do not demand infallibility from their
institutions, but it is difficult for them to accept what
they are prohibited from observing." Richmond Newspapers, 448
U.S. at 572. As noted, the Grievance Complaints raise matters
of exceptional public interest. Nejad, 521 F. Supp. 3d at
443. Further, narrow tailoring requires the State to consider
"reasonable alternatives" to secrecy and that confidentiality
is "no broader than necessary" to protect that interest.
Cohen, 366 F. Supp. 3d at 628 (quoting NYCTA, 684 F.3d at
304). On this record, the State has again failed to meet its
burden. Keeping every record sealed indefinitely, so that the
public knows nothing of the result or even the pendency of a
disciplinary case, is not narrow tailoring. Under Seal, 273
F.3d at 469 (quoting In re New York Times Co., 828 F.2d at
110.). The State has not explained why less restrictive
alternatives — like disclosing particular dispositions
anonymously,[23] or issuing redacted or short-form dispositions

---

[23] See Karlin, 162 N.E. at 492-93 ("There is a practice of distant origin
by which disciplinary proceedings, unless issuing in a judgment adverse
to the attorney, are recorded as anonymous.") (citing In re an Att'y, 83
N.Y. 164 (1880), and In re H--, 87 N.Y. 521 (1882); see also Anonymous
Nos. 6 & 7 v. Baker, 360 U.S. 287 (1959); Anonymous v. Ass'n of the Bar
of the City of N.Y., 515 F.2d 427 (2d Cir. 1975); Anonymous, 7 N.J.L.

similar to those issued to complainants — would be insufficient to protect its interests.

## IV.    <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that motion for summary judgment (Dkt. No. 191) filed by Defendant Hector D. LaSalle ("Defendant") is **DENIED**; and it is further

**ORDERED** that the motion for summary judgment (Dkt. No. 174) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**DECLARED** that a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Second Department"), whether before Justices of the Second Department or a special referee, considering imposition of public discipline related to the twenty-one grievance complaints (the "Grievance Complaints") that Plaintiffs filed on May 3, 2021, and (2) documents necessary to understand those hearings, including

---

162, 162 n.a1 (N.J. 1824) (determined anonymous by the reporter, not the court).

court orders, motions and related submissions, documentary evidence, and docket sheets; and it is further

DECLARED that a presumptive First Amendment Right of Access applies to dispositions made by the Attorney Grievance Committee for Second, Eleventh and Thirteenth Judicial Districts (the "Committee") pursuant to 22 N.Y.C.R.R § 1240.7(d)(2) related to the Grievance Complaints; and it is further

DECLARED that Plaintiffs' access to the proceedings and records referenced herein may not be restricted absent specific, on-the-record findings by either the Committee or the Second Department, as appropriate, that (1) restrictions serve higher values that would be prejudiced by disclosure; (2) restrictions on disclosure are no more extensive than necessary to protect those higher values; and (3) that alternatives to restriction have been considered and would not reasonably protect those higher values.

The Clerk of Court is respectfully directed to enter declaratory judgment to the effect of the foregoing Order and to close all outstanding motions and close this case.

**SO ORDERED.**

Dated:     22 July 2024
           New York, New York

                                         _____
                                              Victor Marrero
                                                 U.S.D.J.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CIVIL RIGHTS CORPS, et al.,

                                Plaintiffs,                       21 **CIVIL** 9128 (VM)

      -against-                                     **<u>JUDGMENT</u>**

HECTOR D. LASALLE, in his official capacity as
Chief Justice of the Second Judicial Department of
the Appellate Division of the Supreme Court of the
State of New York,

                             Defendant.

------------------------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Decision and Order dated July 22, 2024, the motion for summary judgment (Dkt. No. 191) filed by Defendant Hector D. LaSalle ("Defendant") is DENIED; and it is further ORDERED that the motion for summary judgment (Dkt. No. 174) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") is GRANTED IN PART and DENIED IN PART; and it is further DECLARED that a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Second Department"), whether before Justices of the Second Department or a special referee, considering imposition of public discipline related to the twenty-one grievance complaints (the "Grievance Complaints") that Plaintiffs filed on May 3, 2021, and (2) documents necessary to understand those hearings, including court orders, motions and related submissions, documentary evidence, and docket sheets; and it is further DECLARED that a presumptive First Amendment Right of Access

applies to dispositions made by the Attorney Grievance Committee f or Second, Eleventh and

Thirteenth Judicial Districts (the "Committee") pursuant to 22 N. Y. C. R.R § 1240. 7 (d) (2)

related to the Grievance Complaints; and it is further DECLARED that Plaintiffs' access to the

proceedings and records referenced herein may not be restricted absent specific, on-the-record

findings by either the Committee or the Second Department, as appropriate, that (1) restrictions

serve higher values that would be prejudiced by disclosure; (2) restrictions on disclosure are no

more extensive than necessary to protect those higher values; and (3) that alternatives to

restriction have been considered and would not reasonably protect those higher values;

accordingly, the case is closed.

**Dated:**  New York, New York
       July 22, 2024

**DANIEL ORTIZ**

_____

**Acting Clerk of Court**

**BY:**

**Deputy Clerk**

## ADDENDUM B

This appeal presents the following issues:

1. Whether the district court erred in reaching the merits of plaintiffs' First Amendment challenges to Judiciary Law § 90(10).

2. Whether Judiciary Law § 90(10) violates the First Amendment by requiring confidential treatment of attorney grievance investigations and complaints until a disciplinary charge has been sustained by the Appellate Division.

This Court reviews de novo the grant of summary judgment when the parties filed cross-motions and the district court granted one but denied the other. *See, e.g., Loomis v. ACE Am. Ins. Co.*, 91 F.4th 565, 572 (2d Cir. 2024).