# 24-2251

## United States Court of Appeals for the Second Circuit

CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, STEVEN ZEIDMAN,

*Plaintiffs-Appellees,*

v.

HECTOR D. LASALLE, in his official capacity Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York,

*Defendant-Appellant,*

GEORGIA PESTANA, Personal Capacity, STEVEN STEIN CUSHMAN, in his official capacity Corporation Counsel of the City of New York,

*Defendants.*

*(caption continues inside front cover)*

On Appeal from the United States District Court for the Southern District of New York

**JOINT APPENDIX**
**Volume 1 – Pages 1-282**

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2710

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005
(212) 416-8020

*Attorney for Appellees*

*Attorney for Appellant*

(*caption continues from front cover*)

MELINDA KATZ, Personal Capacity and in her official capacity the District Attorney of Queens County, ANDREA E. BONINA, Personal Capacity and in her official capacity Chair of State of New York Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts, DIANA MAXFIELD KEARSE, Personal Capacity and in her official capacity Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh and Thirteenth Judicial District,

*Defendants.*

# TABLE OF CONTENTS

**Page**

**Volume 1**

Docket Sheet .................................................................................JA1

Order, dated Jan. 25, 2022....................................................JA34

Complaint and Demand for Jury Trial, dated Nov. 4, 2021.......................JA51

    Ex. 1 - Letter from James E. Johnson to Grievance Committee
        Members, dated June 2, 2021 ...................................JA92

    Ex. 2 - Letter from Diana Maxfield Kearse to Professors, dated
        June 11, 2021 ...................................................JA97

    Ex. 3 - Letter from Gregory Diskant to Grievance Committee
        Members, dated June 22, 2021 ................................JA99

    Ex. 4 - Letter from Gregory Diskant to Georgia M. Pestana,
        dated June 22, 2021.............................................JA107

    Ex. 5 - Letter from Georgia M. Pestana to Grievance Committee
        Members, dated July 8, 2021 .................................JA110

    Ex. 6 - Letter from Gregory Diskant to Diana Maxfield Kearse,
        dated June 30, 2021.............................................JA113

    Ex. 7 - Letter from Andrea E. Bonina to Gregory Diskant,
        dated July 26, 2021.............................................JA118

City Defendants' Responses and Objections to Plaintiffs' Statement
of Undisputed Facts, dated Mar. 31, 2022 ...............................JA120

Response of Defendants Hector D. LaSalle and Andrea E. Bonina
to Plaintiffs' Statement of Undisputed Material Facts,
dated Mar. 31, 2022..................................................................JA136

Defendant Diana Maxfield Kearse's Response to Plaintiffs' Rule 56.1
Statement and Additional Facts, dated Mar. 31, 2022............................JA152

i

# TABLE OF CONTENTS

**Page**

**Volume 1 (cont'd)**

Decision and Order, dated May 5, 2022 ...................................................JA172

Decision and Order, dated June 13, 2022 ...............................................JA207

Stipulation of Voluntary Dismissal (So-Ordered), dated Mar. 30, 2023 ....JA247

Joint Stipulation Regarding Time and Scope of Limited Discovery
(So-Ordered), dated June 5, 2023 ...........................................................JA249

Joint Letter, dated June 16, 2023...........................................................JA253

Declaration of Andrew H. Wells, Jr. in Support of Plaintiffs'
Motion for Summary Judgment, dated July 28, 2023 ..............................JA259

    Ex. 1 - Grievance Committee Complaint Against Jesse Sligh,
        dated May 3, 2021..................................................................JA267

**Volume 2**

    Ex. 2 - Grievance Committee Complaint Against Charles
        Testagrossa, dated May 3, 2021..............................................JA283

    Ex. 3 - Letter from Diana Maxfield Kearse to Professors, dated
        June 11, 2021, reproduced above at JA97

    Ex. 4 - Excerpts from Appellate Division, Second Judicial
        Department's Grievance Committee Manual & Forms,
        Volume 1, revised Apr. 2019 ..................................................JA305

    Ex. 5 - 2022 Professional Matters Caseload Report, dated
        Feb. 6, 2023 ..........................................................................JA315

    Ex. 6 - 2021 Professional Matters Caseload Report, dated
        Jan. 20, 2022 ........................................................................JA323

    Ex. 7 - 2022 Annual Attorney Disciplinary Activities Report,
        dated Jan. 22, 2023................................................................JA331

# TABLE OF CONTENTS

**Page**

**Volume 2 (cont'd)**

Ex. 8 - Transcript of the Deposition of Diana Maxfield Kearse, dated June 8, 2023..................................................................JA334

Ex. 9 - Excerpts from the 2016 Annual Attorney Disciplinary Activities Report, various dates.............................................JA438

Ex. 10 - Excerpts from the 2017 Annual Professional Discipline Report, various dates.............................................................JA451

Ex. 11 - Excerpts from the 2018 Annual Professional Discipline Report, various dates.............................................................JA465

Ex. 12 - Excerpts from the 2019 Annual Professional Discipline Report, various dates.............................................................JA479

Ex. 13 - Excerpts from the 2020 Annual Professional Discipline Report, various dates.............................................................JA491

Ex. 14 - Screenshot, Appellate Division, Second Judicial Department Website, "Attorney Matters: How to Make a Complaint About a Lawyer," dated Apr. 12, 2023...................................JA520

Ex. 15 - Appellate Division, Second Judicial Department's "Orientation to the Profession" Materials, revised Feb. 16, 2017....JA527

**Volume 3**

Ex. 16 - Excerpts from Appellate Division, Second Judicial Department's Grievance Committee Manual & Forms, Volume 5, revised Apr. 2019 .................................................JA571

Ex. 17 - Initial Disclosures of Diana Maxfield Kearse, dated Sept. 23, 2023....................................................................JA580

Ex. 18 - Initial Disclosures of Hector D. LaSalle and Andrea E. Bonina, dated Sept. 23, 2023................................................JA590

# TABLE OF CONTENTS

**Page**

**Volume 3 (cont'd)**

Ex. 19 - Bill Jacket for Ch. 675 (1945)................................................JA602

Ex. 20 - Letter from Robert H. Cabble to Aprilanne Agostino, dated
July 19, 2019, attaching Decision and Order, *Matter of The
Innocence Project, Inc.*, No. 2019-05674 (2d Dep't 2019).......JA652

Ex. 21 - Email Exchange, dated from May 12, 2023, to
June 20, 2023 .................................................................JA658

Ex. 22 - Select Records from Disciplinary File of Glenn Kurtzrock,
various dates ...........................................................JA667

Declaration of Andrea E. Bonina in Support of Justice LaSalle's Cross-
Motion and in Opposition to Plaintiffs' Motion for Summary Judgment,
dated Sept. 19, 2023..................................................................JA844

**Volume 4**

Declaration of Diana Maxfield Kearse in Connection with Plaintiffs'
Motion for Summary Judgment and Justice LaSalle's Cross-Motion
for Summary Judgment, dated Aug. 31, 2023 ..........................................JA849

Declaration of Darrell M. Joseph in Support of Justice LaSalle's Cross-
Motion for Summary Judgment and in Opposition to Plaintiffs' Motion
for Summary Judgment, dated Sept. 26, 2023..........................................JA852

Ex. A - Screenshot, Appellate Division, Second Judicial Department
Website, "How to Review or Obtain Copies of Papers Filed
with the Court," dated Apr. 12, 2023.....................................JA857

Declaration of Hector D. LaSalle in Support of Cross-Motion for
Summary Judgment and in Opposition to Plaintiffs' Motion for
Summary Judgment, dated Sept. 28, 2023 ..............................................JA860

Declaration of Catherine A. Sheridan in Support of Justice LaSalle's
Cross-Motion for Summary Judgment and in Opposition to Plaintiffs'
Motion for Summary Judgment, dated Sept. 27, 2023.............................JA862

# TABLE OF CONTENTS

**Page**

**Volume 4 (cont'd)**

Declaration of Joya C. Sonnenfeldt in Support of Justice LaSalle's Cross-Motion and in Opposition to Plaintiffs' Motion for Summary Judgment, dated Oct. 4, 2023 ....................................................JA870

   Ex. A - Ch. 946, §§ 56, 57, 68, 1895 N.Y. Laws 796 ..............................JA874

   Ex. B - New York Code of Civil Procedure §§ 67-72 (1879) ..................JA878

   Ex. C - Excerpt from Bill Jacket for Ch. 649 (1945) .............................JA880

   Ex. D - Excerpts from Tenth Annual Report of Judicial
        Council of the State of New York, published 1944 .................JA886

   Ex. E - Excerpts from Appellate Division, Second Judicial
        Department's "Orientation to the Profession" Materials,
        dated Feb. 16, 2017, reproduced in full at JA531

   Ex. F - Excerpts from Final Report of the New York State Commis-
        sion on Statewide Attorney Discipline, dated Sept. 2015 .....JA894

   Ex. G - Press Release, New York State Unified Court System, dated
        Dec. 29, 2015 ........................................................................JA906

   Ex. H - Excerpts from Appellate Division, Second Judicial
        Department's Grievance Committee Manual & Forms,
        Volume 1, revised Apr. 2019 ..................................................JA909

   Ex. I - Ch. 675, 1945 N.Y. Laws 1456, 1456-57....................................JA915

   Ex. J - Excerpts of Transcript of the Deposition of Diana Maxfield
        Kearse, dated June 8, 2023, reproduced above at JA334

   Ex. K - Appellate Division, First Judicial Department, "How to File
        a Complaint," dated July 30, 2020........................................JA919

v

# TABLE OF CONTENTS

**Page**

**Volume 4 (cont'd)**

Ex. L - Screenshot, Appellate Division, Second Judicial Department Website, "How to Make a Complaint About a Lawyer," dated Apr. 12, 2023, reproduced above at JA524

Ex. M - Appellate Division, Third Judicial Department, "Instructions for Filing a Complaint for Professional Misconduct Against an Attorney," not dated ..........................................................JA929

Ex. N - Appellate Division, Fourth Judicial Department, "How Complaints Against Attorneys Are Processed," not dated ....JA932

Ex. O - Ch. 295, 1921 N.Y. Laws 1017, 1017-18 ...................................JA935

Justice LaSalle's Response to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts, dated Oct. 6, 2023 .........................................JA938

Plaintiffs' Response to Defendant LaSalle's Rule 56.1 Statement of Undisputed Material Facts, dated Nov. 17, 2023 .....................................JA964

Declaration of Shelley R. Attadgie in Support of Plaintiffs' Motion for Summary Judgment, dated Nov. 17, 2023 ..........................................JA980

Ex. 1 - Email Exchange, dated from Mar. 21, 2023, to Mar. 23, 2023 ...................................................................................JA982

Ex. 2 - Email from Professors to Grievance Committee, dated Oct. 19, 2022..............................................................................JA986

Ex. 3 - Excerpts from Appellate Division, Second Judicial Department's Grievance Committee Manual & Forms, Volume 4, revised Apr. 2019 ..................................................JA988

Stipulation of Voluntary Dismissal (So-Ordered), dated Apr. 9, 2024 .....JA992

Notice of Appeal, dated Aug. 21, 2024.......................................................JA994

vi

CLOSED,APPEAL,CASREF,ECF

## U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21−cv−09128−VM−VF

Civil Rights Corps. et al v. Cushman et al
Assigned to: Judge Victor Marrero
Referred to: Magistrate Judge Valerie Figueredo
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 11/04/2021
Date Terminated: 07/22/2024
Jury Demand: Plaintiff
Nature of Suit: 950 Constitutional − State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Civil Rights Corps.**　　　　　　　represented by　**Gregory L. Diskant**
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212−336−2000
Fax: 212−336−2222
Email: gldiskant@pbwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212−336−2000
Email: awells@pbwt.com
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
Patterson Belknap Webb & Tyler LLP
Judicial Law Clerk/Judge Margo K. Brodie
1133 6th Ave
New York, NY 10036
412−496−0602
Email: eshane@pbwt.com
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
212−336−2000
Fax: 212−336−2222
Email: gchaudhuri@pbwt.com
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
Dunnington Bartholow & Miller LLP
230 Park Avenue
21st Floor
10169
New York, NY 10169
212−682−8811
Email: jkinkle@dunnington.com
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas

**JA1**

New York, NY 10036
212−336−2000
Fax: 212−336−2222
Email: sattadgie@pbwt.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cynthia Godsoe**                    represented by    **Gregory L. Diskant**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Andrew H Wells , Jr**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Elisabeth A. Shane**
                                                        (See above for address)
                                                        *TERMINATED: 08/15/2024*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gargi Chaudhuri**
                                                        (See above for address)
                                                        *TERMINATED: 07/20/2023*

                                                        **Jeffrey F Kinkle**
                                                        (See above for address)
                                                        *TERMINATED: 06/13/2022*

                                                        **Shelley Attadgie**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nicole Smith Futrell**              represented by    **Gregory L. Diskant**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Andrew H Wells , Jr**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Elisabeth A. Shane**
                                                        (See above for address)
                                                        *TERMINATED: 08/15/2024*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Gargi Chaudhuri**
                                                        (See above for address)
                                                        *TERMINATED: 07/20/2023*

                                                        **Jeffrey F Kinkle**
                                                        (See above for address)
                                                        *TERMINATED: 06/13/2022*

                                                        **Shelley Attadgie**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel S. Medwed**                  represented by    **Gregory L. Diskant**
                                                        (See above for address)

**JA2**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Justin Murray**                                    represented by   **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Abbe Smith**                                    represented by   **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*

JA3

*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven Zeidman**          represented by   **Gregory L. Diskant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew H Wells , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elisabeth A. Shane**
(See above for address)
*TERMINATED: 08/15/2024*
*ATTORNEY TO BE NOTICED*

**Gargi Chaudhuri**
(See above for address)
*TERMINATED: 07/20/2023*

**Jeffrey F Kinkle**
(See above for address)
*TERMINATED: 06/13/2022*

**Shelley Attadgie**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Georgia Pestana**          represented by   **Eric Jay Eichenholtz**
*Personal Capacity*          NYC Law Department, Office of the
*TERMINATED: 04/09/2024*     Corporation Counsel (NYC)
100 Church Street
New York, NY 10007
212−788−0303
Fax: 212−788−0940
Email: eeichenh@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krista Ann Friedrich**
New York City Law Dept.
100 Church Street
New York, NY 10007
212−356−2610
Email: kfriedri@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**JA4**

**Defendant**

**Steven Stein Cushman**
*In his official capacity Corporation*
*Counsel of the City of New York*
*TERMINATED: 04/09/2024*

represented by **Eric Jay Eichenholtz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krista Ann Friedrich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Melinda Katz**
*Personal Capacity*
*TERMINATED: 04/09/2024*

represented by **Eric Jay Eichenholtz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krista Ann Friedrich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Melinda Katz**
*In her official capacity the District*
*Attorney of Queens County*
*TERMINATED: 04/09/2024*

represented by **Eric Jay Eichenholtz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krista Ann Friedrich**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Andrea E. Bonina**
*Personal Capacity*
*TERMINATED: 03/30/2023*

represented by **Elizabeth Anne Figueira**
New York State Office of the Attorney
General (28 Liberty)
28 Liberty Street, 15th Floor
New York, NY 10005
(212) 416−8528
Fax: (212) 416−6009
Email: elizabeth.figueira@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joya C Sonnenfeldt**
NYS Office of The Attorney General
Litigation Bureau
28 Liberty Street
New York, NY 10005
212−416−8184
Email: joya.sonnenfeldt@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Andrea E. Bonina**
*In her official capacity Chair of State of*
*New York Greivance Committee for the*
*Second, Eleventh and Thirteenth Judicial*
*Districts*
*TERMINATED: 03/30/2023*

represented by **Elizabeth Anne Figueira**
(See above for address)

**Joya C Sonnenfeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

represented by

**JA5**

**Diana Maxfield Kearse**
*Personal Capacity*
*TERMINATED: 03/30/2023*

**Mark Michael Elliott**
Elliott Kwok Levine & Jaroslaw LLP
565 Fifth Avenue
7th Floor
New York, NY 10017
646−777−4511
Email: melliott@ekljlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Figueira**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Frankel**
Phillips Nizer LLP
485 Lexington Avenue
New York, NY 10017
212−977−9700
Email: lfrankel@phillipsnizer.com
*ATTORNEY TO BE NOTICED*

**Rachel J Rodriguez**
Elliott Kwok Levine Jaroslaw Neils LLP
One Grand Central Place
60 E42nd St
Ste 1570
New York, NY 10165
212−321−0510
Email: rrodriguez@ekljnlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Diana Maxfield Kearse**
*In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District*
*TERMINATED: 03/30/2023*

represented by **Mark Michael Elliott**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Anne Figueira**
(See above for address)

**Leah Frankel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel J Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hector D. LaSalle**
*In his official capacity Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York*

represented by **Elizabeth Anne Figueira**
(See above for address)

**Joya C Sonnenfeldt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**The New York Times Company,**

represented by **Ira Martin Feinberg**
Office of the New York Attorney General
28 Liberty Street
New York, NY 10005
212−416−6037

**JA6**

Email: ira.feinberg@ag.ny.gov
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
Hogan Lovells US LLP (NYC)
390 Madison Ave.
New York, NY 10017
212 918 3283
Fax: 212 918 3100
Email: benjamin.fleming@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
Hogan Lovells US LLP (NYC)
390 Madison Ave.
New York, NY 10017
212−918−3000
Email: matthew.ducharme@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**The Associated Press**                    represented by **Ira Martin Feinberg**
(See above for address)
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Pro Publica Inc.**                    represented by **Ira Martin Feinberg**
(See above for address)
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Newsday LLC**                    represented by **Ira Martin Feinberg**
(See above for address)
*TERMINATED: 08/04/2023*
*LEAD ATTORNEY*

**Benjamin Andrew Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Alan Ducharme**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JA7**

**Amicus**

| | |
|---|---|
| **Floyd Abrams Institute for Freedom of Expression** | represented by **David A. Schulz**<br>Ballard Spahr LLP (NYC)<br>1675 Broadway, 19th Floor<br>New York, NY 10019<br>(212) 850−6103<br>Fax: (212) 223−1942<br>Email: schulzd@ballardspahr.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/04/2021 | 1 | COMPLAINT against Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity). (Filing Fee $ $402.00, Receipt Number 465401288653)Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. (Attachments: # 1 Exh 1, # 2 Exh 2, # 3 Exh 3, # 4 Exh 4, # 5 Exh 5, # 6 Exh 6, # 7 Exh 7).(gp) (Entered: 11/04/2021) |
| 11/04/2021 | 2 | CIVIL COVER SHEET filed..(gp) (Entered: 11/04/2021) |
| 11/04/2021 | | Magistrate Judge Debra C. Freeman is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018−06/AO−3.pdf. (gp) (Entered: 11/04/2021) |
| 11/04/2021 | | Case Designated ECF. (gp) (Entered: 11/04/2021) |
| 11/04/2021 | | ORDER REDACTING PLEADING FILED IN 21−mc−792 (LGS)...(gp) (Entered: 11/04/2021) |
| 11/04/2021 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to Andrea E. Bonina, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 4 | SEALED DOCUMENT placed in vault.(nmo) (Entered: 11/04/2021) |
| 11/04/2021 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to Diana Maxfield Kearse, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to Georgia Pestana, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Hector D. LaSalle, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/04/2021) |
| 11/04/2021 | 8 | REQUEST FOR ISSUANCE OF SUMMONS as to Melinda Katz, re: 1 Complaint,,,. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) |

| | | |
|---|---|---|
| | | (Entered: 11/04/2021) |
| 11/09/2021 | 9 | ENDORSED LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated 11/8/2021 re: Counsel asks the Court to treat this letter−brief as a motion and to rule on this basis. The exhibits are judicial records and should be public for that reason alone. They do not fall within the ambit of Judiciary Law § 90(10), and so there is no reason to keep them secret. And in any event, they cannot be kept secret consistent with the freedom accorded speech about matters of public importance under the First Amendment. For these reasons, the Court should unseal the documents filed by Plaintiffs under seal with their Complaint. ENDORSEMENT: Defendants are directed to respond within three days of service, by letter not to exceed three pages, to the matter set forth above by Plaintiffs. So Ordered (Signed by Judge Victor Marrero on 11/9/2021) (js) (Entered: 11/09/2021) |
| 11/09/2021 | 10 | ELECTRONIC SUMMONS ISSUED as to Andrea E. Bonina. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 11 | ELECTRONIC SUMMONS ISSUED as to Diana Maxfield Kearse. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 12 | ELECTRONIC SUMMONS ISSUED as to Georgia Pestana. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 13 | ELECTRONIC SUMMONS ISSUED as to Hector D. LaSalle. (vf) (Entered: 11/09/2021) |
| 11/09/2021 | 14 | ELECTRONIC SUMMONS ISSUED as to Melinda Katz.(vf) (Entered: 11/09/2021) |
| 11/10/2021 | 15 | FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 9 Endorsed Letter,,, addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021., FIRST LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Hector D. LaSalle, Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Figueira, Elizabeth) (Entered: 11/10/2021) |
| 11/11/2021 | 16 | LETTER RESPONSE to Motion addressed to Judge Victor Marrero from Gregory Diskant dated November 11, 2021 re: 15 FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 9 Endorsed Letter,,, addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021.FIRST LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021. *Plaintiffs' opposition to Defendants' request for extension of time to respond to motion to unseal exhibits to complaint.* Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/11/2021) |
| 11/12/2021 | 17 | ORDER granting 15 Letter Motion for Extension of Time to File Response/Reply re 15 FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 9 Endorsed Letter,,, addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021.FIRST LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated November 10, 2021. ( Responses due by 12/17/2021); granting 15 Letter Motion for Extension of Time It is hereby ORDERED that the request of the State Defendants is GRANTED. The State Defendants shall answer, move or otherwise respond to Plaintiffs' Complaint by December 17. The State Defendants shall also respond to the Courts November 9 Order by December 17. So Ordered. (Signed by Judge Victor Marrero on 11/12/2021) (js) (Entered: 11/12/2021) |
| 11/12/2021 | | Set/Reset Deadlines: Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) answer due 12/17/2021; Andrea E. Bonina (Personal Capacity) answer due 12/17/2021; Hector D. LaSalle answer due 12/17/2021; Diana Maxfield Kearse(Personal Capacity) answer due 12/17/2021; Diana Maxfield Kearse(In her |

| | | |
|---|---|---|
| | | official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) answer due 12/17/2021. (js) (Entered: 11/12/2021) |
| 11/12/2021 | 18 | SUMMONS RETURNED EXECUTED. Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) served on 11/10/2021, answer due 12/17/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/12/2021 | 19 | SUMMONS RETURNED EXECUTED. Melinda Katz(In her official capacity the District Attorney of Queens County) served on 11/10/2021, answer due 12/1/2021; Melinda Katz (Personal Capacity) served on 11/10/2021, answer due 12/1/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/12/2021 | 20 | SUMMONS RETURNED EXECUTED. Diana Maxfield Kearse(Personal Capacity) served on 11/10/2021, answer due 12/17/2021; Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) served on 11/10/2021, answer due 12/17/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/12/2021 | 21 | SUMMONS RETURNED EXECUTED. Hector D. LaSalle served on 11/10/2021, answer due 12/17/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/12/2021) |
| 11/15/2021 | 22 | SUMMONS RETURNED EXECUTED. Georgia Pestana(In her official capacity Corporation Counsel of the City of New York) served on 11/9/2021, answer due 11/30/2021; Georgia Pestana(Personal Capacity) served on 11/9/2021, answer due 11/30/2021. Document filed by Abbe Smith; Daniel S. Medwed ; Civil Rights Corps.; Steven Zeidman; Cynthia Godsoe; Justin Murray; Nicole Smith Futrell..(Diskant, Gregory) (Entered: 11/15/2021) |
| 11/23/2021 | 23 | NOTICE OF APPEARANCE by Krista Ann Friedrich on behalf of Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 11/23/2021) |
| 11/23/2021 | 24 | LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Krista Friedrich dated November 23, 2021. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 11/23/2021) |
| 11/24/2021 | 25 | ORDER granting 24 Letter Motion for Extension of Time. Request Granted. the requested defendants shall have until December 17, 2021 to answer, move, or otherwise respond to the complaint and to respond to Plaintiffs' unsealing request. So Ordered. (Signed by Judge Victor Marrero on 11/24/2021) (js) (Entered: 11/24/2021) |
| 12/09/2021 | 26 | SECOND LETTER MOTION for Extension of Time *to Respond to the Complaint and Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated December 9, 2021. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity)..(Figueira, Elizabeth) (Entered: 12/09/2021) |
| 12/09/2021 | 27 | LETTER RESPONSE to Motion addressed to Judge Victor Marrero from Jeffrey F. Kinkle dated December 9, 2021 re: 26 SECOND LETTER MOTION for Extension of Time *to Respond to the Complaint and Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated December 9, 2021. . Document filed by |

| | | |
|---|---|---|
| | | Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Nicole Smith Futrell, Steven Zeidman..(Kinkle, Jeffrey) (Entered: 12/09/2021) |
| 12/10/2021 | 28 | ORDER: granting 26 Letter Motion for Extension of Time. Request GRANTED. The State Defendants shall have until January 14, 2022 to answer or otherwise respond to the complaint and to respond to the unsealing motion. This shall be the final extension. SO ORDERED. (Signed by Judge Victor Marrero on 12/10/2021) (ama) (Entered: 12/10/2021) |
| 12/10/2021 | | Set/Reset Deadlines: Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) answer due 1/14/2022; Andrea E. Bonina (Personal Capacity) answer due 1/14/2022; Hector D. LaSalle answer due 1/14/2022; Diana Maxfield Kearse(Personal Capacity) answer due 1/14/2022. Responses due by 1/14/2022 (ama) (Entered: 12/10/2021) |
| 12/10/2021 | 29 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated December 10, 2021 re: requesting a pre−motion conference. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/10/2021) |
| 12/13/2021 | 30 | SECOND LETTER MOTION for Extension of Time *to respond to Complaint and unsealing request, and First request for extension of time to respond to Plaintiffs' pre−motion conference letter* addressed to Judge Victor Marrero from Krista Friedrich dated December 13, 2021. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/13/2021) |
| 12/14/2021 | 31 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated December 14, 2021 re: Response to the City Defendants' Letter (dkt. no. 30). Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/14/2021) |
| 12/14/2021 | 32 | ORDER re: 30 Letter Motion for Extension of Time. The City Defendants' request for an extension of time to answer the Complaint and respond to the request for unsealing is granted. City Defendants shall have until January 14, 2022 to respond to the complaint and the unsealing motion. City Defendants' request for an extension of time to respond to the pre− motion conference letter is denied. So Ordered. (Signed by Judge Victor Marrero on 12/14/2021) (js) (Entered: 12/14/2021) |
| 12/14/2021 | | Set/Reset Deadlines: Melinda Katz(In her official capacity the District Attorney of Queens County) answer due 1/14/2022; Melinda Katz (Personal Capacity) answer due 1/14/2022; Georgia Pestana(In her official capacity Corporation Counsel of the City of New York) answer due 1/14/2022; Georgia Pestana(Personal Capacity) answer due 1/14/2022. Responses due by 1/14/2022 (js) (Entered: 12/14/2021) |
| 12/14/2021 | 33 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated December 14, 2021 re: Response to Plaintiffs' letter (Dkt. No. 31). Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/14/2021) |
| 12/15/2021 | 34 | MEMO ENDORSEMENT on re: 33 Letter, filed by Georgia Pestana, Melinda Katz. ENDORSEMENT: At this time the request by both parties, see also Dkt. 31, for a conference on January 18, 2022 is denied. The Court shall review all pre−motion letters and letters in opposition and will schedule a conference if deemed necessary after review. So Ordered. (Signed by Judge Victor Marrero on 12/15/2021) (js) (Entered: 12/15/2021) |
| 12/20/2021 | 35 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated December 20, 2021 re: copying the Court on City Defendants' letter to Plaintiffs' counsel re: proposed motion to dismiss. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/20/2021) |

| | | |
|---|---|---|
| 12/20/2021 | 36 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated December 20, 2021 re: response to Plaintiffs' letter proposing motion for partial summary judgment (Dkt. No. 29). Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 12/20/2021) |
| 12/21/2021 | 37 | LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Gregory L. Diskant dated December 21, 2021. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/21/2021) |
| 12/22/2021 | 38 | ORDER granting 37 Letter Motion for Extension of Time. Request Granted. Plaintiffs shall have until December 31, 2021 to respond. So Ordered. (Signed by Judge Victor Marrero on 12/22/2021) (js) (Entered: 12/22/2021) |
| 12/30/2021 | 39 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated December 30, 2021 re: copying the Court in response to City Defendants' December 20, 2021 letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 12/30/2021) |
| 01/05/2022 | 40 | NOTICE OF APPEARANCE by Elizabeth Anne Figueira on behalf of Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/05/2022) |
| 01/05/2022 | 41 | LETTER addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 5, 2022 re: copying Court on pre−motion to dismiss correspondence. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/05/2022) |
| 01/05/2022 | 42 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated January 5, 2022 re: proposed motion to dismiss. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 01/05/2022) |
| 01/06/2022 | 43 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant in Response to the City Defendants' January 5, 2022 Letter dated January 6, 2022 Document filed by Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/06/2022) |
| 01/12/2022 | 44 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 12, 2022 re: Response to the State Defendants' January 5, 2022 Letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/12/2022) |
| 01/14/2022 | 45 | NOTICE OF APPEARANCE by Mark Michael Elliott on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 01/14/2022) |
| 01/14/2022 | 46 | NOTICE OF APPEARANCE by Leah Frankel on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Frankel, Leah) (Entered: 01/14/2022) |
| 01/14/2022 | 47 | LETTER addressed to Judge Victor Marrero from Mark M. Elliott dated January 14, 2022 re: Proposed Motion to Dismiss. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 01/14/2022) |

| | | |
|---|---|---|
| 01/14/2022 | 48 | LETTER MOTION to Seal *in Opposition to ECF 9 Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 14, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/14/2022) |
| 01/14/2022 | 49 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated January 14, 2022 re: response to Dkt. No. 9 motion to unseal. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 01/14/2022) |
| 01/14/2022 | 50 | LETTER RESPONSE in Opposition to Motion addressed to Judge Victor Marrero from Mark M. Elliott dated January 14, 2022 re: 48 LETTER MOTION to Seal *in Opposition to ECF 9 Motion to Unseal* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 14, 2022. . Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 01/14/2022) |
| 01/18/2022 | 51 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 18, 2022 re: Plaintiffs' reply to Defendants' 1/14/22 letter briefs regarding request to unseal. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/18/2022) |
| 01/18/2022 | 52 | LETTER MOTION for Conference re: 41 Letter, *re: Proposed Motion to Dismiss and Scheduling Submissions* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated January 18, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 01/18/2022) |
| 01/19/2022 | 53 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 19, 2022 re: in reply to the letters filed by the City Defendants on January 5, 2022 (ECF No. 42) and the State Defendants on January 18, 2022 (ECF No. 52). Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/19/2022) |
| 01/21/2022 | 54 | LETTER addressed to Judge Victor Marrero from Krista Friedrich dated January 21, 2022 re: response to Plaintiffs' letter (Dkt. No. 53). Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 01/21/2022) |
| 01/21/2022 | 55 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 21, 2022 re: copying the Court in response to Defendant Diana Maxfield Kearse's January 14, 2022 letter.. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/21/2022) |
| 01/24/2022 | 56 | ORDER: Upon review of all pre−motion letters, the parties are hereby ordered to submit a joint proposed briefing schedule regarding Plaintiffs anticipated motion for partial summary judgment within three days of the date of this order. Any motions for a pre− motion conference are denied at this time. No further briefing will be accepted for the anticipated motions to dismiss. The Court will resolve all three of Defendants' anticipated motions to dismiss the Complaint on the basis of the parties' pre−motion letters. See Kapitalforeningen Lgernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court's ruling deeming an exchange of letters as a motion to dismiss). So Ordered. (Signed by Judge Victor Marrero on 1/24/2022) (js) (Entered: 01/24/2022) |

**JA13**

| | | |
|---|---|---|
| 01/24/2022 | 57 | LETTER addressed to Judge Victor Marrero from David McCraw dated 1/19/2022 re: I write on behalf of The New York Times Company (The Times) in support of the unsealing motion filed by the plaintiffs in the above−referenced case. See Dkt. No. 9. The motion concerns seven letters that are appended as exhibits to the complaint and that go to the heart of the plaintiffs' claims in this action. It is clear that the exhibits are subject to a presumptive right of access and that the defendants have not met their burden to over The Times joins theplaintiffs in asking the Court to unseal them. (js) (Entered: 01/25/2022) |
| 01/25/2022 | 58 | ORDER: For the reasons stated above, it is hereby ORDERED that Plaintiffs' motion to unseal all seven exhibits to the Complaint (Dkt. No. 9) is GRANTED. Plaintiffs are directed to re−file the Complaint with all exhibits attached for public viewing. So Ordered. (Signed by Judge Victor Marrero on 1/25/2022) (js) (Entered: 01/25/2022) |
| 01/25/2022 | 59 | COMPLAINT against Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Melinda Katz(In her official capacity the District Attorney of Queens County), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York). Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. (Attachments: # 1 Exhibit 1, City Law Dept letter, dated June 2, 2021, # 2 Exhibit 2, GC Letter re Professors Complaints, dated June 11, 2021, # 3 Exhibit 3, Letter from G. Diskant to 9th GC, dated June 22, 2021, # 4 Exhibit 4, Letter to Corp Counsel, dated June 22, 20921, # 5 Exhibit 5, Letter to GC from G. Pestana, dated July 8, 2021, # 6 Exhibit 6, Letter from G. Diskant to GC, dated June 30, 2021, # 7 Exhibit 7, Letter from GC, dated July 26, 2021).(Diskant, Gregory) (Entered: 01/25/2022) |
| 01/26/2022 | 60 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated January 26, 2022 re: In response to the Courts January 24, 2022 order. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 01/26/2022) |
| 01/27/2022 | 61 | MEMO ENDORSEMENT on re: 60 Letter, filed by Civil Rights Corps., Steven Zeidman, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Cynthia Godsoe. ENDORSEMENT: The proposed briefing schedule is approved. Plaintiffs' request to file one 20−page reply brief is granted. So Ordered. (Motions due by 2/22/2022., Responses due by 3/22/2022, Replies due by 4/5/2022.) (Signed by Judge Victor Marrero on 1/27/2022) (js) (Entered: 01/27/2022) |
| 02/22/2022 | 62 | NOTICE OF APPEARANCE by Eric Jay Eichenholtz on behalf of Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 02/22/2022) |
| 02/22/2022 | 63 | MOTION for Partial Summary Judgment . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/22/2022) |
| 02/22/2022 | 64 | MEMORANDUM OF LAW in Support re: 63 MOTION for Partial Summary Judgment . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/22/2022) |
| 02/22/2022 | 65 | DECLARATION of Gregory L. Diskant in Support re: 63 MOTION for Partial Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit 1 − Sligh−Grievance, # 2 Exhibit 2 − 2021.06.02 − City Law Dept letter, # 3 Exhibit 3 − 2021.06.11 GC Letter re Professors Complaints, # 4 Exhibit 4 − 2021.06.22 Letter from G. Diskant to 9th GC, # 5 Exhibit 5 − 2021.06.22 Letter to Corp Counsel, # 6 Exhibit 6 − 2021.06.30 Letter from G. Diskant to GC, # 7 Exhibit 7 − 2021.07.08 2nd11th13th−Dist−Cmmtee−Ltr, # 8 Exhibit 8 − 2021.07.26 Letter from GC, # 9 Exhibit 9 − Bill Jacket_L−1945−CH−0675, # 10 Exhibit 10 − 2016−Annual−Report−on−Lawyer−Discipline−in−NYS Excerpt, # 11 Exhibit 11 − 2017−Annual Report on Lawyer Discipline − Excerpt, # 12 Exhibit 12 − 2018−FINAL−REPORT − Excerpt, # 13 Exhibit 13 − |

| | | |
|---|---|---|
| | | 2019−Annual−Report−Complete Excerpt, # 14 Exhibit 14 − 2019 ANNUAL REPORT (1st dept) Excerpt, # 15 Exhibit 15 − 2020−Attorney−Grievence−Committee−Report Excerpt).(Diskant, Gregory) (Entered: 02/22/2022) |
| 02/22/2022 | 66 | RULE 56.1 STATEMENT. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/22/2022) |
| 03/08/2022 | 67 | Amicus Curiae APPEARANCE entered by Ira Martin Feinberg on behalf of The New York Times Company,, The Associated Press, Pro Publica Inc., Newsday LLC..(Feinberg, Ira) (Entered: 03/08/2022) |
| 03/08/2022 | 68 | Amicus Curiae APPEARANCE entered by Benjamin Andrew Fleming on behalf of Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Fleming, Benjamin) (Entered: 03/08/2022) |
| 03/08/2022 | 69 | Amicus Curiae APPEARANCE entered by Matthew Alan Ducharme on behalf of Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Ducharme, Matthew) (Entered: 03/08/2022) |
| 03/08/2022 | 70 | LETTER MOTION to File Amicus Brief addressed to Judge Victor Marrero from Ira M. Feinberg dated March 8, 2022. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,. (Attachments: # 1 Exhibit A − Proposed Brief of Amici Curiae).(Feinberg, Ira) (Entered: 03/08/2022) |
| 03/08/2022 | 71 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Other Affiliate Tillandsia Media Holdings LLC, Other Affiliate The Charles F. Dolan 2014 Children Trust FBO Patrick F. Dolan for Newsday LLC. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 03/08/2022) |
| 03/09/2022 | 72 | ORDER granting 70 Letter Motion to File Amicus Brief. Request GRANTED. The motion for leave to file as amici curiae is granted. So Ordered. (Signed by Judge Victor Marrero on 3/9/2022) (js) (Entered: 03/09/2022) |
| 03/09/2022 | 73 | BRIEF re: 63 MOTION for Partial Summary Judgment . *(BRIEF OF AMICI CURIAE IN SUPPORT)*. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 03/09/2022) |
| 03/14/2022 | 74 | FIRST LETTER MOTION for Extension of Time to File *Opposition to Summary Judgment Motion* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated March 14, 2022., FIRST LETTER MOTION for Leave to File Excess Pages *for Opposition* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated March 14, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/14/2022) |
| 03/15/2022 | 75 | ORDER granting 74 Letter Motion for Extension of Time to File ; granting 74 Letter Motion for Leave to File Excess Pages. Request GRANTED. All defendants' oppositions to the motion for partial summary judgment shall be due March 31, 2022. Plaintiffs' reply is due April 14, 2022. The page limit for the Office's memorandum of law shall be expanded to 30 pages. So Ordered. (Signed by Judge Victor Marrero on 3/15/2022) (js) (Entered: 03/15/2022) |
| 03/31/2022 | 76 | RULE 56.1 STATEMENT. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 03/31/2022) |
| 03/31/2022 | 77 | MEMORANDUM OF LAW in Opposition re: 63 MOTION for Partial Summary Judgment . . Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 03/31/2022) |

**JA15**

| 03/31/2022 | 78 | MEMORANDUM OF LAW in Opposition re: 63 MOTION for Partial Summary Judgment . . Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/31/2022) |
| --- | --- | --- |
| 03/31/2022 | 79 | RULE 56.1 STATEMENT. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 80 | DECLARATION of Elizabeth Anne Figueira in Opposition re: 63 MOTION for Partial Summary Judgment .. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle. (Attachments: # 1 Exhibit 1− 1st Dept Form, # 2 Exhibit 2− 1st Dept How To File, # 3 Exhibit 3 − 2d Dept Form, # 4 Exhibit 4 − How to Make a Complaint, # 5 Exhibit 5− 3d Dept Form, # 6 Exhibit 6 − Instructions For Filing, # 7 Exhibit 7− 4th Dept Form, # 8 Exhibit 8 − 4th Dept Overview, # 9 Exhibit 9 − Lippman Report, # 10 Exhibit 10 Rule 16, # 11 Exhibit 11 − Merriam Dictionary, # 12 Exhibit 12− Merriam Online, # 13 Exhibit 13 − OED Upon prep, # 14 Exhibit 14 − OED Upon adv).(Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 81 | DECLARATION of Andrea E. Bonina in Opposition re: 63 MOTION for Partial Summary Judgment .. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 03/31/2022) |
| 03/31/2022 | 82 | MEMORANDUM OF LAW in Opposition re: 63 MOTION for Partial Summary Judgment . . Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 03/31/2022) |
| 03/31/2022 | 83 | DECLARATION of Diana Maxfield Kearse in Opposition re: 63 MOTION for Partial Summary Judgment .. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 03/31/2022) |
| 03/31/2022 | 84 | COUNTER STATEMENT TO 66 Rule 56.1 Statement. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Elliott, Mark) (Entered: 03/31/2022) |
| 04/14/2022 | 85 | REPLY MEMORANDUM OF LAW in Support re: 63 MOTION for Partial Summary Judgment . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 04/14/2022) |
| 04/14/2022 | 86 | REPLY AFFIRMATION of Gregory L. Diskant in Support re: 63 MOTION for Partial Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit 16 Letter from G. Diskant; dated 3/15/22, # 2 Exhibit 17 Letter from E. Eichenholtz, dated 3/17/22).(Diskant, Gregory) (Entered: 04/14/2022) |
| 04/14/2022 | 87 | NOTICE OF APPEARANCE by Jeffrey F Kinkle on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Kinkle, Jeffrey) (Entered: 04/14/2022) |
| 04/15/2022 | 88 | NOTICE OF APPEARANCE by Elisabeth A. Shane on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Shane, Elisabeth) (Entered: 04/15/2022) |
| 04/29/2022 | | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Valerie Figueredo. Please note that this is a reassignment of the designation only. (nb) (Entered: 04/29/2022) |

**JA16**

| 04/29/2022 | 89 | NOTICE OF CHANGE OF ADDRESS by Mark Michael Elliott on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District). New Address: Elliott, Kwok, Levine & Jaroslaw LLP, 565 5th Avenue, 7th Floor, New York, New York, US 10017, 6467774511..(Elliott, Mark) (Entered: 04/29/2022) |
|---|---|---|
| 05/05/2022 | 90 | DECISION AND ORDER: It is hereby ORDERED that the motion so−deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the unredacted complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is DENIED IN PART; and it is further ORDERED that the motion so−deemed by the Court (Dkt. No. 41) filed by Defendants Andrea E. Bonina and Hector LaSalle to dismiss Plaintiffs' Complaint is DENIED; and it is further ORDERED that the motion so−deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs' Complaint is DENIED IN PART. The Court will reserve judgment on the remaining arguments made in the motions filed by the City Defendants and Kearse pending resolution of Plaintiffs' motion for partial summary judgment. SO ORDERED. (Signed by Judge Victor Marrero on 5/5/2022) (jca) (Entered: 05/05/2022) |
| 05/12/2022 | 91 | FIRST LETTER MOTION for Extension of Time to File Answer re: 59 Complaint,,,, *on Behalf of All Defendants* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated May 12, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 05/12/2022) |
| 05/12/2022 | 92 | ORDER granting 91 Letter Motion for Extension of Time to Answer re 91 FIRST LETTER MOTION for Extension of Time to File Answer re: 59 Complaint *on Behalf of All Defendants* addressed to Judge Victor Marrero from Elizabeth A. Figueira dated May 12, 2022. The deadline to answer for all defendants is stayed pending complete resolution of all motions to dismiss. SO ORDERED. (Signed by Judge Victor Marrero on 5/12/2022) (jca) (Entered: 05/12/2022) |
| 06/09/2022 | 93 | MOTION for Jeffrey F. Kinkle to Withdraw as Attorney . Document filed by Civil Rights Corps., Cynthia Godsoe..(Kinkle, Jeffrey) (Entered: 06/09/2022) |
| 06/13/2022 | 94 | DECISION AND ORDER granting in part and denying in part 63 Motion for Partial Summary Judgment. It is hereby ORDERED that the motion so−deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is DENIED; and it is further ORDERED that the motion so−deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs Complaint is DENIED; and it is further ORDERED that the motion filed by Plaintiffs for partial summary judgment (Dkt. No. 63) is GRANTED IN PART. The motion is granted insofar as it seeks summary judgment on Plaintiffs' as−applied constitutional challenge. Defendants are hereby ORDERED to file their answer to the remaining claims brought in the Complaint within twenty−one days of the date of this Order. SO ORDERED. (Signed by Judge Victor Marrero on 6/13/22) (yv) (Entered: 06/13/2022) |
| 06/13/2022 | 95 | MEMO ENDORSEMENT granting 93 MOTION for Jeffrey F. Kinkle to Withdraw as Attorney. ENDORSEMENT: Request GRANTED. The motion of attorney Jeffery Kinkle to withdraw is granted. SO ORDERED. Attorney Jeffrey F Kinkle terminated (Signed by Judge Victor Marrero on 6/13/2022) (jca) (Entered: 06/13/2022) |
| 06/18/2022 | 96 | MOTION FOR LEAVE TO FILE A MOTION TO INTERVENE. Document filed by Towaki Komatsu, a non−party..(sc) (Entered: 06/21/2022) |
| 06/23/2022 | 97 | ORDER denying 96 Motion to Intervene. For that reason, it is hereby ORDERED that the motion filed by Towaki Komatsu to intervene in this action (Dkt. No. 96) is DENIED. SO ORDERED. (Signed by Judge Victor Marrero on 6/23/2022) (jca) (Entered: 06/23/2022) |

| | | |
|---|---|---|
| 06/29/2022 | 98 | LETTER MOTION for Extension of Time to File Answer re: 59 Complaint,,,, *for all defendants on consent of all parties* addressed to Judge Victor Marrero from Eric Eichenholtz dated June 29, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 06/29/2022) |
| 06/30/2022 | 99 | ORDER granting 98 Letter Motion for Extension of Time to Answer re: 59 Complaint *for all defendants on consent of all parties* addressed to Judge Victor Marrero from Eric Eichenholtz dated June 29, 2022. Request GRANTED. Defendants' deadline to answer shall be extended until July 22, 2022. SO ORDERED. Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) answer due 7/22/2022; Andrea E. Bonina (Personal Capacity) answer due 7/22/2022; Melinda Katz(In her official capacity the District Attorney of Queens County) answer due 7/22/2022; Melinda Katz (Personal Capacity) answer due 7/22/2022; Hector D. LaSalle answer due 7/22/2022; Diana Maxfield Kearse(Personal Capacity) answer due 7/22/2022; Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) answer due 7/22/2022; Georgia Pestana(In her official capacity Corporation Counsel of the City of New York) answer due 7/22/2022; Georgia Pestana(Personal Capacity) answer due 7/22/2022. (Signed by Judge Victor Marrero on 6/30/2022) (vfr) (Entered: 06/30/2022) |
| 07/12/2022 | 100 | **FILING ERROR − DEFICIENT DOCKET ENTRY − FILER ERROR −** NOTICE OF INTERLOCUTORY APPEAL from 94 Order on Motion for Partial Summary Judgment,,,,. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity). Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Eichenholtz, Eric) Modified on 7/13/2022 (tp) (Entered: 07/12/2022) |
| 07/13/2022 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Eric Eichenholtz to RE−FILE Document No. 100 Notice of Interlocutory Appeal. The filing is deficient for the following reason(s): the wrong individual filer/filers were selected for the appeal − the pdf states that the defendants are only appealing in their personal capacity. Re−file the appeal using the event type Notice of Appeal found under the event list Appeal Documents − attach the correct signed PDF − select the correct named individual filer/filers − select the correct order/judgment being appealed. (tp)** (Entered: 07/13/2022) |
| 07/13/2022 | 101 | NOTICE OF INTERLOCUTORY APPEAL from 94 Order on Motion for Partial Summary Judgment,,,,. Document filed by Melinda Katz (Personal Capacity), Georgia Pestana(Personal Capacity). Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Eichenholtz, Eric) (Entered: 07/13/2022) |
| 07/13/2022 | | Appeal Fee Due: for 101 Notice of Interlocutory Appeal,.$505.00 Appeal fee due by 7/27/2022..(nd) (Entered: 07/13/2022) |
| 07/13/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 101 Notice of Interlocutory Appeal,..(nd) (Entered: 07/13/2022) |
| 07/13/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 101 Notice of Interlocutory Appeal, filed by Georgia Pestana, Melinda Katz were transmitted to the U.S. Court of Appeals..(nd) (Entered: 07/13/2022) |
| 07/15/2022 | | USCA Appeal Fees received $ 505.00 receipt number 2846 on 7/13/2022 re: 101 Notice of Interlocutory Appeal, filed by Georgia Pestana, Melinda Katz. (tp) (Entered: 07/15/2022) |

| | | |
|---|---|---|
| 07/15/2022 | 102 | NOTICE OF APPEARANCE by Rachel J Rodriguez on behalf of Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Rodriguez, Rachel) (Entered: 07/15/2022) |
| 07/22/2022 | 103 | ANSWER to 59 Complaint,,,,. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Rodriguez, Rachel) (Entered: 07/22/2022) |
| 07/22/2022 | 104 | ANSWER to 59 Complaint,,,,. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 07/22/2022) |
| 07/22/2022 | 105 | ANSWER to 59 Complaint,,,,. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity)..(Figueira, Elizabeth) (Entered: 07/22/2022) |
| 07/22/2022 | 106 | ANSWER to 59 Complaint,,,,. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Eichenholtz, Eric) (Entered: 07/22/2022) |
| 07/26/2022 | 107 | ORDER: A Complaint in the above captioned matter was filed on November 4, 2021. (Dkt. No. 1.) Defendants filed Answers to the Complaint on July 22, 2022. (Dkt. Nos. 103, 104, 105, 106.) Accordingly, the parties are hereby directed to submit a joint letter, within thirty (30) days of the date of this Order, addressing the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; (3) the prospect for settlement; and (4) whether the parties consent to proceed for all purposes before the Magistrate Judge designated for this action. The parties are also directed to submit a completed Case Management Plan that provides that discovery is to be completed within four months unless otherwise permitted by the Court. A model Case Management Plan is available on the Court's website: https://nysd.uscourts.gov/hon−victormarrero. Submissions must be made in accordance with Judge Marrero's Emergency Individual Rules and Practices in Light of COVID−19, available at the Court's website. (Signed by Judge Victor Marrero on 7/26/2022) (jca) (Entered: 07/26/2022) |
| 07/29/2022 | 108 | LETTER MOTION to Stay *proceedings pending interlocutory appeal* addressed to Judge Victor Marrero from Krista Friedrich dated July 29, 2022. Document filed by Melinda Katz(In her official capacity the District Attorney of Queens County), Melinda Katz (Personal Capacity), Georgia Pestana(In her official capacity Corporation Counsel of the City of New York), Georgia Pestana(Personal Capacity)..(Friedrich, Krista) (Entered: 07/29/2022) |
| 08/01/2022 | 109 | ORDER with respect to 108 Letter Motion to Stay re: 108 LETTER MOTION to Stay *proceedings pending interlocutory appeal* addressed to Judge Victor Marrero from Krista Friedrich dated July 29, 2022. Plaintiffs are directed to respond by August 5, 2022, by letter not to exceed four pages, to the matter set forth above by Defendants requesting a stay pending appeal. SO ORDERED. (Signed by Judge Victor Marrero on 8/1/2022) (jca) (Entered: 08/01/2022) |
| 08/01/2022 | | Set/Reset Deadlines: Responses due by 8/5/2022 (jca) (Entered: 08/01/2022) |
| 08/04/2022 | 110 | LETTER addressed to Judge Victor Marrero from Gregory Diskant dated August 4, 2022 re: opposition to City Defendants' July 29, 2022 letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/04/2022) |
| 08/17/2022 | 111 | DECISION AND ORDER granting in part and denying in part 108 Letter Motion to Stay re: 108 LETTER MOTION to Stay *proceedings pending interlocutory appeal* addressed to Judge Victor Marrero from Krista Friedrich dated July 29, 2022. It is hereby ORDERED that the motion for a stay of discovery filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to stay all discovery pending interlocutory appeal (Dkt. No. 108) is DENIED IN PART AND GRANTED IN PART. The requested stay is granted as to any discovery that pertains only to the claims for relief that would be precluded by a favorable appellate decision on the |

JA19

| | | |
|---|---|---|
| | | issues of City Defendants' qualified and absolute immunity. The stay is denied as to all other discovery. SO ORDERED. (Signed by Judge Victor Marrero on 8/17/22) (yv) (Entered: 08/17/2022) |
| 08/17/2022 | 112 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non−dispositive pretrial motions, and settlement). Referred to Magistrate Judge Valerie Figueredo. SO ORDERED. (Signed by Judge Victor Marrero on 8/17/22) (yv) (Entered: 08/17/2022) |
| 08/23/2022 | 113 | INITIAL CASE MANAGEMENT CONFERENCE ORDER: This action is scheduled for an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure on Thursday, September 29, 2022 at 10:30 a.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808−6929; access code 9781335 . Initial Conference set for 9/29/2022 at 10:30 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 8/23/2022) (rro) (Entered: 08/23/2022) |
| 08/25/2022 | 114 | JOINT LETTER addressed to Judge Victor Marrero from Counsel dated August 25, 2022 re: Response to the Court's July 26, 2022 Order. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit Civil Case Management Plan and Scheduling Order).(Diskant, Gregory) (Entered: 08/25/2022) |
| 08/25/2022 | 115 | FIRST LETTER MOTION to Adjourn Conference *Scheduled for September 29, 2022* addressed to Magistrate Judge Valerie Figueredo from Elizabeth A. Figueira dated August 25, 2022. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 08/25/2022) |
| 08/26/2022 | 116 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: This case is to be tired to a jury. All parties do not consent to trial by a Magistrate Judge under 28 U.S.C. § 636(c). Depositions to be completed by December 23, 2022. Amended Pleadings due by 9/9/2022. Joinder of Parties due by 9/9/2022. Deposition due by 3/23/2023. Fact Discovery due by 12/23/2022. Case Management Conference set for 1/20/2023 at 12:00 PM before Judge Victor Marrero. (Signed by Judge Victor Marrero on 8/26/2022) (kv) Modified on 9/16/2022 (kv). (Entered: 08/26/2022) |
| 08/26/2022 | | Set/Reset Deadlines: Deposition due by 3/23/2023. Expert Discovery due by 3/23/2023. (kv) (Entered: 09/16/2022) |
| 09/06/2022 | 117 | INITIAL CASE MANAGEMENT CONFERENCE ORDERgranting 115 Letter Motion to Adjourn Conference. This action is rescheduled for an Initial Case Management Conference in accordance with Rule 16(b) of the Federal Rules of Civil Procedure on Wednesday, October 12, 2022 at 10:00 a.m. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808−6929; access code 9781335 . Initial Conference set for 10/12/2022 at 10:00 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 9/6/2022) (rro) (Entered: 09/06/2022) |
| 09/09/2022 | 118 | PROPOSED STIPULATION AND ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 09/09/2022) |
| 09/12/2022 | 119 | JOINT STIPULATION AND ORDER: IT IS HEREBY ORDERED THAT: 1. Plaintiffs and Pestana represent and agree that Plaintiffs' claims against Pestana in her official capacity as Corporation Counsel proceed against Steven Stein Cushman, in his official capacity as New York City's Acting Corporation Counsel in this matter; 2. The Clerk of Court amend the case caption so that Steven Stein Cushman is substituted for Defendant Georgia Pestana for only the claims against Pestana in her official capacity as Corporation Counsel. 3. For the sake of clarity, this Joint Stipulation and Order has no effect on the personal− capacity claims against Pestana, who remains a defendant in her personal capacity. Nor do Plaintiffs seek to bring claims against Steven Stein Cushman in his personal capacity. SO ORDERED. (Signed by Judge Victor Marrero on 9/12/2022) (jca) (Entered: 09/12/2022) |

**JA20**

| | | |
|---|---|---|
| 09/22/2022 | 120 | NOTICE OF APPEARANCE by Joya C Sonnenfeldt on behalf of Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 09/22/2022) |
| 10/05/2022 | 121 | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/05/2022) |
| 10/10/2022 | 122 | NOTICE OF APPEARANCE by Gargi Chaudhuri on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Chaudhuri, Gargi) (Entered: 10/10/2022) |
| 10/11/2022 | 123 | PROPOSED STIPULATION AND ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/11/2022) |
| 10/11/2022 | 124 | PROPOSED PROTECTIVE ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/11/2022) |
| 10/12/2022 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Case Management Conference held on 10/12/2022. (sjo) (Entered: 10/12/2022) |
| 10/12/2022 | 125 | ORDER SCHEDULING DISCOVERY CONFERENCES: A conference in this matter is hereby scheduled for Wednesday, November 16, 2022, at 10:00 a.m. Parties are directed to submit a joint status letter no later than Thursday, November 10, 2022 by 5:00 p.m., identifying any issues the parties wish to discuss at the conference. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808−6929; access code 9781335 . Additional Conferences are also scheduled for: Thursday, December 15, 2022 at 10:00 a.m., Monday, January 16, 2023 at 10:00 a.m., and Wednesday, February 15, 2023 at 10:00 a.m. Status Conference set for 12/15/2022 at 10:00 AM before Magistrate Judge Valerie Figueredo. Telephone Conference set for 11/16/2025 at 10:00 AM before Magistrate Judge Valerie Figueredo. Status Conference set for 1/16/2023 at 10:00 AM before Magistrate Judge Valerie Figueredo. Status Conference set for 2/15/2023 at 10:00 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
| 10/12/2022 | 126 | JOINT STIPULATION AND ORDER REGARDING CLAWBACK PROCEDURE:This Stipulation and Order shall apply to all documents and information, including electronically stored information, produced or disclosed by the parties in response to discovery requests and demands; affidavits and declarations; testimony adduced at trial, deposition, or during any hearing; and all other information or material otherwise disclosed, produced, made available for inspection, or submitted by the parties in this litigation (collectively, "Discovery Material"). Any party's production or disclosure in this proceeding of information or material that is protected by any privilege or protection recognized by law (collectively, "Protected Material"), whether inadvertent or otherwise, shall not waive any claim of privilege or protection applicable to that material or its subject matter in this Action or any other federal or state proceeding and shall be governed by the procedures set forth herein. Any party that produces or discloses Protected Material (the "Producing Party"), or any other party holding a privilege, protection, or other interest against disclosure, may (i) notify in writing the party receiving Protected Material (the "Receiving Party") that Protected Material was produced or disclosed and that it does not intend to waive the applicable privilege, protection, or interest against disclosure; and (ii) demand that the Receiving Party return or destroy the Protected Material (the "Clawback Demand"). Such demand shall identify the Protected Material to be returned or destroyed (including by the Bates number of the document or, if no Bates number appears on the document, information sufficient to identify the document or information) and the basis for the claim of privilege or protection and further set forth in this Order. (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
| 10/12/2022 | 127 | CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |

| 10/12/2022 | 128 | REPORT OF RULE 26(f) CONFERENCE AND CASE MANAGEMENT PLAN: All fact discovery must be completed by March 23, 2023. Depositions shall be completed by March 23, 2023 and limited to no more than ten depositions per party. Absent an agreement between the parties or an order from the Court, non−party depositions shall follow initial party depositions. Expert discovery shall be completed by March 23, 2023. The parties anticipate that this case will be ready for trial 60 days after the resolution of any motions for summary judgment or June 19, 2023, if no motions are made. The parties anticipate that the trial of this case will require five days. The parties do not consent to a trial before a Magistrate Judge at this time. The parties request a jury trial and further set forth in this Order. Deposition due by 3/23/2023. Fact Discovery due by 3/23/2023. Expert Discovery due by 3/23/2023. Ready for Trial by 6/19/2023. (Signed by Magistrate Judge Valerie Figueredo on 10/12/2022) (rro) (Entered: 10/12/2022) |
|---|---|---|
| 10/17/2022 | 129 | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 10/12/2022 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420−0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/7/2022. Redacted Transcript Deadline set for 11/17/2022. Release of Transcript Restriction set for 1/15/2023. (js) (Entered: 10/17/2022) |
| 10/17/2022 | 130 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TELEPHONE CONFERENCE proceeding held on 10/12/2022 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (js) (Entered: 10/17/2022) |
| 10/21/2022 | 131 | PROPOSED STIPULATION AND ORDER. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 10/21/2022) |
| 10/24/2022 | 132 | JOINT STIPULATION AND ORDER REGARDING DISCOVERY PROCEDURE: NOW THEREFORE, it is hereby STIPULATED and ORDERED: Each Party will continue its retention practices with regard to all Documents and ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 37(e). By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege and further set forth in this Order. (Signed by Magistrate Judge Valerie Figueredo on 10/24/2022) (rro) (Entered: 10/24/2022) |
| 11/04/2022 | 133 | ORDER SCHEDULING DISCOVERY CONFERENCES: Due to an unforeseen scheduling conflict, the conference scheduled for Wednesday, November 16, 2022, at 10:00 a.m. has been rescheduled for Monday, November 21, 2022, at 3:00 p.m. Parties are directed to submit a joint status letter no later than Monday, November 14, 2022 by 5:00 p.m., identifying any issues the parties wish to discuss at the conference. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808−6929; access code 9781335. Telephone Conference set for 11/21/2022 at 03:00 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 11/4/2022) (rro) (Entered: 11/04/2022) |
| 11/11/2022 | 134 | JOINT LETTER addressed to Magistrate Judge Valerie Figueredo from Counsel dated November 11, 2022 re: Joint Status Letter. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Shane, Elisabeth) (Entered: 11/11/2022) |
| 11/21/2022 | 135 | ORDER SCHEDULING SETTLEMENT CONFERENCE AND STAYING CASE DEADLINES: A settlement conference in this matter is scheduled for Thursday, January 19, 2023, at 2:30 p.m., in Courtroom 17−A, United States Courthouse, 500 Pearl Street, New York, New York. Counsel and parties are required to follow the Court's COVID−safety protocols and should review the Court's website in advance of the conferences for the most up to date information. Corporate parties must send the person with decision making authority to settle the matter to the conference. The |

JA22

| | | |
|---|---|---|
| | | parties are instructed to complete the Settlement Conference Summary Report and prepare pre−conference submissions in accordance with the Judge Figueredo's Individual Rules of Practice. Pre−conference submissions must be received by the Court no later than Thursday, January 12, 2023. Pending outcome of the settlement conference, all case deadlines in ECF No. 128 are hereby stayed sine die, except that Plaintiffs shall serve their interrogatory responses by November 30, 2022 (as represented at the November 21, 2022 conference before this Court). SO ORDERED. Settlement Conference set for 1/19/2023 at 02:30 PM in Courtroom 17A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 11/21/2022) (ama) (Entered: 11/21/2022) |
| 11/21/2022 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Status Conference held on 11/21/2022. (sjo) (Entered: 11/22/2022) |
| 12/05/2022 | 136 | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 11/21/2022 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420−0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/27/2022. Redacted Transcript Deadline set for 1/5/2023. Release of Transcript Restriction set for 3/6/2023. (js) (Entered: 12/05/2022) |
| 12/05/2022 | 137 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TELEPHONE CONFERENCE proceeding held on 11/21/2022 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(js) (Entered: 12/05/2022) |
| 12/08/2022 | 138 | ORDER: The discovery conference for Thursday, December 15, 2022 at 10:00 a.m. is confirmed. Parties are directed to submit a joint status letter no later than Monday, December 12, 2022 by 5:00 p.m., identifying any issues the parties wish to discuss at the conference. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808−6929; access code 9781335 . In light of the federal holiday, the conference on Monday, January 16, 2023 at 10:00 a.m. is cancelled. Telephone Conference set for 12/15/2022 at 10:00 AM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 12/8/2022) (rro) (Entered: 12/08/2022) |
| 12/09/2022 | 139 | JOINT MOTION to Adjourn Conference *12/15/22*. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 12/09/2022) |
| 12/12/2022 | 140 | ORDER granting 139 Letter Motion to Adjourn Conference. ENDORSEMENT: Application Granted. (Signed by Magistrate Judge Valerie Figueredo on 12/12/2022) (rro) (Entered: 12/12/2022) |
| 12/22/2022 | 141 | JOINT LETTER MOTION to Adjourn Conference *scheduled for 1/20/23* addressed to Judge Victor Marrero from Joya Sonnenfeldt dated 12/22/22. Document filed by Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 12/22/2022) |
| 12/23/2022 | 142 | ORDER granting 141 Letter Motion to Adjourn Conference. The status conference scheduled for January 20, 2023 is hereby adjourned sine die pending the January 19 settlement conference with the Magistrate Judge. Should the parties fail to settle, the parties shall propose a new date for a status conference within one week of the entry of the new discovery schedule. Request GRANTED. SO ORDERED. (Signed by Judge Victor Marrero on 12/23/2022) (ks) (Entered: 12/23/2022) |
| 01/03/2023 | 143 | NOTICE OF APPEARANCE by Shelley Attadgie on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Attadgie, Shelley) (Entered: 01/03/2023) |

| 01/19/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Settlement Conference held on 1/19/2023. (sjo) (Entered: 01/20/2023) |
|---|---|---|
| 01/20/2023 | 144 | ORDER: The court held a settlement conference on January 19, 2023. Because settlement discussions are ongoing, the stay of all case deadlines put in place by the Order issued on November 21, 2022 (see ECF NO. 135) remains in place. A conference with Defendants, for purposes of continuing settlement discussions, is scheduled for March 2, 2023 at 2:30 p.m. Defendants will receive a zoom link for the remote conference via e−mail a few days before March 2. Following the completion of the March 2 conference, I will schedule a separate conference to continue settlement discussion with Plaintiffs. Settlement Conference set for 3/2/2023 at 02:30 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 1/20/2023) (rro) (Entered: 01/20/2023) |
| 02/02/2023 | | Minute Entry−−The Discovery conference schedule for February 15, 2023 is canceled. (sjo) (Entered: 02/02/2023) |
| 02/28/2023 | 145 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated February 28, 2023 re: Settlement. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/28/2023) |
| 02/28/2023 | 146 | LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated February 28, 2023 re: Right of Access. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 02/28/2023) |
| 03/02/2023 | | Minute Entry−−The settlement conference scheduled for today March 2, 2023 at 2:30 p.m. has been canceled. (sjo) (Entered: 03/02/2023) |
| 03/02/2023 | 147 | ORDER On February 28, 2023, counsel for plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, Steven Zeidman, and non−profit organization Civil Rights Corps (collectively, "Plaintiffs") filed a letter requesting a pre−motion conference regarding Plaintiffs' proposed motion for partial summary judgment on Count IV of Plaintiffs' Complaint. (Dkt. No. 146.) Within seven (7) days of the date of this Order, the parties shall submit a joint letter, not to exceed five (5) pages, setting forth the issue, the dispute, and the parties' respective positions on the proposed motion. Upon review of the joint letter, the Court will determine whether a pre−motion conference is warranted. SO ORDERED. (Signed by Judge Victor Marrero on 3/2/2023) (jca) (Entered: 03/02/2023) |
| 03/03/2023 | 148 | LETTER MOTION for Conference addressed to Magistrate Judge Valerie Figueredo from Mark M. Elliott dated March 3, 2023. Document filed by Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District)..(Rodriguez, Rachel) (Entered: 03/03/2023) |
| 03/06/2023 | 149 | LETTER RESPONSE to Motion addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated March 6, 2023 re: 148 LETTER MOTION for Conference addressed to Magistrate Judge Valerie Figueredo from Mark M. Elliott dated March 3, 2023. . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/06/2023) |
| 03/06/2023 | 150 | MEMO ENDORSEMENT re: 149 LETTER RESPONSE to Motion addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated March 6, 2023; granting 148 Letter Motion for Conference re: 148 LETTER MOTION for Conference addressed to Magistrate Judge Valerie Figueredo from Mark M. Elliott dated March 3, 2023. ENDORSEMENT: A conference in this matter is hereby scheduled for March 21, 2023 at 2:30 p.m. to discuss the issues raised in the parties' letters at ECF Nos. 148 and 149, including the issue of the stay. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. Please dial (888) 808−6929; access code 9781335 . The Clerk of Court is directed to terminate the motion at ECF No. 148. SO ORDERED. Telephone Conference set for 3/21/2023 at 02:30 PM before Magistrate Judge Valerie Figueredo. (Signed by Magistrate Judge Valerie Figueredo on 3/6/2023) (tg) (Entered: 03/06/2023) |

**JA24**

| 03/09/2023 | 151 | JOINT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant on behalf of all parties dated March 9, 2023 re: position letter pursuant to the order of March 2, 2023 147 . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/09/2023) |
|---|---|---|
| 03/15/2023 | 152 | ORDER On March 9, 2023, the parties in this matter filed a joint letter (Dkt. No. 151) in response to this Court's Order dated March 2, 2023 (Dkt. No. 147). The letter stated the parties' respective positions on Plaintiffs' proposed motion for partial summary judgment on Count IV of Plaintiffs' Complaint and further indicated that a status conference will be held before Magistrate Judge Valerie Figueredo on March 21, 2023 at which the parties will discuss the scope of the discovery remaining in this matter. Having reviewed the parties' letter, the Court hereby directs the parties to file a joint letter within three (3)days of the March 21 status conference, providing an updateon the status of discovery and schedule for completion. SO ORDERED. (Signed by Judge Victor Marrero on 3/15/2023) (jca) (Entered: 03/15/2023) |
| 03/21/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Telephone Conference held on 3/21/2023. (sjo) (Entered: 03/21/2023) |
| 03/21/2023 | | Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: Telephone Conference held on 3/21/2023. (sjo) (Entered: 03/22/2023) |
| 03/23/2023 | 153 | LETTER MOTION for Discovery *pursuant to the 3/21/23 conference* addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated March 23, 2023. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/23/2023) |
| 03/24/2023 | 154 | ORDER granting 153 Letter Motion for Discovery. It is ORDERED that discovery shall be limited to documents regarding the attorney grievance committee procedures relating to Count IV of Plaintiffs' Complaint, and shall be completed on or before May 22, 2023. It is further ORDERED that the State Defendants shall produce, on or before April 24, 2023, documents about the attorney grievance committee procedures, including those relevant to supporting or opposing any motion for summary judgment on Count IV of the Complaint. It is further ORDERED that Plaintiffs and State Defendants shall, within the same timeframe, identify any declarant on whom they intend to rely in support of or in opposition to any motion for summary judgment on Count IV of the Complaint. It is further ORDERED that Plaintiffs and State Defendants may depose any individuals identified in the prior paragraph on issues relating to attorney grievance committee procedures, including those relevant to supporting or opposing any motion for summary judgment on Count IV of the Complaint, and that no other topics or depositions will be permitted without leave of the Court. At the conclusion of the discovery period, on or before May 26, 2023, the parties will jointly update the District Court and Plaintiffs will renew their request to file a summary judgment motion. State Defendants will not oppose Plaintiffs' post−discovery request to move for summary judgment and reserve the right to request permission to cross−move for summary judgment at the conclusion of the discovery period. (Signed by Magistrate Judge Valerie Figueredo on 3/24/2023) (rro) (Entered: 03/24/2023) |
| 03/24/2023 | 155 | JOINT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated March 24, 2023 re: status discovery update and schedule for completion per Order 152 . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 03/24/2023) |
| 03/24/2023 | | Set/Reset Deadlines: Discovery due by 5/22/2023. (rro) (Entered: 04/04/2023) |
| 03/28/2023 | 156 | **FILING ERROR − DEFICIENT DOCKET ENTRY − SIGNATURE ERROR −** STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above−captioned action is voluntarily dismissed, without prejudice against the defendant(s) Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York |

| | | |
|---|---|---|
| | | Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Diskant, Gregory) Modified on 3/29/2023 (tp). (Entered: 03/28/2023) |
| 03/29/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT VOLUNTARY DISMISSAL. Notice to Attorney Gregory Diskant. RE−FILE Document No. 156 Stipulation of Voluntary Dismissal. The filing is deficient for the following reason(s): the stipulation of voluntary dismissal was not physically signed by all parties who have appeared. Re−file the document using the event type Stipulation of Voluntary Dismissal found under the event list Other Documents − select the correct filer/filers − select the correct party/parties the voluntary dismissal is against − and attach the correct signed (scanned *ink* signature image) PDF. (tp)** (Entered: 03/29/2023) |
| 03/29/2023 | 157 | STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above−captioned action is voluntarily dismissed, without prejudice against the defendant(s) Andrea E. Bonina(In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts), Andrea E. Bonina (Personal Capacity), Hector D. LaSalle, Diana Maxfield Kearse(Personal Capacity), Diana Maxfield Kearse(In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District) pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Diskant, Gregory) (Entered: 03/29/2023) |
| 03/30/2023 | | **\*\*\*NOTICE TO COURT REGARDING STIPULATION OF VOLUNTARY DISMISSAL Document No. 157 Stipulation of Voluntary Dismissal, was reviewed and referred to Judge Victor Marrero for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (tp)** (Entered: 03/30/2023) |
| 03/30/2023 | 158 | STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii): IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that Counts I, II, and Vin the above−captioned action are voluntarily dismissed, without prejudice against the State Defendants (Diana Maxfield Kearse, Justice Hector D. LaSalle, and Andrea E. Bonina) pursuant to the Federal Rules of Civil Procedure 41(a)(l)(A)(ii). Additionally, all claims brought against Ms. Kearse and Ms. Bonina, in both their official and personal capacities, are voluntarily dismissed, without prejudice. SO ORDERED. Diana Maxfield Kearse (Personal Capacity), Diana Maxfield Kearse (In her official capacity Cheif Counsel of the State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial District), Andrea E. Bonina (Personal Capacity) and Andrea E. Bonina (In her official capacity Chair of State of New York Greivance Committee for the Second, Eleventh and Thirteenth Judicial Districts) terminated. (Signed by Judge Victor Marrero on 3/30/2023) (ate) (Entered: 03/30/2023) |
| 05/16/2023 | 159 | TRANSCRIPT of Proceedings re: Telephone Conference held on 3/21/2023 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420−0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2023. Redacted Transcript Deadline set for 6/16/2023. Release of Transcript Restriction set for 8/14/2023. (nmo) (Entered: 05/16/2023) |
| 05/16/2023 | 160 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Telephone Conference proceeding held on 03/21/2023 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days... (nmo) |

| | | |
|---|---|---|
| | | (Entered: 05/16/2023) |
| 05/19/2023 | 161 | LETTER MOTION for Extension of Time addressed to Magistrate Judge Valerie Figueredo from Gregory Diskant dated May 19, 2023. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 05/19/2023) |
| 05/22/2023 | 162 | ORDER granting 161 Letter Motion for Extension of Time. Application Granted. The extension requested herein is granted. The Clerk of Court is directed to terminate the motion at ECF No. 161.. (Signed by Magistrate Judge Valerie Figueredo on 5/22/2023) Discovery due by 6/12/2023. (ks) (Entered: 05/22/2023) |
| 05/25/2023 | 163 | CONSENT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated May 25, 2023 re: the status of discovery. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 05/25/2023) |
| 06/01/2023 | 164 | CONSENT LETTER addressed to Magistrate Judge Valerie Figueredo from Gregory L. Diskant dated June 1, 2023 re: the attached Joint Stipulation. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Text of Proposed Order [Proposed] Joint Stipulation regarding Discovery).(Diskant, Gregory) (Entered: 06/01/2023) |
| 06/05/2023 | 165 | STIPULATION JOINT REGARDING DISCOVERY: IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel for the Parties as follows: 1. State Defendant will produce the Grievance Committee Manuals with the designation "Attorneys' Eyes Only," see ECF No. 127, in redacted form to protect attorney work product and the attorney client privilege. 2. The discovery period has been extended from May 22, 2023 to June 12, 2023, to allow sufficient time for State Defendant to produce the Grievance Committee Manuals in redacted form, and for Plaintiffs to review the documents prior to the anticipated deposition of Ms. Kearse on June 8, 2023. (ECF No. 162). 3. Neither party will request additional discovery, nor seek to depose additional witnesses following production of the Grievance Committee Manuals and the deposition of Ms. Kearse, except that Plaintiffs shall produce all documents obtained directly from the Second Department. 4. In exchange for State Defendant's production of the redacted Grievance Committee Manuals, Plaintiffs waive the right to challenge the propriety of any redactions provided that such redactions were made in good faith to protect attorney work product or documents otherwise subject to attorney−client privilege. So Ordered. ( Deposition due by 6/8/2023., Discovery due by 6/12/2023.) (Signed by Magistrate Judge Valerie Figueredo on 6/5/2023) (tg) (Entered: 06/05/2023) |
| 06/16/2023 | 166 | JOINT LETTER addressed to Judge Victor Marrero from Gregory L. Diskant dated June 16, 2023 re: update on the status of discovery and proposed summary judgment motions. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 06/16/2023) |
| 06/20/2023 | 167 | MEMO ENDORSEMENT on re: 166 Letter, filed by Civil Rights Corps., Steven Zeidman, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Cynthia Godsoe ENDORSEMENT Request GRANTED. The Court hereby grants the parties' request to file a motion and cross−motion for summary judgment on Count IV of Plaintiffs' Complaint in accordance with the briefing schedule proposed above. SO ORDERED. ( Cross Motions due by 9/8/2023., Motions due by 7/28/2023., Replies due by 11/10/2023., Responses due by 10/20/2023) (Signed by Judge Victor Marrero on 6/20/2023) (jca) (Entered: 06/20/2023) |
| 06/21/2023 | 168 | TRANSCRIPT of Proceedings re: TELEPHONE CONFERENCE held on 3/21/2023 before Magistrate Judge Valerie Figueredo. Court Reporter/Transcriber: Carole Ludwig, (212) 420−0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/12/2023. Redacted Transcript Deadline set for 7/24/2023. Release of Transcript Restriction set for 9/19/2023.(js) (Entered: 06/21/2023) |

**JA27**

| 06/21/2023 | 169 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 3/21/2023 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(js) (Entered: 06/21/2023) |
|---|---|---|
| 07/19/2023 | 170 | MOTION for Gargi Chaudhuri to Withdraw as Attorney . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Chaudhuri, Gargi) (Entered: 07/19/2023) |
| 07/20/2023 | 171 | MEMO ENDORSEMENT granting 170 Motion to Withdraw as Attorney. ENDORSEMENT: Application Granted. The Clerk of Court is directed to terminate the motion at ECF No. 170 and remove Gargi Chaudhuri from this action's service list. Attorney Gargi Chaudhuri terminated. (Signed by Magistrate Judge Valerie Figueredo on 7/20/2023) (rro) (Entered: 07/20/2023) |
| 07/20/2023 | 172 | MEMO ENDORSEMENT on re: 170 MOTION for Gargi Chaudhuri to Withdraw as Attorney . filed by Civil Rights Corps., Steven Zeidman, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Cynthia Godsoe. ENDORSEMENT: SO ORDERED. (Signed by Judge Victor Marrero on 7/20/2023) (ate) (Entered: 07/20/2023) |
| 07/28/2023 | 173 | MOTION for Summary Judgment . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 07/28/2023) |
| 07/28/2023 | 174 | RULE 56.1 STATEMENT. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 07/28/2023) |
| 07/28/2023 | 175 | MEMORANDUM OF LAW in Support re: 173 MOTION for Summary Judgment . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 07/28/2023) |
| 07/28/2023 | 176 | DECLARATION of Andrew Wells in Support re: 173 MOTION for Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit 1 − Sligh−Grievance, # 2 Exhibit 2 − Testagrossa−Grievance, # 3 Exhibit 3 − 2021.06.11 Kearse Letter, # 4 Exhibit 4 − Production no. 2DDEPT000001−000137, # 5 Exhibit 5 − Production no. 2DDEPT000850−000856, # 6 Exhibit 6 − Production no. 2DDEPT000843−000849, # 7 Exhibit 7 − Production no. 2DDEPT000817−000818, # 8 Exhibit 8 − Kearse Dep. Transcript, # 9 Exhibit 9 − 2016 Annual Report on Lawyer Discipline, # 10 Exhibit 10 − 2017 Annual Report on Lawyer Discipline, # 11 Exhibit 11 − 2018 Annual Report on Lawyer Discipline, # 12 Exhibit 12 − 2019 Annual Report on Lawyer Discipline, # 13 Exhibit 13 − 2020 Annual Report on Lawyer Discipline, # 14 Exhibit 14 − Production no. 2DDEPT000304−000309, # 15 Exhibit 15 − Production no. 2DDEPT000250−000292, # 16 Exhibit 16 − Production no. 2DDEPT000909−000929, # 17 Exhibit 17 − Kearse Initial Disclosures, # 18 Exhibit 18 − LaSalle Bonina Initial Disclosures, # 19 Exhibit 19 − Bill Jacket L. 1909 (1945), # 20 Exhibit 20 − Notice of Entry and Decision & Order, # 21 Exhibit 21 − Email Exchange Exhibit, # 22 Exhibit 22 − Matter of Kurtzrock Materials Exhibit).(Diskant, Gregory) (Entered: 07/28/2023) |
| 08/03/2023 | 177 | MOTION for Ira M. Feinberg to Withdraw as Attorney . Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 08/03/2023) |
| 08/03/2023 | 178 | DECLARATION of Ira M. Feinberg in Support re: 177 MOTION for Ira M. Feinberg to Withdraw as Attorney .. Document filed by Newsday LLC, Pro Publica Inc., The Associated Press, The New York Times Company,..(Feinberg, Ira) (Entered: 08/03/2023) |
| 08/04/2023 | 179 | MEMO ENDORSEMENT granting 177 Motion to Withdraw as Attorney. ENDORSEMENT: Application Granted. The Clerk of Court is directed to terminate the motion at ECF No. 177 and remove Mr. Feinberg from this action's service list. |

**JA28**

| | | |
|---|---|---|
| | | Attorney Ira Martin Feinberg terminated (Signed by Magistrate Judge Valerie Figueredo on 8/4/2023) (rro) (Entered: 08/04/2023) |
| 08/04/2023 | 180 | NOTICE OF APPEARANCE by David A. Schulz on behalf of Floyd Abrams Institute for Freedom of Expression..(Schulz, David) (Entered: 08/04/2023) |
| 08/04/2023 | 181 | LETTER MOTION to File Amicus Brief *in support of plaintiffs' motion for summary judgment (ECF 173)* addressed to Judge Victor Marrero from David A. Schulz dated August 4, 2023. Document filed by Floyd Abrams Institute for Freedom of Expression. (Attachments: # 1 Exhibit Proposed Brief of Floyd Abrams Institue for Freedom of Expresson as Amicus Curiae).(Schulz, David) (Entered: 08/04/2023) |
| 08/04/2023 | 182 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Floyd Abrams Institute for Freedom of Expression..(Schulz, David) (Entered: 08/04/2023) |
| 08/07/2023 | 183 | ORDER granting 181 Letter Motion to File Amicus Brief. Request GRANTED. The Floyd Abrams Institute's request for leave to file an amicus brief is granted. SO ORDERED. (Signed by Judge Victor Marrero on 8/7/2023) (jca) (Entered: 08/07/2023) |
| 08/08/2023 | 184 | BRIEF re: 173 MOTION for Summary Judgment . *Amicus brief in support of plaintiffs' motion for summary judgment on claim four*. Document filed by Floyd Abrams Institute for Freedom of Expression..(Schulz, David) (Entered: 08/08/2023) |
| 08/25/2023 | 185 | LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23., LETTER MOTION for Leave to File Excess Pages addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23. Document filed by Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 08/25/2023) |
| 08/28/2023 | 186 | LETTER RESPONSE in Opposition to Motion addressed to Judge Victor Marrero from Gregory Diskant dated August 28, 2023 re: 185 LETTER MOTION for Extension of Time addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23. LETTER MOTION for Leave to File Excess Pages addressed to Judge Victor Marrero from Joya Sonnenfeldt, Counsel for defendant Justice LaSalle dated 8/25/23. . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/28/2023) |
| 08/29/2023 | 187 | ORDER granting 185 Letter Motion for Leave to File Excess Pages. The Court hereby grants defendant Justice LaSalle leave to submit a memorandum of law not to exceed 35 pages. SO ORDERED. (Signed by Judge Victor Marrero on 8/29/2023) (jca) (Entered: 08/29/2023) |
| 08/30/2023 | 188 | ORDER granting 185 Letter Motion for Extension of Time. The Court hereby grants the above proposed extension of the summary judgment briefing schedule. SO ORDERED. (Signed by Judge Victor Marrero on 8/30/2023) (jca) (Entered: 08/30/2023) |
| 08/30/2023 | | Set/Reset Deadlines: Cross Motions due by 9/22/2023. Responses due by 11/3/2023 Replies due by 11/24/2023. (jca) (Entered: 08/30/2023) |
| 09/14/2023 | 189 | JOINT LETTER MOTION for Extension of Time *of the summary judgment briefing schedule* addressed to Judge Victor Marrero from Gregory L. Diskant dated September 14, 2023. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 09/14/2023) |
| 09/19/2023 | 190 | ORDER granting 189 Letter Motion for Extension of Time. Request GRANTED. The Court hereby approves the above jointly proposed extension of the summary judgment briefing schedule. SO ORDERED. Cross Motions due by 10/6/2023. (Signed by Judge Victor Marrero on 9/19/2023) (jca) (Entered: 09/19/2023) |
| 09/19/2023 | | Set/Reset Deadlines: Responses due by 11/17/2023 Replies due by 12/15/2023. (jca) (Entered: 09/19/2023) |

**JA29**

| | | |
|---|---|---|
| 10/06/2023 | 191 | CROSS MOTION for Summary Judgment *on the Fourth Claim*. Document filed by Hector D. LaSalle. Responses due by 11/17/2023.(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 192 | DECLARATION of Andrea E. Bonina in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 193 | DECLARATION of Diana Maxfield Kearse in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 194 | DECLARATION of Darrell M. Joseph in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle. (Attachments: # 1 Exhibit A − 2d Dept Website Instructions).(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 195 | DECLARATION of Justice Hector D. LaSalle in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 196 | DECLARATION of Catherine A. Sheridan in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 197 | DECLARATION of Joya C. Sonnenfeldt in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*.. Document filed by Hector D. LaSalle. (Attachments: # 1 Exhibit A − Ch. 95 of 1895 Legislature, # 2 Exhibit B − Sect. 68 Code Enacted 1876, # 3 Exhibit C − 1945 Bill Jacket, # 4 Exhibit D − Tenth Annual Report (1944), # 5 Exhibit E − Orientation Excerpt, # 6 Exhibit F − Lippman Report Excerpt, # 7 Exhibit G − Statewide Rules Press Release, # 8 Exhibit H − Manual Vol. 1 Excerpts, # 9 Exhibit I − Ch. 675 Laws of NY, # 10 Exhibit J − Kearse Dep. Tr. Excerpts, # 11 Exhibit K − First Dept. Website, # 12 Exhibit L − 2d Dept. Website, # 13 Exhibit M − 3rd Dept. Website, # 14 Exhibit N − 4th Dept. Website, # 15 Exhibit O − Ch. 295 1921 Law).(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 198 | RULE 56.1 STATEMENT. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 199 | MEMORANDUM OF LAW in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*. *And in Opposition to Motion for Summary Judgment ECF No. 173*. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 10/06/2023 | 200 | COUNTER STATEMENT TO 174 Rule 56.1 Statement. Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 10/06/2023) |
| 11/15/2023 | 201 | NOTICE OF APPEARANCE by Andrew H Wells, Jr on behalf of Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Wells, Andrew) (Entered: 11/15/2023) |
| 11/17/2023 | 202 | REPLY MEMORANDUM OF LAW in Support re: 173 MOTION for Summary Judgment . *and in Opposition to State Defendant's Cross−Motion for Summary Judgment on the Fourth Claim for Relief 191* . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | 203 | COUNTER STATEMENT TO 198 Rule 56.1 Statement. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 11/17/2023) |
| 11/17/2023 | 204 | REPLY AFFIRMATION of Shelley R. Attadgie in Support re: 173 MOTION for Summary Judgment .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit 1, Emails between March 21−23, 2023, # 2 Exhibit 2, Email by Plaintiffs to the Grievance Committee, # 3 Exhibit, Excerpt from Grievance Committee Manual, April 2019).(Attadgie, Shelley) (Entered: 11/17/2023) |

| 12/15/2023 | 205 | REPLY MEMORANDUM OF LAW in Support re: 191 CROSS MOTION for Summary Judgment *on the Fourth Claim*. . Document filed by Hector D. LaSalle..(Figueira, Elizabeth) (Entered: 12/15/2023) |
|---|---|---|
| 02/13/2024 | 206 | MANDATE of USCA (Certified Copy) as to 101 Notice of Interlocutory Appeal, filed by Georgia Pestana, Melinda Katz. USCA Case Number 22−1520. The parties in the above−referenced case have filed a stipulation withdrawing this appeal pursuant to FRAP 42. The stipulation is hereby "So Ordered".. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 2/12/2024..(nd) (Entered: 02/13/2024) |
| 04/08/2024 | 207 | STIPULATION OF VOLUNTARY DISMISSAL It is hereby stipulated and agreed by and between the parties and/or their respective counsel(s) that the above−captioned action is voluntarily dismissed, with prejudice against the defendant(s) Steven Stein Cushman, Melinda Katz (Personal Capacity), Georgia Pestana pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Document filed by Abbe Smith, Daniel S. Medwed, Civil Rights Corps., Steven Zeidman, Cynthia Godsoe, Justin Murray, Nicole Smith Futrell. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).**...(Diskant, Gregory) (Entered: 04/08/2024) |
| 04/09/2024 |  | ***NOTICE TO COURT REGARDING STIPULATION OF VOLUNTARY DISMISSAL Document No. 207 Stipulation of Voluntary Dismissal was reviewed and referred to Judge Victor Marrero for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (km)** (Entered: 04/09/2024) |
| 04/09/2024 | 208 | STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii) IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that upon reaching a settlement agreement, all claims in the above−captioned action are voluntarily dismissed, with prejudice, against the City Defendants (Steven Stein Cushman, Georgia Pestana, and Melinda Katz) pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii). SO ORDERED. (Signed by Judge Victor Marrero on 4/9/2024) (jca) (Entered: 04/09/2024) |
| 07/22/2024 | 209 | DECISION AND ORDER granting in part and denying in part 173 Motion for Summary Judgment; denying 191 Motion for Summary Judgment. For the foregoing reasons, it is hereby ORDERED that motion for summary judgment (Dkt. No. 191) filed by Defendant Hector D. LaSalle ("Defendant") is DENIED; and it is further ORDERED that the motion for summary judgment (Dkt. No. 174) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") is GRANTED IN PART and DENIED IN PART; and it is further DECLARED that a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in the SecondJudicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Second Department"), whether before Justices of the Second Department or a special referee, considering imposition of public discipline related to the twenty−one grievance complaints (the "Grievance Complaints") that Plaintiffs filed on May 3, 2021, and (2) documents necessary to understand those hearings, including court orders, motions and related submissions, documentary evidence, and docket sheets; and it is further DECLARED that a presumptive First Amendment Right of Access applies to dispositions made by the Attorney Grievance Committee f or Second, Eleventh and Thirteenth Judicial Districts (the "Committee") pursuant to 22 N. Y. C. R.R § 1240. 7 (d) (2) related to the Grievance Complaints; and it is further DECLARED that Plaintiffs' access to the proceedings and records referenced herein may not be restricted absent specific, on−the−record findings by either the Committee or the Second Department, as appropriate, that (1) restrictions serve higher values that would be prejudiced by disclosure; (2) restrictions on disclosure are no more extensive thannecessary to protect those higher values; and (3) that alternatives to restriction have been considered and would not reasonably protect those higher values. The Clerk of Court is respectfully directed to enter declaratory judgment to the effect of the foregoing Order and to close all outstanding motions and close this case. SO ORDERED. (Signed by Judge Victor Marrero on 7/22/2024) (jca) Transmission to Orders and Judgments Clerk for processing. (Entered: 07/22/2024) |

| 07/22/2024 | 210 | CLERK'S JUDGMENT re: 209 Decision & Order. in favor of Civil Rights Corps., Abbe Smith, Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Steven Zeidman against Hector D. LaSalle. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Decision and Order dated July 22, 2024, the motion for summary judgment (Dkt. No. 191) filed by Defendant Hector D. LaSalle ("Defendant") is DENIED; and it is further ORDERED that the motion for summary judgment (Dkt. No. 174) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (together, "Plaintiffs") is GRANTED IN PART and DENIED IN PART; and it is further DECLARED that a presumptive First Amendment right of access attaches to (1) all disciplinary hearings in the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York (the "Second Department"), whether before Justices of the Second Department or a special referee, considering imposition of public discipline related to the twenty−one grievance complaints (the "Grievance Complaints") that Plaintiffs filed on May 3, 2021, and (2) documents necessary to understand those hearings, including court orders, motions and related submissions, documentary evidence, and docket sheets; and it is further DECLARED that a presumptive First Amendment Right of Access applies to dispositions made by the Attorney Grievance Committee f or Second, Eleventh and Thirteenth Judicial Districts (the "Committee") pursuant to 22 N. Y. C. R.R § 1240. 7 (d) (2) related to the Grievance Complaints; and it is further DECLARED that Plaintiffs' access to the proceedings and records referenced herein may not be restricted absent specific, on−the−record findings by either the Committee or the Second Department, as appropriate, that (1) restrictions serve higher values that would be prejudiced by disclosure; (2) restrictions on disclosure are no more extensive than necessary to protect those higher values; and (3) that alternatives to restriction have been considered and would not reasonably protect those higher values; accordingly, the case is closed. (Signed by Acting Clerk of Court Daniel Ortiz on 7/22/2024) (nd) (Entered: 07/22/2024) |
| 08/05/2024 | 211 | MOTION for Attorney Fees . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/05/2024) |
| 08/05/2024 | 212 | MEMORANDUM OF LAW in Support re: 211 MOTION for Attorney Fees . . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Diskant, Gregory) (Entered: 08/05/2024) |
| 08/05/2024 | 213 | DECLARATION of Gregory L. Diskant in Support re: 211 MOTION for Attorney Fees .. Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman. (Attachments: # 1 Exhibit A, Timekeeper records from June 2, 2021 − December 19, 2022, # 2 Exhibit B, Timekeeper records from December 20, 2022 − November 21, 2023, # 3 Exhibit C, Invoices for costs and charges between June 2, 2021 and June 28, 2024, # 4 Exhibit D, Gregory L. Diskants firm biography, # 5 Exhibit E, Jonah Knoblers firm biography, # 6 Exhibit F, Jeffrey Kinkles firm biography, # 7 Exhibit G, Jeffrey Skinners firm biography, # 8 Exhibit H, Jake Walter−Warners firm biography, # 9 Exhibit I, Esther Kims firm biography, # 10 Exhibit J, Jacqueline Brandons firm biography, # 11 Exhibit K, Elisabeth Shanes firm biography, # 12 Exhibit L, Shelley Attadgies firm biography, # 13 Exhibit M, Gargi Chaudhuris firm biography).(Diskant, Gregory) (Entered: 08/05/2024) |
| 08/14/2024 | 214 | MOTION for Elisabeth Shane to Withdraw as Attorney . Document filed by Civil Rights Corps., Cynthia Godsoe, Daniel S. Medwed, Justin Murray, Abbe Smith, Nicole Smith Futrell, Steven Zeidman..(Shane, Elisabeth) (Entered: 08/14/2024) |
| 08/14/2024 | 215 | LETTER MOTION for Extension of Time to File Response/Reply as to 211 MOTION for Attorney Fees . addressed to Judge Victor Marrero from Justice LaSalle dated 8/14/24. Document filed by Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 08/14/2024) |
| 08/15/2024 | 216 | ORDER granting 215 Letter Motion for Extension of Time to File Response/Reply. Request GRANTED. SO ORDERED. Responses due by 9/13/2024 Replies due by 10/2/2024. (Signed by Judge Victor Marrero on 8/15/2024) (jca) (Entered: 08/15/2024) |

| 08/15/2024 | 217 | MEMO ENDORSEMENT granting 214 MOTION for Elisabeth Shane to Withdraw as Attorney. ENDORSEMENT Request GRANTED. SO ORDERED. Attorney Elisabeth A. Shane terminated. (Signed by Judge Victor Marrero on 8/15/2024) (jca) (Entered: 08/15/2024) |
| --- | --- | --- |
| 08/21/2024 | 218 | NOTICE OF APPEAL from 210 Clerk's Judgment,,,,,. Document filed by Hector D. LaSalle. Filing fee $ 605.00, receipt number ANYSDC−29779894. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Figueira, Elizabeth) (Entered: 08/21/2024) |
| 08/21/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 218 Notice of Appeal. (tp) (Entered: 08/21/2024) |
| 08/21/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 218 Notice of Appeal, filed by Hector D. LaSalle were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/21/2024) |
| 08/22/2024 | 219 | LETTER MOTION for Extension of Time *to defer briefing and resolution of attorneys' fee motion until pending appeal is resolved* addressed to Judge Victor Marrero from Justice LaSalle dated 8/22/24. Document filed by Hector D. LaSalle..(Sonnenfeldt, Joya) (Entered: 08/22/2024) |
| 08/23/2024 | 220 | ORDER granting 219 Letter Motion for Extension of Time Request GRANTED. The briefing schedule referenced herein is hereby suspended, and the parties are hereby directed to propose a new briefing schedule within 14 days of the Second Circuit's final determination of Defendant LaSalle's appeal. SO ORDERED. (Signed by Judge Victor Marrero on 8/23/2024) (jca) (Entered: 08/23/2024) |

**JA33**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
CIVIL RIGHTS CORPS, ET AL.,          :
                                     :
              Plaintiffs,            :
                                     :     21 Civ. 9128 (VM)
      - against -                    :
                                     :     **ORDER**
GEORGIA PESTANA, ET AL.,             :
                                     :
              Defendants.            :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and Steven Zeidman, (together the "Law Professors"), and Civil Rights Corps ("CRC," and with the Law Professors, "Plaintiffs") filed suit against Georgia Pestana, Corporation Counsel of the City of New York; Melinda Katz, Queens District Attorney; Andrea Bonina, Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"); Justice Hector D. LaSalle, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York; and Diana Maxfield Kearse, Chief Counsel of the Grievance Committee (together, "Defendants"). (See "Complaint," Dkt. No. 1). Plaintiffs attached seven exhibits to the Complaint, but filed those exhibits under seal. Now before the Court is Plaintiffs' motion requesting the Court

1

**JA34**

unseal the exhibits. (See "Motion," Dkt. No. 9). Also before the Court are Defendants' three letter briefs in opposition to the request to unseal. (See "Bonina and LaSalle Opposition," Dkt. No. 48; "Pestana and Katz Opposition," Dkt. No. 49; "Kearse Opposition," Dkt. No. 50.) For the reasons stated below, the Motion is hereby GRANTED.

## I.   BACKGROUND[1]

CRC is a non-profit organization that seeks to challenge systemic injustice across the country. CRC and the Law Professors assert that they share an interest in combatting prosecutorial misconduct. To that end, and recognizing attorney grievance committees' unique role in regulating the conduct of prosecutors, in May 2021 the Law Professors filed twenty-one grievance complaints (the "Grievance Complaints") against current and former Queens District Attorney's Office employees, all alleging misconduct committed while the subjects were working as assistant district attorneys. The Grievance Complaints requested that the respective grievance committees publicly investigate and, if appropriate, discipline each attorney.

In addition to filing the complaints with the Grievance Committee, Plaintiffs created a website to bring awareness to

---

[1] All factual and procedural background is drawn from the Complaint. Except where directly quoted, no citations will be made to the relevant docket entries.

2

**JA35**

their campaign for prosecutorial accountability. Plaintiffs posted the Grievance Complaints on the website and urged visitors to put pressure on the Grievance Committee by means of an email campaign.

There was one substantial obstacle to this public campaign plan: Section 90(10) of the New York Judiciary Law, which states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10) ("Section 90(10)"). Because of this provision, James Johnson, then-Corporation Counsel for the City of New York, sent letters to the Grievance Committee expressing his concerns about the online publication of the Grievance Complaints (the "Johnson Letter"). He copied the Law Professors on this correspondence. Shortly thereafter, the Law Professors received a letter from defendant Kearse notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and kept confidential (the "Kearse Letter").

The Law Professors interpreted the Kearse letter as their dismissal from the Grievance Complaints and a denial of their "complainant" status. They also believe the Johnson Letter was the impetus for the Kearse Letter, as Plaintiffs

3

**JA36**

allege the Johnson Letter was sent in retaliation for their publishing the Grievance Complaints and the Kearse Letter notified them of adverse action taken upon Kearse's receipt of the Johnson Letter. Plaintiffs exchanged further letters with Kearse and defendant Pestana, Johnson's successor as Corporation Counsel, but the parties were unable to see eye-to-eye about whether the Corporation Counsel should rescind the Johnson Letter and Kearse should reinstate the Plaintiffs as complainants. Thus, Plaintiffs filed suit in this Court.

The Kearse and Johnson Letters are at the heart of Plaintiffs' Complaint. The merits of the Complaint are not before the Court at this time, but Plaintiffs bring various claims, alleging violations of the United States and New York Constitutions, all stemming from the Johnson Letter and Plaintiffs' subsequent dismissal as complainants, as described in the Kearse Letter. Plaintiffs attached seven letters as exhibits to the Complaint: the Johnson Letter, the Kearse Letter, and five other letters between Plaintiffs' counsel and Defendants (the "Exhibits"). The Exhibits were initially filed under seal because the Corporation Counsel asserted, in their letters, that the letters were confidential.

Shortly after filing the Complaint, Plaintiffs submitted the Motion to this Court requesting that the Court order the

4

**JA37**

unsealing of the Exhibits, arguing that they are judicial records subject to public disclosure. The *New York Times*, a non-party to this suit, submitted a letter in support of the Motion, emphasizing the public interest in the Exhibits. (See "Times Letter," Dkt. No. 57.) All Defendants oppose the Motion, arguing that the Exhibits fall within the purview of Section 90(10) and must remain confidential.

## II.   LEGAL STANDARD

Courts have recognized that both common law and the First Amendment protect a right of public access to court documents. See Trump v. Deutsche Bank AG, 940 F.3d 146, 150 (2d Cir. 2019). Both rights are qualified rather than absolute. While the First Amendment right offers greater protection than the common-law right, the rights are intimately connected.

To determine whether a First Amendment right of access attaches in a given case, the Second Circuit has developed two approaches. The first calls on the Court to consider "experience and logic," or "whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." Bernstein v. Bernstein Litowitz Berger & Grossman, 814 F.3d 132, 141 (2d Cir. 2016) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)). The second

approach is "relevant only after court proceedings have commenced" and, thus, is irrelevant in evaluating a newly filed civil complaint. Id. In taking the first approach, courts "have generally invoked the common law right of access to judicial documents in support of finding a history of openness." Lugosch, 435 F.3d at 120 (quotations omitted).

The common law right of access applies only to "judicial records and documents." Brown v. Maxwell, 929 F.3d 41, 49 (2d. Cir. 2019) (citing Nixon v. Warner Commc'ns, 435 U.S. 589, 597—98 (1978)). Not every document filed with a court is a judicial document, but instead the document "must be relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).

A document is "relevant to the performance of the judicial function" if it would "reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." Brown, 929 F.3d at 49. Put differently, the Court is to "evaluate the relevance of the document's specific contents to the nature of the proceeding and the degree to which access to

6

**JA39**

the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceeding." Bernstein, 814 F.3d at 140 (internal quotations omitted).

If the court determines that a document is indeed a judicial document, the presumption of access attaches to the document. See Lugosch, 435 F.3d at 119. The attachment of the presumption does not automatically mean the document should be unsealed. Rather, the court must determine how much weight to afford the presumption — a question "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Brown, 929 F.3d at 49 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")). The document will generally "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Amodeo II, 71 F.3d at 1049. The presumption is given "strong weight" where the documents at issue play a large role "in determining litigants' substantive rights -- conduct at the heart of Article III -- and from the need for public monitoring of that conduct." Id.

7

**JA40**

After the court has determined how heavily to weigh the presumption of public access, it must conduct a balancing test in which it weighs that presumption, along with the public interest in disclosure, against other "countervailing factors," including "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure." Bernstein, 814 F.3d at 143 (quoting Amodeo II, 71 F.3d at 1050). If the scales tip towards public access, then the documents should be unsealed.

### III. DISCUSSION

Because courts often rely on the common law right of access to determine whether history supports a finding that the First Amendment protects access in a particular case, the Court begins by assessing the common-law question, asking first whether the Exhibits to the Complaint are judicial documents entitled to the presumption of access. The Court then turns to an assessment of how much weight to give the presumption and whether any countervailing factors favor against unsealing. After the common-law analysis, the Court will address the First Amendment question.[2]

---

[2] Defendants do not argue that the exhibits are not judicial documents or that the presumption of public access does not apply. Rather, they *solely* argue that Section 90(10) prohibits the public disclosure of the Exhibits, an argument addressed below in both the common-law and First Amendment frameworks.

A.    THE COMMON LAW RIGHT OF ACCESS

    1.    The Exhibits Are Judicial Documents

The Second Circuit has stated that pleadings "are judicial records subject to a presumption of access." Bernstein, 814 F.3d at 140. However, exhibits to a complaint are judicial documents only "if they are *currently* relevant to the judicial function," regardless of whether they could later become relevant. Accent Delight Int'l Ltd. v. Sotheby's, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019).

Here, the Court finds that the Exhibits are judicial documents because they are central to the legal claims raised in the Complaint. Cf. Refco Grp. Ltd. v. Cantor Fitzgerald L.P., No. 13 Civ. 1654, 2015 WL 4298572, at *5 (S.D.N.Y. July 15, 2015) (allowing redactions to a complaint's exhibits where the exhibits were "minimally relevant" to the parties' claims). Though not addressed in this decision, currently pending before the Court are Defendants' three motions to dismiss. The Exhibits are crucial to the Court's adjudication of those motions. It is impossible for the Court to determine whether the pleadings satisfy the standard of Federal Rule of Civil Procedure 12(b)(6) — or whether the Court has jurisdiction over the claims or whether any abstention doctrines counsel the Court to decline to exercise its jurisdiction — without review of the Exhibits.

9

**JA42**

The Court can thus conclude that the Exhibits "relate directly" to Plaintiffs' allegations of retaliation, harassment, and disparate treatment, and those allegations "constitute a roadmap to [their] claim[s] for relief; for this reason, the presumption in favor of public access is strong as applied to the Complaint." Doscher v. Sobel & Co., No. 14 Civ. 646, 2014 WL 846773, at *3 (S.D.N.Y. Mar. 3, 2014) (internal quotations omitted). The Court thus concludes that the Exhibits are judicial documents to which the presumption in favor of public access applies.

2.    The Presumption of Access Carries Heavy Weight

Because the presumption applies to resolution of the matter before it, the Court must determine how much weight to give it. And, in part for the reasons discussed above, the Court finds that the presumption of public access must be given "strong weight" here, as the Exhibits at issue play a crucial role in "determining litigants' substantive rights." Amodeo II, 71 F.3d at 1049.

The Amodeo II Court also noted that the presumption weighs heavy where there is "the need for public monitoring of [the Court's] conduct" in adjudicating the dispute. Id. This case is one presenting such necessity. As the *New York Times* points out in its letter in support of unsealing, "[a]t the core of this lawsuit is the allegation that government

10

**JA43**

officials weaponized a secrecy law in order to silence the plaintiffs on a matter of serious public concern." (Times Letter at 2.) Without evaluating the merits of Plaintiffs' claims, the Court agrees with the *New York Times'* characterization of the effect of Defendants' reading of Section 90(10) at this stage of the litigation. For this reason, the Court is persuaded that it is in the public interest to allow open access to the Exhibits.

Tying together these two interests is another consideration: that, due to the close connection between the legal claims at issue and the content of the Exhibits, sealing the Exhibits would "leave the Court unable to explain its reasoning in [the] adjudication of this matter without extensive reference to materials under seal," which in turn denies the public access to "matters that directly affect this adjudication." Sylvania v. Ledvance LLC, No. 20 Civ. 9858, 2021 WL 412241, at *2 (S.D.N.Y. Feb. 5, 2021) (internal quotations omitted). As such, the presumption of public access carries great weight here.

3.   No Countervailing Factors Weigh Against Unsealing

It is well-established that the "burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DeRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 826 (2d Cir. 1997). See also

11

P&L Dev., LLC v. Gerber Prods. Co., No. 21 Civ. 5382, 2022 WL 94380, at *3 (E.D.N.Y. Jan. 10, 2022) ("The party seeking sealing bears the burden of showing that the confidential . . . interests of its client outweigh the public's right to understand the allegations in this lawsuit, as well as the reason why the Court takes any action herein."). Defendants' attempt to meet this burden was weak, as they do not point to any concrete harm that will be caused or interests that will affected if the Exhibits are unsealed.

Like Bernstein, "[t]his is not a case in which disclosure would reveal details of an ongoing investigation, pose a risk to witnesses, endanger national security, or reveal trade secrets." 814 F.3d at 143. Nor does it call into question attorney-client privilege or any other need to protect confidential information regarding the subject of the documents — taking into account that the subjects of the documents in dispute are the Law Professors, who seek unsealing.

The only interest that Defendants purport outweighs the presumption of access is their assertion that Section 90(10) mandates "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." N.Y. Jud.

Law § 90(10). Plaintiffs contend that the Exhibits fall within the scope of this provision's protections. In response, Defendants Pestana, Katz, and Kearse[3] argue that "the exhibits explicitly reference and convey information regarding the complaints filed by Plaintiffs with the Grievance Committee so they fall squarely within the plain language of the statute's confidentiality provision." (Pestana and Katz Letter at 1.)

The Court finds that Section 90(10) does not require the exhibits to remain sealed. The Court expresses no opinion regarding whether letters of the same sort as the Exhibits fall within the scope of Section 90(10), as the Court need not decide that issue of state law. Rather, New York's appellate courts have stated that the confidentiality provisions of Section 90(10) serve two purposes (1) protecting complainants, and (2) safeguarding a professional's reputation. See Matter of Aretakis, 791 N.Y.S.2d 687, 688 (3d Dep't 2005). Because the Law Professors are the complainants, the first interest does not support confidentiality. As for the second interest, both the information contained in the Grievance Complaints and the actual Grievance Complaints are already public information,

---

[3] Defendant Kearse adopted the arguments of all other defendants. (See Kearse Opposition.)

13

**JA46**

which obviates the need for Section 90(10)'s protections. See id.; cf. Matter of Rodeman, 883 N.Y.S.2d 835, 837 (4th Dep't 2009) (finding a petition alleging violations of Section 90(10) could not be sustained when neither purpose is implicated).

If the only basis for applying Section 90(10)'s confidentiality provisions to the Exhibits is that the Exhibits reference the Grievance Complaints, then Section 90(10) does not apply here. When the Law Professors published the Grievance Complaints online, those documents became public information, a fact that cannot be reconciled with an argument now that the Exhibits must remain sealed at risk of references to the mere existence of the Grievance Complaints being revealed. The Grievance Complaints cannot serve as the anchor tying the Exhibits to Section 90(10)'s protections.

Because Section 90(10) is inapplicable to the Exhibits, any interest in deferring to its provisions is minimal and easily outweighed by the interest in public access. The Court finds that the common law right to access demands unsealing the Exhibits.

B.    THE CONSTITUTIONAL RIGHT OF ACCESS

Despite finding the common law presumption exists and outweighs any countervailing factors, the Court must still

14

**JA47**

determine whether the First Amendment presumption of access exists. See Lugosch, 435 F.3d at 124.

In determining whether the First Amendment right applies, the Second Circuit's decision in Bernstein v. Bernstein Litowitz Berger & Grossman, where the Court faced a question of whether to unseal a complaint, is instructive. The Bernstein Court explained that "experience and logic both support[ed] access," because "[c]omplaints have historically been publicly accessible by default, even when they contain arguably sensitive information." 814 F.3d at 141. "Public access to complaints allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern." Id. As discussed with regard to the common law right, supra, the Exhibits are so integral to this case that they should be put on equal footing with the Complaint. Public access to the Exhibits will support the same interests stressed by the Bernstein court. Experience and logic both dictate that the Exhibits are crucial documents for public understanding of both the allegations in the Complaint and any decisions by this Court on the pending substantive motions.

Of course, the First Amendment right of access is not absolute. It can be overcome with a showing, by the party in

favor of sealing, that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 144.

Defendants do not explicitly address this required showing. The only "higher value" that the Court can infer from their opposition papers is that Section 90(10), a state law, dictates that the Exhibits should remain confidential. Even if the Court had found Section 90(10) applicable, Defendants have not attempted to show that the statute is narrowly tailored to serve state law interests. The First Amendment right has not been overcome and the Exhibits should be unsealed under the First Amendment right to public access.

Further, the Court notes that because the First Amendment calls for public access here, if Section 90(10) applied and mandated the exhibits stay sealed, there would be a conflict between the United States Constitution and state law.[4] And where state and federal law conflict, "state law must give way." PLIVA, Inc. v. Mensing, 564 U.S. 604, 617 (2011); see also U.S. Const. art. VI ("This Constitution . . . shall be the supreme Law of the Land . . . any Thing in the Constitution   or   laws   of   any   State   to   the   Contrary

---

[4] The Court is not addressing the overall constitutionality of Section 90(10), but rather only as it relates to the Section 90(10) argument in this particular context, where a finding that the First Amendment protects a right to public access has been made but state law aims to suppress that public access.

16

**JA49**

notwithstanding."). Other courts have similarly concluded that a statute cannot, on its own and without a showing of a higher value and narrow tailoring, defeat the First Amendment right to public access to judicial documents. See, e.g., In re New York Times Co., 828 F.3d 110, 115 (2d Cir. 1987) ("[W]here a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously, a statute cannot override a constitutional right.").

The First Amendment right of public access to court documents applies to Plaintiffs' Exhibits. In order to protect that right, the Exhibits must be unsealed.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that Plaintiffs' motion to unseal all seven exhibits to the Complaint (Dkt. No. 9) is **GRANTED.**

Plaintiffs are directed to re-file the Complaint with all exhibits attached for public viewing.

**SO ORDERED.**

Dated: New York, New York
     25 January 2022

Victor Marrero
U.S.D.J.

17

**JA50**

Gregory L. Diskant
Jeffrey F. Kinkle
Jeffrey C. Skinner
Jake Walter-Warner
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222
gldiskant@pbwt.com
jkinkle@pbwt.com
jskinner@pbwt.com
jwalterwarner@pbwt.com

*Attorneys for the Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN : : : | Case No. 21-cv-09128-VM |
| Plaintiffs, : | |
| - against - : | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| GEORGIA PESTANA, Corporation Counsel of the City of New York, in her official and personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; ANDREA E. BONINA, Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, in her official and personal capacity; DIANA MAXFIELD KEARSE, Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, in her official and personal capacity; and HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity : | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JA51**

Plaintiffs Civil Rights Corps ("CRC"), and Professors Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Abbe Smith, and Steven Zeidman (collectively, the "Professors" or "Law Professors"), and Justin Murray, by and through their attorneys, Patterson Belknap Webb & Tyler LLP, for their Complaint against the defendants Georgia Pestana, the Corporation Counsel for the City of New York in her official and personal capacity (the "Corporation Counsel"), Andrea E. Bonina, the Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts in her official and personal capacity, Diana Maxfield Kearse, Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, in her official and personal capacity (together, the "Grievance Committee"), Melinda Katz, the District Attorney of Queens County, in her official and personal capacity (the "Queens District Attorney"), and Hector D. LaSalle, the Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity, (all collectively, the "Defendants"), allege as follows:

**INTRODUCTION**

1.      This is a civil rights action seeking redress for Defendants' infringement of Plaintiffs' First Amendment right to speak and advocate freely on a matter of grave public importance—prosecutorial misconduct.  It is also a proceeding to declare unconstitutional under the First Amendment of the United States Constitution and under Article I, § 8, of the New York Constitution, New York State Judiciary Law § 90(10) insofar as it is applied to censor Plaintiffs' speech and to keep confidential the disciplinary proceedings Plaintiffs have requested.

2.      Prosecutorial misconduct is a scourge in New York State, and yet prosecutors are rarely disciplined for their misconduct.  Bar association reports and legislative efforts to make prosecutors accountable for violating the law—and sending innocent people to prison—have failed repeatedly.  So, too, have bar association and legislative efforts to open

2

disciplinary proceedings to the public.  Even though the consequences of prosecutorial misconduct can be a wrongful conviction and decades spent behind bars, the response of those responsible for attorney discipline has been, in effect, a collective shrug of the shoulders.

3.      The Plaintiffs are a group of law professors supported by the CRC who have addressed this issue head-on.  They have prepared and filed complaints with relevant New York grievance committees demonstrating repeated violations of law by present and former Assistant District Attorneys in Queens County, and have asked that any resulting disciplinary proceedings take place in public.  The complaints are well-documented and are based on the public record, primarily judicial findings of prosecutorial wrongdoing.  Much of the misconduct was so severe that courts were required to reverse a jury's verdict.  At the same time, Plaintiffs have made their campaign public by publishing their complaints on the website AccountabilityNY.org and urging the public to support reform efforts.  Everything the Plaintiffs have done is in the public interest and is fully supported by the First Amendment.

4.      Nonetheless, Plaintiffs' activities are threatening to some of the Defendants, who have embraced and relied upon the status quo for many decades.  The Grievance Committee largely ignores the rules of conduct for prosecutors and focuses its attention instead on civil attorneys.  The Queens District Attorney and the Corporation Counsel benefit from the blind eye of the Grievance Committee, which allows prosecutors to run amuck without sanction.  All these Defendants use the confidentiality provisions of Judiciary Law § 90(10) as an excuse for inaction—and as a basis for threats and retaliatory actions against the Plaintiffs for their efforts at reform.  And the People of the State of New York suffer from a system of justice that, too often, means injustice for the downtrodden and immunity for those in power.

3

**JA53**

5.      These Defendants responded to Plaintiffs' public interest activities with an aggressive campaign of harassment and threats, which included retaliating against Plaintiffs for exercising their First Amendment rights.  Specifically, the Corporation Counsel, on behalf of the City of New York and the Queens District Attorney, wrote to the Grievance Committee attacking the Law Professors for purportedly violating Judiciary Law § 90(10).  He accused the Law Professors of "misus[ing] and indeed abus[ing] the grievance process to promote a political agenda" in a way that "should not be countenanced."  Ex. 1 at 3.  In threatening language, the Corporation Counsel asked the Grievance Committee to take action against the Professors for their complaints, and he promised further interventions in the event any more complaints were filed.  At the same time, seeking to keep secret his baseless accusations, the Corporation Counsel insisted that his letter be kept confidential under Judiciary Law § 90(10) so that the People of New York would never learn about his intemperate attack on those who would try to improve the system.

6.      In direct response to the Corporation Counsel's demand, the Grievance Committee promptly took adverse action against the Law Professors by stripping them of the rights that New York law accords those who complain about attorney misconduct.  A complainant in an attorney misconduct proceeding has the right to learn what is happening to his or her complaint and has the right to appeal adverse decisions.  Thus, as complainants, the Law Professors expected to learn what happened at each step of the review process by the Grievance Committee and why.

7.      Instead, the Grievance Committee decided that it would pretend that the Law Professors were not complainants, and would instead treat any investigation—to the extent any occurs—as something initiated *sua sponte*, *i.e.*, at the Committee's own initiative and thus confidential from virtually all disclosure under Judiciary Law § 90(10).  This action means that

4

**JA54**

the Professors will not learn the results of their complaints, which would remain confidential, and that the Professors would be unable to appeal any adverse decision.

8.     The Grievance Committee's decision is a charade.  If the Grievance Committee does anything in response to the Law Professors' complaints, it would not be an action taken *sua sponte*, but rather, an action taken because the Law Professors have analyzed, marshalled and presented the evidence from a variety of different publicly-available sources to the Grievance Committee.  The Law Professors are complainants as clearly defined in New York law and entitled to all the rights of complainants.

9.     As a consequence of this retaliatory action in violation of the First Amendment and New York law, the Law Professors—and the public—may never learn what, if anything, the Grievance Committee does with their complaints.  The Grievance Committee said as much to the Professors.  It wrote to the Professors that "any investigations into these allegations . . .  would remain confidential pursuant to New York State Judiciary Law § 90" unless they actually resulted in any public discipline.  And in case there was any doubt that the Professors should have no reason to expect any disciplinary action at all to result from their complaints, the Grievance Committee added that its letter "does not constitute confirmation as to whether any investigations will or will not be pursued."  Ex. 2.  Because of the confidentiality provisions of Judiciary Law § 90(10), the public will never learn if, as is now expected, the Grievance Committee simply decides to ignore the Law Professors' complaints and, once again, to let malfeasant prosecutors off the hook.

10.     The pretext for all of these Defendants' actions is Judiciary Law § 90(10), which purports to keep confidential everything associated with a disciplinary proceeding—including even the correspondence between the Law Professors, the Corporation Counsel, and the Grievance Committee.  Judiciary Law § 90(10) is overbroad and unconstitutional both on its

5

**JA55**

face and as applied to this case.  Whatever may be true in other cases, there are simply no privacy interests at stake here to justify either muzzling the Professors' free speech rights or holding any investigation of the accused prosecutors in secret.  The prosecutorial misconduct alleged is all documented in the public record, principally in judicial decisions.  The prosecutors themselves are public servants engaged in public business.  Because Judiciary Law § 90(10) serves no valid interest in this case—let alone a compelling one—its application to the Professors' complaints is unconstitutional.

11.     New Yorkers deserve better than public officials who engage in a campaign of intimidation and retaliation against those who would seek to address prosecutorial misconduct in this State.  New Yorkers also deserve to know what wrongs these public officials have committed, and are committing, in their name.  The First Amendment demands not only that harassment of the Plaintiffs must stop, but also that any further disciplinary proceedings of the accused prosecutors be open to the public.

**THE PARTIES**

12.     Plaintiff CRC is a non-profit organization dedicated to challenging systemic injustice in the United States.  It engages in advocacy and public education and specializes in innovative civil rights litigation with the goal of sensitizing the legal system and the public to the injustice and brutality that can occur in the contemporary United States legal system.

13.     Plaintiff Cynthia Godsoe is a Professor of Law at Brooklyn Law School. Professor Godsoe teaches courses in family law, criminal law, children and the law, professional responsibility, and public interest lawyering.  She is the Director of the Edward V. Sparer Public Interest Law Fellowship and the Marsha Garrison Family Law and Policy Fellowship programs. Professor Godsoe is an active member of the New York bar.

6

**JA56**

14.     Plaintiff Nicole Smith Futrell is an Associate Professor of Law and Co-Director of the Defenders Clinic at CUNY School of Law.  Professor Futrell's teaching and scholarship focus on criminal procedure, legal ethics, post-conviction relief, reentry, and social justice lawyering.  In her clinical practice, she and her students represent clients in a variety of criminal defense-related contexts, including state court misdemeanor cases, parole and clemency petitions, wrongful conviction matters, and civil claims related to criminal convictions.  Professor Smith Futrell is an active member of the New York bar.

15.     Plaintiff Daniel S. Medwed is the University Distinguished Professor of Law and Criminal Justice at Northeastern University School of Law.  Professor Medwed teaches criminal law, evidence, and advanced criminal procedure.  His research and pro bono activities revolve around the topic of wrongful conviction.  Professor Medwed is an active member of the New York bar.

16.     Plaintiff Justin Murray is Associate Professor of Law at New York Law School and Co-Director of the Criminal Justice Institute.  He teaches criminal law, criminal procedure, and constitutional law and co-teaches courses covering race, bias, and advocacy in the legal system.  Professor Murray is an active member of the Illinois bar.

17.     Plaintiff Abbe Smith is the Scott K. Ginsburg Professor of Law, Director of the Criminal Defense and Prisoner Advocacy Clinic, and Co-Director of the E. Barrett Prettyman Fellowship Program at the Georgetown University Law Center.  Professor Smith teaches and writes on criminal defense, legal ethics, juvenile justice, and clinical legal education.  Professor Smith is an active member of the New York bar.

18.     Plaintiff Steven Zeidman is a Professor of Law and Director of the Criminal Defense Clinic at CUNY School of Law.  He teaches and works in the area of criminal defense.  Professor Zeidman is an active member of the New York bar.

7

**JA57**

19.     Defendant Georgia Pestana is the Corporation Counsel for the City of New York.  She is sued in her official and personal capacity. The Corporation Counsel leads the New York City Law Department, which comprises approximately 1,000 lawyers and 890 support professionals.

20.     Defendant Andrea E. Bonina is the Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee").  She is sued in her official and personal capacity.  The Grievance Committee is an "Attorney Grievance Committee," as defined by 22 N.Y.C.R.R. § 1240.2(d), that is endowed with the power and responsibility to investigate and sanction attorney misconduct and ethical breaches.  As Chair of the Grievance Committee, Defendant Bonina is a member of the Grievance Committee and has special responsibilities and powers beyond those of an ordinary grievance committee member.  *See* 22 N.Y.C.R.R. § 1240.7(e).

21.     Defendant Diana Maxfield Kearse is Chief Counsel of the Grievance Committee.  She is sued in her official and personal capacity.  Ms. Kearse is the "Chief Attorney" of the Grievance Committee.  *See* 22 N.Y.C.R.R. § 1240.5.  As such, she is empowered to investigate professional misconduct complaints, and is obligated to report certain information to a complainant about any disciplinary proceedings resulting from his or her complaint.  *See* 22 N.Y.C.R.R. § 1240.7.

22.     Defendant Melinda Katz is the District Attorney for Queens County.  She is sued in her official and personal capacity.  The District Attorney for Queens County is responsible for conducting all prosecutions for crimes and offenses committed within Queens County.

23.     Defendant Hector D. LaSalle is the Presiding Justice of the of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York

8

(the "Second Department").  He is sued in his official capacity.  The Second Department, as one

of four Appellate Divisions of the Supreme Court of the State of New York, is vested by the

New York legislature with the power and ultimate authority to regulate attorney admissions and

conduct, including by promulgating rules concerning attorney discipline.  New York Judiciary

Law § 90(2).

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 (action arising under the Constitution and federal law), 1343(a) (action to redress

deprivation of civil rights), and 1367 (supplemental jurisdiction).

25.     This action arises under 42 U.S.C. § 1983.  Plaintiffs' claims for

declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

26.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)

because one or more Defendants reside in this judicial district and all Defendants are residents of

New York, or, alternatively, because a substantial part of the events or omissions giving rise to

Plaintiffs' claims occurred in this judicial district.

## BACKGROUND

A.     **New York's Grievance Committees Allow Prosecutors to Run Amok**

27.     The fair operation of the criminal legal system is a matter of overriding

public importance.  The New York Court of Appeals has recognized that "it is not enough for a

District Attorney to be intent on the prosecutions of his case."  *People v. Bailey*, 58 N.Y.2d 272,

276-77 (1983) (cleaned up).  Rather, "his paramount obligation is to the public, [and so] he must

never lose sight of the fact that a defendant, as an integral member of the body politic, is entitled

to a full measure of fairness."  *Id.* (internal modifications and citations omitted).  The "public at

large," in addition to each defendant, is "entitled to assurance that there shall be full observance

9

and enforcement of the cardinal right of a defendant to a fair trial." *People v. Crimmins*, 36 N.Y.2d 230, 237-38 (1975).

28.    Central to achieving a fair trial is the obligation of prosecutors to "deal fairly with the accused and be candid with the courts." *People v. Colon*, 13 N.Y.3d 343, 349 (2009) (internal quotation marks and citation omitted).  Prosecutors have a "heightened duty of candor to the courts an in fulfilling other professional obligations."  2017 American Bar Association Standard 3-1.4(a) for the Prosecution Function.

29.    Prosecutorial misconduct can have devastating consequences; it can cause the imprisonment of innocent people.  A 2020 study of more than 2,000 exonerations found that prosecutorial misconduct was a factor in 30% of the exonerees' convictions.  National Registry of Exonerations, *Government Misconduct and Convicting the Innocent* (September 1, 2020), *available at* https://www.law.umich.edu/special/exoneration/Documents/Government_Misconduct_and_Convicting_the_Innocent.pdf.

30.    In New York, Grievance Committees have a crucial—and singular—role in regulating prosecutorial misconduct.  Unlike other practicing attorneys admitted to the New York state bar and other law enforcement officials, prosecutors alone have "absolute immunity" from civil suit.  *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  The doctrine of "absolute immunity" has been justified based on the assumption that "associations of [] peers," like the New York grievance committees, will regulate prosecutors through "professional discipline," such that civil suits are not necessary to deter and punish prosecutorial misconduct.  *Imbler*, 424 U.S. at 429.

31.    Unfortunately, this crucial pillar supporting the doctrine of "absolute immunity" is illusory.  A 2013 report from the Center for Prosecutor Integrity identified 3,625

10

**JA60**

cases of prosecutorial misconduct in the 50 years from 1963 to 2013. Of those, only 63—less than 2 percent—ever resulted in any public sanction. Center for Prosecutor Integrity, *White Paper: An Epidemic of Prosecutor Misconduct* (December 2013), *available at* www.prosecutorintegrity.org/wp-content/uploads/EpidemicofProsecutorMisconduct.pdf. Neither judges nor fellow lawyers regularly report prosecutorial misconduct to disciplinary committees, and these committees rarely discipline prosecutors for misconduct when such reporting occurs. Bruce Green & Ellen Yaroshefsky, *Prosecutorial Accountability 2.0*, 92 Notre Dame L. Rev. 51, 65 (2017).

32. The problem is particularly acute in New York. An analysis of New York state and federal court decisions from 2001 to 2011 found 30 decisions overturning convictions explicitly because of prosecutorial misconduct. Joaquin Sapien and Sergio Hernandez, *Who Polices Prosecutors Who Abuse Their Authority? Usually Nobody*, ProPublica (April 3, 2013), *available at* https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody. This analysis revealed that ***only one*** of the prosecutors found by a court to have committed misconduct was publicly disciplined by a New York grievance committee; none of the other implicated prosecutors was disbarred, suspended, or publicly censured. *Id.* Some were even promoted and given raises after courts publicly cited them for their abuses. *Id.*

33. In 2019, the most recent year for which statewide data is available, not a single New York prosecutor was publicly disciplined by a grievance committee for on-the-job misconduct. Rory Fleming, *How New York Lets Prosecutors Off The Hook for Misconduct*, New York Focus (September 1, 2021), *available at* https://www.nysfocus.com/2021/09/01/how-new-york-lets-prosecutors-off-the-hook-for-misconduct/.

34.     In one isolated instance, in 2021, former prosecutor Glenn Kurtzrock was suspended from practice for two years.  This is the exception that proves the rule—that the disciplinary system for prosecutors is broken.  In 2017, Kurtzrock was fired mid-trial by the Suffolk County District Attorney after the trial judge found he had engaged in extreme misconduct by withholding critical *Brady* material.  The district attorney referred Kurtzrock to the grievance committee.  Even with a referral from the District Attorney and a judicial finding of misconduct, it took the grievance committee more than three full years to resolve the matter.  The grievance committee's extraordinary failure to act for years on end was the subject of critical press commentary, Nina Morrison, *What Happens When Prosecutors Break the Law?* New York Times (June 18, 2018), *available at* https://www.nytimes.com/2018/06/18/opinion/kurtzrock-suffolk-county-prosecutor.html, and litigation.  *In the Matter of the Application of The Innocence Project, Inc.*, No. 2019-05674 (N.Y. App. Div. July 12, 2019).

35.     Prosecutorial misconduct—and the failure of New York's grievance committees to serve their crucial role of disciplining prosecutors for misconduct—inflicts devastating consequences on innocent New Yorkers.  Since 1989, at least 234 cases in New York have resulted in the exoneration of a wrongly-convicted defendant.  Eighty-eight of those cases involved prosecutors wrongly withholding exculpatory material.  Susan DeSantis, *Judges Ordered to Direct Prosecutors to Turn Over Information Favorable to Defense,* New York Law Journal (November 7, 2017), *available at* http://www.law.com/newyorklawjournal/sites/newyorklawjournal/2017/11/07/judges-ordered-to-direct-prosecutors-to-turn-over-information-favorable-to-defense/.  Such misconduct has caused people to suffer decades of imprisonment with accompanying physical and mental trauma and separation from family and loved ones.

12

36.     The lack of discipline for prosecutors who commit misconduct is a topic of tremendous public importance.  In recent years, two advisory bodies created by the Chief Judge of the New York Court of Appeals have issued recommendations about this issue.

37.     In September 2015,  the Commission on Statewide Attorney Discipline recommended putting in place a process "to ensure that judicial determinations of prosecutorial misconduct are promptly referred to the appropriate disciplinary committee" and that sanctions meted out for misconduct be "publicly released" because "the public has every right to scrutinize the conduct of those it entrusts with public office."  NYS Commission on Statewide Attorney Discipline, Final Report to Chief Judge Jonathan Lippman, the Court of Appeals, and the Administrative Board of the Courts (September 24, 2015) (the "Lippman Commission Report"), 78-79, *available at* http://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf.

38.     Just 15 months later, the New York State Justice Task Force recommended that grievance committees "proactively review available court decisions" and undertake investigations "where a finding of attorney misconduct has been made in a court decision."  New York State Justice Task Force, Report on Attorney Responsibility in Criminal Cases (February 2017), 5, *available at* http://www.nyjusticetaskforce.com/pdfs/2017JTF-AttorneyDisciplineReport.pdf.

39.      Beginning in 2018, New York State has attempted to implement legislation creating a first-in-the-nation State Commission on Prosecutorial Conduct. That reform effort has been met with unrelenting opposition from the District Attorney Association of New York, which filed suit immediately after the law was enacted. In response to the lawsuit, the State amended the law, and the District Attorneys sued again. They won an order invalidating the new law in January 2020.  With no acknowledgement of the disingenuity of their position,

13

**JA63**

opponents of the Commission have argued that the solution is not a State Commission, but rather more of the same—for "grievance committees [to] focus more carefully on prosecutors in appropriate cases." But, of course, that has not happened and is not likely to happen anytime soon.

40. In June 2021, New York tried for a third time to obtain some control over misbehaving prosecutors. It passed new legislation in June 2021—much watered-down from its earlier attempts—to address the challenges to the prior legislation. Nick Reisman, *Cuomo signs bill creating prosecutor conduct panel*, Spectrum News 1 (June 18, 2021), *available at* https://spectrumlocalnews.com/nys/central-ny/ny-state-of-politics/2021/06/18/cuomo-signs-bill-creating-prosecutor-conduct-panel. Even if this iteration of the legislation survives intact, it is just one insufficient step to address an enduring problem.

**B.     New York Law Keeps Disciplinary Proceedings Confidential**

41. The grievance proceedings that are supposed to protect New Yorkers from unethical lawyers, including prosecutors who engage in misconduct, are almost invariably conducted in secret. In that respect, New York Judiciary Law § 90(10) is a rarity among the attorney discipline procedures throughout the Nation. It requires confidentiality of attorney disciplinary proceedings and all papers related to the proceedings unless and until discipline is recommended, or more often, disciplinary charges are sustained by the Appellate Division. Technically, the Appellate Division could make proceedings and documents public sooner "upon good cause being shown," but this almost never happens in practice.

42. For example, despite considerable public attention and an amicus brief from prominent news organization, the Second Department denied the Innocence Project's application to unseal any records or hearing concerning disciplinary proceedings against Glenn Kurtzrock. In a one-paragraph ruling, the court held, without analysis, that the petition "had

14

failed to establish good cause to disclose the documents, if any, relating to the alleged investigation described in the application" or "to establish good cause to open to the public any hearings which may be held in connection with the alleged disciplinary proceeding." *In the Matter of the Application of The Innocence Project, Inc.*, No. 2019-05674, at 1 (N.Y. App. Div. July 12, 2019).

43.     For many years, the American Bar Association, the New York courts, and various committees of the New York State Bar Association have recommended amending § 90(10) so that disciplinary proceedings become public once the disciplinary authorities find probable cause to believe that an attorney has violated the Code of Professional Responsibility. For instance, in 2015, the so-called McKay Commission concluded, "secret records and secret proceedings create public suspicion regardless of how fair the system really is." NYS Commission September 2015 Final Report at 26.  Secrecy "create[s] an atmosphere of public suspicion and skepticism." *Id.* at 12.  The report concluded that "[i]f it is true that the public is suspicious of the attorney discipline process because it is secret, then proceedings should be opened at the earliest practical point." *Id.* at 25.

44.     The extreme secrecy attached to New York's attorney disciplinary proceedings makes them an outlier nationally.  As of mid-2014, "the vast majority of jurisdictions open proceedings upon the filing of a formal charge following a finding of probable cause." The Lippmann Commission Report at 62.  "New York is one of only 9 jurisdictions which do not permit public dissemination of information concerning disciplinary proceedings until, at the earliest, a recommendation that discipline be imposed, and usually upon a final adjudication." *Id.*

45.     Moreover, courts in other jurisdictions have consistently found that overbroad confidentiality rules for attorney disciplinary processes violate the First Amendment.

15

**JA65**

*See Doe v. Supreme Court of Fla.*, 734 F. Supp. 981, 988 (S.D. Fla. 1990) (Florida Bar Rule prohibiting speaking about a meritorious grievance filed against an attorney violates the First Amendment); *In re Petition of Brooks*, 678 A.2d 140, 143-46 (N.H. 1996) (New Hampshire Supreme Court Rule prohibiting complainant "from revealing the fact that a complaint had been filed, what information or testimony the complainant provided the committee, any action taken by the committee in response to the complaint, and any information acquired by the complainant through interaction with the committee" violates the First Amendment); *R.M. v. Supreme Court*, 883 A.2d 369, 377-82 (N.J. 2005) (New Jersey Supreme Court Rule prohibiting speech on a "given disciplinary matter and the associated written records" violates the First Amendment); *In re Warner*, 21 So. 3d 218, 262 (La. 2009) (Louisiana Supreme Court Rule prohibiting speech about attorney disciplinary proceedings until formal charges are filed violates the First Amendment).

46.     The secrecy of New York's disciplinary process, together with the New York's failure to supervise and discipline prosecutors, makes the process doubly deficient and deprives the public of any substantial insight into, and protection against, prosecutorial misconduct.

**C.      Plaintiffs File Complaints Against Prosecutors Who Engaged in Misconduct**

47.     Plaintiffs, like many other members of the public, are concerned about prosecutorial misconduct and the grievance committees' consistent failure to meet their responsibility to discipline prosecutors who violate New York's Rules of Professional Conduct. They are likewise concerned about the extent to which the work of the grievance committees is conducted under a veil of secrecy.

48.     On May 3, 2021, with support from CRC, the Law Professors filed 21 discrete complaints pursuant to New York Judiciary Law § 90(10) against individual attorneys

**JA66**

currently or formerly employed by the Queens District Attorney's Office for misconduct committed while working as an assistant district attorney. Each of the complaints recited the sorry history of prosecutorial misconduct in New York State. Each complaint carefully identified and marshalled public records and relied on judicial findings that the subject attorney had committed professional misconduct during the course of a criminal prosecution. The complaints are well documented and do not rely on any private or off-the-record sources. The Law Professors requested that the respective grievance committees investigate and discipline each attorney for his or her misconduct, and that they do so publicly. According to publicly-available records maintained by the New York State Unified Court System, none of the accused prosecutors has ever been publicly disciplined.

49. The Law Professors' complaint against Jesse Sligh is representative of the complaints. In 1988, Sligh prosecuted and obtained a conviction against Clinton Turner for first degree robbery. Turner maintained his innocence, but he was convicted and spent ten years in prison. After his parole, Turner discovered that his conviction was the result of pervasive misconduct by Sligh and he sought habeas relief. A federal court set aside the conviction, finding that Sligh's extensive *Brady* violations had deprived Turner of a fair trial. The Queens District Attorney declined to retry Turner. When Turner later sued New York State for compensation, the state court "conclude[ed] that by clear and convincing evidence Clinton Turner [was] innocent of the crimes charged to the jury." To date, so far as the public record reflects, Sligh has not been sanctioned for his misconduct, and he continues to practice law in New York State.

50. Also representative is the Professors' complaint against Charles Testagrossa. Testagrossa's prosecutorial misconduct led to the wrongful conviction of three defendants. Each was imprisoned for 24 years. In March 2021, Testagrossa's misconduct was

17

**JA67**

finally confirmed by a court and the convictions were reversed.  The presiding judge concluded that Testagrossa – who was still a prosecutor 24 years later – had lied to the court in defending his conduct. The judge stated, "This was, in short, not a good-faith misstatement; it was a deliberate falsehood." *People v. Bell*, 71 Misc. 3d 646, 664 (N.Y. Sup. Ct. 2021).  Based on Testagrossa's misconduct, the Queens District Attorney dropped the charges against the three men on June 4, 2021.  To date, so far as the public record reflects, Testagrossa has not been sanctioned for his misconduct, and he continues to practice law in New York State.

51.      Recognizing that one of the failures of New York's disciplinary proceedings was pervasive and unnecessary secrecy, the complaints urged that the proceedings be conducted in public.  "For the legitimacy of and public trust in the criminal system, and the bar, the investigation should be public at every stage possible."  Moreover, the complaints called for more expansive investigations of prosecutorial misconduct, also to be conducted in public. "[W]e also call for the implementation of an independent public commission empowered to investigate all cases handled by this prosecutor and vacate convictions where appropriate.  To be clear, we do not mean a closed-door, cloaked process at the Queens District Attorney's Office, but rather a commission that operates transparently and includes members of the public, including members of impacted communities of color, public defenders and other criminal defense attorneys, civil rights attorneys, and people who have been incarcerated and their loved ones."

52.      To bring awareness to their complaints and to the pervasive failure to discipline prosecutors for misconduct, Plaintiffs created a website, AccountabilityNY.org, and posted the full text of their complaints.  The website's homepage provides an overview of the problem of prosecutorial misconduct and notes that the "majority of these violations are likely never discovered or disclosed to New Yorkers."  It continues: "The biggest reason prosecutorial

18

**JA68**

misconduct continues to be widespread is that courts, district attorneys, and bar associations rarely hold prosecutors accountable for their misconduct." Thus, the website explains, "Accountability NY – a group of law professors and activists with the support of Civil Rights Corps – filed grievances in instances where New York courts found prosecutors committing misconduct and those prosecutors had not yet faced public discipline. In the grievances, the professors urge the Grievance Committees to act." *See* https://accountabilityny.org/.

53. In addition to disseminating information on prosecutorial misconduct and publishing the Professors' complaints, the website also encourages visitors to put public pressure on grievance committees to hold prosecutors accountable for misconduct. There is a red button in the website's navigation bar that says, "Take Action." *See* https://accountabilityny.org/complaints/. A suggested action is to send an email to "your Grievance Committee" saying "I am deeply concerned by prosecutorial misconduct in New York City. I ask that you please hold prosecutors publicly accountable when they violate the rights of New Yorkers. Thank you for making a more accountable New York."

54. The website also contains a link to a "social media toolkit" with draft messages and images that concerned members of the public can post on social media to express support for holding prosecutors accountable when they engage in misconduct. *See* https://accountabilityny.org/wp-content/uploads/2021/06/AccountabilityNY-Toolkit-2.pdf.

**D.     Defendants Threaten and Retaliate Against the Professors For Engaging in Protected Speech**

**1.   The Corporation Counsel's Threats**

55. On June 2, 2021, James E. Johnson, then the Corporation Counsel for the City of New York, sent an extraordinary letter to each grievance committee before which the Professors had filed their complaints. A copy of each letter was also sent to the Law Professors. Other than the names of the relevant grievance committee to which the letter was directed and

19

**JA69**

the subject attorney, the substance of the letters is identical.  An example letter is attached under seal to this complaint as Exhibit 1.

56.    In the letter, the Corporation Counsel makes clear that he is acting in his official capacity under color of state law.  He explains that he is writing in his capacity as the Chief Legal Officer of the City of New York and also as counsel to the Queens District Attorney. Defendant Melinda Katz.  The letter then "express[es] my deep concern" about the grievance complaints filed by the Law Professors regarding present and former Queens Assistant District Attorneys.  Ex. 1 at 1.

57.    In inflammatory language, the Corporation Counsel then accuses the Law Professors of violating "the law and the principles on which the grievance process is based"—in particular, Judiciary Law § 90(10)—because the Professors' complaints are part of a "public campaign."  *Id.*  The Corporation Counsel asks the grievance committee members to "consider the manner in which [each complaint] was filed" as they review that complaint—implying that the complaint should be disregarded, or the Professors sanctioned, or both—because the complaints were filed as part of "an orchestrated campaign to upend the attorney grievance process to advance [the Law Professors'] stated goal of holding prosecutors accountable."  Ex. 1 at 1-2.

58.    In the letter, the Corporation Counsel accuses the Law Professors of engaging in unethical conduct by simultaneously filing the complaints with the grievance committee and at the same time publishing the complaints and advocating for reform.  He accuses the Professors of "misus[ing] and indeed abus[ing]" the grievance process "to promote a political agenda," which is "harmful to the profession and the process and should not be countenanced."  *Id.* at 2-3.  Repeatedly citing Judiciary Law § 90(10), he claims that the "law professor complainants should well know" that "the grievance process is not the proper venue"

20

**JA70**

for achieving systemic reform, and that they should have instead addressed their advocacy "to the legislature, the courts, and the Bar at large." *Id.* at 3. The approach taken by the Professors, according to the Corporation Counsel, "is both abusive and wrong." *Id.*

59.     Nowhere in his letter on behalf of the City of New York and the Queens District Attorney does the Corporation Counsel explain why there is any inconsistency between filing well-documented complaints that should be acted upon and publicly advocating for reform of the disciplinary process. Nor does he explain why what the Law Professors are doing is not fully within their First Amendment rights, which should protect them from such governmental harassment. Indeed, he does not even deny that the Law Professors' complaints document real, pervasive and unchecked misconduct in the Office of the Queens District Attorney or that it is the public interest to raise such issues. In fact, he does not dispute anything of substance any of the professors complaints; he actually goes out of his way to say that he is "taking no position on the substance of the allegations involving the individual ADAs."

60.     The Corporation Counsel's letter to the Grievance Committee expresses particular ire about the Law Professors' decision to publish their complaints on the Accountability NY website to help educate the public about this State's plague of prosecutorial misconduct. He claims that the Law Professors have violated the law—suggesting that they should be punished—because, he says, Judiciary Law § 90(10) makes attorney disciplinary records "including the complaint" private and confidential.

61.     The supposed secrecy of a complaint by a member of the public would be news to the many aggrieved parties who, exercising their First Amendment rights, have told relatives, colleagues, and the press about the complaints they have filed about particular lawyers. It would also be news to those who filed complaints with grievance committees with respect to Rudolph Giuliani over his role in the 2020 election and January 6, 2021 Capitol riots, and then

21

published their complaints widely in the press.  The list of these individuals—whom the Corporation Counsel would also presumably dub lawbreakers acting in a manner "harmful to the profession"—reads like a Who's Who of the American bar, including retired federal and state judges, former federal and state prosecutors, past presidents of the American Bar Association, and the like. Particularly relevant here, it included 20 retired New York State judges and seven former members of New York State Grievance Committees.

62.     Speaking for the City of New York and the Queens District Attorney, the Corporation Counsel found it particularly offensive that the Law Professors were not personally the victims of the alleged misconduct and that their complaints were all documented from the public record.  They "readily concede," he says, that they have "no first-hand knowledge" the misconduct that is copiously documented in their complaints.  The letter does not explain why the grievance process is, or should be, limited to complaints from victims.  In particular, the letter ignores the fact that the attorney's reporting obligations are far broader.  As the New York State Bar Association has made clear, "a lawyer is always free to report evidence of what may constitute improper conduct by another attorney."  New York State Bar Assoc., Committee on Professional Ethics, Opinion 854 (March 11, 2011).  All that is needed is "a good faith belief or suspicion that misconduct has been committed." *Id.*  There was no impropriety in the Law Professors' relying on judicial findings of prosecutorial misconduct.

63.     The Corporation Counsel's letter calling the Law Professors unethical is not simply an idle threat to them.  Rather it involves some of the most powerful figures in the New York legal community.  The letter itself is on behalf of the City of New York and the Queen District Attorney.  Meanwhile, the grievance committees to which he wrote are empowered to investigate and punish the Law Professors—each of whom is admitted to and an active member of the New York bar—for any breaches of professional conduct.  By stating that

**JA72**

the Law Professors had violated the law and were knowingly "abusing" the judicial process in violation of Judiciary Law § 90(10) the Corporation Counsel was accusing the Law Professors of violating (at the least) New York Rule of Professional Conduct 8.4(d) ("A lawyer shall not engage in conduct that is prejudicial to the administration of justice").  And by insisting that the Professors' conduct "should not be countenanced," the Corporation Counsel was suggesting that the grievance committees investigate and punish the Professors for their supposed breach.

64.    The Corporation Counsel also made it clear that he was not yet finished with his campaign of threats and harassment.  He said that "at this juncture" all he was doing was alerting the grievance committees to the fact that the Law Professors were engaged in a "very public campaign" that supposedly "runs afoul of the confidentiality provisions of the law and the purpose of the grievance process."  But he asserted ominously that all five of New York City's five district attorneys—and the Special Narcotics Prosecutor as well—are supposedly "concerned about this abuse of the grievance process."   And he threatened that if the Professors "continue on their quest to publicly disclose grievance complaints," he may be "compelled" to continue his abusive threats, wrongful accusations of misconduct and demands for punitive action against the Law Professors. *Id.*

65.    The Law Professors have published their complaints, and aired their mission, relying on the dictum that "sunlight is the best disinfectant" and it is sorely needed here to help rehabilitate the New York grievance process.  The Corporation Counsel apparently believes the opposite and, in particular, that the people of New York should not know about his outrageous effort to interfere with the Law Professors exercise of their First Amendment rights. He ends his letter by insisting that it is, for some reason, "private and confidential under Judiciary Law 90(10)."  And he adds yet another threat:  "any disclosure of this letter" by the Professors "would be unlawful under the Judiciary Law."  Ex. 1 at 3, n. 4.  (As a result of this

23

**JA73**

threat and another from the current Corporation Counsel, Plaintiffs have filed these letters and other related correspondence under seal).

66.     In response to complaints from the Law Professors about this baseless effort to threaten them for their exercise of their First Amendment rights (Exs. 3 & 4), New York City's chief legal counsel wrote again to the Grievance Committee on July 8, 2021. Ex. 5.  In this later letter addressed to the Grievance Committee for the Second, Eleventh & Thirteenth Judicial Districts, the Defendant Corporation Counsel Georgia Pestana (Mr. Johnson having resigned) apparently recognized that the Law Professors were entitled to publish their complaints, but she maintained—albeit in softer language—that the Law Professors were improperly "using the confidential grievance process to wage a public campaign for prosecutorial reform."  This supposed abuse of the process—publicly filing complaints in an attempt to seek reform of the disciplinary process while at the same time bringing ethical violations to the attention of the Grievance Committee—required the Grievance Committee to "consider this context" in addressing the complaints.  As before, the Corporation Counsel did not attempt to defend the accused prosecutors, even while implicitly suggesting that the Grievance Committee not treat the complaints seriously.  And, as before, the Defendant Corporation Counsel insisted that under Judiciary Law § 90(10) her letter—the views of the chief legal officer of New York City writing on behalf of the City of New York and the Queens District Attorney, Defendant Katz, about a matter of great public importance—must be treated as secret and withheld from the public.

67.     The July 8, 2021 letter did add one more allegation of supposed misconduct by the Plaintiffs.  The Corporation Counsel noted that the Accountability NY website, maintained by Plaintiff Civil Rights Corps, allows members of the public to "create automated emails" that can be sent to grievance committees, asking that prosecutors be held "publicly accountable when they violate the rights of New Yorkers."  The Corporation Counsel

24

**JA74**

seems to suggest this is somehow improper.  According to the letter, that is because "these emails do not identify any attorney or any alleged misconduct, but merely express a policy position about accountability."  The letter does not identify why the First Amendment does not fully protect any such communications with the Grievance Committee or why they are in any way improper.  Nor does it explain why it is somehow wrong to ask members of the public to lobby the Grievance Committee to do its job.  Ironically, the Corporation Counsel seemingly believes that it is proper for her to communicate to the Grievance Committee about matters of public policy without focusing on "any attorney or any alleged misconduct"—as is true of both Corporation Counsel letters—but somehow improper for members of the public to do the same.

### 2. The Grievance Committee Excludes the Law Professors From the Process

68.    The Law Professors had filed their complaints in strict compliance with the rules set forth in 22 N.Y.C.R.R. § 1240.  Under the rules, the Law Professors were the "complainants," a defined term that simply means "a person or entity that submits a complaint to a Committee."  22 N.Y.C.R.R. § 1240.2(e).  Complainants are entitled to certain rights and information under the law.  This includes notification of the disposition of the matter, the ability to appeal a disposition, and notification of the outcome of the challenge.  22 N.Y.C.R.R. § 1240.7(d), (e).  In practice, complainants are automatically given a copy of any response filed by the accused attorney for comment.  When they filed their complaints on May 3, 2021, the Law Professors had every right to expect that they would receive all of these rights with respect to the 21 complaints that they filed.

69.    Nothing happened for over a month after the complaints were filed.  Then, as outlined above, on June 2, 2021, the Corporation Counsel wrote to the Grievance Committee accusing the Law Professors of "misus[ing] and indeed abus[ing]" the grievance process in violation of Judiciary Law § 90(10).  On behalf of the City of New York and the Queens District

25

**JA75**

Attorney, the Corporation Counsel urged the Grievance Committee to take adverse action against the Law Professors or their complaints—to "consider the manner in which [each complaint] was filed" and "this broader context as you evaluate [each] complaint."

70.     With these outrageous allegations before it from the city's chief legal officer, the Grievance Committee did take adverse action against the Professors.  It baselessly denied the Law Professors their statutory right to participate in the review process by denying them their statutory status as "complainants."  On June 11, 2021, just 9 days after the Corporation Counsel's letter, Defendant Kearse, Chief Counsel of the Grievance Committee, wrote a letter to the Law Professors.  Ex. 2.  The letter is on the official letterhead of the Grievance Committee.  On information and belief, the letter was sent with the approval of Defendant Andrea Bonina, chair of the Grievance Committee.  The upshot of Defendant Kearse's letter is that the Grievance Committee is *not* going to treat the Law Professors as complainants and the Professors will *not* receive the information to which complainants are entitled under the law.

71.     Seizing on the fact—previously emphasized by the Corporation Counsel— that the complaints are all "based on information derived from public sources," Defendant Kearse asserted without elaboration that—supposedly for that reason—the Professors were not complainants and instead "any investigations into these allegations would be initiated by the Grievance Committee, *sua sponte*."  The Law Professors would have not access to the process, which would instead "remain confidential pursuant to New York State Judiciary Law § 90".  Defendant Kearse even refused to confirm "whether any investigations will or will not be pursued," leaving the Professors out in the cold.  *Id.*  This was all double-talk designed to penalize the Law Professors for asserting their First Amendment rights and to exclude them from the process that they initiated and to which they are entitled to participate.

26

**JA76**

72. The Grievance Committee does have the right to institute an investigation "*sua sponte*." 22 N.Y.C.R.R. § 1240.7(a)(1). But those words mean "on its own motion," an action undertaken without formal prompting from another party. Of course, the Grievance Committee can undertake an investigation based on its own—based on something in a newspaper or a judicial opinion. Sometimes the Grievance Committee may expand the scope of a previously filed complaint on its own initiative. *See, e.g.*, *In re Mays*, 132 A.D.3d 241, 243 (2d Dep't 2015); *In re Reid*, 149 A.D.3d 114, 115 (1st Dep't 2017). Sometimes a judge may forward an opinion, but has no interest in participating in the ongoing proceedings as a complainant. But "*sua sponte*" simply does not describe the facts here. The Grievance Committee has 21 complaints before it. They reflect an extraordinary amount of work and include the formal request signed by members of the New York bar that the Grievance Committee investigate their complaints. It is true that the complaints are based on public records, but there is no reason to think the Committee would otherwise look at those records, which sometimes are years old and had to be collected and assembled with great care, if the complaints had not been filed by the complainants—the Law Professors. Defendant Kearse cited no authority—and we are aware of none—to refuse to treat a complainant as a complainant.

73. The principal effect of Defendant Kearse's decision is to exclude the Law Professors from the grievance process, denying them the right of complainants. In response, the Law Professors noted that Defendant Kearse's letter came on the heels of the Corporation Counsel's baseless attack on them and her decision "suggests that, at the urging of Mr. Johnson, the Committee is rejecting the complaints and taking action against the professors for the exercise of their First Amendment rights." Ex. 6.

74. On behalf of the Grievance Committee, Defendant Kearse responded with a terse letter sent on July 26, 2021. Ex. 7. ***Notably, she did not deny that the Committee action***

27

*was taken in response to the Corporation Counsel's demands*.  Instead, she asserted that the *sua sponte* review of "complaints filed against attorneys based upon public records" is somehow based on the Rules for Attorney Disciplinary Matters and "the long-standing policy of the Appellate Division, Second Judicial Department."  She cited nothing for this proposition.  And of course, the recent discipline of Rudolph Giuliani was not *sua sponte*, but was based on "numerous complaints of [Mr. Giuliani's] alleged professional misconduct," all based on the public record.  *Matter of Giuliani*, No. 2021-00491, 2021 WL 2583536, at *1 (1st Dep't June 24, 2021).  Indeed, the Grievance Committee's position is a *non-sequitur*.  The logic of Defendant Kearse's position is that when "complaints [are] filed against attorneys based upon public records," there is no complainant.  But if a complaint is filed, the person who filed it is a complainant as defined by, and with rights under, under New York law.  Defendant Kearse's transparent fiction has only one purpose—to exclude the Professors from the ongoing process that their complaints have generated and thereby punish them for exercising their First Amendment rights.

75.    In the ordinary course, a complaint is initially reviewed by the Chief Attorney for the Committee—Defendant Kearse.  She may decline to investigate a complaint for a proper reason, but if she does, the law requires that "[t]he complainant shall be provided with a brief description of the basis of any disposition of a complaint by the Chief Attorney."  22 N.Y.C.R.R. § 1240.7(d).  Thereupon, the complainant has a right to seek reconsideration of the decision by the chair of the Committee, Defendant Bonina.  *Id.* § 1240.7(e)(3).  By treating the Professors' complaints as *sua sponte* inquiries, the professors are denied these rights.  Ms. Kearse can now refuse to investigate the 21 complaints—***and tell no one***.  The Law Professors and the public will be kept in the dark forever.  In effect, in retaliation against the Law Professors for what the Corporation Counsel, and presumably the Grievance Committee, view as an abuse of

28

**JA78**

the grievance process, Defendant Kearse has turned the investigatory process into a black box, in which complaints go in and no one can assess whether anything comes out. Prosecutors who have violated the law, such as Jesse Sligh and Charles Testagrossa, have dodged any discipline for decades for their misconduct. The Law Professors and the public have a right to know if the Grievance Committee is prepared finally to intervene.

### E.   On-going Injury

76.   Unless remedied by the Court, it is impossible to quantify the ongoing injury that the actions of the Corporation Counsel and the Grievance Committee may cause. The Law Professors have done nothing remotely improper. They have respectfully exercised their First Amendment rights to speak out against flaws in the New York system for attorney grievance and to petition their government for the redress of their grievances. Their grievances are both particular to named individuals—the failure of the system to discipline the subjects of the 21 complaints filed by the Law Professors, and to do so in public. And they are general to the system at large—its failure systematically to impose justice on misbehaving prosecutors throughout the state and its wrongful insistence on secrecy. There is no inconsistency in pursuing those grievances simultaneously. And public officials—the Corporation Counsel, the Queens District Attorney and the Grievance Committee Chief Counsel and Chair—and the public bodies that they represent have no business threatening or punishing the Professors for their conduct.

77.   The threats and retaliation will continue unless enjoined. The Corporation Counsel has all but promised more inflammatory accusations if the Law Professors continue filing complaints—as they fully intend to do. The Corporation Counsel asserts that this endeavor is supported by New York City's five district attorneys and the Special Narcotics Prosecutor, all of whom are supposedly "concerned about this abuse of the grievance process." Meanwhile, the

29

**JA79**

Grievance Committee Chief Counsel and Chair will seemingly continue baselessly treating well-documented complaints filed by the Law Professors as not complaints at all and have reserved the right to bury them without public notice. There is now no reason to expect a good-faith investigation of the accused prosecutors by the Grievance Committee. Indeed, as matters now stand, the Grievance Committee may actually decide instead to investigate the Law Professors—rather than the prosecutors—for imaginary misconduct.

78. Even if the Grievance Committee does undertake an investigation based on the Law Professors' complaints, under Judiciary Law § 90(10) that investigation will take place in secret. On the facts of this case, that is, by itself, a First Amendment violation. The public has a right to see and hear the proceedings against these disgraced prosecutors in order to judge whether their public servants are performing their jobs and whether justice is being done. There is no countervailing reason for secrecy here. The allegations against the prosecutors are already known and part of the public record. Secrecy serves only to permit justice to be denied.

79. Meanwhile, for their part, the Law Professors have to assess whether, as members of the bar, they wish to continue to submit themselves to baseless accusations of abuse of the system by law enforcement and other officials, threatening potential disciplinary investigations, when all they are doing is so plainly in the public interest and protected by First Amendment. The Plaintiff Civil Rights Corps will incur unnecessary difficulty in soliciting more professors to join in its campaign to reform the disciplinary process. And professors who have not yet submitted a complaint, such as plaintiff Justin Murray, will think twice about whether they want to subject themselves to unnecessary abuse and threatened discipline.

80. All of this directly harms the public and will continue to do so unless enjoined. There is already a serious gap in reporting and addressing instances of prosecutorial misconduct. The prosecutors who misbehave do not have clients who can report them to the

30

**JA80**

Grievance Committee.  Defense lawyers who may be aware of misconduct must nonetheless engage daily with the Queens District Attorney and her office, and so are discouraged from reporting misconduct for fear that whistleblowing will have a negative effect on their relations with the prosecutors.  And when independent legal experts like the Professors are attacked by powerful government officials for the offense of making public their request that the Grievance Committee do its job, that operates to perpetuate the disrepair of the current system.  All of this erodes the legitimacy of the grievance process and the claim that the bar is able to govern itself. All of these harms above and beyond the direct threat of professional discipline are intangible, but they are real, they are irreparable and they are ongoing.

## FIRST CLAIM FOR RELIEF

### Against Defendants Bonina, Katz, Kearse, And Pestana For Violating Plaintiffs' First Amendment Rights

81.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-80 above with the same force and effect as if fully set forth herein.

82.    The acts of the Corporation Counsel, the Queens District Attorney, the Grievance Committee Chief Counsel and Chair constitute conduct under color of state law that deprived the Law Professors of rights, privileges, and immunities under the First and Fourteenth Amendments to the United States Constitution.

83.    The First Amendment protects the right to "freedom of speech" and to "petition the Government for a redress of grievances."  U.S. Const., amend. I.  "The First Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 750 n.1 (1976).

31

**JA81**

84.     The state and its officials acting under color of law are barred by the First Amendment from threatening, harassing and retaliating against individuals for engaging in protected speech.

85.     The Law Professors have a First Amendment right to make complaints to the Grievance Committee, to publish these complaints, and to engage in a political activity to encourage greater accountability for prosecutorial misconduct.  These activities involve freedom of speech, freedom to petition the government and freedom of association, all protected by the First Amendment.  They are all matters of compelling public concern.  They cannot be investigated or sanctioned by state officials for engaging in these activities.

86.     The Corporation Counsel, the Queens District Attorney and the Grievance Committee Chief Counsel and Chair have engaged in an ongoing effort to harass, threaten, and punish the Law Professors for their exercise of their First Amendment rights.

## SECOND CLAIM FOR RELIEF

**Against Defendants Bonina And Kearse For Violating the Equal Protection Clause**

87.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-80 above with the same force and effect as if fully set forth herein.

88.     The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

89.     Under New York law, "a person or entity that submits a complaint to [an attorney grievance committee]" is called the "complainant."  22 N.Y.C.R.R. §§ 1240.2(d), 1240.2(e).  Grievance committees do not possess any discretion to deny a person or entity that submits a complaint of their "complainant" status.  A complainant is given certain rights—and the grievance committee certain obligations—in connection with any disciplinary process that

32

**JA82**

arises from their complaints.  Those rights include notice of grievance committee decisions, the reasons therefor and the right to appeal those decisions.

90.     By determining that any investigations of the misconduct recounted in the Law Professors' complaints would be undertaken "*sua sponte*," the Grievance Committee Chief Counsel and Chair have deprived or threatened to deprive the Law Professors of their status as "complainants" and the rights that flow therefrom, and they have treated the Law Professors differently than other similarly-situated individuals who file grievance complaints.  These actions were undertaken to retaliate against the Law Professors for activities protected by the First Amendment and they deny the Professors equal protection of the law.

## THIRD CLAIM FOR RELIEF

**Against All Defendants For Enforcing New York Judiciary Law § 90(10) In Violation of Plaintiffs' First Amendment Right To Speak Freely Under The United States Constitution And Article I § 8 of the New York State Constitution (As-Applied and Facial Challenge)**

91.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-80 above with the same force and effect as if fully set forth herein.

92.     New York Judiciary Law § 90(10) provides that "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential." The same statute allows for public disclosure of such documents only "in the event that charges are sustained by the justices of the appellate division" or "upon good cause being shown." *Id.*

93.     Insofar as New York State Judiciary Law § 90(10)'s confidentiality provision limits the Professors' right to speak freely, it violates the First Amendment of the United States Constitution and its New  York State counterpart, Article I § 8 of the New York State Constitution.  Section 90(10) cannot constitutionally be applied to preclude the Professors from publishing (1) the 21 complaints they filed and any future complaints they may file, (2) the

33

letters written by and between Defendants and the Professors regarding those complaints, and (3) any information Plaintiffs may receive from Defendants in the future in connection with those complaints.  When applied to muzzle the Plaintiffs, New York State Judiciary Law § 90(10) is a content-based prior restraint on speech that is not narrowly tailored to serve a compelling government interest.

94.     The Plaintiffs wish to draw public attention to the Grievance Committee's failure appropriately to investigate and discipline prosecutors who engage in misconduct.  New York State Judiciary Law § 90(10) injures them by preventing them from engaging in core political speech and advocacy.

95.     Moreover, if Defendants' interpretation of Judiciary Law § 90(10) is correct, then the law is constitutionally overbroad on its face.  It purports to keep confidential the most mundane and routine communications, from correspondence setting a date for a proceeding to a notice stating the Grievance Committee offices will be closed on a particular date.  On the facts set forth above, that overbreadth is patent.  The Corporation Counsel and the Queens District Attorney contend Judiciary Law § 90(10) bars disclosure of the letters written by the Corporation Counsel on behalf of the Queens District Attorney to the Law Professors.  These letters attack the Law Professors for engaging in First Amendment activities and say nothing at all about the underlying allegations of prosecutorial misconduct that are the subject of the Law Professors' complaints.  Indeed, the letters disclaim taking any position on those allegations at all.  While the letters are surely embarrassing to the Corporation Counsel and the Queens District Attorney, they disclose nothing that can remotely be thought to be confidential.  There is no legitimate governmental interest in keeping such letters confidential.

34

**JA84**

**FOURTH CLAIM FOR RELIEF**

**Against All Defendants For Enforcing New York Judiciary Law § 90(10) In Violation Of Plaintiffs' Right To Access Government Proceedings And Records Under The First Amendment Of The United States Constitution, Article I § 8 Of The New York State Constitution, and New York Judiciary Law § 4 (As-Applied)**

96.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-80 above as if fully set forth herein.

97.     In addition to explicitly prohibiting the disclosure of "all papers, records and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys," the New York Court of Appeals has also interpreted New York Judiciary Law § 90(10) as mandating confidentiality for attorney disciplinary hearings. *Johnson Newspaper Corp. v. Melino*, 564 N.E.2d 1046, 1050-51 (N.Y. 1990).

98.     The First Amendment of the United States Constitution, Article I § 8 of the New York Constitution, and New York Judiciary Law § 4 provide the public with a qualified right of access to government proceedings and records.  New York Judiciary Law § 90(10)'s confidentiality provision—as applied to any hearing and any materials "upon" any of the 21 complaints Plaintiffs filed—violates the public's right of access.

99.     Attorney disciplinary hearings are "judicial proceedings" and the grievance committees that investigate and hear misconduct complaints act as a "quasi-judicial body" and "an arm of the Appellate Division." *Wiener v. Weintraub*, 29 N.E.2d 540, 541 (N.Y. 1968).  There is a long history in the United States that judicial and quasi-judicial proceedings are open to the public.  New York law affirmatively requires that "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same."  New York Judiciary Law § 4.  Even if these proceedings were viewed as administrative, rather than judicial or quasi-judicial, they are "administrative hearings at which individual rights are adjudicated,"

35

**JA85**

which is a type of administrative hearing that has "traditionally been open [to the public]." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 302 n. 12 (2d Cir. 2011).

100.    In New York, attorney disciplinary complaints were historically heard in a public forum: "Petitions or complaints charging professional misconduct of an attorney" that are "now usually filed with the Grievance Committee" were, "in the past," "presented to the General Term of the Supreme Court." *Wiener*, 39 N.E.2d at 541.

101.    In addition to being out-of-step with the state's past tradition of openness, Judiciary Law § 90(10) is an outlier nationally.  As of mid-2014, "the vast majority of jurisdictions open proceedings upon the filing of a formal charge following a finding of probable cause."  The Lippman Commission Report at 62.  "New York is one of only 9 jurisdictions which do not permit public dissemination of information concerning disciplinary proceedings until, at the earliest, a recommendation that discipline be imposed, and usually upon a final adjudication." *Id.*

102.    Even if grievance proceedings involving private disputes can lawfully be conducted in secret, that is the not the case when Judiciary Law § 90(10) is applied here, to keep confidential hearings relating to discipline of the prosecutors charged by the Professors with misconduct.  Both the conduct of prosecutors and the discipline of prosecutors who commit misconduct are issues of great public importance.  Absent access to these proceedings, the public will be unable to determine whether the system currently in place to investigate and discipline prosecutors is effective or if further reforms are needed.

103.    The confidentiality provision of Judiciary Law § 90(10) purportedly "serves the purpose of safeguarding information that a potential complainant may regard as private or confidential and thereby removes a possible disincentive to the filing of complaints of

36

**JA86**

professional misconduct."  It  also purportedly "evinces a sensitivity to the possibility of irreparable harm to a professional's reputation resulting from unfounded accusations."  *Matter of Johnson Newspaper Corp. v. Melino*, 564 N.E.2d 1046, 1051 (N.Y. 1990).  Neither of these concerns applies here.

104.    The Professors have already chosen to publicize their complaints, so there is no need to "safeguard[] information [that the] complainant[s] may regard as private or confidential."  Meanwhile, the Professors' complaints are based on information already in the public record—namely, public findings of prosecutorial misconduct by courts—so the accused prosecutors have already suffered whatever reputational harm may result from their conduct.  Moreover, the fact that the complaints are based on judicial findings significantly reduces the risk of "unfounded accusations."   In any event, "injury to official reputation is an insufficient reason 'for repressing speech that would otherwise be free.'"  *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978).  Thus, application of Judiciary Law § 90(10) in this case serves no legitimate government interest whatsoever.

105.    As applied to these facts, the First Amendment of the United States Constitution, Article I § 8 of the New York Constitution, and New York Judiciary Law § 4 require that all records and proceedings arising out of the complaints that the Law Professors have filed, and any similar complaints that they may file, be public.

**FIFTH CLAIM FOR RELIEF**

**Against All Defendants Under Judiciary Law § 90(10) Allowing Plaintiffs Access To Disciplinary Records and Proceedings For Good Cause Shown**

106.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1-80 above as if fully set forth herein.

37

**JA87**

107.   Upon a showing of "good cause," Judiciary Law § 90(10) permits the public a right of access to disciplinary proceedings and all records of such proceedings.  Good cause exists here.  The public interest in, and the importance of, disciplining prosecutors for misconduct is intense.  The 21 complaints detail proven instances of misconduct that go back decades without redress.  There are no confidentiality issues at stake.  Meanwhile, the Grievance Committee has shown a willingness to disregard the complaints and keep even the complainants themselves from being apprised of any investigation.  The only way to assure the public that these complaints will be considered promptly and fairly is to let the public in.  Good cause has been shown for opening the proceedings involving the 21 complaints filed by the Law Professors.

**<u>PRAYER FOR RELIEF</u>**

The conduct alleged herein, unless and until enjoined by an order of this Court, will cause great and irreparable injury to Plaintiffs.  A judicial declaration is necessary and appropriate at this time so that all parties may know their respective rights and act accordingly.

WHEREFORE, Plaintiffs demand judgment against Defendants:

A.   Declaring that Defendants Bonina, Katz, Kearse, and Pestana's harassment, threats and retaliation against Plaintiffs violate the First Amendment of the United States Constitution;

B.   Preliminarily and permanently enjoining Defendants Bonina, Katz, Kearse, Pestana, and their employees, agents, and any and all persons acting in concert with them from harassing, threatening or retaliating against Plaintiffs because of their exercise of their First Amendment rights;

38

**JA88**

C.        Declaring that the Defendants Bonina and Kearse unlawfully denied the Law Professors the status of "complainant" as defined in N.Y.C.R.R. § 1240.2(e) in violation of the First and Fourteenth Amendments of the United States Constitution;

D.        Preliminarily and permanently enjoining the Defendants Bonina, Katz, and their employees, agents, and any and all persons acting in concert with them from depriving the Plaintiffs of the equal protection of the law by treating their complaints differently than those of other similarly situated complainants in retaliation for their exercise of their First Amendment rights;

E.        Declaring that Judiciary Law § 90(10) violates the First Amendment of the United States Constitution and Article I Section 8 of the New York State Constitution, insofar as it is applied to prevent Plaintiffs from publishing information that is in their possession or that comes into their possession relating to any complaints of prosecutorial misconduct that they have filed or may file;

F.        Preliminarily and permanently enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from enforcing or attempting to enforce Judiciary Law § 90(10) to preclude Plaintiffs from publishing information that is in their possession or that comes into their possession relating to any complaints of prosecutorial misconduct that they have filed or may file;

G.        Declaring that Judiciary Law § 90(10) violates the First Amendment of the United States Constitution, Article I, § 8, of the New York State Constitution and New York Judiciary Law § 4 insofar as it is applied to deny public access to any and all records and proceedings that may result from the complaints of prosecutorial misconduct that the Law Professors have filed or may file;

**JA89**

H.      Preliminarily and permanently enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from enforcing or attempting to enforce Judiciary Law § 90(10) insofar as it is applied to deny public access to any and all records and proceedings that may result from the complaints of prosecutorial misconduct that the Law Professors have filed or may file;

I.      Ordering the Defendants Bonina, Kearse and LaSalle and their employees, agents, and any and all persons acting in concert with them to make public any and all records that may result from the complaints of prosecutorial misconduct that the Law Professors have filed or may file and to hold any and all proceedings arising from those complaints in public;

J.      Declaring that there is "good cause" pursuant to Judiciary Law § 90(10) to unseal and divulge any and all disciplinary proceedings and records that may result from the complaints of prosecutorial misconduct that the Law Professors have filed or may file;

K.      Awarding monetary damages in an amount to be proven at trial of $1 or more;

L.      Awarding Plaintiffs their costs and reasonable attorneys' fees in this action; and

M.      Any other or further relief the Court deems appropriate.

Dated: New York, New York
       November 4, 2021

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

Gregory L. Diskant
Jeffrey F. Kinkle

40

**JA90**

Jeffrey C. Skinner
Jake Walter-Warner
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222
gldiskant@pbwt.com
jkinkle@pbwt.com
jskinner@pbwt.com
jwalterwarner@pbwt.com

*Attorneys for the Plaintiffs*

**JA91**

# EXHIBIT 1



**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JAMES E. JOHNSON**
*Corporation Counsel*

(212) 356-0800
jajohnso@law.nyc.gov

June 2, 2021

*Via email to ad2-grv9@nycourts.gov*

State of New York Grievance Committee for the
Ninth Judicial District
Crosswest Officer Center
399 Knollwood Road, Suite 200
White Plains, N.Y. 10603

**Re: May 3, 2021 Grievance Complaints Filed Against Current and Former**
**Queens County Assistant District Attorneys**

**Taylor Piscionere, State Bar No. 5212717**

Dear Grievance Committee Members:

As the Chief Legal Officer of the City of New York and as legal counsel to the Office the District Attorney for Queens County, I write to express my deep concern with a series of grievance complaints represented to have been filed with your Committee regarding the conduct of the aforementioned former Queens Assistant District Attorney. With full appreciation of the vital role that the grievance process plays in ensuring the integrity of our profession, I believe that the very public campaign surrounding this and other similar complaints is contrary to both the law and the principles on which the grievance process is based. As your office reviews this complaint, I respectfully request that your Committee consider the manner in which it was filed.

On May 3, 2021, a complainant group of law professors claimed to have filed twenty-one simultaneous complaints with four New York State Judicial District grievance committees— including this Committee—regarding the conduct of twenty-one current and former Queens ADAs. Some of these complaints concern conduct that is over twenty years old.[1] My office became aware

---

[1] Each of the complaint letters follow a similar format and note that the complainants do "not have personal knowledge of any of the facts or circumstances of [the ADA] or the cases mentioned" and that the "grievance is based entirely on the court opinions, briefs and other documents."

**JA93**

of these complaints because the complainants posted the documents to a public website (www.accountabilityny.org), began a social media campaign to "shin[e] a light" on these complaints, engaged the media regarding these complaints, and publicly stated their intent to deploy the same strategy against ADAs from other prosecutorial offices.[2]

As you know, New York State Judiciary Law § 90(10) designates attorney disciplinary records—including the complaint—private and confidential.  Only the Appellate Division, upon good cause being shown, is empowered to permit all or any part of such papers, records and documents to be divulged.  In holding that attorney disciplinary complaints are made in the context of a judicial proceeding and thus are entitled to absolute immunity, the Court of Appeals specifically found that any risk of prejudice to attorneys by the filing of such complaints is eliminated by Judiciary Law 90(10), which deems all papers private and confidential.  *Wiener v. Wientraub*, 22 N.Y.2d 330, 332 (1968).

In *Johnson Newspaper Corp. v. Melino*, 77 N.Y.2d 1 (1990), the Court of Appeals recognized the dual policy purposes served by keeping disciplinary proceedings involving licensed professionals confidential until they are finally determined.  It safeguards information a potential complainant may regard as private or confidential, thereby removing any disincentive to filing a complaint.  But it also "evinces a sensitivity to the possibility of irreparable harm to a professional's reputation resulting from unfounded accusations," recognizing that "a professional reputation 'once lost, is not easily restored.'" *Id.* at 10-11 (quoting *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 478 (1928) (citations omitted)).  And in *In re Capoccia*, 59 N.Y.2d 549, 554 (1983), the Court made clear that Judiciary Law 90(10)'s confidentiality provisions "were enacted primarily, if not only, for the benefit of the attorney under investigation."

Yet, in direct contravention of this legal directive and long-established public policy, the complainant law professors not only posted the complaints online, but designed a special website to host these and future grievance complaints.  They then took various additional steps to call attention to both their website and the complaints, and even created a "social media toolkit" that can be downloaded to facilitate further sharing of this information on various social media platforms by others.  And they further encourage readers to review the grievances and then reach out to their local grievance committees to seek prosecutorial accountability, thus improperly seeking to interject public opinion into the grievance process in response to specific grievances.[3]  *See Johnson Newspaper Corp.* 77 N.Y.2d at 7-8 (holding that there has been "no showing that [] public access plays 'a significant positive role' in the functioning of [disciplinary] proceedings") (citation omitted).

Rather than respect the integrity of the process or seek reform through proper means, the complainant law professors are engaging in an orchestrated campaign to upend the attorney grievance process to advance their stated goal of holding prosecutors accountable.  Their misuse and

---

[2] George Joseph, *Prosecutors Wrongfully Convicted Three Men Who Spent 24 Years Behind Bars. Will They Be Disbarred?* Gothamist, May 6, 2021, https://gothamist.com/news/prosecutors-wrongfully-convicted-three-men-who-spent-24-years-behind-bars-will-they-be-disbarred.  For other media references, please visit www.accountabilityny.org.

[3] https://accountabilityny.org/complaints/

indeed abuse of the grievance process to promote a political agenda is harmful to the profession and the process and should not be countenanced.

Whereas the stated purpose of the grievance process is for the Committee to review and determine complaints of *individual* professional misconduct, the contents of and manner in which these complaints were filed make clear that the complainants have other motives. The complaints, as written, are more an attack on prosecutors generally. The complainants are not the aggrieved parties. Nor do they purport to be discharging any reporting obligation under Rule 8.3 of the New York Rules of Professional Conduct. Rather, they readily concede that they have no first-hand knowledge of any of the conduct alleged in their complaints, but instead have obtained their information from court decisions and other documents that were already before the courts. Moreover, the complainants' website demonstrates that their broader mission is to promote prosecutorial accountability generally and make the attorney disciplinary process public.

As a former federal prosecutor, I fully appreciate the push to ensure that our prosecuting authorities operate at the highest levels of integrity. That said, as the law professor complainants should well know, the grievance process is not the proper venue for achieving such industry-wide policy goals. Such systemic reforms should be addressed to the legislature, the courts, and the Bar at large as opposed to through improperly publicized complaints regarding individual prosecutors. *See Doe v. Office of Prof'l Med. Conduct*, 81 N.Y.2d 1050, 1052-53 (1993) (recognizing that "there are substantial reasons favoring open disciplinary proceedings," but that "the Legislature is in the best position to weigh conflicting policy values represented by these two approaches as they affect the various professions and enact consistent provisions for them giving appropriate protection to the interests of the parties and witnesses and the public interest"). No matter how well-intentioned their objectives, the law professors' approach is both abusive and wrong.

To be clear, in sending this letter I am taking no position on the substance of the allegations involving the individual ADAs.[4] Rather, at this juncture, I am writing to make sure that the Committee is aware that this complaint is part of a broader and very public campaign involving multiple grievances sent *en masse* to four different committees, and a campaign which, I submit, runs

---

[4] However, this letter is sent in response to specific grievances and, thus, is private and confidential under Judiciary Law 90(10). As such, any disclosure of this letter by complainants without proper court permission would be unlawful under the Judiciary Law.

afoul of the confidentiality provisions of the law and the purpose of the grievance process. Respectfully, I request that you consider this broader context as you evaluate this complaint.[5]

Sincerely,

James E. Johnson

cc:     Cynthia Godsoe
        Professor of Law
        Brooklyn Law School

        Steven Zeidman
        Professor of Law
        CUNY School of Law

        Nicole Smith Futrell
        Associate Professor of Law
        CUNY School of Law

        Daniel S. Medwed
        University Distinguished Professor of
        Law and Criminal Justice
        Northeastern University

        Abbe Smith
        Scott K. Ginsbury Professor of Law
        Director, Criminal Defense & Prisoner Advocacy Clinic
        Co-Director, E. Barrett Prettyman Fellowship Program
        Georgetown University Law School

---

[5] As mentioned above, this letter is submitted on behalf of the City of New York and the Queens District Attorney's Office. Should the complainants continue on their quest to publicly disclose grievance complaints involving the City's other prosecuting offices, as their website suggests, this Office may be compelled to send a similar letter on behalf of those offices. New York City's five district attorneys and the Special Narcotics Prosecutor are concerned about this abuse of the grievance process, as all members of the legal profession should be.

# EXHIBIT 2

*State of New York*
*Grievance Committee for the*
*Second, Eleventh and*
*Thirteenth Judicial Districts*

Renaissance Plaza
335 Adams Street – Suite 2400
Brooklyn, New York 11201-3745
(718) 923-6300

DIANA MAXFIELD KEARSE
Chief Counsel

MARK F. DEWAN
Deputy Chief Counsel

SUSAN KORENBERG
SUSAN B. MASTER
KATHRYN DONNELLY
THOMAS GRAHAM AMON
SASHA N. HOLGUIN
DAVID W. CHANDLER
SARA MUSTAFA
THOMAS J. MURPHY
Staff Counsel

ANDREA E. BONINA, ESQ.
Chair

June 11, 2021

**PERSONAL AND CONFIDENTIAL**
Cynthia Godsoe
Nicole Smith Futrell
Abbe Smith
Steven Zeidman
Daniel S. Medwed
professors@accountabilityny.org

Dear Professors:

This letter will acknowledge receipt of your recent complaints against current or former Assistant District Attorneys. Please be advised that while some of these complaints were addressed to other Grievance Committees (viz., the Grievance Committee for the Ninth Judicial District, the Grievance Committee for the Tenth Judicial District and the Attorney Grievance Committee for the First Judicial Department), they have all been transferred to this office.

By your own acknowledgement, your allegations are based on information derived from public sources, specifically, court decisions and court records. Under such circumstances, any investigations into these allegations would be initiated by the Grievance Committee, *sua sponte*, and remain confidential pursuant to New York State Judiciary Law §90, unless they resulted in public discipline imposed by the Appellate Division. Nevertheless, the Grievance Committee thanks you for bringing these matters to its attention and appreciates your interest in preserving the standards of the legal profession.

This letter does not constitute confirmation as to whether any investigations will or will not be pursued. Please be guided accordingly.

Very truly yours,

Diana Maxfield Kearse
Chief Counsel

DMK/mfd

**JA98**

# EXHIBIT 3

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 22, 2021

Gregory Diskant
(212) 336-2710
gldiskant@pbwt.com

State of New York Grievance Committee for the
Ninth Judicial District
Crosswest Officer Center
399 Knollwood Road, Suite 200
White Plains, N.Y. 10603

> Re:    **May 3, 2021 Grievance Complaints Filed**
> **Against Current and Former Queens County**
> **Assistant District Attorneys**
>
> **Taylor Piscionere, State Bar No. 5212717**

Dear Grievance Committee Members:

This firm represents law professors Daniel Medwed, Cynthia Godsoe, Abbe Smith, Nicole Smith Futrell and Steven Zeidman ("the professors"). Under the sponsorship of the Civil Rights Corps, and with the support of other public interest groups and concerned citizens, they have filed a total of twenty-one grievance complaints against current and former assistant district attorneys ("ADAs"). The complaints concern some of the most egregious instances of prosecutorial misconduct that have been reported in Queens County, New York. We write in response to the ill-advised letter of June 2, 2021 from James E. Johnson, the former Corporation Counsel of the City of New York, on behalf of the City of New York and the Office of the District Attorney for Queens County.

Mr. Johnson's beef is that the professors have made public their grievance complaints about prosecutorial misconduct on the website Accountability NY. The complaints are all based on a thorough analysis of publicly-available information (largely findings by appellate courts on complete records) about serious abuses of prosecutorial authority. Mr. Johnson does not deny the misconduct, but he seems to think that there is no need for a public airing of such issues. Indeed, he does not even think it is his obligation to take a position on whether misconduct occurred. Rather, he devotes his fire to criticizing the professors, even while insisting that his criticism of them be kept secret from the public. This is wrong in every way.

Mr. Johnson's claim that Judiciary Law Section 90(10) somehow bars a lawyer from making public a grievance that he or she has filed with the Grievance Committee is preposterous. Needless to say, the law professors sought legal counsel before publishing their complaints, both from this firm and from Professor Stephen Gillers of NYU Law School, one of the nation's leading experts on professional ethics. There is no basis for Mr. Johnson's objection. We could not identify a single instance of a lawyer being disciplined for publishing a complaint that he or

12811275

**JA100**

she has filed – and Mr. Johnson cites none.  Indeed, the First Amendment plainly bars sanctioning the professors for their exercise of protected speech.

Examples abound of distinguished members of the bar publishing grievance complaints that they have filed.  Most recently, complaints have been filed, and well publicized, concerning the activities of the former Mayor of New York City, Rudolph Giuliani.  For instance, Lawyers Defending American Democracy filed and published an ethics complaint against Mr. Giuliani, with a list of over 3000 signers.  The list is a Who's Who of leaders of the American bar, including retired federal and state judges, former federal and state prosecutors, past presidents of the American Bar Association, and the like.  Particularly relevant here, the signers included 20 retired New York State judges and seven former lawyers or members of New York State Grievance Committees.[1]  The New York City Bar Association has endorsed the importance of pubic dissemination of this and similar complaints against Mr. Giuliani.  It stated, "The Association believes that it is important for the public to understand the basis for the disciplinary complaints that have been filed, and the disciplinary process that will be followed in connection with those complaints."[2]

We are aware of no complaints about public disclosure of the complaints against Mr. Giuliani.  In particular, to our knowledge, the City of New York Law Department and Mr. Johnson seemingly have had no problems with publication of these complaints, even though Mr. Giuliani, like the prosecutors about whom the professors have complained, is a former member of New York City government and, indeed, a former prosecutor.  Why have our complaints prompted this response?  And why does Mr. Johnson wish to keep his letter secret?

The answer may lie in the Corporation Counsel's attempt to draw attention away from the plague of unchecked prosecutorial misconduct that has diminished public confidence in the justice system.  As the professors explain in their grievances:

> "[M]isconduct by prosecutors remains widespread and unchecked in the New York criminal legal system. A 2013 analysis of ten years of state and federal decisions revealed more than two dozen instances in which judges reversed convictions explicitly because of prosecutorial misconduct. Yet these appellate courts 'did not routinely refer prosecutors for investigation by the state disciplinary committees,' and the disciplinary committees 'almost never took serious action against prosecutors.  In the 30 cases where judges overturned convictions based on prosecutorial misconduct, only one prosecutor was publicly disciplined by a New York disciplinary

---

[1] https://ldad.org/letters-briefs/ldad-files-grievance-against-giuliani

[2] https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/grievance-complaints-filed-against-rudolph-giuliani

2

committee. None of the other implicated prosecutors were disbarred, suspended or publicly censured and, according to personnel records gathered by ProPublica, several prosecutors were promoted and given raises soon after courts cited them for abuses."

Efforts by New York State to address this pervasive problem have been met with vigorous opposition by State District Attorneys. Beginning in 2018, New York State has attempted to enact the first-in-the-nation State Commission on Prosecutorial Conduct. That reform effort has been met with unrelenting opposition from the District Attorney Association of New York, which filed suit immediately after the law was first enacted. In response to the lawsuit, the State amended the law, and the District Attorneys sued again. They won an order invalidating the new law in January 2020. Just a few days ago, the Governor signed into law a third effort to gain some statewide oversight over prosecutorial misconduct.[3] More litigation may well be expected. Opponents of the Commission have argued that the solution is not a State Commission, but rather more of the same – for "grievance committees [to] focus more carefully on prosecutors in appropriate cases."[4]

The work of the professors under the sponsorship of the Civil Rights Corps and their submission to the Grievance Committee is a response to this sorry state of affairs and it is undeniably in the public interest. For example, one of the professors' complaints is against Charles Testagrossa, a former ADA whose prosecutorial misconduct led to the wrongful conviction and imprisonment of three defendants for 24 years.[5] In March 2021, Mr. Testagrossa's misconduct was confirmed and the convictions were reversed. The presiding judge concluded that Mr. Testagrossa – who was still a prosecutor 24 years later – had lied to the court in defending his conduct. The judge stated, "This was, in short, not a good-faith misstatement; it was a deliberate falsehood"[6] Ironically, the charges against the three men

---

[3] https://www.governor.ny.gov/news/governor-cuomo-signs-legislation-bolstering-commission-prosecutorial-conduct. *See generally* http://cardozolawreview.com/the-new-york-prosecutorial-conduct-commission-and-the-dawn-of-a-new-era-of-reform-for-prosecutors/

[4] Daniel R. Alonso, *Prosecutorial Conduct Commission Statute and Chapter Amendment Bill: Part I,* New York Law Journal (January 25, 2019 2:30PM), *available at* https://www.law.com/newyorklawjournal/2019/01/25/ prosecutorialconduct-commission-statute-and-chapter-amendment-bill-parti/?slretum=20190028145414.

[5] https://accountabilityny.org/wp-content/uploads/2021/05/Testagrossa-Grievance.pdf

[6] https://queenseagle.com/all/queens-judge-says-top-prosecutor-lied-to-convict-in-wrongful-death-penalty-case

3

12811275

based on Mr. Testagrossa's misconduct were dropped two days after Mr. Johnson sent his June 2, 2021 letter.[7]

The law professors' complaint against Mr. Testagrossa seeks to ensure that – having gotten away with egregious misconduct for decades – he is finally fully investigated and, if the facts warrant, properly disciplined. Mr. Johnson should be joining in demands that the suitability of Mr. Testagrossa and the other accused prosecutors to practice law be thoroughly investigated, not opposing that inquiry. In any event, like the complaints against Mr. Giuliani, it is in the public interest for the concerned citizens to understand the basis of the professors' grievance complaints. As the New York Court of Appeals has observed, "[t]he proper frame of reference, of course, is the protection of the public interest, for while a disciplinary proceeding has aspects of the imposition of punishment on the attorney charged, its primary focus must be on protection of the public." *Levy v. Ass 'n of the Bar,* 37 N.Y.2d 279, 282 (1975) (internal quotation marks omitted). The sunlight of public disclosure is the best disinfectant. That is what the professors seek.

We can dispose briefly of Mr. Johnson's legal arguments about the complaints. Mr. Johnson cites no authority – either from a court or from a grievance committee – finding that it is improper for a complainant to publicize his or her complaint. Indeed, the language of Section 90(10) is directed only to the investigation that occurs "upon," *i.e.*, after, the filing of a complaint, not the complaint itself. When the facts complained about are both public and of public interest, there is no reason to keep them secret just because they are contained in a complaint filed with a grievance committee rather than an op-ed article or a complaint filed in court.

As a result, there is no interest in privacy here. Complainants are offered privacy in order to encourage them to come forward, "removing a possible disincentive to the filing of complaints of professional misconduct." *Matter of Johnson Newspaper Corp. v. Melino,* 77 N.Y.2d 1, 10-11 (N.Y. 1990). This principle has no application where the complaining law professors choose to make their complaints public and thus waive any claim to confidentiality. Meanwhile, the accused is accorded privacy only to protect his or her reputation from potentially unfounded grievances. But that principle has no application where the facts on which the complaints are founded are already public. The professors' complaint about Mr. Testagrossa, for instance, adds nothing to the public record regarding his misconduct. Instead, it seeks only appropriate discipline.

Indeed, any other result would violate the First Amendment rights of the professors to publicize their legitimate grievances. While no New York court has directly addressed this issue,

---

[7] https://www.nbcnewyork.com/news/local/charges-dropped-against-men-jailed-for-1996-double-murder-in-queens/3091770/

4

12811275

**JA103**

other courts that have considered the question have held that protecting the reputations of attorneys is not a sufficient reason to prohibit complainants from disclosing truthful complaints. *See In re Warner*, 2005-1303 (La. 4/17/09), 21 So. 3d 218, 256 (2009) ("While protecting the reputations of ethical attorneys is clearly an important interest, as we interpret the jurisprudence of the Supreme Court, this interest does not qualify as compelling" enough to impose confidentiality requirements on complainants); *Doe v. Supreme Court of Fla.*, 734 F. Supp. 981, 985-86 (S.D. Fla. 1990) ("[P]rotecting the reputation of an individual [attorney], or indeed the profession as a whole, would be insufficient justification for absolutely barring the dissemination" of truthful disciplinary complaints); *R.M. v. Supreme Court*, 185 N.J. 208, 227, 883 A.2d 369, 381 (NJ 2005) ("Protecting the reputations of attorneys and the bar does not justify restricting a grievant's speech" concerning the fact that he/she filed a grievance and the content of the grievance); *In re Petition of Brooks*, 140 N.H. 813, 678 A.2d 140 (1996) (reputational interests of attorneys not sufficient reason to prohibit a complainant from "disclos[ing] the fact that he filed the [attorney] complaints and information learned through interaction with the committee, and [from stating] his opinion on [the committee's] handling of the complaints.").

In short, there is no basis in Section 90(10) or in the First Amendment for objecting to the professors' right to publish their complaints about prosecutorial misconduct. To the contrary, the public interest strongly supports their disclosure.

While there is no merit to Mr. Johnson's letter, it is extremely concerning that it was submitted by the highest-ranking legal officer in New York City. Mr. Johnson purports to agree that public prosecutors should "operate at the highest level of integrity." But he then distorts what the professors have done, claiming that they are not "complaints of *individual* professional misconduct" – his italics – when that is exactly what they are. Each complaint contains detailed allegations involving individual prosecutors and individual instances of misconduct. As such, they are plainly within the competence of the Grievance Committee to investigate and adjudicate. The fact that there are 21 separate complaints is a reflection only on the state of public justice in Queens, not a reason to disregard the complaints *en masse*. Indeed, Mr. Johnson does not assert that any one of the complaints is without basis.

Rather than grappling with the individual merits of any complaint, Mr. Johnson proclaims, that he is "taking no position on the substance of the allegations involving the individual ADAs." In fact, it is difficult to read his letter as anything other than a request that the Grievance Committee group the complaints together and dismiss them all out of hand—without even considering the merits of any of them—because they are, supposedly, "harmful to the profession and the process and should not be countenanced." Why is the highest legal official in New York City government insisting that well-founded complaints against his prosecutors be ignored? Why isn't he investigating them himself? Indeed, it is the attempt to stifle ethical

5

12811275

complaints against wayward prosecutors, and the failure to check prosecutorial misconduct, that harm the legal profession and the legitimacy of the legal system.

And, perhaps most troubling of all, Mr. Johnson insists that his letter be kept secret. On the merits, that is baseless. New York law plainly permits those accused of misconduct to make the allegations against them public, if they so choose. *See, e.g.*, *In re Capoccia*, 59 N.Y.2d 549, 554 (1983); *In re Aretakis,* 16 A.D.3d 899, 900-901 (3d Dep't 2005). But it is worse than that. Mr. Johnson has nothing at all to say about the merits of any complaints – and that is the only conceivable reason for any secrecy in the disciplinary process. Instead, he insists that his threats against the professors and his effort to thwart the disciplinary process be kept a secret from the voters of New York City, even while a contested race for District Attorney in Manhattan is underway.

We ask you to ignore Mr. Johnson's letter. He is not a participant in the grievance process; he is neither an accuser nor an accused; he has the ability to investigate and opine on the merits of the complaints, but he disclaims any obligation to do so; and he wants to keep his spurious allegations secret. His letter is completely out of place.

More important, we ask you to take seriously and investigate each individual grievance filed by the professors. Mr. Johnson seems to think that the complaints are inappropriate because they are based on public information and are, in his crabbed view of the ethics rules, somehow inconsistent with the obligation to report attorney misconduct under Rule 8.3 of the New York Rules of Professional Conduct. To the contrary, as the New York State Bar Association has made clear, "a lawyer is always free to report evidence of what may constitute improper conduct by another attorney," even without "actual proof of misconduct." All that is needed is "a good faith belief or suspicion that misconduct has been committed."[8] Similarly, Simon's New York Code of Professional Responsibility Annotated advises that "a lawyer may report another lawyer based on rumor, suspicion, or hearsay, and may report activities raising less-than-substantial questions about a lawyer's fitness as a lawyer."[9]

---

[8] N.Y.S. Bar Assoc. Ethics Op. 635 at 4, citing Op. 480.

[9] Simon's New York Code of Professional Responsibility Annotated 77 (2008 ed.)

6

12811275

**JA105**

The grievances filed by the professors are not based on rumor, suspicion on hearsay and they raise substantial questions about the accused prosecutors' fitness to act as a lawyer. The filed grievances give this Committee an opportunity to demonstrate to the public a serious commitment to enforce the ethics rules against New York State prosecutors. We ask you to silence the critics and act on the complaints.

Very truly yours,

*/s/ Gregory Diskant*

Gregory Diskant

cc:    Georgia Pestana, Acting Corporation Counsel

7

12811275

**JA106**

# EXHIBIT 4

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 22, 2021

Gregory Diskant
(212) 336-2710
gldiskant@pbwt.com

Georgia Pestana
Acting Corporation Counsel
The City of New York
100 Church Street
New York, N.Y. 10007

Re:    June 2, 2021 Letter of James E. Johnson

Dear Ms. Pestana,

I write on behalf of law professors Daniel Medwed, Cynthia Godsoe, Abbe Smith, Nicole Smith Futrell and Steven Zeidman ("the professors") in response to the June 2, 2021, letter from the former Corporation Counsel, James E. Johnson, to multiple Grievance Committees in New York. Under the sponsorship of a civil rights organization, the Civil Rights Corps, and in collaboration with other concerned citizens, the professors have undertaken an important project to address the plague of prosecutorial misconduct in the State of New York. As part of that project, they carefully reviewed public records of alleged prosecutorial misconduct and prepared and submitted grievance complaints about prosecutors whose activities they believed warranted investigation and possible discipline. Because the professors believed the public should be informed about the misconduct documented in their complaints, they published their complaints on the Accountability NY website. In the first round of their work, they submitted 21 complaints about the actions of prosecutors in Queens County.

In response to the professors' public-spirited activities, Mr. Johnson wrote a threatening letter to each Grievance Committee that had received one of the 21 complaints. Because you may not have seen Mr. Johnson's letter, I am enclosing a copy of a sample (they are all the same) along with my response. In wholly inappropriate and hyperbolic language, Mr. Johnson alleged that the complaints themselves were improper and their publication was also improper. He suggested that filing 21 well-documented complaints was "abusive and wrong," somehow "an abuse of the grievance process." He further alleged that by making the complaints public, the professors violated Section 90(10) of the Judiciary Law, even though they did not make public any facts that were not already in the public domain. He said that all of this was "contrary to both the law and the principles on which the grievance process is based." He threatened that if the professors continue to file and publish complaints against other prosecutors, he would feel "compelled" to send a similar threatening letter to other disciplinary committees. He emphasized that his letter reflected only his position "at this juncture", leaving unstated what future actions he might be contemplating against the professors. He asked the Grievance Committees to consider his letter as they reviewed the professors' complaints, leaving unstated what punitive action he thought the Committee should take, but essentially inviting the opening of disciplinary

12831560

**JA108**

investigations of the professors.  And he incredibly insisted that the law professors were required by law to keep his threats secret.

It takes only a moment's reflection to recognize that Mr. Johnson's intimidating letter, under color of state law, is a direct attack on the First Amendment rights of the professors.  The First Amendment permits the professors to file as many complaints against wrongdoing as the public record supports (and the well of documented prosecutorial misconduct is sadly bottomless).  The First Amendment also protects their right to publish complaints based on publicly available facts so that the public at large can be apprised of the many problems in our system of justice.  And the First Amendment protects their right to publish Mr. Johnson's letter so that the public can be apprised of the City's misguided effort to squelch public debate on this important subject.  Nothing in New York law is, or can be, to the contrary.

Mr. Johnson's letter is an embarrassment, not only for its misguided attacks on the professors for their lawful exercise of their First Amendment rights, but also for its suggestion that the Grievance Committees dismiss out of hand well-founded complaints of serious misconduct by prosecutors operating in New York City.  It cannot possibly represent the position of the City of New York, let alone the five District Attorneys and the Special Narcotics Prosecutor, all of whom he implausibly claims share his views.  We ask that you repudiate his letter in writing no later than July 6, 2021.  If you fail to do so, we will be forced to consider other options.

Very truly yours,

*/s/ Gregory Diskant*

Gregory Diskant

Enclosures

2

12831560

**JA109**

Case 1:21-cv-09128-VM-VF     Document 59-5     Filed 01/25/22     Page 1 of 3

# EXHIBIT 5



**GEORGIA M. PESTANA**
*Acting Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007-2601

(212) 356-0800
FAX: (212) 356-0809
gpestana@law.nyc.gov

July 8, 2021

*Via email to ad2-grv2@nycourts.gov*

Grievance Committee for the
Second, Eleventh & Thirteenth Judicial Districts
Renaissance Plaza
335 Adams Street, Suite 2400
Brooklyn, New York 11201

**Re: May 3, 2021 Grievance Complaints Filed Against Current and Former
Queens County Assistant District Attorneys**

| | |
|---|---|
| **Kenneth Appelbaum, State Bar No. 2047603** | **John Kosinski, State Bar No. 2452084** |
| **Therese Lendino, State Bar No. 1876329** | **Patrick O'Connor, State Bar No. 2777316** |
| **Franchesca Basso, State Bar No. 4492708** | **Nicole Aloise, State Bar No. 4682571** |
| **Rachel Butcher, State Bar No. 2929941** | **Rosemary Chao, State Bar No. 3988425** |
| **George Kanellopopulos, State Bar No. 4472197** | **Brad Leventhal, State Bar No. 2235547** |
| **Eugene Reibstein, State Bar No. 1299213** | **Timothy Shortt, State Bar No. 4776134** |
| **Jesse Sligh, State Bar No. 2220275** | **Denise Tirino, State Bar No. 2165249** |

Dear Grievance Committee Members:

I write to briefly address misrepresentations in attorney Gregory Diskant's June 22, 2021 letter, which was sent in response to former Corporation Counsel James E. Johnson's June 2, 2021 letter to this Committee regarding the above-referenced complaints filed by Mr. Diskant's clients in early May.

Mr. Diskant goes to great lengths to characterize the Corporation Counsel's June 2, 2021 letter as arguing that complainants are barred from making their grievance letters public. To the contrary, our letter is concerned with respecting the *process*, not with complainants' decision to publicly disclose their complaints.[1] Our core issue is how the

---

[1] While complainants have chosen to disclose their own correspondence with the Committee, subsequent records filed with the Committee by the Law Department and others regarding these grievance letters are

complainants are using the confidential grievance process to wage a public campaign for prosecutorial reform. Our letter outlined the various steps the complainants have taken and documented on their website, which depart from the standard grievance process.[2] As stated in our June 2 letter, the grievance process is not the proper forum to address the policy reforms sought by the complainants nor is it appropriate to try to use an otherwise confidential process to advance law and policy changes. Although there are certainly arguments in favor of opening the attorney grievance process to the public, and there have been attempts to do so, the Legislature has not acted on these proposed amendments.[3] Until the law is changed, attorney grievance proceedings, despite the complainants' desires and efforts to involve the public in these proceedings, remain confidential in New York.

Further, our letter did not, as Mr. Diskant improperly suggests, "request that the Grievance Committee group the complaints together and dismiss them all out of hand– without even considering the merits of any of them." Rather, the letter simply provided the Committee with additional information regarding the campaign around these and related grievances so the Committee could consider this context. As Mr. Diskant himself acknowledges, we have taken no position on the merits of the allegations. We have and always will fully support anyone's right to file a grievance against an attorney where they believe the attorney has engaged in misconduct. We likewise fully support everyone's right to seek reform. However, we must also respect the purpose and confidentiality of the grievance process.

Sincerely,

Georgia M. Pestana
Acting Corporation Counsel

cc:    Gregory Diskant, Esq., Counsel for Complainants

---

confidential under the Judiciary Law. *Johnson Newspaper Corp. v. Melino*, 77 N.Y.2d 1 (1990) ("Section 90 (10) of the Judiciary Law requires that all papers, records, and documents relating to attorney disciplinary matters be deemed confidential unless either the charges of misconduct are sustained or the Justices of the Appellate Division, upon a showing of good cause, decide to make these materials public"). As such, it is not that "Mr. Johnson wish[es] to keep his letter secret," as Mr. Diskant erroneously states. Rather, our office wishes to act in a manner that is consistent with both the law and long-standing policy. Mr. Diskant is correct that New York law does allow for this confidentiality to be lifted when the attorneys who are the subject of the grievance letters so request, but until such waivers are requested and granted here, the law deems the Law Department's correspondence confidential.

[2] *See generally* https://accountabilityny.org. For example, complainants' website assists members of the public with creating automated emails to the Committee containing three generic sentences asking the Committee to "hold prosecutors publicly accountable when they violate the rights of New Yorkers." Unlike actual attorney grievances, these emails do not identify any attorney or any alleged misconduct, but merely express a policy position about accountability (see https://accountabilityny.org/complaints/).

[3] *See* http://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf.

# EXHIBIT 6

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 30, 2021

Gregory Diskant
(212) 336-2710
gldiskant@pbwt.com

**VIA EMAIL & FED EX**

Diana Maxfield Kearse
Chief Counsel
Grievance Committee for the
Second, Eleventh & Thirteenth Judicial Districts
Renaissance Plaza
335 Adams Street, Suite 2400
Brooklyn, New York 11201-3745

> Re:    **May 3, 2021 Grievance Complaints Filed**
> **Against Current and Former Queens**
> **County Assistant District Attorneys**

Dear Ms. Kearse:

This firm represents law professors Daniel Medwed, Cynthia Godsoe, Abbe Smith, Nicole Smith Futrell, and Steven Zeidman ("the professors").  The professors have filed well-documented complaints with the Grievance Committee alleging serious ethical violations by 21 current and former New York prosecutors.  We write in response to your June 11, 2021 letter to the professors, which we find troubling for the reasons set forth below.  Notwithstanding your letter, we expect the professors' complaints to be investigated by you and the Committee, as required by New York law.  In addition, and notwithstanding your letter, we expect the professors to be accorded the rights of complainants, as also required by New York law.

Your letter appears to be a direct response to the letter of June 2, 2021 from James E. Johnson, which argued that the law professors' complaints are "an abuse of the grievance process" and "should not be countenanced," supposedly because they were filed simultaneously and subsequently published.  Using his authority as Corporation Counsel of The City of New York, Mr. Johnson asked the Committee to take action against the professors' complaints, in effect to reject them out of hand, because they were filed as part of a "very public campaign involving multiple grievances sent *en masse* to four different committees."  Of course, every action taken by the professors in filing and publicizing their complaints was protected by the First Amendment, in accord with Judiciary Law 90(10) and upon advice of counsel.  Moreover, the professors' public campaign is very much in the public interest, as the State's repeated failure to discipline New York prosecutors even for flagrant misconduct has reached epidemic proportions.  We explained all of that in a letter to your Committee, dated June 22, 2021, in response to Mr. Johnson's letter.  Nonetheless, your letter suggests that, at the urging of Mr.

12851952

**JA114**

Diana Maxfield Kearse
June 30, 2021

Johnson, the Committee is rejecting the complaints and taking action against the professors for the exercise of their First Amendment rights.

Your letter raises multiple subjects of concern.

Initially, your letter states that the professors' complaints have been transferred to this Grievance Committee, despite the fact that some of the complaints were addressed to other Grievance Committees.  Of course, the complaints were all properly filed "in the Judicial Department encompassing [each] respondent's registration address on file with the Office of Court Administration."  22 NYCRR 1240.7(a)(2).  Nevertheless, we understand that a Committee "may transfer a complaint or proceeding to another Department or Committee as justice may require."  *Id.*

We do not have any objection to the transfers, in and of themselves.  But we fear that the transfers may be a prelude to what appears to be a pre-determined decision to reject the complaints *en masse* without considering their merits, as Mr. Johnson requested.  Each complaint is separate and carefully details a specific set of facts, typically as found by a court, and analyzes those facts against the standards of the New York Rules of Professional Conduct.  They cannot, and should not, be considered together merely because they share the same complainants.  They cannot be rejected out of hand.  Under the law, the Committee is obliged to consider each complaint separately on its own merits.

More troubling, your letter suggests that the Committee has already decided to disregard the complaints themselves and, in the process, to deprive the professors of their rights as complainants, seemingly in response to the professors' exercise of their First Amendment rights to bring their complaints to the attention of the Committee and the public.  It does so by an intentional distortion of language.  There is a difference between, on the one hand, responding to a complaint that was actually filed and, on the other hand, acting *sua sponte* in the absence of a complaint.  Your letter conflates the two.  Your letter claims that, because the complaints are based on public sources (a point that Mr. Johnson emphasizes), "any investigations into these allegations would be initiated by the Grievance Committee, *sua sponte.*"  You add that this "does not constitute confirmation as to whether any investigations will or will not be pursued."  Quite simply, your letter denies any obligation to investigate the complaints that the professors actually filed because they are based on the public record.

Your letter cites nothing for the proposition that complaints based on the public record should not be treated as complaints, but rather should be investigated *sua sponte*, if at all.  The most common instances of *sua sponte* investigations are where the Committee *expands* the scope of a previously filed complaint on its own initiative, but those common examples do not somehow vitiate the previously-filed complaint(s).  S*ee, e.g., In re Mays*, 132 A.D.3d 241, 243 (2d Dep't 2015); *In re Reid*, 149 A.D.3d 114, 115 (1ˢᵗ Dep't 2017).  It is contrary to New York

2

12851952

**JA115**

Diana Maxfield Kearse
June 30, 2021

law simply to refuse to investigate a complaint because the Committee might, or might not, someday undertake an investigation into the same conduct based on its own initiative.

The New York rules are drafted to define a complainant as "a person or entity that submits a complaint to a Committee." 22 NYCRR 1240.2(e). That certainly includes the professors and the complaints they submitted. There is nothing in the definition of complainant that excludes those who make complaints based on the public record. Quite the opposite, the New York Rules of Professional Conduct 8.3(a) provide that a lawyer is obliged to report actions of another lawyer that "raise[] a substantial question as to that lawyer's honesty, trustworthiness or fitness," with no exception for actions that occur in public. N.Y. Rules, Rule 8.3(a). More broadly, and consistent with New York law, standard authorities state that "a lawyer is always free to report evidence of what may constitute improper conduct by another attorney," without any exception for events that occur in public.[1] Most recently, the First Department disciplined Rudolph Giuliani based on "numerous complaints of [Mr. Giuliani's] alleged professional misconduct," all based on the public record. *Matter of Giuliani*, No. 2021-00491, 2021 WL 2583536, at *1 (1st Dep't June 24, 2021). Like the complaints filed against Mr. Giuliani, the professors' complaints constitute grievance complaints in every sense of the word. And the professors are surely complainants.

Indeed, as invited by the rules, the professors' complaints reflect a very substantial amount of work. The professors reviewed the public record and assembled the facts, which they marshalled for the convenience of the Committee. They also analyzed the relevant law and marshalled that as well. Given the large amount of information available on the public record and the limited resources of the Committee, it is disingenuous to suggest, as your letter does, that public record misconduct is investigated only *sua sponte* and not in response to complaints. Whether the Committee "would," in other circumstances, initiate an investigation *sua sponte* has nothing to do with the fact that here it has been presented with actual complaints written by actual complainants alleging actual well-documented violations of professional standards. The uncertainty about whether the Committee will initiate investigations into these 21 prosecutors is particularly troubling, as despite strong evidence of pervasive prosecutorial misconduct existing throughout the state, none of the prosecutors named in the complaints have yet been disciplined, at least so far as the public record reveals. The Committee has no right to ignore the professors' complaints and, if they are considered (as they must be), then the Committee is not acting *sua sponte*, but rather in response to the complaints.

We remain hopeful that, notwithstanding your letter, the Committee will review the professors' complaints individually on the merits, as the law requires, and that the Committee

---

[1] N.Y.S. Bar Assoc. Ethics Op. 635 at 4, citing Op. 480; *see also* Simon's New York Code of Professional Responsibility Annotated 77 (2008 ed.) ("[A] lawyer may report another lawyer based on rumor, suspicion, or hearsay, and may report activities raising less-than-substantial questions about a lawyer's fitness as a lawyer.").

3

12851952

**JA116**

Diana Maxfield Kearse
June 30, 2021

will undertake a full investigation.  Whatever the Committee chooses to do, however, the law does not permit it to decline to provide information to the professors about the disposition of their complaints.  Complainants are entitled to certain rights and information under the law.  This includes notification of the disposition of the matter, the ability to challenge that disposition, and notification of the outcome of the challenge.  22 NYCRR § 1240.7(d), (e).  The professors can hardly exercise their right to seek review of a decision declining an investigation, as permitted by Section 1240.7(e)(3), if they are not advised of such a decision.  It will not do to contend that Section 90(10) of the Judiciary Law somehow provides otherwise.

*       *       *

There is no basis for the Committee, acting under color of state law, to deny the professors' complaints on the grounds that they are based on public information and to deny the professors information about their complaints under the pretext that any investigation is supposedly *sua sponte*.  These illegal actions are bad enough, but they are all the worse when the Committee takes them following a demand from the Corporation Counsel of the City of New York that the Committee take action against the professors for their exercise of First Amendment rights.  We request that the Committee affirm by July 9, 2021 that (1) the individual complaints filed by the professors will be considered separately on the merits based on their unique facts; and (2) the professors will be properly considered complainants and afforded all of the rights of complainants under the New York rules.

Very truly yours,

*s/ Gregory Diskant*

Gregory Diskant

4

12851952

**JA117**

# EXHIBIT 7



**ANDREA E. BONINA, ESQ.**
Chair

*State of New York*
*Grievance Committee for the*
*Second, Eleventh and*
*Thirteenth Judicial Districts*

Renaissance Plaza
335 Adams Street – Suite 2400
Brooklyn, New York 11201-3745
(718) 923-6300

DIANA MAXFIELD KEARSE
Chief Counsel

MARK F. DEWAN
Deputy Chief Counsel

SUSAN KORENBERG
SUSAN B. MASTER
KATHRYN DONNELLY
THOMAS GRAHAM AMON
SASHA N. HOLGUIN
DAVID W. CHANDLER
SARA MUSTAFA
THOMAS J. MURPHY
Staff Counsel

July 26, 2021

**FIRST CLASS MAIL & EMAIL**
**PERSONAL & CONFIDENTIAL**
Gregory Diskant, Esq.
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY 10036-6710
gldiskant@pbwt.com

Dear Mr. Diskant:

This is in response to your letter of June 30, 2021, concerning the Committee's letter of June 11, 2021, to your clients, law professors Daniel Medwed, Cynthia Godsoe, Abbe Smith, Nicole Smith Futrell and Steven Zeidman. Contrary to your assertions, the procedure outlined in said letter regarding complaints filed against attorneys based upon public records, comports with the Rules for Attorney Disciplinary Matters and the long-standing policy of the Appellate Division, Second Judicial Department.

Furthermore, we can assure you and your clients that all complaints filed with this Committee, whether opened *sua sponte* or not, are thoroughly and carefully evaluated on their own merit.

Very truly yours,

Diana Maxfield Kearse
Chief Counsel

DMK/vm

**JA119**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

CIVIL RIGHTS CORPS, CYNTHIA GODSOE,
NICOLE SMITH FUTRELL, DANIEL S.
MEDWED, JUSTIN MURRAY, ABBE SMITH,
AND STEVEN ZEIDMAN,

                              Plaintiffs,

v.

GEORGIA PESTANA, Corporation Counsel of the
City of New York, in her official and personal
capacity; MELINDA KATZ, the District Attorney
for Queens County, in her official and personal
capacity; ANDREA E. BONINA, Chair of the State
of New York Grievance Committee for the Second,
Eleventh, and Thirteenth Judicial Districts, in her
official and personal capacity; DIANA MAXFIELD
KEARSE, Chief Counsel of the State of New York
Grievance Committee for the Second, Eleventh, and
Thirteenth Judicial Districts, in her official and
personal capacity; and HECTOR D. LASALLE,
Presiding Justice of the Second Judicial Department
of the Appellate Division of the Supreme Court of
the State of New York, in his official capacity,

                              Defendants.

------------------------------------------------------------------------------- x

**CITY DEFENDANTS'
RESPONSES AND
OBJECTIONS TO
PLAINTIFFS' STATEMENT
OF UNDISPUTED FACTS
PURSUANT TO LOCAL
CIVIL RULE 56.1**

Docket No. 21 Civ. 9128 (VM)

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, defendants Georgia Pestana and Melinda Katz respond and object to Plaintiffs' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 as follows:

1. To bring attention to New York's pervasive failure to discipline prosecutors for misconduct, and with the support from the CRC, on May 3, 2021, the Law Professors filed 21 discrete complaints pursuant to New York Judiciary Law §

**JA120**

90(10) against individual attorneys currently or formerly employed by the Queens District Attorney's Office for misconduct committed while working as an assistant district attorney. (Ex. 1).

**CITY DEFENDANTS' RESPONSE:** Admit that the Law Professor plaintiffs filed 21 complaints pursuant to New York Judiciary Law § 90(10) against individual attorneys currently or formerly employed by the Queens District Attorney's Office alleging professional misconduct. The cited evidence does not support the factual assertion that the targets of these complaints committed professional misconduct.

2. At the same time, Plaintiffs created a website, AccountabilityNY.org, and posted the full text of their complaints to bring public attention to the issue. Accountability NY, https://accountabilityny.org/ (last visited Feb. 18, 2022).

**CITY DEFENDANTS' RESPONSE:** Admit that Plaintiffs created a website, AccountabilityNY.org, and posted the full text of their complaints. Plaintiffs' assertion that their intent in creating this website was "to bring public attention to the issue" is an unsupported inference.

3. Each complaint carefully relied on judicial findings that the subject attorney had committed professional misconduct during the course of a criminal prosecution. (Ex. 1, at 13-15).

**CITY DEFENDANTS' RESPONSE:** Admit that the complaints were not based on any first-hand knowledge of the Law Professor plaintiffs, but rather sought to relay information the Law Professor plaintiffs obtained from third-party sources. The cited evidence does not support the factual inferences that the decisions found "professional misconduct" or that the Law Professor plaintiffs were "careful" in reviewing those sources.

-2-

4. The Law Professors requested that the grievance committees investigate and discipline each attorney and that they do so publicly. (Id.).

**CITY DEFENDANTS' RESPONSE:** Admit.

5. According to public records maintained by the New York State Unified Court System, at the time the grievance complaints were filed none of the accused prosecutors had ever been publicly disciplined. (Ex. 1, at 2 n. 11).

**CITY DEFENDANTS' RESPONSE:** Admit.

6. The Law Professors' complaint against Jesse Sligh is representative of the complaints. (Ex. 1).

**CITY DEFENDANTS RESPONSE:** This paragraph does not contain a factual assertion and is immaterial to the claims against the City defendants.

7. In 1988, Sligh prosecuted and obtained a conviction against Clinton Turner for first degree robbery. (Id. at 7).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

8. Turner maintained his innocence, but he was convicted and spent ten years in prison. (Id. at 1).

**CITY DEFENDANTS' RESPONSE:** Plaintiffs fail to support this assertion with admissible evidence in that they rely solely on inadmissible hearsay. City defendants further deny the materiality of this paragraph.

9. After obtaining parole, Turner discovered that his conviction was the result of pervasive misconduct by Sligh and sought habeas relief. (Id. at 9).

**JA122**

**CITY DEFENDANTS' RESPONSE:** Plaintiffs fail to support this assertion with admissible evidence in that they rely solely on inadmissible hearsay. City defendants further deny the materiality of this paragraph.

10. A federal court set aside the conviction, finding that Sligh's extensive Brady violations and the State's reliance on perjured testimony had deprived Turner of a fair trial. (Id.).

**CITY DEFENDANTS' RESPONSE:** Plaintiffs fail to support this assertion with admissible evidence in that they rely solely on inadmissible hearsay. Admit the conviction was set aside, but deny the materiality of this paragraph.

11. The Queens District Attorney declined to retry Turner. (Ex. 1).

**CITY DEFENDANTS' RESPONSE:** Plaintiffs fail to support this assertion with admissible evidence in that they rely solely on inadmissible hearsay. Admit the facts but deny the materiality of this paragraph.

12. When Turner later sued New York State, the state court "conclude[ed] that by clear and convincing evidence Clinton Turner [was] innocent of the crimes charged." Turner v. State, 36 N.Y.S.3d 50, 2015 WL 10015097, at *6 (N.Y. Ct. Cl. 2015).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

13. To date, so far as the public record reflects, Sligh has not been sanctioned for his misconduct, and he continues to practice law in New York State.

**CITY DEFENDANTS' RESPONSE:** Plaintiffs fail to cite to any admissible evidence for the facts stated herein. *See* Local Rule 56.1(d).

-4-

**JA123**

14. On June 2, 2021, James E. Johnson, then the Corporation Counsel for the City of New York, sent a letter to each grievance committee before which the Professors had filed their complaints. (Ex. 2).

**CITY DEFENDANTS' RESPONSE:** Admit.

15. The letter accused the Law Professors of violating "the law and the principles on which the grievance process is based"—in particular, Judiciary Law § 90(10)—because the Professors' complaints are part of a "public campaign." (Id. at 1).

**CITY DEFENDANTS' RESPONSE:** Plaintiffs have failed to cite admissible evidence to support the factual assertions contained therein. *See* Local Rule 56.1(d). To the extent that plaintiffs are alleging this letter was an accusation of unlawful conduct or misconduct on the part of the plaintiffs, such an inference is entirely improper and is contradicted by the cited evidence itself. This is an unreasonable and improperly unfavorable construction of the cited document that is contradicted by the contents of the document itself. The cited evidence makes clear that the purpose of the letter was to "provide broader context" to the complaints while expressing concern about whether the plaintiffs' conduct was consistent with the grievance process. In expressing these concerns, the letter makes clear that the Corporation Counsel both presumed "well-intentioned objectives" on the part of the Law Professor plaintiffs and explicitly took no position as to the merits of the complaints. *See* Exhibit 2.

16. Mr. Johnson wrote that "New York State Judiciary Law § 90(10) designates attorney disciplinary records—including the complaint—private and confidential." (Id. at 2).

-5-

**JA124**

**CITY DEFENDANTS' RESPONSE:** Admit that the Corporation Counsel accurately described the import of New York State Judiciary Law § 90(10).

17. Mr. Johnson never claimed to represent any party in the grievance process and his letter ended by taking no position on whether the prosecutors had engaged in misconduct. (Id. at 3).

**CITY DEFENDANTS' RESPONSE:** Admit that the Corporation Counsel did not represent any of the parties to the grievance process and that the Corporation Counsel took no position on the merits of the complaint.

18. He insisted nonetheless that the letter itself was "private and confidential under Judiciary Law 90(10)." (Id. at 3 n.4).

**CITY DEFENDANTS' RESPONSE:** The cited evidence does not support this statement. *See* Local Rule 56.1(d). The statement regarding confidentiality was a statement – and an accurate one – regarding the state of the law -- not something the Corporation Counsel was "insisting nonetheless."

19. On June 11, 2021, Defendant Diana Maxfield Kearse, Chief Counsel of the Grievance Committee wrote a letter to the Law Professors, seemingly in response to Mr. Johnson's letter. (Ex. 3).

**CITY DEFENDANTS' RESPONSE:** The cited evidence does not support any connection, "seemingly" or otherwise, between the two letters.

20. The letter explained that each of the 21 complaints had been transferred to her office and noted that the Law Professors' complaints were "based on information derived from public sources, specifically, court decisions and court records." (Id.).

**JA125**

**CITY DEFENDANTS' RESPONSE:** Admit.

21. As such, Ms. Kearse said any investigation would be conducted sua sponte, thus denying the Law Professors their statutory right to participate in the review process as "complainants." (Id.).

**CITY DEFENDANTS RESPONSE:** The legal conclusions contained in this paragraph are without merit and not matters for which a response is required under Local Rule 56.1.

22. This means that they will not receive the information—such as a decision to dismiss the complaint—to which complainants are entitled under the law. (Id.).

**CITY DEFENDANTS' RESPONSE:** The cited evidence does not support the facts contained in this paragraph.

23. Ms. Kearse did not cite any authority that justified depriving the Law Professors of their "complainant" status and rights. (Id.).

**CITY DEFENDANTS' RESPONSE:** The cited evidence does not support the facts contained in this paragraph.

24. Ms. Kearse also wrote that the committee's work would "remain confidential pursuant to New York State Judiciary Law § 90 unless [it] resulted in public discipline imposed by the Appellate Division." (Id.).

**CITY DEFENDANTS' RESPONSE:** Admit.

25. Ms. Kearse also labeled her letter itself as "Confidential." (Id.).

**CITY DEFENDANTS' RESPONSE:** Admit.

-7-

**JA126**

26. On June 22, 2021, Gregory Diskant, on behalf of the Law Professors, sent letters to the Grievance Committees in response to the Corporation Counsel's June 2, 2021 letter. (Ex. 4).

**CITY DEFENDANTS' RESPONSE:** Admit.

27. On June 22, 2021, Gregory Diskant, on behalf of the Law Professors, also sent a letter to the Corporation Counsel in response to the Corporation Counsel's June 2, 2021 letter. (Ex. 5).

**CITY DEFENDANTS' RESPONSE:** Admit.

28. On June 30, 2021, Gregory Diskant, on behalf of the Law Professors, sent a letter to Defendant Kearse, in response to her June 11, 2021 letter. (Ex. 6).

**CITY DEFENDANTS' RESPONSE:** Admit.

29. On July 8, 2021, Georgia M. Pestana, then the Acting Corporation Counsel, and today the Corporation Counsel wrote to the Grievance Committee for the Second, Eleventh & Thirteenth Judicial Districts, copying the Law Professors and Gregory Diskant. (Ex. 7).

**CITY DEFENDANTS' RESPONSE:** Admit.[1]

30. In the letter, again relying on Judiciary Law § 90(10), the letter claimed the Law Professors were improperly "using the confidential grievance process to wage a public campaign for prosecutorial reform." (Id. at 2).

**CITY DEFENDANTS' RESPONSE:** "Mr. Diskant [also counsel herein] goes to great lengths to characterize the Corporation Counsel's June 2, 2021 letter as arguing that complainants are

---

[1] Following service of plaintiff's Local Rule 56.1 statement, Georgia Pestana retired from City service and Hon. Sylvia Hinds-Radix thereafter became the Corporation Counsel. City defendants admit this statement because it is accurate insofar as "today" was referring to February 22, 2022.

barred from making their grievance letters public. **To the contrary**, our letter is concerned with respecting the *process* not the complainants' decision to publicly disclose their complaint." Exhibit 7 (bold added, italics in original). As this document itself makes quite clear, plaintiffs have failed to cite admissible evidence to support the factual assertions contained in this paragraph. *See* Local Rule 56.1(d).

31. Ms. Pestana also asserted that the confidentiality provisions of Judiciary Law § 90(10) applied to "subsequent records filed with the Committee by the Law Department and others regarding their grievance letters are confidential under the Judiciary Law." (Id. at 1 n.1).

**CITY DEFENDANTS' RESPONSE:** Admit.

32. Ms. Pestana also claimed the letter was confidential and could not be disclosed by the Professors. (Id.).

**CITY DEFENDANTS' RESPONSE:** Plaintiffs have failed to cite admissible evidence to support the factual assertions contained in this paragraph. *See* Local Rule 56.1(d). To the contrary, Pestana made clear in her July 8, 2021 letter, "It is not that 'Mr. Johnson wish[es] to keep his letter secret, as Mr. Diskant erroneously states. Rather, our office wishes to act in a manner that is consistent with both the law and long-standing policy." Exhibit 7.

33. On July 26, 2021, Ms. Kearse sent a letter to Gregory Diskant, in response to his June 30, 2021 letter. (Ex. 8).

**CITY DEFENDANTS' RESPONSE:** Admit.

34. In this letter, Ms. Kearse reaffirmed that the Grievance Committee would treat any investigation as based on public records, rather than one in which the

**JA128**

Case 1:21-cv-09128-VM-VF    Document 76    Filed 03/31/22    Page 10 of 16

Professors were complainants, and that this letter, also, was "Confidential." (Id.).

**CITY DEFENDANTS' RESPONSE:** Admit.

35. The law now known as Judiciary Law § 90(10) was first amended to include a confidentiality provision in 1945. (Ex. 9).

**CITY DEFENDANTS' RESPONSE:** Admit.

36. In a March 2, 1945 letter to the Counsel to the Governor, Presiding Justice Frederick P. Close of the Second Department wrote that "[t]he purpose of the bill is to seal from indiscriminate public view the confidential records in this court relating to attorneys and counselors at law." (Id. at 33 (emphasis added)).

**CITY DEFENDANTS' RESPONSE:** Admit.

37. Another proponent of the proposed confidentiality provision observed that it would protect the "intimate details of professional conduct in an essentially private relationship" between attorney and client. (Id. at 43).

**CITY DEFENDANTS' RESPONSE:** Admit.

38. That proponent also observed that that disciplinary records "usually involve the personal and the private professional conduct of a lawyer" and "are most frequently instituted by a client, whose personal feeling toward the lawyer is extremely bitter." (Id.).

**CITY DEFENDANTS' RESPONSE:** Admit.

-10-

**JA129**

39. Nowhere in the legislative history do the drafters of confidentiality provision address protecting prosecutors from complaints from (or on the behalf of) the wrongly accused. (See Ex. 9 (generally)).

**CITY DEFENDANTS RESPONSE:** This paragraph contains argument rather than factual matter. To the extent this paragraph is construed to contain factual matter, the cited evidence does not support it and the inference plaintiff seeks to draw is not in the light most favorable to the non-moving party, as is required on summary judgment.

40. In 2021, there were 185,076 active lawyers residing in New York. American Bar Association, ABA National Lawyer Population Survey, Lawyer Population by State, https://www.americanbar.org/content/dam/aba/administrative/market_research/2021-national-lawyer-population-survey.pdf (last visited Feb. 18, 2022).

**CITY DEFENDANTS' RESPONSE:** Admit the survey so found. Deny the materiality of this paragraph.

41. During 2016-2020, the attorney grievance committees across New York State disposed of 53,194 cases. (Exs. 10-15). The records do not reflect how many individual lawyers were the subjects of these different complaints. (Id.).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

42. In the Second Department, the grievance committee disposed of 22,343 cases in that five-year period. (Ex. 10 at 4, 6, 8; Ex. 11 at 4, 8, 12; Ex. 13 at 4, 8, 10; Ex. 13 at 82; Ex. 15 at 2, 8, 10).

-11-

**JA130**

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

43. Of the cases disposed of by the grievance committee, 169 cases ended with a letter of caution, which is not public; 1,816 cases ended with a letter of advisement, which is also not public; and 528 cases ended with a written admonition, again a private matter not made public. (Ex. 10 at 2, 4, 6, 8, 10, 12; Ex. 11 at 2, 4, 6, 8, 10, 12; Ex. 12 at 2, 4, 6, 8, 10, 12; Ex. 13 at 2, 4, 6, 8, 10; Ex. 15 at 2, 4, 13 ).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

44. In total, 11.2% of the cases disposed of by the Second Department's grievance committees ended with a private letter of caution, advisement, or admonition, all of which were secret. (Ex. 10 at 2, 4, 6, 8, 10, 12 Ex. 11 at 2, 4, 6, 8, 10, 12; Ex. 12 at 2, 4, 6, 8, 10, 12; Ex. 13 at 2, 4, 6, 8, 10; Ex. 15 at 2, 4, 13).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

45. During that same five-year period, the courts in the Second Department closed 1,303 cases referred by the grievance committee, with 159 public disbarments, 35 public disciplinary resignations, 235 public suspensions, and 46 public censures. (Ex. 10 at 3, 5, 7, 9. 11, 13; Ex. 11 at 3, 5, 7, 9, 11, 13; Ex. 12 at 3, 5, 7, 9, 11, 13; Ex. 13 at 3, 5, 7, 9, 11; Ex. 15 at 3, 5, 9, 14, 18, 25).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

-12-

**JA131**

46. These public sanctions total 475 cases—2.1% of the 22,343 cases resolved in that period, and far lower than the 11.2% that resulted in a private letter. (Ex. 10 at 3, 5, 7, 9. 11, 13; Ex. 11 at 3, 5, 7, 9, 11, 13; Ex. 12 at 3, 5, 7, 9, 11, 13; Ex. 13 at 3, 5, 7, 9, 11; Ex. 15 at 3, 5, 9, 14, 18, 25).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph and note that the finding that something is "far lower" is argument, not fact.

47. In total, in the Second Department, 98 percent of the complaints resolved by the grievance committees and the court are resolved in private and remain secret, and that secrecy continues forever. (Ex. 10 at 4-9; Ex. 11 at 4-5, 8-9, 12-13; Ex. 12 at 4-5, 8-11, ; Ex. 13 at 2-3, 8-11; Ex. 15 at 4-5, 22-28).

**CITY DEFENDANTS' RESPONSE:** The cited evidence does not support the factual contentions in this paragraph, in particular the claim that complaints "remain secret forever," and deny materiality of the facts in this paragraph.

48. On January 20, 2021, the organization Lawyers Defending American Democracy ("LDAD") filed a grievance complaint against Rudolph W. Giuliani, alleging multiple violations of provisions of the New York Rules of Professional Conduct against the former mayor while presenting former President Donald Trump and the Trump Campaign. Lawyers Defending American Democracy, Complaint against Rudolph W. Guiliani, https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-Complaint.pdf (last visited Feb. 18, 2022).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

-13-

**JA132**

49. After filing the complaint, LDAD published its complaint online. Lawyers Defending American Democracy, LDAD Collects 1000s of Signatures for Ethics Complaint Against Rudy Giuliani, https://ldad.org/letters-briefs/ldad-files-grievance-against-giuliani (last visited Feb. 18, 2022).

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this paragraph.

50. As of February 3, 2021, over 3,000 licensed attorneys co-signed the complaint, including former members of attorney grievance committees in New York State and "dozens of retired federal and state judges, two former Associate Deputy Attorneys General, seven past presidents of the American Bar Association, nearly 100 former federal prosecutors, and over 100 current and retired law professors from nearly every prominent law school in the country." Id.

**CITY DEFENDANTS' RESPONSE:** Admit the facts but deny the materiality of this

-14-

**JA133**

paragraph.

Dated:        New York, New York
              March 31, 2022

                                        **STEVEN STEIN CUSHMAN**
                                        Acting Corporation Counsel of the
                                          City of New York
                                        Attorney for City Defendants
                                        100 Church Street, Room 6-103
                                        New York, New York  10007
                                        (212) 356-2430
                                        eeichenh@law.nyc.gov

                                        By:    _____

                                               Eric Eichenholtz
                                               Assistant Corporation Counsel

TO:    Counsel of Record (by ECF)

**JA134**

Docket No. 21 Civ. 9128 (VM)

Case: 24-2251, 12/04/2024, DktEntry: 21.1, Page 143 of 290

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.,

                                        Plaintiffs,

v.

GEORGIA PESTANA, Corporation Counsel of the
City of New York, in her official and personal
capacity; et al.,

                                        Defendants.

**CITY DEFENDANTS' RESPONSES AND OBJECTIONS TO
PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS
PURSUANT TO LOCAL CIVIL RULE 56.1**

***STEVEN STEIN CUSHMAN***
*Acting Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Eric Eichenholtz*
*Tel:  (212) 356-2430*
*eeichenh@law.nyc.gov*

*Due and timely service is hereby admitted.*

*New York, N.Y.*  ...................................................................., *20......*

.........................................................................................., *Esq.*

*Attorney for*..................................................................................

**JA135**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.,

                    Plaintiffs,

v.                                                          Case No. 21 Civ. 9128 (VM)

GEORGIA PESTANA, et al.,                                    Hon. Victor Marrero

                    Defendants.

**RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS
UNDER LOCAL CIV. R. 56.1**

Pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the

Southern District of New York, Defendants Hector D. LaSalle and Andrea E. Bonina ("State

Defendants"), by and through their counsel, respond to the following statements Plaintiffs have

made in support of their motion for partial summary judgment ("Motion"). State Defendants

object to the statements to the extent that the statements are neither material nor relevant to the

Motion.

**RESPONSES TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

**A.    Plaintiffs Files Complaints Against Prosecutors Who Engaged in Misconduct[1]**

1.    To bring attention to New York's pervasive failure to discipline prosecutors for

misconduct, and with the support from the CRC, on May 3, 2021, the Law Professors filed 21

discrete complaints pursuant to New York Judiciary Law § 90(10) against individual attorneys

---

[1] State Defendants object to each and every header in Plaintiffs' 56.1 statement.

currently or formerly employed by the Queens District Attorney's Office for misconduct committed while working as an assistant district attorney.  (Ex. 1).[2]

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants cannot admit or dispute the intent of the Law Professors.

2.    At the same time, Plaintiffs created a website, AccountabilityNY.org, and posted the full text of their complaints to bring public attention to the issue.  Accountability NY, https://accountabilityny.org/ (last visited Feb. 18, 2022).

**Response**: State Defendants admit that https://accountabilityny.org/, last accessed March 24, 2022, exists and has the full text of the Law Professors' complaints currently posted. State Defendants cannot admit or dispute the creation any other aspect of the website and further state that this statement is neither relevant nor material to the Motion.

3.    Each complaint carefully relied on judicial findings that the subject attorney had committed professional misconduct during the course of a criminal prosecution.  (Ex. 1, at 13-15).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

4.    The Law Professors requested that the grievance committees investigate and discipline each attorney and that they do so publicly.  (*Id.*).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents.

5.    According to public records maintained by the New York State Unified Court System, at the time the grievance complaints were filed none of the accused prosecutors had ever been publicly disciplined.  (Ex. 1, at 2 n. 11).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents.

---

[2] Citations to "Ex." are to the exhibits attached to the Declaration of Gregory L. Diskant ("Diskant Declaration"). ECF No. 65, Ex. 1-15.

2

**JA137**

6.    The Law Professors' complaint against Jesse Sligh is representative of the complaints.  (Ex. 1).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants dispute whether Exhibit 1 is "representative," as not all complaints refer to *Brady* violations. *See* https://accountabilityny.org/ (Grievances A-Z). State Defendants further state that this statement is neither relevant nor material to the Motion.

7.    In 1988, Sligh prosecuted and obtained a conviction against Clinton Turner for first degree robbery.  (*Id.* at 7).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

8.    Turner maintained his innocence, but he was convicted and spent ten years in prison.  (*Id.* at 1).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

9.    After obtaining parole, Turner discovered that his conviction was the result of pervasive misconduct by Sligh and sought habeas relief.  (*Id.* at 9).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

10.    A federal court set aside the conviction, finding that Sligh's extensive Brady violations and the State's reliance on perjured testimony had deprived Turner of a fair trial.  (*Id.*).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

11.    The Queens District Attorney declined to retry Turner.  (Ex. 1).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

**JA138**

12.    When Turner later sued New York State, the state court "conclude[ed] that by clear and convincing evidence Clinton Turner [was] innocent of the crimes charged." *Turner v. State*, 36 N.Y.S.3d 50, 2015 WL 10015097, at *6 (N.Y. Ct. Cl. 2015).

**Response**: State Defendants refer to Exhibit 1 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

13.    To date, so far as the public record reflects, Sligh has not been sanctioned for his misconduct, and he continues to practice law in New York State.

**Response**: Plaintiff does not provide any support for this statement. State Defendants can neither admit nor dispute. State Defendants further state that this statement is neither relevant nor material to the Motion.

**B.    Defendants Contend That Judiciary Law 90(10) Applies to the Complaints and Letters**

14.    On June 2, 2021, James E. Johnson, then the Corporation Counsel for the City of New York, sent a letter to each grievance committee before which the Professors had filed their complaints. (Ex. 2).

**Response**: State Defendants refer to Exhibit 2 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

15.    The letter accused the Law Professors of violating "the law and the principles on which the grievance process is based"—in particular, Judiciary Law § 90(10)—because the Professors' complaints are part of a "public campaign." (*Id.* at 1).

**Response**: State Defendants refer to Exhibit 2 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

16.    Mr. Johnson wrote that "New York State Judiciary Law § 90(10) designates attorney disciplinary records—including the complaint—private and confidential." (*Id.* at 2).

**Response**: State Defendants refer to Exhibit 2 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

4

**JA139**

17.     Mr. Johnson never claimed to represent any party in the grievance process and his letter ended by taking no position on whether the prosecutors had engaged in misconduct.  (*Id.* at 3).

**Response**: State Defendants refer to Exhibit 2 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

18.     He insisted nonetheless that the letter itself was "private and confidential under Judiciary Law 90(10)."  (*Id.* at 3 n.4).

**Response**: State Defendants refer to Exhibit 2 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

19.     On June 11, 2021, Defendant Diana Maxfield Kearse, Chief Counsel of the Grievance Committee wrote a letter to the Law Professors, seemingly in response to Mr. Johnson's letter.  (Ex. 3).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

20.     The letter explained that each of the 21 complaints had been transferred to her office and noted that the Law Professors' complaints were "based on information derived from public sources, specifically, court decisions and court records."  (*Id.*).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

21.     As such, Ms. Kearse said any investigation would be conducted *sua sponte*, thus denying the Law Professors their statutory right to participate in the review process as "complainants."  (*Id.*).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

5

**JA140**

22.    This means that they will not receive the information—such as a decision to dismiss the complaint—to which complainants are entitled under the law.  (*Id.*).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

23.    Ms. Kearse did not cite any authority that justified depriving the Law Professors of their "complainant" status and rights.  (*Id.*).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

24.    Ms. Kearse also wrote that the committee's work would "remain confidential pursuant to New York State Judiciary Law § 90 unless [it] resulted in public discipline imposed by the Appellate Division."  (*Id.*).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents.

25.     Ms. Kearse also labeled her letter itself as "Confidential."  (*Id.*).

**Response**: State Defendants refer to Exhibit 3 and do not dispute its full contents.

26.    On June 22, 2021, Gregory Diskant, on behalf of the Law Professors, sent letters to the Grievance Committees in response to the Corporation Counsel's June 2, 2021 letter.  (Ex. 4).

**Response**: State Defendants refer to Exhibit 4 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

27.    On June 22, 2021, Gregory Diskant, on behalf of the Law Professors, also sent a letter to the Corporation Counsel in response to the Corporation Counsel's June 2, 2021 letter. (Ex. 5).

**Response**: State Defendants refer to Exhibit 5 and do not dispute its full contents.

28.    On June 30, 2021, Gregory Diskant, on behalf of the Law Professors, sent a letter to Defendant Kearse, in response to her June 11, 2021 letter.  (Ex. 6).

**Response**: State Defendants refer to Exhibit 6 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

6

**JA141**

29.    On July 8, 2021, Georgia M. Pestana, then the Acting Corporation Counsel, and today the Corporation Counsel, wrote to the Grievance Committee for the Second, Eleventh & Thirteenth Judicial Districts, copying the Law Professors and Gregory Diskant.  (Ex. 7).

**Response**: State Defendants refer to Exhibit 7 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

30.    In the letter, again relying on Judiciary Law § 90(10), the letter claimed the Law Professors were improperly "using the confidential grievance process to wage a public campaign for prosecutorial reform."  (*Id.* at 2).

**Response**: State Defendants refer to Exhibit 7 and do not dispute its full contents.

31.    Ms. Pestana also asserted that the confidentiality provisions of Judiciary Law § 90(10) applied to "subsequent records filed with the Committee by the Law Department and others regarding their grievance letters are confidential under the Judiciary Law."  (*Id.* at 1 n.1).

**Response**: State Defendants refer to Exhibit 7 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

32.    Ms. Pestana also claimed the letter was confidential and could not be disclosed by the Professors.  (*Id.*).

**Response**: State Defendants refer to Exhibit 7 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

33.    On July 26, 2021, Ms. Kearse sent a letter to Gregory Diskant, in response to his June 30, 2021 letter.  (Ex. 8).

**Response**: State Defendants refer to Exhibit 8 and do not dispute its full contents.

34.    In this letter, Ms. Kearse reaffirmed that the Grievance Committee would treat any investigation as based on public records, rather than one in which the Professors were complainants, and that this letter, also, was "Confidential."  (*Id.*).

**Response**: State Defendants refer to Exhibit 8 and do not dispute its full contents.

7

C.    **Legislative History on Judiciary Law § 90(10)**

35.    The law now known as Judiciary Law § 90(10) was first amended to include a confidentiality provision in 1945.  (Ex. 9).

**Response**: State Defendants refer to Exhibit 9 and do not dispute its full contents.

36.    In a March 2, 1945 letter to the Counsel to the Governor, Presiding Justice Frederick P. Close of the Second Department wrote that "[t]he purpose of the bill is to seal from *indiscriminate public view* the confidential records in this court relating to attorneys and counselors at law."  (*Id.* at 33 (emphasis added)).

**Response**: State Defendants refer to Exhibit 9 and do not dispute its full contents.

37.    Another proponent of the proposed confidentiality provision observed that it would protect the "intimate details of professional conduct in an essentially private relationship" between attorney and client.  (*Id*. at 43).

**Response**: State Defendants refer to Exhibit 9 and do not dispute its full contents.

38.    That proponent also observed that that disciplinary records "usually involve the personal and the private professional conduct of a lawyer" and "are most frequently instituted by a client, whose personal feeling toward the lawyer is extremely bitter."  (*Id.*).

**Response**: State Defendants refer to Exhibit 9 and do not dispute its full contents.

39.    Nowhere in the legislative history do the drafters of confidentiality provision address protecting prosecutors from complaints from (or on the behalf of) the wrongly accused.  (*See* Ex. 9 (generally)).

**Response**: State Defendants refer to Exhibit 9 and do not dispute its full contents. State Defendants further state that this statement is neither relevant nor material to the Motion.

8

**JA143**

**D.    Statistics on Attorney Discipline From 2016-2020**

40.    In 2021, there were 185,076 active lawyers residing in New York.  American Bar

Association, ABA National Lawyer Population Survey, Lawyer Population by State,

https://www.americanbar.org/content/dam/aba/administrative/market_research/2021-national-

lawyer-population-survey.pdf (last visited Feb. 18, 2022).

**Response**: State Defendants admit as to the existence of website:

https://www.americanbar.org/content/dam/aba/administrative/market_research/2021-national-

lawyer-population-survey.pdf (last visited March 24, 2022). State Defendants cannot admit or

dispute any aspect of the website and further state that this statement is neither relevant nor

material to the Motion.

41.    During 2016-2020, the attorney grievance committees across New York State

disposed of 53,194 cases.[3]  (Exs. 10-15).  The records do not reflect how many individual

lawyers were the subjects of these different complaints.  (*Id.*).

**Response**: State Defendants admit as to the full contents of Exhibits 10-15. State

Defendants cannot admit or dispute any aspect of these records and further state that this

statement is neither relevant nor material to the Motion.

42.    In the Second Department, the grievance committee disposed of 22,343 cases in

that five-year period.  (Ex. 10 at 4, 6, 8; Ex. 11 at 4, 8, 12; Ex. 13 at 4, 8, 10; Ex. 13 at 82; Ex. 15

at 2, 8, 10).

---

[3] The New York State Bar Association's Committee on Professional Discipline publishes annual reports detailing the disciplinary statistics of the four appellate divisions' attorney grievance committees.  New York State Bar Association, Committee on Professional Discipline, https://nysba.org/committees/committee-on-professional-discipline/ (last visited Feb. 18, 2022).

**JA144**

**Response**: State Defendants admit as to the full contents of Exhibits 10-15. State Defendants cannot admit or dispute any aspect of these records and further state that this statement is neither relevant nor material to the Motion.

43.    Of the cases disposed of by the grievance committee, 169 cases ended with a letter of caution, which is not public; 1,816 cases ended with a letter of advisement, which is also not public; and 528 cases ended with a written admonition, again a private matter not made public.  (Ex. 10 at 2, 4, 6, 8, 10, 12; Ex. 11 at 2, 4, 6, 8, 10, 12; Ex. 12 at 2, 4, 6, 8, 10, 12; Ex. 13 at 2, 4, 6, 8, 10; Ex. 15 at 2, 4, 13 ).

**Response**: State Defendants admit as to the full contents of Exhibits 10-12, 13, 15. State Defendants cannot admit or dispute any aspect of these records and further state that this statement is neither relevant nor material to the Motion.

44.    In total, 11.2% of the cases disposed of by the Second Department's grievance committees ended with a private letter of caution, advisement, or admonition, all of which were secret. (Ex. 10 at 2, 4, 6, 8, 10, 12 Ex. 11 at 2, 4, 6, 8, 10, 12; Ex. 12 at 2, 4, 6, 8, 10, 12; Ex. 13 at 2, 4, 6, 8, 10; Ex. 15 at 2, 4, 13).

**Response**: State Defendants admit as to the full contents of Exhibits 10-12, 13, 15. State Defendants cannot admit or dispute any aspect of these records and further state that this statement is neither relevant nor material to the Motion.

45.    During that same five-year period, the courts in the Second Department closed 1,303 cases referred by the grievance committee, with 159 public disbarments, 35 public disciplinary resignations, 235 public suspensions, and 46 public censures.  (Ex. 10 at 3, 5, 7, 9. 11, 13; Ex. 11 at 3, 5, 7, 9, 11, 13; Ex. 12 at 3, 5, 7, 9, 11, 13; Ex. 13 at 3, 5, 7, 9, 11; Ex. 15 at 3, 5, 9, 14, 18, 25).

**Response**: State Defendants admit as to the full contents of Exhibits 10-12, 13, 15. State Defendants cannot admit or dispute any aspect of these records and further state that this statement is neither relevant nor material to the Motion.

46.    These public sanctions total 475 cases—2.1% of the 22,343 cases resolved in that period, and far lower than the 11.2% that resulted in a private letter.  (Ex. 10 at 3, 5, 7, 9. 11, 13; Ex. 11 at 3, 5, 7, 9, 11, 13; Ex. 12 at 3, 5, 7, 9, 11, 13; Ex. 13 at 3, 5, 7, 9, 11; Ex. 15 at 3, 5, 9, 14, 18, 25).

**Response**: State Defendants admit as to the full contents of Exhibits 10-12, 13, 15. State Defendants cannot admit or dispute any aspect of these records and further state that this statement is neither relevant nor material to the Motion.

47.    In total, in the Second Department, *98 percent* of the complaints resolved by the grievance committees and the court are resolved in private and remain secret, and that secrecy continues forever.  (Ex. 10 at 4-9; Ex. 11 at 4-5, 8-9, 12-13; Ex. 12 at 4-5, 8-11, ; Ex. 13 at 2-3, 8-11; Ex. 15 at 4-5, 22-28).

**Response**: State Defendants admit as to the full contents of Exhibits 10-12, 13, 15. State Defendants cannot admit or dispute any aspect of these records and further state that this statement is neither relevant nor material to the Motion.

E.    **Other Publicly Filed Grievance Complaints**

48.    On January 20, 2021, the organization Lawyers Defending American Democracy ("LDAD") filed a grievance complaint against Rudolph W. Giuliani, alleging multiple violations of provisions of the New York Rules of Professional Conduct against the former mayor while presenting former President Donald Trump and the Trump Campaign.  Lawyers Defending American Democracy, Complaint against Rudolph W. Guiliani, https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-Complaint.pdf (last visited

11

**JA146**

Feb. 18, 2022).

**Response**: State Defendants admit as to the existence of document

https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-

Complaint.pdf (last visited March 24, 2022).

49.     After filing the complaint, LDAD published its complaint online.  Lawyers

Defending American Democracy, LDAD Collects 1000s of Signatures for Ethics Complaint

Against Rudy Giuliani, https://ldad.org/letters-briefs/ldad-files-grievance-against-giuliani (last

visited Feb. 18, 2022).

**Response**: State Defendants admit as to the existence of document

https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-

Complaint.pdf (last visited March 24, 2022).

50.     As of February 3, 2021, over 3,000 licensed attorneys co-signed the complaint,

including former members of attorney grievance committees in New York State and "dozens of

retired federal and state judges, two former Associate Deputy Attorneys General, seven past

presidents of the American Bar Association, nearly 100 former federal prosecutors, and over 100

current and retired law professors from nearly every prominent law school in the country."  *Id.*

**Response**: State Defendants admit as to the existence of document

https://ldad.org/wp-content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-

Complaint.pdf (last visited March 24, 2022).

## STATE DEFENDANTS' ADDITIONAL FACTS

Pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, Defendants Hector D. LaSalle and Andrea E. Bonina ("State Defendants"), by and through their counsel, submit the following additional statements of material facts in opposition to the Motion:

1.      The complaint form for the Grievance Committee for the Appellate Division, First Department does not inform complainants that the form itself must be retained as confidential. Declaration of Elizabeth A. Figueira ("Figueira Decl."), Ex. 1.

2.      The "How to File a Complaint" guide for the Attorney Grievance Committee for the First Department, dated July 30, 2020 does not prohibit the complainant from sharing their completed form. Figueira Decl., Ex 2.

3.      Under the "IX. CONFIDENTIALITY" section, the "How to File a Complaint" guide states that "During the investigation and resolution of a complaint all papers, records and documents in the AGC's possession are sealed and deemed private and confidential pursuant to New York Judiciary Law, Section 90(10)." Figueira Decl., Ex 2 at 6.

4.      The complaint form for the Grievance Committee for the Appellate Division, Second Department does not inform complainants that the form must be retained as confidential. Figueira Decl., Ex. 3.

5.      The "How to Make a Complaint About a Lawyer" guide in the "Attorney Matters" section of the website for the Second Department does not direct complainants to keep confidential the complaint form itself or the contents of the complaint. The guide also states that "Disciplinary Proceedings are Confidential." Figueira Decl., Ex. 4 at 4.

13

**JA148**

6.    The complaint form for the Grievance Committee for the Appellate Division, Third Department does not inform complainants that the form itself must be retained as confidential. Figueira Decl., Ex. 5.

7.    The "Drafting a Complaint" section of the "Instructions for Filing a Complaint for Professional Misconduct Against an Attorney" does not direct the complainant not to share the completed complaint form or otherwise direct the complainant to keep the completed complaint form confidential. Figueira Decl., Ex. 6 at 1.

8.    The complaint form for the Grievance Committee for the Appellate Division, Fourth Department states that "Grievance complaints and all documents generated during an investigation are confidential and sealed. Certain documents are unsealed if the charges are sustained by the court (*See* Judiciary Law § 90[10]: 22 NYCRR 1240.13)." The instructions also state that the "attorney grievance process is confidential primarily because unfounded allegations of misconduct may negatively affect a lawyer's reputation and ability to make a living." Figueira Decl., Ex. 7 at 1.

9.    The "Overview" for the Attorney Grievance Committee for the Appellate Division, Fourth Department states that "the investigation of the complaint and disciplinary proceedings are kept confidential pursuant to state law." Figueira Decl., Ex. 8 at 1.

10.    The "Enhancing Fairness and Consistency Fostering Efficiency and Transparency" report published by the NYS Commission on Statewide Attorney Discipline in September 2015 does not indicate the grievance committee complaints are expected to be kept confidential statewide. Figueira Decl., Ex. 9 at 61-66.

11.    Section B.2 of Rule 16 of the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement state under "Confidentiality" that "Prior to the filing and

14

**JA149**

service of formal charge in a disciplinary matter, the proceeding is confidential within the agency." Figueira Decl., Ex. 10 at B2 (p.1).

12.    In the Second Department, most of the complainants are clients of the respondent attorney or firm. Declaration of Andrea E. Bonina ("Bonina Decl."), ¶ 7.

13.    Financial institutions holding funds in Interest of Lawyer Account ("IOLA") accounts represent a sizable portion of the remainder. Bonina Decl. ¶ 8.

14.    Complaints submitted by judges and opposing counsel are in the minority, with complaints from members of the public representing an even smaller proportion. Bonina Decl. ¶¶ 9-10.

15.    The disciplinary files of the Grievance Committees often contain confidential information relating to the clients other than those that may be related to the complainant. Bonina Decl. ¶ 11.

16.    The Grievance Committee's files often contain respondent's personal details about factors that affected their ability to meet clients' expectations and related medical information about the respondent's (or their family's) physical or mental conditions. Bonina Decl., ¶ 12.

17.    Detailed financial information is common when a bank has reported an anomaly, including overdrafts, for IOLA accounts. Bonina Decl. ¶ 8.

18.    Grievance Committee members, staff, and agents do not disclose the status of any investigation to the public or upon request. Bonina Decl., ¶ 6.

19.    Correspondence from the Chair is marked "Personal and Confidential," but recipients are not advised that they are obligated to keep the contents confidential. Bonina Decl., ¶ 5.

20.     The Eleventh Edition of the Merriam Webster Collegiate Dictionary defines "upon" as "thereafter, thereon. Figueira Decl., Ex. 11.

21.     The Merriam Webster Dictionary online edition defines "upon" as "2 obsolete: thereafter, thereon." Figueira Decl., 12.

22.     The Oxford English Dictionary defines "upon, prep" as "7.b. Immediately after; following on. Figueira Decl., Ex. 13 at 11.

23.     The Oxford English Dictionary defines "upon, adv" as "3. On of upon that (in time and order); thereafter, thereupon. Esp. coupled with *anon, near, soon*. Figueira Decl., Ex. 14 at 2.

| | |
|---|---|
| Dated:    New York, New York<br>            March 31, 2022 | LETITIA JAMES<br>Attorney General of the<br>State of New York |

                                    /s/ Elizabeth Anne Figueira

ELIZABETH ANNE FIGUEIRA
Assistant Attorney General
28 Liberty Street, 16th Floor
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
*Attorneys for Justice Hector D. LaSalle and*
*Andrea E. Bonina*

16

**JA151**

Case 1:21-cv-09128-VM-VF    Document 84    Filed 03/31/22    Page 1 of 20

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, CYNTHIA
GODSOE, NICOLE SMITH FUTRELL,
DANIEL S. MEDWED, JUSTIN
MURRAY, ABBE SMITH, and STEVEN
ZEIDMAN,

Plaintiffs,

v.

GEORGIA PESTANA, Corporation
Counsel of the City of New York, in her
official and personal capacity; MELINDA
KATZ, the District Attorney for Queens
County, in her official and personal
capacity; ANDREA E. BONINA, Chair of
the State of New York Grievance Committee
for the Second, Eleventh, and Thirteenth
Judicial District, in her official and personal
capacity; DIANA MAXFIELD KEARSE,
Chief Counsel of the State of New York
Grievance Committee for the Second,
Eleventh, and Thirteenth Judicial Districts,
in her official and personal capacity; and
HECTOR D. LASALLE, Presiding Justice
of the Second Justice Department of the
Appellate Division of the Supreme Court of
the State of New York, in his official
capacity,

Defendants.

Case No. 1:21-cv-09128-VM

**DEFENDANT DIANA MAXFIELD
KEARSE'S RESPONSE TO
PLAINTIFFS' RULE 56.1
STATEMENT AND ADDITIONAL
FACTS**

Pursuant to Local Civil Rule 56.1, Defendant Diana Maxfield Kearse ("Kearse") submits

the following responses to Plaintiffs' Statement of Undisputed Material Facts Under Local Civ. R.

56.1 in Support of Plaintiffs' Motion For Partial Summary Judgment ("Plaintiffs' Rule 56.1

Statement"), as well as Additional Material Facts:

3365119.3

**JA152**

1.      To bring attention to New York's pervasive failure to discipline prosecutors for misconduct, and with the support from the CRC, on May 3, 2021, the Law Professors filed 21 discrete complaints pursuant to New York Judiciary Law § 90(10) against individual attorneys currently or formerly employed by the Queens District Attorney's Office for misconduct committed while working as an assistant district attorney. (Ex. 1).[1]

**RESPONSE: Kearse notes that the contention that there is a "pervasive failure to discipline prosecutors" is a statement of an opinion not a "fact" as required by Local Civil Rule 56.1, and therefore a response to that statement is not required. To the extent that a response is required, she disputes that statement. Kearse does not dispute that the Law Professors filed 21 discrete complaints, and Kearse has no independent knowledge of the remaining alleged facts in paragraph 1 to verify or dispute their veracity.**

2.      At the same time, Plaintiffs created a website, AccountabilityNY.org, and posted the full text of their complaints to bring public attention to the issue.  Accountability NY, https://accountabilityny.org/ (last visited Feb. 18, 2022).

**RESPONSE: Kearse does not dispute this statement.**

3.      Each complaint carefully relied on judicial findings that the subject attorney had committed professional misconduct during the course of a criminal prosecution. (Ex. 1, at 13-15).

---

[1] Pursuant to footnote 1 of Plaintiffs' Rule 56.1 Statement, citations to "Ex." are to the exhibits attached to the Declaration of Gregory L. Diskant (the "Diskant Declaration") filed with the motion.

**RESPONSE: Kearse disputes that there were judicial findings of "professional misconduct." Declaration of Diana Maxfield Kearse ("Kearse Declaration"), ¶ 10. Kearse respectfully refers the Court to the complete judicial record with respect to the subject cases.**

4.     The Law Professors requested that the grievance committees investigate and discipline each attorney and that they do so publicly. (*Id.*).

**RESPONSE: Kearse does not dispute this statement.**

5.     According to public records maintained by the New York State Unified Court System, at the time the grievance complaints were filed none of the accused prosecutors had ever been publicly disciplined. (Ex. 1, at 2 n.11).

**RESPONSE: Kearse does not dispute this statement.**

6.     The Law Professors' complaint against Jesse Sligh is representative of the complaints. (Ex. 1).

**RESPONSE: Kearse disputes this statement. The complaint against Jesse Sligh discussed so-called *Brady* violations, which only four other complaints allege. The remaining sixteen complaints involved other matters, such as alleged improper statements made during opening remarks and summations and other allegedly improper conduct during trial. Kearse Declaration, ¶ 11.**

7.     In 1988, Sligh prosecuted and obtained a conviction against Clinton Turner for first degree robbery. (*Id.* at 7).

**RESPONSE: Kearse does not dispute this statement.**

3

**JA154**

8.      Turner maintained his innocence, but he was convicted and spent ten years in prison. (*Id.* at 1).

**RESPONSE: Kearse does not dispute that page 1 of Exhibit 1 to the Diskant Declaration states that Turner maintained his innocence, was convicted, and spent ten years in prison, but Kearse has no independent knowledge of the alleged facts in paragraph 8 to verify or dispute their veracity.**

9.      After obtaining parole, Turner discovered that his conviction was the result of pervasive misconduct by Sligh and sought habeas relief. (*Id.* at 9).

**RESPONSE: Kearse does not dispute that there were habeas proceedings, as discussed in *Turner v. Schriver*, 327 F. Supp. 2d 174 (E.D.N.Y 2004) (the "Turner Case"), to which Kearse respectfully refers this Court, but Kearse has no independent knowledge of the remaining alleged facts in paragraph 9 to verify or dispute their veracity.**

10.      A federal court set aside the conviction, finding that Sligh's extensive *Brady* violations and the State's reliance on perjured testimony had deprived Turner of a fair trial. (*Id.*).

**RESPONSE: Kearse does not dispute that page 9 of Exhibit 1 to the Diskant Declaration states that a federal court found that Sligh had violated *Brady* and had violated Turner's due process rights, and Kearse respectfully refers this Court to the Turner Case for a complete recitation of its holdings.  Kearse has no independent knowledge of the remaining alleged facts in paragraph 10 to verify or dispute their veracity.**

11.      The Queens District Attorney declined to retry Turner. (Ex. 1).

**RESPONSE: Kearse neither admits nor disputes this statement, as she has no independent knowledge of the alleged fact in paragraph 11 to verify or dispute its veracity.**

12.     When Turner later sued New York State, the state court "conclude[ed] that by clear and convincing evidence Clinton Turner [was] innocent of the crimes charged." *Turner v. State*, 36 N.Y.S.3d 50, 2015 WL 10015097, at *6 (N.Y. Ct. Cl. 2015).

**RESPONSE: Kearse does not dispute that this case made that statement and respectfully refers this Court to that decision for a complete recitation of its holdings.**

13.     To date, so far as the public record reflects, Sligh has not been sanctioned for his misconduct, and he continues to practice law in New York State.

**RESPONSE: Kearse does not dispute that, to date, so far as the public records reflect, Sligh has not been disciplined for the conduct at issue in the Turner Case, and she further states that she has no independent knowledge of whether Sligh continues to practice law in New York State.**

14.     On June 2, 2021, James E. Johnson, then the Corporation Counsel for the City of New York, sent a letter to each grievance committee before which the Professors had filed their complaints. (Ex. 2).

**RESPONSE: Kearse does not dispute this statement.**

15.     The letter accused the Law Professors of violating "the law and the principles on which the grievance process is based"—in particular, Judiciary Law § 90(10)—because the Professors' complaints are part of a "public campaign." (*Id.* at 1).

5

**JA156**

**RESPONSE: Kearse admits that the Corporation Counsel made this statement in its letter dated June 2, 2021, and Kearse respectfully refers the Court to the referenced letter for its full content.**

16.    Mr. Johnson wrote that "New York State Judiciary Law § 90(10) designates attorney disciplinary records—including the complaint—private and confidential." (*Id.* at 2).

**RESPONSE: Kearse admits that the Corporation Counsel made this Statement in its letter dated June 2, 2021, and Kearse respectfully refers the Court to the referenced letter for its full content.**

17.    Mr. Johnson never claimed to represent any party in the grievance process and his letter ended by taking no position on whether the prosecutors had engaged in misconduct. (*Id.* at 3).

**RESPONSE: Kearse admits that in the Corporation Counsel's June 2, 2021 letter he did not claim to represent any party in the grievance process and that he took no position on whether the prosecutors had engaged in misconduct, and Kearse respectfully refers the Court to the referenced letter for its full content.**

18.    He insisted nonetheless that the letter itself was "private and confidential under Judiciary Law 90(10)." (*Id.* at 3 n.4).

**RESPONSE: Kearse admits that the quoted language appears in the Corporation Counsel's letter dated June 2, 2021, and Kearse respectfully refers the Court to the referenced letter for its full content.**

**JA157**

19.    On June 11, 2021, Defendant Diana Maxfield Kearse, Chief Counsel of the Grievance Committee wrote a letter to the Law Professors, seemingly in response to Mr. Johnson's letter. (Ex. 3).

**RESPONSE: Kearse does not dispute that on June 11, 2021 she wrote a letter to the Law Professors, but she disputes that her letter was in response to Mr. Johnson's June 2, 2021 letter, and respectfully refers the Court to her June 11, 2021 letter for its full content. Kearse Declaration, ¶ 4.**

20.    The letter explained that each of the 21 complaints had been transferred to her office and noted that the Law Professors' complaints were "based on information derived from public sources, specifically, court decisions and court records." (*Id.*).

**RESPONSE: Kearse disputes that her June 11, 2021 letter contains this statement, but she does not dispute that all of the complaints ultimately came to her office, and she respectfully refers the Court to her June 11, 2021 letter for its full content.**

21.    As such, Ms. Kearse said any investigation would be conducted *sua sponte*, thus denying the Law Professors their statutory right to participate in the review process as "complainants." (*Id.*).

**RESPONSE: Kearse does not dispute that her June 11, 2021 letter stated that any Grievance Committee investigation resulting from complaints Plaintiffs filed would be conducted *sua sponte*, and she notes that the statement pertaining to an alleged denial of a statutory right is a legal conclusion, not a "fact" as required by Local Civil Rule 56.1, and therefore a response is not required. To the extent a response is required, Kearse disputes that the Law Professors**

7

were denied any statutory right.  She respectfully refers the Court to the referenced letter for its full content.

22.     This means that they will not receive the information—such as a decision to dismiss the complaint—to which complainants are entitled under the law. (*Id.*).

**RESPONSE: Kearse does not dispute that in an investigation of any of the complaints the Law Professors filed, which are deemed commenced *sua sponte*, the Law Professors would not receive the information, such as a decision to dismiss the complaint, that a complainant would receive.**

23.     Ms. Kearse did not cite any authority that justified depriving the Law Professors of their "complainant" status and rights. (*Id.*).

**RESPONSE: Kearse disputes this statement to the extent it claims that the Law Professors were improperly deprived of any status or rights, but she does not dispute that no authority was cited in her June 11, 2021 letter.  However, Kearse's July 26, 2021 letter does cite authority with respect to procedure she adhered to (Diskant Aff. Ex. 8.), and she respectfully refers the Court to her June 11, 2021 and July 26, 2021 letters for their full content.**

24.     Ms. Kearse also wrote that the committee's work would "remain confidential pursuant to New York State Judiciary Law § 90 unless [it] resulted in public discipline imposed by the Appellate Division." (*Id.*).

**RESPONSE: Kearse does not dispute this statement and respectfully refers the Court to the referenced document for its full content.**

8

**JA159**

25.    Ms. Kearse also labeled her letter itself as "Confidential." (*Id.*).

**RESPONSE: Kearse disputes this statement.    The letter is labelled "Personal and Confidential," and she disputes this statement to the extent to which it characterizes this label as instructing plaintiffs to not disclose this letter.  Kearse Declaration, ¶ 8.**

26.    On June 22, 2021, Gregory Diskant, on behalf of the Law Professors, sent letters to the Grievance Committees in response to the Corporation Counsel's June 2, 2021 letter. (Ex. 4).

**RESPONSE: Kearse does not dispute this statement.**

27.    On June 22, 2021, Gregory Diskant, on behalf of the Law Professors, also sent a letter to the Corporation Counsel in response to the Corporation Counsel's June 2, 2021 letter. (Ex. 5).

**RESPONSE: Kearse does not dispute this statement.**

28.    On June 30, 2021, Gregory Diskant, on behalf of the Law Professors, sent a letter to Defendant Kearse, in response to her June 11, 2021 letter. (Ex. 6).

**RESPONSE: Kearse does not dispute this statement.**

29.    On July 8, 2021, Georgia M. Pestana, then the Acting Corporation Counsel, and today the Corporation Counsel, wrote to the Grievance Committee for the Second, Eleventh & Thirteenth Judicial Districts, copying the Law Professors and Gregory Diskant. (Ex. 7).

**RESPONSE: Kearse does not dispute this statement.**

30.     In the letter, again relying on Judiciary Law § 90(10), the letter claimed the Law Professors were improperly "using the confidential grievance process to wage a public campaign for prosecutorial reform." (*Id*. at 2).

**RESPONSE: Kearse does not dispute that the Acting Corporation Counsel's July 8, 2021 letter contains this statement, and she respectfully refers the Court to the referenced letter for its full content.**

31.     Ms. Pestana also asserted that the confidentiality provisions of Judiciary Law § 90(10) applied to "subsequent records filed with the Committee by the Law Department and others regarding their grievance letters are confidential under the Judiciary Law." (*Id.* at 1 n.1).

**RESPONSE: Kearse does not dispute that the Acting Corporation Counsel's July 8, 2021 letter contains this statement, and she respectfully refers the Court to the referenced letter for its full content.**

32.     Ms. Pestana also claimed the letter was confidential and could not be disclosed by the Professors. (*Id.*).

**RESPONSE: Kearse does not dispute that the Acting Corporation Counsel's July 8, 2021 suggests that letter's confidentiality, and she respectfully refers the Court to the referenced letter for its full content.**

33.     On July 26, 2021, Ms. Kearse sent a letter to Gregory Diskant, in response to his June 30, 2021 letter. (Ex. 8).

**RESPONSE: Kearse does not dispute this statement.**

10

34.    In this letter, Ms. Kearse reaffirmed that the Grievance Committee would treat any investigation as based on public records, rather than one in which the Professors were complainants, and that this letter, also, was "Confidential." (*Id.*).

**RESPONSE: Kearse does not dispute that her July 26, 2021 letter states that the complaints are based on public records, but she disputes that the letter was labelled "Confidential," as it was labelled "Personal and Confidential," and she disputes Plaintiff's characterization of her letter to the extent it implies that this letter instructed Plaintiffs to not disclose said letter, and she respectfully refers the Court to the referenced letter for its full content. Kearse Declaration, ¶¶ 7-8.**

35.    The law now known as Judiciary Law § 90(10) was first amended to include a confidentiality provision in 1945. (Ex. 9).

**RESPONSE: Kearse neither admits nor disputes this statement, as she has no independent knowledge of the alleged facts in paragraph 35 to verify or dispute their veracity. Kearse respectfully refers the Court to the full legislative history of N.Y. Judiciary Law § 90(10).**

36.    In a March 2, 1945 letter to the Counsel to the Governor, Presiding Justice Frederick P. Close of the Second Department wrote that "[t]he purpose of the bill is to seal from *indiscriminate public view* the confidential records in this court relating to attorneys and counselors at law." (*Id.* at 33 (emphasis added)).

**RESPONSE: Kearse neither admits nor disputes this statement, as she has no independent knowledge of the alleged facts in paragraph 36 to verify or dispute their veracity. Kearse respectfully refers the Court to the full legislative history of N.Y. Judiciary Law § 90(10).**

11

37.    Another proponent of the proposed confidentiality provision observed that it would protect the "intimate details of professional conduct in an essentially private relationship" between attorney and client. (*Id*. at 43).

**RESPONSE: Kearse neither admits nor disputes this statement, as she has no independent knowledge of the alleged facts in paragraph 37 to verify or dispute their veracity. Kearse respectfully refers the Court to the full legislative history of N.Y. Judiciary Law § 90(10).**

38.    That proponent also observed that disciplinary records "usually involve the personal and the private professional conduct of a lawyer" and "are most frequently instituted by a client, whose personal feeling toward the lawyer is extremely bitter." (*Id.*).

**RESPONSE: Kearse neither admits nor disputes this statement, as she has no independent knowledge of the alleged facts in paragraph 38 to verify or dispute their veracity. Kearse respectfully refers the Court to the full legislative history of N.Y. Judiciary Law § 90(10).**

39.    Nowhere in the legislative history do the drafters of confidentiality provision address protecting prosecutors from complaints from (or on the behalf of) the wrongly accused. (*See* Ex. 9 (generally)).

**RESPONSE: This statement is a legal argument and therefore not a "fact" as required by Local Civil Rule 56.1, and therefore a response is not required.  To the extent a response is required, Kearse neither admits nor disputes this statement, as she has no independent knowledge of the alleged facts in paragraph 39 to verify or dispute their veracity.  Kearse respectfully refers the Court to the full legislative history of N.Y. Judiciary Law § 90(10).**

12

**JA163**

40.    In 2021, there were 185,076 active lawyers residing in New York. American Bar Association, ABA National Lawyer Population Survey, Lawyer Population by State, https://www.americanbar.org/content/dam/aba/administrative/market_research/2021-national-lawyer-population-survey.pdf (last visited Feb. 18, 2022).

**RESPONSE: Kearse does not dispute that the cited website contains this statement, but Kearse has no independent knowledge of the alleged fact in paragraph 40 to verify or dispute its veracity.**

41.    During 2016-2020, the attorney grievance committees across New York State disposed of 53,194 cases. (Exs. 10-15).  The records do not reflect how many individual lawyers were the subjects of these different complaints. (*Id.*).

**RESPONSE: Kearse does not dispute that Exhibits 10-15 to the Diskant Declaration contain statistics regarding how many cases were disposed of by the attorney grievance committees across New York State from 2016 to 2020, but Kearse has no independent knowledge of the information contained within the reports of judicial districts outside of Kearse's jurisdiction. Therefore, she cannot verify or dispute the veracity of the alleged facts in paragraph 41.**

42.    In the Second Department, the grievance committee disposed of 22,343 cases in that five-year period. (Ex. 10 at 4, 6, 8; Ex. 11 at 4, 8, 12; Ex. 13 at 4, 8, 10; Ex. 13 at 82; Ex. 15 at 2, 8, 10).

**RESPONSE: Kearse does not dispute that Exhibits 10-15 to the Diskant Declaration contain statistics regarding how many cases were disposed of by the Second Judicial Department's three grievance committees from 2016 to 2020, but Kearse has no independent knowledge of**

the information contained within the reports of judicial districts outside of Kearse's jurisdiction and she, therefore, cannot verify or dispute the veracity of the alleged facts in paragraph 42.

43.    Of the cases disposed of by the grievance committee, 169 cases ended with a letter of caution, which is not public; 1,816 cases ended with a letter of advisement, which is also not public; and 528 cases ended with a written admonition, again a private matter not made public. (Ex. 10 at 2, 4, 6, 8, 10, 12; Ex. 11 at 2, 4, 6, 8, 10, 12; Ex. 12 at 2, 4, 6, 8, 10, 12; Ex. 13 at 2, 4, 6, 8, 10; Ex. 15 at 2, 4, 13).

RESPONSE: Kearse does not dispute that Exhibits 10-15 to the Diskant Declaration contain statistics regarding how many cases disposed of by the grievance committee resulted in private letters of caution, letters of advisement, or admonitions, but Kearse has no independent knowledge of the information contained within the reports of judicial districts outside of Kearse's jurisdiction.  Therefore, she cannot verify or dispute the veracity of the alleged facts in paragraph 43.

44.    In total, 11.2% of the cases disposed of by the Second Department's grievance committees ended with a private letter of caution, advisement, or admonition, all of which were secret. (Ex. 10 at 2, 4, 6, 8, 10, 12 Ex. 11 at 2, 4, 6, 8, 10, 12; Ex. 12 at 2, 4, 6, 8, 10, 12; Ex. 13 at 2, 4, 6, 8, 10; Ex. 15 at 2, 4, 13).

RESPONSE: Kearse does not dispute that, assuming the figures set forth in Exhibits 10-15 of the Diskant Declaration are all correct, 11.2% of the cases disposed of by the Second Judicial Department's three grievance committees resulted in private letters of caution, letters of advisement, or admonitions.  However, this percentage appears to have been

14

**JA165**

calculated based on all complaints received by the grievance committees, not based on the number of complaints for which investigations were actually opened. A calculation using the number of complaints for which investigations were opened results in a higher percentage than 11.2%. Kearse Declaration, ¶ 12.

45.     During that same five-year period, the courts in the Second Department closed 1,303 cases referred by the grievance committee, with 159 public disbarments, 35 public disciplinary resignations, 235 public suspensions, and 46 public censures. (Ex. 10 at 3, 5, 7, 9, 11, 13; Ex. 11 at 3, 5, 7, 9, 11, 13; Ex. 12 at 3, 5, 7, 9, 11, 13; Ex. 13 at 3, 5, 7, 9, 11; Ex. 15 at 3, 5, 9, 14, 18, 25).

RESPONSE: Kearse does not dispute that Exhibits 10-15 to the Diskant Declaration contain statistics regarding how many cases the Second Judicial Department closed, including how many resulted in public sanctions, such as disbarments, disciplinary resignations, suspensions, and censures, but Kearse has no independent knowledge of the information contained within the reports of judicial districts outside of Kearse's jurisdiction. Therefore, she cannot verify or dispute the veracity of the alleged facts in paragraph 45.

46.     These public sanctions total 475 cases—2.1% of the 22,343 cases resolved in that period, and far lower than the 11.2% that resulted in a private letter. (Ex. 10 at 3, 5, 7, 9. 11, 13; Ex. 11 at 3, 5, 7, 9, 11, 13; Ex. 12 at 3, 5, 7, 9, 11, 13; Ex. 13 at 3, 5, 7, 9, 11; Ex. 15 at 3, 5, 9, 14, 18, 25).

RESPONSE: Kearse does not dispute that, assuming the figures set forth in Exhibits 10-15 of the Diskant Declaration are all correct, 2.1% of the cases resolved by the Second Judicial Department's three grievance committees resulted in public sanctions. However, this

15

percentage appears to have been calculated based on all complaints received by the grievance committees, not based on the number of complaints for which investigations were actually opened. A calculation using the number of complaints for which investigations were opened results in a higher percentage than 2.1%. Kearse Declaration, ¶ 12.

47. In total, in the Second Department, *98 percent* of the complaints resolved by the grievance committees and the court are resolved in private and remain secret, and that secrecy continues forever. (Ex. 10 at 4-9; Ex. 11 at 4-5, 8-9, 12-13; Ex. 12 at 4-5, 8-11, ; Ex. 13 at 2-3, 8-11; Ex. 15 at 4-5, 22-28).

**RESPONSE: Kearse does not dispute that, assuming paragraph 46 of Plaintiffs' Rule 56.1 Statement's assertion that 2.1% of the cases resolved by the Second Judicial Department's three grievance committees resulted in public sanctions is correct, the resulting calculation of how many complaints in the Second Judicial Department were resolved confidentially would be approximately 98%. However, this percentage appears to have been calculated based on all complaints received by the grievance committees, not based on the number of complaints for which investigations were actually opened. A calculation using the number of complaints for which investigations were opened results in a lower percentage than 98%. Kearse Declaration, ¶ 12.**

48. On January 20, 2021, the organization Lawyers Defending American Democracy ("LDAD") filed a grievance complaint against Rudolph W. Giuliani, alleging multiple violations of provisions of the New York Rules of Professional Conduct against the former mayor while presenting former President Donald Trump and the Trump Campaign. Lawyers Defending American Democracy, Complaint against Rudolph W. Giuliani, https://ldad.org/wp-

16

**JA167**

content/uploads/2021/05/LDAD-Attorney-Grievance-Committee-Complaint.pdf (last visited Feb. 18, 2022).

**RESPONSE: Kearse does not dispute this statement.**

49.    After filing the complaint, LDAD published its complaint online.    Lawyers Defending American Democracy, LDAD Collects 1000s of Signatures for Ethics Complaint Against Rudy Giuliani, https://ldad.org/letters-briefs/ldad-files-grievance-against-giuliani (last visited Feb. 18, 2022).

**RESPONSE: Kearse does not dispute this statement.**

50.    As of February 3, 2021, over 3,000 licensed attorneys co-signed the complaint, including former members of attorney grievance committees in New York State and "dozens of retired federal and state judges, two former Associate Deputy Attorneys General, seven past presidents of the American Bar Association, nearly 100 former federal prosecutors, and over 100 current and retired law professors from nearly every prominent law school in the country." *Id.*

**RESPONSE: Kearse does not dispute that the webpage at https://ldad.org/letters-briefs/ldad-files-grievance-against-giuliani states that over 3,000 attorney co-signed the complaint, but she has no independent knowledge of the alleged facts in paragraph 50 to verify or dispute their veracity.**

## Additional Material Facts

1.    Kearse has served as Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee") since November, 2000.  Kearse Declaration, ¶ 3.

17

**JA168**

2.      Kearse's letters to counsel for Plaintiffs, dated June 11, 2021 and July 26, 2021 (Exhibits 3 and 8 to the Declaration of Gregory L. Diskant, respectively) (the "Letters"), were sent pursuant to standard operating procedure, which procedure is set forth in the Supreme Court Appellate Division, Second Judicial Department Grievance Committee Manual & Forms, revised as of April, 2019, and in the Rules for Attorney Disciplinary Matters.  Kearse did not send either letter in coordination with the Office of the Corporation Counsel of the City of New York or in response to any letters sent by that office.  Kearse Declaration, ¶ 4.

3.      Kearse has never told anyone that New York Judiciary Law § 90(10)'s confidentiality provision applies to anyone other than Court personnel, Grievance Committee members, staff and their agents.  Kearse Declaration, ¶ 5.

4.      Prior to commencing this lawsuit, none of the Plaintiffs, nor anyone acting on their behalf, made any inquiry to Kearse as to whether they could publicly disclose the complaints they filed with the Grievance Committee.  Kearse Declaration, ¶ 6.

5.      Kearse has never told any complainant, or any other person who has filed a complaint with the Grievance Committee, that they could not share or publish their own complaint.  Kearse Declaration, ¶ 7.

6.      Kearse labeled her letters dated June 11, 2021 and July 26, 2021 "Personal and Confidential" in accordance with her office's standard practice and because they are held confidential by her office.  She has never told a recipient of a letter from her office acknowledging the filing of a complaint that they were prohibited from sharing such a letter.   Kearse Declaration, ¶ 8.

7.      In order to preserve confidentiality, the Letters do not reference the names of the attorneys who are the subjects of the complaints that were filed.  Kearse Declaration, ¶ 9.

18
**JA169**

Dated: New York, New York
      March 31, 2022

PHILLIPS NIZER LLP

By: */s/ Mark M. Elliott*
    Mark M. Elliott
    melliott@phillipsnizer.com
    Leah Frankel
    lfrankel@phillipsnizer.com
    485 Lexington Avenue, 14th Floor
    New York, New York 10017
    (212) 977-9700

    *Attorneys for Defendant Diana Maxfield*
    *Kearse, Chief Counsel of the State of New York*
    *Grievance Committee for the Second, Eleventh, and*
    *Thirteenth Judicial Districts, in her official and*
    *personal capacity*

**JA170**

Case 1:21-cv-09128-VM-VF    Document 84    Filed 03/31/22    Page 20 of 20

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2022, I caused the foregoing document to be served upon counsel of record via ECF.

/s/ Mark M. Elliott
Mark M. Elliott

**JA171**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/5/2022

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CIVIL RIGHTS CORPS, ET AL.,         :
                                    :
              Plaintiffs,           :
                                    :      21 Civ. 9128 (VM)
      - against -                   :
                                    :      DECISION & ORDER
GEORGIA PESTANA, ET AL.,            :
                                    :
              Defendants.           :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and Steven Zeidman, (together the "Law Professors"), and Civil Rights Corps ("CRC," and with the Law Professors, "Plaintiffs") filed suit against Georgia Pestana ("Pestana"), Corporation Counsel of the City of New York; Melinda Katz ("Katz"), Queens County District Attorney; Andrea Bonina ("Bonina"), Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"); Justice Hector D. LaSalle ("LaSalle"), Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York; and Diana Maxfield Kearse ("Kearse"), Chief Counsel of the Grievance Committee (together, "Defendants"). (See "Complaint," Dkt. No. 59). Now before the Court are three letters explaining Defendants' intent to file a motion to

1

**JA172**

dismiss the Complaint. The first was filed by Pestana and Katz (the "City Defendants"). (See "City Defendants Motion," Dkt. No. 36.) The second letter motion was filed by Bonina and LaSalle (the "State Defendants"). (See "State Defendants Motion," Dkt. No. 41.) The third letter motion seeking dismissal was filed by Kearse. (See "Kearse Motion," Dkt. No. 47.) Also before the Court are Plaintiffs' three letters in opposition to the letter motions. (See "Opposition to City Defendants," Dkt. No. 39; "Opposition to State Defendants," Dkt. No. 44; and "Opposition to Kearse," Dkt. No. 55.)

The Court now construes these letters as motions to dismiss the Complaint. See Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming exchange of letters as motion to dismiss). For the reasons stated below, the letter motions are DENIED IN PART. The Court reserves judgment on certain arguments pending the outcome of Plaintiffs' motion for partial summary judgment, which is currently pending before the Court.

## I.    BACKGROUND[1]

The Court assumes familiarity with the factual background as recited in the Court's prior order directing

---

[1] All factual and procedural background is drawn from the Complaint. Except where directly quoted, no citations will be made to the relevant docket entries.

2

**JA173**

the unsealing of the exhibits to the Complaint. (See "Unsealing Order," Dkt. No. 58, at 2-5.) To briefly summarize, CRC is a non-profit organization that seeks to challenge systemic injustice across the country, an interest shared with the Law Professors. In May 2021, the Law Professors filed twenty-one grievance complaints (the "Grievance Complaints") against current and former assistant district attorneys working in the Queens District Attorney's Office, claiming prosecutorial misconduct they allegedly committed while so employed. The Grievance Complaints requested that the respective grievance committees publicly investigate and, if appropriate, discipline each attorney specified. Plaintiffs then created a website where they published the Grievance Complaints for public viewing, urging visitors to email the Grievance Committee about the allegations in the complaints.

Section 90(10) of the New York Judiciary Law, however, states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10) ("Section 90(10)"). Because of this provision, James Johnson ("Johnson"), then-Corporation Counsel to the City of New York, sent letters to each grievance committee expressing his concerns about the online publication of the Grievance

3

**JA174**

Complaints (the "Johnson Letter"). Shortly thereafter, the Law Professors received a letter from defendant Kearse notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and kept confidential (the "Kearse Letter"), essentially dismissing the Law Professors as complainants and denying them access to information about the proceedings. The Johnson and Kearse Letters provide the primary basis for the allegations of wrongdoing asserted in the Complaint.

Following their receipt of the Johnson and Kearse letters and the subsequent events, Plaintiffs brought suit in this Court. They allege (1) Defendants retaliated against the Law Professors in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment and Article I, Section 8 of the New York Constitution both facially and as-applied; (4) Defendants violated the United States and New York Constitutions by denying Plaintiffs their right to access government proceedings and records; and (5) if the Court finds that the statute is constitutional, Defendants must allow access to the records at issue under Section 90(10)'s good-cause exception. Plaintiffs sue under 42 U.S.C. Section 1983 ("Section 1983").

**JA175**

Shortly after filing the Complaint, Plaintiffs submitted a motion to this Court requesting the Court order the unsealing of the exhibits to the Complaint, and the Court granted that motion on January 25, 2022. (See Unsealing Order.) Plaintiffs then filed an unsealed version of the Complaint. (See Dkt. No. 59.)

## II.   LEGAL STANDARD

The City Defendants move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), while the State Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), and Kearse moves to dismiss the Complaint under both Rule 12(b)(1) and Rule 12(b)(6).

### 1.   Rule 12(b)(1) Standard

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). When faced with a motion to dismiss for lack of subject-matter jurisdiction, a plaintiff must establish the court's jurisdiction by a preponderance of the evidence. See Davis v. Kosinsky, 217 F. Supp. 3d 706, 707 (S.D.N.Y. 2016). In reviewing a Rule 12(b)(1) motion, a district court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."

JA176

Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (quoting Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)). However, where there is a factual dispute, the court may look to evidence outside the complaint to resolve any disputed issues of jurisdictional facts. See id. In reviewing information outside the pleadings, courts may not consider conclusory statements or hearsay, and the body of law applicable to Federal Rule of Civil Procedure 56 applies. See Davis, 217 F. Supp. 33 at 708.

### 2.    Rule 12(b)(6) Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual

6

**JA177**

allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678. In adjudicating a Rule 12(b)(6) motion, a court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

### III. DISCUSSION

Because jurisdiction is a threshold issue, the Court will first assess the arguments for dismissal under Rule 12(b)(1) before turning to the arguments that Plaintiffs failed to state a claim for relief.

A.    LACK OF SUBJECT MATTER JURISDICTION

There is no question that this Court would ordinarily have subject-matter jurisdiction over this action. See 28 U.S.C. § 1331 (conferring federal question jurisdiction), § 1343(a) (providing original jurisdiction over civil rights actions), § 1367 (allowing federal courts to exercise supplemental jurisdiction). However, the State Defendants argue that this Court should decline to exercise its

jurisdiction over this case and dismiss it pursuant to Rule 12(b)(1), due to the principles articulated in any of three abstention doctrines: Younger abstention, O'Shea abstention, or Pullman abstention. (See State Defendants Motion at 1-3.) Kearse joins in these arguments for dismissal. (See Kearse Motion at 1-2.) For the reasons explained below, the Court finds each of these abstention doctrines inapplicable to the case at hand.

### 1.    Younger Abstention

State Defendants and Kearse first argue that the doctrine of Younger abstention counsels the Court to decline jurisdiction over this case. The Supreme Court has long held that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 368 (1989). The doctrine of Younger abstention, however, provides that "federal courts must decline to exercise jurisdiction in three such exceptional categories of cases." Trump v. Vance, 941 F.3d 631, 637 (2d Cir. 2019). Those three categories say federal courts should not intrude into (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial

8

**JA179**

functions." Id. (quoting Sprint Commc'ns v. Jacobs, 571 U.S. 69, 78 (2013)).

The State Defendants claim this case falls into the second category. They cite the Supreme Court's decisions in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), and Sprint as primary support for their contention that attorney disciplinary proceedings are civil enforcement proceedings entitled to Younger abstention. But both of those cases are notably, and significantly, different from the case at hand.

In Middlesex, an attorney was charged with disciplinary violations for engaging "in conduct that [was] prejudicial to the administration of justice," after criticizing a criminal court to the media in the middle of a high-profile trial, to which he was not counsel of record. Middlesex, 457 U.S. at 428. Instead of responding to the disciplinary committee, the attorney brought suit challenging the disciplinary rules in federal court. The Supreme Court ruled that federal courts should abstain because (1) state bar disciplinary proceedings "are of a character to warrant federal-court deference"; and (2) the state had very important interests in the pending judicial proceedings, so "as long as the constitutional claims of [Plaintiffs] can be determined in the state proceeding and so long as there is no showing of bad faith,

9

harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Id. at 434–35.

Sprint more recently listed Middlesex as an example of a decision applying Younger to a state enforcement proceeding, which the Court described as "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." Sprint, 571 U.S. at 79. These two Supreme Court decisions show that the State Defendants are correct that attorney disciplinary proceedings are the type of state proceeding that warrants abstention to avoid federal intrusion into the state process.

However, the federal action in this case would not intrude into the attorney disciplinary process. Unlike the federal plaintiff in Middlesex, Plaintiffs here are not the subjects of state disciplinary proceedings. Per the uncontroverted facts alleged in the Complaint, Plaintiffs are not uninvolved in any state disciplinary proceeding that resulted from the Grievance Complaints. This contention is supported by the Kearse Letter, which told Plaintiffs that any investigation into their grievance complaints would be initiated *sua sponte* and remain confidential.

Because Plaintiffs are not parties to the grievance proceedings, two significant conclusions follow, both of

10

which distinguish this case from Middlesex. First, the grievance proceedings at issue here were not initiated to sanction Plaintiffs for any acts of misconduct related to state judicial functions. Second, it is unclear how Plaintiffs would be able to bring their constitutional challenges in those state disciplinary proceedings due to their lack of direct involvement in the underlying actions. Further, Defendants have provided no argument or evidence that this Court, in deciding this federal case, would in *any* way interfere with or intrude upon the possible state disciplinary hearings.

The justification underpinning Younger abstention is the "seriousness of federal judicial interference with state civil functions." Huffman v. Pursue, Ltd., 420 U.S. 592, 603 (1975). In this case, the federal judiciary is not being asked to interfere with state civil functions. Plaintiffs' challenge focuses on the alleged retaliation against them for publishing their grievance complaints, as well as on the potential constitutional issues implicated in the enforcement of Section 90(10). This interpretation constitutes a major distinction from prior cases that have applied Younger. In Schorr v. DoPico, for instance, the Second Circuit affirmed a Younger dismissal where the "focus of [the federal plaintiff's] claims is an ongoing state attorney disciplinary

11

**JA182**

proceeding, which falls squarely within <u>Younger</u> abstention."[2] 686 F. App'x 34, 36 (2d Cir. 2017).

The focus of Plaintiffs' suit here is not any ongoing state disciplinary proceeding. Rather, it is the wrongful retaliation Plaintiffs allege having been subjected to for publishing the Grievance Complaints. For purposes of resolving this dispute, it does not matter what the Grievance Committee is doing to investigate the complaints in question. What Plaintiffs seek is merely a federal court ruling that the information about the grievance proceedings that Plaintiffs requested Defendants provide constitute public records, and that in connection with Plaintiffs' publication of the material, their First Amendment rights are being adequately protected.

The relief Plaintiffs ask for further supports a determination that this suit will not interfere with any state disciplinary proceedings. The Complaint requests the Court to:

(1) declare that Defendants' harassment, threats, and retaliation violate the First Amendment;

(2) enjoin Defendants from further harassment, threats, and retaliation;

---

[2]    It is also worth noting that in <u>Schorr</u> the federal plaintiff was the subject of the attorney discipline proceedings, again a distinction from the case at hand.

12

**JA183**

(3) declare that Defendants unlawfully denied the Law Professors the status of "complainant" in violation of the Constitution, as the action was allegedly taken in retaliation for their publishing the Grievance Complaints;

(4) enjoin Defendants from treating Plaintiffs' complaints different from those of similarly situated complainants and in retaliation for their publishing the Grievance Complaints;

(5) declare that Section 90(10) violates the First Amendment and the New York Constitution;

(6) enjoin all Defendants from enforcing or attempting to enforce Section 90(10) to preclude Plaintiffs from publishing the Grievance Complaints;

(7) declare that Section 90(10), by denying public access to state disciplinary proceedings regarding alleged misconduct by assistant district attorneys, violates the federal and New York Constitutions;

(8) enjoin all Defendants from enforcing or attempting to enforce Section 90(10) to deny such public access;

(9) order Defendants to make public all records regarding the Law Professors' complaints; and

(10) declare there is good cause to unseal all disciplinary proceedings and records stemming from the Law Professors' complaints. (See Complaint at 38-40.)

13

**JA184**

Even if the Court were to take every one of those actions, nothing would necessarily affect the way in which the State can conduct its disciplinary investigations and disciplinary proceedings. The Court would not be stepping in or directly interfering with such proceedings. Increased public disclosure may generate increased attention and publicity for the state's actions, but as the Supreme Court has said, "even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'" Sprint, 571 U.S. at 81–82 (quoting Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236 (1984)). The Sprint Court cautioned against allowing the exception to swallow the rule. In fact, federal court abstention here would unduly extend the limited Younger exception to include federal cases where a state proceeding would not be directly affected by the outcome of the federal case, but where the federal and state cases are tangentially related. The Court finds Younger and its progeny do not provide a compelling basis for the Court to take the exceptional and extraordinary measure of declining jurisdiction over this matter.

   2.  O'Shea Abstention

The State Defendants and Kearse next argue that the Court should decline to exercise its jurisdiction under the abstention principles set forth in O'Shea v. Littleton, 414

14

**JA185**

U.S. 488 (1974). They assert that O'Shea abstention is appropriate whenever the requested relief would "improperly interfere in the 'internal workings of state courts.'" (State Defendants' Motion at 3 (quoting Kaufman v. Kaye, 466 F.3d 83, 86 (2d Cir. 2006).) But that proposition represents an overstatement of the doctrine and misrepresents both O'Shea and Kaufman.

The plaintiffs in O'Shea sought an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials," which the Supreme Court characterized as "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that Younger v. Harris and related cases sought to prevent." O'Shea, 414 U.S. at 500. O'Shea counseled federal courts to abstain from hearing cases where the requested relief would constitute "a major continuing intrusion of the equitable power of the federal courts into the *daily conduct* of state criminal proceedings." Id. at 502 (emphasis added).

The Second Circuit's caselaw applying O'Shea clarifies this guidance. Kaufman heard a challenge to the procedure for assigning appellate panels in New York's Second Department of the Appellate Division, and the Second Circuit affirmed O'Shea dismissal because the Court could not resolve the case

"without committing to resolving the same issues as to the remedy chosen by the state and as to the subsequent case-by-case implementation of the assignment procedures in the Second Department." Kaufman, 466 F.3d at 87. In simpler terms, federal courts cannot "legislate and engraft new procedures upon existing state criminal practices." Id. at 86 (quoting Wallace v. Kern, 520 F.2d 400, 404 (2d Cir. 1975)). O'Shea abstention "seeks to avoid" "[o]ngoing, case-by-case oversight of state courts." Disability Rights N.Y. v. New York, 916 F.3d 129, 136 (2d Cir. 2019).

That doctrine is very different from what Plaintiffs are seeking in the case now before the Court. Here, Plaintiffs are asking the Court to determine the constitutionality of a state statute, not to oversee internal judicial procedures or ongoing proceedings, and requesting appropriate relief in the event the Court finds the statute unconstitutional. Determining the constitutionality of a state statute is, to quote Marbury v. Madison, "emphatically the province and duty of the judicial department." 5 U.S. (1 Cranch) 137, 177 (1803); see also id. at 178 ("So if a law be in opposition to the constitution . . . the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.").

16

**JA187**

In the same vein, the injunctive relief Plaintiffs request does not ask the Court to change state procedure for handling misconduct proceedings or anything similar.[3] It is either focused on the rights Plaintiffs themselves claim, or asks this Court to prevent Defendants from enforcing an invalid law if it rules that Section 90(10) is unconstitutional. Thus, under the facts presented here, O'Shea abstention is inapplicable and does not provide compelling grounds for this Court to abstain from exercising its jurisdiction.

3. Pullman Abstention

Defendants' final argument for Rule 12(b)(1) dismissal of the Complaint is that the Court should decline to exercise its jurisdiction under the doctrine of Pullman abstention. The Pullman abstention doctrine holds that federal courts should "abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Alliance of

---

[3] In Disability Rights, the Second Circuit found O'Shea abstention applied because the plaintiff-appellants were requesting relief that would "have federal courts conduct a preemptive review of state court procedure in guardianship proceedings." 916 F.3d at 137. By contrast, Plaintiffs here are not seeking to have this Court examine state court procedure regarding attorney discipline proceedings. They are only asking the Court to invalidate the privacy provision governing those procedures *if* the Court concludes that that provision is unconstitutional, thus otherwise leaving the existing procedure intact.

17

**JA188**

Am. Insurers v. Cuomo, 854 F.2d 591, 601 (2d Cir. 1988) (quoting Midkiff, 467 U.S. at 236).

The Second Circuit has held that Pullman abstention "may be appropriate" when three conditions are met: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible 'to an interpretation by a state court that would avoid or modify the federal constitutional issue.'" Vermont Right to Life Comm. v. Sorrell, 221 F.3d 376, 385 (2d Cir. 2000) (quoting Greater N.Y. Metro. Food Council v. McGuire, 6 F.3d 75, 77 (2d Cir. 1993) (per curiam)).

None of these three conditions are met here. First, Section 90(10) is not unclear. It is a very straightforward provision stating that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law § 90(10). Second, resolution of the constitutional issue does not depend on the interpretation of state law; it depends on interpretation of federal jurisprudence embodying the First Amendment. See Flores v. Stanford, No. 18 Civ. 2468, 2019 WL 4572703, at *6 (S.D.N.Y. Sept. 20, 2019) (finding the second criterion for

18

**JA189**

Pullman abstention was not met where "plaintiffs' federal constitutional claims do not depend on an interpretation of New York State law — rather, they depend on an interpretation and application of federal [constitutional] jurisprudence"). And third, a state court could not interpret Section 90(10)'s confidentiality provision in a way that would avoid the First Amendment question, as the First Amendment question is the entire question at issue.

Because none of the necessary prerequisites for Pullman abstention are met here, the Court's declining to exercise subject-matter jurisdiction under that doctrine is unwarranted. This determination holds with particular force because abstention "is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law" and where deciding whether to abstain, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." Vermont Right to Life Comm., 221 F.3d at 385 (internal quotations omitted). The scales tip towards exercise of jurisdiction here, and the Court declines to abstain.

Accordingly, Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction is denied.

19

JA190

B.    <u>FAILURE TO STATE A CLAIM</u>

Having established its jurisdiction over this dispute, the Court next turns to the arguments Defendants' raise asking the Court to dismiss the Complaint pursuant to Rule 12(b)(6). The City Defendants and Kearse each put forth separate grounds for dismissal, all of which are evaluated below in turn. While the Court can reach a decision on several of the purported grounds for dismissal, certain arguments -- that Plaintiffs failed to state a claim for First Amendment retaliation and that the Defendants are entitled to qualified immunity -- require the Court to first determine whether Section 90(10) violates the First Amendment, either facially or as applied. That question forms the basis of Plaintiffs' currently pending motion for partial summary judgment. (<u>See</u> Dkt. Nos. 63, 64.) The Court will reserve decision on those arguments pending resolution of the motion for partial summary judgment.

    1.    <u>The City Defendants' Arguments</u>

The City Defendants present four arguments for dismissal: (1) the claims are barred by "absolute privilege" (City Defendants Motion at 1); (2) the City Defendants are improper defendants for a challenge to Section 90(10); (3) Plaintiffs failed to state a claim for First Amendment retaliation because they cannot establish they engaged in

20

**JA191**

protected speech; and (4) that the City Defendants are protected by qualified immunity because their conduct did not violate a clearly established constitutional right.

As discussed, the latter two arguments require the Court to determine whether Section 90(10) violates the First Amendment, so the Court declines to assess those arguments at this time. The Court can, however, determine whether dismissal of the Complaint is warranted on the ground of absolute privilege or that the City Defendants are improper defendants.

### a.    Absolute Privilege

City Defendants' argue they should be dismissed from the suit because they are protected by absolute privilege. Plaintiffs counter that absolute privilege does not apply to Section 1983 cases.[4] "Absolute privilege" refers to the concept that "public policy demands that certain communications . . . cannot serve as the basis for the imposition of liability in a [legal] action." Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) (quoting Toker v. Pollak, 376 N.E.2d 163, 166 (N.Y. 1978)).

---

[4]  The parties' respective arguments are a bit clouded by some interchangeable use of "privilege" and "immunity" on both sides. To be clear, the City Defendants do not appear to be arguing that they are absolutely immune from suit, but rather that their letters to the Grievance Committee cannot serve as the basis for any legal claims because those letters are protected by absolute privilege.

21

Such communications include those made by individuals "participating in a public function, such as judicial, legislative, or executive proceedings." Toker, 376 N.E.2d at 166 (citations omitted). It is undisputed that attorney disciplinary proceedings are considered judicial proceedings. See Anonymous v. Ass'n of the Bar, 515 F.2d 427, 433 (2d Cir. 1975).

While they do not specify that their claim of privilege is grounded in state law, the City Defendants cite New York law principles and definitions for their assertation that absolute privilege doctrine bars the claims at issue here. (See City Defendants Motion at 1 ("It is well-established New York law that statements made in the context of judicial or quasi-judicial proceedings are absolutely privileged.").) However, Plaintiffs' claims assert a mix of federal law and state law claims. In the Second Circuit, when a plaintiff brings both federal and state law claims and the evidence at issue is relevant to all claims, "courts consistently have held that the asserted privileges are governed by the principles of federal law." von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987). Thus, the relevant inquiry is whether federal law, not New York law, recognizes an absolute judicial proceedings privilege applicable here, and, if it does not,

whether this Court should nonetheless defer to the state-law privilege.

Federal courts have not recognized an absolute judicial-proceedings privilege under federal law. Where a privilege has not yet been recognized under federal law, the Second Circuit has advised that "as a matter of comity, federal courts accord deference to state-created privileges, [but] such privileges are construed narrowly and must yield when outweighed by a federal interest in presenting relevant information to the trier of fact." United States v. 31-33 York St., 930 F.2d 139, 141 (2d Cir. 1991) (citations omitted). Courts in this District have applied a "balancing test" to these privilege questions, weighing the deference to be accorded the state-law privilege with the need for the information sought, including the public interest in either protecting or disclosing the information. See Howard v. City of New York, No. 12 Civ. 933, 2013 WL 174210, at *2 (S.D.N.Y. Jan. 16, 2013).

Here, the scales tilt in favor of construing the judicial-proceedings privilege narrowly and finding the privilege inapplicable to the facts at hand. The Johnson and Kearse Letters would both be barred from judicial consideration if the privilege applied. The Johnson Letter is at the heart of this dispute -- it forms the basis for all

23

**JA194**

Plaintiffs' claims, including the claims under the federal Constitution. There is a strong interest and need for the information contained in that letter to be considered in the Court's adjudication of the controversy at hand. The New York judicial-proceedings privilege is a prudent protective measure against common law tort claims like defamation and libel, but there is also an overwhelming interest in ensuring public officials do not violate an individual's constitutional rights. The balance of these interests weighs against applying a state-law privilege that has not been recognized under federal law to shield a particular set of public officials from litigating civil rights claims. After balancing these considerations, the Court concludes that the City Defendants' letters are not barred by the judicial-proceedings privilege from this Court's consideration in the resolution of the parties' underlying dispute.

> b.    Improper Defendants

First, the Court notes that the City Defendants assert that all claims against Katz should be dismissed because the Complaint does not identify any actions taken by her. That point is accurate. Mentions of Katz in the Complaint are limited to the Corporation Counsel sending the Johnson Letter in his capacity as Katz's attorney. But while sparse, those allegations are sufficient to withstand a motion to dismiss.

24

**JA195**

It is well-settled that "[t]he lawyer-client relation [is] one of agent-principal," United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993), meaning the Complaint alleges Katz's agent acted on her behalf as her attorney.

At the pleading stage, a plaintiff need only allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quotations omitted). The Complaint satisfies this requirement in its allegations of Katz's wrongdoing through her agent-attorney. Perhaps discovery will show otherwise, but at this time, Katz should not be dismissed from the suit.

Second, and more broadly, the City Defendants argue they should be dismissed from the suit because they are not proper defendants for a challenge to Section 90(10) because they do not enforce that law. They do not cite any authority for this argument. (See City Defendants Motion.) Plaintiffs counter that the City Defendants' wrote to the Grievance Committee complaining that the Law Professors violated Section 90(10), and that such action is enough to open the City Defendants up

**JA196**

to a lawsuit challenging the statute. (See City Defendants Opposition at 3.)

Plaintiffs' argument finds indirect support in the Supreme Court decision in Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014). In that case, a non-profit organization brought a pre-enforcement challenge to an Ohio law that prohibited people from making false statements about the voting record of a candidate during a political campaign. One of the defendants was then-Congressman Steve Driehaus, the subject of the alleged false statements. Driehaus had filed a complaint with the Ohio Elections Commission alleging that Susan B. Anthony List violated the Ohio law by falsely representing his voting history on abortion. His complaint led to a Commission hearing, which found probable cause that a violation had occurred. The Supreme Court determined that Susan B. Anthony List had demonstrated an injury-in-fact sufficient for Article III standing in its suit against Driehaus. Id. at 168.

Plaintiffs argue that the City Defendants are analogous to Driehaus, and thus their action can go forward. But the Supreme Court did not address or assess whether Driehaus was a proper defendant -- and, on remand, Susan B. Anthony List voluntarily dismissed all claims against Driehaus and proceeded only against the Elections Commission and its

26

**JA197**

members in their official capacities. See Susan B. Anthony List v. Ohio Elections Comm'n, 45 F. Supp. 3d 765, 770 n.4 (S.D. Ohio 2014). So Susan B. Anthony List does not end this Court's inquiry in the instant case, as Plaintiffs believe it should.

Instead, the Court finds persuasive guidance in a recent decision from another court in this Circuit. In Carpenter v. James, No. 21 Civ. 6303, -- F. Supp. 3d --, 2021 WL 5879090 (W.D.N.Y. Dec. 13, 2021), the Western District of New York considered several constitutional challenges to New York's public accommodations laws. New York State Attorney General Letitia James sought to be dismissed from the lawsuit, claiming she was an improper defendant because her enforcement power consisted of the ability to file administrative complaints, a task almost anybody could complete. See id. at *8. The court held that James was a proper defendant because "to show that her injury will be 'redressed by a favorable decision,' Plaintiff need not prove that 'a favorable decision will relieve [her] every injury.'" Id. (quoting Susan B. Anthony List., 573 U.S. at 157, and Larson v. Valente, 456 U.S. 228, 243 n.15 (1982)). The plaintiff in Carpenter would obtain partial relief through an injunction against Attorney General James, and that was sufficient to establish jurisdiction over her as a defendant.

27

**JA198**

The same principles apply here. An injunction against the City Defendants would provide Plaintiffs with, at minimum, partial relief. They allege that the City Defendants will continue to send letters to the Grievance Committee, or as they say, that, absent an injunction, the "threats and retaliation will continue," (Complaint ¶ 77). According to the Complaint, the Kearse and Johnson letters accuse the Law Professors of violating New York state law, and the Law Professors are concerned the letters could hurt their reputation or position as attorneys in good standing in New York. Plaintiffs would obtain relief from that potential injury if the Court enjoins the City Defendants from telling the Grievance Committee that the Law Professors are violating Section 90(10). That relief would be enough to allow the action against the City Defendants to continue. Accordingly, the Court finds that the City Defendants are proper defendants in this lawsuit.

2.  Kearse's Arguments

Kearse argues the suit against her should be dismissed because (1) the Eleventh Amendment bars a suit against her in her official capacity as Chief Counsel to the Grievance Committee; (2) she is entitled to absolute immunity as an official acting in a quasi-judicial capacity; and (3) the doctrine of qualified immunity prohibits a suit against her

28

**JA199**

in her personal capacity. (See Kearse Motion at 2-3.) For the reasons explained above, the Court will not assess the qualified immunity argument at this time.

a.    Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution bars "federal suits against state governments by a state's own citizens" or by citizens of another state. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Hans v. Louisiana, 134 U.S. 1, 15 (1890)). It is well-established that "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of the state." Id. (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)); see also Mancuso v. N.Y. State Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996) (explaining that a government body is entitled to Eleventh Amendment "immunity if it can demonstrate that it is more like an 'arm of the State,' such as a state agency, than like 'a municipal corporation or other political subdivision.'" (citations omitted)).

Plaintiffs do not dispute that the Grievance Committee is an arm of the State of New York and is entitled to Eleventh Amendment immunity. Indeed, the Second Circuit has already

29

**JA200**

acknowledged as much to be true. See Napolitano v. Saltzman, 315 F. App'x 351, 351 (2d Cir. 2009) ("We affirm the district court's holding that the Eleventh Amendment bars [Plaintiff's] claims for damages against . . . the Grievance Committee[] and [Counsel to the Grievance Committee] in his official capacity.").

Nevertheless, Eleventh Amendment immunity does not insulate the Grievance Committee and Kearse from every lawsuit. First, Kearse may still be sued in her individual capacity rather than her official capacity. See Ford v. Reynolds, 316 F.3d 351, 356 (2d Cir. 2003). Second, Kearse may still be sued in her official capacity for prospective, injunctive relief under the doctrine set forth in Ex parte Young, 209 U.S. 123 (1908). See Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) ("The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). The Ex parte Young exception to Eleventh Amendment immunity applies when "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." D.K. v. Teams, 260 F. Supp. 3d 334, 352 (S.D.N.Y. 2017) (quoting Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)).

JA201

Plaintiffs' Complaint meets that standard. They seek injunctive relief to stop an alleged violation of federal law. They allege Section 90(10) violates the First Amendment and that they will face future, continued harassment, retaliation, or punishment for exercising their First Amendment rights. In terms of the injury alleged and the requested relief, this case presents the quintessential lawsuit that falls under the Ex parte Young doctrine.

While Plaintiffs may not properly seek monetary damages from Kearse, to the extent they seek relief from her in Kearse's official capacity as counsel to the Grievance Committee, they may seek injunctive (or declaratory) relief to prohibit future constitutional violations. To that extent, the Eleventh Amendment does not bar this action and dismissal on Eleventh Amendment grounds is unwarranted. Defendants' motion to dismiss the Complaint on the ground of state sovereign immunity is denied.

b.    Quasi-Judicial Immunity

Finally, Kearse claims she is entitled to absolute immunity because in taking the action at issue she was functioning in a quasi-judicial capacity. The Second Circuit has indeed held that counsel to the Grievance Committee "enjoys absolute immunity for his actions as counsel . . ., which are 'quasi-public adjudicatory [or] prosecutorial' in

31

**JA202**

nature." Napolitano, 315 F. App'x at 351-52 (quoting Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 58 (2d Cir. 1996)). Plaintiffs contend this immunity is inapplicable for the same reason as Eleventh Amendment immunity: the immunity does not apply to claims for injunctive relief (see Opposition to Kearse at 2), but the inquiry is not as simple as either party would like the Court to believe.

Ex parte Young provided an exception to Eleventh Amendment immunity for suits seeking prospective injunctive relief, but in 1996, Congress amended Section 1983 to state that in "any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. While the statute does not speak to so-called "quasi-judicial officers," the category into which Kearse falls, the Court need not determine the extent to which the protection for quasi-judicial officers differs, if at all, from that for judicial officers for two reasons.

First, the amended text of Section 1983 explicitly allows for suits seeking declaratory relief. See id.; see also Brown v. City of New York, 210 F. Supp. 2d 235, 239 n.6 (S.D.N.Y. 1999) ("The doctrine of individual immunity does not protect against claims for declaratory relief." (citing

32

the Senate Report to the 1996 amendment to Section 1983)). This exception means that a judicial officer can still be sued for declaratory relief. Because quasi-judicial immunity has the same reach as judicial immunity, see, e.g., Thaler v. Casella, 960 F. Supp. 691, 700 (S.D.N.Y. 1997), a quasi-judicial officer like Kearse may still be sued for declaratory relief. The doctrine of absolute immunity does not require the dismissal of Plaintiffs' entire suit insofar as they request declaratory relief on several issues.

Second, judicial immunity does not apply -- and, thus, does not bar a suit for injunctive relief -- when "the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act." Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005). The two necessary factors to determine whether an action was judicial in nature "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id. (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). In Napolitano, the Second Circuit concluded that counsel to the Grievance Committee was acting within the scope of the position that entitled him to quasi-judicial immunity when he "receiv[ed grievance] complaints . . . , investigat[ed] them, and ma[de]

33

recommendations to the Appellate Division." Napolitano, 315 F. App'x at 352.

Here, based on the facts alleged in the Complaint, Kearse did not merely receive, investigate, and provide a recommendation to the Grievance Committee. Plaintiffs allege she acted without any authority and "refuse[d] to treat a complainant as a complainant," departing from both the procedure followed in other grievance cases and New York law governing attorney grievance proceedings. (Complaint ¶¶ 72–75.) At this stage in the proceedings, the Court must "accept the allegations in the . . . complaint as true." Hill v. City of New York, 45 F.3d 653, 657 (2d Cir. 1995) (reviewing an order denying dismissal due to absolute immunity). The allegations in the Complaint are sufficient to plausibly suggest Kearse acted outside the scope of her authority. Under that determination, Kearse's actions would not be protected by judicial immunity.

While discovery may reveal Kearse did not act improperly towards Plaintiffs, the Court cannot conclude, at this time, that Kearse is entitled to absolute quasi-judicial immunity. Without quasi-judicial immunity, Plaintiffs' action for declaratory and injunctive relief may go forward. Because the law allows Plaintiffs to seek both declaratory and injunctive

34

**JA205**

relief from Kearse, Kearse's motion to dismiss the Complaint is denied.

## IV.  ORDER

It is hereby **ORDERED** that the motion so-deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the unredacted complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is **DENIED IN PART**; and it is further

**ORDERED** that the motion so-deemed by the Court (Dkt. No. 41) filed by Defendants Andrea E. Bonina and Hector LaSalle to dismiss Plaintiffs' Complaint is **DENIED**; and it is further

**ORDERED** that the motion so-deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs' Complaint is **DENIED IN PART**. The Court will reserve judgment on the remaining arguments made in the motions filed by the City Defendants and Kearse pending resolution of Plaintiffs' motion for partial summary judgment.

**SO ORDERED.**

Dated: New York, New York
      5 May 2022

_____
Victor Marrero
U.S.D.J.

35

**JA206**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/13/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CIVIL RIGHTS CORPS, ET AL.,          :
                                     :
            Plaintiffs,              :
                                     :      21 Civ. 9128 (VM)
      - against -                    :
                                     :      **DECISION AND ORDER**
GEORGIA PESTANA, ET AL.,             :
                                     :
            Defendants.              :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

On November 4, 2021, Plaintiffs Cynthia Godsoe, Nicole Smith Futrell, Daniel Medwed, Justin Murray, Abbe Smith, and Steven Zeidman, (together the "Law Professors"), and non-profit organization Civil Rights Corps ("CRC," and with the Law Professors, "Plaintiffs") filed suit against Georgia Pestana ("Pestana"), Corporation Counsel of the City of New York ("Corporation Counsel"); Melinda Katz ("Katz"), Queens County District Attorney; Andrea Bonina ("Bonina"), Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"); Justice Hector D. LaSalle ("LaSalle"), Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York; and Diana Maxfield Kearse ("Kearse"), Chief Counsel of the Grievance Committee (together, "Defendants"). (See "Complaint," Dkt. No. 59). Between December 20, 2021 and January 14, 2022, the Court

received three letters, so-deemed by the Court as motions to dismiss, from different Defendants seeking dismissal of the Complaint: one by Pestana and Katz (the "City Defendants") (see "City Defendants' Motion to Dismiss," Dkt. No. 35), the second by Bonina and LaSalle (the "State Defendants") (see "State Defendants' Motion to Dismiss," Dkt. No. 41), and the third filed by Kearse. (See "Kearse's Motion to Dismiss," Dkt. No. 47.) On May 5, 2022, the Court denied the State Defendants' motion in full and denied the City Defendants' and Kearse's motions in part and reserved judgment in part. (See Civil Rights Corps v. Pestana, No. 21 Civ. 9128, 2022 WL 1422852 (S.D.N.Y. May 5, 2022) ("CRC II")).

Now before the Court is Plaintiffs' motion for partial summary judgment ("Motion," Dkt. No. 63) and accompanying memorandum of law ("Plaintiffs' Brief," Dkt. No. 64). For the reasons explained below, the Motion is **GRANTED** in part. Also before the Court are the undecided issues from City Defendants' and Kearse's Motions to Dismiss. For the reasons below, both motions are **DENIED**.

## I.   BACKGROUND

A.   Factual Background

The Court assumes familiarity with the factual background as recited in the Court's two prior orders in this matter. (See Civil Rights Corps v. Pestana, No. 21 Civ. 9128,

2

2022 WL 220020, at *1-2 (S.D.N.Y. Jan. 25, 2022) ("CRC I");
CRC II, 2022 WL 1422852, at *1-2.) However, because a motion
for summary judgment is now before the Court, the Court is no
longer bound to accept the facts alleged in the Complaint as
true, nor must it draw all reasonable inferences in favor of
Plaintiffs. Instead, the Court draws the factual background
below from the undisputed facts set forth in the parties'
statements filed pursuant to Local Rule 56.1.[1]

CRC is a non-profit organization that seeks to challenge
systemic injustice across the country, an interest shared
with the Law Professors. On May 3, 2021, the Law Professors
filed twenty-one grievance complaints (the "Grievance
Complaints") against current and former assistant district
attorneys working in the Queens County District Attorney's
Office, claiming prosecutorial misconduct those attorneys
allegedly committed while so employed. Each Grievance
Complaint requested that the respective grievance committees
publicly investigate and, if appropriate, discipline the
attorney involved. Plaintiffs then created a website,
AccountabilityNY.org, and publicly published the Grievance
Complaints.

---

[1] See "Plaintiffs' 56.1 Statement," Dkt. No. 66; "City Defendants' 56.1
Statement," Dkt. No. 76; "State Defendants' 56.1 Statement," Dkt. No.
79; "Kearse's 56.1 Statement," Dkt. No. 84. Except where directly
quoted, no further citations to the record will be made in this factual
recitation.

On June 2, 2021, James Johnson ("Johnson"), then-Corporation Counsel of the City of New York, sent identical letters to each grievance committee expressing his concerns about the online publication of the Grievance Complaints (the "Johnson Letter.") Plaintiffs appended a copy of this letter as Exhibit 1 to the Complaint. (See Ex. 1, Dkt. No. 59.) Johnson wrote "[a]s Chief Legal Officer of the City of New York and as legal counsel to the Office of the District Attorney for Queens County" to "express [his] deep concern" about the Grievance Complaints. (Johnson Letter at 1.) Johnson explained the basis of his concern as that New York State Judiciary Law Section 90(10) ("Section 90(10)") "designates attorney disciplinary records -- including the complaint -- private and confidential." (Id. at 2.) He continued that "in direct contravention of this legal directive and long-established public policy, the complainant law professors not only posted the complaints online, but designed a special website to host these and future grievance complaints," an act that Johnson stated was "an orchestrated campaign to upend the attorney grievance process to advance their stated goal of holding prosecutors accountable." (Id. at 2.) Johnson concluded by stating that he was writing "to make sure that the Committee is aware" that Plaintiffs are conducting a "very public campaign . . . which, [he]

**JA210**

submit[s], runs afoul of the confidentiality provisions of the law and the purpose of the grievance process." (Id. at 3.)

Section 90(10), the statutory provision upon which Johnson relies, states that "all papers, records, and documents . . . upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of attorneys, shall be sealed and deemed private and confidential." N.Y. Jud. Law. § 90(10). Less than two weeks after they received the Johnson Letter, the Law Professors received a letter from defendant Kearse, a full copy of which is appended as Exhibit 2 to the Complaint, notifying them that any investigation into the Grievance Complaints would be initiated *sua sponte* by the Grievance Committee and "remain confidential pursuant to New York State Judiciary Law § 90." ("Kearse Letter," Ex. 2, Dkt. No. 59.) Plaintiffs interpreted the Kearse Letter as essentially dismissing the Law Professors as complainants and denying them access to information about the proceedings and any other benefits that come with "complainant" status. The Johnson and Kearse Letters provide the primary basis for the First Amendment violations alleged in Plaintiffs' Complaint.

Following their receipt of both letters, Plaintiffs, through counsel, wrote to the Grievance Committee, Pestana,

5

and Kearse, expressing their displeasure with the course of events. Defendant Pestana, who had succeeded Johnson as Corporation Counsel, responded and reasserted her Office's belief that Plaintiffs were running afoul of Section 90(10). Similarly, Kearse replied and reiterated that any possible investigation would be conducted by the Grievance Committee *sua sponte*.

B.   Procedural History

After the unsuccessful effort to resolve the parties' dispute by letter exchange, Plaintiffs filed this action. They allege (1) Defendants retaliated against the Law Professors in violation of their First Amendment rights; (2) violations of the Fourteenth Amendment's Equal Protection Clause; (3) that Section 90(10) violates the First Amendment and Article I, Section 8 of the New York Constitution, both facially and as-applied; (4) Defendants violated the Constitutions of the United States and of New York State by denying Plaintiffs their right to access government proceedings and records; and (5) if the Court finds that Section 90(10) is constitutional, Defendants must allow access to the records at issue under the statute's good-cause exception. Plaintiffs sue under 42 U.S.C. Section 1983 ("Section 1983").

**JA212**

Shortly after filing the Complaint, Plaintiffs submitted a motion to this Court requesting the Court order the unsealing of the exhibits to the Complaint, and the Court granted that motion on January 25, 2022. See CRC I, 2022 WL 220020. Plaintiffs then filed an unsealed version of the Complaint. (See Dkt. No. 59.) While that motion was pending, Plaintiffs filed a letter expressing their intent to file a motion for partial summary judgment (Dkt. No. 29), and City Defendants, State Defendants, and Kearse filed letters seeking leave to file motions to dismiss the Complaint. The Court ordered full briefing on Plaintiffs' motion for partial summary judgment but noted that it would resolve the anticipated motions to dismiss on the basis of the parties' pre-motion letters. (See Dkt. No. 56, (citing Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.)). On May 5, 2022, the Court issued an order on the motions to dismiss, denying State Defendants' motion to dismiss in full and denying the motions of Kearse and City Defendants in part, while reserving judgment on the issues that required a determination regarding Section 90(10)'s constitutionality. See generally CRC II, 2022 WL 1422852.

Now before the Court is Plaintiffs' Motion and accompanying memorandum of law, which seeks summary judgment

**JA213**

on Plaintiffs' third claim for relief: that Section 90(10) violates the First Amendment of the United States Constitution and Article I, Section 8 of the New York State Constitution, both as-applied and on its face. The Court has also received City Defendants', State Defendants', and Kearse's oppositions to the Motion (see "City Opposition," Dkt. No. 77; "State Opposition," Dkt. No. 78; "Kearse Opposition," Dkt. No. 82); Plaintiffs' reply to the opposition briefs, (see "Plaintiffs' Reply," Dkt. No. 85); as well as a brief in support of the Motion, filed by amicus curiae Newsday LLC, Pro Publica Inc., The Associated Press, and The New York Times Company. (See "Amicus Brief," Dkt. No. 73.)

## II.   LEGAL STANDARD

A.   Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 ("Rule 56") states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where, upon motion of one party, the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett,

8

**JA214**

477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court may consider all facts in the record before it. Id. at 323.

When a motion for summary judgment is properly supported by evidence, the party opposing a motion for summary judgment "may not rest upon mere allegations or denials -- rather, he must present sufficient probative evidence to establish a genuine issue of material fact." Horror Inc. v. Miller, 15 F.4th 232, 240 (2d Cir. 2021). Evidence that is "'merely colorable,' or is not 'significantly probative'" is insufficient to defeat a motion for summary judgment. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). In short, the nonmoving party's evidence must be persuasive enough that a reasonable jury could return a judgment in the nonmovant's favor. Id. at 241.

B.    First Amendment Legal Standard

The Court begins by noting that while certain free-speech violations, such as retaliation, brought under Article I, Section 8 ("Article I, Section 8") of the New York State Constitution are judged under the same principles that apply to claims alleging violations of the First Amendment to the United States Constitution (the "First Amendment"), see Martinez v. Sanders, 307 F. App'x 467, 468 n.2 (2d Cir. 2008), Article I, Section 8 generally offers broader protection than

9

**JA215**

the First Amendment. See O'Neill v. Oakgrove Constr., Inc., 523 N.E.2d 277, 280 n.3 (N.Y. 1988) ("The protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment."). This proposition is evident from the text of both provisions. Compare U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press."), with N.Y. Const. art. I § 8 ("Every citizen may freely speak, write and publish his or her sentiments on all subjects . . . and no law shall be passed to restrain or abridge the liberty of speech or of the press."). That means that any statute that fails to pass muster under federal law will fail under the more protective New York State Constitution.

The First Amendment protects against governmental intrusion on the right to free speech, including statutory intrusions. Statutes "may unconstitutionally restrict speech in one of two primary ways," the first of which is relevant here: "a statute may restrict speech based on the content of that speech." Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006). Such content-based restrictions on speech go against the principle that lies "[a]t the heart of the First Amendment[:] . . . that each person should decide for him or herself the ideas and beliefs deserving of

10

**JA216**

expression, consideration, and adherence." <u>Turner Broad. Sys. v. F.C.C.</u>, 512 U.S. 622, 641 (1994). For that reason, "the most exacting scrutiny" is used to evaluate the constitutionality of laws that "suppress, disadvantage, or impose differential burdens upon speech because of its content." <u>Id.</u> at 642. "Most exacting scrutiny," or "strict scrutiny," means that the law must be narrowly tailored to promote a compelling government interest.[2] <u>See</u> <u>John Doe, Inc. v. Mukasey</u>, 549 F.3d 861, 871 (2d Cir. 2008) (quoting <u>United States v. Playboy Ent. Grp., Inc.</u>, 529 U.S. 803, 813 (2000)).

Plaintiffs challenge Section 90(10) both facially and as applied, so it is important to distinguish the two types of challenges. A facial challenge looks to "only the text of the statute itself, not its application to the particular

---

[2] Plaintiffs also emphasize that the law is a "prior restraint" on speech because it "prohibit[s] speech before it occurs." (Plaintiffs' Brief at 13.) The Court notes the statute at issue here differs from those in classic prior-restraint cases. <u>See, e.g.</u>, <u>Near v. Minnesota</u>, 283 U.S. 697 (1931) (striking down a statute that allowed the state attorney general or any citizen to seek an injunction prohibiting a news publication from publishing certain information); <u>Lovell v. City of Griffin</u>, 303 U.S. 444 (1938) (holding unconstitutional an ordinance that prohibited the distribution of pamphlets without a permit); <u>CBS v. Davis</u>, 510 U.S. 1315 (1994) (staying a circuit court injunction that prohibited CBS from broadcasting certain footage). The fact pattern here more closely resembles the challenged law in <u>Landmark Communications v. Virginia</u>, which required strict confidentiality of all papers and proceedings before Virginia's judicial review commission and that the Supreme Court said "[did] not constitute a prior restraint." 435 U.S. 829, 838 (1978). However, because prior restraints on speech and content-based restrictions on speech are both subject to strict scrutiny, it is unnecessary to establish whether Section 90(10) is a prior restraint on speech, as there is no dispute it is a content-based restriction.

JA217

circumstances of an individual." Field Day, 463 F.3d at 174 (citing City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770 n.11 (1988)). On the other hand, an as-applied challenge "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Id.

### III. JURISDICTIONAL ISSUES

Before addressing the substantive claims at issue in the Motion, the Court must assess a few jurisdictional arguments presented by Defendants, fulfilling a federal court's obligation to establish its own jurisdiction before proceeding to consider the merits of a case.

First, State Defendants and Kearse argue that the Court should abstain from hearing this case. The Court has already addressed these arguments in its prior order and explained why each abstention doctrine is inapplicable to this matter. See CRC II, 2022 WL 1422852, at *3-7. Similarly, the second jurisdictional issue stems from City Defendants' claim that they are not proper parties to this dispute. The Court already denied this argument for dismissal in CRC II. See id. at *9-10.

Kearse next argues that there is no justiciable controversy and that the Court's deciding the

12

**JA218**

constitutionality of Section 90(10) would be equivalent to issuing an advisory opinion. (See Kearse's Opposition at 4.) She makes this argument because "[s]he never told Plaintiffs" they could not publicly disclose the Grievance Complaints. (Id.) Similarly, and together comprising the third jurisdictional issue, City Defendants argue that the case is not ripe for review. (See City Opposition at 6.)

Federal courts are empowered to hear only live, definite, and concrete disputes, the resolution of which would directly impact the interests of the parties before the Court. See In re Motors Liquidation Co., 829 F.3d 135, 167–68 (2d Cir. 2016) (detailing the constraints of federal courts' jurisdiction). The Court cannot render "an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937). Courts have recognized two ripeness doctrines: constitutional and prudential. An action is constitutionally unripe if "plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" National Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 588 (1992)). Prudential ripeness asks whether the issues are fit for judicial decision and what hardship withholding

13

consideration would bring to the parties. See National Org. for Marriage, 714 F.3d at 691.

Reading the Complaint and all its claims for relief in full, the Court finds the case is both constitutionally and prudentially ripe for review. Plaintiffs' alleged injury is neither conjectural nor hypothetical, as it has already occurred. Plaintiffs allege their First Amendment rights were violated after the following sequence of events: (1) they filed the Grievance Complaints and published them online, (2) because of the publication of the Grievance Complaints, Johnson, then New York City Corporation Counsel, sent Plaintiffs, and the Grievance Committee, a letter stating that Plaintiffs had violated New York law, (3) Plaintiffs felt threatened and harassed by the Johnson Letter, (4) the Grievance Committee, through Kearse, dismissed Plaintiffs as complainants, and (5) the parties continued to exchange correspondence in which neither the Corporation Counsel nor the Grievance Committee would rescind their comments. Plaintiffs allege the second, third, and fourth actions in this sequence were done in retaliation for their exercise of First Amendment rights. Without prematurely evaluating the merits of Plaintiffs' allegations, the Court finds nothing abstract, conjectural, speculative, or hypothetical about the injury Plaintiffs allege.

**JA220**

And as for Kearse's argument that any opinion would be advisory because she never told Plaintiffs they could not publish the Grievance Complaints, that statement misrepresents the alleged injury. It does not matter that Kearse never told any of the Plaintiffs that they could not publish their complaints; it does matter that Kearse allegedly deprived them of complainant status in retaliation for publishing the complaints. While Plaintiffs may claim other Defendants directly attempted to block the publication of the Grievance Complaints, Plaintiffs acted well within the confines of the Federal Rules of Civil Procedure when they brought several related claims against multiple Defendants in one lawsuit. See, e.g., Fed. R. Civ. P. 18 (joinder of claims); 20 (permissive joinder of parties).

Insofar as Plaintiffs claim they will be subject to future threats or harassment, the Second Circuit has advised that "pre-enforcement First Amendment claims" are reviewed under "somewhat relaxed standing and ripeness rules." National Org. for Marriage, 714 F.3d at 689. In these cases, "a real and imminent fear [that rights will be chilled] is enough." Id. (citing Laird v. Tatum, 408 U.S. 1, 13–14 (1972)). Given that Defendants repeatedly sent Plaintiffs allegedly threatening and harassing letters, several of which invoked Section 90(10), following Plaintiffs' publication of

15

the Grievance Complaints, the Court is persuaded that Plaintiffs felt a real and imminent fear that their First Amendment rights would continue to be chilled.

As for prudential standing, the Court finds nothing about this action that suggests "the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003). This case is similar to the type of many cases federal courts adjudicate every day that ask the Court to determine the constitutionality of a state statute and whether certain factual circumstances amount to a violation of law under Section 1983. The Court sees no compelling reason why a decision on these issues should be delayed. More importantly, though, parties could have their constitutional rights undermined by a delay if Section 90(10) is eventually deemed unconstitutional but the state continued to enforce the law in the time lapse between this suit and a subsequent one. Thus, the Court is unpersuaded that Defendants have shown there is a valid ripeness challenge in this litigation.

The fourth jurisdictional question raises similar issues: the State Defendants contest that any claim for public disclosure of investigative documents lacks ripeness because Plaintiffs have not sought remedy in the proper

16

**JA222**

administrative channels. (See State Opposition at 23.) The Court does not interpret Plaintiffs' claim at issue in this motion for partial summary judgment to seek the release of any investigative documents, and, as such, the Court lacks the benefit of full argument and briefing on this issue. State Defendants may renew this argument at a later in stage of the litigation when the Court evaluates claims that may lead to the public disclosure of investigative documents.

Fifth, City Defendants argue that the case is not ripe for review because "plaintiffs seek to enjoin the enforcement of Judiciary Law § 90(10), but no one has sought or threatened to enforce the law against them." (City Opposition at 7.) This contention demonstrates a misunderstanding of applicable legal principles. Plaintiffs' First Amendment claim is that they were retaliated against after exercising their First Amendment rights. As detailed below, the alleged retaliatory acts consisted of (1) Johnson telling the Grievance Committee that Plaintiffs were acting in violation of state law, an action that may be viewed as harassing or threatening, and (2) Kearse rescinding Plaintiffs' complainant status. Plaintiffs allege Defendants, including City Defendants, hide behind the auspice of enforcing Section 90(10) in making these threats. They seek enjoinment of the law's enforcement to the

17

**JA223**

extent that the law is being applied as a weapon to stifle Plaintiffs' free speech rights.

Sixth, City Defendants claim Plaintiffs lack standing to bring suit. To satisfy the requirements of constitutional standing, a plaintiff must have suffered a concrete, particularized, actual, and imminent injury-in-fact which was caused by "the conduct complained of" and will likely be redressed by a favorable judicial decision. Lujan, 503 U.S. at 560—61. The Court already has, above, found that Plaintiffs suffered a concrete and particularized, non-hypothetical injury, and the Court now finds Plaintiffs easily satisfy the remaining standing factors as well.

City Defendants do not dispute causation, and the Court's discussion of that factor is not difficult. Plaintiffs' alleged injury is that their First Amendment rights were violated when Defendants allegedly retaliated against them for exercising their constitutional right to free speech. That alleged injury was directly caused by Defendants' actions -- Defendants sent the Johnson Letter, the Kearse Letter, and subsequent correspondence, plus they dismissed Plaintiffs from the suit as complainants, and those actions caused the injury Plaintiffs allege.

City Defendants' argument for lack of standing largely relies on the redressability requirement, as they state that

18

**JA224**

"Plaintiffs simply cannot demonstrate that the City [D]efendants caused them a redressable injury related to the alleged enforcement of a law that the City [D]efendants have no power to interpret or enforce." (City Opposition at 1.) This argument, while dressed in different terminology, duplicates City Defendants' earlier argument that they should be dismissed as improper defendants. The Court assessed this argument at length in CRC II, and it sees no reason to reevaluate its conclusion from that decision. See CRC II, 2022 WL 1422852, at *9–10. As the Court stated in its prior Order, a favorable decision would provide Plaintiffs with redress for their injuries, so Plaintiffs have satisfied their burden of establishing standing. See id. at *9. The Court finds it has jurisdiction to decide this lawsuit and that there are no jurisdictional reasons to dismiss the Complaint.

## IV.  SUMMARY JUDGMENT DISCUSSION

Section 90(10) is a content-based restriction on speech, as it prohibits disclosure of "all papers, records and documents" specifically related to attorney discipline proceedings. There is no dispute that the statute, on its face, "applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015). That determination means

19

**JA225**

the law is "presumptively unconstitutional and may be justified only if the government proves that [the law is] narrowly tailored to serve compelling state interests." Id. This high burden is especially important in cases such as this one, where the speech at issue relates to the conduct of government prosecutors. The Supreme Court has repeatedly stated, "there is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." Landmark Commc'ns v. Virginia, 435 U.S. 829, 838 (1978) (quoting Mills v. Alabama, 384 U.S. 214, 218 (1966)).

As the Second Circuit recently noted, "[f]acial challenges are disfavored," so "it is a proper exercise of judicial restraint for courts to adjudicate as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues." Kane v. De Blasio, 19 F.4th 152, 174 (2d Cir. 2021) (modification in original) (quotations omitted). With that in mind, the Court begins by assessing the as-applied challenge and determining whether Section 90(10)'s publication prohibitions are narrowly tailored to serve a compelling government interest.

A.   Section 90(10) Is Unconstitutional As Applied to
     Plaintiffs' Case

20

**JA226**

In this case, an as-applied challenge means this Court is tasked with determining the constitutionality of Section 90(10)'s prohibition on (1) the publication of attorney grievance complaints by the private individuals who filed the complaints, and (2) the publication of correspondence related to grievance complaints or Grievance Committee business by the private recipients of that correspondence, as those are the two factual circumstances in which Section 90(10) applies here. Each prohibition must be narrowly tailored to support a compelling government interest.

1.   Grievance Complaints

When Johnson, as Corporation Counsel of the City of New York, wrote to the Grievance Committee to inform it of Plaintiffs' publication of the Grievance Complaints, he specifically wrote, "As you know, New York State Judiciary Law § 90(10) designates attorney disciplinary records -- *including the complaint* -- private and confidential." (Johnson Letter at 2 (emphasis added).) However, in their opposition to Plaintiffs' Motion, Defendants have seemingly conceded that Section 90(10) does not prohibit complainants' publication of their own grievance complaints. The State Defendants' Opposition and Kearse's Opposition both directly say that a party is free to publish its own grievance complaints under Section 90(10). (See Kearse's Opposition at

21

**JA227**

4; State Opposition at 2.)[3] This means, at minimum, that Johnson purported to enforce Section 90(10) while clearly acting outside the law's bounds.

State Defendants spill much ink examining the text of Section 90(10) to explain why the statute does not prohibit the publication of grievance complaints, all of which may be relevant when evaluating a facial challenge to the statute. In an as-applied challenge, however, the Court's inquiry concerns "the facts of [the] particular case" and "whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Field Day, 463 F.3d at 174. Under this doctrine the Court is concerned with the *application* of the statute rather than its text.

A concession that the text of Section 90(10) does not prohibit the publishing of grievance complaints does not resolve the concern that the New York City Corporation Counsel sought to halt and punish the publication of the grievance complaints under the auspice of upholding Section 90(10). The Johnson Letter is quite clear that the Corporation Counsel

---

[3] Despite Plaintiffs' clear statements that they were moving only for partial summary judgment on the issue of Section 90(10)'s constitutionality, City Defendants' Opposition completely fails to respond to the challenges to Section 90(10)'s constitutionality, instead addressing jurisdictional issues (some of which the Court has previously decided in CRC II) and discussing claims that are not at issue in the instant motion.

22

believed -- or at least asserted – that the publication of Plaintiffs' grievance complaints contravened Section 90(10)'s confidentiality provisions and that the Grievance Committee should be aware of this alleged illegal act. And Plaintiffs' as-applied challenge focuses on that action -- they ask the Court to determine whether Section 90(10) was enforced against them in violation of their First Amendment rights.

The Court concludes that if Section 90(10) is being used to block Plaintiffs' publication of their own grievance complaints, the statute is being applied in an unconstitutional manner. The Second Circuit has already so suggested. In Kamasinski v. Judicial Review Council, the Second Circuit noted that Section 90(10) could apply to three different categories of information that individuals may want to disclose: (1) "the substance of an individual's complaint or testimony;" (2) "the complainant's disclosure of the *fact* that a complaint was filed, or a witness's disclose of the *fact* that testimony was given;" and (3) "information that an individual learns by interacting with the [Judicial Review Council]." 44 F.3d 106, 110 (2d Cir. 1994). While, unlike this case, the facts in Kamasinski did not involve the first category, the Court continued to note,

> Whether the state may prohibit the disclosure of the
> substance of an individual's complaint or testimony
> merits little discussion. Penalizing an individual for

23

**JA229**

> publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment, and we agree with the district court that such a prohibition would be unconstitutional.

Id. (citing Mills, 384 U.S. at 218–19).

The situation contemplated in Kamasinski is exactly what unfolded here. There is no genuine factual dispute that Johnson wrote to the Grievance Committee expressing concern that Plaintiffs published the Grievance Complaints in violation of Section 90(10). In other words, a government official used Section 90(10) in an effort to prohibit the publication of grievance complaints publicly filed by the complainants themselves, an action this Court finds contrary to the First Amendment.

Whether Johnson intended to penalize Plaintiffs with that action is a question for resolution at a later stage of this litigation, as all that matters in the motion for partial summary judgment now before the Court is whether Section 90(10) is unconstitutional as applied to the facts at issue in this case. Here, the uncontroverted facts and Second Circuit precedent show that Section 90(10) was applied in an unconstitutional manner. The First Amendment prohibits a state from banning complainants from publishing their own attorney grievance complaints.

24

**JA230**

2.   <u>Correspondence Related to Complaints</u>

Plaintiffs' as-applied challenge is not limited to the publication of the Grievance Complaints, as Defendants also invoked Section 90(10) in an effort to bar Plaintiffs from publicizing the Johnson Letter and subsequent correspondence.[4] Plaintiffs challenge that application of the statute, and also any future government attempts to prohibit the publication of information related to the Grievance Complaints. Thus, the question before the Court is whether a state prohibiting individuals from publishing correspondence and documents related to a grievance complaint would violate the First Amendment.

This challenge concerns the other two types of information that the <u>Kamasinski</u> court described, broadly categorized as (1) facts related to the mere existence of an investigation, complaint, or testimony and (2) information learned from correspondence with the body investigating the complaints (here, the Grievance Committee). To assess whether prohibition on disclosure of information in these categories

---

[4] The Johnson Letter includes a footnote stating, "[T]his letter is sent in response to specific grievances and, thus, is private and confidential under Judiciary Law 90(10). As such, any disclosure of this letter by complainants without proper court permission would be unlawful under the Judiciary Law." (Johnson Letter at 3 n.4.) The Kearse Letter is marked "personal and confidential." (Kearse Letter at 1.) The parties disagree about whether that label meant the letter was to be kept confidential pursuant to Section 90(10), which uses the term "private and confidential."

JA231

violates the First Amendment, the Court must "balance [Plaintiffs'] asserted First Amendment rights against [the Government's] interests in preserving the confidentiality" of its attorney grievance proceedings. Butterworth v. Smith, 494 U.S. 624, 630 (1990); see also Kamasinski, 44 F.3d 110-11; Landmark Commc'ns, 435 U.S. at 841.

Because this inquiry entails a content-based regulation of speech, in balancing those interests the Court uses strict scrutiny to weigh the scales. In content-based First Amendment cases, it is well settled that the Government bears the burden of showing a law is narrowly tailored to support a compelling government interest. See, e.g., Playboy Entm't Grp., 529 U.S. at 817. Yet, while Plaintiffs devote a considerable portion of the Motion explaining why Section 90(10) cannot survive strict scrutiny (see Plaintiffs' Brief at 15-22), Defendants do not make any attempt to rebut the presumption of unconstitutionality that attaches to a content-based restriction on speech. Again, they instead argue that the statute, on its face, does not proscribe the publication of these materials. But, once again, even "the application of a facially neutral law so as to discriminate against certain speakers or idea[s] violates the First Amendment." Field Day, 463 F.3d at 193.

26

**JA232**

The Court notes that Section 90(10) is not facially neutral.[5] On its face, it imposes content-based restrictions. Defendants argue, however, that the law is constitutional on its face because the actions underlying the dispute here fall outside the bounds of Section 90(10) and the statute does not prevent the disclosure of the materials at issue. The trouble with this argument is that the Corporation Counsel, on behalf of the City of New York, repeatedly invoked and attempted to enforce Section 90(10) in the exact situations in which State Defendants (the only defendant group to make any arguments regarding the constitutionality of Section 90(10)) say the law does not apply. So, much like the above discussion regarding the publication of grievance complaints, the textualist analysis is irrelevant in the as-applied challenge. Even if the law, on its face, would allow the publication of the Johnson Letter and subsequent correspondence, here Section 90(10) is being used by government officials to stifle that speech.

Because no defendant attempted to explain why this limitation on speech was narrowly tailored to meet a compelling government interest, Defendants did not carry their burden of satisfying strict scrutiny. The only

---

[5] Despite this difference, the Court cites <u>Field Day</u> to highlight the distinction between facial and as-applied challenges to statutes.

27

**JA233**

government interests the Court is able to identify from the opposition papers are "broad-based privacy interests" that "require that these documents remain confidential and sealed from public disclosure." (State Opposition at 26.) State Defendants do not elaborate on that interest -- a far cry from the detailed interests that justified upholding the confidentiality of judicial misconduct proceedings in Kamasinski. See Kamasinski, 44 F.3d at 109-10. The Court also notes that the Second Circuit has specified that the interests in Kamasinski "inhere in the nature of judicial misconduct proceedings," and are thus not immediately applicable to attorney grievance proceedings. John Doe v. Mukasey, 549 F.2d 861, 877 (2d Cir 2008).

The Court recognizes that there may be valid and important, and perhaps even compelling, government interests in maintaining confidentiality in some aspects of attorney grievance proceedings. But even if Defendants had clearly articulated those interests, they did not make any showing that the application of Section 90(10) to block the publication of the correspondence at issue from government officials was narrowly tailored to achieve those interests. "A law is not narrowly tailored if a less restrictive alternative would serve the same interests." Open Soc'y Justice Initiative v. Trump, 510 F. Supp. 3d 198, 211

28

**JA234**

(S.D.N.Y. 2021) (citing <u>Playboy Entm't Grp.</u>, 529 U.S. at 813). The Court need not craft a less restrictive alternative to Section 90(10) because State Defendants' Opposition presents one: the law bars only Grievance Committee members, staff, and their agents from disclosing information related to proceedings. Thus, the statute does not apply to complainants or members of the general public.[6] (<u>See</u> State Opposition at 6.)

Looking only at the facts of the case before the Court, government officials of the State and City of New York applied Section 90(10) to prohibit Plaintiffs from sharing at least one letter they received regarding their Grievance Complaints. That action infringed on Plaintiffs' First Amendment right to freedom of speech in the name of upholding a governmental interest in keeping attorney discipline proceedings confidential. But because less-restrictive alternatives exist and Section 90(10), as it was applied to

---

[6] In perhaps their closest effort to identifying a compelling government interest furthered by the application of Section 90(10), State Defendants argue that eliminating the entire confidentiality provision of Section 90(10) would put confidential information, such as witness statements, financial records, privileged documents, and medical information, at risk of disclosure. (<u>See</u> State Opposition at 26.) The Court does not question the importance of the State's interest in keeping such information confidential, but no such information was contained in the documents for which Section 90(10)'s confidentiality provision was invoked against Plaintiffs, rendering the concern inapplicable in the as-applied challenge. Further, in a facial challenge to the statute, this asserted interest raises serious doubts about whether the statute is narrowly tailored, as Section 90(10) prohibits the disclosure of "all papers, records and documents," not just those containing legitimately confidential or sensitive information.

29

the facts of this case, is not narrowly tailored to a government interest in maintaining the confidentiality of attorney grievance proceedings, Plaintiffs' First Amendment right to publish the letters they received and similar correspondence not containing indisputably confidential or sensitive information outweighs the government's interest in confidentiality. This Court is unconvinced that the First Amendment allows the government to broadly prevent complainants, such as the Law Professors, from publicly sharing any and all correspondence, communication, or documents related to their own grievance complaints.

To the extent that Section 90(10) is being used to prohibit complainants from publicly sharing "papers, records and documents" related to that complainant's own grievance complaint related to attorney discipline, the law's confidentiality provision violates the First Amendment of the United States Constitution. Because Article I, Section 8 of the New York Constitution is even more protective of free speech, such applications of Section 90(10) also violate the New York State Constitution.

B.    Section 90(10)'s Constitutionality on its Face

Because the Court has found that the challenged statute is unconstitutional as it was applied to Plaintiffs' case, the Court declines to determine the constitutionality of the

30

**JA236**

statute on its face. See Kane, 19 F.4th at 174 (describing such decisions as a proper exercise of judicial restraint); United States v. Grace, 461 U.S. 171, 175 (1983) (noting the Court would only address whether a statute was unconstitutional under the facts of the case at hand despite a facial challenge to the statute). Accordingly, Plaintiffs' Motion for partial summary judgment is GRANTED in part and DENIED in part. The Motion is granted as to Plaintiffs' as-applied challenge to Section 90(10) as a violation the First Amendment of the United States Constitution and Article I, Section 8 of the New York State Constitution as-applied. The Motion is denied as to Plaintiffs' facial challenge to Section 90(10), as the Court finds it imprudent and unnecessary to the disposition of this case to determine the constitutionality of Section 90(10) in circumstances factually different from those at issue here.

### IV.   MOTION TO DISMISS LEGAL STANDARD

Having decided that Section 90(10) is unconstitutional as applied to the facts of this case, the Court now turns to the remaining issues raised by Defendants' motions to dismiss, beginning with the applicable legal standard. Unlike the above discussion regarding the motion for summary judgment, the Court's review of the motions to dismiss is limited to "facts stated on the face of the complaint, in

31

**JA237**

documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### V.     MOTION TO DISMISS DISCUSSION

In CRC II, the Court reserved decision on two issues from City Defendants' Motion to Dismiss because both relied on a determination of the constitutional question regarding Section 90(10). First, City Defendants moved for dismissal under Rule 12(b)(6), arguing that Plaintiffs failed to state a claim for First Amendment retaliation. (See City Defendants' Motion to Dismiss at 2.) Second, City Defendants argue that, even if Plaintiffs did state a claim for relief, the Complaint should be dismissed because City Defendants are entitled to qualified immunity. (See City Defendants' Motion to Dismiss at 3 n.2.) Kearse joined the qualified immunity argument, and separately moved for dismissal for failure to state a claim. (See Kearse's Motion to Dismiss at 3-4.)

### A.    FAILURE TO STATE A CLAIM

City Defendants argue Plaintiffs failed to adequately allege that (1) their publication of the Grievance Complaints was protected speech; and (2) that City Defendants took adverse action against them. (See City Defendants' Motion to Dismiss at 2-3.) Both of these circumstances, along with a showing of a causal connection between the protected speech and the adverse action, are necessary elements of a First Amendment retaliation claim. See Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015).

33

**JA239**

Plaintiffs' Complaint easily satisfies the first element. As the Court has explained above, Plaintiffs had a constitutionally protected right to publish their own Grievance Complaints. They were private individuals exercising their First Amendment right to free speech, and no statute or law validly prohibited that exercise of speech. The Complaint alleges Plaintiffs published the Grievance Complaints, or, in other words, that they engaged in protected speech. That allegation is sufficient to satisfy Plaintiffs' burden on a motion to dismiss.

As for the second element, not every negative governmental disciplinary or retaliatory measure constitutes an adverse action, as the burden imposed by some retaliatory acts may be minimal. An "adverse action" in First Amendment retaliation cases is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." United States v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 365, 410 (S.D.N.Y. 2018) (quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006)). The Second Circuit has highlighted that the question of whether retaliatory conduct amounts to an adverse action is a context-specific inquiry that "must be tailored to the different circumstances in which retaliation claims arise." Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (internal

**JA240**

quotations omitted), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). For example, certain groups, like public employees, "may be required to tolerate more than average citizens" in deciding whether a retaliatory act is adverse. Id.

The alleged retaliatory acts here entail (1) City Defendants sending letters to the Grievance Committee stating that Plaintiffs were violating Section 90(10) and, allegedly, threatening Plaintiffs; and (2) Kearse and the Grievance Committee removing Plaintiffs as grievance complainants and denying them the benefits accorded to individuals who file attorney grievance complaints. (See Complaint ¶¶ 55-75.) The Court finds that these alleged retaliatory acts constitute adverse actions sufficient to support a claim for First Amendment retaliation. The Court is persuaded that individuals of ordinary firmness would be deterred from exercising their constitutional right to publish their own grievance complaints if they knew that exercise could result in losing their status as complainants or being charged with violating the law and potentially being subjected to consequential legal proceedings. The Court is persuaded that attorneys of ordinary firmness would be deterred from publishing grievance complaints if they knew that publication would lead to a government official informing the Grievance

35

**JA241**

Committee that they were violating New York law, possibly risking their status as attorneys in good standing.

The Court finds that Plaintiffs have adequately alleged that they engaged in constitutionally protected speech and that they were subjected to adverse action as a result of engaging in that speech. Because Defendants do not challenge Plaintiffs' satisfaction of the third element of a prima facie case of First Amendment retaliation, the Court finds Plaintiffs have stated a claim for relief. City Defendants' motion to dismiss for failure to state a claim is denied.

Kearse moved the Court to dismiss the Complaint for failure to state a claim, arguing that Plaintiffs failed to show she violated their First Amendment rights because the Complaint states Defendants "engag[ed] in an ongoing effort to harass, threaten, and punish" Plaintiffs and "neither of Kearse's two letters to Plaintiffs did anything of the sort." (Kearse's Motion to Dismiss at 3-4.) Kearse's argument is premised entirely on a question of fact that the Court is unable to resolve at this stage in the proceeding. The Court has already determined, above, that Plaintiffs adequately alleged they were subjected to adverse actions in retaliation for their exercise of their First Amendment rights. A motion to dismiss pursuant to Rule 12(b)(6) is not the proper occasion for the Court to weigh differing interpretations of

36

**JA242**

an exhibit to the Complaint, as the Court, in evaluating Rule 12(b)(6) motions is bound to "accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." Ebomwonyi v. Sea Shipping Line, 473 F. Supp. 3d 338, 344 (S.D.N.Y. 2020). Kearse's motion to dismiss for failure to state a claim is also denied.

B.   QUALIFIED IMMUNITY

The last argument City Defendants, joined by Kearse, present is that the Complaint should be dismissed because, even if their actions constituted a constitutional violation, they are entitled to qualified immunity.[7] The Court finds this argument unpersuasive.

Government officers acting under the color of state law are entitled to qualified immunity for actions taken in the course of performing official duties if they did not violate a clearly established constitutional or statutory right, meaning that a reasonable public officer would not have known that, at the time of the offending action, such conduct constituted a violation of law by depriving an individual of a clearly established statutory or constitutional right. See White v. Pauly, 137 S. Ct. 548, 551 (2017). The Supreme Court

---

[7] The Court notes that Defendants assert a qualified immunity defense only over Plaintiffs' First Amendment retaliation claim.

37

**JA243**

"does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7-8 (2021) (quoting White, 137 S. Ct. at 551).

As the Court recounted above, the Second Circuit, in 1994, noted that "[w]hether the state may prohibit the disclosure of the substance of an individual's complaint or testimony merits little discussion. Penalizing an individual for publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment, and we agree . . . that such a prohibition would be unconstitutional." Kamasinski, 44 F.3d at 110. That statement constitutes an unequivocal declaration that there is little merit in the argument that a state may prevent individuals who file attorney grievance complaints from publicly disclosing such complaints.

In 2021, when the events giving rise to the Complaint occurred, a reasonable government officer should have been aware that punishing private individuals for publishing their own grievance complaints runs afoul of the First Amendment. It is especially true that three high-ranking legal officers of the State and City of New York –- the Corporation Counsel, the Queens County District Attorney, and the Chief Counsel to

38

**JA244**

the Grievance Committee -- would have known that, under the First Amendment, attorney grievance complainants are free to publicly publish their own complaints. The First Amendment and applicable doctrine under Kamasinski clearly established that right. Thus, Defendants are not entitled to qualified immunity for the adverse actions at issue here. City Defendants' and Kearse's Motions to Dismiss Plaintiffs' complaint on this basis are denied.

## VI.   ORDER

For the reasons stated above, it is hereby

ORDERED that the motion so-deemed by the Court (Dkt. No. 35) filed by Defendants Georgia Pestana and Melinda Katz ("City Defendants") to dismiss the complaint ("Complaint," Dkt. No. 59) filed by Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murphy, Abbe Smith, and Steven Zeidman ("Plaintiffs") is DENIED; and it is further

ORDERED that the motion so-deemed by the Court (Dkt. No. 47) filed by Defendant Diana Maxfield Kearse ("Kearse") to dismiss Plaintiffs' Complaint is DENIED; and it is further

ORDERED that the motion filed by Plaintiffs for partial summary judgment (Dkt. No. 63) is GRANTED IN PART. The motion is granted insofar as it seeks summary judgment on Plaintiffs' as-applied constitutional challenge.

**JA245**

JA246

Defendants are hereby **ORDERED** to file their answer to the remaining claims brought in the Complaint within twenty-one days of the date of this Order.

**SO ORDERED.**

Dated: New York, New York
       13 June 2022

Victor Marrero
U.S.D.J.

40

**JA246**

Case 1:21-cv-09128-VM-VF    Document 158    Filed 03/30/23    Page 1 of 2

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CIVIL RIGHTS CORPS, CYNTHIA GODSOE,
NICOLE SMITH FUTRELL, DANIEL S.
MEDWED, JUSTIN MURRAY, ABBE SMITH,
AND STEVEN ZEIDMAN,

　　　　　　　　　　　Plaintiffs,

v.

STEVEN STEIN CUSHMAN, Corporation Counsel
of the City of New York, in his official capacity;
GEORGIA PESTANA, Former Corporation Counsel
of the City of New York, in her personal capacity;
MELINDA KATZ, the District Attorney for Queens
County, in her official and personal capacity;
ANDREA E. BONINA, Chair of the State of New
York Grievance Committee for the Second, Eleventh,
and Thirteenth Judicial Districts, in her official and
personal capacity; DIANA MAXFIELD KEARSE,
Chief Counsel of the State of New York Grievance
Committee for the Second, Eleventh, and Thirteenth
Judicial Districts, in her official and personal capacity;
and HECTOR D. LASALLE, Presiding Justice of the
Second Judicial Department of the Appellate Division
of the Supreme Court of the State of New York, in his
official capacity,

　　　　　　　　　　　Defendants.

---

No. 21-CV-9128 (VM) (VF)

Hon. Victor Marrero
Hon. Valerie Figueredo

**STIPULATION OF VOLUNTARY
DISMISSAL PURSUANT TO
F.R.C.P. 41(a)(1)(A)(ii)**

---

**STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii)**

IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that Counts I, II, and V in the above-captioned action are voluntarily dismissed, without prejudice against the State Defendants (Diana Maxfield Kearse, Justice Hector D. LaSalle, and Andrea E. Bonina) pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii). Additionally, all claims brought against Ms. Kearse and Ms. Bonina, in both their official and personal capacities, are voluntarily dismissed, without prejudice.

**JA247**

*Attorney for the Plaintiffs*

Gregory L. Diskant

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
gldiskant@pbwt.com

Dated: New York, NY
        March 28, 2023

*Counsel for Steven Stein Cushman, Georgia Pestana, and Melinda Katz*

Eric Eichenholtz
Krista Friedrich

ASSISTANT CORPORATION COUNSEL
100 Church Street, Room 6-103
New York, New York 10007
Telephone: (212) 356-2430
eeichenh@law.nyc.gov
kfriedri@law.nyc.gov

Dated:    March 28, 2023

*Attorney for Justice Hector D. LaSalle and Andrea E. Bonina*

Elizabeth Anne Figueira

ASSISTANT ATTORNEY GENERAL
28 Liberty Street, 16th Floor
New York, New York 10005
Telephone: (212) 416-8528
elizabeth.figueira@ag.ny.gov

Dated: *March 28, 2023*

*Attorneys for Diana Maxfield Kearse*

Mark M. Elliott
Rachel J. Rodriguez

ELLIOTT KWOK LEVINE & JAROSLAW LLP
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 321-0510
MElliott@ekljlaw.com
RRodriguez@ekljlaw.com

Dated: *March 28, 2023*

**SO ORDERED.**

3/30/2023
DATE

VICTOR MARRERO, U.S.D.J.

2

**JA248**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; and HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity, <br><br> Defendants. | Case No. 21 Civ. 9128 (VM)(VF) <br><br><br> **JOINT STIPULATION REGARDING DISCOVERY** |

**JOINT STIPULATION REGARDING TIME AND SCOPE OF LIMITED DISCOVERY**

This Stipulation is entered into by and among Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Justin Murray, Abbe Smith, and Steven Zeidman (collectively, "Plaintiffs") and Justice Hector D. LaSalle, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York ("State Defendant"), collectively "the Parties."

**WHEREAS**, Plaintiffs commenced this action in the United States District Court for the Southern District of New York, pursuant to 42 U.S.C. Section 1983 and the First and Fourteenth Amendments to the United States Constitution against the Office of Corporation Counsel of the City of New York; The Office of the Queens County District Attorney; Andrea Bonina, Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial

**JA249**

Districts; Justice Hector D. LaSalle ("State Defendant"), Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of New York; and Diana Maxfield Kearse, Chief Counsel of the Grievance Committee, *see Civil Rights Corps, et al., v. Steven Stein Cushman, et al.*, No. 21-CV-9128. (ECF No. 1).

**WHEREAS**, on February 28, 2023, Plaintiffs sought a pre-motion conference regarding Plaintiffs' proposed motion for partial summary judgment on Count IV of Plaintiffs' Complaint, which seeks access to government proceedings and records under the Constitution's First Amendment Right of Access. (ECF No. 146).

**WHEREAS**, on March 24, 2023, United States Magistrate Judge for the Southern District of New York Valerie Figueredo (hereinafter "Judge Figueredo") so-ordered the Parties' agreement on the scope and timing of discovery for Court IV, which was to be completed on or before May 22, 2023. (ECF No. 154).

**WHEREAS**, on March 30, 2023, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), United States District Court Judge for the Southern District of New York Victor Marrero so-ordered the Parties' stipulation voluntarily dismissing without prejudice Counts I, II, and V against Ms. Kearse, Ms. Bonina and State Defendant and all claims against Ms. Kearse and Ms. Bonina, in both their official and personal capacities. (ECF No. 158).

**WHEREAS**, Plaintiffs have reconsidered their previous position that no further discovery was necessary and now seek production of two documents from State Defendant, Volumes Two and Three of the Grievance Committee Manual & Forms (the "Grievance Committee Manuals").

**JA250**

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned counsel for the Parties as follows:

1.  State Defendant will produce the Grievance Committee Manuals with the designation "Attorneys' Eyes Only," *see* ECF No. 127, in redacted form to protect attorney work product and the attorney client privilege.

2.  The discovery period has been extended from May 22, 2023 to June 12, 2023, to allow sufficient time for State Defendant to produce the Grievance Committee Manuals in redacted form, and for Plaintiffs to review the documents prior to the anticipated deposition of Ms. Kearse on June 8, 2023. (ECF No. 162).

3.  Neither party will request additional discovery, nor seek to depose additional witnesses following production of the Grievance Committee Manuals and the deposition of Ms. Kearse, except that Plaintiffs shall produce all documents obtained directly from the Second Department.

4.  In exchange for State Defendant's production of the redacted Grievance Committee Manuals, Plaintiffs waive the right to challenge the propriety of any redactions provided that such redactions were made in good faith to protect attorney work product or documents otherwise subject to attorney-client privilege.

*[signatures on following page]*

3

**JA251**

Dated: June 1, 2023
     New York, New York

Respectfully submitted,


/s/ *Gregory L. Diskant*
Gregory L. Diskant

Patterson Belknap Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000
gldiskant@pbwt.com

*Attorney for Plaintiffs*


LETITIA JAMES
Attorney General
State of New York

*Attorney for Justice Hector D. LaSalle*

By:  Joya C. Sonnenfeldt
     Joya C. Sonnenfeldt
     Assistant Attorney General
     28 Liberty Street, 16th Floor
     New York, NY 10005
     Tel: (212) 416-8184
     Joya.Sonnenfeldt@ag.ny.gov


So ordered: June 5, 2023


_____
VALERIE FIGUEREDO
United States Magistrate Judge

4

**JA252**



www.pbwt.com

June 16, 2023

Gregory L. Diskant
(212) 336-2710
gldiskant@pbwt.com

**By ECF**

The Honorable Victor Marrero
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:    *Civil Rights Corps, et al., v Cushman, et al.*, No. 21-cv-9128**

Dear Judge Marrero:

We write jointly on behalf of Plaintiffs and State Defendant in accordance with Magistrate Judge Figueredo's March 24, 2023 Order (*see* ECF No. 154) and the letter Plaintiffs filed with the Court on May 25, 2023 (*see* ECF No. 163) to update the Court on the status of discovery, which concluded on June 12, 2023 (*see* ECF No. 162), and the proposed summary judgment motion and cross-motion on Count IV of Plaintiffs' Complaint, which seeks access to government proceedings and records under the Constitution's First Amendment Right of Access. Count IV is all that remains to be resolved in this case against the State Defendant.

**I.    Plaintiff's Position on their Proposed Motion Against the State Defendant**

Plaintiffs refer the Court to the letters of February 28, 2023 (ECF No. 146) and March 9, 2023 (ECF No. 151) and incorporate by reference the arguments and analysis set forth therein. With discovery now concluded, Plaintiffs write to supplement those letters and assert additional grounds for relief.

As detailed previously, a "presumption of openness" is inherent to "our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980). Accordingly, the First Amendment secures the public's right of access to trials and their related proceedings and records. *See New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) ("[T]he First Amendment guarantees a qualified right of access not only to criminal but also to civil trials and to their related proceedings and records."); *see also Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004) ("Numerous federal and state courts have . . . determin[ed] that the First Amendment itself, as well as the common law, secures the public's capacity to inspect [judicial] records."). Indeed,

---

Patterson Belknap Webb & Tyler LLP    1133 Avenue of the Americas, New York, NY 10036    T 212.336.2000    F 212.336.2222

**JA253**

Hon. Victor Marrero
June 16, 2023
Page 2

judicial documents, which are items "relevant to the performance of the judicial function and useful in the judicial process," are subject to a presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Such proceedings and documents may only be sealed from the public if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re N.Y. Times Co.*, 828 F.2d 110, 119 (2d Cir. 1987).

This right of access applies to New York State's attorney grievance proceedings and the final dispositions of those proceedings because they are judicial proceedings and records. Like court proceedings, attorney grievance procedures seek "the compliance of [a] person, subject to judicial control, with standards imposed upon his conduct in the public interest," making those proceedings "judicial proceedings." *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958). Both the New York Court of Appeals and the Second Circuit have held that filing a complaint with a Grievance Committee in New York State commences a "judicial proceeding." *See id.*; *Wiener v. Weintraub*, 22 N.Y.2d 330, 331-32 (N.Y. 1968) ("In the investigation of such complaints and in the conduct of such proceedings, then, the bar association's Grievance Committee acts as a quasi-judicial body and, as such, is an arm of the Appellate Division. Quite clearly, the filing of the complaint in the present case initiated a judicial proceeding.").

Pursuant to this right of access, Plaintiffs seek two forms of relief. First, where the Grievance Committee refers a complaint to the Appellate Division, they seek access to any hearings and related submissions and decisions before the Appellate Division (including those conducted by a special referee) pursuant to 22 N.Y.C.R.R. § 1240.8. These are undeniably judicial proceedings, conducted in a court of law, and through which the charged attorney, with the right to counsel, is afforded the opportunity to defend his or her case before a neutral arbiter. Second, where the Grievance Committee (or Staff Counsel) finally disposes of a complaint pursuant to 22 N.Y.C.R.R. § 1240.7(d)(1)-(2), Plaintiffs seek access to any such final dispositions, whether in the form of letters of dismissal, advisement, admonishments, or opinions authorizing formal disciplinary hearings. Such dispositions constitute the very essence of the Committee's performance of its delegated judicial power and are the mechanism through which the respondents' substantive legal rights are adjudicated by the Grievance Committee. These documents are clearly "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119.

There are no conceivable countervailing interests in secrecy that outweigh the strong presumption of access afforded to such proceedings and final dispositions. The Plaintiffs' grievance complaints are public, the respondents are prosecutors and the allegations against them are based on public court records. While there may be situations where secrecy is warranted, this is not one of them. Details regarding the prosecutors' alleged misconduct have already been published, both through Plaintiffs' published complaints and through the court decisions on which the complaints were based. There is a legitimate and substantial public interest in the outcome of these proceedings, which are now forever cloaked in secrecy even if an attorney is subjected to the most common forms of discipline. Any "reputational harm" a respondent prosecutor may face if the public were made aware of the results of the Grievance Committee investigation does not meet the weighty standard for overriding the presumptions of open records

Hon. Victor Marrero
June 16, 2023
Page 3

and public access.  In any event, "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978).

Absent a narrowly tailored and compelling state interest in preserving the secrecy of the results of the disciplinary process, any restriction on the public right to access the documents evidencing the disposition of publicly-filed grievance complaints regarding prosecutorial misconduct and any hearings conducted in connection with the prosecution of such complaints fails to survive strict scrutiny and violates the First Amendment.  Defendant's response largely elides the issues, pressing abstention and immunity arguments that this Court has already explicitly or implicitly rejected in this action for declaratory relief, raising irrelevant standing arguments and misapprehending the historical fact that disciplinary proceedings of lawyers have historically been conducted in open court.  *See, e.g., Matter of Kelly*, 59 N.Y. 595 (N.Y. 1875).

Accordingly, Plaintiffs respectfully request an opportunity formally to present these legal arguments in a motion for summary judgment.

## II.    State Defendant's Position on His Proposed Cross-Motion

Justice LaSalle—the sole remaining State Defendant—respectfully requests leave to file a cross-motion for summary judgment on Count IV—the sole remaining count of the Complaint. Count IV challenges the constitutionality of Judiciary Law § 90(10) ("Section 90(10)), under which, absent an order from the Appellate Division, disciplinary records and proceedings are confidential unless the Appellate Division imposes public discipline. Plaintiffs' sole allegation against Justice LaSalle is that he exercises his "authority to regulate attorney admissions and conduct" and to "promulgat[e] rules concerning attorney discipline." *Id.* ¶ 23.

Federal courts lack jurisdiction over claims that state rules regulating attorneys have been promulgated or applied in an unconstitutional manner. New York State has exclusive power to admit and discipline attorneys practicing within its borders, *Erdmann v. Stevens*, 458 F.2d 1205, 1208-09 (2d Cir. 1972), a power that the New York Legislature has delegated to the Appellate Divisions, *see* Jud. L. § 90. As we argued previously (*see* ECF No. 41), federal courts must abstain under a number of doctrines from reviewing state attorney disciplinary processes. *See Disability Rights N.Y. v. New York*, 916 F.3d 129, 132-33 (2d Cir. 2019) (discussing abstention under *O'Shea v. Littleton*, 414 U.S. 488 (1974) to protect state court functions); *Zimmerman v. Grievance Committee of Fifth Judicial Dist.*, 726 F.2d 85, 86 (2d Cir. 1984) (extending *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) holding that federal courts can only hear facial challenges to admission rules to state rules governing discipline of attorneys). Moreover, Justice LaSalle is shielded by absolute judicial and legislative immunities, among other doctrines, for his role in either promulgating or applying rules or policies governing the attorney disciplinary process. *See Forrester v. White*, 484 U.S. 219, 227 (1988) (legislative immunity applies to judge's promulgation of code of attorney conduct); *Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734 (1980) (state court hearing appeals in

**JA255**

Hon. Victor Marrero
June 16, 2023
Page 4

disciplinary cases that has enforcement authority of its own is entitled to judicial and quasi-judicial immunity). Although this Court previously held that certain immunities did not apply to another now-dismissed defendant (*see* ECF No. 90, at 29-35), the Court did not rule on their application to Justice LaSalle and his challenged conduct.

Plaintiffs also lack standing to challenge Section 90(10) because the Grievance Committee's letter confirming receipt of Plaintiffs' complaints and referring to the confidentiality policy contained in Section 90(10), *see* Compl. Ex. 2, does not constitute injury in fact. Plaintiffs' declination to engage in the exclusive process provided by state law for seeking disclosure of disciplinary records, *see* Jud. L. § 90.10; 22 NYCRR § 1240.18, means that the confidentiality policy has not been applied against them and Plaintiffs' mere speculation that such a request would be denied does not constitute the required imminent risk of harm that might result from "fail[ure] to receive any required information," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021).

Additionally, neither Plaintiffs nor the public have a federal right to access the records of the Grievance Committees that investigate and prosecute attorney misconduct. The presumptive right of public access to government records and proceedings has two possible federal sources—the First Amendment and the common law—neither of which requires disclosure of Grievance Committee determinations, records, or proceedings under Section 1240.7 of the Statewide Rules of Attorney Misconduct ("Statewide Rules"), 22 NYCRR part 1240, all of which are preliminary to the initiation of a formal proceeding in the Appellate Division for public discipline under Section 1240.8.

First, the First Amendment does not require disclosure of Grievance Committee records because a Grievance Committee's investigations to determine whether to bring formal charges have not "historically been open to the press and general public," so documents related to such investigations cannot be "a necessary corollary of the capacity to attend the proceedings." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164-65 (2d Cir. 2013) (citation omitted). Judiciary Law § 4, which makes state court proceedings public, does not apply to preliminary investigations into attorney misconduct. *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 479 (1928). The confidentiality policy codified in Section 90(10) has been in effect since at least the 1940s. Though Appellate Divisions previously authorized bar associations and local district attorneys to prosecute attorney misconduct, under the Statewide Rules, the Appellate Divisions only permit Grievance Committees to prosecute formal disciplinary proceedings. *See* 22 NYCRR § 1240.8. Individuals who file complaints with Grievance Committees are not parties to any professional misconduct proceeding that may result and lack standing to challenge a Grievance Committee's decision not to prosecute alleged misconduct. *See, e.g.*, *In re Att'y Disciplinary Appeal*, 650 F.3d 202, 203 (2d Cir. 2011) (individual who filed grievance complaint lacks "standing to participate in a disciplinary proceeding"); *Esposito v. New York*, 355 F. App'x 511, 513 (2d Cir. 2009) (private citizens "have no cognizable right" under the First Amendment to participate in disciplinary proceedings). In short, the First Amendment does not compel public access to Grievance Committee records.

**JA256**

Hon. Victor Marrero
June 16, 2023
Page 5

Second, insofar as Plaintiffs claim a public right of access under the common law, the common law is not actionable under 42 U.S.C. § 1983, which requires a right or privilege secured by the federal constitution or a federal statute. *See Maine v. Thiboutot*, 448 U.S. 1, 4, (1980). In any event, the common law presumption does not require disclosure of Grievance Committee determinations and records because they are not "judicial document[s]" that are both "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citation omitted). Grievance Committee investigations under Section 1240.7 are preliminary to any judicial proceeding that the Grievance Committee may initiate under Section 1240.8. Grievance Committee records "are considered in order to make substantive determinations about whether and how to proceed with disciplinary allegations or charges, [but] such determinations are made by an administrative body, not by a court" and therefore are not "judicial records." *Ginsberg v. DeHart*, No. 1:10-CV-00452-JAW, 2011 WL 1100989, at *13 (D.N.H. Mar. 22, 2011), *report and recommendation adopted*, No. 1:10-CV-00452-DBH, 2011 WL 2579795 (D.N.H. June 28, 2011). Accordingly, the common law, if it were actionable under Section 1983, would not compel disclosure.

### III.   Briefing Schedule

As agreed upon previously, neither party opposes the other's request to file a motion and cross-motion.  If the Court grants the Parties' request to move and cross-move for summary judgment on Count IV, the Parties' respectfully request the Court also grant the proposed briefing schedule set forth below. The parties reserve the right to request an extension of such deadlines where reasonably necessary.

| Brief | Deadline |
|---|---|
| Plaintiffs' Motion for Summary Judgment | July 28, 2023 |
| State Defendant's joint Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment | September 8, 2023 |
| Plaintiffs' joint Opposition to State Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment | October 20, 2023 |
| State Defendant's Reply in Support of State Defendant's Cross-Motion | November 10, 2023 |

**Respectfully submitted,**

**JA257**

Hon. Victor Marrero
June 16, 2023
Page 6

| | |
|---|---|
| */s/Gregory Diskant* | LETITIA JAMES |
| Gregory Diskant | Attorney General |
| Patterson Belknap Webb & Tyler LLP | State of New York |
| 1133 6th Avenue | *Attorney for Justice LaSalle* |
| New York, NY 10036 | |
| Phone: (212) 336-2710 | By: */s/ Elizabeth A. Figueira* |
| | Elizabeth A. Figueira |
| *Attorney for Plaintiffs* | Assistant Attorney General |
| | 28 Liberty Street |
| | New York, NY 10005 |
| | Phone: (212) 416-8528 |

Cc:  All counsel

**JA258**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN,<br><br>                Plaintiffs,<br><br>v.<br><br>STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity,<br><br>                Defendants. | Case No. 1:21-cv-09128 (VM)<br><br>Hon. Victor Marrero<br><br>**ORAL ARGUMENT REQUESTED** |

**DECLARATION OF ANDREW H. WELLS, JR. IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**ON THE FOURTH CLAIM FOR RELIEF**

I, Andrew H. Wells, Jr. hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a law clerk at Patterson Belknap Webb & Tyler LLP ("Patterson"), attorneys for Plaintiffs Civil Rights Corps ("CRC"), and Professors Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Abbe Smith, and Steven Zeidman (together, the "Law Professors"), and Justin Murray (collectively, the "Plaintiffs") in the above-captioned action. I submit this Declaration in support of Plaintiffs' Motion for Summary Judgment on the Fourth Claim for Relief.

2.      Attached as **Exhibit 1** is a true and correct copy of the attorney grievance committee complaint against Jesse Sligh filed by the Law Professors, dated May 3, 2021.

3.      Attached as **Exhibit 2** is a true and correct copy of the attorney grievance committee complaint against Charles Testagrossa filed by the Law Professors, dated May 3, 2021.

4.      Attached as **Exhibit 3** is a true and correct copy of a letter from Diana Kearse, Chief Counsel for the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, to the Law Professors, dated June 11, 2021.

5.      Attached as **Exhibit 4** are true and correct excerpts from the Grievance Committee Manual and Forms for the Second Department, Volume One, revised as of April 2019.

6.      Attached as **Exhibit 5** is a true and correct copy of the 2022 Annual Professional Matters Caseload Report for the State of New York Grievance Committee for the Tenth Judicial District, published February 6, 2023.

7.      Attached as **Exhibit 6** is a true and correct copy of the 2021 Annual Professional Matters Caseload Report for the State of New York Grievance Committee for the Tenth Judicial District, published January 20, 2022.

8.      Attached as **Exhibit 7** is a true and correct copy of the 2022 Annual Attorney Disciplinary Activities Report for the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial District, published January 8, 2023.

9.      Attached as **Exhibit 8** is a true and correct copy of the transcript of the deposition of Diana Kearse, Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, taken June 8, 2023.

10.     Attached as **Exhibit 9** are true and correct excerpts from the 2016 Annual Professional Discipline Report by the New York State Bar Association's Committee on Public

2

Discipline, available at https://nysba.org/app/uploads/2020/02/2016-Annual-Report-on-Lawyer-Discipline-in-NYS.pdf.

11.     Attached as **Exhibit 10** are true and correct excerpts from the 2017 Annual Professional Discipline Report by the New York State Bar Association's Committee on Public Discipline, available at https://nysba.org/app/uploads/2020/02/2017-Annual-Report-on-Lawyer-Discipline.pdf.

12.     Attached as **Exhibit 11** are true and correct excerpts from the 2018 Annual Professional Discipline Report by the New York State Bar Association's Committee on Public Discipline, available at https://nysba.org/app/uploads/2020/02/2018-FINAL-REPORT.pdf.

13.     Attached as **Exhibit 12** are true and correct excerpts from the 2019 Annual Professional Discipline Report by the New York State Bar Association's Committee on Public Discipline, available at https://nysba.org/app/uploads/2020/02/2019-Annual-Report-Complete.pdf.

14.     Attached as **Exhibit 13** are true and correct excerpts from the 2020 Annual Professional Discipline Report by the New York State Bar Association's Committee on Public Discipline, available at https://nysba.org/app/uploads/2021/11/2020-Attorney-Grievence-Committee-Report.pdf.

15.     Attached as **Exhibit 14** is a true and correct copy of a webpage on the Second Judicial Department website, titled "How to Make a Complaint About a Lawyer".

16.     Attached as **Exhibit 15** is a true and complete copy of the "Orientation to the Profession" program materials for the Appellate Division, Second Judicial Department, dated February 16, 2017.

17. Attached as **Exhibit 16** are true and correct excerpts of the Grievance Committee Manual and Forms for the Second Department, Volume Five, revised as of April 2019.

18. Attached as **Exhibit 17** is a true and correct copy of the initial disclosures of Diana Kearse, Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, pursuant to Fed. R. Civ. P. 26(a)(1), dated September 23, 2023.

19. Attached as **Exhibit 18** is a true and correct copy of the initial disclosures of the Honorable Justice Hector D. LaSalle, Presiding Justice of the Appellate Division, Second Department, and Andrea Bonina, Chair of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, pursuant to Fed. R. Civ. P. 26(a)(1), dated September 23, 2022.

20. Attached as **Exhibit 19** is a true and correct copy of the Bill Jacket, L.1909, ch. 675, amending N.Y. Judiciary Law § 88 (1945).

21. Attached as **Exhibit 20** is a true and correct copy of the Decision and Order on Application for disclosure pursuant to N.Y. Jud. Law § 90(10) in *Matter of The Innocence Project, Inc.*, Docket No. 2019-05674, entered on July 12, 2019, by the Supreme Court of the State of New York, Appellate Division, Second Judicial Department.

22. Attached as **Exhibit 21** is a true, complete and correct copy of my email communications between May 12, 2023, and June 20, 2023, with the Appellate Division, Second Department Committee on Character and Fitness (AD2@nycourts.gov), the Committee on Attorney Matters (ad2-attorneymatters@nycourts.gov), and Darrell M. Joseph, Deputy Clerk for the Appellate Division, Second Department (djoseph@nycourts.gov).

4

**JA262**

23.    Attached as **Exhibit 22** is a true and correct copy of a PDF file containing certain records from Glenn Kurtzrock's formal disciplinary hearing, sent to me via email on June 8, 2023, by Darrell M. Joseph.

24.    To provide additional context for **Exhibits 21** and **22**, as a part of Plaintiffs' fact collection regarding New York's attorney grievance proceedings, I sought to retrieve the disciplinary records of Glenn Kurtzrock maintained by the Appellate Division, Second Department.  Mr. Kurtzrock was a Suffolk County prosecutor who was publicly disciplined by the Appellate Division, Second Department in an Opinion and Order dated December 30, 2020.  Pursuant to N.Y. Jud. Law § 90(10), "the records and documents in relation" to Mr. Kurtzrock's discipline imposed by the Second Department are "public records."

25.    On May 12, 2023, I called the Committee on Character and Fitness for the Second Department at (718) 923–6360.  I received an automated message prompting me to direct all inquiries to the email address AD2CCF@nycourts.gov.  I then sent an email to that address asking to inspect and copy "the Attorney Grievance Committee record of Glenn Kurtzrock."  Ex. 21, at 7.  After not receiving any response to the May 12 email, I sent another email on May 18, 2023, again requesting to inspect and copy the records.  *Id.* at 6–7.

26.    On May 18, 2023, I received an email response from ad2-attorneymatters @nycourts.gov, inquiring whether I was seeking "internal records" from the attorney grievance committee or "Court records" concerning the formal disciplinary hearing.  *Id.* at 6.  On May 19, 2023, I responded via email that I was seeking both the internal records and the Court records.  *Id.*

27.    On May 30, 2023, I received a response from ad2-attorneymatters @nycourts.gov.  The response advised that for "Court documents," I should follow the directions on the Second Department's website for viewing court records.  The email then advised that for

5

the "internal" grievance committee records, I should "review Judiciary Law, Section 90(10) and file a petition with the Appellate Division, Second Department stating the 'good cause' for disclosure of those records." *Id.* at 5–6.

28.    I responded via email on May 30 and clarified that I that was seeking all records pertaining to Mr. Kurtzrock's disciplinary proceeding that the Second Department could make available consistent with their interpretation of N.Y. Jud. Law § 90(10). *Id.* at 5.

29.    On June 2, I received an email from ad2-attorneymatters that stated the Second Department had retained 3,678 pages of records and documents filed with the Appellate Division, Second Department, relating to Glenn Kurtzrock's formal disciplinary hearing. The full list of records retained by the Second Department is included in Exhibit 21, at 4–5. The June 2 email also stated that copies of the records could be provided at the cost of $1.00 for every first page of a document and $0.50 for every page following. *Id.* The June 2 email listed the total cost to copy and produce the records as $1,984.50. *Id.*

30.    On June 5, I responded via email to ad2-attorneymatters and asked to schedule a time to view the records in person at the Second Department, prior to paying a fee to receive copied records. *Id.* at 4.

31.    On June 8, I received an email from Darrell M. Joseph, Deputy Clerk for the Appellate Division, Second Department, in response to my request to inspect the Kurtzrock records at the Second Department. *Id.* at 3. The June 8 email offered "to spare me a trip to the courthouse," and attached certain documents from Kurtzrock's file. *Id.*

32.    Attached to the email was a 184-page PDF document. that included certain records and documents from Glenn Kurtzrock's formal disciplinary hearing. *See* Ex. 22.

6

**JA264**

33.    The PDF attachment included nine records, including:

- Notice of Petition and Verified Petition
- Verified Answer
- Petitioner's Statement of Disputed and Undisputed Facts
- Response to Petitioner's Statement of Disputed and Undisputed Facts
- The Court's August 15, 2019, Order referring the matter to a Special Referee
- The Referee's February 4, 2020, Report
- The Court's December 30, 2020, Opinion and Order suspending Mr. Kurtzrock
- Respondent's Affidavit of Compliance
- Respondent's Supplemental Affidavit of Compliance

*See* Ex. 21 at 3; *see also* Ex. 22.

34.    On June 14, 2023, I responded via email to Mr. Joseph with several questions about Glenn Kurtzrock's formal disciplinary hearings in lieu of requesting copies of the hearing transcripts and exhibits submitted by both parties. *See* Ex. 21, at 2–3.

35.    On June 16, Mr. Joseph responded, answering all questions posed in my June 14 email, and explained specific aspects of the Kurtzrock proceedings and records. *See Id.* at 1–2. He stated:

- The Grievance Committee waived an opening statement. Respondent made an opening statement.
- The Grievance Committee presented one witness. The respondent presented eight witnesses.
- The witnesses testified on direct examination and were subject to cross-examination. Not all witnesses were cross-examined.
- Objections were made at certain points during some of the witnesses' testimony. The Special Referee ruled on the objections.
- The parties were given the opportunity to present closing statements; neither party availed themselves of that opportunity.

*Id.*

36.    Additionally, in the June 16 email, Mr. Joseph stated that there had been two previous requests to inspect and copy Kurtzrock's public disciplinary records. *Id.*

Dated: July 28, 2023
          New York, NY

_Andrew H. Wells, Jr._

Andrew H. Wells. Jr.

8

# Exhibit 1

May 3, 2021

Grievance Committee for the Second,
Eleventh & Thirteenth Judicial Districts
Renaissance Plaza
335 Adams Street, Suite 2400
Brooklyn, New York 11201
ad2-grv2@nycourts.gov

**Re: Grievance Complaint Regarding Attorney Jesse Sligh, State Bar No. 2220275.**

To the Grievance Committee,

Jesse Sligh[1] committed a *Brady* violation, leading to a jury relying on false testimony and the wrongful conviction and imprisonment of Clinton Turner. The federal District Court held that Sligh violated *Brady* when he failed to provide the criminal record of the complainant—information that "was readily available" to him with only the "most modest effort."[2] Sligh's failure led him to elicit—and heavily rely upon—false testimony from the complainant that Sligh "should have known was false."[3]

While Turner languished in prison for 10 years,[4] Sligh enjoyed a prosperous career. A mere three years after Turner was wrongfully convicted, Sligh was promoted to an executive position in the Queens District Attorney's Office ("QDAO"),[5] a position he held until his retirement from the District Attorney's Office in 2020.[6]

Sligh's misconduct in Queens was far from unique; serious misconduct at the Queens District Attorney's Office (QDAO) has been regularly reported for years. For example, beginning in 2007, Queens prosecutors utilized interviewing practices that undermined suspects' *Miranda*

---

[1] Jesse James Sligh, State Bar No. 2220275, formerly of the Queens County District Attorney's Office, 125-01 Queens Blvd., Kew Gardens, New York 11415. Phone: (718) 286-6400. Email: jjsligh@queensda.org. While it appears Sligh has retired, his contact information on the Unified Court System website remains that of the Queens District Attorney's Office. We do not have personal knowledge of any of the facts or circumstances of Reeves or the cases mentioned; this grievance is based entirely on the court opinions, briefs and other documents cited herein.

[2] Exhibit A, *Turner v. Schriver*, 327 F. Supp. 2D 174, 185, 187 (E.D.N.Y. 2004). Available at: https://casetext.com/case/turner-v-schriver.

[3] *Id.* at 186-87 (E.D.N.Y. 2004).

[4] Exhibit B, *Turner v. State*, 14 Misc. 3d 699, 700 (Ct. Cl. 2006). Available at: https://casetext.com/case/turner-v-state-of-ny-1.

[5] QNS Editorial, *Executive Ada Receives Honor*, QNS (February 28, 2013), https://qns.com/2013/02/executive_ada_receives_honor/; George Joseph, *Top Queens Prosecutors Broke The Rules, Then Got Promoted. Will The New DA Keep Them In Charge?*, The Gothamist (January 9, 2020), https://gothamist.com/news/top-queens-prosecutors-broke-rules-got-promoted.

[6] David Brand, *Queens criminal court will have just one Black man on the bench after state cuts judges*, Queens Daily Eagle (October 4, 2020), https://queenseagle.com/all/queens-criminal-court-will-have-just-one-black-man-on-the-bench-after-state-cuts-judges.

rights, according to the Appellate Division and the Court of Appeals.[7] Another QDAO policy established a wall between different units in the office, leading to trial prosecutors failing to disclose exculpatory material in the hands of another unit.[8] The Appellate Division has repeatedly criticized Queens prosecutors' improper summation conduct and advised that the Office provide better training for its trial prosecutors.[9] There are numerous court decisions finding that QDAO prosecutors acted improperly—a recent civil lawsuit contains a list of 117 published decisions involving prosecutorial misconduct in Queens cases.[10] Sligh's misconduct appears to fall within this appalling, unprecedented, and largely-unaddressed pattern of improper conduct.

Just as prosecutors hold individuals accountable for crimes, so should prosecutors be held accountable for their misconduct. Despite the findings of misconduct noted in this grievance, as of the writing of this grievance, the New York Attorney Detail Report lists "Disciplinary History: No record of public discipline" for Sligh.[11] The QDAO was "unable to locate" any disciplinary records for Sligh.[12]

The Grievance Committee must suspend Sligh for his serious misconduct.

---

[7] *People v. Dunbar*, 104 A.D.3d 198 (2d Dep't 2013), *aff'd*, 24 N.Y.3d 304 (2014). *See also People v. Perez*, 37 Misc. 3d 272 (Queens Sup. Ct. 2012) (deeming QDAO's *Miranda* interview practice an ethical violation of Rule 8.4(c)); Russ Buettner, *Script Read to Suspects Is Leading to New Trials*, New York Times (January 30, 2013) https://www.nytimes.com/2013/01/31/nyregion/appellate-panel-overturns-3-queens-convictions-based-on-rights-preamble.html.

[8] Sarah Maslin Nir, *Murder Conviction Tossed Out in Queens*, New York Times (March 18, 2013) https://www.nytimes.com/2013/03/19/nyregion/murder-conviction-reversed-over-withheld-information.html. *See also People v. Petros Bedi*, Ind. No. 4107/96, NYLJ 1202592836531 (Queens Sup. Ct. March 13, 2013) (Witness Security Program documents, which were not made part of prosecutor's file "as matter of custom," were *Rosario* and *Brady* materials; failure to disclose required vacating murder conviction).

[9] *See, e.g.*, *People v. Velez*, 2014-09698, Oral Argument, Appellate Division, 48:30-50:15 (March 16, 2018) http://wowza.nycourts.gov/vod/vod.php?source=ad2&video=VGA.1521208616.External_(PubliP).mp4 or http://wowza.nycourts.gov/vod/wowzaplayer.php?source=ad2&video=VGA.1521208616.External_(Public).mp4; *People v. Cherry,* 2014-10909, Oral Argument, Appellate Division, 26:34-29:31 (March 13, 2018) http://wowza.nycourts.gov/vod/vod.php?source=ad2&video=VGA.1520949280.External_(Public).mp4 or http://wowza.nycourts.gov/vod/wowzaplayer.php?source=ad2&video=VGA.1520949280.External_(Public).mp4.

[10] Amended Complaint, *Julio Negron v. The City of New York et al.*, No.18-cv-6645 (DG) (RLM) (filed March 10, 2021).

[11] *See Attorney Detail Report*, Attorney Online Services -- Search, New York Unified Court System, available at https://iapps.courts.state.ny.us/attorneyservices.

[12] Joseph, *Top Queens Prosecutors Broke The Rules, Then Got Promoted. Will The New DA Keep Them In Charge?*, *supra*.

Re: Jesse Sligh (SBN 2220275)                    2

1. **The Grievance Committee has a Unique Duty to Protect the Public by Holding Prosecutors Accountable for Misconduct.**

   A. **Prosecutorial Misconduct is Pervasive and Unchecked.**

Our legal system holds prosecutors to the highest standards of all attorneys.[13] When any attorney missteps, it can cause harm, typically to an individual client. But a prosecutor's misconduct can destroy a person's life—and that of their family. Moreover, a prosecutor's misconduct negatively affects both law and society. A single prosecutor's misconduct can damage "the reputation and public confidence placed" in all prosecutors and the justice system itself.[14]

As the United States Supreme Court and the New York Court of Appeals have stated, a prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones. *It is as much* his duty to refrain from improper methods calculated to produce a wrongful conviction *as it is* to use every legitimate means to bring about a just one."[15] Hal Lieberman, former Chief Counsel for the Departmental Disciplinary Committee in New York's First Department, has noted how unchecked prosecutorial misconduct "undermines the integrity of the entire system."[16]

But misconduct by prosecutors remains widespread and unchecked in the New York criminal legal system. A 2013 analysis of ten years of state and federal decisions revealed more than two dozen instances in which judges reversed convictions explicitly because of prosecutorial misconduct.[17] Yet these appellate courts "did not routinely refer prosecutors for investigation by the state disciplinary committees," and the disciplinary committees "almost never took serious action against prosecutors."[18] In the 30 cases where judges overturned convictions based on prosecutorial misconduct, only one prosecutor was publicly disciplined by a New York disciplinary committee. None of the other implicated prosecutors were disbarred, suspended or publicly censured and, according to personnel records gathered by ProPublica, several prosecutors were promoted and given raises soon after courts cited them for abuses.[19] As the *New York Times* Editorial Board wrote in 2018, "there's no reliable system for holding prosecutors

---

[13] *Matter of Rain*, 162 A.D.3d 1458, 1462 (3d Dep't 2018) ("prosecutors carry an obligation to hold themselves to the highest standards based upon their role in our system of justice"); *see also* 2017 ABA Prosecution Function Standards, Standard 3-1.4(a) ("In light of the prosecutor's public responsibilities, broad authority and discretion, the prosecutor has a heightened duty of candor to the courts and in fulfilling other professional obligations.").

[14] *Rain*, 162 A.D.3d at 1462.

[15] *Berger v. United States,* 295 U.S. 78, 88 (1935) (emphasis added); *People v. Jones*, 44 N.Y.2d 76, 80 (1978) (quoting *Berger*, 295 U.S. at 88). *See also People v. Calabria*, 94 N.Y.2d 519, 523 (2000) ("Evenhanded justice and respect for the fundamentals of a fair trial mandate the presentation of legal evidence unimpaired by intemperate conduct aimed at sidetracking the jury from its ultimate responsibility--determining facts relevant to guilt or innocence.") (citation omitted); *People v. Levan*, 295 N.Y. 26, 36 (1945).

[16] Joaquin Sapien and Sergio Hernandez, *Who Polices Prosecutors Who Abuse Their Authority? Usually Nobody,* ProPublica (April 3, 2013), https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody.

[17] *Id.*

[18] *Id.*

[19] *Id.*

Re: Jesse Sligh (SBN 2220275)                3

accountable for their misconduct, and they certainly can't be entrusted with policing themselves."[20]

### B. The *Brady* Rule and State Discovery Laws are Fundamental to the Constitutional Rights to a Fair Trial and Due Process, Yet Prosecutors Often Fail to Provide Favorable Evidence to the Defense.

One of the most damaging forms of prosecutorial misconduct is the *Brady* violation—when a prosecutor suppresses exculpatory or impeachment evidence.[21] A prosecutor's duty to disclose *Brady* evidence is indispensable to the rights to due process and a fair trial.[22] In our legal system, *Brady* disclosures permit the defense to investigate and litigate different leads and to protect the defendant from wrongful convictions. It is unsurprising, then, that suppression of favorable evidence has played a role in over 30% of known wrongful convictions and 44% of known wrongful convictions for murder.[23]

A prosecutor has an affirmative duty to search for favorable material in their own records and those of related agencies—and to turn these over to the defense.[24]

The New York legislature and the New York judiciary have emphasized the importance of the *Brady* rule by codifying it in statutes and court orders. Even before the 2020 discovery reform, New York State's discovery statute required prosecutors to disclose all evidence that must be disclosed per the United States and New York constitutions—including any *Brady* evidence.[25] Other New York criminal procedure law sections obligated the prosecutor to disclose types of evidence that commonly contain *Brady* information.[26] The 2020 discovery reform preserved the statutory codification of *Brady* and further expanded a prosecutor's discovery obligations.[27] Additionally, under federal law, a prosecutor who commits an intentional *Brady* violation can be charged with a felony.[28]

Indeed, the *Brady* rule is of such import that it has been codified into its own subsection in New York Rule of Professional Conduct 3.8(b):

---

[20] New York Times Editorial Board, *Prosecutors Need a Watchdog*, N.Y. Times, (August 14, 2018), https://www.nytimes.com/2018/08/14/opinion/new-york-prosecutors-cuomo-district-attorneys-watchdog.html.

[21] *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

[22] *Brady*, 373 U.S. at 87.

[23] *Government Misconduct and Convicting the Innocent*, National Registry of Exonerations (September 1, 2020): https://www.law.umich.edu/special/exoneration/Documents/Government_Misconduct_and_Convicting_the_Innocent.pdf.

[24] *Kyles v. Whitley*, 514 U.S. 419, 432 (1995); *Strickler v. Green,* 527 U.S. 263, 280-81 (1999).

[25] C.P.L. § 240.20(1)(h) (McKinney) (repealed); *Doorley v. Castro*, 160 A.D.3d 1381, 1383 (4th Dep't 2018).

[26] C.P.L. § 240.20 (McKinney) (repealed).

[27] C.P.L. § 245.20(1)(k).

[28] 18 U.S.C. § 242.

Re: Jesse Sligh (SBN 2220275)                4

**JA271**

> A prosecutor…shall make timely disclosure…of evidence or information known to the prosecutor or other government lawyer that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the sentence….[29]

Rule 3.8 makes clear that the professional rule is broader than the *Brady* obligation: all evidence that tends to exculpate the defendant must be turned over, rather than just *materially* exculpatory evidence. As a consequence, more conduct will violate Rule 3.8 than the constitutional rule.

Despite the significance of the *Brady* rule in the criminal legal system, New York prosecutors often violate it. The New York State Bar has acknowledged that "New York *Brady* violations occur at all phases of the criminal justice process and are often not discovered until after conviction."[30] The New York State Justice Task Force has pointed to "[d]ocumented instances of inconsistent application by prosecutors of the requirement for disclosure of exculpatory evidence."[31]

### C. Prosecutors Have a Duty to Present Evidence Honestly.

Prosecutors may not mislead the court or jury and many prohibitions on prosecutorial conduct relate to dishonesty. For example, it violates due process for a prosecutor to knowingly present perjured testimony.[32] If a prosecutor knows that a witness intends to lie on the stand, she must encourage the witness not to do so or else refuse to call the witness to testify. If a prosecutor later learns that a witness fabricated testimony, she is required to take remedial steps.[33] Prosecutors possess a "special duty" not to mislead a judge, jury, or defense counsel.[34]

### D. The Grievance Committee, as the Only Body Entrusted with Checking Prosecutorial Misconduct, has an Important Duty to Hold Prosecutors Accountable.

The Grievance Committee is in a unique position to hold New York prosecutors accountable for misconduct. While other attorneys and law enforcement officers are liable to civil lawsuits when they neglect their duties, the absolute immunity doctrine shields prosecutors from civil

---

[29] 22 N.Y.C.R.R. Part 1200, Rule 3.8(b). This Rule was previously codified in New York's Code of Professional Responsibility DR 7-103, 22 NYCRR § 1200.34 (repealed).

[30] N.Y. State Bar Ass'n, *Report of the Task Force on Criminal Discovery*, at 52 (Jan. 30, 2015) https://nysba.org/NYSBA/Practice%20Resources/Substantive%20Reports/PDF/Criminal%20Discovery%20Final%20Report.pdf.

[31] N.Y. State Justice Task Force, *Report of the New York State Justice Task Force of Its Recommendations Regarding Criminal Discovery Reform*, at 2 (July 2014), http://www.nyjusticetaskforce.com/pdfs/Criminal-Discovery.pdf.

[32] *See, e.g., Miller v. Pate*, 386 U.S. 1 (1967).

[33] *See People v. Waters*, 35 Misc.3d 855 (Bronx Cty 2012) (violation of due process when prosecutor "although not soliciting false evidence, allows it to go uncorrected when it appears") (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (prosecutor failed to correct witness's false testimony that he had not received any promise in return for his testimony).

[34] *See, e.g.*, Daniel S. Medwed, *Prosecution Complex: America's Race to Convict and its Impact on the Innocent*, 80-81 (2012); *Connick v. Thompson*, 563 U.S. 51, 65-66 (2011). *See also* Bennett L. Gershman, The Prosecutor's Duty to Truth, 14 Geo. J. Legal Ethics 309, 316 (2001) http://digitalcommons.pace.edu/lawfaculty/128/ ("The courts have recognized that, as a minister of justice, a prosecutor has a special duty not to impede the truth.").

Re: Jesse Sligh (SBN 2220275)                5

accountability.[35] In 1976, the U.S. Supreme Court partly justified absolute immunity for prosecutors because it believed that prosecutorial misconduct would be regulated by the "checks" of "professional discipline" by state bar organizations.[36]

Unfortunately, the U.S. Supreme Court's assumption—that professional disciplinary actions "would provide an antidote to prosecutorial misconduct"[37]—has not been borne out. A 2013 report from the Center for Prosecutor Integrity identified 3,625 cases of prosecutorial misconduct between 1963 and 2013. Of those, only 63 prosecutors—less than 2 percent—were ever publicly sanctioned.[38]

In their 2016 article, "Prosecutorial Accountability 2.0," ethics experts Professors Ellen Yaroshefsky and Bruce Green pointed out that prosecutors "were rarely disciplined for misconduct, and if so, not very seriously." Indeed, "neither judges nor defense lawyers ordinarily alerted disciplinary agencies when prosecutors acted wrongly … [D]isciplinary agencies and the courts overseeing them largely gave prosecutors a pass, perhaps hoping that prosecutors' offices would clean up their own messes."[39] "It's an insidious system," said Marvin Schechter, then chairman of the criminal justice section of the New York State Bar Association, to ProPublica. "Prosecutors engage in misconduct because they know they can get away with it."[40]

In 2018, the Appellate Division suspended New York prosecutor Mary Rain's law license for two years for a variety of misconduct, including summation misconduct.[41] In December 2020, the Appellate Division imposed the same penalty for the egregious misconduct of ex-prosecutor Glenn Kurtzrock.[42] But even a short suspension like that received by Rain and Kurtzrock[43]— indeed, public discipline of any kind—remains rare.

---

[35] *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (noting that prosecutors have "absolute immunity" for the "conduct of a prosecution"); *Dann v. Auburn Police Dep't*, 138 A.D.3d 1468, 1469 (4th Dep't 2016) ("The law provides absolute immunity for conduct of prosecutors that was intimately associated with the judicial phase of the criminal process.") (internal quotation marks omitted); *see also Ryan v. State*, 56 N.Y.2d 561, 562 (1982) (holding that "the doctrine of prosecutorial immunity" precludes "recovery against the State" for "acts of prosecutorial misconduct").

[36] *Imbler,* 424 U.S. at 429; *see also Matter of Malone*, 105 A.D.2d 455, 459 (3d Dep't 1984) (rejecting public official's claim to prosecutorial immunity in a professional ethics proceeding).

[37] Karen McDonald Henning, *The Failed Legacy of Absolute Immunity Under Imbler: Providing A Compromise Approach to Claims of Prosecutorial Misconduct*, 48 Gonz. L. Rev. 219, 242–43 (2012).

[38] Center for Prosecutor Integrity, *White Paper: An Epidemic of Prosecutor Misconduct* (December 2013) www.prosecutorintegrity.org/wp-content/uploads/EpidemicofProsecutorMisconduct.pdf; *see also Proj. On Gov't Oversight*, Hundreds of Justice Department Attorneys Violated Professional Rules, Laws, or Ethical Standards (Mar. 12, 2014), http://pogoarchives.org/m/ga/opr-report-20140312.pdf; Charles E. MacLean & Stephen Wilks, *Keeping Arrows in the Quiver: Mapping the Contours of Prosecutorial Discretion*, 52 Washburn L.J. 59, 81 (2012) (citing "the small number of sanctions against prosecutors, relative to lawyers as a whole"); Fred C. Zacharias, *The Professional Discipline of Prosecutors*, 79 N.C. L. Rev. 721, 725 (2001) (describing the "rarity of discipline" of prosecutors).

[39] Bruce Green & Ellen Yaroshefsky, *Prosecutorial Accountability 2.0*, 92 Notre Dame L. Rev. 51, 65 (2017) (internal citations omitted); *see also* Richard A. Rosen, *Disciplinary Sanctions Against Prosecutors for Brady Violations: A Paper Tiger*, 65 N.C. L. Rev. 693, 697 (1987).

[40] *ProPublica Investigates Prosecutorial Misconduct in New York,* Innocence Project (April 3, 2013) https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody

[41] *Rain*, 162 A.D.3d at 1462.

Re: Jesse Sligh (SBN 2220275)                          6

Prosecutors, the public officials tasked with holding the public accountable, are not held accountable themselves. Absent strong, public discipline by the Grievance Committee, misconduct like that of Sligh will continue unabated and undeterred.

### 2. The District Court Vacated Turner's Conviction Because Sligh Failed to Fulfill His *Brady* Obligations, Depriving Turner of Due Process.

Sligh prosecuted Turner for robbery and related charges, for which Turner was eventually convicted.[44]

A white man named Clarke claimed that upon returning to his car from a bar, he saw a Black man, Turner, searching through his glove compartment, and chased him.[45] At some moment during that chase, Turner allegedly turned, slashed at the complainant with a knife, and robbed him.[46] Importantly, Clarke claimed he did not smoke or drink alcohol, had never been arrested or convicted of any crime, and had never seen Turner before that encounter.[47]

In contrast, Turner testified that he had known Clarke, a crack and heroin user, for over 6 months and had been selling him drugs.[48] Turner would sell Clarke drugs — but sometimes substituted the drugs with "bread crumbs and grits."[49] On the day before the alleged robbery, Turner sold the complainant eight vials, but only four of them contained real drugs.[50] Thus, Turner claimed that the complainant "had made up the robbery in retaliation for a bad drug deal."[51]

The complainant's credibility was "central" to Sligh's case.[52] Sligh was apparently aware of this, telling the trial judge, "it's merely now a question of credibility and that question should

---

[42] *In the Matter of Glenn Kurtzrock*, 192 A.D.3d 197 (2d Dep't, Dec. 30, 2020). http://courts.state.ny.us/courts/ad2/Handdowns/2020/Decisions/D65317.pdf.

[43] In the context of the apparently rampant and egregious misconduct by Rain and Kurtzrock, the court's sanction was surprisingly light. *See, e.g.*, Bennett L. Gershman, *The Most Dangerous Prosecutor In New York State, HuffPost (September 20, 2017)*, https://www.huffpost.com/entry/the-most-dangerous-prosec_b_12085240; Bennett L. Gershman, *A Most Dangerous Prosecutor: A Sequel*, HuffPost (October 1, 2016), https://www.huffpost.com/entry/a-most-dangerous-prosecutor-a-sequel_b_57effb8fe4b095bd896a0fba; Nina Morrison, "What Happens When Prosecutors Break the Law?" *New York Times*, June 18, 2018 https://www.nytimes.com/2018/06/18/opinion/kurtzrock-suffolk-county-prosecutor.html (see also Morrison's twitter thread following the *Kurtzrock* decision, https://twitter.com/Nina_R_Morr/status/1344413003903602688)

[44] Ex. A*, Turner*, 327 F. Supp. 2d at 176.

[45] *Id.* at 177.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 178.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 184-85.

[52] *Id.* at 185.

Re: Jesse Sligh (SBN 2220275)                    7

ultimately be resolved by the trier of fact, the jury," and "ultimately it comes down to whether they believe [the complainant] or believe the Defendant."[53]

Criminal records—including records of prior arrests—can be used as impeachment evidence, that is, evidence that calls into question and undermines a witness's credibility. Recognizing this, Turner's attorney requested that Sligh produce the complainant's criminal records.[54] The District Court similarly recognized the records' importance:

> [T]he circumstances of the alleged crime…and [Sligh's] knowledge that the defense was [fabrication], all pointed to the need to check [the complainant's] record before offering him as a witness, and indeed offering him as a witness *without a record*.[55]

Indeed, Sligh himself recognized the importance of criminal records in a trial that centered on the question of credibility. At trial, Sligh asked Turner "numerous questions about his own conviction record and encouraged the jury to consider that record when determining petitioner's credibility."[56] Sligh also elicited testimony from the complainant that the latter had not been arrested or convicted of a crime[57]—and later noted the complainant's "lack of a criminal record" in summation, bolstering the complainant's credibility.[58]

Not only was the complainant's criminal record of central importance, but it would have been "readily available" to Sligh with only a "most modest effort."[59] Sligh could have obtained an individual's criminal record from the police or his office's investigators,[60] or a paralegal.[61] But Sligh did none of that. Instead, in a case where the complainant's credibility was central and the defense had accused the complainant of fabricating the crime, Sligh asked the complainant whether he had a criminal record.[62] The complainant said no, and Sligh took his word for it, and did not look into the matter further.[63]

But the complainant *did* have a criminal record. In fact, the complainant had an "extensive" criminal record,[64] including "at least six arrests in Queens County" before the trial.[65] Sligh neither obtained these files from his own office nor the entirety of the criminal record from an

---

[53] *Id.*

[54] *Id.* at 178.

[55] *Id.* at 184-85.

[56] *Id.* at 185.

[57] *Id.* at 177-78.

[58] *Id.* at 185.

[59] *Id.*

[60] *Id.*

[61] *Id.* at 182.

[62] *Id.*

[63] *Id.* at 181-82. In fact, Sligh and his colleagues never obtained the complainant's records until they were "required to do so" by the District Court—after Turner had appealed his conviction to the Appellate Division and after his post-conviction proceedings in trial court. *Id.* at 185.

[64] *Id.* at 181-82. The District Court did not discuss how much of this "extensive record existed before the trial—as opposed to arrests and convictions after the trial, which would not be relevant.

[65] *Id.* at 182.

Re: Jesse Sligh (SBN 2220275)                              8

outside source. Instead of trying to confirm the complainant's (false) claim about his criminal record, Sligh took the path of willful ignorance. Sligh never answered the defense's request for the complainant's criminal record. During later habeas proceedings, it was undisputed that Sligh's lack of response constituted a confirmation to the defense that Clarke had no arrest record.[66]

Based on this, the District Court held that Sligh violated Turner's due process rights—twice.[67] First, Sligh violated *Brady* when he failed to obtain and disclose the complainant's criminal record—actions that resulted in a "verdict unworthy of confidence."[68]

Second, Sligh also violated Turner's due process rights when he elicited false testimony from the complainant—testimony that Sligh "should have known was false."[69] As noted, Sligh questioned the complainant on direct-examination about his arrest and conviction record, and the complainant testified that he had neither.[70] Sligh then argued on summation that the complainant was credible because of this lack of record.[71] But Clarke had committed perjury. Had Sligh "fulfilled his *Brady* obligation, he not only would have known that [the complainant] had a record, he also would have known that [the complainant] had lied to him about his record."[72] Because Sligh failed to check the complainant's record himself, "concluding that [he] should have known of the [complainant's] perjury requires no drawing of subtle lines; it is obvious."[73]

### 3. The Grievance Committee Must Discipline Sligh for the Serious Professional Misconduct That Occurred Here.

As noted by one Grievance Committee, "[t]he legal profession expects all lawyers to conduct themselves in an honest and ethical manner in accordance with the Rules of Professional Conduct."[74] Professional misconduct occurs with a "violation of any of the Rules of Professional Conduct."[75] Grievance Committees are "committed to … recommending discipline for lawyers who do not meet the high ethical standards of the profession."[76]

Our laws and profession hold prosecutors to an even higher standard. Prosecutors wield immense power—the power to punish on behalf of the state. Such immense power, when left

---

[66] *Id.* at 184.

[67] *Id.* at 187.

[68] *Id.* at 185.

[69] *Id.* at 187.

[70] *Id.* at 177-78.

[71] *Id.* at 185.

[72] *Id.* at 186.

[73] *Id.* at 187.

[74] *How to File a Complaint*, Attorney Grievance Committee — First Department (July 30, 2020), https://www.nycourts.gov/courts/ad1/Committees&Programs/DDC/How%20to%20File%20a%20Complaint%2007.30.2020.pdf.

[75] 22 N.Y.C.R.R. Part 1240.

[76] *How to File a Complaint*, Attorney Grievance Committee — First Department.

Re: Jesse Sligh (SBN 2220275)                    9

unchecked, can cause indelible harm. The United States Supreme Court has stated unequivocally that prosecutors "have a special duty to seek justice, not merely to convict."[77]

In handing ex-prosecutor Glenn Kurtzrock a two-year suspension for his past prosecutorial misconduct, the Appellate Division reminded us, "Prosecutors, in their role as advocates and public officers, are charged with seeing that justice is done—to act impartially, to have fair dealing with the accused, to be candid with the courts, and to safeguard the rights of all."[78]

Therefore, a prosecutor is not merely an advocate for a victim, a complainant, or society as a whole. Instead, a prosecutor is a "minister of justice," responsible to guarantee "procedural justice and that guilt is decided upon the basis of sufficient evidence."[79] Similarly, the professional guidelines promulgated by the American Bar Association make clear that a prosecutor's job goes well beyond achieving the maximum number of convictions.[80] The New York professional rules reflect this higher standard: prosecutors are the only category of attorneys with their own ethical rule.[81] Indeed, as agents of the state and ministers of justice, prosecutors play a highly public role. Failing to acknowledge their misconduct, or hold them accountable for it, tarnishes the legitimacy of the criminal system, the bar as a whole, and the rule of law itself.

### A. Sligh Violated Rules of the Code of Professional Responsibility.

The standard of proof in attorney disciplinary proceedings is a fair preponderance of the evidence—not a higher standard, such as clear and convincing or beyond a reasonable doubt.[82] The Court of Appeals explained, "[T]he privilege to practice law is *not a personal or liberty interest, but 'is more nearly to be classified as a property interest, as to which the higher standard of proof has not been required.'"*[83]

Sligh made multiple violations of the Rules of the Code of Professional Responsibility.[84] Sligh withheld evidence in violation of several Rules. Rule DR 7-103(b) required a prosecutor to make "timely disclosure…of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense or reduce the punishment."[85] Two other rules, DR 7-102(a)(3) and DR 7-109(a),

---

[77] *Connick v. Thompson*, 563 U.S. 51, 65-66 (2011) (quotation marks omitted).

[78] *Kurtzrock*, 192 A.D.3d 197.

[79] 22 N.Y.C.R.R. Part 1200, Rule 3.8(b) (McKinney Commentary).

[80] 2017 ABA Functions and Duties of the Prosecutor, Standard 3-1.2 ("The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict."), https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/.

[81] 22 N.Y.C.R.R. Part 1200, Rule 3.8(b).

[82] See, e.g., *Matter of Capoccia*, 59 N.Y.2d 549, 453 N.E.2d 497 (1983).

[83] *Matter of Scudieri*, 174 A.D.3d 168, 173 (2019) (emphasis added, quoting *Matter of Seiffert,* 65 N.Y.2d 278, 280 [1985], quoting *Matter of Capoccia,* 59 N.Y.2d 549, 553 [1983]).

[84] The Code of Professional Responsibility predated the current Rules of Professional Conduct, and was applicable in 1988, when Sligh prosecuted Turner. The exact language of the 1988 version of the Rules could not be located. Quoted is the language from the 1989 and 1987 Rules, which is exactly the same for the applicable Rules. Therefore, there is no reason to think the 1988 Rules differed in any way in language, intention, or scope.

Re: Jesse Sligh (SBN 2220275)                           10

similarly required disclosure, and prohibited knowing concealment, of evidence.[86] A prosecutor's "deliberate pattern of avoidance, or willful blindness" to the existence of such evidence—including failure to conduct a *Brady* analysis of evidence or delegation of this duty to law enforcement—constitutes knowledge under Rule 3.8(b), the successor to Rule DR 7-103(b).[87]

Sligh violated these Rules when he failed to obtain and disclose the complainant's criminal record. The District Court specifically found that Sligh should have known about these records. Sligh should not be able to avoid accountability under these Rules because of his own failure to take an easy step and learn of the existence of the suppressed evidence. Such willful ignorance should fulfill the knowledge element of these Rules.

Sligh made a misrepresentation to the defense, and to the jury and the court. Under Rule 7-102, attorneys were not to knowingly make a false statement to the court or use evidence they knew to be false.[88] Rule DR 1-102 prohibited attorneys from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."[89]

Sligh told the defense that the complainant had no criminal record (by not answering defense's request for the complainant's record). Sligh also elicited perjured testimony from the complainant when he should have known that it was perjured. Sligh then relied on this perjured testimony in his summation to argue that the complainant was credible. Sligh should not avoid accountability for his constitutional violation because he did not actually know that the testimony was perjured. He did not know this because of his own failure, which amounted to a constitutional violation. Therefore, the knowledge element of these Rules should be deemed fulfilled. Sligh's elicitation of perjured testimony and summation violated these Rules.

Sligh's *Brady* violation and misrepresentations prejudiced the legal process and were not befitting of a lawyer. Rule DR 1-102 prohibited attorneys from engaging in conduct that was prejudicial to the administration of justice, or engaging in any other conduct that adversely reflected on their fitness to practice law.[90] A prosecutor's violation of Rule DR 7-103(b) also

---

[85] Code of Prof. Resp., DR 7-103(b) (22 N.Y.C.R.R. § 1200.34) (repealed). This rule was in effect when the discussed misconduct occurred. However, Rule 3.8(b) of the Rules of Professional Conduct replaced it in 2009.

[86] Code of Prof. Resp., DR 7-102(a)(3) (22 N.Y.C.R.R. § 1200.33) (repealed); Code of Prof. Resp., DR 7-109(a) (22 N.Y.C.R.R. § 1200.40) (repealed). These two rule were replaced in 2009 by 22 N.Y.C.R.R. Part 1200, Rules 3.4(a)(1), (3) (a lawyer shall not "suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce…[or] conceal or knowingly fail to disclose that which the lawyer is required by law to reveal."). *See also Rain*, 162 A.D.3d at 1460-61 (suppression of exculpatory evidence violated Rule 3.4(a)(1)).

[87] *Kurtzrock*, 192 A.D.3d 197 (deliberate pattern of avoidance or willful blindness constitutes knowledge under Rule 3.8(b), the modern equivalent of Rule DR 7-103(b)).

[88] Code of Prof. Resp., DR 7-102 (22 N.Y.C.R.R. § 1200.33) (repealed). This rule was in effect when the misconduct, as outlined above, occurred. However, Rule 3.3 of the Rules of Professional Conduct replaced it in 2009.

[89] Code of Prof. Resp., DR 1-102 (22 N.Y.C.R.R. § 1200.3) (repealed). This rule was in effect when the misconduct, as outlined above, occurred. However, Rule 8.4(c) of the Rules of Professional Conduct replaced it in 2009. *See also In re Muscatello*, 87 A.D.3d 156, 158-59 (2d Dep't 2011) (prosecutor misrepresentation of content of evidentiary document to the grand jury violated Rule 8.4(c)).

Re: Jesse Sligh (SBN 2220275)                    11

violated Rule DR 1-102.[91] Similarly, an attorney's misrepresentation during a legal proceeding prejudiced the administration of justice and reflected adversely on the lawyer's fitness, in violation of Rule DR 1-102.[92]

Sligh prejudiced the legal process, and thus the administration of justice, when he withheld documents that he was required—by constitutional, state and professional laws—to disclose.[93] He further obstructed the administration of justice when he presented perjured testimony to the jury, and relied on it in his summation. His serious misconduct is not befitting of a lawyer, a further violation of the Rules.

### B. For His Misconduct, Sligh Must be Suspended.

"The purpose of a sanction in a disciplinary proceeding is not to punish but to protect the public, to deter similar conduct, and to preserve the reputation of the Bar."[94] Prosecutorial misconduct that violates the U.S. and New York constitutions has a devastating impact on due process. It is a long-standing, largely unaddressed problem in the court system that is only rarely discovered and even more rarely corrected.

In considering the appropriate measure of discipline, the Appellate Division has considered the role of prosecutor as a "substantial factor in aggravation."[95] Simply being a prosecutor supports aggravated discipline because the law tasks them "with seeing that justice is done—to act impartially, to have fair dealing with the accused, to be candid with the courts, and to safeguard the rights of all."[96] Similarly, extensive prosecutorial experience weighs towards an aggravated sanction.[97]

Though the misconduct discussed here occurred years ago, New York does not have a statute of limitation barring disciplinary action against an attorney—and rightfully so. As explained by the American Bar Association, "Statutes of limitation are wholly inappropriate in lawyer disciplinary proceedings. Conduct of a lawyer, no matter when it has occurred, is always relevant

---

[90] Code of Prof. Resp., DR 1-102 (22 N.Y.C.R.R. § 1200.3) (repealed). These rules were in effect when the misconduct, as outlined above, occurred. However, Rules 8.4(d) and (h) of the Rules of Professional Conduct replaced them in 2009.

[91] *Kurtzrock*, 192 A.D.3d 197 (finding disclosure violation prejudiced the administration of justice and reflected adversely on the prosecutor in violation of Rules 8.4(d), (h), the successors to Rule DR 1-102); *Rain*, 162 A.D.3d at 1461 (same).

[92] *Muscatello*, 87 A.D.3d at 158-59 (prosecutor misrepresentation of content of evidentiary document to the grand jury violated Rules 8.4(d), (h), the modern equivalents of DR 1-102).

[93] *Rain*, 162 A.D.3d at 1460-61 (upholding disciplinary referee's finding that a prosecutor's *Brady* suppression violated Rules 8.4(d) and 8.4(h)).

[94] *Malone*, 105 A.D.2d at 460.

[95] *Kurtzrock*, 192 A.D.3d 197. *See also Rain*, 162 A.D.3d at 1462 ("[P]rosecutors carry an obligation to hold themselves to the highest standards based upon their role in our system of justice.").

[96] *Kurtzrock*, 192 A.D.3d 197.

[97] *Id. See also Rain*, 162 A.D.3d at 1461 (prosecutor's experience an aggravating factor).

Re: Jesse Sligh (SBN 2220275)                    12
**JA279**

to the question of fitness to practice."[98] The ABA's Model Rule 32 for Lawyer Disciplinary Enforcement makes lawyer discipline "exempt from all statutes of limitations."[99]

The Appellate Division has demonstrated that misconduct that affects the credibility of a prosecutor should not be taken lightly. It suspended a prosecutor for three years for making a "misleading" statement to a trial court, and explained that, "such [mis]conduct strikes at the heart of [the prosecutor's] credibility as a prosecutor and an officer of the court."[100] In that same case, the Appellate Division demonstrated that a prosecutor's "ample opportunity" to correct or clarify the misrepresentation—and failure to do so—counts against him in evaluating proper disciplinary measures.[101]

Sligh was not an uninformed novice but a seasoned prosecutor when he violated *Brady* and the Code of Professional Responsibility. Sligh began his career as a prosecutor in 1982,[102] and had about 6 years of prosecutorial experience when he prosecuted Turner. While he had plenty of experience to draw on, Sligh still violated a constitutional rule through his willful ignorance. This serious misconduct is not surprising; it fits seamlessly in the longer history of misconduct that has defined the QDAO through Sligh's tenure as an executive of the office.

The Grievance Committee must publicly and severely sanction Sligh for his serious misconduct. Failure to do so would be especially problematic here, since, as a former Executive of the QDAO for over two decades, Sligh served as a role model for generations of prosecutors. If the Committee fails to publicly and severely sanction Sligh for his serious misconduct, the attorneys who worked under him and looked up to him will neither avoid nor fear making similar violations. Without other mechanisms to hold prosecutors accountable, a failure to discipline a higher up such as Sligh will demonstrate to prosecutors that they are above the law; that they need not fear accountability; that they can get away with breaking the law.

## Conclusion

Sligh suppressed exculpatory evidence. In doing so, he violated several Rules of the Code of Professional Responsibility. To our knowledge, Sligh remains unsanctioned publicly or privately for his serious misconduct. We call on the Grievance Committee to suspend Sligh.

As "officers of the court, all attorneys are obligated to maintain the highest ethical standards."[103] To that end, "the grievance process exists to protect the public... By bringing a complaint to a committee's attention, the public helps the legal profession achieve its goal."[104] The judicial finding identified in this grievance provides far more evidence than necessary to

---

[98] 2020 Model Rules for Lawyer Disciplinary Enforcement, Rule 32 and Commentary, https://www.americanbar.org/groups/professional_responsibility/resources/lawyer_ethics_regulation/model_rules_for_lawyer_disciplinary_enforcement/rule_32/.

[99] *Id.*

[100] *See In re Stuart*, 22 A.D.3d 131, 133 (2d Dep't 2005).

[101] *Id.*

[102] QNS Editorial, *Executive Ada Receives Honor, supra*.

[103] NYSBA Committee on Professional Discipline, Guide to Attorney Discipline, available at: https://nysba.org/public-resources/guide-to-attorney-discipline/

[104] *Id.*

Re: Jesse Sligh (SBN 2220275)                13

meet the "fair preponderance of the evidence" standard to discipline the prosecutor at issue, but we call upon the Grievance Committee to go further and investigate far beyond the court finding identified in this grievance. For the legitimacy of and public trust in the criminal system, and the bar, the investigation should be public at every stage possible.

Below are some essential aspects of such an investigation:

1. The Committee should begin by investigating the many other cases prosecuted by Sligh. As the comment to Rule 8.3 of the New York Rules of Professional Conduct reminds us, "An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover."[105] Using its power to investigate, including to issue subpoenas and interview witnesses, the Committee can and should obtain a list of all cases that this prosecutor worked on and contact the attorneys, witnesses, and accused persons (while protecting the accused's rights to privacy and counsel) in those cases. The Committee should also identify all of Sligh's other cases where the issue of misconduct was raised in the courts before trial, at trial, or on appeal, or was the subject of other ethical grievances, mentioned in the media, or identified in any other source.

2. The Committee should promptly investigate whether any supervising attorney at the Queens District Attorney's Office (QDAO) is also culpable for the ethics violation cited in this grievance under Rule 5.1(d) of the New York Rules of Professional Conduct, which provides direct culpability for supervising attorneys under various circumstances, including when a supervisor knowingly ratifies improper conduct or knows of the conduct when it could be prevented but fails to take remedial action.[106]

3. The Grievance Committee should investigate whether the Queens District Attorney's Office (QDAO) and its managing attorneys complied with its duties under Rule 5.1 of the New York Rules of Professional Conduct, requiring that law firms as a whole, and managing attorneys in particular, make efforts to ensure that all lawyers in the firm conform to the New York Rules of Professional Conduct.

4. The Committee should identify any prosecutors trained and/or supervised by Sligh and determine whether instances of prosecutorial misconduct can also be found in their work as prosecutors.

---

[105] Rule 8.3, Comment [1].

[106] Rule 5.1 (d). A lawyer shall be responsible for a violation of these Rules by another lawyer if:

(1)  the lawyer orders or directs the specific conduct or, with knowledge of the specific conduct, ratifies it; or

(2)  the lawyer is a partner in a law firm or is a lawyer who individually or together with other lawyers possesses comparable managerial responsibility in a law firm in which the other lawyer practices or is a lawyer who has supervisory authority over the other lawyer; and

(i) knows of such conduct at a time when it could be prevented or its consequences avoided or mitigated but fails to take reasonable remedial action; or

(ii) in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated.

Re: Jesse Sligh (SBN 2220275)                    14

We recognize that bar discipline provides a uniquely individual remedy that will not, on its own, remedy the systemic problems identified above in this letter. For this reason, we also call for the implementation of an independent public commission empowered to investigate all cases handled by this prosecutor and vacate convictions where appropriate. To be clear, we do not mean a closed-door, cloaked process at the Queens District Attorney's Office, but rather a commission that operates transparently and includes members of the public, including members of impacted communities of color, public defenders and other criminal defense attorneys, civil rights attorneys, and people who have been incarcerated and their loved ones.

Thank you for your careful consideration of this matter.

Cynthia Godsoe
Professor of Law
Brooklyn Law School

Nicole Smith Futrell
Associate Professor of Law
CUNY School of Law

Steven Zeidman
Professor of Law
CUNY School of Law

Daniel S. Medwed
University Distinguished Professor of
Law and Criminal Justice
Northeastern University

Abbe Smith
Scott K. Ginsburg Professor of Law
Director, Criminal Defense & Prisoner Advocacy Clinic
Co-Director, E. Barrett Prettyman Fellowship Program
Georgetown University Law Center

Re: Jesse Sligh (SBN 2220275)                    15

**JA282**