# 24-2251

## United States Court of Appeals for the Second Circuit

CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, STEVEN ZEIDMAN,

*Plaintiffs-Appellees,*

v.

HECTOR D. LASALLE, in his official capacity Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York,

*Defendant-Appellant,*

GEORGIA PESTANA, Personal Capacity, STEVEN STEIN CUSHMAN, in his official capacity Corporation Counsel of the City of New York,

*Defendants.*

*(caption continues inside front cover)*

On Appeal from the United States District Court for the Southern District of New York

## JOINT APPENDIX
### Volume 4 – Pages 849-994

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2710

LETITIA JAMES
  *Attorney General*
  *State of New York*
28 Liberty Street
New York, NY 10005
(212) 416-8020

*Attorney for Appellees*

*Attorney for Appellant*

(*caption continues from front cover*)

MELINDA KATZ, Personal Capacity and in her official capacity the District Attorney of Queens County, ANDREA E. BONINA, Personal Capacity and in her official capacity Chair of State of New York Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts, DIANA MAXFIELD KEARSE, Personal Capacity and in her official capacity Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh and Thirteenth Judicial District,

*Defendants.*

# TABLE OF CONTENTS

**Page**

**Volume 1**

Docket Sheet ...............................................................................................JA1

Order, dated Jan. 25, 2022 ....................................................................JA34

Complaint and Demand for Jury Trial, dated Nov. 4, 2021 .......................JA51

    Ex. 1 - Letter from James E. Johnson to Grievance Committee
           Members, dated June 2, 2021 ...................................................JA92

    Ex. 2 - Letter from Diana Maxfield Kearse to Professors, dated
           June 11, 2021 ........................................................................JA97

    Ex. 3 - Letter from Gregory Diskant to Grievance Committee
           Members, dated June 22, 2021 .................................................JA99

    Ex. 4 - Letter from Gregory Diskant to Georgia M. Pestana,
           dated June 22, 2021 ...............................................................JA107

    Ex. 5 - Letter from Georgia M. Pestana to Grievance Committee
           Members, dated July 8, 2021 ...................................................JA110

    Ex. 6 - Letter from Gregory Diskant to Diana Maxfield Kearse,
           dated June 30, 2021 ...............................................................JA113

    Ex. 7 - Letter from Andrea E. Bonina to Gregory Diskant,
           dated July 26, 2021 ...............................................................JA118

City Defendants' Responses and Objections to Plaintiffs' Statement
of Undisputed Facts, dated Mar. 31, 2022 ..............................................JA120

Response of Defendants Hector D. LaSalle and Andrea E. Bonina
to Plaintiffs' Statement of Undisputed Material Facts,
dated Mar. 31, 2022 ...............................................................................JA136

Defendant Diana Maxfield Kearse's Response to Plaintiffs' Rule 56.1
Statement and Additional Facts, dated Mar. 31, 2022............................JA152

# TABLE OF CONTENTS

**Page**

**Volume 1 (cont'd)**

Decision and Order, dated May 5, 2022 ..................................................JA172

Decision and Order, dated June 13, 2022 ..............................................JA207

Stipulation of Voluntary Dismissal (So-Ordered), dated Mar. 30, 2023 ....JA247

Joint Stipulation Regarding Time and Scope of Limited Discovery
(So-Ordered), dated June 5, 2023 ..........................................................JA249

Joint Letter, dated June 16, 2023..........................................................JA253

Declaration of Andrew H. Wells, Jr. in Support of Plaintiffs'
Motion for Summary Judgment, dated July 28, 2023 ..............................JA259

    Ex. 1 - Grievance Committee Complaint Against Jesse Sligh,
        dated May 3, 2021...................................................................JA267

**Volume 2**

    Ex. 2 - Grievance Committee Complaint Against Charles
        Testagrossa, dated May 3, 2021.............................................JA283

    Ex. 3 - Letter from Diana Maxfield Kearse to Professors, dated
        June 11, 2021, reproduced above at JA97

    Ex. 4 - Excerpts from Appellate Division, Second Judicial
        Department's Grievance Committee Manual & Forms,
        Volume 1, revised Apr. 2019 ..................................................JA305

    Ex. 5 - 2022 Professional Matters Caseload Report, dated
        Feb. 6, 2023 .........................................................................JA315

    Ex. 6 - 2021 Professional Matters Caseload Report, dated
        Jan. 20, 2022 .......................................................................JA323

    Ex. 7 - 2022 Annual Attorney Disciplinary Activities Report,
        dated Jan. 22, 2023................................................................JA331

# TABLE OF CONTENTS

**Page**

**Volume 2 (cont'd)**

Ex. 8 - Transcript of the Deposition of Diana Maxfield Kearse,
dated June 8, 2023 ..................................................................JA334

Ex. 9 - Excerpts from the 2016 Annual Attorney Disciplinary
Activities Report, various dates .............................................JA438

Ex. 10 - Excerpts from the 2017 Annual Professional Discipline
Report, various dates...............................................................JA451

Ex. 11 - Excerpts from the 2018 Annual Professional Discipline
Report, various dates...............................................................JA465

Ex. 12 - Excerpts from the 2019 Annual Professional Discipline
Report, various dates...............................................................JA479

Ex. 13 - Excerpts from the 2020 Annual Professional Discipline
Report, various dates...............................................................JA491

Ex. 14 - Screenshot, Appellate Division, Second Judicial Department
Website, "Attorney Matters: How to Make a Complaint
About a Lawyer," dated Apr. 12, 2023....................................JA520

Ex. 15 - Appellate Division, Second Judicial Department's "Orien-
tation to the Profession" Materials, revised Feb. 16, 2017....JA527

**Volume 3**

Ex. 16 - Excerpts from Appellate Division, Second Judicial
Department's Grievance Committee Manual & Forms,
Volume 5, revised Apr. 2019 .................................................JA571

Ex. 17 - Initial Disclosures of Diana Maxfield Kearse, dated
Sept. 23, 2023........................................................................JA580

Ex. 18 - Initial Disclosures of Hector D. LaSalle and Andrea E.
Bonina, dated Sept. 23, 2023.................................................JA590

# TABLE OF CONTENTS

**Page**

**Volume 3 (cont'd)**

Ex. 19 - Bill Jacket for Ch. 675 (1945) ................................................. JA602

Ex. 20 - Letter from Robert H. Cabble to Aprilanne Agostino, dated July 19, 2019, attaching Decision and Order, *Matter of The Innocence Project, Inc.*, No. 2019-05674 (2d Dep't 2019) ....... JA652

Ex. 21 - Email Exchange, dated from May 12, 2023, to June 20, 2023 .................................................................. JA658

Ex. 22 - Select Records from Disciplinary File of Glenn Kurtzrock, various dates ........................................................... JA667

Declaration of Andrea E. Bonina in Support of Justice LaSalle's Cross-Motion and in Opposition to Plaintiffs' Motion for Summary Judgment, dated Sept. 19, 2023 ................................................................. JA844

**Volume 4**

Declaration of Diana Maxfield Kearse in Connection with Plaintiffs' Motion for Summary Judgment and Justice LaSalle's Cross-Motion for Summary Judgment, dated Aug. 31, 2023 ........................................... JA849

Declaration of Darrell M. Joseph in Support of Justice LaSalle's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, dated Sept. 26, 2023 ........................................... JA852

Ex. A - Screenshot, Appellate Division, Second Judicial Department Website, "How to Review or Obtain Copies of Papers Filed with the Court," dated Apr. 12, 2023 ..................................... JA857

Declaration of Hector D. LaSalle in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, dated Sept. 28, 2023 ............................................... JA860

Declaration of Catherine A. Sheridan in Support of Justice LaSalle's Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, dated Sept. 27, 2023 ............................ JA862

# TABLE OF CONTENTS

**Page**

**Volume 4 (cont'd)**

Declaration of Joya C. Sonnenfeldt in Support of Justice LaSalle's Cross-Motion and in Opposition to Plaintiffs' Motion for Summary Judgment, dated Oct. 4, 2023 ....................................................JA870

    Ex. A - Ch. 946, §§ 56, 57, 68, 1895 N.Y. Laws 796 ..............................JA874

    Ex. B - New York Code of Civil Procedure §§ 67-72 (1879) .................JA878

    Ex. C - Excerpt from Bill Jacket for Ch. 649 (1945) ............................JA880

    Ex. D - Excerpts from Tenth Annual Report of Judicial Council of the State of New York, published 1944 ................JA886

    Ex. E - Excerpts from Appellate Division, Second Judicial Department's "Orientation to the Profession" Materials, dated Feb. 16, 2017, reproduced in full at JA531

    Ex. F - Excerpts from Final Report of the New York State Commission on Statewide Attorney Discipline, dated Sept. 2015 .....JA894

    Ex. G - Press Release, New York State Unified Court System, dated Dec. 29, 2015 ........................................................................JA906

    Ex. H - Excerpts from Appellate Division, Second Judicial Department's Grievance Committee Manual & Forms, Volume 1, revised Apr. 2019 .................................................JA909

    Ex. I - Ch. 675, 1945 N.Y. Laws 1456, 1456-57....................................JA915

    Ex. J - Excerpts of Transcript of the Deposition of Diana Maxfield Kearse, dated June 8, 2023, reproduced above at JA334

    Ex. K - Appellate Division, First Judicial Department, "How to File a Complaint," dated July 30, 2020........................................JA919

v

**TABLE OF CONTENTS**

**Page**

**Volume 4 (cont'd)**

Ex. L - Screenshot, Appellate Division, Second Judicial Department Website, "How to Make a Complaint About a Lawyer," dated Apr. 12, 2023, reproduced above at JA524

Ex. M - Appellate Division, Third Judicial Department, "Instructions for Filing a Complaint for Professional Misconduct Against an Attorney," not dated ..........................................................JA929

Ex. N - Appellate Division, Fourth Judicial Department, "How Complaints Against Attorneys Are Processed," not dated ....JA932

Ex. O - Ch. 295, 1921 N.Y. Laws 1017, 1017-18 ..................................JA935

Justice LaSalle's Response to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts, dated Oct. 6, 2023 .........................................JA938

Plaintiffs' Response to Defendant LaSalle's Rule 56.1 Statement of Undisputed Material Facts, dated Nov. 17, 2023 .....................................JA964

Declaration of Shelley R. Attadgie in Support of Plaintiffs' Motion for Summary Judgment, dated Nov. 17, 2023 ..........................................JA980

Ex. 1 - Email Exchange, dated from Mar. 21, 2023, to Mar. 23, 2023 .......................................................................JA982

Ex. 2 - Email from Professors to Grievance Committee, dated Oct. 19, 2022.........................................................................JA986

Ex. 3 - Excerpts from Appellate Division, Second Judicial Department's Grievance Committee Manual & Forms, Volume 4, revised Apr. 2019 ..................................................JA988

Stipulation of Voluntary Dismissal (So-Ordered), dated Apr. 9, 2024 .....JA992

Notice of Appeal, dated Aug. 21, 2024......................................................JA994

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, and STEVEN ZEIDMAN,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; and HECTOR D. LASALLE, Presiding Justice of the Second Justice Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity.<br><br>Defendants. | Case No. 1:21-cv-09128-VM<br><br>**DECLARATION OF DIANA MAXFIELD KEARSE IN CONNECTION WITH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND JUSTICE LASALLE'S CROSS-MOTION FOR SUMMARY JUDGMENT ON THE FOURTH CLAIM** |

I, DIANA MAXFIELD KEARSE, declare and state, pursuant to 28 U.S.C. § 1746, that:

1. I am Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts (the "Grievance Committee"), a position I have held since November 2000.

2. I was originally named as a defendant in this action, but the claims against me have been dismissed without prejudice by stipulation between the parties entered by the Court.

3. I submit this declaration in connection with Plaintiffs' Motion for Summary Judgment and Justice LaSalle's Cross-Motion for Summary Judgment on the Fourth Claim.

4. Exhibits 2 and 7 to the Complaint filed at ECF No. 59 in this litigation are true and correct copies of the letters I sent Plaintiffs' Counsel on June 11, 2021 and July 26, 2021,

**JA849**

respectively. Exhibits 3 and 6 to the same Complaint are true and correct copies of letters I received from Plaintiffs' counsel dated June 22, 2021 and June 30, 2021, respectively.

5. As Chief Counsel to the Grievance Committee, I am only permitted to release information pertaining to attorney discipline that is pursuant to or otherwise authorized by the Supreme Court Appellate Division, Second Judicial Department Grievance Committee Manual and Forms, revised as of April 2019 (the "Manual," produced as 2DDEPT000001 – 2DDEPT000137); New York Judiciary Law § 90(10) ("Section 90(10)"); the Rules for Attorney Disciplinary Matters ("Joint Rules"), 22 N.Y.C.R.R. § 1240; and as directed by an order of the Appellate Division of the Supreme Court of the State of New York.

6. When requests are made for information that is otherwise confidential under applicable law, it is my practice to respond with a letter that states, among other things, that we are unable to assist because "pursuant to Judiciary Law Section 90(10), and 22 NYCRR 1240.18, any and all records of this Committee are sealed and deemed private and confidential, and may be released only upon order of the Appellate Division." Such letters are based upon a form letter found in Appendix 8 to the Manual.

7. In my experience, Letters of Advisement and Admonitions sometimes contain sensitive information, including information that may be subject to the attorney-client privilege and personal information about the respondent attorney such as medical, mental health, alcohol abuse, substance abuse, and family issues.

8. It is my understanding that if an application pursuant to the "good cause" provision of Section 90(10) were to be made, seeking the release of otherwise confidential information pertaining to matters handled by the Grievance Committee, my office would receive notice of said

2

**JA850**

application so as to provide the Grievance Committee with sufficient notice and an opportunity to respond.

9.    I never received notice of any good cause application related to the Plaintiffs' complaints.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 31, 2023
       Brooklyn, New York

Diana Maxfield Kearse

3

**JA851**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIVIL RIGHTS CORPS, et al., | No. 21-cv-09128 (VM) |
| Plaintiffs, | **DECLARATION OF** |
| – against – | **DARRELL M. JOSEPH IN SUPPORT OF** |
| | **JUSTICE LASALLE'S CROSS-MOTION** |
| STEVEN STEIN CUSHMAN, et al., | **FOR SUMMARY JUDGMENT AND IN** |
| | **OPPOSITION TO PLAINTIFFS'** |
| | **MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | **ON THE FOURTH CLAIM** |

I, **DARRELL M. JOSEPH**, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my recollection:

1.      Since August 3, 2023, I have served as the Acting Clerk of Court for the Appellate Division, Second Judicial Department ("Second Department"). From 2019 until I was named Acting Clerk, I served as a Deputy Clerk in the Second Department. I submit this declaration in support of Defendant Justice Hector D. LaSalle's cross-motion for summary judgment and in opposition to Plaintiffs' motion for summary judgment.[1]

2.      As Acting Clerk, and previously as Deputy Clerk, I supervise the handling of matters involving attorney licensing and discipline. "Attorney Matters" is the administrative section within the Clerk's Office that receives and processes requests regarding attorney licensing.

3.      "Disciplinary matters" include formal disciplinary proceedings initiated by grievance committee ("Committee") petition under Section 1240.8 of the Rules For Attorney Disciplinary Matters ("Statewide Rules"), 22 N.Y.C.R.R. part 1240, Committee applications for interim suspension under Section 1240.9, motions for discipline by consent and attorney

_____

[1]      Plaintiffs are Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Justin Murray, Abbe Smith, and Steven Zeidman.

applications to resign during pending disciplinary investigations or proceedings under Section 1240.10, applications for diversion to a monitoring program under Section 1240.11, matters involving attorneys who were found guilty of a crime under Section 1240.12, matters seeking to discipline an attorney based on discipline for misconduct imposed by a foreign jurisdiction under Section 1240.13, motions for suspension due to attorney incapacity under Section 1240.14, attorney applications for reinstatement following suspension or disbarment under Sections 1240.16 and 1240.17, and "Good Cause Applications" seeking disclosure of records related to attorney licensing and discipline under Section 1240.18(d) and Section 90(10). 22 N.Y.C.R.R. §§ 1240.8-14, 1240.16-17; Jud. L. § 90(10).

4.    When the Second Department receives a request for relief pursuant to 22 N.Y.C.R.R. part 1240—whether by petition, motion, or application—the Clerk's Office assigns a docket number.

5.    Pursuant to Second Department policy, the Clerk's Office also reviews and issues a docket number to Committee requests for Committee disposition of matters involving misuse of client funds.

6.    The Clerk's Office does not receive or assign a docket number to complaints submitted to Committees, Committee investigations, or Committee dispositions. The Clerk's Office only becomes involved in matters before the Committee if the Chief Attorney requests issuance of a subpoena under 22 N.Y.C.R.R. § 1240.7(b)(3) or the Clerk's Office receives a disclosure request under 22 N.Y.C.R.R. § 1240.18.

7.    The Clerk's Office keeps records filed with the Second Department in disciplinary matters. The Clerk's Office does not have control over records submitted to or created by the three Second Department Committees.

8.      Second Department orders—sustaining charges, imposing public discipline, for interim suspension, reinstating an attorney, or accepting an attorney's resignation for disciplinary reasons—are public under Section 90(10) of the Judiciary Law.

9.      The public can access the pleadings related to Appellate Division orders in disciplinary matters by visiting or contacting the Clerk's Office. Attached hereto as **Exhibit A** is a true and correct printout of the public webpage on the Second Department's website explaining how to access court records, https://www.nycourts.gov/courts/ad2/How_to_Review_or_Obtain_copies_of_Papers_filed_with_the_Court.shtml, with bates stamps 2DDEPT000293-000294.

10.     An attorney can request from Attorney Matters a letter indicating their own registration status and disciplinary history or lack thereof in the Second Department by following instructions available on the website for the Second Department. *See* https://www.nycourts.gov/courts/ad2/attorneymatters_LetterofDisciplinaryhistory.shtml. Attorneys can also request that this information be provided to a third party such as a state bar association.

11.     If an individual contacts the Second Department requesting information about the registration or discipline of an attorney, the request is processed by Attorney Matters. If charges have been sustained, and the attorney has been publicly disciplined, Attorney Matters inquires what document is being sought and then identifies any costs for production. After payment, Attorney Matters sends the requested document(s). If Attorney Matters checks the roll of attorneys and internal case management database and learns that no public discipline has been imposed, Attorney Matters informs the requester that, as far as Attorney Matters is aware, the attorney is in good standing. If Attorney Matters locates a public order regarding the respondent attorney such

3

as an order of interim suspension, censure, suspension, or disbarment, Attorney Matters will refer the requester to the relevant order.

12.    In the past 10 years, the Second Department has received approximately 160 "Good Cause" applications or motions for disclosure of disciplinary investigation results or records pursuant to Judiciary Law Section 90(10) and 22 N.Y.C.R.R. § 1240.18(d).

13.    The majority of these applications seek an order authorizing the Committee to release to a law enforcement agency its file on an attorney where the law enforcement agency is conducting a parallel criminal investigation into potential criminal conduct by the attorney. These applications are made *ex parte*, without notice to the subject attorney.

14.    Committees sometimes request an order to disclose their investigative file for purposes other than assisting with a parallel criminal investigation, such as assisting an attorney disciplinary authority in another state or federal jurisdiction. These applications are usually made upon notice to the subject attorney who is provided an opportunity to respond to the application.

15.    Though the Second Department rarely receives such requests, applications can be submitted by individuals not connected with an investigation of an attorney admitted in the Second Department, whether ongoing or resolved. These applications may be made upon notice as directed by the Presiding Justice pursuant to Judiciary Law Section 90(10) to both the Committee and the subject attorney. In such cases, the Committee and subject attorney are provided an opportunity to submit a response.

16.    The Second Department did not receive any request(s) from Plaintiffs for disclosure by the Appellate Division of records or proceedings relating to the complaints Plaintiffs submitted to the Committee in 2021, which are described in the Complaint in this lawsuit.

JA855

JA856

17.    In 2023, Andrew Wells, counsel for Plaintiffs, requested records related to the suspension of former prosecutor Glen Kurtzrock. Those records were provided consistent with the Second Department's practices.

DARRELL M. JOSEPH

Dated:    September 26, 2023
         Brooklyn, New York

5

# EXHIBIT A

Case 1:21-cv-09128-VM-VF     Document 194-1     Filed 10/06/23     Page 2 of 3



| General Information | Rules of Practice | E-Filing | Ancillary Programs | Calendars | Decisions |

About the Court

UCS Website

## How to Review or Obtain copies of Papers filed with the Court

With some exceptions embodied in statute, rule or court order, all papers filed with the Court are available for public inspection.

Public documents which have been electronically filed under the Court's rules and directives are available for viewing on the New York State Courts Electronic Filing (NYSCEF) system. Those public documents which have not been e-filed through NYSCEF may be made available for public inspection at our Clerk's Office. Given that many documents filed with the Court are not physically located in the courthouse at all times, if you wish to view a public document at the courthouse please contact the Clerk's Office, via e-mail at AD2-ClerksOffice@nycourts.gov. Your e-mail should include the name and Appellate Division Docket Number of the matter that is the subject of your inquiry, as well as identify the specific documents you wish to view. You will be advised, by return e-mail, when the documents are available for inspection.

If you wish to obtain copies of documents which have been filed with, and relate to a matter currently pending before, the Court, you may visit the Clerk's Office (after having notified us and been advised that the papers will be available for your review as indicated above) and make copies at the public machine located there, for the fee indicated on the machine.

If you are not able to visit the Clerk's Office for copies, or if you wish to obtain copies of documents which have been filed with, and relate to a matter which is no longer pending before, this Court, please submit your request to AD2-ClerksOffice@nycourts.gov. Your e-mail should include the name and Appellate Division Docket Number of the matter that is the subject of your inquiry, as well as identify the specific documents you would like copied. You will receive a return e-mail in which you will be advised of the copying fee for the document(s) requested (see, 22 NYCRR 670.17[a][1]) and that copies will be made upon receipt of payment of the fee. The fee may be paid

2DDEPT000293

**JA858**

Appellate Division - Second Judicial Department          https://www.nycourts.gov/courts/ad2/How_to_Review_or_Obtain_copi...

Case 1:21-cv-09128-VM-VF     Document 194-1     Filed 10/06/23     Page 3 of 3

in cash or by check or money order made out to "Clerk of the Court."

Following the above instructions will help to make your interactions with the Court efficient and fruitful.

**General Information**

Accessiblity

Attorney Matters

Contact Us

Directions

pAv R

poru s f  Practice Ai( s

9 o/_ a Case is Deci( e(

P1blic 7 otices

8 elate( ) inLs

h ral ArT1u ent m d atcJ ) ike

h ral ArT1u ent ArcJ ikes

**Rules of Practice**

AHFellate Dikision 8 1les oNPractice YNNectike OS OS Vg

) ocal 8 1les oN Practice oNtJ e Fecon( DeHartu ent YNNectike OS OS Vg

**Ayfiling**

Qlectronic pilinT

Qlectronic pilinT 8 1les

**Cncillard Programs**

AHFellate ' eru

Attorney Nor tJ e CJ il(

Cikil AHHeals ManaTeu ent ProTrau _YCAMPg

&riekance Cou u ittees

Mental 9 ealtJ ProNssionals

Mental 9 yTiene ) eTal Ferkice

AssiTne( Co1nsel Planw n( w . tJ an( . WJ El( icial Districts

Co1rt Q, au iner

Mental 9 yTiene ) a/_ Article . 2

**b alenhars**

📅 Co1rt Calen( ars

**b ourt Necisions**

⚖ Motions an( Decisions

**CYout tSe b ourt**

El stices oNtJ e Co1rt

ClerL oNtJ e Co1rt

9 istory oNtJ e Co1rt

' J e Co1rtJo1se

**UE- Dnifieh b ourt - dstem**

7 3 Ch U8' Fx&h 0 Jou eHaTe

Co1rts

Co1rt9 elH

Attorneys

El ror

El( Tes

Careers in tJ e Co1rts

FearcJ

2DDEPT000294

**JA859**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIVIL RIGHTS CORPS, et al.,<br><br>             Plaintiffs,<br><br>– against –<br><br>STEVEN STEIN CUSHMAN, et al.,<br><br>             Defendants. | No. 21-cv-09128 (VM)<br><br>**DECLARATION OF PRESIDING JUSTICE HECTOR D. LASALLE IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE FOURTH CLAIM** |

I, **HECTOR D. LASALLE**, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my recollection:

1.    I am a defendant in this action.

2.    I have served as the Presiding Justice of the Appellate Division, Second Judicial Department ("Second Department") since May 25, 2021. I have served as an associate justice in the Second Department since 2014.

3.    The Second Department standing policy referenced in this litigation appears in the Second Department Grievance Committee Manual and Forms revised in April 2019 under my predecessor, Presiding Justice Alan D. Scheinkman.

4.    As the Presiding Justice, I appoint Committee members and Chief Attorneys for the three Grievance Committees in the Second Department.

5.    As the Presiding Justice, Committee members are recommended to me by my judicial colleagues and local bar associations. I select Committee members for appointment based on their subject matter expertise and reputations for integrity and fairness.

6.      As the Presiding Justice, I do not confer with Chief Attorneys or Committee members on the investigations or dispositions of specific allegations of misconduct unless and until a formal request for an Appellate Division order is made. Committees retain their own records, but within the Second Department generally.

7.      As the Presiding Justice, I am not involved in investigation or disposition of matters before Grievance Committees.

8.      As the Presiding Justice, I only become involved in matters involving discipline of a specific respondent attorney when the Appellate Division is requested to take action with respect to an individual attorney's license.

9.      Good Cause Applications requesting disclosure of records or proceedings related to attorney licensing or discipline submitted by law enforcement and disciplinary authorities are typically submitted without notice to the subject attorney.

10.     Good Cause Applications requesting disclosure of records or proceedings related to attorney licensing or discipline submitted by members of the public are typically submitted to the Court upon notice to a Committee and subject attorney, as I may direct pursuant to Section 90(10) of the Judiciary Law. In adjudicating these Good Cause Applications, the Second Department considers both the application and any papers submitted by the Committee or subject attorney.

11.     Plaintiffs Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Justin Murray, Abbe Smith, and Steven Zeidman never applied to me as the Presiding Justice for an order disclosing records or proceedings related to the Prosecutor Complaints.

Dated:    September **28**, 2023
          Brooklyn, New York

HECTOR D. LASALLE

2

**JA861**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.,

                            Plaintiffs,

    – against –

STEVEN STEIN CUSHMAN, et al.,

                            Defendants.

No. 21-cv-09128 (VM)

**DECLARATION OF CATHERINE A. SHERIDAN IN SUPPORT OF JUSTICE LASALLE'S CROSS-MOTION FOR SUMMARY JUDGMENT ON THE FOURTH CLAIM AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE FOURTH CLAIM**

I, **CATHERINE A. SHERIDAN**, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.      I submit this declaration in support of Defendant Justice Hector D. LaSalle's cross-motion for summary judgment and in opposition to Plaintiffs' motion for summary judgment.[1]

2.      I have been employed by the Unified Court System within the Grievance Committee for the Tenth Judicial District (the "Committee"), one of three such committees in the Appellate Division, Second Judicial Department ("Second Department"), for nearly 13 years. After serving in various capacities as a Staff and Deputy Chief Attorney from 1999 to 2005, and following a break in state service from 2008 to 2016, I was appointed Chief Attorney in 2018 and continue to serve in that role today.

