# 24-2251

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



CIVIL RIGHTS CORPS., CYNTHIA GODSOE, NICOLE SMITH FUTRELL, DANIEL S. MEDWED, JUSTIN MURRAY, ABBE SMITH, STEVEN ZEIDMAN,

*Plaintiffs-Appellees,*

*v.*

HECTOR D. LASALLE, IN HIS OFFICIAL CAPACITY PRESIDING JUSTICE OF THE SECOND JUDICIAL DEPARTMENT OF THE APPELLATE DIVISION OF THE SUPREME COURT OF THE STATE OF NEW YORK,

*Defendant-Appellant,*

*(Caption Continued on the Reverse)*

―――――――――

*On Appeal from the United States District Court for the Southern District of New York*

## BRIEF OF *AMICUS CURIAE*
## NEW YORK STATE BAR ASSOCIATION

Domenick Napoletano
Counsel of Record
President
*New York State Bar Association*
One Elk Street
Albany, New York 12207
518-463-3200

Rolando T. Acosta
Dante W. Apuzzo
Catherine Perez
PILLSBURY WINTHROP SHAW PITTMAN, LLP
*Attorneys for* Amicus Curiae
 *New York State Bar Association*
31 West 52nd Street
New York, New York 10019
212-858-1000



GEORGIA PESTANA, PERSONAL CAPACITY, STEVEN STEIN CUSHMAN, IN HIS OFFICIAL
CAPACITY CORPORATION COUNSEL OF THE CITY OF NEW YORK, MELINDA KATZ,
PERSONAL CAPACITY AND IN HER OFFICIAL CAPACITY THE DISTRICT ATTORNEY OF
QUEENS COUNTY, ANDREA E. BONINA, PERSONAL CAPACITY AND IN HER OFFICIAL
CAPACITY CHAIR OF STATE OF NEW YORK GRIEVANCE COMMITTEE FOR THE SECOND,
ELEVENTH AND THIRTEENTH JUDICIAL DISTRICTS, DIANA MAXFIELD KEARSE, PERSONAL
CAPACITY AND IN HER OFFICIAL CAPACITY CHIEF COUNSEL OF THE STATE OF NEW YORK
GREIVANCE COMMITTEE FOR THE SECOND, ELEVENTH AND THIRTEENTH JUDICIAL
DISTRICT,

*Defendants.*

## DISCLOSURE STATEMENT

*Amicus Curiae* – The New York State Bar Association – is a registered New York

not-for-profit corporation with tax exempt status under I.R.C. §501(c)(6).  It has no

parents, subsidiaries, or affiliates.

*/s/ Rolando T. Acosta*
Rolando T. Acosta
Dante W. Apuzzo
Catherine Perez
Pillsbury Winthrop Shaw
Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Phone:212.858.1000
Fax:212.858.1500
rolando.acosta@pillsburylaw.com
dante.apuzzo@pillsburylaw.com
catherine.perez@pillsburylaw.com

*Attorneys for Amicus Curiae*
*New York State Bar Association*

Domenick Napoletano
Counsel of Record
President
*New York State Bar Association*
One Elk Street
Albany, New York 12207
(518) 463-3200
domenick@napoletanolaw.com

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ..................................................................... i

STATEMENT OF INTEREST ...................................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT .............................................................................................5

I.    Experience and Logic Do Not Support a Qualified First Amendment Right of Public Access to New York Attorney Discipline Records and Proceedings .......................................................................................5

    A.    Historically, New York Attorney Discipline Proceedings Have Been Confidential ...........................................................................6

    B.    Logic Does Not Warrant Public Access to New York Attorney Discipline Documents and Proceedings.................................9

II.    Qualified Public Access to Attorney Disciplinary Records and Proceedings Would Cause Irreparable Harm to Attorneys, to the Disciplinary Process, and to the Public .............................................................................11

    A.    Reputational Harm Will Result From Unsubstantiated Complaints....13

    B.    Harm to the Attorney Discipline Investigatory Process and the Public Interest ...............................................................................18

    C.    Harm to the Appellate Division's Ability to Admonish Privately......22

III.    Conclusion .......................................................................................24

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Anonymous Nos. 6 & 7 v. Baker,*
  360 U.S. 287 (1959) ................................................................6

*In re Capoccia,*
  59 N.Y.2d 549 (1983) ...........................................................19

*In re Doe v. Axelrod,*
  123 A.D.2d 21 (1st Dep't 1986), *rev'd on other grounds* 71 N.Y.2d 484 (1988)
  ................................................................................................19

*Doe v. Office of Prof'l Med. Conduct of N.Y.S.,*
  81 N.Y.2d 1050 (1993) ....................................................19, 21

*Goldfarb v. Va. State Bar,*
  421 U.S. 773 (1975) ..............................................................23

*J.P. v. Chassin,*
  189 A.D.2d 137 (4th Dep't 1993), *aff'd,* 82 N.Y.2d 694 (1993) ......................21

*In re Johnson Newspaper Corp. v. Melino,*
  77 N.Y.2d 1 (1990) .........................................................19, 20

*People ex rel. Karlin v. Culkin,*
  248 N.Y. 465 (1928) ...........................................................6, 16