3.      From 2005 to 2008, I worked for the Second Department as one of two Co-Deputy Counsel in the Office of Special Counsel for Grievance Matters. This office was created by then-presiding justice A. Gail Prudenti. As Co-Deputy I helped to develop the Second Department's

_____

[1]      Plaintiffs are Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Justin Murray, Abbe Smith, and Steven Zeidman.

**JA862**

manual for attorney grievance Committees (the "Manual") and to design and present orientation to the profession programs for applicants seeking admission as an attorney in the Second Department.

I.    Attorney Regulation And The Role Of Committee Staff

4.    As Chief Attorney, my staff attorneys and I investigate allegations of professional misconduct by attorneys, counsel the Committee members, and, when the Committee authorizes a formal proceeding, prosecute charges before the Appellate Division.

5.    My staff and I also submit applications and motions to the Appellate Division, which may result in public discipline in matters where attorneys have been convicted of a felony or serious crime.

6.    My office's work is guided by Judiciary Law Section 90, the Rules for Attorney Disciplinary Matters ("Statewide Rules"), 22 N.Y.C.R.R. part 1240, the Second Department's rules, 22 N.Y.C.R.R. part 691, and the Manual, which contains guidance, templates, and forms.

II.   Types of Attorney Misconduct Allegations Filed With And Resolved By The Committee And Appellate Division

7.    Publicly available materials, including information on the website for the Second Department (https://www.nycourts.gov/courts/ad2/) emphasize that the Committee is tasked with enforcing the provisions of the Rules of Professional Conduct.

8.    Any individual—including those without personal knowledge of or a personal connection to the misconduct alleged—can submit written complaints of misconduct to the Committee.

9.    The Committee is also empowered to authorize "*sua sponte*" investigations where it becomes aware of potential misconduct.

2

**JA863**

10.    The majority of the complaints the Committee receives are from clients of a respondent attorney or firm. These complainants often share privileged information regarding, among other things, the respondent attorney's representation of a current or former client.

11.    Submitting an attorney grievance complaint does not bar an individual from taking legal action to protect their rights. The Second Department's website and communications from the Committee to individuals alleging that they have been injured by attorney misconduct state that the Committee cannot take action on behalf of an aggrieved client or provide legal counsel to them and encourage these individuals to consult with an attorney of their choosing regarding what legal remedies, if any, may be available.

12.    A sizeable portion of the remaining complaints involve notices received from the Lawyers' Fund for Client Protection of the State of New York, informing the Committee of irregularities in special accounts that are maintained by attorneys for the deposit of fiduciary funds entrusted to them incident to the practice of law. Typically, these notices are based upon special account checks that have been returned for insufficient funds.

13.    Complaints submitted by judges and opposing counsel are in the minority among grievance complaints.

14.    My office receives relatively few complaints from members of the public alleging misconduct by attorneys with whom they have no personal connection and involving factual allegations of which they have no personal knowledge. Pursuant to Second Department policy, such individuals lack standing and are not considered complainants. When the Committee receives such allegations, it informs the individual who submitted the complaint that because they do not have personal knowledge of the underlying facts and circumstances, any investigation would be initiated by the Committee, *sua sponte* (meaning of its own accord) and remain confidential. Such

**JA864**

individuals are not considered complainants, nor will they receive any further information regarding any potential investigation.

15.    Regardless of whether the submitter is considered a "complainant," my staff and I screen each complaint and make an individual determination about whether an investigation is warranted. If the Committee determines that allegations submitted by someone without personal knowledge or connection warrant investigation, such matters are opened *sua sponte*.

III.    Committee Staff Intake And Screening

16.    When we receive a complaint, administrative staff assigns a file number, looks up the respondent attorney's registration information, and checks whether the respondent attorney has any disciplinary history with our Committee. This information is used to determine whether venue and jurisdiction are proper.

17.    If the threshold conditions of venue and jurisdiction are met, I, or my Deputy Chief Attorney, assign the matter to a Staff Attorney to review the substance of the complaint and to make a recommendation as to whether an investigation is warranted.

IV.    Determinations By The Chief Attorney

18.    Either I, as the Chief Attorney, or my Deputy Chief Attorney, review Staff Attorney recommendations as to whether, based on initial screening, an investigation should be opened.

19.    Allegations of "minor" misconduct and "civility" complaints are often referred to a bar association grievance committee. We typically refer out matters involving fee disputes and those appropriate for mediation. If we determine that referral to an alternative forum is appropriate, my staff sends notice of referral to both the complainant and respondent.

20.    Pursuant to Second Department policy, when initial screening suggests attorney misconduct but related legal proceedings are ongoing, the Committee may advise a complainant to renew the complaint at the conclusion of the related legal proceedings.

21. If we determine that an investigation is not warranted, my staff sends the complainant a letter informing them of the determination. Respondent attorneys are not notified.

## V. Staff Investigations Of Attorney Misconduct

22. If we determine that an investigation is warranted, my staff sends the complainant an acknowledgement.

23. At that time, we also send the respondent a copy of the complaint and request that the respondent provide a written answer and complete a background questionnaire. Respondent answers often contain privileged or sensitive information about their representation of a client and medical issues or family matters that may have contributed to the alleged misconduct.

24. If the respondent fails to cooperate with the Committee's investigation, the Committee can apply to the Appellate Division under Section 1240.9 of the Statewide Rules for an order suspending the respondent from the practice of law on an interim basis during the pendency of the investigation.

25. Following review of the written submissions from the complainant and respondent, Staff Attorneys may seek additional information from the respondent, complainant, or other sources or witnesses. Pursuant to Section 1240.7(b) of the Statewide Rules, this investigation may include examinations under oath, a request that the Clerk of the Court issue subpoenas, and use of court analysts or investigators.

## VI. Staff Reports And Recommendations To The Committee

26. When an investigation is complete, Staff Attorneys prepare a confidential memorandum summarizing the allegations, the respondent's answer, any investigation undertaken, the respondent's disciplinary history, the relevant Rules of Professional Conduct, and a recommendation as to how the Committee should vote. These memoranda are provided to

Committee members prior to regularly scheduled meetings and are never shared with the respondent or complainant.

27.    During the Committee meetings, matters are discussed, beginning with a summary by the Staff Attorney of his or her investigation and recommendation.

28.    The Committee Members can ask questions or request further investigation. If further investigation is not required, the Committee will vote on the recommended disposition.

29.    The Second Department has determined that matters involving a respondent's failure to preserve client or third-party funds must be brought to the Court's attention. If the Committee believes that public discipline is not warranted, the Committee must seek permission from the Court to dispose of the matter without initiating a formal disciplinary proceeding.

VII.    Closing Matters Before The Committee

30.    After the Committee votes to dispose of a matter, my staff and I prepare closing letters. In all disposition letters other than dismissal letters, the letter to the respondent recites the facts that support the Committee's determination and the respondent's right to seek review or reconsideration under the Statewide Rules. These disposition letters may also reference mitigation that the Committee considered, including otherwise privileged information about the respondent's and/or their family's physical or mental health conditions.

31.    The letter to the complainant describes in general terms the disposition that the Committee reached. It advises the complainant that the Committee's conclusion of the matter does not prevent the complainant from pursuing any legal remedy that may be available.

VIII.    Cases Before The Appellate Division

32.    If the Grievance Committee authorizes the filing of formal charges with the Appellate Division, a Staff Attorney will draft a verified petition with charges that is served on the

respondent and filed with the Appellate Division pursuant to Section 1240.8 of the Statewide Rules.

33.     I review the petitions drafted by my office and they are submitted under my name. The Chair of the Grievance Committee then reviews the petition and signs the verification.

34.     If the Appellate Division sustains the charges, a public order will be issued imposing discipline unless the Court determines that a non-public Committee-level disposition is warranted.

35.     In addition to filing formal disciplinary proceedings under Section 1240.8 of the Statewide Rules, the Committee can move the Appellate Division for: an interim suspension order under Section 1240.9, an order striking the attorney's name from the role of attorneys or suspending the attorney pending further proceedings where the attorney was found guilty of a felony or serious crime pursuant to Section 1240.12 of the Statewide Rules, or suspension due to attorney incapacity pursuant to Section 1240.14 of the Statewide Rules. The Committee also notifies the Appellate Division when it learns that an attorney has been disciplined by a foreign jurisdiction pursuant to Section 1240.13 of the Statewide Rules, and has an opportunity to respond to motions for reinstatement by disbarred or suspended attorneys under Section 1240.16 of the Statewide Rules and applications filed by members of the public for access to disciplinary investigations and records pursuant to Section 1240.18(d) of the Statewide Rules.

IX.     Confidentiality

36.     Pursuant to Judiciary Law Section 90(10) and Section 1240.18 of the Statewide Rules, Committee members, staff, and court personnel are required to keep confidential all records related to disciplinary investigations and proceedings. This means that my office can only release information about disciplinary matters if explicitly authorized to do so by Section 90, the Statewide Rules, or an order from the Appellate Division.

**JA868**

37.    These confidentiality rules do not reference complainants, respondent attorneys, or witnesses. Neither the rules nor the Court's policy prohibit complainants from contacting respondent attorneys, or from publishing or discussing information they provide to or receive from the Committee.

38.    My office routinely applies to the Appellate Division under Section 1240.18(d) for permission to release records to law enforcement agencies.

39.    In my five years as Chief Counsel, I have also been notified of and afforded an opportunity to respond to applications made by members of the public pursuant to Section 1240.18(d) for good cause disclosure of disciplinary records.

40.    To the extent that Judiciary Law Section 90(10) provides that certain disciplinary records become public when the Appellate Division sustains charges or imposes public discipline against an attorney, the Clerk's Office, not the Committee, maintains the pleadings and related records filed with and orders issued by the Appellate Division.

CATHERINE A. SHERIDAN

Dated:    September 27, 2023
         New York, New York

8

**JA869**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIVIL RIGHTS CORPS, et al., <br><br> Plaintiffs, <br><br> – against – <br><br> STEVEN STEIN CUSHMAN, et al., <br><br> Defendants. | No. 21-cv-09128 (VM) <br><br> **DECLARATION OF JOYA C. SONNENFELDT IN SUPPORT OF JUSTICE LASALLE'S CROSS-MOTION AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON FOURTH CLAIM** |

I, JOYA C. SONNENFELDT, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my recollection:

1.    I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, counsel to Defendant Hector J. LaSalle, Presiding Justice of the Appellate Division, Second Department, in this action.

2.    I make this declaration in support of Justice LaSalle's cross-motion for summary judgment and in opposition to Plaintiffs'[1] motion for summary judgment on the Fourth Claim of the Complaint (ECF No. 59), dated November 4, 2021.

3.    In 1894 the New York Legislature created the Appellate Divisions of the New York State Courts. New York State Const. art. VI § 1.

4.    Attached hereto as **Exhibit A** is a true and correct copy of Sections 56, 57 and 68 of chapter 946 of the Regular Session of the 118th New York Legislature from 1895, delegating to the Appellate Divisions exclusive control over the admission and discipline of attorneys.

---

[1]    Plaintiffs are Civil Rights Corps, Cynthia Godsoe, Nicole Smith Futrell, Justin Murray, Abbe Smith, and Steven Zeidman.

**JA870**

5.      Attached hereto as **Exhibit B** is a true and correct copy of Section 68 of the Code of Civil Procedure of the State of New York, as Enacted in 1876, and Amended in 1877, 1878, and 1879 (2).

6.      Attached hereto as **Exhibit C** is a true and correct copy of an excerpt from the Bill Jacket from 1945, Chapter 649, amending the Judiciary Law as described in Exhibit D, *infra*.

7.      Attached hereto as **Exhibit D** is a true and correct copy of an excerpt from the Tenth Annual Report of the Judicial Council of the State of New York (1944), pp. 38-39, 190-92.

8.      Attached hereto as **Exhibit E** are true and correct copies of excerpts of "Orientation to the Profession" program materials for the Appellate Division, Second Judicial Department, dated February 16, 2017, with bates stamps 2DDEPT000250, 2DDEPT000256-65, 2DDEPT000269-82, 2DDEPT285-90. *See also* Declaration of Andrew H. Wells, Jr. ("Wells Decl."), Exhibit 15 (ECF No. 176-15).

9.      Attached hereto as **Exhibit F** is a true and correct copy of excerpts from NYS Commission on Statewide Attorney Discipline, Final Report to Chief Judge Jonathan Lippman, the Court of Appeals, and the Administrative Board of the Courts (September 24, 2015), with bates stamps 2DDEPT000153, 2DDEPT000164-65, 2DDEPT000168-73, and 2DDEPT000209-10.

10.     Attached hereto as **Exhibit G** is a true and correct copy of a December 29, 2015 press release issued by the New York State Unified Court System announcing the Appellate Divisions' adoption of the Statewide Rules for Attorney Discipline, which I downloaded from the Court's    website    at    https://ww2.nycourts.gov/sites/default/files/document/files/2018-06/PR15_23.pdf.

11.     Attached hereto as **Exhibit H** is a true and correct copy of an excerpt of Volume 1 of the Second Department's Grievance Committee Manual and Forms, revised as of April 2019,

with bates stamps 2DDEPT000001, 2DDEPT000004, 2DDEPT000016-17, and 2DDEPT000082.

12.    Attached hereto as **Exhibit I** is a true and correct copy of Chapter 675 of the Laws of New York, pages 1456-57, adopting the Confidentiality Policy currently codified at Judiciary Law Section 90(10).

13.    Attached hereto as **Exhibit J** is a true and correct copy of excerpts of the transcript of the deposition of Diana Kearse, Chief Counsel of the State of New York Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, taken June 8, 2023. *See also* Wells Decl., Exhibit 8 (ECF No. 176-8).

14.    Attached hereto as **Exhibit K** is a true and correct copy of a document entitled How "To File A Complaint" which I downloaded from the First Departments webpage at https://www.nycourts.gov/courts/ad1/committees&programs/ddc/How%20to%20File%20a%20Complaint%2007.30.2020.pdf, bates stamps 2DDEPT000295-303.

15.    Attached hereto as **Exhibit L** is a true and correct copy of a webpage entitled "Attorney Matters: How to Make a Complaint About a Lawyer," which I downloaded from the Second            Department's            webpage            at https://www.nycourts.gov/courts/ad2/attorneymatters_complaintaboutalawyer.shtml, with bates stamps 2DDEPT000304-09.

16.    Attached hereto as **Exhibit M** is a true and correct copy of a document entitled "Instructions For Filing A Complaint For Professional Misconduct Against An Attorney," which I    downloaded    from    the    Third    Department's    webpage    at https://www.nycourts.gov/ad3/agc/Forms/Instructions%20for%20Filing%20Complaint%20-%20Electronically.pdf, with bates stamps 2DDEPT000310-11.

17.     Attached hereto as **Exhibit N** is a true and correct copy of a document entitled "How Complaints Against Attorneys Are Processed," which I downloaded from the Fourth Department's webpage at https://www.nycourts.gov/courts/ad4/AG/AG-brochure.pdf, with bates stamps 2DDEPT000312-13.

18.     Attached hereto as **Exhibit O** is a true and correct copy of chapter 295 section 476 of the 1921 Laws of New York from the 144th Legislature, Regular Session, pages 1017-18, authorizing the presiding justice of the Appellate Division to appoint a district attorney or an attorney designated by a bar association to prosecute disciplinary proceedings in the Appellate Division.

19.     In compliance with the Court's Individual Rule II.E.2, I have reviewed the complete true and correct copies of the documents excerpted hereto as Exhibits C, E, F, H, I, and J and will maintain a true and complete copy of these document until a final court disposition of this action.

_Joya C. Sonnenfeldt_
JOYA C. SONNENFELDT

Dated:    October 4 , 2023
          New York, New York

4

**JA873**

Case 1:21-cv-09128-VM-VF    Document 197-1    Filed 10/06/23    Page 1 of 4

# EXHIBIT A

JA874

CHAP. 946.]    ONE HUNDRED AND EIGHTEENTH SESSION.    **799**

resident or taxpayer of a town, village, city or county interested therein.

§ 56. Examination and admission of attorneys.—A citizen of the State, of full age, applying to be admitted to practice as an attorney or counselor in the courts of records of the State, must be examined and licensed to practice as herein prescribed. A State board of law examiners is hereby created, to consist of three members of the bar, of at least ten years' standing, who shall be appointed, from time to time, by the court of appeals, and shall hold office, as a member of such board, for a term of three years, except under the first appointment, which shall be for terms of one, two and three years, respectively, until the appointment of his successor. Such court shall prescribe rules providing for a uniform system of examination which shall govern such board of law examiners in the performance of its duties and shall fix the compensation of its members. There shall be examinations of all persons applying for admission to practice as attorneys and counselors-at-law at least twice in each year in each judicial department, and at such other times and places as the court of appeals may direct. Every person applying for such examination shall pay such fee, not to exceed fifteen dollars, as may be fixed by the court of appeals as necessary to cover the cost of such examination. On payment of one examination fee the applicant shall be entitled to the privilege of not exceeding three examinations. Such board shall certify to the appellate division of the supreme court, of the department in which each candidate has resided for the past six months every person who shall pass the examination, provided such person shall have in other respects complied with the rules regulating admission to practice as attorneys and counselors, which fact shall be determined by said board before examination. Upon such certificate, if the appellate division of the supreme court shall find such person is of good moral character, it shall enter an order licensing and admitting him to practice as an attorney and counselor in all courts of the State. Race or sex shall constitute no cause for refusing any person examination or admission to practice. Any fraudulent act or representation by an applicant in connection with his application or admission shall be sufficient cause for the revocation of his license by the appellate division of the

**JA875**

800                    LAWS OF NEW YORK.                [Vol. I.

supreme court granting the same. Such board shall render, during the month of January, an annual account of all their receipts and disbursements, to the court of appeals. The court of appeals may make such provisions as it shall deem proper for admission of persons who have been admitted to practice in other states or countries.

§ 57. Rules, how changed.—The rules established by the court of appeals, touching the admission of attorneys and counselors to practice in the courts of record of the State, shall not be changed or amended, except by a majority of the judges of that court. A copy of each amendment to such rules must, within five days after it is adopted, be filed in the office of the secretary of state; who must transmit a printed copy thereof to the clerk of each county, and to the presiding justice of the appellate division of the supreme court, in each judicial department, and also cause the same to be published in the next ensuing volume of the session laws.

§ 59. Attorney's oath of office, and certificate of admission.— Each person, admitted as prescribed in the last three sections, must, upon his admission, take the constitutional oath of office in open court, and subscribe the same in a roll or book, to be kept in the office of the clerk of the appellate division of the supreme court for that purpose. The clerk, upon the payment of the fees allowed by law, must deliver to the person admitted, a certificate under his hand and official seal, stating that such person has been so admitted, and that he has taken and subscribed the constitutional oath of office, as prescribed in this section.

§ 67. Suspension from practice.—An attorney and counselor, who is guilty of any deceit, malpractice, crime or misdemeanor, or who is guilty of any fraud or deceit in proceedings by which he was admitted to practice as an attorney and counselor of the courts of record of this State, may be suspended from practice, or removed from office, by the appellate division of the supreme court. Any person being an attorney and counselor-at-law, who shall be convicted of a felony, shall, upon such conviction, cease to be an attorney and counselor-at-law, or to be competent to practice law as such. Whenever any attorney and counselor-at-law shall be convicted of a felony there may be presented to the appellate division of the

CHAP. 916.] ONE HUNDRED AND EIGHTEENTH SESSION.    801

supreme court a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted, shall, by order of the court, be stricken from the roll of attorneys. Upon a reversal of such conviction, or pardon by the president of the United States or governor of this State, the appellate division shall have power to vacate or modify such order or debarment.

§ 68. Must be on notice.— Before an attorney or counselor is suspended or removed, as prescribed in the last section, a copy of the charges against him must be delivered to him, and he must be allowed an opportunity of being heard in his defense. The presiding justice of the appellate division making the order of reference in such charges may make an order directing the expenses of such proceedings to be paid out of any moneys applicable thereto.

§ 89. Clerks of appellate division and special deputy clerks.— The justices of the appellate division in each department shall, from time to time, appoint and shall have the power to remove a clerk, who shall keep his office at a place to be designated by the said justices. Each county clerk may, subject to the approval of the justices of the supreme court residing within the judicial district of the appointee, from time to time, by an instrument in writing, filed in his office, appoint, and at pleasure remove, one or more special deputy clerks to attend upon any or all of the terms or sittings of the courts of which he is clerk. Each person so appointed must, before he enters upon the duties of his office, subscribe and file in the clerk's office, the constitutional oath of office; and he possesses the same power and authority as the clerk at any sitting or term of the court which he attends, with respect to the business transacted thereat. The provisions of this section shall not apply to the first judicial department.

§ 91. Criers for courts of record.—The county judge of each county except Kings and Erie, from time to time, may appoint and at pleasure remove, a crier for the courts of record held in his county, who is entitled to a compensation fixed and to be paid as prescribed by law. The justices of the supreme court residing in the eight judicial district, together with the county judge of Erie county, or a majority of them, shall appoint, and may at pleasure remove one or more

101

JA877

Case 1:21-cv-09128-VM-VF    Document 197-2    Filed 10/06/23    Page 1 of 2

# EXHIBIT B

JA878

§§ 67–72.                ATTORNEYS AND COUNSELLORS.              [CHAP. 1.

TITLE 2.
Removal
or sus-
pension
for mal-
practice,
etc.

**§ 67.** An attorney or counsellor, who is guilty of any deceit, malpractice, crime or misdemeanor, may be suspended from practice, or removed from office, by the supreme court, at a general term thereof.

[1 R. S., 109, Part 1, ch. 5, tit. 4, first clause of § 24 (1 R. S., 5th ed., 400 ; 1 Edm., 99); amended by confining the power of removal to the supreme court, and by the addition of the word, "crime".]

Must be
on notice.

**§ 68.** Before an attorney or counsellor is suspended or removed, as prescribed in the last section, a copy of the charges against him must be delivered to him, and he must be allowed an opportunity of being heard in his defence.

[Id., last clause of the same section.] .

Removal
or suspen-
sion, how
to operate.

**§ 69.** The suspension or removal of an attorney or counsellor, by the supreme court, operates as a suspension or removal in every court of the State.

[Id., first clause of § 25.]

Punish-
ment for
deceit,
etc.

**§ 70.** An attorney or counsellor, who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or a party, forfeits, to the party injured by his deceit or collusion, treble damages. He is also guilty of a misdemeanor.

[2 R. S., 287, Part 3, ch. 3, tit. 2, § 68 (3 R. S., 5th ed., 477; 2 Edm., 298). As to the meaning of the word, "deceit", as used in this section, see *Looff* v. *Lawton* , 14 Hun, 588.]

Id. ; for
wilful de-
lay of
action.

**§ 71.** An attorney or counsellor, who wilfully delays his client's cause, with a view to his own gain, or wilfully receives money, or an allowance for or on account of money, which he has not laid out or become answerable for, forfeits to the party injured, treble damages.

[Id., § 69.]

Attorney
not to
lend his
name.

**§ 72.** If an attorney knowingly permits a person not being his general law partner, or a clerk in his office, to sue out a mandate, or to prosecute or defend an action in his name, he, and the person who so uses his name, each forfeits to the party, against whom the mandate has been sued out, or the action prosecuted or defended, the sum of fifty dollars, to be recovered in an action.

[Id., § 70, amended by substituting "mandate", for "process".]

28

Case 1:21-cv-09128-VM-VF    Document 197-3    Filed 10/06/23    Page 1 of 6

# EXHIBIT C

JA880

Year **1945**

Chapter **649**

*Part I*

# The New York State Library
## Legislative Reference Section
### Albany, N. Y.

---

## Bill Jacket Collection

**MICROFILMED**

DATE *1-8-59*

NO. OF PRINTED BILLS.......... 2

NO. OF EXPOSURES
EXCLUSIVE OF BILLS... *18*

Digitized by the New York State Library from the Library's collections.

**JA881**

# State of New York

## In Senate

------------------------------------------------1945

*Ordered, That the Clerk deliver the bill entitled:*

G. O. 387          Nos. 1187, 728          Int. 1114

## AN ACT

To amend the judiciary law generally

*to the Assembly and request its concurrence in the same.*

By order

William S. King,

Clerk.

Form No. 59
1-3-45

1

Digitized by the New York State Library from the Library's collections.



IN ASSEMBLY

................................ 1945

Passed without amendments
By order of Assem..

*Ansley B. Borkowski*

CLERK

2

Digitized by the New York State Library from the Library's collections.

**JA883**

The Association of the Bar of the City of New York
Committee on State Legislation

No.

S., Pr. 1187, Int. 1114—Mr. WILLIAMSON.

"An Act to amend the Judiciary Law generally."

This is an omnibus bill recommended by the Judicial Council which would make extensive corrections and revisions of the Judiciary Law. The bill would affect all of the Articles of the Judiciary Law; except Article 14 relating to law reporting, Article 16-18B relating to jurors and Article 19 relating to contempts.

A similar bill was passed by the Legislature of 1944 (S., Pr. 1983, Int. 38) but was vetoed by the Governor, because, according to his memorandum, he wished to avoid possible conflict with intervening amendments to the Judiciary Law enacted during the thirty day period following the close of the 1944 session.

The Eleventh Annual Report of the Judicial Council, p. 48, states that the bill is again offered this year in accordance with the recommendations of the Judicial Council in its Tenth Annual Report, pp. 173 to 237, with appropriate safeguards to protect the validity of intervening amendments.

We approved last year's bill (No. 176, 1944). As we pointed out in last year's report, every amendment made by the bill is corrective in nature. The bill follows out the study of the Judicial Council and collects matters germane to each other in the same Article, eliminates

469

3

Digitized by the New York State Library from the Library's collections.

**JA884**

The Association of the Bar of the City of New York
Committee on State Legislation

errors and inconsistencies, and obsolete and unnecessary matter now in the Judiciary Law, and harmonizes the Judiciary Law with the Judiciary Article of the Constitution and with amendments to other consolidated laws.

There is only one important change of substance in the proposed bill. This change is the proposed enactment of a new Section 23 in Article 2 of the Judiciary Law. The new section would impose an age limit of seventy years on the terms of all judges in the State, except Justices of the Peace or Police Justices. The new section would specifically exempt from its application any judge or justice elected prior to the effective date of the bill.

As we pointed out in last year's report, it would be impractical for this Committee to make a detailed analysis of all the minor corrective changes which would be made by the proposed bill. The bill consists of 100 pages and the distribution table showing amendments, corrections and renumbering of sections consists of 3 pages of fine type.

As we stated in last year's report, there has been no general revision of the Judiciary Law since its enactment in 1909.