*In re Levy,*
  37 N.Y.2d 279 (1975). ...........................................................12

*N.Y. C.L. Union v. N.Y.C. Transit Auth.,*
  684 F.3d 286 (2d Cir. 2012) ...................................................5

*In re Stern v. Morgenthau,*
  62 N.Y.2d 331 (1984) ............................................................19

*In re Tuck,*
  180 A.D. 924 (1st Dep't 1917) ..............................................6

Statutes and Codes

Iowa Code
    Section 34.4................................................................................9

New York Judiciary Law
    Section 45(1)............................................................................21
    Section 90............................................................................3, 11
    Section 90(10)....................................................................*passim*

New York Public Health Law
    Section 230..............................................................................21

Rules and Regulations

Alabama Rules of Disciplinary Procedure
    Rule 30 ....................................................................................9

Delaware Lawyers' Rules of Disciplinary Procedure
    Rule 13 ....................................................................................9

New York Code, Rules and Regulations
    Title 22, Section 1240.4...........................................................3
    Title 22, Section 1240.5...........................................................3
    Title 22, Section 1240.7(b) ....................................................14
    Title 22, Section 1240.7(d)(2) ...............................................14
    Title 22, Section 1240.7(d)(2)(iv)-(v)...................................13
    Title 22, Sections 1240.7-1240.8 ..........................................13
    Title 22, Section 1240.8(b)(2) ...............................................13

Other Authorities

2022 Annual Report, Attorney Grievance Committee for the First Jud. Dep't
    (2022), https://www.nycourts.gov/courts/ad1/Committees&Programs/DDC/AnnualReport2022.pdf. ......................................................16

2023 Annual Report, Attorney Grievance Committee for the First Jud. Dep't
    (2023), https://www.nycourts.gov/courts/AD1/Committees&Programs/DDC/AnnualReport2023.pdf ...........................................................16

American Bar Association, 2018 Survey on Lawyer Discipline Sys. 17-20 (July 2020), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/2018sold-results.pdf................................22

American Bar Association, 2021 Survey on Lawyer Discipline Sys. 20-23 (Nov. 2023), https://www.americanbar.org/content/dam/aba/administrative/profession al_responsibility/sold-survey/2021/2021-sold-report-final.pdf; .......................22

American Bar Association, Special Committee on Evaluation of Disciplinary Enforcement, Problems & Recommendations in Disciplinary Enforcement 138 (1970)...................................................................................................................8

Leslie C. Levin, *The Case for Less Secrecy in Law. Discipline*, 20 Geo. J. Legal Ethics 1, 21 (2007), https://heinonline.org/HOL/P?h=hein.journals/geojlege20&i=13 ..................8, 9

Michael S. McGinniss, *Sending the Message: Using Tech. to Support Jud. Reporting of Law. Misconduct to State Disciplinary Agencies*, 2013 J. Pro. Law. 37, 81 (2013), https://www.americanbar.org/content/dam/aba/administrative/professional_resp onsibility/jpl_2013_02mcginniss.pdf ...................................................................9

Minutes of the New York State Bar Association House of Delegates (June 27, 1992), at 8, https://nysba.org/app/uploads/2022/02/June-1992-NYSBA-HOD-Minutes.pdf ...........................................................................................................7

New York State Bar Association Committee on Professional Discipline, A Comprehensive Study of the State of Discipline in New York State. (June 1985), https://nysba.org/committees/committee-on-professional-discipline/ ......7

New York State Bar Association Committee on Professional Discipline, https://nysba.org/committees/committee-on-professional-discipline/?srsltid=AfmBOooiJ_JYu-Wi-dEFKeRfqi3jy8aN3HFg3p8LbJJWtai_tc5ITwR8 (last visited Mar. 4, 2025)...15

New York State Bar Association's Preamble to New York Rules of Professional Conduct (May 2022), https://nysba.org/app/uploads/2022/05/Rules-of-Professional-Conduct-as-of-May-2022.pdf ...............................................................................................................12

New York State Commission on Statewide Attorney Discipline, *Enhancing Fairness & Consistency Fostering Efficiency & Transparency* (Sept. 2015) at 53, https://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf.........................................................................15

## STATEMENT OF INTEREST

The New York State Bar Association ("NYSBA"), as *amicus curiae*, respectfully submits this brief in this appeal from the judgment of the United States District Court for the Southern District of New York.[1] NYSBA has been the voice of the legal profession in New York State for almost 150 years and is the largest voluntary state bar association in the United States, with approximately 55,000 members in all fifty states and in over 100 countries around the world.

NYSBA's mission includes shaping the development of law and facilitating the administration of justice. Among its many roles, NYSBA is committed to developing forward-looking policies relevant to the profession; in that role, NYSBA also takes positions in litigation concerning matters of interest to its members and the legal profession.