We believe that the corrective general revision of the Judiciary Law which follows the exhaustive study of the problem made by the Judicial Council is necessary and helpful. The bill would take effect immediately.

**The bill is approved.**

470

4

Digitized by the New York State Library from the Library's collections.

**JA885**

# EXHIBIT D

STATE OF NEW YORK

# TENTH ANNUAL REPORT

OF

# THE JUDICIAL COUNCIL

OF

# THE STATE OF NEW YORK

IRVING LEHMAN, Chairman
JAMES P. HILL, Vice-Chairman

| | |
|---|---|
| HERMAN S. BACHRACH | HENRY GODDARD LEACH |
| WILLIAM T. BYRNE | WALTER J. MAHONEY |
| FREDERICK P. CLOSE | FRANCIS MARTIN |
| FREDERICK E. CRANE | CRANDALL MELVIN |
| HARLEY N. CROSBY | HARRY D. NIMS |
| BENJAMIN F. FEINBERG | ELMER F. QUINN |
| BERNARD E. FINUCANE | HARRY A. REOUX . |
| IRA H. HOLLEY | CHARLES B. SEARS |
| EDWARD LAZANSKY | HARRY D. SUITOR |

LEONARD S. SAXE
Executive Secretary



ALBANY
WILLIAMS PRESS, INC.
1944

L312977

LLMC DIGITAL

of the two legislative sessions required in order to submit it to the people (see below). A proposal for the removal and retirement of judges of higher courts was introduced in the Legislature as a separate measure (1943, Senate Int. 362, Print. No. 378), as was the proposal to permit the Legislature to provide that, under certain conditions, a vacancy in the Supreme Court bench need not be filled (1943, Senate Int. 1581, Print No. 1837).

## Amending Age Limitation and Compensation Provisions for Certain Statutory Judges

A concurrent resolution, adapted from the Council's recommended revised Judiciary Article, passed the Legislature in 1942. This concurrent resolution (Assem. Int. 1314, Print No. 2654), would amend section 19 of Article VI of the Constitution.

This amendment would assure statutory judges, except justices of the peace of towns and police justices of villages, of the same judicial independence now granted to judges of constitutional courts and would prevent the diminution of their compensation during their terms of office. The amendment would also provide that with the exception of incumbents and justices of the peace and police justices, every judge or justice of the statutory courts of the state must retire at the end of the year in which he reaches the age of seventy.

The Judicial Council, in its Ninth Annual Report, recommended that this resolution be passed for the second time in order that it might be submitted to the people of the state. Although the resolution failed to receive approval at the 1943 legislative session, the Judicial Council renews the recommendation.

## Corrective Revision of the Judiciary Law

The Judicial Council renews its recommendation for a corrective revision of the Judiciary Law, recommended for the first time last year.

The Judiciary Law was enacted as Chapter 30 of the Consolidated Laws in 1909 upon recommendation of the Board of Statutory Consolidation. It was an attempt to organize and place in one group the scattered statutes, not deemed purely procedural, dealing with the organization of the courts and the powers and duties of the members and officers thereof. However, except for integration, no attempt appears to have been made by the Board to make any changes in the statutes so consolidated.

Since 1909 many new or amendatory laws have been enacted relating to the judiciary and the judicial system and many of the original sections of the Judiciary Law have been repealed. The articles dealing with the state reporter system and with the jury system within the city of New York (Articles 14 and 17) have been comprehensively revised upon recommendation of the Judicial Council, but there has been no over-all revision, either to bring up to

LLMC DIGITAL

date the old unamended sections, some of which stem directly and without change from the Revised Statutes by way of the Code of Civil Procedure, or to integrate into the general scheme amended or new sections which often seem to have been thrown in haphazardly from time to time.

Accordingly, the Judicial Council has made a thorough study of each section as an entity as well as in relation to the whole Judiciary Law and as a result of its study recommends a corrective revision of the Judiciary Law. See Supporting Study (B), infra pages 173 to 237. In addition to correcting the errors, inconsistencies, archaisms, anachronisms, obsolete and unnecessary matter, an attempt has been made to co-ordinate the Judiciary Law by consolidating sections and by transposing and renumbering sections for a more logical arrangement and greater regularity in numbering.

Although a great many corrective changes are thus recommended, the Council recognizes that much more remains to be done, since generally only changes believed to be clearly corrective and non-controversial have been suggested. No change has been recommended in the salaries received by court employees. All changes in that respect (except section 340, which is proposed to be repealed as unnecessarily detailed) have been made to conform amounts of salaries to those provided in the state budget.

Two changes in substance—as distinguished from matters purely corrective—have been included in the recommended changes. They are noted in the comments to the sections concerned, namely, section 18, renumbered 17, and proposed new section 23.

Many matters of substance in the Judiciary Law call for study and these will hereafter have the attention of the Council.

In recommending the revision of the Judiciary Law to the Legislature, the Judicial Council wishes it to be clearly understood that the fact that certain portions of the law are proposed to be retained without change or with amendment does not necessarily reflect the Council's approval of their substance. As already stated, the Judiciary Law is continuing to receive the study of the Council.

### Proposal Under Consideration to Make Service of Summons Upon Secretary of State Binding Upon Representative of Deceased Nonresident Motorist

The Judicial Council has under consideration a unique proposal to amend section 52 of the Vehicle and Traffic Law. The proposed amendments would permit a person injured by a nonresident motorist, who has died since causing the injury, to bring an action or continue one already commenced, against the nonresident executor or administrator by substituted service upon the Secretary of State of New York in the same manner as if the motorist were still alive. Pursuant to present section 52, a person injured in this state must go into the state in which the deceased motorist resided in order to bring an action against his executor or administrator.

LLMC DIGITAL

# RECOMMENDED CORRECTIVE REVISION
# OF THE JUDICIARY LAW

[173]

LLMC DIGITAL

**[§ 88.]** § **90.** Admission to and removal from practice by appellate division.

Subdivision 1 unchanged.

2. The supreme court shall have power and control over attorneys and counsellors-at-law and all persons practicing or assuming to practice law, and the appellate division of the supreme court in each department is authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice **[as such]** who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice; and the appellate division of the supreme court is hereby authorized to revoke such admission for any misrepresentation or suppression of any information in connection with the application for admission to practice.

It shall be the duty of the appellate division to insert in each **[judgment, decree or final]** order of suspension or removal hereafter rendered a provision which shall command the attorney and counsellor-at-law thereafter to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another. In addition it shall forbid the performance of any of the following acts **[for compensation or reward]**, to wit:

a. The appearance as an attorney or counsellor-at-law before any court, judge, justice, board, commission or other public authority.

b. The giving to another of an opinion as to the law or its application, or of any advice in relation thereto.

In case of suspension only, the **[judgment, decree or]** order may limit the command to the period of time within which such suspension shall continue, and if justice so requires may further limit the scope thereof.

If an attorney and counsellor-at-law has been heretofore removed from office, the appellate division shall upon application of any attorney and counsellor-at-law, or of any incorporated bar association, and upon such notice to the respondent as may be required, amend the **[judgment, decree or]** order of removal by adding thereto as a part thereof, provisions similar to those required to be inserted in **[judgments, decrees or]** orders hereafter made.

If a certified copy of such **[judgment, decree or]** order or of such amended **[judgment, decree or]** order, be served upon the attorney and counsellor-at-law suspended or removed from office, a violation thereof may be punished as a contempt of court.

*3. The suspension or removal of an attorney or counsellor-at law, by the appellate division of the supreme court, operates as a suspension or removal in every court of the state.*

**[3.]** *4. Any person being an attorney and counsellor-at-law, who shall be convicted of a felony, shall, upon such conviction,*

LLMC DIGITAL

cease to be an attorney and counsellor-at-law, or to be competent to practice law as such.

Whenever any attorney and counsellor-at-law shall be convicted of a felony, there may be presented to the appellate division of the supreme court, a certified or exemplified copy of the judgment of such conviction, and thereupon the name of the person so convicted shall, by order of the court, be [stricken] *struck* from the roll of attorneys.

[4.] 5. Upon a reversal of the conviction for felony of an attorney and counsellor-at-law, or pardon by the president of the United States or governor of this state, the appellate division shall have power to vacate or modify such order or debarment.

[5.] 6. *Before an attorney or counsellor-at-law is suspended or removed as prescribed in this section, a copy of the charges against him must be delivered to him personally within or without the state or, in case it is established to the satisfaction of the presiding justice of the appellate division of the supreme court to which the charges have been presented, that he cannot with due diligence be served personally, the same may be served upon him by mail, publication or otherwise as the said presiding justice may direct, and he must be allowed an opportunity of being heard in his defense. In all cases where the charges are served in any manner other than personally, and the attorney and counsellor-at-law so served does not appear, an application may be made by such attorney or in his behalf to the presiding justice of the appellate division of the supreme court to whom the charges were presented at any time within one year after the rendition of the judgment, or final order of suspension or removal, and upon good cause shown and upon such terms as may be deemed just by such presiding justice, such attorney and counsellor-at-law must be allowed to defend himself against such charges.*

The presiding justice of the appellate division to which charges of professional misconduct against an attorney and counsellor-at-law have been presented, may make an order directing the expenses of such proceedings, and the necessary costs and disbursements of the petitioner in prosecuting such charges, including also in a county wholly within a city or in a county having a population of over one hundred and sixty thousand inhabitants, the expense of a preliminary investigation in relation to such charges, to be paid by the county treasurer of a county within the judicial department, which expenses shall be a charge upon such county.

7. *It shall be the duty of any district attorney within a department, when so designated by the presiding justice of the appellate division of the supreme court, to prosecute all proceedings for the removal or suspension of attorneys and counsellors-at-law or the said presiding justice may, in a county wholly included within a city or in a county having a population of over three hundred thousand inhabitants, appoint an attorney and counsellor-at-law, designated by a duly incorporated bar association approved by him, to prosecute any such proceedings and, upon the termination*

LLMC DIGITAL

*of the proceedings, may fix the compensation to be paid to such attorney and counsellor-at-law for the services rendered under such designation, which compensation shall be a charge against the county specified in his certificate and shall be paid thereon.*

[6.] 8. Any petitioner or respondent in a disciplinary proceeding against an attorney or counsellor-at-law under this section, including a bar association or any other corporation or association, shall have the right to appeal to the court of appeals from a final order of any appellate division in such proceeding upon questions of law involved therein, subject to the limitations prescribed by article six, section seven, of the constitution of this state.

[7.] 9. No objection shall be taken to the appointment of any member of the bar to act as referee or judge in a disciplinary proceeding under this section on the ground that he is a member of a bar association or other corporation or association which is the petitioner therein.

### *Comment*

All the provisions dealing with the admission and removal of attorneys by the Appellate Division, now scattered throughout the Judiciary Law as they were added haphazardly from time to time, are here recommended to be consolidated.

Since the Appellate Divisions suspend or remove attorneys by order, and not by judgment or decree, the words "judgment, decree or" have been deleted from subdivision two in order to conform the statute to the actual practice. The words "for compensation or reward" have been deleted because their inclusion carries an implication that the acts referred to may be engaged in if there is no compensation or reward. Even if these words are deleted, an attorney would still be permitted to act in person in a suit of his own after being suspended. His rights are the same at any other layman's. (See *Matter of Secured Holdings Corporation*, 88 Misc. 706 (Sup. Ct., N. Y. Co. 1915).

New subdivision 3 is present section 478, which has been transposed to this section, where it logically belongs. Present section 478 has been amended by adding the words "at-law" after the word "counsellor" to conform to the language of the rest of the section and by inserting the words "the appellate division" before the words "the supreme court" since, although the supreme court is given power and control over attorneys and counsellors-at-law, the appellate division of the supreme court has the actual power to suspend or remove attorneys.

Subdivision 3, renumbered 4, has been amended by inserting present section 477 as the first sentence thereof.

It is recommended to amend subdivision 5, renumbered 6, by inserting therein, as the first paragraph, the first sentence and the second paragraph of section 476, as last amended by chapter 290 of the Laws of 1941.

Recommended new subdivision 7 is at present the second sentence of the first paragraph of section 476.

LLMC DIGITAL

# EXHIBIT F

# NYS Commission
## on
# Statewide Attorney Discipline

---

# Enhancing Fairness and Consistency

# Fostering Efficiency and Transparency

---

### Final Report to

## Chief Judge Jonathan Lippman
### the
## Court of Appeals
### and the
## Administrative Board of the Courts

### SEPTEMBER 2015

2DDEPT000153

**JA895**

# EXECUTIVE SUMMARY

In March 2015, Chief Judge Jonathan Lippman created the Commission on Statewide Attorney Discipline to conduct a comprehensive review of New York's attorney disciplinary system to determine what is working well, what can work better and to offer recommendations to enhance the efficiency and effectiveness of New York's attorney discipline process.

Among the issues considered by the Commission were whether New York's current departmental-based system leads to regional disparities in the implementation of discipline; if conversion to a statewide system is desirable; the point at which disciplinary charges or findings should be publicly revealed; and, how to achieve dispositions more quickly to provide much needed closure to both clients and attorneys.

After rigorous deliberation, three public hearings in different regions of the state and input from a myriad of stakeholders—legal consumers, lawyers, bar associations, affinity and specialized bar groups, advocates and others—the Commission recommends, through consensus[3], a series of critical reforms, including but not necessarily restricted to the following:

1.  Approval by the Administrative Board of the Courts, and by each Department of the Appellate Division, of statewide uniform rules and procedures governing the processing of disciplinary matters at both the investigatory and adjudicatory levels, from intake through final disposition, which strike the necessary balance between facilitating prompt resolution of complaints and affording the attorney an opportunity to fairly defend the allegations. These new rules and procedures

---

[3] The Commission's recommendations reflect a clear consensus view. Although the Commission was unanimous in its approval of the majority of proposals, there are members who disagree with certain recommendations or portions thereof.

1

2DDEPT000164

should include uniform discovery rules and information-sharing for attorneys who are the subject of a disciplinary complaint. This recommendation is of the highest priority and a firm deadline for adoption should be established.

2. Adoption of guidelines modeled after the ABA Standards for Imposing Lawyer Sanctions to ensure more consistent, uniform results statewide.

3. Amendment of the current rules of the Appellate Division to expressly authorize each disciplinary committee to seek, either separately or in conjunction with an application for interim suspension and upon notice to the affected attorney, an order unsealing proceedings to permit the publication of charges pursuant to Judiciary Law §90(10), upon a finding by the Court that the attorney's conduct places clients at significant risk or presents an immediate threat to the public interest. The amendment would be approved by the Administrative Board of the Courts and approved by each Department of the Appellate Division.

4. Implementation of a statewide diversion/alternatives to discipline program to address matters involving alcohol, substance abuse and mental illness.

5. Revision of court rules to uniformly allow for "administrative" suspension and reinstatement of attorneys who are delinquent in timely registering or paying registration fees. Such "administrative" suspension should occur automatically after a period of delinquency and following written notice to the attorney. In revising these rules, particular attention should be paid to streamlining the process as well as to enhancing coordination and the exchange of information between each Department of the Appellate Division and the Office of Court Administration (OCA).

2

2DDEPT000165

# Report of the Commission
## on
# Statewide Attorney Discipline

## I. INTRODUCTION

As officers of the court, all attorneys are obligated to maintain the highest ethical standards, consistent with the New York Rules of Professional Conduct (Rules) as adopted by the Appellate Division of State Supreme Court and published as Part 1200 of the Joint Rules of the Appellate Divisions (22 NYCRR Part 1200). The preamble to the Appellate Division-adopted Rules clearly articulates the weighty responsibility attorneys carry by virtue of being granted an exclusive license to practice law:

> A lawyer, as a member of the legal profession, is a representative of clients and an officer of the legal system with special responsibility for the quality of justice. As a representative of clients, a lawyer assumes many roles, including advisor, advocate, negotiator, and evaluator. As an officer of the legal system, each lawyer has a duty to uphold the legal process; to demonstrate respect for the legal system; to seek improvement of the law; and to promote access to the legal system and the administration of justice. In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because, in a constitutional democracy, legal institutions depend on popular participation and support to maintain their authority.[4]

---

[4] See "New York Rules of Professional Conduct," effective as of April 1, 2009, (https://www.nysba.org/WorkArea/DownloadAsset.aspx?id=50671)

2DDEPT000168

Attorneys who violate that trust risk discipline ranging from a private admonishment to a public censure to suspension to disbarment. However, as the Court of Appeals has made plain, the attorney disciplinary process is designed principally as a consumer protection measure.[5] With both the Rules and the Court of Appeals' interpretation of those strictures in mind, the Commission sought to address the broad question of whether New York's system of attorney discipline adequately protects the consuming public and the administration of justice, promotes the integrity and reputation of the bar and the public's confidence in the legal system, encourages adherence to high ethical standards and discourages misconduct—or if we can do better. To put it simply, we can indeed do better and we can make a functional system more efficient, more transparent, more responsive, more consistent and more credible with the public at large.

At the outset, it is important to note that New York has a uniquely decentralized system for handling attorney grievances, with four different sets of procedures administered by eight regional grievance offices. Virtually every jurisdiction outside New York has a central body responsible for attorney oversight. However, in New York professional conduct is managed independently by the four departments of the Appellate Division of State Supreme Court, each with its own distinctive nomenclature and rules:

- The First Department in New York County addresses attorney misconduct in Manhattan and the Bronx through a "Departmental Disciplinary Committee" under the Rules and Procedures of the Departmental Disciplinary Committee of the First Department, 22 NYCRR §§ 603, 605 (http://www.courts.state.ny.us/courts/AD1/Committees&Programs/DDC/index.shtml).

---

[5] See *Levy v. Association of the Bar of New York*, 333 N.E. 2d 350, 1975.

6

2DDEPT000169

**JA899**

- The Second Department, based in Brooklyn, has jurisdiction over discipline in 10 downstate counties, including three within the City of New York, and administers that responsibility through a Grievance Committee for the 2nd, 11th and 13th Judiciary Districts plus a Grievance Committee for the 9th Judicial District and a Grievance Committee for the 10th Judicial District as set forth in 22 NYCRR Part 691.1-691.25 (https://govt.westlaw.com/nycrr/Browse/Home/NewYork/NewYorkCodesRulesandRegulations?guid=Ice3dde60bbec11dd8529f5ff2182bffa&originationContext=documenttoc&transitionType=Default&contextData=(sc.Default)).

- In the Second Department, each Grievance Committee investigates misconduct complaints. Each Committee has the authority to serve charges and conduct a hearing, or it can ask the Appellate Division to institute formal disciplinary proceedings.

- In the Albany-based Third Department, which handles attorney discipline in 28 upstate counties, the tasks associated with disciplinary matters are assigned to the "Committee on Professional Standards" and the investigative duties are executed by the professional staff of the Committee under its supervision (see 22 NYCRR Part 806) to conduct investigations (http://www.courts.state.ny.us/ad3/cops/COPSRules.html).

- The Fourth Department, based in Rochester, has jurisdiction over attorney discipline in Central and Western New York through the "Grievance Committees" for the 5th , 7th and 8th judicial districts [see 22 NYCRR Part 1022.17-2.8, https://govt.westlaw.com/nycrr/Browse/Home/NewYork/NewYorkCodesRulesan

7

2DDEPT000170

**JA900**

dRegulations?guid=Id32f95d0bbec11dd8529f5ff2182bffa&originationContext=d ocumenttoc&transitionType=Default&contextData=(sc.Default]).  Investigations are conducted by the Committees and their legal staff.

The separate disciplinary bodies in the four Departments screen and investigate the thousands of complaints that are filed each year alleging an array of attorney misconduct from neglect of client matters and misappropriation of funds, to dishonesty and deceit in matters before the courts, and criminal behavior. Consistently, more than 90 percent of the complaints are dismissed.[6] Others are resolved at the committee level when the misconduct does not warrant formal action by the court. But hundreds do annually result in formal disciplinary proceedings. Following these proceedings, each Department may issue sanctions ranging from public censure to suspension from the practice of law, to disbarment. Each Department, while bound by the same rules, operates independently, applying its own procedures. To this day, the state lacks a single definition on what constitutes professional misconduct.[7]

There are innumerable procedural inconsistencies, including the following examples: [8]

---

[6] See the annual reports of the New York State Bar Association Committee on Professional Discipline (https://www.nysba.org/copdannualreports/).

[7] Although the language varies, the departments generally define professional misconduct the same way. However, the First Department adds a paragraph to define misconduct by law firms, a provision that the other three departments do not use. The provision in the First Department's court rules reads as follows: "Any law firm that fails to conduct itself in conformity with the Rules of Professional Conduct (22 NYCRR. Part 1200) with respect to conduct on or after April 1, 2009, or the former Disciplinary Rules of the Code of Professional Responsibility pertaining to law firms with respect to conduct on or before March 31, 2009, shall be guilty of professional misconduct within the meaning of subdivision 2 of section 90 of the Judiciary Law." See Rules of the Court, sections 603.2, 691.2, 806.2 and 1022.7.

[8] For a more thorough discussion of the disparities, see Aug. 11, 2015 letter from Ellyn S. Rosen, Deputy Director, American Bar Association Center for Professional Responsibility, and Nancy Cohen, partner, MiletichCohen PC, Denver, http://www.nycourts.gov/attorneys/discipline/resources.shtml.

8

2DDEPT000171

- The First and Second departments do not allow respondent attorneys to present oral arguments in disciplinary hearings, while the Third and Fourth departments do.

- Only the First Department conducts disciplinary proceedings with hearing panels.

- The Second, Third and Fourth departments have diversion programs for attorneys with a documented drug or alcohol addiction, but there is no such provision in the First Department.

- The First Department specifically provides for law firm discipline; the other three departments do not.

- In the First Department, the filing of formal charges requires approval of only two members of a policy committee; in the Second, Third and Fourth departments charges can be lodged only by the grievance or disciplinary committee itself.

- Complaints in the First Department can be dismissed after review of the chief attorney's recommendation by a single attorney member of the Disciplinary Committee. In the Second Department, a majority vote of the entire Grievance Committee is required. The Third Department's Committee on Professional Standards makes all dismissal decisions. And in the Fourth Department, the chief counsel or his/her designee can dismiss a charge after consulting with the Grievance Committee chair.

- Only the Third Department mentions the standard of proof necessary to sustain a misconduct charge (clear and convincing evidence). The other departments make no mention of standard of proof.

9

2DDEPT000172

**JA902**

- An attorney in the First Department who is suspended for failing to cooperate with the Departmental Disciplinary Committee can be summarily disbarred if he or she does not apply for reinstatement within six months. There is no such rule or practice in the other three departments.

- The First and Second departments require attorneys to certify during their biennial registration that they are in compliance with rules governing escrow funds. The Third and Fourth departments do not have such a rule.

- The First and Second departments have adopted audit rules authorizing the random examination of financial records of attorneys in their jurisdiction. There is no such provision in the Third or Fourth department.

- The Second, Third and Fourth departments all authorize their respective grievance committee to issue a confidential letter of caution to attorneys in their jurisdiction, and the Third Department also authorizes a "letter of education"[9] to an offending attorney. The First Department does not permit cautionary or educational letters. However, it does issue "dismissals with guidance."

For many years, that fragmentation has prompted concerns that the attorney disciplinary process in New York is replete with regional disparities in the implementation of discipline and imposition of sanctions, raising obvious questions: Will the same or similar conduct in one region result in the same or similar discipline in another region, or are there unacceptable disparities in the way punishment is meted out by the Appellate Division departments?; Are

---

[9] See 22 NYCRR §806.4 (c)(iv).

10

2DDEPT000173

**JA903**

- Amend the rule in the First Department to allow for the threshold determination to be made on the authority of the Chief Attorney alone, so long as a mechanism remains in place for the complainant to seek further review.

- Retain the statewide practice of fixing venue based upon the registered office address, and secondarily on the residence address.

- Ensure that the bases for both jurisdiction and venue account for the increasing use of the "virtual office" for conducting a practice (no physical presence).

- Inasmuch as the Admonition is the most serious action the Committee can take short of recommending the commencement of a formal proceeding, and because it constitutes "discipline," the process for issuing same, and the available remedies, should be the same for attorneys statewide, and thus should be harmonized. The harmonized process should allow discretion for the Admonition also to be issued orally to the respondent in appropriate cases.

Details should be worked out among the departments, with the assistance of a newly created statewide Coordinator of Attorney Discipline[53], who would function as a liaison/resource for the four judicial departments and whose precise powers and functions would be defined by the Administrative Board of the Courts. The Commission envisions that the Coordinator would be tasked with assisting the Board in fostering uniformity in procedure and sanction, encouraging communication and consistency among the separate departments,

---

[53] Approximately five members of the Commission opposed the creation of this position.

46

2DDEPT000209

**JA904**

producing an annual statistical report providing statewide data on the administration of attorney discipline, and recommending ongoing reforms as deemed necessary.

The Subcommittee and full Commission wrestled with the issue of whether there should be, in effect, "sentencing guidelines" to provide the disciplinary bodies with at least a frame of reference in which to administer sanctions. Cognizant that a "one-size-fits-all" approach rarely succeeds, the Subcommittee recommends the adoption of non-binding standards and general guidelines for imposing sanctions; non-binding, essentially advisory guidelines are of course inadequate without some expectation that they will be followed. Again, the details—such as what the usual sanction should be for an escrow theft, for a violation of the advertising rules, for client neglect, etc.—should be established jointly by the four Departments of the Appellate Division, with the assistance of the Statewide Coordinator. The Statewide Coordinator of Attorney Discipline should promptly issue a report to the Administrative Board and the public documenting disparities in sanction and recommending guidelines. Going forward, deviations from those guidelines should be explained in the Court's decisions and orders. That could be accomplished simply by stating mitigating or aggravating factors that warranted a lesser or greater sanction than would be the norm for a particular offense.

In sum, the Commission recommends approval by the Administrative Board of the Courts, and by each Department of the Appellate Division, of statewide uniform rules and procedures governing the processing of disciplinary matters at both the investigatory and adjudicatory levels, from intake through final disposition, which strike the necessary balance between facilitating prompt resolution of complaints and affording the attorney an opportunity to fairly defend the allegations. These new rules and procedures should include uniform discovery rules and information-sharing for attorneys who are the subject of a disciplinary complaint. This recommendation is of the highest priority and a firm deadline for adoption should be established.

47

2DDEPT000210

**JA905**

Case 1:21-cv-09128-VM-VF    Document 197-7    Filed 10/06/23    Page 1 of 3

# EXHIBIT G

**JA906**



# PRESS RELEASE

**New York State**
**Unified Court System**

**Contact:**
**David Bookstaver**
**Communications Director**
**Arlene Hackel, Deputy Director**
**(212) 428-2500**

**Hon. Lawrence K. Marks**
**Chief Administrative Judge**

**www.nycourts.gov/press**

**Date: December 29, 2015**

### Chief Judge Announces New Rules to Ensure A More Efficient and Consistent Attorney Discipline Process in New York State

**NEW YORK —** Chief Judge Jonathan Lippman today announced the adoption by the four Departments of the New York State Supreme Court, Appellate Division, of new uniform statewide rules to govern New York's attorney disciplinary process. The new rules, which provide for a harmonized approach to the investigation, adjudication and post-proceeding administration of attorney disciplinary matters were approved following public comment and upon recommendation of the Administrative Board of the Courts. They will be promulgated as Part 1240 of the Rules of the Appellate Division (22 NYCRR Part 1240) and will take effect in July 2016.