The instant matter implicates issues of critical importance to NYSBA. NYSBA also has a longstanding commitment to upholding due process in attorney disciplinary proceedings and ensuring that any reforms to the legal system are consistent with constitutional protections, the rule of law, and the public's interest in a fair and effective disciplinary process. This case concerns the confidentiality of attorney grievance proceedings under New York Judiciary § 90(10), a statute that

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No one other than amicus curiae, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

has long protected attorneys, complainants, and the administration of justice from premature disclosure of unsubstantiated allegations. The district court's decision to mandate broad public access to attorney grievance proceedings threatens to undermine the safeguards critical to protecting attorneys from reputational harm, maintaining the integrity of ongoing investigations, and ensuring that complainants – particularly vulnerable individuals – can report misconduct without fear of retaliation.

NYSBA's interest in this case does not align with any party's specific position, but rather with ensuring that the correct judicial interpretation of New York Judiciary Law § 90(10) preserves the fundamental due process rights of attorneys while balancing the need for transparency in a manner that does not erode confidence in the legal profession. As an association uniquely positioned to assess the implications of this decision on the legal community, clients, and public trust in the profession, NYSBA submits this brief to emphasize the broader consequences of dismantling confidentiality in disciplinary proceedings and to advocate for a balanced approach that respects both transparency and the due process rights of attorneys.

## SUMMARY OF ARGUMENT

More than 120 years ago, New York's Legislature assigned to the Appellate Division of the Supreme Court of New York authority for the licensing, oversight,

and discipline of New York attorneys.[2] In 1945, the Legislature codified that authority under § 90 of the Judiciary Law. For the past 80 years, each of the four Departments of the Appellate Division, as well as the attorneys they oversee, have operated under Judiciary Law § 90's statutory scheme.

During that time, the Legislature has attached a presumptive rule of confidentiality to attorney disciplinary matters. Specifically, Judiciary Law § 90(10) requires that attorney discipline matters remain confidential unless the Appellate Division sustains the charges and imposes public discipline or authorizes disclosure for good cause. This long-standing policy of confidentiality for disciplinary proceedings and documents, rooted in the history of New York's bar, is entirely logical. Among other things, it limits the reputational harm to attorneys subjected to unfounded complaints, promotes trust in the legal profession, encourages the participation of witnesses, and prevents the disclosure of privileged and sensitive personal information.

However, in its July 22, 2024 order and Judgment, the district court interfered with the scheme of Judiciary Law § 90, effectively upending the Appellate Division's oversight of attorney discipline in New York and disregarding New

---

[2] Created by the New York State Constitution of 1896, the four regional departments of the Appellate Division are the intermediate appellate courts in the State. Under the current Statewide Rules, each department must appoint at least one Attorney Grievance Committee. *See* 22 N.Y.C.R.R. § 1240.4. Grievance Committee members are volunteer attorneys and non-attorneys appointed by the Presiding Justice of each department. *See* 22 N.Y.C.R.R. § 1240.5.

York's interest in maintaining the confidentiality of attorney disciplinary proceedings. Specifically, the district court granted summary judgment to plaintiffs, six law professors that had filed complaints for prosecutorial misconduct against twenty-one prosecutors who obtained convictions that courts later reversed. The district court entered a declaratory judgment creating a qualified public right of access to any attorney grievance committee dispositions related to plaintiffs' complaints and any resulting formal disciplinary proceedings in the Second Department.

The district court's decision undermines the New York State Legislature's longstanding policy of attorney disciplinary confidentiality under Judiciary Law § 90(10).

The First Amendment does not mandate access to attorney disciplinary documents and proceedings here. Rather, confidentiality is necessary to promote trust in the legal profession and maintain the fair administration of justice, since public disclosure of unproven allegations would irreparably damage lawyers' reputations, harm clients, harm complainants, and deter individuals from filing legitimate grievances. Publicizing complaints before discipline is imposed risks reputational harm comparable to wrongful criminal accusations. It also threatens the integrity of the investigation.

The practical consequences of attorney disciplinary matters in New York justify continued confidentiality. Judiciary Law § 90(10) aligns with best practices across professions and dismantling its protections would expose the practice of law in New York to systemic harm that courts have not adequately considered. NYSBA, representing the interests of practicing attorneys, disciplinary bodies, and the clients they serve, submits that this Court should vacate and remand the district court's decision to ensure that attorney discipline maintains its intended balance— protecting the public, upholding legal ethics, and safeguarding due process for all attorneys.[3]

## ARGUMENT

### I. Experience and Logic Do Not Support a Qualified First Amendment Right of Public Access to New York Attorney Discipline Records and Proceedings

The district court erred in holding that attorney disciplinary proceedings and records fall within the qualified First Amendment right of access. Under well-established precedent, a presumption of public access arises only where both experience and logic favor disclosure. *N.Y. C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 297 (2d Cir. 2012). This standard has not been met in the context of New York's attorney grievance process.

---

[3] NYSBA does not take a position in specific attorney grievance matters and is not doing so here.

The experience prong requires a tradition of openness, yet attorney discipline in New York historically has been confidential at every stage until a formal adjudication is made by the Appellate Division. The logic prong asks whether public access enhances the function of the process, yet premature disclosure undermines the very purposes of the disciplinary system by exposing attorneys to irreparable reputational harm, chilling complainants, and compromising the integrity of investigations.