The rules announced today are comprehensive in scope, and set forth a uniform approach to the full panoply of issues in attorney discipline, including: standards of jurisdiction and venue; appointment of disciplinary committees and staff; screening and investigation of complaints; proceedings before the Appellate Division; rules of discovery; the name and nature of available disciplinary sanctions and procedural remedies for further review; expanded options for diversion to monitoring programs; reinstatement; and confidentiality.

The adoption of uniform rules was among the foremost recommendations of the final report of the Commission on Statewide Attorney Discipline, formed by Judge Lippman in March

**JA907**

2015 to conduct a rigorous study of disciplinary practice in New York. That report, issued in September, called for statewide uniform rules and procedures "that strike the necessary balance between facilitating prompt resolution of complaints and affording the attorney an opportunity to fairly defend the allegations."

Hailing the new rules as historic, Chief Judge Lippman said, "I could not be more pleased at the outstanding work of our four Appellate Division Departments, with their exceptional Presiding Justices, in enacting these unprecedented measures. I would also like to take this opportunity to thank Hon. A Gail Prudenti and Hon. Barry Cozier for their stellar leadership of the Commission on Statewide Attorney Discipline, and all the commission members for their extraordinary efforts in helping lay the foundation for these important reforms. Working to eliminate regional variations and leading to a more effective attorney discipline system over all, the new rules are a vital contribution to the fair administration of justice and the integrity of the legal profession throughout our state."

Chief Administrative Judge Lawrence Marks, praising the work of the organized bar in its review of the proposal, said, "This is an extremely important step in attorney discipline in our state, and the bar was terrific in its response to the proposal the court system put out for public comment. Various associations — the New York State Bar, the New York City Bar, a number of county bar associations and others — provided useful, detailed comments, and we are deeply grateful for that effort. Many of the comments were adopted. Others will be considered going forward, now that the Appellate Division speaks with a uniform voice on this vital topic."

The new rules are available at  http://www.nycourts.gov/rules/comments/index.shtml.

# # #

# EXHIBIT H

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

## HON. ALAN D. SCHEINKMAN, PRESIDING JUSTICE



## GRIEVANCE COMMITTEE MANUAL & FORMS

### VOLUME ONE

#### PARTS 1 & 2

#### GENERAL PROCEDURES AND INTAKE

Revised as of April, 2019

CONFIDENTIAL

2DDEPT000001

# INTRODUCTION

This manual is designed for the Appellate Division, Second Judicial Department Grievance Committees.  Its purpose is (1) to promote department-wide uniformity of practices and procedures; (2) to serve as a resource and guide for Committee and Staff members; and (3) to facilitate and assist in the training of new personnel.  The implementation of this manual is another step in the Court's continuing efforts to better serve its constituents and to promote public trust and confidence in the judicial system.  This manual is not intended to confer any additional rights upon any person beyond those set forth in the Rules of the Court, and provided by law.

Each part of this manual is separated into two major components: a substantive guide, and an appendix with forms and other supporting materials.  Historically, each of the three Committees developed and utilized its own standard forms as a means to manage the high volume of correspondence and assorted litigation documents generated on a daily basis.  This manual introduces department-wide forms designed to ensure uniformity in both the form and substance of key information conveyed to all participants in the Second Department grievance process, and in submissions to the Court itself.

This manual is the product of the collaborative efforts of the staffs of the three Committees, the Office of the Executive Director for Attorney Matters (formerly Special Counsel for Grievance Matters), and the Office of the Clerk of the Court.  It remains subject to change as needed; however, to promote and preserve uniformity, recommendations for modifications, or requests for clarification, should be facilitated through the Office of the Executive Director.

October 1, 2016

CONFIDENTIAL                                                                2DDEPT000004

**JA911**

## IV.  FAILURE TO STATE A COMPLAINT ("FSC")

This option concerns matters that should be rejected because of a "failure to state a complaint" (FSC), meaning that the complaint fails to state allegations of "prima facie" professional misconduct.  It also includes matters which, though stating a "prima facie" complaint, nevertheless are rejected for a valid, independent reason.  For example, complaints involving circumstances for which there is a legal remedy in the first instance or pending litigation (whether at the trial or appeal stage) are generally rejected until there is a resolution.

Statistically, approximately one-third of all complaints received by the Committees of the Second Department are classified as an "FSC" and, therefore, much of the communication the Committees engage in with the public involves delivering disappointing news.   It is the practice in the Second Department to ensure that each Committee makes a legitimate effort to explain to a complainant the particular reason a complaint has been rejected.  A series of form letters is provided in **Appendix 8** in an effort to assist each Committee and promote uniformity and consistency in communicating with complainants.

### A.    FSC Letters

The FSC form letters are classified into three main categories.  An explanation of the use and purpose of each category of form letter is detailed below.

1)    Status: addresses situations in which a complaint fails to establish Committee jurisdiction in the first instance, because it either fails to specify the identity of the attorney, or identifies either a non-attorney or a disbarred attorney as the respondent.  Note that in the case of a disbarred attorney, even though classified as an FSC file which ordinarily may be destroyed after one year, care must be taken to ensure the file is preserved for future reference in the event the disbarred attorney seeks reinstatement.  The STATUS category also contains a form in the event the complaint is not written in English.

2)    Standing:  addresses situations in which the complainant lacks standing to bring the complainant in the first instance. A lack of standing generally occurs in matters where the complainant has no connection to the respondent and/or the underlying matter from which the complaint evolves, and/or has no personal knowledge of the underlying facts and circumstances, and/or is simply relaying to the Committee information that the complainant learned from some other source .   A classic example of the lack of standing is when the Committee receives a copy of a published newspaper or magazine article containing allegations of misconduct on the part of an attorney, sent from a person who just happened to read the article but who otherwise has absolutely no involvement in, or independent knowledge of, the underlying matter. In such circumstances it is not appropriate to open a file for investigation on the basis of the sender's submission alone or to designate the sender as the "complainant."   Instead the Committee should send an acknowledgment to the sender using one of the appropriate  "FSC/Standing" form letters contained in **Appendix 8**.  The Committee may then go forward in the ordinary course to determine if there is a sufficient basis to open a *sua sponte* complaint against the attorney identified in the news article or media publication (see discussion on proceeding *sua sponte* in Section VI. "Open"

-12-

CONFIDENTIAL                                                    2DDEPT000016

Files, *infra).*  Depending upon the prevailing facts and circumstances, the Committee generally should be guarded about proceeding *sua sponte* on the basis of allegations reported in the media alone, without first exercising due diligence to independently determine whether there is sufficient credible and legally admissible evidence to support the allegations of misconduct and allow the Committee to provide reasonable notice of same in its opening letter to the respondent (see "Open/Sua Sponte/Basic/Respondent" form letter in **Appendix 9**).  Findings contained in judicial or other official determinations reported in the media (e.g., arrests, convictions, judgments) will ordinarily provide sufficient cause for the Committee to proceed *sua sponte,* but in such case the complaint would be opened on the basis of the judicial or official determination itself, not on the basis of the media report.  The form letter "FSC/Standing/Basic" is designed to address persons who report allegations obtained from information in the public domain and who otherwise have no personal knowledge of the underlying facts and circumstances or other involvement in the matter. The form letter "FSC/Standing/ Media Report" is designed to address similar circumstances but where the allegations are derived from a specific, identifiable publication or media report.

3)  No Misconduct: used when a complaint fails to allege "prima facie" evidence of professional misconduct, even if the allegations are assumed to be true .  The "Basic" letter essentially acknowledges receipt of the complaint, advises the complainant of the Committee's function and that the allegations do not state a complaint of professional misconduct.  Staff Counsel may choose to also  include the Committee's information booklet or to confirm the Committee's limitation on rendering legal advice.  Additional form letters relevant to specific situations are also provided (*e.g.*, advertisements, complainant's seeking to discharge their attorney, requests for records or an attorney's registration status), including forms for fee disputes not eligible for referral to Part 137 (*see* discussion for handling fee disputes in Section V. "Fee Disputes", *infra*).  The "Record Request" form, primarily designed to respond to a complainant's request for the Committee's confidential records, includes an optional insert when such  requests are also made on the basis of the Freedom of Information Law ("FOIL").  This form has been approved for addressing such routine FOIL requests. However, if in the judgment of Chief Counsel the request involves extraordinary or other special circumstances, the matter should be brought to the attention of the Clerk of the Court for appropriate action in accordance with UCS guidelines (see Volume One, Part One, Section II., "Lawsuits Against Court Personnel").

4) Misconduct: designed to address complaints that allege *prima facie* professional misconduct, but are rejected for independent policy reasons.  These forms are grouped into the four sub-categories described below.  Each form letter contains core language stating that upon conclusion of all related legal proceedings, the complaint may be renewed with the Committee for further consideration.  Of course, the outcome of the proceedings may affect the evaluation of the complaint during subsequent screening, if later renewed.

"Legal Remedy":  designed to address disputes which require a legal resolution in the first instance.  For example, during the course of a real estate transaction the purchaser (complainant) files a grievance alleging that the attorney for the seller (respondent) has deliberately failed to disclose a defect in title in breach of the contract.  If true, such allegations may constitute professional misconduct on the part of the seller's attorney; however, it necessarily would require the Committee to act as a court of law in resolving

-13-

**FSC/Standing/Basic**

*Date*

*Complainant*
*Address*
*Address*

Re: File No.

Dear *INSERT*:

      This will acknowledge receipt of your *letter* dated *INSERT*, which contains allegations of professional misconduct committed by an attorney.

      Upon careful review of your letter, it does not appear that the allegations are based on your personal knowledge of the underlying facts and circumstances but are based on information derived from matters in the public domain *[or reported in other sources]*. Please be advised that under these circumstances any investigation into these allegations would be initiated by the Committee *sua sponte* (meaning "of its own accord") and remain confidential pursuant to New York State Judiciary Law §90, unless it were to result in public discipline imposed by the Appellate Division. Nevertheless, the Committee thanks you for bringing this matter to its attention and appreciates your interest in preserving the standards of the legal profession.

      This letter does not constitute confirmation as to whether an investigation will or will not be pursued. Please be guided accordingly.

      Very truly yours,

CONFIDENTIAL                                                      2DDEPT000082

**JA914**

Case 1:21-cv-09128-VM-VF     Document 197-9     Filed 10/06/23     Page 1 of 4

# EXHIBIT I

JA915

# LAWS

OF THE

# STATE OF NEW YORK

PASSED AT THE

## ONE HUNDRED AND SIXTY-EIGHTH SESSION

OF THE

# LEGISLATURE

BEGUN JANUARY THIRD AND ENDED MARCH TWENTY-FOURTH

## 1945

AT THE CITY OF ALBANY

ALSO OTHER MATTERS REQUIRED BY LAW
TO BE PUBLISHED WITH THE SESSION LAWS



ALBANY
1945

**JA916**

1456                    LAWS OF NEW YORK, 1945                [CHAP.

2. Notwithstanding the provisions of subdivision one of this section from the eighth day of May, nineteen hundred forty-two and until the first day of July, nineteen hundred forty-six,[2] all such instruments or weapons so held in the city of New York, or in any other city having a population of seventy-five thousand or more[3] shall be retained, destroyed or otherwise disposed of, in the interest of national defense, within the discretion of the commissioner or chief of police, a written record of such disposition being retained by him, including written receipt therefor when disposed of other than by destruction. In the state outside the city of New York, or such other city having a population of seventy-five thousand or more,[4] all such instruments or weapons, except those in the possession of the sheriffs, shall be surrendered to the superintendent of state police of the state of New York as he may require, to be retained, destroyed or otherwise disposed of by him in the interest of national defense, a written receipt to be given by him for such and a written record, including written receipts for all such instruments or weapons when disposed of other than by destruction.

3. Notwithstanding the provisions of subdivision one of this section, from the eighth day of May, nineteen hundred forty-two, and until the first day of July, nineteen hundred forty-six,[5] all such instruments or weapons in the possession of the sheriffs of the respective counties shall be retained, destroyed or otherwise disposed of by them in the interest of national defense within the discretion of the respective sheriffs, a written record of such disposition being obtained by any such sheriff, including written receipt therefor, when disposed of otherwise than by destruction.

§ 2. This act shall take effect immediately.

---

## CHAPTER 675

AN ACT to amend the judiciary law, in relation to proceedings upon application for admission to the bar or proceedings as to the conduct or discipline of an attorney

Became a law April 10, 1945, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Judiciary Law, § 88, New subd. 8, added.

Section 1. Section eighty-eight of chapter thirty-five of the laws of nineteen hundred nine, entitled "An act in relation to the administration of justice, constituting chapter thirty of the consolidated laws," is hereby amended by adding thereto a new sub-

---

[2] Word "forty-six" new matter substituted for word "forty-five".
[3] Words "or in any other city having a population of seventy-five thousand or more" new matter inserted.
[4] Words "or such other city having a population of seventy-five thousand or more" new matter inserted.
[5] Word "forty-six" new matter substituted for word "forty-five".

JA917

676]                    LAWS OF NEW YORK, 1945                    1457

division, to follow subdivision seven, to be subdivision eight, to read as follows:

8. Any statute or rule to the contrary notwithstanding, all papers, records and documents upon the application or examination of any person for admission as an attorney and counsellor at law and upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential. However, upon good cause being shown, the justices of the appellate division having jurisdiction are empowered, in their discretion, by written order, to permit to be divulged all or any part of such papers, records and documents. In the discretion of the presiding or acting presiding justice of said appellate division, such order may be made either without notice to the persons or attorneys to be affected thereby or upon such notice to them as he may direct. In furtherance of the purpose of this subdivision, said justices are also empowered, in their discretion, from time to time to make such rules as they may deem necessary. Without regard to the foregoing, in the event that charges are sustained by the justices of the appellate division having jurisdiction in any complaint, investigation or proceeding relating to the conduct or discipline of any attorney, the records and documents in relation thereto shall be deemed public records.

§ 2. This act shall take effect immediately.

---

# CHAPTER 676

AN ACT to amend the town law, in relation to cost and expense of labor-saving device, machine or equipment to assist town officers in the performance of their duties

Became a law April 10, 1945, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Section one hundred two of chapter six hundred thirty-four of the laws of nineteen hundred thirty-two, entitled "An act relating to towns, constituting chapter sixty-two of the consolidated laws," is hereby amended by inserting therein after subdivision thirteen a new subdivision, to be numbered fourteen, to read as follows: [Town Law, § 102, new subd. 14 added.]

14. Notwithstanding the provisions of this chapter or any general or special law, when incurred pursuant to resolution of the town board the cost and expense of acquiring, purchasing, leasing or rental of any labor-saving device, machine or equipment to assist a town officer in the performance of the duties of his office.

§ 2. This act shall take effect immediately.

# EXHIBIT K

(Rev. 07.30.2020)

Attorney Grievance Committee
Supreme Court, Appellate Division
First Judicial Department
180 Maiden Lane
New York, New York 10038
(212) 401-0800
Email: AD1-AGC-newcomplaints@nycourts.gov

**HOW TO FILE A COMPLAINT**

## I. INTRODUCTION

When you retain a lawyer, you have the right to have your legal matter handled in a professional and ethical manner.

Unfortunately, there may be times when you believe that you have not received the representation that you deserve. Usually, such problems can be settled between you and your lawyer, either by talking it over or by dismissing the lawyer and retaining a new one. On certain occasions, however, a lawyer's conduct may appear so improper that a complaint to a local grievance authority is warranted. Most complaints are filed by clients, but complaints may also be filed by non-clients.

## II. WHERE TO SEND COMPLAINTS

The Attorney Grievance Committee of the First Department (AGC) only handles complaints against lawyers whose offices are in **Manhattan** or the **Bronx**. Similar grievance committees exist in the other counties of New York State. We can provide you with contact information for the other grievance committees, if necessary; or, we may transfer your complaint there if your attorney does not have an office in Manhattan or the Bronx.

If you believe a lawyer has behaved in an unethical or dishonest manner, you may file a signed complaint, in writing, with the:

Attorney Grievance Committee
Supreme Court, Appellate Division
First Judicial Department
180 Maiden Lane
New York, New York 10038
Telephone (212) 401-0800
Email:
AD1-AGC-newcomplaints@nycourts.gov
Hours: Monday-Friday, 9 A.M.-5 P.M.

Email Complaint and Attachments to:
AD1-AGC-newcomplaints@nycourts.gov.
In addition, please send **one copy** of your complaint and attachments **by regular mail** to the above address. If you do not have a personal email account, please send two (2) complete sets of your complaint and all attachments. There may be a delay in processing your matter if it is not emailed. Please **do not** include any original documents because we are unable to return them.

**1** | P a g e

2DDEPT000295

**JA920**

## III. WHAT IS THE ATTORNEY GRIEVANCE COMMITTEE?

The Chief Attorney of the AGC manages a staff (Staff) of approximately 40 New York State salaried attorneys and non-attorneys. The Chief Attorney's Office works together with a volunteer group of lawyers and non-lawyers (Committee members) appointed by the Appellate Division of the Supreme Court, First Judicial Department (Court). Each Committee member is appointed by the Court because of his or her knowledge of the law and reputation for integrity and fairness. They serve voluntarily and without pay. The Chief Attorney's Office works together with the Committee members to resolve over 3,000 complaints against lawyers annually. The Committee members meet monthly to act on recommendations made by the Chief Attorney's Office. There are two 21-member volunteer Committees that meet on alternate months. Each Committee is headed by a Chairperson (Chair).

## IV. THE AGC'S PURPOSE

The purpose of the AGC is to protect the public by ensuring that lawyers adhere to the ethical standards set forth in the Rules of Professional Conduct (Rules). The AGC protects the public by reviewing and investigating complaints against lawyers and by recommending sanctions against those who are proven to have violated the Rules. It safeguards the reputation of the legal profession by enforcing high standards of conduct, while at the same time ensuring that complaints are thoroughly investigated.

The AGC has the authority to take the following actions, depending upon the seriousness of the lawyer's conduct and the circumstances surrounding it:

- Dismiss the complaint because there is insufficient evidence of unethical conduct;
- Refer the complaint to a special Mediation Program, in which a trained volunteer mediator meets with the lawyer and the client to assist them in resolving the complaint privately;
- Issue a private letter to the lawyer advising him/her that he/she has engaged in conduct that requires comment but does not warrant the imposition of discipline (Letter of Advisement);
- Issue a private sanction to the lawyer when the lawyer has engaged in unethical conduct that does not warrant public discipline by the Court (Letter of Admonition);
- Recommend to the Court to stay an investigation or proceeding because of alcohol or substance abuse or other mental or physical issue causing impairment, and direct the lawyer to complete an appropriate treatment and monitoring program approved by the Court;
- Recommend to the Court that the lawyer receive a public sanction but no suspension from the practice of law (Censure);
- Recommend to the Court that the lawyer's right to practice law be taken away for an indefinite or specified period (suspension); or
- Recommend to the Court that the lawyer's license to practice law be taken away (disbarment).

2DDEPT000296

## V. WHAT THE AGC CANNOT DO

- Give legal advice or represent clients in a civil lawsuit against their lawyers, including a lawsuit for legal malpractice or any other claim. If you wish to obtain money from your lawyer on your claim of improper conduct, you should consult a lawyer knowledgeable in that field for advice and representation. There are time limits for making certain claims, so you should seek legal advice promptly, in addition to filing a complaint.
- Determine fee disputes between clients and lawyers. Lawyers are required to participate in mandatory arbitration of fee disputes subject to certain conditions.
- Collect money for clients. If a lawyer owes you money, and you have not obtained a judgment, you should consider hiring another lawyer to collect your money.
- Generally speaking, immediately act on your complaint if there is pending litigation as to the same material and substantial issues. A judicial outcome if often helpful in determining ethical violations.

If you are in doubt as to whether the AGC can help you, you may contact us for guidance.

## VI. HOW TO FILE A COMPLAINT

It is helpful, but not required that you use the AGC's complaint form in order to file your complaint. If you choose not to use our form, make sure that your written complaint contains the following information:

- Your name, address, telephone number and **email** address;
- The name, address, telephone number and **email** address of the lawyer against whom you are making the complaint;
- A detailed and concise statement of the lawyer's conduct that is the subject of your complaint;
- Whether or not you use the AGC's form, your complaint must be signed. Unsigned complaints will not be processed;
- Include any documents related to your complaint. Make sure that you send copies, not originals, because they will not be returned.

Send the complaint and all related documents by email and regular mail to the AGC.

## VII. COST

There is no charge for submitting a complaint to the AGC. The review, investigation, and prosecution of your complaint are paid for by the State of New York. If you retain a lawyer to assist you in the complaint process, which is not necessary, you are responsible for the lawyer's fee.

## VIII. HOW COMPLAINTS ARE PROCESSED

### A. Initial Screening

Every complaint is given a docket number and initially reviewed by a Staff attorney. If it is determined that your complaint lacks merit or evidence, or involves a matter falling outside the AGC's authority, the Chief Attorney will notify you that the AGC is unable to

2DDEPT000297

investigate your complaint. A declination to investigate does not mean that the AGC does not believe you. It only means that what you said the lawyer did either was not a violation of any specific Rule or cannot be pursued for one of the following reasons:

- Inadequate evidence;
- Your complaint is a fee dispute over which the AGC has no jurisdiction;
- The AGC cannot act on your complaint for other reasons having to do with jurisdiction. For example, the lawyer's registration address is not in Manhattan or the Bronx; the lawyer has already been suspended or disbarred; the lawyer is deceased; or there is a lawsuit pending that involves similar issues;
- Your complaint involves collecting a debt that a lawyer owes to you and you have not exhausted available civil remedies; or
- There appears to be little likelihood that your complaint alleging professional misconduct can be proven due to the passage of time or the lack of evidence.

You may request reconsideration of the Chief Attorney's decision to dismiss your complaint by notifying the AGC within 30 days of the date of the notice of dismissal. One of the Committee Chairs or a sub-committee of the Committee will review your request for whatever action is deemed appropriate.

## B. Initial Investigation

If the initial screening reveals that the complaint is within the AGC's authority and may involve an ethical violation, the Staff will carry out an initial investigation. During this investigation, the lawyer will be sent a copy of your complaint and will be given the opportunity to respond to it (answer). You, in turn, may be given an opportunity to reply to the lawyer's answer (reply).

## C. Second Screening

Following the initial investigation of your complaint, including a review of the evidence submitted, the lawyer's answer to the complaint, and your reply, if any, the Staff will determine whether additional investigation is warranted. Thereafter, a Staff attorney reviews the entire file again and, with the approval of the Chief Attorney, makes a recommendation to the Committee members as to whether a violation of a Rule has occurred. That recommendation is based on an assessment of the merits of the complaint, the evidence offered by both sides and other relevant factors.

## D. Dismissal

If the investigation reveals that the lawyer did not violate a specific Rule, or if it appears that there is insufficient evidence, the Committee members may decide that your complaint should be dismissed. Before a complaint is dismissed, however, the Staff attorney's recommendation will be reviewed by the Chief Attorney. If the Committee members agree with the Staff attorney's recommendation, you will be notified in writing that your complaint was dismissed, and that you may request reconsideration of that decision by notifying the AGC within 30 days of the date of the notice of dismissal. No reconsideration request will be accepted after 30 days. The Chair of one of the Committees, or a sub-committee thereof, will review your request for whatever action is deemed appropriate.

2DDEPT000298

**JA923**

## E. Mediation Program

The AGC may decide to send a complaint to mediation if it does not involve serious ethical violations and is unlikely to result in a disciplinary sanction against a lawyer. Mediation is a private, informal way to resolve a dispute. The mediator is a neutral third person who tries to help disputing parties reach a mutually agreeable solution of their differences. In both Manhattan and the Bronx there is a roster of mediators who are trained to deal with disputes between lawyers and their clients. The mediation program is coordinated by local bar associations. The mediation involves, at a minimum, telephone contact between you, the lawyer, and the mediator. It may also involve a mediation conference at which you, the lawyer and the mediator are present. The mediation program has been highly successful in resolving disputes between clients and their lawyers, particularly in cases where the complaint was generated because of a failure in communication.

## F. Further Investigation

If a Staff attorney, after second screening of a complaint, finds that further investigation is warranted, that recommendation is reviewed by the Chief Attorney. If approved, the matter is assigned to one of the Staff attorneys to conduct further investigation which may require issuing subpoenas for documents and records as well as interviewing witnesses, including at times the complainant and the lawyer whose conduct is being investigated.

## G. Private Letter of Advisement

In some cases, the investigation may reveal that the lawyer engaged in conduct that requires comment but does not warrant the imposition of discipline. In such cases, the AGC will send the lawyer a "Letter of Advisement." This is a private letter which states that while the lawyer may not have engaged in conduct that is in violation of the Rules, the AGC finds that the lawyer's conduct requires comment. If a Letter of Advisement is issued you will receive a notice informing you that such a letter was sent, that it will be kept in the lawyer's permanent file and that it may be used against the lawyer should there be any future ethical violation.

## H. Private Letter of Admonition

In some cases, the investigation may reveal that a lawyer has violated a Rule and deserves to be disciplined, but the violation is not serious enough to warrant formal, public discipline. In such cases, the AGC will send the lawyer a "Letter of Admonition." This is a private sanction which states that the AGC finds the lawyer's conduct to be in violation of the Rules. For example, such letters may be sent to lawyers who neglect a legal matter or fail to return client property promptly. If a Letter of Admonition is issued you will receive a notice informing you that such a letter was sent, that it will be kept in the lawyer's permanent file and that it may be used against the lawyer should there be any future ethical violation.

## I. Formal Disciplinary Proceeding

In a case involving an allegation of serious unethical conduct supported by substantial evidence, it may be determined that a formal disciplinary proceeding should be commenced against the lawyer. Recommendations to proceed with a formal disciplinary proceeding (the first step required for the imposition of a public sanction such as a public censure,

5 | P a g e

2DDEPT000299

**JA924**

suspension or disbarment) are presented by the Staff attorneys to the AGC members for their approval.

**J. Hearing and Review by the Court**

If a formal disciplinary proceeding is brought against a lawyer, the Court may appoint a Referee to conduct a hearing. Staff attorneys under the supervision of the Chief and Deputy Chief attorneys develop and prosecute the case against the offending lawyer before the Referee. You may be asked to testify along with other witnesses. After the hearing, which is similar to a formal trial, the Referee files with the Court a Report and Recommendation as to whether the charges have been proven and recommends an appropriate sanction. The AGC or the lawyer may make a motion to confirm or disaffirm the Referee's Report. The Court, after its review, may confirm, reject or modify the Referee's findings and recommendation. Only the Court has the authority to impose public discipline on the lawyer, including censure, suspension or disbarment.