### A. Historically, New York Attorney Discipline Proceedings Have Been Confidential

Confidentiality in attorney disciplinary proceedings has long been recognized as essential to the fair administration of justice. In 1895, shortly after New York established the Appellate Division of the Supreme Court, the Legislature delegated to the Appellate Division exclusive control over attorney discipline. Ch. 946, 1895 N.Y. Laws 796, 800-01 (J.A. 965). By the early twentieth century, New York courts had power to authorize confidential investigations into suspected attorney misconduct. *See People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 478-79 (1928); *Anonymous Nos. 6 & 7 v. Baker*, 360 U.S. 287, 294 (1959). In place of adversarial proceedings initiated by private complainants, the Legislature authorized the Appellate Division to appoint local bar associations and district attorneys to prosecute attorney disciplinary matters. *See* Ch. 295, 1921 N.Y. Laws 1017, 1017-

18 (reproduced at J.A. 936-37); *In re Tuck*, 180 A.D. 924, 924 (1st Dep't 1917). *See also* J.A. 975**.**

Since that time, NYSBA has long supported confidentiality in the attorney grievance process. In 1985, NYSBA's House of Delegates approved a report of the Committee on Professional Discipline making recommendations for improvements in the disciplinary section, but specifically rejected that portion of the report that recommended amending § 90(10) to permit even limited public access to disciplinary proceedings prior to the imposition of final discipline, stating that "the public's need to know is served by publication of the findings where misconduct is determined to have occurred, and confidentiality protects the innocent."[4]  In 1992, NYSBA's House of Delegates approved a resolution from the Committee on Professional Discipline "strongly support[ing] the continuation of the provisions of [§90(10)]".[5]  This issue was reconsidered in 1995, 1996, and 2002, and each time NYSBA reiterated its support for confidentiality of the grievance process.

Historically, attorney disciplinary matters in New York were treated with the same discretion as other quasi-judicial processes, such as grand jury investigations and judicial conduct inquiries.  The rationale for such confidentiality is twofold: (1)

---

[4] *See* NYSBA, Comm. on Pro. Discipline, A Comprehensive Study of the State of Discipline in N.Y.S. (June 1985), https://nysba.org/committees/committee-on-professional-discipline/.

[5] Minutes of the NYSBA House of Delegates (June 27, 1992), at 8, https://nysba.org/app/uploads/2022/02/June-1992-NYSBA-HOD-Minutes.pdf.

to protect innocent attorneys from unwarranted reputational damage due to frivolous or unfounded complaints, and (2) to ensure that complainants and witnesses, particularly those in vulnerable positions, feel safe in bringing forward legitimate concerns about attorney misconduct.

New York's approach to confidentiality is not an anomaly. Many other states similarly maintain confidentiality in attorney grievance proceedings, recognizing that premature public access can lead to reputational harm, undermine due process, and chill the willingness of complainants to come forward. Indeed, "in most jurisdictions, the discipline process is confidential from the time that an individual complainant contacts the discipline agency until and unless probable cause is found," meaning that dismissals, referrals to diversion programs, and other lesser forms of discipline remain confidential.[6] The district court's order which creates a public right of access to the attorney grievance process contravenes this experience and would make New York a national outlier. The American Bar Association (ABA) has long endorsed confidentiality at the investigatory stage of attorney discipline, recognizing that premature disclosure of allegations risks undermining both individual fairness and public confidence in the profession.[7] Today, at least four

---

[6] Leslie C. Levin, *The Case for Less Secrecy in Law. Discipline*, 20 Geo. J. Legal Ethics 1, 21 (2007), https://heinonline.org/HOL/P?h=hein.journals/geojlege20&i=13.

[7] ABA, Special Comm. on Evaluation of Disciplinary Enforcement, Problems & Recommendations in Disciplinary Enforcement 138 (1970).

states maintain the confidentiality of attorney disciplinary matters until formal charges are sustained[8], while most states maintain confidentiality of attorney disciplinary matters only until a finding of probable cause.[9]

The district court's decision threatens to upend this established balance by mandating sweeping public access to grievance proceedings and records before a final determination has been made, departing significantly from established New York precedent and disregarding the unique risks posed by making unverified allegations against attorneys public before due process has been afforded. Therefore, finding in favor of public access to committee dispositions or formal disciplinary proceedings was not warranted.

### B. Logic Does Not Warrant Public Access to New York Attorney Discipline Documents and Proceedings

The principle of protecting attorneys from undue reputational harm while preserving the integrity of disciplinary investigations has further been embedded in New York State law for decades, primarily through Judiciary Law § 90(10). New York Judiciary Law § 90(10) codifies the principle that attorney disciplinary proceedings must remain confidential unless and until formal disciplinary charges

---

[8] *See* N.Y. Jud. Law § 90(10); Ala. R. Disciplinary Pro. R. 30; Del. Laws. R. Disciplinary Pro. 13; Iowa Code Ann. § 34.4.

[9] *See* Levin, *supra*, at 21; Michael S. McGinniss, *Sending the Message: Using Tech. to Support Jud. Reporting of Law. Misconduct to State Disciplinary Agencies*, 2013 J. Pro. Law. 37, 81 (2013), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/jpl_2013_02mcginniss.pdf.

are sustained by the Appellate Division. The statute provides that "all papers, records and documents upon the application or examination of any person for admission as an attorney and counsellor at law and upon any complaint, inquiry, investigation or proceeding relating to the conduct or discipline of an attorney or attorneys, shall be sealed and be deemed private and confidential" unless discipline is imposed. N.Y. Jud. Law § 90(10). This provision reflects the legislative policy choice that confidentiality is necessary to protect the integrity of attorney discipline, the due process rights of accused attorneys, and the willingness of complainants to come forward.