## IX. CONFIDENTIALITY

During the investigation and resolution of a complaint, all papers, records and documents in the AGC's possession are sealed and deemed private and confidential pursuant to New York Judiciary Law, Section 90(10). If a recommendation for a public sanction is upheld by the Court, however, the Court's written decision and the entire record of the proceedings are available to the public for inspection at:

Committee on Character and Fitness
Supreme Court, Appellate Division
First Judicial Department
41 Madison Avenue, 26th Floor
New York, New York 10010
(646) 386-5895

## X. HOW LONG DOES THE PROCESS TAKE?

The initial screening of a complaint may take some time. You may contact the AGC in writing to review the status of a complaint. After the initial screening, it is difficult to predict the length of time that it will take to investigate a matter because it depends on the gravity of the complaint and the workload of the Staff.

If a recommendation is made to dismiss the complaint after receipt of the lawyer's answer and your possible reply to that answer, you will be notified in writing. If the AGC pursues a further investigation, the time required for the additional investigation and prosecution varies with the seriousness and complexity of the case, the availability of witnesses, documentary evidence, the AGC's caseload and other factors.

If your complaint results in a formal disciplinary proceeding and a hearing and involves claims of lawyer misconduct sufficient to justify censure, suspension or disbarment, it may take a number of months before the proceedings are complete. Every effort is made to act on each complaint quickly and efficiently. Consideration of a complaint may ultimately result in depriving a lawyer of the ability to practice his or her profession. Given the AGC's responsibility to you, and the lawyer in question, we must act with care.

2DDEPT000300

**JA925**

## XI. REINSTATEMENTS

Section 90 of the Judiciary Law and Court Rule 22 NYCRR 1240.16 permit lawyers to apply for reinstatement to the practice of law after the period of suspension or disbarment. A lawyer who has been disbarred or stricken from the roll of attorneys may not petition for reinstatement until the expiration of seven years from the effective date of disbarment. For directions on what a petition for reinstatement must contain, please refer to 22 NYCRR 1240.16 and 22 NYCRR Part 1240, Appendixes C and D.

## XII. DISCIPLINARY RESIGNATIONS

The Court permits a lawyer to resign from the bar during an investigation by the AGC or after the commencement of a formal disciplinary proceeding if the lawyer submits an affidavit in compliance with 22 NYCRR 1240.10 and Part 1240, Appendix A, acknowledging that the lawyer knows the nature of potential charges which are set forth in the affidavit and cannot successfully defend against them. A resignation during the pendency of an investigation is equivalent to disbarment.

## XIII. OTHER SOURCES OF HELP

There are various agencies that can help you, or can provide additional relief while your complaint is being processed by the AGC:

### 1. Lawyer Referral

If you wish to locate a lawyer to replace the lawyer against whom you have complained, or to counsel you in connection with possible claims you may have against that lawyer, the following bar associations in our area have legal referral services:

**Manhattan**:

Association of the Bar of the City of New York
42 West 44th Street
New York, New York 10036
(212) 626-7373 (English)
(212) 626-7374 (Spanish)

New York County Lawyers' Association
14 Vesey Street
New York, New York 10007
(212) 267-6646

**Bronx**:

Bronx County Bar Association
851 Grand Concourse
Room 124
Bronx, New York 10451
(718) 293-2227

### 2. Misappropriated Funds

If you believe that a lawyer has misappropriated your money or other assets, you may wish to consult the Lawyers' Fund for Client Protection (Fund) about probable reimbursement from the Fund. Complete information about the Fund and its procedures, its contact address, telephone numbers and claim forms may be found on the Fund's Website, http://www.nylawfund.org. The Fund may also be reached at:

Lawyers' Fund for Client Protection
119 Washington Avenue
Albany, New York 12210
(518) 434-1935 or
(800) 442-3863

2DDEPT000301

**JA926**

### 3. Fee Disputes

If you are having a fee dispute with your present lawyer and wish to arbitrate that dispute, you should contact:

Joint Committee on Fee Disputes
14 Vesey Street
New York, New York 10007
(212) 267-6646, Ext. 217

The New York State Court System has established a Statewide Fee Dispute Resolution Program (FDRP) to resolve lawyer-client disputes over legal fees through arbitration (and in some cases mediation). Please visit their website to see whether the FDRP is right for you:

http://www.nycourts.gov/admin/feedispute/index.shtml

### 4. Mandatory Resolution of Fee Disputes

If a fee dispute arises in a civil matter where the representation began after January 1, 2002 and the amount involved is more than $1,000 and less than $50,000, resolution of the fee dispute is mandatory and will be conducted by the:

Joint Committee on Fee Disputes
14 Vesey Street
New York, New York 10007
(212) 267-6646, Ext. 217

There is no mandatory resolution program for fee disputes in criminal matters.

### 5. Unauthorized Practice of Law

If you feel that a non-lawyer is improperly holding himself or herself out as a lawyer or otherwise practicing law, please contact:

**Manhattan:**

New Yok County District Attorney's Office
One Hogan Place
New York, New York 10013
(212) 335-9000

**Bronx:**

Bronx County District Attorney's Office
198 East 161st Street
Bronx, New York 10451
(718) 590-2000

### 6. Criminal Conduct

If you believe that your lawyer is engaging in criminal conduct, please contact:

**Manhattan:**

New York County District Attorney's Office
One Hogan Place
New York, New York 10013
(212) 335-8900

**Bronx:**

Bronx County District Attorney's Office
198 East 161st Street
Bronx, New York 10451
(718) 590-2000

### 7. Judges

To file a complaint against a judge, please contact:

State Commission on Judicial Conduct
61 Broadway, 12th Floor

2DDEPT000302

JA927

New York, New York 10006
(646) 386-4800

## 8. Public Disciplinary Records

To obtain the public disciplinary records of lawyers please contact:

Committee on Character and Fitness
Supreme Court, Appellate Division
First Judicial Department
41 Madison Avenue, 26th Floor
New York, NY 10010
Phone: (646) 386-5895

## XIV. CONCLUSION

We hope that this is helpful in answering your questions about how to file a complaint against a lawyer in Manhattan or the Bronx, and what happens thereafter. The legal profession expects all lawyers to conduct themselves in an honest and ethical manner in accordance with the Rules of Professional Conduct. We are committed to giving every complaint against a lawyer full and fair consideration in an expeditious, thorough manner, and recommending discipline for lawyers who do not meet the high ethical standards of the profession.

If you have additional general questions about this process, please contact our office.

2DDEPT000303

**JA928**

Case 1:21-cv-09128-VM-VF    Document 197-13    Filed 10/06/23    Page 1 of 3

# EXHIBIT M

**JA929**



*State of New York*
*Supreme Court, Appellate Division*

*286 Washington Avenue Extension*
*Suite 200*
*Albany, NY 12203-6320*

**Attorney Grievance Committee**
**For The Third Judicial Department**

*(518) 285-8350*
*fax (518) 453-4643*
*www.nycourts.gov/ad3/agc*

### INSTRUCTIONS FOR FILING A COMPLAINT FOR
### PROFESSIONAL MISCONDUCT AGAINST AN ATTORNEY

Thank you for contacting the Attorney Grievance Committee for the Third Judicial Department ("Committee"). Attached hereto is a Complaint Form. Please review the information set forth below prior to filing a complaint.

**Prior to Drafting a Complaint**
Making a complaint against an attorney is a very serious matter. Before taking that step it is often wise for the complainant to first, communicate with the attorney, preferably in writing, in an attempt to mutually work out a solution to existing problems or disputes, or pursue alternative methods of settling attorney-client disputes, if available. Once a complaint is filed, it cannot be withdrawn.

If a person believes that an attorney has engaged in professional misconduct, he or she may file a complaint against the attorney. Pursuant to the Rules for Attorney Disciplinary Matter (22 NYCRR Part 1240), the Committee's authority is to review complaints and determine if an attorney has engaged in professional misconduct in violation of the New York State Rules of Professional Conduct (22 NYCRR Part 1200). The Committee has limited authority to discipline attorneys for rude behavior, attorney-client disagreements, or the belief that an attorney did a poor job in representing a client.

**Drafting a Complaint**
Please complete the Complaint Form as legibly as possible, preferably in type set form, setting forth a clear and concise statement of facts outlining the circumstances of the alleged professional misconduct. If available, provide copies of any documents, including retainer agreements, bills and other written evidence that support the allegations. Please do not provide original supporting documents as they will not be returned. If applicable, include the names, addresses, and contact numbers for any witnesses who can support the allegations. You may submit additional pages to the Complaint Form if required. Should you prefer, you may attach a typed letter and/or explanation to the Complaint Form. Separate Complaint Forms must be completed and filed if multiple attorneys are involved. You must provide your address and telephone number on the Complaint Form, in addition to affixing your signature thereon.

**Filing the Complaint**
Filing a complaint with the Committee may be done by either of the following methods:

> **Mail:**
> If you are filing your complaint by mail, please send the Complaint Form and any attachments to the Committee's office at the address set forth above.

> **Electronically:**
> If you would like to file your complaint electronically, please visit the Committee's website at **nycourts.gov/ad3/agc** to submit the Online Complaint Form.

2DDEPT000310
11032022

**JA930**

**Please be advised that a Complaint Form submitted without a signature will not be accepted and will be returned.**

Additional information, including an Overview of the Attorney Disciplinary Process can be found on the Committee's webpage listed above.  **Please allow sixty days for the initial processing of your complaint.**

Should you have questions, please e-mail the Committee at AD3AGC-IU@nycourts.gov.  Please be advised that the Committee is prohibited from providing any legal advice or assisting you with pursing any legal claim which you may have against an attorney, including a claim for legal fees.  If you need legal advice and/or wish to pursue a claim, you should consult with a lawyer of your own choosing.

2DDEPT000311

**JA931**

# EXHIBIT N

**JA932**

## Purpose of Grievance Committee: To Protect the Public

The Attorney Grievance Committee of the Fourth Judicial Department of the State of New York was formed to investigate and prosecute complaints of misconduct against lawyers.

The main purpose of the Committee is to protect the public against the small minority of lawyers who do not act in an ethical manner.

## General Information

All lawyers promise when they enter practice to uphold the law and to be guided by rules of ethics, known as the Rules of Professional Conduct, which have been adopted by our Appellate Division of the State Supreme Court. A lawyer who commits a breach of this code of professional conduct is subject to discipline which, in some case, could mean suspension of his or her license to practice or even its permanent loss.

Discipline of a lawyer must be considered very carefully since it may drastically affect the lawyer's career, reputation, and ability to earn a living. You can understand, therefore, that it takes more than a claim of unethical conduct to justify the imposition of discipline. It takes evidence, proof of unethical conduct, to justify discipline of a lawyer, just as it takes proof before you or any member of society may be penalized for wrongdoing. Consequently, the investigation of a complaint and disciplinary proceedings are kept confidential pursuant to state law.

An honest disagreement about how a case should be handled, or should have been handled, does not constitute unethical conduct.

Except in some unusual circumstances, disagreement about fees does not constitute unethical conduct. There can be legitimate differences about fees, of course. If your complaint is found to be a fee dispute, not involving unethical conduct, you will be so advised. You may be referred to a committee on conciliation of fee disputes, which will attempt to assist you and the lawyer to reach a fair settlement of the problem.

Unethical conduct means wrongdoing, a violation of the profession's code of ethics, which can be proved by available evidence.

## Filing a Complaint

While the filing of a complaint against a lawyer is a serious matter which should not be undertaken lightly, you need not be an expert on the legal profession's ethical standards before you file a complaint with this office.

If you believe that your lawyer has acted unethically and you cannot resolve the matter with the lawyer, you may file a written complaint with the appropriate Grievance Committee.

The complaint should be in writing. No special form or language is necessary. Your written complaint should include all important information. If letters, agreements, or other documents are involved, **copies** should be included if available. If more information than what you provide is needed it will, of course, be requested. There is no financial cost to you in filing a complaint.

## Disposition of a Complaint

Your complaint will be first reviewed by a staff member. If your problem is a misunderstanding with your lawyer not involving unethical conduct, the Committee will not inquire further into your complaint. If your complaint appears to be a fee dispute or other minor matter, the Committee will refer your complaint to the local county bar association for resolution. In any event, you will be notified if this office determines that your complaint is not within our jurisdiction.

If the review of your complaint indicates that unethical conduct may be involved, the usual procedure is for our office to send a copy of your complaint to the lawyer for his or her response. You will receive a copy of the lawyer's response to your complaint. If the lawyer's response does not resolve the matter, further investigation will be undertaken.

After the investigation is completed, the Grievance counsel will review the facts and then determine the appropriate action to take. If the complaint is reviewed by the Committee, it can dismiss the complaint, admonish the lawyer, or recommend that the complaint be referred to the Appellate Division of the Supreme Court of New York for formal disciplinary proceedings.

## Disciplinary Decision by the Appellate Division

The Appellate Division has ultimate authority over attorney conduct in this state. This Court may impose discipline ranging from public censure to disbarment, if the charges are sustained. If the Court decides to take disciplinary action against an attorney, the decision will be made public.

## How Long Will it Take?

It is hard to predict just how long it will take to process a particular complaint. Much depends upon the nature of the complaint, but we assure you that it will be handled as quickly and fairly as possible. You will be notified of the outcome.

## What Can I Expect from the Grievance Process?

The grievance process exists to protect the public. Grievance Committee members are not paid for their work. The committees consist of lawyers and nonlawyers, who volunteer to do this work in order to maintain the standards of the legal profession. By bringing a complaint to their attention, you will help the committees achieve that goal. The committees will act to resolve your complaint in a manner that is fair to both you and the attorney. However, the committees cannot represent you or give you legal advice. They cannot sue an attorney on your behalf, or seek the return of money or property from your attorney. The only matters that will be addressed by the committees are questions of the ethical conduct of attorneys.

## What Is the Lawyers' Fund for Client Protection?

The Lawyers' Fund for Client Protection is an organization that was created by the State Legislature in 1981 to reimburse losses caused by the dishonest conduct of New York attorneys in the course of their practice. It is funded by all New York attorneys, who are required to pay a biennial registration fee in order

2DDEPT000312

to practice. You are not required to be represented by a lawyer in order to submit a claim to the Fund. For more information on the operations of the Fund and filing a claim with the Fund, you may write to them at 119 Washington Avenue, Albany, New York 12210, call the Fund's toll-free number, 1-800-442-FUND, or fax them at 1-518-434-5641.

### *Where to File a Complaint*

Complaints against lawyers should be directed to the appropriate Grievance Committee office.

**Herkimer, Jefferson, Lewis, Oneida, Onondaga, and Oswego Counties:**

Attorney Grievance Committee
**Fifth Judicial District**
224 Harrison Street, Suite 408
Syracuse, New York  13202-3066
(315) 401-3344   Fax  (315) 401-3339

**Cayuga, Livingston, Monroe, Ontario, Seneca, Steuben, Wayne, and Yates Counties:**

Attorney Grievance Committee
**Seventh Judicial District**
50 East Avenue, Suite 404
Rochester, New York  14604-2206
(585) 530-3180   Fax (585) 530-3191

**Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans, and Wyoming Counties:**

Attorney Grievance Committee
**Eighth Judicial District**
438 Main Street, Suite 800
Buffalo, New York  14202
(716) 845-3630   Fax  (716) 845-3632

**Visit our website at:**
**www.nycourts.gov/ad4**

# HOW COMPLAINTS AGAINST ATTORNEYS ARE PROCESSED



This pamphlet is designed to explain how a complaint against a lawyer may be filed, what it should contain, and how it is processed by the Attorney Grievance Committees.

If you have already filed a complaint, this pamphlet is sent to you to acknowledge its receipt.

**PREPARED BY THE**
**ATTORNEY GRIEVANCE COMMITTEES**
**FOURTH JUDICIAL DEPARTMENT**
**FIFTH, SEVENTH AND EIGHTH**
**JUDICIAL DISTRICTS**

2DDEPT000313

**JA934**

Case: 24-2251, 12/04/2024, DktEntry: 24.1, Page 94 of 154

# EXHIBIT O

**JA935**

Case: 24-2251, 12/04/2024, DktEntry: 24.1, Page 96 of 154

Case 1:21-cv-09128-VM-VF    Document 197-15    Filed 10/06/23    Page 2 of 3

## Chap. 295.

AN ACT to amend the judiciary law, in relation to the expense of preliminary investigations in disbarment proceedings.

Became a law April 21, 1921, with the approval of the Governor. Passed, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision five of section eighty-eight of chapter thirty-five of the laws of nineteen hundred and nine, entitled "An act in relation to the administration of justice, constituting chapter thirty of the consolidated laws," as amended by chapter four hundred and seventy-five of the laws of nineteen hundred and fifteen, is hereby amended to read as follows: *[margin: L. 1909, ch. 25, § 88, subd. 5, as amended by L. 1915, ch. 475, amended.]*

5. The presiding justice of the appellate division to which charges of professional misconduct against an attorney and counsellor at law have been 'presented, may make an order directing the expenses of such proceedings, and the necessary costs and disbursements of the petitioner in prosecuting such charges, including also in a county wholly within a city or in a county having a population of over five hundred thousand inhabitants,¹ the expense of a preliminary investigation in relation to such charges, to be paid by the county treasurer of a county within the judicial department, which expenses shall be a charge upon such county. *[margin: Expenses of professional misconduct proceedings against attorneys.]*

§ 2. Section four hundred and seventy-six of such chapter, as amended by chapter four hundred and seventy-five of the laws of nineteen hundred and fifteen, is hereby amended to read as follows: *[margin: § 476, as amended by L. 1915, ch. 475, amended.]*

§ 476. **Suspension of attorney from practice must be on notice.** Before an attorney or counsellor at law is suspended or removed as prescribed in section eighty-eight of this chapter, a copy of the charges against him must be delivered to him personally or, in case it is established to the satisfaction of the presiding justice of the appellate division of the supreme court to which the charges have been presented, that he cannot be served within the state, the same may be served upon him without the state by

---

¹ Words "or in a county having a population of over five hundred thousand inhabitants," new.

JA936

1018                    LAWS OF NEW YORK, 1921                    [CHAP.

mail or otherwise as the said presiding justice may direct, and he must be allowed an opportunity of being heard in his defense. It shall be the duty of any district attorney within a department, when so designated by the presiding justice of the appellate division of the supreme court, to prosecute all proceedings for the removal or suspension of attorneys and counsellors at law or the said presiding justice may, in a county wholly included within a city or in a county having a population of over five hundred thousand inhabitants,[1] appoint an attorney and counsellor at law, designated by a duly incorporated bar association approved by him, to prosecute any such proceedings and, upon the termination of the proceedings, may fix the compensation to be paid to such attorney and counsellor at law for the services rendered under such designation, which compensation shall be a charge against the county specified in his certificate and shall be paid thereon.

§ 3. This act shall take effect immediately.

---

## Chap. 296.

AN ACT to amend the prison law, in relation to jail liberties in the county of Westchester.

Became a law April 21, 1921, with the approval of the Governor. Passed, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Section three hundred and fifty-seven of chapter forty-seven of the laws of nineteen hundred and nine, entitled "An act relating to prisons, constituting chapter forty-three of the consolidated laws," as amended by chapter one hundred and seventy-four of the laws of nineteen hundred and eleven, chapter sixty-two of the laws of nineteen hundred and fifteen and chapter one hundred and twenty-two of the laws of nineteen hundred and seventeen, is hereby amended to read as follows:

§ 357. Jail liberties in certain counties. The following are the liberties of the jail for each of the counties specified, to wit: For the county of New York, the whole of said county; for the

[1] Words "or in a county having a population of over five hundred thousand inhabitants," new.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIVIL RIGHTS CORPS, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, et al.,<br><br>    Defendants. | No. 21-cv-9128 (VM) (VF)<br><br>**JUSTICE LASALLE'S RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS** |

Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York ("Local Rules"), Defendant Hector D. LaSalle, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York ("Justice LaSalle"), respectfully submits this response to Plaintiffs' Rule 56.1 Statement of Undisputed Facts submitted in support of their motion for summary judgment as to the Fourth Claim of their Complaint.[1] *See* ECF No. 59, ¶¶ 96-105.

**RESPONSE TO PLAINTIFFS' RULE 56.1 STATEMENT**

**A.**  **Law Professors File and Publish Grievance Complaints[2]**

1.  Plaintiff Civil Rights Corps. ("CRC") is a non-profit organization dedicated to challenging systemic injustice in the United States through impact litigation and public

---

[1] Plaintiffs' Rule 56.1 Statement (ECF No. 174) and the accompanying Declaration of Andrew H. Wells, Jr. (ECF No. 176) ("Wells Decl." or "Wells Declaration") do not appear to comply with the relevant rules. For example, numerous paragraphs lack citations to admissible evidence as required by Fed. R. Civ. P. 56(c) and Local Rule 56.1(d). The Wells Declaration also does not appear to comply with the Court's Individual Rule II.E regarding excerpting of exhibits.

[2] Justice LaSalle has retained Plaintiffs' headers for the convenience of review only. Pursuant to the Local Rule 56.1, these headers would not be included as part of the "material facts," which are the "short and concise statement, in numbered paragraphs." L. Civ. R. 56.1.

education – an interest shared with the Law Professors.

**Response**: Undisputed.

2.　　On May 3, 2001, the Law Professors filed 21 complaints pursuant to New York Judiciary Law § 90(10) against individual attorneys currently or formerly employed by the Queens District Attorney's Office for misconduct committed while working as an assistant district attorney (the "Grievance Complaints"). (Exs. 1, 2). The complaints were all based on judicial findings of misconduct and were all published on the CRC-supported website, AccountabiltyNY.com.

**Response**: Disputed only to the extent that Plaintiffs have a typographical error, stating that the complaints were submitted on May 3, 2001, when they were submitted on May 3, 2021. ECF No. 59, ¶ 48. Justice LaSalle states that any alleged misconduct undertaken by specific attorneys currently or formerly employed by the Queens District Attorney's Office and described in the 21 complaints is not material to the adjudication of the Fourth Claim.

3.　　The Law Professors asked that the respective grievance committees investigate and discipline each attorney for his or her misconduct, and that they do so publicly.

**Response**: Plaintiffs do not have a citation for this statement, and thus the statement fails to comply with Local Rule 56.1(d). Justice LaSalle acknowledges that Plaintiffs requested investigation of the Prosecutor Complaints by letters dated June 22, 2021, and June 30, 2021, Compl., Exs. 3 at p. 6 and 6 at pp. 4-5, and respectfully refers the Court to those documents for their contents. Justice LaSalle cannot respond otherwise as to complaints or documents not submitted with Plaintiffs' motion for summary judgment. The statement is also immaterial to the adjudication of the Fourth Claim.

**JA939**

4.      More than two years later, not one of the 21 complaints the Plaintiffs submitted has resulted in any form of public discipline.

**Response**: Undisputed.

**B.      Response to the Law Professors Grievance Complaints**

5.      The grievance committee for the 2nd, 11th, and 13th judicial districts, through its Chief Counsel, Diana Maxfield Kearse, responded to the Grievance Complaints by advising the Law Professors that, because the complaints were "based on information derived from public sources, specifically, court decisions and court records," the grievance committee would initiate any investigation *sua sponte*.

**Response**: Undisputed.

6.      Plaintiffs understood this to mean that the Law Professors would not be treated as "complainants" in accordance with § 1240.2(e) of the New York Codes, Rules and Regulations ("N.Y.C.R.R."), and would not receive the notice to which complainants are entitled about the disposition of their complaints under §1240.7(d)(1)(iii); (d)(3); and (e)(4). Rather, any action by the grievance committee would "remain confidential" under Section 90(10).  Ms. Kearse did not cite any authority for this procedure or policy.  (Ex. 3).

> **Response**: Disputed. Kearse's subsequent letter, on July 26, 2021, explained that the standing policy was pursuant to "long-standing" Second Department policy. Compl. Ex. 7; *see* Compl. ¶ 74. An internal manual used by the Second Department describes this policy. Declaration of Joya C. Sonnenfeldt, dated October 4, 2023 ("Sonnenfeldt Decl."), Ex. H at 2DDEPT000016-17; *see* Declaration of Catherine A. Sheridan, dated September 27, 2023 ("Sheridan Decl."), ¶¶ 3, 14. Plaintiffs' understanding of Ms. Kearse's letter, unsupported by any evidence, is not a fact.

7.      The statute defines a Complainant as "a person or entity that submits a complaint to a Committee." N.Y.C.R.R. § 1240.2(e). This describes the Plaintiffs in this action. However, through the course of discovery, the Law Professors and CRC learned that they had been denied Complainant status, as Ms. Kearse's letter implied, based on a set of unpublished internal rules setting forth a "standing" requirement that provides, in relevant part, if a complaint is based upon public information and the complainant lacks personal knowledge of the facts, the complainant is treated as lacking "standing" to make a complaint, and is denied the information to which a complainant with standing is entitled. (Ex. 4 at 2DDEPT000012, 2DDEPT000016).

> **Response**: Undisputed as to the quoted language of 22 N.Y.C.R.R. § 1240.2(e). Justice LaSalle refers to 2DDEPT000012 and 2DDEPT000016 within Exhibit 4 of Wells Declaration for the internal Second Department policy in place at the time of Plaintiffs' submissions of the 21 complaints in May 2021. *Supra* at ¶ 2. As to the remaining part of the statement, whether the Law Professors or CRC are within the definition of "Complainant" is a legal argument, not a fact supported by admissible evidence, which is not material to the adjudication of the Fourth Claim.

## C.    Consequences of Prosecutorial Misconduct

8.      A 2020 study of more than 2,000 exonerations found that prosecutorial misconduct was a factor in 30% of the exonerees' convictions. *See* National Registry of Exonerations, *Government Misconduct and Convicting the Innocent* (September 1, 2020), https://www.law.umich.edu/special/exoneration/Documents/Government_Misconduct_and_Convicting_the_Innocent.pdf.

4

**JA941**

**Response**: Plaintiffs do not cite to any admissible evidence, as they have not provided a declaration from an individual with knowledge of the study, including its inputs and bases for its conclusions. This statement therefore fails to comply with Local Rule 56.1(d) and is also not material to the adjudication of the Fourth Claim. Justice LaSalle has no personal knowledge of the contents of the website or registry Plaintiffs cite and therefore can neither confirm nor deny the veracity of Plaintiffs' statement.

9. One study found that in New York State prosecutorial misconduct led to thirty (30) wrongful convictions between 2001 and 2011 alone. Only one led to a public discipline by a grievance committee. *See* Joaquin Sapien and Sergio Hernandez, *Who Polices Prosecutors Who Abuse Their Authority? Usually Nobody*, PROPUBLICA (April 3, 2013), https://www.propublica.org/article/who-polices-prosecutors-who-abuse-their-authority-usually-nobody.