This provision reflects a carefully balanced approach to attorney discipline, ensuring that unproven allegations do not irreparably damage attorneys' careers while maintaining a robust mechanism for accountability. The structure of § 90(10) serves both the legal profession and the public interest. If an attorney is found to have engaged in misconduct, public disclosure of the disciplinary action serves the interests of transparency and accountability. However, if an attorney is exonerated or a complaint is dismissed, confidentiality protects against the reputational harm that can arise from baseless or unproven allegations. Maintaining confidentiality, including at the investigatory stage, ensures that the disciplinary process functions as intended, free from premature public scrutiny, external pressures, and the risk of weaponization of grievance complaints.

The district court's decision to override § 90(10) and require public access to attorney disciplinary proceedings disregards these foundational principles. By mandating disclosure, including at the earliest stages of the process, the court failed to appreciate the critical role confidentiality plays in ensuring fairness to accused attorneys and protecting the integrity of investigations.

## II. Qualified Public Access to Attorney Disciplinary Records and Proceedings Would Cause Irreparable Harm to Attorneys, to the Disciplinary Process, and to the Public

The four departments of the Appellate Division license and discipline attorney pursuant to Judiciary Law § 90, while the Rules of Professional Conduct set expectations and norms for attorney conduct. Specifically, as officers of the Court, all attorneys are obligated to maintain the highest ethical standards, consistent with the Rules of Professional Conduct as adopted by the Appellate Division of the State Supreme Court and published as Part 1200 of the Joint Rules of the Appellate Division. NYSBA's preamble to the New York Rules of Professional Conduct articulates the responsibility attorneys carry by virtue of being granted an exclusive license to practice law:

> A lawyer, as a member of the legal profession, is a representative of clients and an officer of the legal system with special responsibility for the quality of justice. As a representative of clients, a lawyer assumes many roles, including advisor, advocate, negotiator, and evaluator. As an officer of the legal system, each lawyer has a duty to uphold the legal process; to demonstrate respect for the legal system; to seek improvement of the law; and to promote access to the legal system and the administration of justice. In addition, a lawyer should further the

public's understanding of and confidence in the rule of law and the justice system because, in a constitutional democracy, legal institutions depend on popular participation and support to maintain their authority.[10]

Attorneys who violate the responsibilities imposed on them risk discipline ranging from private admonishment, public censure, suspension, or disbarment depending on the character of the offense committed relative to the nature of the penalty. In that vein, the Appellate Division must discharge "its difficult and delicate responsibility of determining what sanction, if any be appropriate, will best serve the public interest and at the same time assure the particular attorney full due process and fairness in the recognition of the substantial interest that is his in his right to practice law." *In re Levy*, 37 N.Y.2d 279, 282 (1975).

Of course, the severity of the sanction imposed will necessarily affect the reputation of the lawyer charged. On the other hand, discipline must be imposed when necessary "to protect the public in its reliance upon the presumed integrity and responsibility of lawyers." *Id.* (citations omitted). This delicate balance between the interests of an attorney and the protection of the public interest has always been a matter within the sound discretionary supervision of each department of the Appellate Division.

---

[10] *See* the New York State Bar Association's Preamble to New York Rules of Professional Conduct, (May 2022) https://nysba.org/app/uploads/2022/05/Rules-of-Professional-Conduct-as-of-May-2022.pdf.

To properly exercise that discretionary supervision, the Appellate Division must assess whether private or public discipline is warranted. *See* 22 N.Y.C.R.R. §§ 1240.7(d)(2)(iv)-(v), 1240.8(b)(2). To evaluate the appropriate remedy based on the circumstances of the case, the Appellate Division implements a three-tier attorney disciplinary mechanism: (1) initial screening, (2) investigation and committee review, and (3) formal disciplinary proceedings before the Appellate Division. *See* 22 N.Y.C.R.R. §§ 1240.7-1240.8. Each stage incorporates confidentiality protections to prevent reputational harm from unsubstantiated complaints, to encourage complainants to come forward, and to preserve the integrity of investigations.

The district court's decision, however, undermines these protections by mandating public access to disciplinary proceedings at stages where confidentiality is crucial to the process functioning as intended. Primarily, the court improperly disregarded the reputational harm that will result from unsubstantiated allegations of attorney misconduct, the harm to the attorney discipline investigatory process and the public interest, and the harm to the Appellate Division's ability to privately admonish lawyers.