**Response**: Plaintiffs do not cite to any admissible evidence, as they have not provided a declaration from an individual with knowledge of the study, including its inputs and bases for its conclusions. This statement therefore fails to comply with Local Rule 56.1(d). Justice LaSalle does not dispute that the cited article contains the information cited, but he has no personal knowledge of the contents of the study and therefore can neither confirm nor deny the veracity of Plaintiffs' statement. However, the statement is not material to the adjudication of the Fourth Claim.

10. Unlike other practicing attorneys admitted to the New York state bar and other law enforcement officials, prosecutors have "absolute immunity" from civil suit, *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976), leaving the New York attorney grievance committees as the sole avenue for discipline and punishment related to prosecutorial misconduct.

5

**JA942**

**Response**: Undisputed as to the availability of the "absolute immunity" defense that prosecutors may articulate in defense of a lawsuit, and Justice LaSalle respectfully refers to the *Imbler* decision for a full and complete description of its holdings. Plaintiffs do not cite to any evidence for the statement that "grievance committees are the sole avenues for discipline and punishment," and thus the statement fails to comply with Local Rule 56.1(d). Justice LaSalle disputes that New York attorney grievance committees are "the sole avenue for discipline and punishment," because the Complaint notes that prosecutor Glenn Kurtzrock was fired for misconduct. ECF No. 59, ¶ 34. This statement is also not material to the adjudication of the Fourth Claim.

11.    But prosecutors are seldom held accountable for their misconduct. In 2022, in the Tenth Judicial District, not one single case was referred by the Appellate Division for review on the grounds of prosecutorial misconduct. (Ex. 5 at 2DDEPT000850).

**Response**: Undisputed as to citation on Ex. 5 (2DDEPT000850). Plaintiffs do not cite to any admissible evidence for the remainder of the statement, and thus the statement fails to comply with Local Rule 56.1(d). The statement that "prosecutors are seldom held accountable for their misconduct" is an opinion, not a fact supported by admissible evidence. This statement is also not material to the adjudication of the Fourth Claim.

12.    In 2021 and 2022, in the Tenth Judicial District, the committee did not impose any private admonishment on prosecutors (the highest level of sanctions it is authorized to impose), nor did the Appellate Division dispose of any cases pertaining to prosecutors. (Ex. 6 at 2DDEPT000847; Ex. 5 at 2DDEPT000854).

6

**JA943**

**Response**: Undisputed as to citations on Ex. 5 (2DDEPT000854) and Ex. 6 (2DDEPT000847) and refer to those documents for their complete statements. However, this statement is not material to the adjudication of the Fourth Claim.

13.    The 2nd, 11th, and 13th districts in the Second Department do not categorize their reported data in a way as to reveal how matters pertaining to prosecutors have been handled.  (Ex. 7; Ex. 8, at 93:25–94:18).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

14.    However, the data does reveal that across all judicial districts in the Second Department, from 2016-2020, of the 22,343 cases disposed of by the committees, most cases were dismissed, 2513 cases ended with private discipline, and only 475 cases resulted in public sanctions, meaning that *98 percent* of all complaints resolved by the grievance committees and the court are resolved in private and remain secret, and that secrecy continues forever. (Ex. 9, at 4–9; Ex. 10, at 4–5, 8-9, 12–13; Ex. 11, at 4–5, 8–11; Ex. 12, at 2–3, 8–11; Ex. 13, at 4–5, 22–28).

**Response**: Undisputed as to the general conclusion that "most" complaints are disposed of within a Committee without imposition of public discipline by the Second Department. *See* March 31, 2022 Declaration of Diana Kearse (ECF No. 83), at ¶ 12 (stating that less than 98% of investigations opened by Second Department Committees between 2016 and 2020 were disposed of privately). Disputed to the extent that Justice LaSalle is unable to decipher from Plaintiffs' general references to the UCS-176 forms contained in Exhibits 9, 10, 11, 12, and 13 of the Wells Declaration concerning how Plaintiffs made their calculations. Plaintiffs do not cite to any admissible evidence for the statement that

7

**JA944**

resolved complaints "remain secret" and "that secrecy continues forever," and thus the statement fails to comply with Local Rule 56.1(d). This statement is also not material to the adjudication of the Fourth Claim.

### D.     Grievance Committee Proceedings

15.     The Chief Attorneys and staff members of the three Attorney Grievance Committees in the Second Judicial Department are appointed by the Appellate Division. *See* 22 N.Y.C.R.R. §§ 1240.4, 1240.5 ("Each Department of the Appellate Division shall appoint to a Committee or Committees such chief attorneys and other staff as it deems appropriate). (Ex. 14 at 2DDEPT000305).

**Response**: Undisputed.

16.     All of the work of the grievance committees is confidential under New York Judiciary Law 90(10).

**Response**: Plaintiffs do not cite to any admissible evidence for this statement and do not define the "work of the grievance committees," and thus, the statement fails to comply with Local Rule 56.1(d). Justice LaSalle disputes that "all of the work" is confidential, as the Rules for Attorney Disciplinary Matters (the "Statewide Rules"), *see* Part 40 of Title 22 of the New York Code, Rules, and Regulation, explain disclosures to the respondent attorney, *see* § 1240.7(d). Further, Section 90(10)'s confidentiality policy does not prohibit complainants, respondent attorneys, or witnesses from publishing or discussing information they provide to or receive from the Committee. Sheridan Decl., ¶ 37. Section 90(10) also allows for disclosure of documents upon "good cause shown." Jud. L. § 90(10).

**JA945**

17.     Defendant Justice Hector LaSalle is the Presiding Justice of the Appellate Division, Second Judicial Department, which controls and governs the Second Department grievance committees. *See Justices of the Court*, Supreme Court of the State of New York, Appellate Division, Second Judicial Department, available at https://www.nycourts.gov/courts/ad2/justice_lasalle.shtml; *see also Attorney Grievance Committees*, New York State Unified Court System, available at https://ww2.nycourts.gov/attorneys/grievance/index.shtml.

> **Response**: Justice LaSalle disputes that he "controls" the Committees in the Second Department. He appoints Committee members and Chief Attorneys and maintains the applicable policies, but he is not involved with and does not oversee the determinations on individual Committee dispositions about attorney misconduct. Declaration of Justice Hector D. LaSalle, dated September 28, 2023 ("LaSalle Decl."), at ¶¶ 4-8.

18.     The Presiding Justice of the Second Judicial Department is legally responsible for enforcing the Rules of Professional Conduct, and carries out this duty through the three grievance committees in the Justice's jurisdiction.  (Ex. 14 at 2DDEPT000305).

> **Response**: Disputed, as the cited evidence states that the "Appellate Division of the Supreme Court is legally responsible for maintaining the integrity of the profession by enforcing" the Rules of Professional Conduct. Plaintiffs do not cite admissible evidence that supports the Presiding Justice's role, and thus the statement fails to comply with Local Rule 56.1(d). The statement that the Presiding Justice is "legally responsible" is also an argument, not a fact.

19.    The standard procedures pursuant to which those committees operate and enforce the law are published under the name of the Presiding Justice.    (Ex. 4 at 2DDEPT000001).

**Response**: Undisputed that the Manual contains standard procedures for the Second Department. Disputed as the evidence cited by Plaintiffs does not contain a definition for the term "published," and former Presiding Justice Alan D. Scheinkman's name appears on the cover, as he was the Presiding Justice as of the listed revision date of April 2019. Ex. 4 at 2DDEPT000001. Plaintiffs do not cite to any admissible evidence as to the procedures as to the First, Third, and Fourth Departments, and thus the statement fails to comply with Local Rule 56.1(d). Any statement about the other three departments is also not material to the adjudication of the Fourth Claim.

20.    The Presiding Justice has control over the committee and Appellate Division records and information.    (Ex. 17, at 8; Ex. 18, at 9).

**Response**: Disputed as the evidence cited by Plaintiffs in Exhibits 17 and 18 of the Wells Declaration, *see* ECF No. 176, does not support the statement that the "Presiding Justice has control over the committee." Exhibit 17 only states that "the New York Unified Court System/Office of Court Administration ('USC/OCA'), has possession, custody, and control of the records of the Grievance Committee." ECF No. 176-17 at 8. Exhibit 18 only states that "staff members employed by UCS/OCA maintain the records of the Grievance Committee including agendas, memoranda, meeting minutes, and investigatory documents." ECF No. 176-18 at 9. The Clerk's Office for the Second Department controls the records docketed in the Second Department. Declaration of Darrell M. Joseph dated September 26, 2023 ("Joseph

Decl."), ¶ 7.

21.    The Court's ruling in this case would be implemented by Defendant LaSalle as Presiding Justice.

**Response**: This statement is an argument, not a statement of fact in compliance with Local Rule 56.1(a). In addition, Plaintiffs do not cite to any admissible evidence for this statement, and thus the statement fails to comply with Local Rule 56.1(d).

22.    In the Second Department, upon receipt of a complaint alleging professional misconduct, Staff Counsel undertakes a "rigorous screening process," to determine whether or not to open an investigation.  (Ex. 15 at 2DDEPT000286).

**Response**: Undisputed.

23.    If an investigation is opened, Staff Counsel investigate the matter and, if warranted, prosecute the State's case against the responding attorney, with the grievance committee sitting in judgment as the neutral decision maker.  (Ex. 8, at 84:6–85:2; Ex. 15 at 2DDEPT000286–87).

**Response**: Undisputed that Staff Counsel "investigate the matter and, if warranted, prosecute." Plaintiffs do not cite to any admissible evidence to support the statement that the grievance committee acts as a "neutral decisionmaker." Justice LaSalle disputes this statement as the deposition testimony cited reflects that Ms. Kearse did not agree with the phrase "neutral decisionmaker" in the question posed to her. ECF No. 176-8 at 86:8-9. Justice LaSalle further disputes this statement as the Orientation Manual attached as Exhibit 15 of the Wells Declaration does not contain any language about a "neutral decision maker." Rather, that Orientation Manual describes the respective roles of Staff Counsel, the Committee, and the Appellate Division, and

11

Justice LaSalle respectfully refers the Court to those documents for their contents. *See* Ex. 15 at 2DDEPT000286–87.

24.     Staff Counsel provides the responding attorney with notice of the allegations, an opportunity to respond in writing, and if necessary, may subpoena documents and witnesses and examine the respondent in a deposition style proceeding before the committee. (Ex. 8, at 41:17– 44:9; Ex. 15 at 2DDEPT000286–87).

**Response**: Undisputed.

25.     The Complainant is also advised that the matter has been opened and is given the opportunity to review the respondent's written answer.  (Ex. 8, at 42:9–42:20).

**Response**: Undisputed.

26.     While Staff Counsel and the committee conduct their review of the allegations, the respondent attorney must abide by the procedures and rules set forth by the committee, and upon an attorney's failure to cooperate, the committee may obtain an interim suspension from the Appellate Division.  *See* 22 N.Y.C.R.R. § 1240.9(a).  (Ex. 8, at 48:22–50:2).

**Response**: Undisputed.

27.     When the investigation has concluded, Staff Counsel work with Chief Counsel to compile a report containing its recommendation to the grievance committee regarding the appropriate disposition.  This report should present the allegations, the respondent's defense and any applicable legal authority and analysis, and sometimes underlying documents. (Ex. 8, at 47:11–16; 50:8–22; Ex. 15 at 2DDEPT000287).

**Response**: Undisputed.

28.     The grievance committee considers this report in reaching a final disposition, but the report itself remains confidential.  Normally, this report is the only material given to

**JA949**

the committee on which to base its decision. (Ex. 8, at 52:8–19; 53:15–24; Ex. 15 at 2DDEPT000287).

> **Response**: Undisputed, as to the grievance committee's consideration of the report prepared by the Staff Attorney. Plaintiffs provide no admissible evidence to support the statement that the report is the "only material" on which the grievance committee bases its decision, and thus the statement fails to comply with Local Rule 56.1(d). Justice LaSalle disputes that it is the only material considered, as the Committee discusses the conduct and investigation and can ask further questions. Declaration of Andrea E. Bonina, dated September 19, 2023 ("Bonina Decl."), ¶ 13; Sheridan Decl., ¶¶ 26-28; ECF No. 176-8 at 53.

29.    Upon conclusion of the investigation, the various possible dispositions by committee outlined in 22 N.Y.C.R.R. § 1240, include a finding that: (1) no misconduct occurred and dismissal is appropriate; (2) the "respondent . . . engaged in conduct requiring comment that, under the facts of the case, does not warrant imposition of discipline," and it is, therefore, appropriate to "issue a Letter of Advisement to the respondent"; (3) by "a fair preponderance of the evidence," "the respondent has engaged in professional misconduct, but that public discipline is not required to protect the public," and it is, therefore, appropriate to issue a Letter of Admonishment; or (4) "there is probable cause to believe that the respondent engaged in professional misconduct warranting the imposition of public discipline," and it is, therefore appropriate to authorize a formal disciplinary proceeding before the Appellate Division. *See* 22 N.Y.C.C.R. §§ 1240.7(d)(2)(i), (iv), (v), and (vi).

> **Response**: Undisputed, and Justice LaSalle refers the Court to the Statewide Rules for a complete statement.

13

30.    Whether the nature of the alleged conduct requires public discipline is left to the discretion of the committee and is not defined or standardized by the statute or committee guidance. (Ex. 8, at 63:10–66:14).

**Response**: Disputed. The Statewide Rules empower the Committee to determine whether there is probable cause to petition the Appellate Division to impose public discipline. The Committee examines the alleged conduct, as compared to the Rules for Professional Conduct, based on the materials provided and guidance of the norms of the practice area. Bonina Decl., ¶¶ 12-18. Only the Appellate Division can determine whether public discipline is warranted. *Id.* at ¶ 21; LaSalle Decl., ¶ 8.

31.    After the committee reaches a disposition, the respondent is sent the committee's opinion and its findings upon review of the allegations in the complaint, examples of which are attached as Ex. 16 at 2DDEPT000923, 2DDEPT000925, 2DDEPT000927-0928. (Ex. 8, at 67:23– 68:4).

**Response**: Undisputed.

32.    The complainant is entitled to a less detailed, "brief description of the basis of any disposition of a complaint by the Chief Attorney," examples of which are attached as Ex. 16 at 2DEPT000924, 2DDEPT000926, 2DDEPT000929. (Ex. 8, at 67:23-68:4).

**Response**: Undisputed as to the quoted language in the Statewide Rules. Plaintiffs do not cite to any admissible evidence for the statement that the complainant is "entitled" to information. The form letters cited in Exhibit 16 of the Wells Declaration, *see* ECF No. 176-16, do not reference an entitlement. The statement is also not material to the adjudication of the Fourth Claim.

33.     The respondent then has the right to seek reconsideration of these dispositions. *See* 22 N.Y.C.R.R. § 1240.7(e).

**Response**: Undisputed.

34.     The respondent also has a right to file an application to the Court to set aside these dispositions.  22 N.Y.C.R.R. §§ 1240.7(e)(1)(ii); (e)(2).  This proceeding would be confidential under 90(10).

> **Response**: Undisputed as to the citation to the Statewide Rules. Plaintiffs do not provide any citation for the statement that "[t]his proceeding would be confidential under 90(10)," and thus this part of the statement fails to comply with Local Rule 56.1(d).

35.     Although the committee level dispositions remain confidential, any sanction based on a finding of misconduct remains on the respondent's record forever and has the potential to impact the respondent professionally.  (Ex. 8, at 58:25–59, 62:2–4, 70:7–71:2).

> **Response**: Undisputed.

36.     For example, if the responding attorney is applying for a judgeship, the relevant committee can access and will consider this disciplinary history in reaching a determination on the attorney's application.  (Ex. 8, at 58:25–59:8).

> **Response**: Disputed. The "relevant committee," which is undefined, would need to file a Good Cause Application to access any confidential disciplinary history or the subject attorney would need to request that the Second Department disclose his registration status and disciplinary history or lack thereof to a third party such as a judicial screening committee. Joseph Decl., ¶¶ 3, 10, 12. This statement is also not material to the adjudication of the Fourth Claim.

37.    Likewise, in the event the responding attorney faces subsequent allegations of misconduct, the grievance committee will consider past Advisement and/or Admonishment in determining whether discipline is appropriate. (Ex. 8, at 70:7–19; Ex. 16 at 2DDEPT00925, 2DDEPT00928).

**Response**: Undisputed.

38.    Once final, the dispositions are then permanently maintained by New York's Office of Court Administration, making them court records within the possession, custody, and control of Presiding Justice LaSalle. (Ex. 17, at 8; Ex. 18, at 9).

**Response**: Disputed, as the cited evidence does not support the statement that Justice LaSalle has control of "dispositions." The initial disclosures from former defendant Diana Kearse, Exhibit 17 of the Wells Declaration, only state that "the New York Unified Court System/Office of Court Administration ("USC/OCA"), has possession, custody, and control of the records of the Grievance Committee." ECF No. 176-17 at 8. The initial disclosures from former defendant Andrea E. Bonina, Exhibit 18 of the Wells Declaration, state that "[t]he staff members employed by UCS/OCA maintain the records of the Grievance Committee including agendas, memoranda, meeting minutes, and investigatory documents." ECF No. 176-18 at 9.

**E.    Formal Disciplinary Proceeding Before the Appellate Division**

39.    In the event the grievance committee finds there is probable cause to believe the respondent engaged in professional misconduct warranting the imposition of public discipline *and* that public discipline is appropriate to protect the public, the Committee may vote to refer the matter to the Appellate Division. *See* 22 N.Y.C.R.R. § 1240.7(d)(2)(vi).

**Response**: Undisputed.

16

**JA953**

40.    When asked to identify the distinction between judicial proceedings and the appellate division proceeding, Diana Kearse could identify only one distinction: "I mean, the Committee is the Committee, and we have a staff. Judicial proceedings, to me, are in a court of law."). (Ex. 8, at 86:10–18).

> **Response**: Undisputed as to the quoted language. Plaintiffs do not cite to any admissible evidence as to the number of distinctions between Committee dispositions and proceedings before the Second Department. Ms. Kearse was not testifying pursuant to Fed. R. Civ. P. 30(b)(6) and only stated her opinion. ECF No. 176-8, at 86:10–18.

41.    The proceedings before the Appellate Division are conducted before the court or a court-appointed special referee as "special proceeding[s]" pursuant to CPLR Article 4, which sets forth rules for pleadings (*see* Rule 402), motions (Rule 406), hearings (Rule 409), trial (Rule 410), and judgment (Rule 411). *See* N.Y.C.R.R. § 1240.8(a)(1). All of the proceedings in the Appellate Division are confidential under 90(10), unless the charges are sustained.

> **Response**: Undisputed as to the quoted language of Article 4 of the Civil Practice Law and Rules and Judiciary Law § 90(10). Plaintiffs do not cite to any admissible evidence for the part of the statement stating that "all of the" proceedings are confidential, and thus that part of the statement fails to comply with Local Rule 56.1(d). Justice LaSalle further disputes that part and states that the respondent has the right to open proceedings against them, and proceedings generally can be opened for "good cause shown." *See* Jud. L. § 90(10).

17

42.    In initiation of the proceedings, the grievance committee serves the respondent, who has the right to be represented by counsel (Ex. 8, at 44:7-9), with a petition outlining the charges and provides the respondent with an opportunity to answer. *See* 22 N.Y.C.R.R. § 1240.8(a)(1)(i). (Ex. 15 at 2DDEPT000288).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

43.    The grievance committee then files a statement of undisputed facts, flagging any allegations for which a hearing is necessary to resolve an underlying factual dispute. *See* 22 N.Y.C.R.R. § 1240.8(a)(2). (Ex. 15 at 2DDEPT000288).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

44.    Once the respondent provides a written response to the charges, there is a period of discovery during which Staff Counsel may subpoena witness testimony as necessary. *See* 22 N.Y.C.R.R. § 1240.8(a)(4). (Ex. 8, at 83:5–9; Ex. 15 at 2DDEPT000288).

**Response**: Disputed only that Section 1240.8(a)(4) provides that both the Committee and respondent can apply to the Clerk for witness and production subpoenas. 22 N.Y.C.R.R. § 1240.8(a)(4); Sheridan Decl., ¶ 25.

45.    The Appellate Division may then assign a special referee to hear the case and issue a report with findings. *See* 22 N.Y.C.R.R. § 1240.8(b)(1). (Ex. 8, at 83:5–9; Ex. 15 at 2DDEPT000288).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

46.    The hearing proceeds with opening statements, witness testimony and examinations, and summations.  (Exs. 21, 22).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

47.    Following the hearing and any post-hearing submissions, the referee files a written report setting forth its findings and recommendations.  *See* 22 N.Y.C.R.R. § 1240.8(b)(1).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

48.    Both sides may then make motions to confirm/disaffirm the Referee's report before the Appellate Division sustains the charges.  *See* 22 N.Y.C.R.R. § 1240.8(b)(1).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

49.    The referee's findings thereafter may be affirmed by the Appellate Division.  *See* 22 N.Y.C.R.R. § 1240.8(b)(1).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

50.    Charges sustained by the Appellate Division may result in public censure, suspension, or disbarment of the accused attorney.  (Ex. 15 at 2DDEPT000288–89; Ex. 8, at 86:2– 87:8).

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

**JA956**

51.     If the charges are sustained, the Appellate Division issues a public order. *See* N.Y. Jud. Law § 90(10).

**Response**: Undisputed except to the extent that the Court may sustain charges but determine that private discipline in the form of an Admonition is warranted and remand to the Committee, in which case no public order would be issued. *See* Sheridan Decl. ¶ 34.

52.     The records of the trial (but not the investigation) are retroactively deemed public records, (Ex. 14 at 2DDEPT00307; Ex. 15 at 2DDEPT000290), but are available for review only in the Appellate Division's clerk's office. (Wells Decl. ¶¶ 27–31).

**Response**: Disputed, as the text of Exhibit 14 states only that "the records relating to that proceeding and the court's decision are public and open to inspection." Exhibit 15 states that "if charges are sustained after a formal disciplinary proceeding, the records and documents in relation thereto are deemed 'public records.'" Paragraphs 27-31 of the Wells Declaration make clear that publicly available records for attorney disciplinary proceedings can be provided over email, and are not only "available for review in the Appellate Division's clerk's office."

53.     If the charges are not sustained, they remain confidential pursuant to Section 90(10). (Ex. 8 at 87:9–12).

**Response**: Undisputed.

54.     All records of these proceedings, and those at the committee level, remain in the custody and possession of the Court. (Ex. 17, at 8; Ex. 18, at 9).

**Response**: Disputed as to the term "Court," as Justice LaSalle states that the Second Department retains custody of grievance committee records, and the Clerk's Office

retains docketed components of the attorney disciplinary process. Joseph Decl., ¶ 7; LaSalle Decl. ¶ 6.

## F.     History and Criticism of Judiciary Law § 90(10)

55.     While secrecy associated with attorney disciplinary proceedings is now mandated in this state, such proceedings in New York, and across the country, were open to the public for much of American history.  This tradition of openness for attorney disciplinary proceedings dates back to thirteenth century England.  In this country, until the mid-twentieth century, New York, and other states, adopted England's practice of conducting attorney discipline through public proceedings.  *See* Leslie C. Levin, *The Case for Less Secrecy in Lawyer Discipline*, 20 Geo.J. Legal Ethics 1, 3 n.47 (2014).

> **Response**: Undisputed as to the existence of other traditions for the conduct of attorney disciplinary proceedings. Plaintiffs do not cite to any admissible evidence for the term "mandated," and thus the statement fails to comply with Local Rule 56.1(d). Justice LaSalle disputes the use of that term and states that Section 90(10) permits disclosure upon "good cause shown." Jud. L. § 90(10).

56.     In New York, petitions or complaints charging professional misconduct of an attorney were presented publicly to the General Term of the Supreme Court in New York and adjudicated as equity suits or contempt proceedings.  *Id.* at 4.

> **Response**:  Undisputed.

57.     These proceedings were considered "quasi-criminal" matters "of a public nature," and bear a clear resemblance to that of the current disciplinary proceedings.  *See In re Spencer*, 122 N.Y.S. 190, 192 (1st Dep't 1910) ("The nature of such a proceeding to discipline an attorney . . .  have been spoken of as being of a public nature and of a quasi-

**JA958**

criminal or penal character").

> **Response**: Undisputed as to the historical manner that attorney disciplinary proceedings were conducted prior to the New York Legislature's passage of what is now Section 90(10) in 1945. Justice LaSalle states that prior to 1895, attorney licensing and discipline were handled by the General Term of the Supreme Court, and that in 1921, the legislature directed that local district attorneys, when so designated by the Appellate Division, had a "duty" to "prosecute all proceedings for the removal or suspension of attorneys." Sonnenfeldt Decl. at Exs. A, B, O. Justice LaSalle respectfully refers to the *Spencer* decision for a full and complete description of its holdings.

58.    It was not until 1945 that the law now known as Judiciary Law § 90(10) was amended to include a confidentiality provision.  (Ex. 19, at 2–11).

> **Response**:  Undisputed.

59.    From the time the confidentiality provision was proposed, it has been continuously criticized for being unnecessarily stringent at the risk of damaging public trust in the integrity of the disciplinary process.  For example, in 1945, the Association of the Bar of the City of New York ("City Bar Association") expressed its disapproval of the confidentiality provision to its members, writing "disciplinary records are compiled at the public expense within the metropolitan area," and therefore, there is "no reason why there should any secrecy about the records of the conduct of the discipline of attorneys." (Ex. 19, at 12–13).

> **Response**: Undisputed as to the quoted language from Exhibit 19 of the Wells Declaration, *see* ECF No. 176-19 at 12-13, but Plaintiffs do not cite to any admissible

22

**JA959**

evidence for the remainder of the statement concerning how Section 90(10) "has been continuously criticized." Thus, the statement fails to comply with Local Rule 56.1(d). This statement is also not material to the adjudication of the Fourth Claim.

60.     In 1985, a committee of the New York State's Bar Association concluded that New York's secrecy rules are "too stringent, have created undue suspicion, and have raised doubts about the integrity in the minds of the public." N.Y. State Bar Ass'n Comm. On Prof'l Discipline, *A Comprehensive Study of the State of Discipline in New York* 50 (June 1985).

> **Response**: Plaintiffs do not cite to any admissible evidence, as they have not provided a declaration from an individual with knowledge of the committee's work and the bases for its conclusions. This statement therefore fails to comply with Local Rule 56.1(d) and is also not material to the adjudication of the Fourth Claim.

61.     In 1992, a City Bar committee likewise opined that New York's disciplinary process "advances the best interests of neither the public nor the bar" because it is "too restrictive", and that "proceedings should be opened at the earliest practical point" to avoid public suspicion. Committee on Prof'l Discipline, *The Confidentiality of Discipline Proceedings*, 47 REC. ASS'N B. CITY N.Y. 48, 59 (1992).

> **Response**: Plaintiffs do not cite to any admissible evidence, as they have not provided a declaration from an individual with knowledge of the committee's work and the bases for its conclusions. This statement therefore fails to comply with Local Rule 56.1(d) and is also not material to the adjudication of the Fourth Claim.