## A.    Reputational Harm Will Result From Unsubstantiated Complaints

The district court improperly disregarded the logical benefits of confidentiality of attorney disciplinary proceedings, including, first, that

confidentiality protects attorneys from unsubstantiated accusations of misconduct. As the district court correctly noted, "[t]he possibility of [c]ommittee action without an evidentiary finding of misconduct elevates the risk that innocent attorneys may be impacted by public knowledge of the [c]ommittee's decision on accusations of misconduct that turn out to be unwarranted." (S.A. 107). The court erred, however, in concluding that a disposition under § 1240.7(d)(2)(i) to dismiss a grievance complaint is unlikely to have a negative effect on the attorney's reputation. The district court's conclusion is plainly wrong. Although an attorney's innocence is ultimately vindicated by a dismissal, the district court failed to account for the reputational harm that occurs due to the mere making of the unfounded allegations of ethical transgressions and a drawn-out investigative process.

The purpose of the grievance committee is to investigate and prosecute violations of the Rules of Professional Conduct. (J.A. 524, 863). Once a complaint passes the screening stage, the committee's chief attorney and staff conduct an investigation, gather evidence, interview witnesses, and obtain necessary documents to determine whether probable cause exists to authorize a formal disciplinary proceeding. 22 N.Y.C.R.R. §§ 1240.7(b), 1240.7(d)(2).[11] At the conclusion of the

---

[11] The court correctly declined to declare a right of public access to the committee's chief attorney's dispositions, which the court correctly found are investigative inquiries, but the court clearly erred in distinguishing those dispositions from the dispositions of the committee to forego public discipline, which are, in sum and substance, the same.

investigation, the chief attorney and staff issue a written report to the committee with factual findings, applicable law, and a recommended disposition. J.A. 867. Dispositions range from a dismissal of the complaint, to private dispositions such as referrals to diversion programs, admonitions, and letters of advisement, to the authorization of a formal disciplinary proceeding.

However, the committee's investigatory materials and dispositions do not often result in a finding of probable cause that misconduct has occurred warranting public discipline. In fact, more than 90% of the complaints are consistently dismissed.[12] In the Second Department, of these claims dismissed, more than 40% are dismissed for failure to state a claim, indicating that many complaints lack merit and should not be made public.[13]

Moreover, even if an attorney is ultimately vindicated, the passage of time during the committee's investigatory process will undoubtedly affect the lawyer's reputation while the committee's investigatory documents are made public. Between 2012-2014, the Second Department and First Department's investigation processes took on average 646 and 655 days, respectively, to complete. If the district

---

[12] *See* the annual reports of the N.Y.S.B.A., *Comm. on Pro. Discipline*, https://nysba.org/committees/committee-on-professional-discipline/?srsltid=AfmBOooiJ_JYu-Wi-dEFKeRfqi3jy8aN3HFg3p8LbJJWtai_tc5ITwR8 (last visited Mar. 4, 2025).

[13] N.Y.S. Commission on Statewide Attorney Discipline, *Enhancing Fairness & Consistency Fostering Efficiency & Transparency* (Sept. 2015) at 53, https://ww2.nycourts.gov/sites/default/files/document/files/2020-10/AttyDiscFINAL9-24-1.pdf.

court's decision were to stand, this data shows that for two years, before any formal proceeding begins or probable cause is found, an attorney under investigation can suffer public and reputational harm for an investigation that is overwhelmingly likely to be dismissed.[14] To make matters worse, in 2022 and 2021, the attorney grievance process for the First Department led to the public discipline of only 60 and 40 lawyers, respectively.[15]

Of course, attorneys have an interest in their reputations, which "once lost, [are] not easily restored," *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 478 (1928). There is no question that the publication of disciplinary allegations will cause severe and irreversible reputational damage to attorneys and disproportionately affect smaller firms and solo practitioners. Even an ultimately dismissed complaint can irreparably harm an attorney's career throughout the pendency of an investigation that often span two or more years. For example, press coverage is likely to have a disproportionate effect on small firm attorneys, solo practitioners, and government employees who do not have the institutional backing or financial resources to

---

[14] The district court also found that disciplinary proceedings do not take place absent probable cause that the attorney committed a serious ethical transgression, so any concern about unsubstantiated reputational harm was "overstated." (S.A. 89). However, the district court utterly failed to account for irreparable reputational harm should proceedings be dismissed.

[15] 2023 Annual Report, Attorney Grievance Comm. for the First Jud. Dep't, (2023), https://www.nycourts.gov/courts/AD1/Committees&Programs/DDC/AnnualReport2023.pdf; 2022 Annual Report, Attorney Grievance Comm. for the First Jud. Dep't (2022), https://www.nycourts.gov/courts/ad1/Committees&Programs/DDC/AnnualReport2022.pdf.

16

weather an investigation. Confidentiality protects innocent attorneys and ensures a fair and effective disciplinary process.

Although the district court recognized the importance of maintaining the confidentiality of pre-indictment proceedings and investigatory materials (S.A. 110-111), the court erred in finding that the grievance committee's investigatory materials must be disclosed. Unlike public court proceedings, the disciplinary process is prosecutorial and investigative, not adjudicative, focusing on the professional responsibility of attorneys rather than adjudicating criminal or civil liability. Grievance committees are investigative bodies, and as in grand jury proceedings or judicial misconduct investigations, their function depends on discretion, neutrality, and the ability to investigate free from public and political pressures. Moreover, attorney discipline differs from the criminal justice system in ways that render public scrutiny inappropriate at the investigatory stage. Prosecutors operate within a constitutional framework where the presumption of innocence, the right to counsel, and evidentiary burdens counterbalance reputational risks. Attorneys facing grievance complaints have no equivalent forum to clear their name in the public eye when a frivolous complaint is dismissed, making confidentiality essential to fairness.