62.     In 1995, a committee created by New York State Chief Judge Kaye "unanimously conclu[ded]" that "the confidentiality accorded attorney discipline in New York is an anachronism that burdens rather than enhances the profession." Chief Judge's

23

Comm. On the Profession and the Courts, *Final Report to the Chief Judge* 50, 51 (1995).

> **Response**: Plaintiffs do not cite to any admissible evidence, as they have not provided a declaration from an individual with knowledge of the committee's work and the bases for its conclusions. This statement therefore fails to comply with Local Rule 56.1(d) and is also not material to the adjudication of the Fourth Claim.

63.     In 1999, the Committee to Promote Public Trust and Confidence in the Legal System recommended that the Legislature "make the public aware that errant attorneys and judges are accountable and subject to sanctions" by opening the disciplinary proceedings to the public upon establishing a "prima facie" case of misconduct.  Chief Judge's Comm. To Promote Public Trust & Confidence in the Legal System, *Report to the Chief Judge and Chief Administrative Judge* 33 (May 1999).

> **Response**: Plaintiffs do not cite to any admissible evidence, as they have not provided a declaration from an individual with knowledge of the committee's work and the bases for its conclusions. This statement therefore fails to comply with Local Rule 56.1(d) and is also not material to the adjudication of the Fourth Claim.

64.     And in 2015, a committed created by Chief Judge Lippman reported that New York's process has "created an atmosphere of public suspicion and skepticism."  It recommended that the disciplinary process be made "more accessible to the public."  Chief Judge's Comm. On Statewide Att'y Discipline, *Enhancing Fairness and Consistency, Fostering Efficiency and Transparency* 12, 67 (2015) ("2015 Chief Judge Report").

> **Response**: Undisputed as to the quoted language of the 2015 Chief Judge Report. However, this statement is not material to the adjudication of the Fourth Claim.

65.    Since 1979, the American Bar Association has recommended that attorney disciplinary proceedings become public after a finding a lawyer committed misconduct. *See* ABA, MODEL RULES OF LAWYER DISCIPLINARY ENFORCEMENT R. 16A (2002), https://www.americanbar.org/groups/professional_responsibility/resources/lawyer_ethics_re gulation/model_rules_for_ lawyer_disciplinary_enforcement/rule_16/ ("Model Rule 16"); Levin, *supra*, at 5. Reflecting that advice, forty-one jurisdictions permit public access to information regarding attorney discipline, at the latest, upon a finding of probable cause. *See* 2015 Chief Judge Report, at 62 (acknowledging that "New York is one of only nine jurisdictions that do not provide public access to disciplinary records at or before a finding of probable cause").

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

66.    Prior to a finding of probable cause, the ABA recommends the proceeding is confidential within the agency, except that the pendency, subject matter, and status of an investigation may be disclosed if the proceeding is based upon allegations that "have become generally known to the public." *Id*.

**Response**: Undisputed. However, this statement is not material to the adjudication of the Fourth Claim.

67.    New York is now one of only nine jurisdictions that do not provide public access to disciplinary records at or before a finding of probable cause. *See* 2015 Chief Judge Report, at 62.

**Response**: Plaintiffs do not cite to any admissible evidence that the summary of jurisdictions in 2015 reflects the present status of "public access to disciplinary

25

**JA962**

records." Justice LaSalle has no personal knowledge of the statutes and regulations governing attorney discipline in other states and therefore can neither confirm nor deny the veracity of Plaintiffs' statement. This statement is also not material to the adjudication of the Fourth Claim.

Dated:  New York, New York
       October 6, 2023

LETITIA JAMES
Attorney General
State of New York

*Elizabeth A. Figueira*

ELIZABETH ANNE FIGUEIRA
JOYA C. SONNENFELDT
Assistant Attorneys General
28 Liberty Street, 16th Floor
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
joya.sonnenfeldt@ag.ny.gov
*Attorneys for Justice LaSalle*

**JA963**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN,<br><br>          Plaintiffs,<br><br>v.<br><br>STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity,<br><br>          Defendants. | Case No. 1:21-cv-09128 (VM)<br><br>Hon. Victor Marrero<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT LASALLE'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS** |

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Plaintiffs Civil Rights Corps ("CRC"), and Professors Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Abbe Smith, Steven Zeidman, and Justin Murray (together, the "Law Professors" and collectively, the "Plaintiffs"), by and through counsel, respectfully submit this response to Defendant LaSalle's Rule 56.1 Statement of Undisputed Facts submitted in support of their motion for summary judgment as to the Fourth Claim of their Complaint.

**JA964**

A.      **The Legislative Origins Of The Appellate Division's Control Over Licensing**

1.      In 1895, after the New York State Constitution of 1894 created those intermediate courts, the Legislature delegated to the Appellate Divisions exclusive control over the admission and discipline of attorneys.  Declaration of Joya C. Sonnenfeldt, dated October 4, 2023 ("Sonnenfeldt Decl."), ¶¶ 3, 4, Ex. A at 799-801.

        **Response:**  Undisputed.

2.      Prior to 1895, the general term of the supreme court regulated attorney admission and discipline.  Sonnenfeldt Decl., Ex. B at 28.

        **Response:**  Undisputed.

3.      In 1945, the Legislature consolidated at Section 90 of the Judiciary Law the various provisions relating to attorney admission and discipline.  Sonnenfeldt Decl., ¶¶ 6-7, Exs. C at 3-4, D at 38-39, 190-92

        **Response:**  Undisputed.

4.      Since 2009, the current Rules of Professional Conduct have been "the primary standard for measuring attorney misconduct and have been adopted by each of the Appellate Divisions."  Sonnenfeldt Decl., Ex. E at 2DDEPT000256.  These rules set standards for attorneys regarding, *inter alia*, their duty of candor; the fees they can charge for their services; communication with clients, adversaries, and third parties; confidentiality; conflicts of interest; fiduciary obligations; and recordkeeping.  *Id.* at 2DDEPT000256-65, 2DDEPT000268-82; *see* 22 N.Y.C.R.R. § 1200.

        **Response:**  Undisputed.

5.      Each of the four Appellate Divisions developed their own rules and processes for attorney discipline.  Sonnenfeldt Decl., Ex. F at 2DDEPT000169-73; *see* 22 N.Y.C.R.R. part 605 (1st Dep't); 22 N.Y.C.R.R. part 691 (2d Dep't); 22 N.Y.C.R.R. part 806.3 (3d Dep't); 22 N.Y.C.R.R. part 1020 (4th Dep't).

        **Response:**  Undisputed.  However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

6.      "In March 2015, Chief Judge Jonathan Lippman created the Commission on Statewide Attorney Discipline to conduct a comprehensive review of New York's attorney disciplinary system."  Sonnenfeldt Decl., Ex. F at 2DDEPT000164.  The "Lippman Commission" published its report in September 2015.  *Id.* at 2DDEPT000153.

        **Response:**  Undisputed.

2

**JA965**

7.      The "highest priority" recommendation of the Lippman Commission was adoption "of statewide uniform rules and procedures governing the processing of disciplinary matters at both the investigatory and adjudicatory levels, from intake through final disposition, which strike the necessary balance between facilitating prompt resolution of complaints and affording the attorney an opportunity to fairly defend the allegations." *Id.* at 2DDEPT000210; Sonnenfeldt Decl., Ex. G.

   **Response:** Disputed. This statement misstates the cited document – Report of the Commission on Statewide Attorney Discipline (the "Report"). The Report indicated that the recommendation of uniformity is "*of* the highest priority," not *the highest priority*. *See* Sonnenfeldt Decl., Ex. F at 2DDEPT000165; Sonnenfeldt Decl. Ex. E at 2DDEPT000210 (emphasis added). Likewise, Ex. G states that "the adoption of uniform rules *was among the foremost recommendations* of the final report of the Commission on Statewide Attorney Discipline . . ." Sonnenfeldt Decl., Ex G. at 2 (emphasis added). Regardless, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

8.      In 2016, the four Appellate Divisions jointly adopted the statewide Rules for Attorney Disciplinary Matters at 22 N.Y.C.R.R. part 1240 ("Statewide Rules"). Sonnenfeldt Decl., ¶ 10, Ex. G.

   **Response:** Undisputed.

9.      The Statewide Rules "harmonized" the disciplinary process by creating a "uniform approach" across the four departments. *Id.*, Ex. G.

   **Response:** Undisputed. However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

10.     After the issuance of the Statewide Rules, then-Presiding Justice Alan D. Scheinkman updated the manual that had been originally commissioned in the early 2000s by then-Presiding Justice A. Gail Prudenti to ensure coordination among the Second Department's three Committees ("Manual"), using standardized workflows, documentation, and forms. Sheridan Decl., ¶ 3; Sonnenfeldt Decl., Ex. H at 2DDEPT000004; Sonnenfeldt Decl., Ex. J at 15:16-17.

   **Response:** Undisputed.

11.     As relevant to the issues raised by the Fourth Claim, the Manual remains in effect under Justice LaSalle. Declaration of Presiding Justice Hector D. LaSalle, dated September 28, 2023 ("LaSalle Decl."), ¶ 3; *see* Declaration of Catherine A. Sheridan, dated September 27, 2023 ("Sheridan Decl."), ¶ 6; Sonnenfeldt Decl., Ex. J at 15:16-17.

   **Response:** Undisputed.

3

**JA966**

**B.    The Appellate Divisions Control Access To Information About Individual Attorney Licenses And Allows For Disclosure Upon Good Cause Shown**

12.    In 1945, the Legislature adopted the current confidentiality policy in Section 90(10).  Adopted as subdivision 8 in L.1945, c.675; renumbered subdivision 10 by L. 1946, c. 241, § 2.  Sonnenfeldt Decl., ¶ 12, Ex. I at pp. 1456-57; *see also* Pls. Ex. 19 at 4-5 of 50.

   **Response:**  Undisputed.

13.    A respondent attorney can waive confidentiality as to their own disciplinary proceedings or history.  Joseph Decl., ¶ 10; *see Matter of Capoccia*, 59 N.Y.2d 549, 554 (1983).

   **Response:**  Undisputed, but this statement is incomplete.  A respondent attorney's waiver of confidentiality does not necessarily mean the entire disciplinary proceedings or history are open to the public.  The Appellate Division may still determine that the proceedings must still be closed in whole or in part for "due cause demonstrated."  *Matter of Capoccia*, 59 N.Y.2d 549, 554 (1983).  Further, Plaintiffs note that the hyperlink contained in paragraph 10 of Mr. Joseph's declaration is not accessible.  The information contained on the purported webpage does not suggest that an attorney's request to obtain a Letter of Disciplinary History "waives" confidentiality to the attorney's disciplinary proceedings or history.  *See* Supreme Court of the State of New York, Appellate Divisions, Second Judicial Department, *Attorney Matters, Letter of Disciplinary History,* available at https://www.nycourts.gov/courts/ad2/attorneymatters_ LetterofDisciplinaryhistory.shtml#:~:text=A%20letter%20of%20disciplinary%20 history,the%20subject%20of%20that%20letter.

14.    Absent an order by the Second Department, the Chief Attorney and their staff, and Committee members lack the authority to disclose any information or records related to disciplinary investigations or proceedings, except for when Committees confer with each other in the furtherance of an investigation.  Declaration of Andrea E. Bonina, dated September 19, 2023 ("Bonina Decl."), ¶ 23; Declaration of Darrell M. Joseph, dated September 26, 2023 ("Joseph Decl."), ¶¶ 7-9, Ex. A; Declaration of Diana Maxfield Kearse, dated August 31, 2023 ("Kearse Decl."), ¶ 5; Sheridan Decl., ¶¶ 36, 40; Sonnenfeldt Decl., Ex. J at 49:20-21.

   **Response:**  Undisputed that upon an order by the Second Department, the Chief Attorney and their staff, and Committee members, have the authority to disclose any information or records related to disciplinary investigations or proceedings.  Disputed to the extent that the Joseph Declaration does not provided support for the State's claim that absent such an order, the Chief Attorney and their staff, and Committee members lack the authority to disclose any information or records related to disciplinary investigations or proceedings.

15.     The Clerk of the Court for the Second Department is only authorized to disclose by letter to an attorney their own current registration status and a list reflecting any disciplinary history or lack thereof.  Joseph Decl., ¶ 10.

    **Response:**  Undisputed.

16.     Within the Second Department, the "Attorney Matters" personnel handle all other requests for information and records regarding attorney misconduct.  Joseph Decl., ¶ 11.  If charges have been sustained and the attorney has been publicly disciplined, Attorney Matters inquires what document is being sought and then identifies any costs for production.  *Id.* After payment, Attorney Matters sends the requested document(s).  *Id.*

    **Response:**  Undisputed, but this statement is incomplete and does not accurately reflect the process in practice.  As detailed in the Wells Declaration, when Plaintiffs' counsel submitted a request for records regarding attorney misconduct, he was first directed to file a petition stating the "good cause" for disclosure of those records.  *See* Wells Decl. ¶ 27.  After Plaintiffs' counsel clarified his rights under the law, he was then provided a list of the documents available for public inspection.  *Id.* ¶ 29, Ex. 21.

17.     Applications for disclosure of materials Section 90(10) deems confidential— "Good Cause Applications"—are made to the Appellate Division and must specify the nature and scope of the inquiry or investigation for which disclosure is sought; the papers, records or documents sought to be disclosed, or the proceedings that are sought to be opened; and why any other methods for obtaining the requested information are unavailable or impractical.  Joseph Decl., ¶¶ 11-13; Sheridan Decl., ¶ 38; *see* 22 N.Y.C.R.R. § 1240.18.(d).

    **Response:**  Undisputed.  However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

18.     The Presiding Justice can require that Good Cause Applications be made upon notice to certain parties.  22 N.Y.C.R.R. § 1240.18.(d); *see* LaSalle Decl., ¶¶ 9-10.  When notice is directed, the notified parties are provided an opportunity to respond to the Good Cause Application.  Joseph Decl. ¶ 15; Kearse Decl. ¶ 8; LaSalle Decl. ¶ 10; Sheridan Decl. ¶ 39.

    **Response:**  Undisputed.  However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

19.     Good Cause Applications by members of the public—as opposed to government law enforcement or disciplinary agencies—are typically made upon notice to the respondent attorney and the relevant Committee.  Joseph Decl. ¶ 15; *see* Kearse Decl. ¶ 8; Sheridan Decl. ¶ 39.

**Response:** Undisputed. However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

C.    **Appellate Divisions Authorize Committees To Investigate Attorney Misconduct**

20.    The Presiding Justice selects and appoints Committee members for their subject matter expertise and reputations for fairness and ethics to ensure that the Committee understands the norms and expectations of law practice. Bonina Decl. ¶¶ 5, 8; LaSalle Decl. ¶ 4-5. New Committee members receive instruction on the standards governing attorney conduct and the disciplinary process including actions authorized to be taken by the Committee and matters warranting Appellate Division action. Bonina Decl. ¶ 7.

       **Response:** Undisputed.

21.    The Presiding Justice also appoints the Chief Attorney. LaSalle Decl. ¶ 4.

       **Response:** Undisputed.

22.    The Presiding Justice is not involved in investigation or disposition of matters before the Committee and does not confer with Chief Attorneys or Committee members during the investigations or about the disposition of specific allegations of misconduct. LaSalle Decl. ¶¶ 6-7.

       **Response:** Disputed as to the meaning of "involved in", since it is clear the Presiding Justice is "involved in" the investigations and dispositions of the Committee to the extent he selects and appoints Committee members, *see supra* ¶¶ 20-21, and promulgates the rules pursuant to which the Committee operates, *see supra* ¶¶ 10-11.

23.    The Clerk's Office does not process complaints submitted to the Committee and does not assign a court docket number unless and until a party files a motion, petition, or application requesting action by the Department. Joseph Decl. ¶ 6.

       **Response:** Undisputed. However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

24.    Any individual—including those without personal knowledge of or a personal connection to the misconduct alleged—can submit allegations of attorney misconduct to a Committee. Sheridan Decl. ¶ 8; *see* Sonnenfeldt Decl., Ex. H at 2DDEPT000016-17.

       **Response:** Undisputed.

25.    Pursuant to the Manual, individuals who submit allegations to a Committee about which they have no personal knowledge are not considered "complainants" as defined by the Statewide Rules. Sonnenfeldt Decl., Ex. H at 2DDEPT000016-17. Those individuals receive a form letter acknowledging their submission and

6

**JA969**

informing them that they will not receive any further information about the processing of the allegations by the Committee. Sheridan Decl. ¶ 14; Sonnenfeldt Decl., Ex. H at 2DDEPT000082; *see* Compl. Ex. 2; Declaration of Diana Maxfield Kearse, dated March 31, 2022 ("Kearse 2022 Decl." (ECF No. 83)), ¶ 4; Pls. Ex. 3.

**Response:** Undisputed to the extent the Manual provides in relevant part:

A lack of standing ***generally*** occurs in matters where the complainant has no connection to the respondent and/or the underlying matter from which the complaint evolves, and/or has no personal knowledge of the underlying facts and circumstances, and/or is simply relaying to the Committee information that the complainant learned from some other source. A classic example of the lack of standing is when the Committee receives a copy of a published newspaper or magazine article containing allegations of misconduct on the part of an attorney, sent from a person who just happened to read the article but who otherwise has absolutely no involvement in, or independent knowledge of, the underlying matter. In such circumstances it is not appropriate to open a file for investigation on the basis of the sender's submission alone or to designate the sender as the "complainant." *See* 2DDEPT000016 (emphasis added).

However, the Statewide Rules define "complainant" as "a person or entity that submits a complaint to a Committee," *see* 22 N.Y.C.C.R. § 1240.2(e), but "pursuant to Second Department policy," *see* Sheridan Decl. ¶ 14, that definition is altered, as set forth in the Manual, to generally divest those without "personal knowledge" of the allegations of complainant status and therefore deny them any further information regarding the Complaints, Sheridan Decl. ¶ 14. The Second Department's definition of "standing" outlined in the Manual is not public. *See* Wells Decl., Ex 8 (Diana Kearse Deposition Tr.) at Tr. 25:18–27:18.

26.  Complaints are typically filed by a client or former client against his, her, or their attorney and contain sensitive personal and/or attorney-client privileged information. Sheridan Decl. ¶¶ 10, 12-13; Sonnenfeldt Decl., Ex. E at 2DDEPT000286.

**Response:** Disputed to the extent the cited evidence does not characterize the information as "sensitive." Sheridan Decl. ¶¶ 10, 12-13.

27.  Websites hosted by the Appellate Divisions inform the public of the applicable confidentiality policies; encourage potential complainants to reach out to respondents to try to work out a solution outside the disciplinary process; warn individuals who have been injured by attorney misconduct of the potential need to protect their rights separate from the disciplinary process; and emphasize that the Committee cannot provide legal advice, sue an attorney on behalf of a client, or compel an attorney to return money or property. Sonnenfeldt Decl., Exs. K-N; *see* Sheridan Decl. ¶ 7.

7

**JA970**

**Response:**  Undisputed.  However, the statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

28. The Committee and any investigation conducted under its aegis does not place any restrictions on an individual's ability to discuss or publish a complaint they submit to a Committee or limit contact with a respondent attorney.  Kearse 2022 Decl. ¶ 7; Sheridan Decl. ¶ 37.

   **Response:**  Undisputed.

29. The submission of a complaint to a Committee does not bar the complainant from taking legal action to protect their rights against a respondent attorney.  Sheridan Decl. ¶ 11; *see* Bonina Decl. ¶ 24.

   **Response:**  Undisputed.  However, the statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

30. Committees are empowered to authorize "*sua sponte*" investigations where the Committee becomes aware of potential misconduct.  *Id.* at § 1240.7(a)(1); Bonina Decl. ¶ 11; Sheridan Decl. ¶ 9.

   **Response:**  Undisputed.

31. In seeking admission to the Second Department, applicants participate in an orientation program that explains the rules of professional conduct, describes the disciplinary process, and specifies that disciplinary investigations and proceedings are confidential under Section 90(10) unless or until the Appellate Division sustains charges or otherwise issues a disclosure order.  Sonnenfeldt Decl., Ex. E at 2DDEPT000290.

   **Response:**  Undisputed.

32. When the Committee receives a complaint, administrative staff assign a file number, access the respondent attorney's registration information, and ascertain any disciplinary history within the Committee.  Sheridan Decl. ¶ 16; Sonnenfeldt Decl., Ex. J at 9:2-11, 11:11-12.

   **Response:**  Undisputed.

33. Chief Attorneys and their staff conduct an initial screening of all complaints received.  Sheridan Decl. ¶¶ 15-17; Sonnenfeldt Decl., Ex. J at 9:13-14; Sonnenfeldt Decl., Ex. E at 2DDEPT000286; *see* Bonina Decl. ¶ 10.  If the threshold conditions of jurisdiction (*i.e.* allegations of misconduct against a New York attorney) and venue (*i.e.* that the current principal office of the respondent is within the geographic boundary of the Committee) are met (*see* Sonnenfeldt Decl., Ex. E at 2DDEPT000285), a staff attorney reviews the substance of the complaint and recommends to the Chief Attorney whether an investigation should be opened.  Sheridan Decl. ¶ 17; Sonnenfeldt Decl., Ex. J at 9:20-23, 17:11-15.

8

**JA971**

**Response:** Undisputed, but this statement is incomplete. In addition to screening the complaint for jurisdiction and venue, staff counsel makes a determination as to whether the complainant has standing pursuant to the Manual. *See* Wells Decl. Ex. 8 at Tr. 23:16–17; 25:7–11. To the extent staff counsel determines that the complainant lacks personal knowledge of the allegations set forth in the complaint, any subsequent investigation of the complaint will be treated as if initiated *sua sponte*. *See* Ex. H, 2DDEPT000016.

34. The Chief Attorney can decline to investigate a matter if (a) it involves a person or conduct not covered by the Statewide Rules; (b) the allegations, if true, would not constitute professional misconduct; (c) the complaint seeks a legal remedy more appropriately obtained in another forum; or (d) the allegations are intertwined with another pending legal action or proceeding. Sheridan Decl. ¶¶ 18-21; Sonnenfeldt Decl., Ex. J at 17:19-22, 20:5-10; *see* 22 N.Y.C.R.R. § 1240.7(d)(1)(i).

    **Response:** Undisputed.

35. The Chief Attorney can also refer the complaint to another forum when allegations involve fee disputes, matters suitable for mediation, and matters suitable for review by a bar association grievance committee. Sheridan Decl. ¶ 19; Sonnenfeldt Decl., Ex. E at 2DDEPT000286; *see* 22 N.Y.C.R.R. § 1240.7(d)(1)(ii). Referral to a bar association grievance committee may be appropriate for allegations of "minor" misconduct or a "civility" complaint. Sheridan Decl. ¶ 19.

    **Response:** Undisputed.

36. If the Chief Attorney opens an investigation, the complainant is notified, and the respondent is requested to respond in writing. Sheridan Decl. ¶¶ 22-23. A respondent's failure to cooperate with an investigation or proceeding can result in the Committee moving for interim suspension. Sheridan Decl. ¶¶ 24, 35; *see* 22 N.Y.C.R.R. § 1240.9. During an investigation, complainants and respondents often share private and sensitive information including about the respondent attorney's representation of a client and medical issues or family matters that may have contributed to the alleged misconduct or might mitigate the severity of discipline warranted. Sheridan Decl. ¶¶ 10, 23.

    **Response:** Undisputed. However, the statement regarding the sharing of "private and sensitive information" is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

37. The Statewide Rules authorize the Chief Attorney and staff to interview witnesses, obtain records, direct the respondent attorney to appear and/or produce records, and request issuance of subpoenas. Sheridan Decl. ¶ 25; Sonnenfeldt Decl., Ex. J at 43-44; *see* 22 N.Y.C.R.R. § 1240.7(b).

9

**JA972**

**Response:** Undisputed.

38. The Chief Attorney can request that the Clerk's Office issue a subpoena during a Committee investigation. Other than that task, and disclosure requests, *supra* ¶ 17, there is no other involvement by the Clerk's Office in Committee investigations and dispositions. Joseph Decl. ¶ 6.

    **Response:** Undisputed. However, this statement regarding "no other involvement by the Clerk's Office" is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

39. Committee investigations are not docketed with the Clerk's Office. Joseph Decl. ¶ 6.

    **Response:** Undisputed. However, this statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

40. Investigations culminate in a written report with recommendations, which staff attorneys present during Committee meetings. Sonnenfeldt Decl., Ex. E at 2DDEPT000287; Bonina Decl. ¶ 12; Sheridan Decl. ¶ 26; Sonnenfeldt Decl., Ex. J at 47-48, 50-52.

    **Response:** Undisputed, but the statement is incomplete. The report is "comprehensive" and details "the respective positions and supporting evidence of both the complainant and the respondent, the results of any further investigation, and an analysis of the issues and applicable legal authorities." Sonnenfeldt Decl., Ex. E at 2DDEPT000287. The report also "recommends the *possible dispositions* available to the Committee based on its *findings*." *Id.* The Committee then considers this report prepared by staff counsel before "render[ing] a determination" regarding the complaint based upon a majority vote. *Id.*; *see also* Wells Decl., Ex. 8 at Tr. 52:16–19.

41. These written reports remain internal to the Committee and are not shared with the respondent, complainant, or the Second Department in the event that the Committee authorizes the filing of a petition. Sheridan Decl. ¶ 26; Sonnenfeldt Decl., Ex. E at 2DDEPT000287; Sonnenfeldt Decl., Ex. J at 52:15.

    **Response:** Undisputed.

42. Once questions are answered and any additional materials the Committee may request are collected, the Committee deliberates as a body. Bonina Decl. ¶ 13; Sheridan Decl. ¶¶ 27-28; Sonnenfeldt Decl., Ex. E at 2DDEPT000287; *see* Sonnenfeldt Decl., Ex. J at 53-54.

    **Response:** Undisputed.

43. The overarching charge of the Committee is to determine whether the high standards of the profession can be maintained by privately warning or

10

admonishing a respondent attorney or whether the attorney's conduct warrants a formal proceeding for public discipline by the Appellate Division. Sonnenfeldt Decl., Ex. K at 2DDEPT000296; *id.*, Ex. L at 2DDEPT000305; *id.*, Ex. N at 2DDEPT000312; *see* Bonina Decl. ¶¶ 6-7, 16-19.

**Response:** Disputed to the extent the cited evidence does not describe the "overarching charge" of the Committee. These sources state that the clear "purpose" of the Attorney Grievance Committee is "to protect the public by ensuring that lawyers adhere to the ethical standards set forth in the Rules of Professional Conduct". Sonnenfeldt Decl., Ex. K at 2DDEPT000296296; Ex. L at 2DDEPT000305 ("[T]he purpose of the disciplinary system is to protect the public generally by enforcing the Rules of Professional Conduct, thereby helping to insure the honesty, integrity, and competence of the profession."); Ex. N at 2DDEPT000312 ("The main purpose of the Committee is to protect the public against the small minority of lawyers who do not act in an ethical manner."). Whether the nature of the alleged conduct requires public discipline is left to the discretion of the committee and is not defined or standardized by the statute or committee guidance. *See* Wells Decl. Ex. 8, at 63:10–66:14.