In sum, the district court overlooked the vital role of confidentiality in protecting attorneys from reputational harm caused by unsubstantiated complaints.

With most grievances dismissed, public disclosure risks unfair scrutiny and lasting damage, even without misconduct. Confidentiality ensures fairness, safeguards reputations, and preserves the integrity of the disciplinary process.

**B.    Harm to the Attorney Discipline Investigatory Process and the Public Interest**

The district court's ruling threatens to undermine the integrity of attorney disciplinary investigations and erode public confidence in the legal profession. By requiring public disclosure of grievance committee dispositions, the decision jeopardizes the ability of grievance committees to conduct impartial and effective investigations, discourages complainants from filing legitimate grievances, and places attorneys at risk of undue reputational harm from unsubstantiated allegations. Investigators and grievance committee members may face external pressure, media scrutiny, or even harassment if their deliberations are made public before final determinations.[16]

The district court's ruling fails to appreciate that most disciplinary complaints do not result in formal discipline, and its decision incentivizes premature public scrutiny at a stage where allegations are still being evaluated. If grievance committees must operate in public, they will face external pressures that could

---

[16] NYSBA regularly engages with grievance committees and disciplinary bodies and understands how public access would shift the process from a professional regulatory function into a media-driven spectacle.

hinder their ability to make impartial determinations. Investigators and committee members must be free to deliberate without public and media scrutiny to ensure that cases are decided based on legal and ethical principles, not public sentiment or political considerations.

Confidentiality is necessary to promote trust in the legal profession and maintain the fair administration of justice. Public disclosure of unproven allegations would irreparably damage lawyers' reputations, harm clients, harm complainants, and deter individuals from filing legitimate grievances. Potential witnesses and complainants have an interest in a confidential forum for full and frank discussions regarding alleged wrongdoing.

New York courts have long recognized that confidentiality in professional misconduct proceedings serves vital public and institutional interests. There is an overwhelming public interest in maintaining the confidentiality of information about medical issues, family matters, and attorney-client privilege that arise in disciplinary proceedings. *Doe v. Office of Prof'l Med. Conduct of N.Y.S.*, 81 N.Y.2d 1050, 1052 (1993); *see also In re Johnson Newspaper Corp. v. Melino*, 77 N.Y.2d 1, 10 (1990) (dentist); *In re Capoccia*, 59 N.Y.2d 549, 553 (1983) (attorney); *In re Doe v. Axelrod*, 123 A.D.2d 21, 30 (1st Dep't 1986), *rev'd on other grounds* 71 N.Y.2d 484 (1988) (recognizing that patient as well as physician has an interest in insuring confidentiality); *see also*, *In re Stern v. Morgenthau*, 62 N.Y.2d 331, 339 (1984)

19

(judicial conduct proceedings)]") (cleaned up). The policy of confidentiality in such cases, New York courts have found, "serves the purpose of safeguarding information that a potential complainant may regard as private or confidential and thereby removes a possible disincentive to the filing of complaints" and it also "evinces a sensibility to the possibility of irreparable harm to a professional's reputation resulting from unfounded accusations--a possibility which is enhanced by the more relaxed nature of the procedures and evidentiary rules followed in disciplinary proceedings in which hearsay evidence may be received" (*In re Johnson Newspaper Corp.*, 77 N.Y.2d at 10-11, supra) (citations omitted). Similarly, confidentiality also protects against inadvertent disclosure of client confidences and privileged communications between attorneys and clients. Of course, the Legislature is in the best position to weigh conflicting policy values represented by either confidentiality or public access and enact consistent provisions for them giving appropriate protection to the interests of the parties and witnesses and the public interest.

Confidentiality protections also extend to grievances filed against judges in New York and are a fundamental feature of processional licensing and professional disciplinary proceedings. Regulatory bodies overseeing professions such as the judiciary and medicine in New York maintain confidentiality at the investigatory stage, recognizing that premature disclosure of complaints could irreparably damage

the careers of professionals accused of misconduct.[17]  In fact, New York courts have found that there is no First Amendment public right of access to physician disciplinary hearings since it has been traditional policy of state to maintain confidential in professional misconduct proceedings until final determination.  *In re J.P. v. Chassin*, 189 A.D.2d 137 (4th Dep't 1993), *aff'd*, 82 N.Y.2d 694 (1993); *see also*, *Doe v. Office of Prof'l Med. Conduct*, 81 N.Y.2d 1050, 601 N.Y.S.2d 456, 619 N.E.2d 393 (1993) (finding the confidentiality of physician grievance proceedings reasoning "[o]ur construction of the statute is consistent with the general policy that disciplinary proceedings involving licensed professionals remain confidential until finally determined.").