44. The Committee has no power under Section 90 to impose any public discipline such as suspending or disbarring an attorney. Bonina Decl. ¶ 20.

    **Response:** Undisputed.

45. The Committee can dispose of a matter by: (1) dismissing a complaint, (2) referring the matter to a suitable alternative forum, (3) issuing a Letter of Advisement to the respondent, or (4) issuing an Admonition to the respondent. Bonina Decl. ¶¶ 9, 14-19; Sheridan Decl. ¶ 30; Sonnenfeldt Decl., Ex. J at 54:4-5, 7-8; *see* 22 N.Y.C.R.R. § 1240.7(d)(2).

    **Response:** Undisputed.

**D. The Appellate Division Only Handles Certain Proceedings**

46. When the Clerk's Office receives a petition, motion, or application for Appellate Division action on an attorney's license, it assigns a docket number. Joseph Decl. ¶ 4. Under certain circumstances, a respondent attorney files a petition regarding their own license. *See id.*

    **Response:** Undisputed. However, the statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

47. Under the Statewide Rules, the Chief Attorney, when authorized by the Committee members, prosecutes formal misconduct proceedings before the Appellate Division. Bonina Decl. ¶¶ 21-22; Sheridan Decl. ¶¶ 4, 33; *see* 22 N.Y.C.R.R. §§ 1240.7(d)(2)(vi), 1240.8.

11

**JA974**

**Response:** Disputed to the extent that the Bonina Declaration and Statewide Rules do not support the statement that the Chief Attorney "prosecutes" proceedings before the Appellate Division.

48. From 1921 to 1945, the Legislature authorized the Appellate Division to designate either a local district attorney or an attorney designated by a local bar association to "prosecute" cases for the removal or suspension of attorneys. Sonnenfeldt Decl., Ex. O at 1017-18. From 1896 to 1921, the Legislature authorized the Appellate Divisions to designate local district attorneys to "prosecute" cases for suspension and removal. Sonnenfeldt Decl., Ex. B at 28.

**Response:** Undisputed as to the first sentence. However, the statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief. Disputed to the extent the cited evidence does not support the claim that "[f]rom 1896 to 1921, the Legislature authorized the Appellate Divisions to designate local district attorneys to 'prosecute' cases for suspension and removal." *See* Sonnenfeldt Decl., Ex. B at 28.

49. Formal proceedings may be initiated where, for example, there is an ongoing history of similar misconduct, there has been misappropriation of client or third-party funds or other violation of Rule 1.15 of the Rules of Professional Conduct, the respondent attorney refuses to cooperate with an investigation, or the behavior in the complaint raises a concern that the respondent is a danger to the public. Bonina Decl. ¶ 19.

**Response:** Disputed to the extent this is not an exhaustive list of occasions in which formal proceedings may be authorized. Formal disciplinary proceedings before the Appellate Division may be authorized "[w]hen the Committee finds that there is probable cause to believe that the respondent engaged in professional misconduct warranting the imposition of public discipline, and that such discipline is appropriate to protect the public, maintain the integrity and honor of the profession, and deter others from committing similar misconduct . . . ." 22 N.Y.C.R.R. § 1240.7(d)(d)(vi).

50. If a Committee authorizes a formal disciplinary proceeding under Section 1240.8, a Staff Attorney, under the supervision of the Chief Counsel, drafts, files, and serves on the respondent attorney a petition and notice of petition. Sheridan Decl. ¶ 32; *see* 22 N.Y.C.R.R. § 1240.8(a)(1).

**Response:** Undisputed.

51. The Committee is the "petitioner" in the proceeding before the Appellate Division. Sheridan Decl. ¶ 32; Sonnenfeldt Decl., Ex. E at 2DDEPT000288; *see* Jud. L. §§ 90(6), (8).

**Response:** Undisputed.

52.    Where there is evidence of a respondent attorney's failure to preserve client or third-party funds, the Manual requires referral to the Appellate Division even where mitigating circumstances may have been raised. Joseph Decl. ¶ 5; Sheridan Decl. ¶ 29; *see* Bonina Decl. ¶ 19. The Committee may either commence a formal disciplinary proceeding under Section 1240.8 or submit a request to the Appellate Division for a court-approved Committee disposition. Joseph Decl. ¶ 5; Sheridan Decl. ¶ 29.

**Response:** Disputed to the extent that the cited evidence in the Joseph Decl. at ¶ 5 does not support this statement. That paragraph only states that "the Clerk's Office also reviews and issues a docket number to Committee requests for Committee disposition of matters involving misuse of client funds." Joseph Decl. ¶ 5. To the extent the statement is undisputed, it is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

53.    The Appellate Division also adjudicates Good Cause Applications under Section 1240.18(d). Joseph Decl. ¶¶12-15; Sheridan Decl. ¶ 39; *see* 22 N.Y.C.R.R. § 1240.18(d).

**Response:** Undisputed.

### E.    Participation Rights and Obligations During the Disciplinary Process

54.    A complainant's role in the investigation and prosecution of alleged misconduct is at the discretion of the Committee, whose staff may request them to provide a written reply to a respondent attorney's written response to a complaint or to call the complainant as a witness in the Committee's investigation or during subsequent formal proceedings. *See* Sheridan Decl. ¶ 25; Sonnenfeldt Decl., Ex. J at 78-79; *see id.* at 31-32, 43, 60-61, 68, 74.

**Response:** Undisputed.

55.    "Should the complainant request that the complaint be withdrawn or otherwise refuse to cooperate further, it does not constitute a bar to further investigation or disposition of the complaint." Sonnenfeldt Decl., Ex. E at 2DDEPT000286.

**Response:** Undisputed.

56.    A complainant can request reconsideration by the Committee Chair of a decision by the Chief Attorney dismissing or declining to investigate a complaint or by the Committee dismissing a complaint. *Id.* at 2DDEPT000288; *see* 22 N.Y.C.R.R. § 1240.7(e)(3).

**Response:** Undisputed.

13

**JA976**

57.  Respondent attorneys have a duty to promptly and truthfully respond to Committee requests and disciplinary proceedings.  Sonnenfeldt Decl., Ex. E at 2DDEPT000287; *see* Bonina Decl. ¶ 19; Sheridan Decl. ¶ 24.

**Response:**  Undisputed.

58.  When a respondent attorney receives a Letter of Advisement or Admonition, the complainant is notified of the fact of the Committee's disposition but does not receive the Letter of Advisement or Admonition that is provided to the respondent attorney containing the details of the investigation and the Committee's determinations.  Sheridan Decl. ¶¶ 30-31; Sonnenfeldt Decl., Ex. J at 55:24-25, 67:10, 68:9, 73:18-25, 74:4-10.  Letters of Advisement and Admonition often contain otherwise privileged or sensitive information about the attorney-client relationship and the respondent attorney.  Kearse Decl. ¶ 7; Sheridan Decl. ¶ 30.

**Response:**  Undisputed.

59.  If a respondent attorney seeks review or reconsideration of a Letter of Advisement or Admonition, the respondent's application is not made upon notice to the complainant, nor is the complainant permitted to be heard.  Sonnenfeldt Decl., Ex. J at 60, 67; *see* 1240.7(e) (1)-(2) (describing respondent's rights of review which must be made upon notice to the Committee without mention of the complainant).

**Response:**  Disputed to the extent it implies that the complainant receives no notice of a respondent's application for review.  "As may be permitted by law, the respondent and the complainant shall be provided with a brief description of the basis of disposition of any review sought or objection submitted pursuant to this section."  22 N.Y.C.C.R. § 1240.7(e)(4).

**F.    Plaintiffs Never Requested That The Second Department Disclose Records Or Proceedings Related To the Prosecutor Complaints**

60.  On June 11, 2021, Ms. Kearse acknowledged receipt of the Prosecutor Complaints and noted that any resulting investigations would "remain confidential pursuant to New York State Judiciary Law § 90."  Compl. Ex. 2 ("Standing Policy Letter"); *see* Kearse Decl. ¶ 4.  The Standing Policy Letter noted that where allegations of misconduct are based on public sources, any investigation thereof is treated as if the Committee initiated it *sua sponte*.  Compl. Ex. 2.

**Response:**  Undisputed.

61.  On June 22, 2021, Gregory Diskant wrote to Ms. Kearse.  That letter did not request the Committee disclose any confidential records about the respondent attorneys identified in the Prosecutor Complaints.  Compl. Ex. 3 at 5, 6; *see* Kearse Decl. ¶ 4.

14

**JA977**

**Response:** Disputed. Mr. Diskant's June 22, 2021 letter was not sent to Ms. Kearse; the letter was sent to the Attorney Grievance Committee for 9th Judicial District. Compl. Ex. 3, at 1. Ms. Kearse is the Chief Counsel for the Second, Eleventh, and Thirteenth Judicial Districts. Kearse Decl. ¶ 1. Undisputed that the letter does not mention disclosure of confidential records, because the letter dealt only with the legal action threatened by the Corporation Council of the City of New York. Compl. Ex. 3.

62. On June 30, 2021, Mr. Diskant wrote to Ms. Kearse. Compl. Ex. 6; *see* Kearse Decl. ¶ 4. That letter did not request any confidential records or seek any information about Good Cause Applications. *See* Compl. Ex. 6.

      **Response:** Undisputed.

63. On July 26, 2021, Ms. Kearse informed Mr. Diskant that "all complaints filed with this Committee, whether opened *sua sponte* or not, are thoroughly and carefully evaluated on their own merit." Compl. Ex. 7; *see* Kearse Decl. ¶ 4.

      **Response:** Undisputed.

64. At no point have Plaintiffs filed a Good Cause Application relating to the Prosecutor Complaints with the Second Department. Joseph Decl. ¶ 16; Kearse Decl. ¶ 9; LaSalle Decl. ¶ 11.

      **Response:** Undisputed. However, the statement is not material to the adjudication of Plaintiffs' Fourth Claim for relief.

65. In or around May 2023, Plaintiffs submitted a written request to the Second Department to access records related to the suspension of former prosecutor Glen Kurtzrock. Joseph Decl. ¶ 17; Declaration of Andrew H. Wells, Jr., ECF No. 176-21.

      **Response:** Undisputed.

66. In 2022 and 2023, Plaintiffs filed approximately thirty additional grievance complaints alleging misconduct by current and former New York prosecutors. *See* https://accountabilityny.org/.

      **Response:** Undisputed.

15

Dated:  November 17, 2023
        New York, New York

Respectfully submitted,


/s/ *Gregory L. Diskant*
Gregory L. Diskant
Elisabeth Shane
Shelley Attadgie
Andrew Wells
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel:212-336-2000
Fax:212-335-2222
gldiskant@pbwt.com
eshane@pbwt.com
sattadgie@pbwt.com
awells@pbwt.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN, | Case No. 1:21-cv-09128 (VM) |
| Plaintiffs, | Hon. Victor Marrero |
| v. | **ORAL ARGUMENT REQUESTED** |
| STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity, | |
| Defendants. | |

**DECLARATION OF SHELLEY R. ATTADGIE IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**ON THE FOURTH CLAIM FOR RELIEF**

I, Shelley R. Attadgie, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I am a Litigation Associate at Patterson Belknap Webb & Tyler LLP ("Patterson"), attorneys for Plaintiffs Civil Rights Corps ("CRC"), and Professors Cynthia Godsoe, Nicole Smith Futrell, Daniel S. Medwed, Abbe Smith, Steven Zeidman, and Justin Murray (together, the "Law Professors" and collectively, the "Plaintiffs") in the above-captioned action. I submit this Declaration in further support of Plaintiffs' Motion for Summary Judgment on the Fourth Claim for Relief.

**JA980**

Case: 24-2251, 12/04/2024, DktEntry: 24.1, Page 141 of 154

Case 1:21-cv-09128-VM-VF    Document 204    Filed 11/17/23    Page 2 of 2

2.      Attached as **Exhibit 1** is a true, complete and correct copy of my email communications between March 21, 2023 through March 23, 2023 with Joya Sonnenfeldt, Assistant Attorney General of New York and counsel to Defendant LaSalle.

3.      For additional context, these emails were exchanged following a telephonic conference with Magistrate Judge Figueredo on March 21, 2023, during which the parties discussed the scope and timing of any remaining discovery prior to the filing of a renewed request for summary judgment.

4.      Attached as **Exhibit 2** is a true, complete and correct copy of an email sent by Plaintiffs to the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts.

5.      Attached as **Exhibit 3** is a true and correct excerpt from the Grievance Committee Manual and Forms for the Second Department, Volume Four, revised as of April 2019.


Dated:  November 17, 2023
        New York, NY


                                        /s/  *Shelley R. Attadgie*
                                        Shelley R. Attadgie

2

# Exhibit 1

| From: | Sonnenfeldt, Joya |
|---|---|
| Sent: | Thursday, March 23, 2023 2:39 PM |
| To: | Attadgie, Shelley (x2733); Eichenholtz, Eric (Law); Figueira, Elizabeth; Krista Friedrich; Rachel Rodriguez; Mark Elliott |
| Cc: | Shane, Beth (x2659); Diskant, Gregory L. (x2710); Wells, Andrew (x2674) |
| Subject: | RE: CRC v. Cushman -- Proposed Order to Judge Figueredo |
| Attachments: | Proposed Discovery Order for MJ Figueredo.OAG tracked edits.docx Proposed Discovery Order for MJ Figueredo.OAG clean.docx |

***Caution: External Email!***

Counsel,

Attached to this email is a clean version of the proposed order for Magistrate Figueredo reflecting State Defendants' proposed edits as well as a version with tracked changes on the version you provided on Tuesday evening. The non-typographical edits include:

- In addition to dismissing Claims I, II, and V as to all State Defendants, State Defendants propose that Plaintiffs dismiss all claims against Andrea Bonina and Diana Kearse in their individual and official capacities, fully dropping them from the lawsuit. ==The relief Plaintiffs seek in Claim IV is the disclosure of information or records within the Grievance Committee, which is controlled by the Second Department. Justice LaSalle who is sued in his official capacity on behalf of the Second Department is the only defendant necessary to defend against Claim IV and, if Plaintiffs prevail, with control over the records and information Plaintiffs seek==. Dismissing Kearse and Bonina would further streamline this action by obviating the need for these additional defendants to file their own motions or briefs.

- Removal of the word "partial" from any discussion of anticipated summary judgment motion(s) since, with Claims I, II, and V dismissed, any summary judgment motion would be on the sole remaining claim.

- For simplicity, a date certain for the close of discovery – May 22, 2023 – rather than a number of days for the discovery period.

- Clarification that State Defendants will produce records related to "attorney grievance committee procedures." State Defendants will produce any such documents on or before April 24, 2023, which is approximately 30 days into the 60-day discovery period.

- The language regarding disclosure of declarants is adjusted to refer to any declarant Plaintiffs or State Defendants intend to rely on in support of or opposition to any summary judgment motion and that any disclosed declarant can be deposed but that such deposition would be limited to attorney grievance committee procedures, including those

**JA983**

relevant to supporting or opposing any motion for summary judgment on Count IV. While Plaintiffs have represented that they will not be submitting any declarations in support of their motion, we believe this phrasing would better accommodate any possible change to that position that Plaintiffs may have.

- Since only Judge Marrero can grant leave to file summary judgment motions and set relevant briefing schedules, the proposed order concludes with a date certain deadline of May 26, 2023 for a joint update to Judge Marrero renewing Plaintiffs' request to file a summary judgment motion. This preserves flexibility in the case of earlier conclusion of discovery. State Defendants will not oppose Plaintiffs' post-discovery request to file a summary judgment motion and reserve the right to request permission to cross-move for summary judgment at the conclusion of discovery.

Sincerely,

**Joya Sonnenfeldt**
*Assistant Attorney General*
New York State Office of the Attorney General
Litigation Bureau
28 Liberty Street
New York, New York 10005
(212) 416-8184
Joya.Sonnenfeldt@ag.ny.gov

---

**From:** Attadgie, Shelley (x2733) <sattadgie@pbwt.com>
**Sent:** Tuesday, March 21, 2023 5:51 PM
**To:** Eichenholtz, Eric (Law) <eeichenh@law.nyc.gov>; Figueira, Elizabeth <Elizabeth.Figueira@ag.ny.gov>; Sonnenfeldt, Joya <Joya.Sonnenfeldt@ag.ny.gov>; Krista Friedrich <kfriedri@law.nyc.gov>; Rachel Rodriguez <rrodriguez@ekljlaw.com>; Mark Elliott <melliott@ekljlaw.com>
**Cc:** Shane, Beth (x2659) <eshane@pbwt.com>; Diskant, Gregory L. (x2710) <gldiskant@pbwt.com>; Wells, Andrew (x2674) <awells@pbwt.com>
**Subject:** CRC v. Cushman -- Proposed Order to Judge Figueredo

[EXTERNAL]

Counsel,

Please see a draft order for Judge Figueredo regarding today's conference and the discovery to be completed in the next 60 days. We would appreciate any comments on this by early tomorrow afternoon, so that we can file before presenting our letter to Judge Marrero.

On that note, Plaintiffs will draft the short letter to Judge Marrero, as requested in his Order. We will plan to send it to Defendants no later than Thursday at noon for your comments.

**JA984**

Thank you,

**Shelley Attadgie**
She | Her | Hers
<u>Associate</u>

Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

T 212.336.2733
**sattadgie@pbwt.com**

---

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to receiving email messages of this kind.

---

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

Case 1:21-cv-09128-VM-VF    Document 204-2    Filed 11/17/23    Page 1 of 2

# **Exhibit 2**

JA986

October 19, 2022

Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts
Renaissance Plaza
335 Adams Street, Suite 2400
Brooklyn, NY 11201-3745
(718) 923-6300
Email: ad2-grv2@nycourts.gov (*Sent by email only*)

To Whom It May Concern,

We are writing to request an update about each grievance that we filed, including whether each grievance is being investigated, or if there is a resolution, the nature of that resolution. We do not currently know what, if anything, has happened with any of them, as you have given us no information whatsoever. As it stands, we do not even know if the Grievance Committee has chosen to investigate any or all of the grievances or what, if any, objections were raised by the named attorney.

Since we are complainants ("a person or entity that submits a complaint to a Committee," 22 N.Y.C.R.R. § 1240.2(e)), we are requesting, and are entitled to receive, notification of the outcome of the complaint, pursuant to 22 N.Y.C.R.R.§ 1240.7(d). We would also need such information in order to determine whether to exercise our right to request reconsideration from the Chair (22N.Y.C.R.R.§ 1240.7(e)).

Thank you for your time and consideration in this matter.

Sincerely,

Cynthia Godsoe
Professor of Law
Brooklyn Law School

Nicole Smith Futrell
Associate Professor of Law
CUNY School of Law

Steven Zeidman
Professor of Law
CUNY School of Law

Daniel S. Medwed
University Distinguished Professor of
Law and Criminal Justice
Northeastern University

Abbe Smith
Scott K. Ginsburg Professor of Law
Director, Criminal Defense & Prisoner Advocacy Clin
Co-Director, E. Barrett Prettyman Fellowship Program
Georgetown University Law Center

Justin Murray
Associate Professor of Law
New York Law School

**JA987**

Case 1:21-cv-09128-VM-VF    Document 204-3    Filed 11/17/23    Page 1 of 4

# Exhibit 3

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

## HON. ALAN D. SCHEINKMAN, PRESIDING JUSTICE



## GRIEVANCE COMMITTEE MANUAL & FORMS

### VOLUME FOUR

### RECORDS MANAGEMENT & STATISTICS

Revised April, 2019

CONFIDENTIAL

2DDEPT000857

## VOLUME FOUR: RECORDS MANAGEMENT & STATISTICS

### I.    REQUIRED RECORD RETENTION AND DISPOSITION SCHEDULES

*A. Required Record Retention*

The Unified Court System (UCS) has established formal Records Retention and Disposition Schedules mandating record keeping requirements for all courts and court agencies, including the attorney disciplinary committees.  In addition to requirements specific to the management of case files, there are also schedules addressed to fiscal, personnel, and other general administrative matters. The complete set of current schedules, and supporting information, may be accessed through the Records Management link on the UCS website.

A copy of the current official schedule for the attorney disciplinary committees, specific to the handling and disposition of grievance matters, is attached hereto in **Appendix 1**.

*B. Destruction of Records*

All records are eligible to be destroyed after the applicable retention period; however, no such record may be destroyed without prior approval of both the Office of Court Administration (OCA) and the Appellate Division.  Pursuant to the Rules of the Chief Administrative Judge, a "Court Records Disposition Request" (available on the UCS website) must be submitted to and be approved by OCA prior to the destruction or other disposition of any UCS record, including records that have been micro-photographed or are in electronic format.  Similarly, the Appellate Division requires the submission and approval of a "Records Disposition Request" before the destruction of records.  The Court mandates that all agencies perform an annual review and purging of all records whose time retention has elapsed.  It is the current practice of the Court to send the Committees a yearly reminder of this mandate, together with forms  and links to record management information.  The Committees are encouraged to contact the OCA Office of Records Management and/or the business accounts office of the Court for guidance and assistance in regard to record management issues.

### II.    TRACKING COMPLAINTS AGAINST ATTORNEYS

The Committees use both written and electronic record keeping systems to track complaints against attorneys.  A written ledger or docket book is used in which an entry is made for each complaint, providing the name of the respondent, source of the complaint; the date of receipt and closing, as well as the disposition by the Committee.

The electronic records of the Committee are maintained in a computerized database. Information is stored through the use of one of three uniform data entry cards separately categorized for (1) new matters, (2) motions, or (3) disciplinary proceedings ("dp").  All cards contain a number of fields for the insertion of information that is either hand-typed or selected from a drop-down

-1-

CONFIDENTIAL                                                                              2DDEPT000859

**JA990**

menu. A detailed explanation of the information to be inserted or selected on each of the database cards is provided in **Appendix 2**. Upon receipt of a new matter, staff personnel are required to make appropriate entries onto the data card for new matters including the identifying information of the complainant and the respondent, their counsel, if any, and other information that tracks the processing of the matter as it unfolds. Similarly, a motion or dp card is generated when proceedings are initiated before the Court. At the time a matter becomes final, Staff Counsel must ensure that closing letters, if necessary, are issued, and the file is properly closed out for storage purposes. In addition, all appropriate entries must be made to the corresponding database cards including completion of the fields recording (1) the disposition of the matter, (2) the area of the law involved, (3) the conduct code, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

## III.    STATISTICAL REPORTING

In addition to serving as a computerized registry of the complaints processed by the Committee, the database system also gives the Committees the ability to generate the information and reports needed for statistical reporting, discussed below.

### A. UCS-176 Form

Pursuant to the Rules of the Chief Administrator, the Committees are required to submit a report of their caseload activity with OCA. Form UCS-176 (formerly UCS-145) is the current form used for this purpose, and which is filed on a quarterly and annual basis with OCA and the Court. A copy of the UCS-176, as uniformly used in the Second Department, together with guidelines for its completion, is contained in **Appendix 3**.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The Second Department also maintains and compiles statistics on disciplinary matters ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ These reports are currently facilitated annually, through the Executive Director for Attorney Matters in cooperation with the Committees. Publication of these statistics remains restricted at this time, subject to the approval of the Presiding Justice.

## IV.    ATTORNEY SOLICITATION FILINGS

Pursuant to Disciplinary Rule 7.3, the Committee is the repository for the filing of attorney advertising solicitations (see full discussion in Volume One, Part Two, Section I "Inquiries"). These filings should be recorded on the Committee's data entry card as follows:

- Make an entry in the "File No." field using an "I" file or other appropriate identifier to reflect the classification as an "inquiry" as opposed to a "complaint";

-2-

CONFIDENTIAL    2DDEPT000860

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| CIVIL RIGHTS CORPS, CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, AND STEVEN ZEIDMAN,<br><br>          Plaintiffs,<br><br>v.<br><br>STEVEN STEIN CUSHMAN, Corporation Counsel of the City of New York, in his official capacity; GEORGIA PESTANA, Former Corporation Counsel of the City of New York, in her personal capacity; MELINDA KATZ, the District Attorney for Queens County, in her official and personal capacity; and HECTOR D. LASALLE, Presiding Justice of the Second Judicial Department of the Appellate Division of the Supreme Court of the State of New York, in his official capacity,<br><br>          Defendants. | No. 21-CV-9128 (VM) (VF)<br><br>Hon. Victor Marrero<br>Hon. Valerie Figueredo<br><br><br>**STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii)** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __4/9/2024__

---

**STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(ii)**

IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that upon reaching a settlement agreement, all claims in the above-captioned action are voluntarily dismissed, with prejudice, against the City Defendants (Steven Stein Cushman, Georgia Pestana, and Melinda Katz) pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii).

**JA992**

*Attorney for the Plaintiffs*

By:

Gregory L. Diskant

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
gldiskant@pbwt.com

Dated: New York, NY
        April 4, 2024

*Counsel for Steven Stein Cushman, Georgia Pestana, and Melinda Katz*

By:

Eric Eichenholtz
Krista Friedrich

ASSISTANT CORPORATION COUNSEL
100 Church Street, Room 6-103
New York, New York 10007
Telephone: (212) 356-2430
eeichenh@law.nyc.gov
kfriedri@law.nyc.gov

Dated: New York, NY
        April 8, 2024

*Attorney for Justice Hector D. LaSalle*

LETITIA JAMES
Attorney General
State of New York

By:

Joya Sonnenfeldt
Elizabeth Anne Figueira

ASSISTANT ATTORNEYS GENERAL
28 Liberty Street, 16th Floor
New York, New York 10005
Telephone: (212) 416-8528/8184
elizabeth.figueira@ag.ny.gov
joya.sonnenfeldt@ag.ny.gov

Dated: New York, NY
        April 4, 2024

SO ORDERED.

4/9/2024
DATE

VICTOR MARRERO, U.S.D.J.

2

**JA993**

Case 1:21-cv-09128-VM-VF    Document 218    Filed 08/21/24    Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL RIGHTS CORPS, et al.,

                Plaintiffs,

    v.

STEVEN STEIN CUSHMAN,
Corporation Counsel of the City of New York,
et al.,

                Defendants.

No. 21-cv-9128 (VM) (VF)

**NOTICE OF APPEAL**

To the Clerk of the Court and all parties of record:

Notice is hereby given that Defendant Hector D. LaSalle, Presiding Justice of the Second Judicial Department of the Appellate Division of the New York Supreme Court, hereby appeals to the United States Court of Appeals for the Second Circuit from the judgment dated and filed July 22, 2024 (ECF No. 210), and any order that has merged into that judgment.

Dated:  New York, New York
        August 21, 2024

LETITIA JAMES
Attorney General
State of New York

      /s/ *Elizabeth Anne Figueira*

ELIZABETH ANNE FIGUEIRA
JOYA C. SONNENFELDT
Assistant Attorneys General
28 Liberty Street, 16th Floor
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
joya.sonnenfeldt@ag.ny.gov
*Attorneys for Justice LaSalle*

**JA994**