The district court's ruling ignores these well-established best practices in not only the legal, but other professional fields in New York.  By mandating disclosure in attorney discipline while similar professional regulatory bodies continue to maintain confidentiality in New York, the district court ruling creates an unjustified and unworkable disparity.  If upheld, the decision risks setting dangerous precedent that could erode confidentiality protections across all professions, leading to greater

---

[17] *See* N.Y. Jud. Law § 45(1) "all complaints, correspondence, commission proceedings and transcripts thereof, other papers and data and records of the commission shall be confidential and shall not be made available to any person except pursuant to section forty-four of this article."; N.Y. Pub. Health Law § 230.

public skepticism about disciplinary processes and chilling effects on complainants and investigations alike.

For these reasons, this Court should vacate the district court's decision and reaffirm the essential role of confidentiality in ensuring fair, effective, and impartial attorney discipline.

### C.     Harm to the Appellate Division's Ability to Admonish Privately

Upholding the district court's decision would have harmful effects on the disciplinary process, gutting the Appellate Division's power to impose private discipline.  A presumptive right of public access to committee dispositions effectively precludes grievance committees from issuing any private discipline at all. Moreover, under the district court's order, referrals to diversion programs, admonitions, and letters of advisement cannot be made without also making "on-the-record findings" so that the criteria for overcoming the First Amendment right of access are satisfied. (S.A. 118).

However, New York, like most other states, authorizes some form of private discipline for lawyers.[18]  As the district court recognized, bar associations and grievance committees have historically imposed forms of private discipline (S.A.

---

[18] *See* ABA, 2021 Survey on Lawyer Discipline Sys. 20-23 (Nov. 2023), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/sold-survey/2021/2021-sold-report-final.pdf; ABA, 2018 Survey on Lawyer Discipline Sys. 17-20 (July 2020), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/2018sold-results.pdf.

103-104).   Nevertheless, the district court found that "the ill effects that exclusively private discipline have had on the legal profession" outweighed the decades-old history of private discipline.  This was error.

It is logical that certain lesser forms of discipline must remain confidential. For example, the committee's referral of an attorney to a diversion program would reveal personal medical information.  Or, where an attorney's conduct represents a first-time offense, unintentional mistake, or delayed services, private admonition is eminently warranted. (J.A. 846).  The district court, however, has now ordered that the committee must also find that maintaining privacy would "serve higher values that would be prejudiced by disclosure"; the "restrictions on disclosure are no more extensive than necessary"; and "alternatives to restriction have been considered and would not reasonably protect those higher values." (S.A. 118).  These conditions undermine the logical statutory scheme empowering the Appellate Division to oversee attorney discipline and impose the level of sanction warranted under the circumstances of the case in order to properly administer justice.  *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975).  The district court's ruling frustrates that purpose by forcing public disclosure in cases where discretion and confidentiality are not only appropriate but essential.

23

For these reasons, this Court should reaffirm the authority of the Appellate Division to administer private discipline as a necessary and proper tool for maintaining legal ethics and professional accountability.

## III. Conclusion

For more than a century, New York has maintained a carefully balanced disciplinary framework that protects the public, upholds legal ethics, and ensures due process for attorneys. Judiciary Law § 90(10) embodies this well-established approach, ensuring that disciplinary investigations remain confidential until a finding of misconduct is sustained. The district court's ruling disrupts this system by imposing an unwarranted presumption of public access, contrary to historical practice, statutory authority, and established precedent.

The First Amendment does not mandate access to attorney disciplinary proceedings, and the district court's ruling creates an unjustified and unworkable disparity between attorney discipline and other professional oversight mechanisms, such as judicial and medical disciplinary processes, which maintain confidentiality until a final determination is made. Rather, without logic, the decision threatens the integrity of attorney disciplinary proceedings, exposes innocent attorneys to reputational harm, discourages complainants from reporting misconduct, and introduces external pressures that compromise the independence and impartiality of grievance committees. Furthermore, by removing the ability of the Appellate

Division to impose private discipline, the district court eliminates a critical tool for ensuring proportionality and fairness in attorney regulation.

NYSBA respectfully urges this Court to uphold the longstanding confidentiality protections of Judiciary Law § 90(10) to preserve trust in the legal profession, maintain the integrity of investigations, and ensure the proper balance between transparency, due process, and the fair and effective administration of attorney discipline for attorneys in New York.

Dated:      New York, New York
            March 5, 2025

                      Respectfully submitted,

                      */s/ Rolando T. Acosta*
                      Rolando T. Acosta
                      Dante W. Apuzzo
                      Catherine Perez
                      Pillsbury Winthrop Shaw
                      Pittman LLP
                      31 West 52nd Street
                      New York, NY 10019-6131
                      Phone:212.858.1000
                      Fax:212.858.1500
                      rolando.acosta@pillsburylaw.com
                      dante.apuzzo@pillsburylaw.com
                      catherine.perez@pillsburylaw.com

                      *Attorneys for Amicus Curiae*
                      *New York State Bar Association*

                      Domenick Napoletano
                      Counsel of Record
                      President

*New York State Bar Association*
One Elk Street
Albany, New York 12207
(518) 463-3200
domenick@napoletanolaw.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the type-volume limit of Local Rule 29(A)(5) because this document contains 5,317 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type-style requirements of Fed. R. App. P. 32(A)(5) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in font size 14, Times New Roman.

*/s/ Rolando T. Acosta*
Rolando T. Acosta